UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANNE BRYANT,

                    Plaintiff,

     -against-

AB DROITS AUDIOVISUELS, AB
PRODUCTIONS, APOLLO'S CHARIOT MUSIC,
BANANA ALERT MUSIC, BEST
ENTERTAINMENT LTD, BLOKKER BV, BRIDGE
RIGHTS B.V., CARTOON NETWORK,
CENICIENTA VIDEO, CHAD ENTERTAINMENT
LLC., COLUMBIA TRISTAR HOME VIDEO
INC., DREAMWORKS LLC a/k/a DREAMWORKS
PICTURES, FILMFACTORY, FLEX MEDIA
ENTERTAINMENT, HASBRO INC., HASBRO
INTERNATIONAL INC.,  INITIAL S.A.,
LOONLAND UK LTD., MADMAN
ENTERTAINMENT INC., MAVERICK
ENTERTAINMENT LIMITED, MEDIA SALES
GROUP AND LICENSING B.V., MEGA
ENTERTAINMENT, METRODOME GROUP PLC,
PARAMOUNT PICTURES CORP.,  PEXLAND
INTERNATIONAL (PICTURES) LTD, PROXIMA
FILMS, RHINO ENTERTAINMENT CO., RHINO
HOME VIDEO CORE, ROUGE CITRON
PRODUCTIONS S.A.R.L., SILVER MEDIA
GROUP S.A., SONY/ATV SONGS LLC [BMI],
SONY/ATV TUNES LLC [ASCAP], SONY BMG
MUSIC ENTERTAINMENT INC., SONY
LEGACY, SONY PICTURES HOME
ENTERTAINMENT INC., SONY WONDER,
SUNBOW ENTERTAINMENT LLC., SUNBOW
PRODUCTIONS INC., STARWILD MUSIC
INC., TALENT PARTNERS INC., TRANS
ENTERTEL TELECOMMUNICATIONS LTD, TV
LOONLAND AG, TV LOONLAND HOME
ENTERTAINMENT LTD, UNICORN TV
DISTRIBUTORS LTD., UNION FILMS GROUP,
VIDART LIMITADA, VOLCANO RECORDS,
WARNER MUSIC GROUP, WARNER STRATEGIC
MARKETING, WILDSTAR MUSIC INC., JOHN
AND JANE DOES 1-20, and ABC
CORPORATIONS 1-20,

                    Defendants.



FILED
JUL 13 2007
USDC WP SDNY

[Civil Action]

Docket No.:

**COMPLAINT AND
JURY DEMAND**

# 07 CIV. 6395

# JUDGE STEIN

Plaintiff, **ANNE BRYANT**, by her attorneys, Monaghan, Monaghan, Lamb & Marchisio, LLP for her Complaint against the Defendants, alleges as follows:

## INDEX

A. Nature of This Action, Generally                                      3-4
B. Jurisdiction and Venue                                                4-5
C. Personal Jurisdiction                                                   5

D. The Plaintiff                                                         6-8

E. The Plaintiff's Claims – Generally                                    8-9
F. The Jem Agreement dated June 1, 1985 – Representative                9-11
   Agreement
G. Terms of Jem Agreement Apply to all Relationships                      11
H. Plaintiff's Copyrights Conveyed under Special                       12-13
   Circumstances and Understanding
I. Sunbow's Control of the Registration Process                        13-14
J. Prior Litigation in the State Court and Ruling of March             14-15
   9, 2007
K. Sunbow's Spoliation and Withholding of Records                         16
L. Documents Supposedly Destroyed by Flood are                         16-17
   Mysteriously Dredged from the Deep and Produced during
   Trial
M. Court's Refusal to Allow Amendment                                  17-18
N. This Action vs. State Court Ruling                                  18-19
O. The Defendants                                                      19-45
P. First Cause of Action Against the Sunbow-Loonland-Sony             45-49
   Defendants – Breach of Contract
Q. Second Count Against All Defendants – Breach of License             49-65
   and/or Distribution Agreements
R. Third Count against All Defendants – Accounting                     66-69
S. Fourth Count Against All Defendants – Breaches of                   69-70
   Fiduciary Duty
T. Fifth Count Against All Defendants – Unjust Enrichment              71-73
   Demand for Jury Trial                                                   74

## A.  NATURE OF THIS ACTION, GENERALLY

1.    Without limiting the counts or claims or jurisdictional bases for this suit, this is an action by the composer of the musical compositions identified herein to recover music publishing and performance royalties and other contractual payments due Plaintiff directly, and as the third party beneficiary of various agreements described herein[1]. These payments are due to Plaintiff under various license and distribution and other agreements which rights follow Plaintiff's transfer of the copyrights to Plaintiff's Compositions (as defined herein) to certain of the Defendants herein.    Plaintiff's transfer of the copyrights was made in consideration of, among other things, the retention of Plaintiff's right to receive all writer royalties, including "public performance" [broadcast] royalties and her 50% share of "music publishing royalties" and to receive appropriate professional credits for her compositions including, but not limited, to movie and television screen credits.    This is also an action against certain Defendants herein named to obtain an equitable accounting and payment of monies due upon the rendering of such an accounting and as against other Defendants for spoliation and withholding of evidence which caused the dismissal of a separate state court action against certain of the Defendants

---

[1] In the interest of reducing paperwork all documents referred to herein may be accessed and reviewed at the link http://litigation.monaghanlawyers.com.

herein.   Lastly, to the extent this action, and the facts which are elicited herein, establish a fiduciary relationship against any Defendant, either directly or on an alter ego theory, this is an action to impose a constructive trust for breach of said fiduciary duty on any monies which have been received by one or more of the defendants which should have in equity and by law been paid to plaintiff.


2.    Plaintiff **ANNE BRYANT** ["**BRYANT**"] is the composer of the music for certain worldwide known and utilized musical compositions including but not limited to the following which are at issue in this litigation, [hereafter sometimes "Plaintiff's Compositions"]:

> a. The Transformers [TV and Jingle] main theme
> b. The Transformers "Rock and Roll" movie theme from the 1986 animated feature film "Transformers-The Movie" [theatrical release in 1986]
> c. The Jem TV show main [opening] theme
> d. The Jem Girls [Jem show TV closing] theme
> e. The Jem TV show feature songs score [154 songs]
> f. The Visionaries TV show main theme
> g. The Great Space Coaster TV show theme


## B.  JURISDICTION AND VENUE

3.    This Court has jurisdiction over this action under 28 U.S.C § 1332(a) (2) (diversity of citizenship) because Plaintiff is of diverse citizenship as to each Defendant.   The matter in

4

controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

4.    Venue is proper in this forum under 28 U.S.C. §1391(a) (2) in that a substantial part of the events or omissions giving rise to the claims occurred here.

### C.    PERSONAL JURISDICTION

5.    This Court has personal jurisdiction over each of the Defendants in that each Defendant has at least one or more of the following contacts and grounds for the exercise of in personam jurisdiction:

> a.    The regular transaction of business in this jurisdiction or;
>
> b. in connection with the respective agreements at issue cited herein identified to that Defendant, each such Defendant has executed and/or performed actions pursuant to those agreements in this jurisdiction or consented to jurisdiction in its respective agreement; or
>
> c. in connection with the respective agreements cited herein, engaged in actions having an effect in this jurisdiction; or
>
> d. is incorporated or qualified to do business in the State of New York; or has engaged in conduct in the State of New York sufficient to permit the exercise of in personam jurisdiction over such Defendant pursuant to New York CPLR 302.

5

## D.   THE PLAINTIFF

6.   All Defendants are identified in detail below. Plaintiff **ANNE BRYANT**, sometimes referred to as "**BRYANT**" is a citizen and resident of the State of Florida residing in Longboat Key, Florida. She is an accomplished composer, arranger, lyricist, music producer and songwriter and has won industry awards for her compositions including Clio awards.   Over the course of her relationship with certain Defendants hereinafter named, including Sunbow Productions, Inc. and its affiliated entity Griffin Bacal, Inc., a New York advertising agency owned and operated by one Jules M. "Joe" Bacal, Plaintiff was a major arranger-composer-producer who wrote hundreds of pieces of music throughout the 1980's all of which were written in a relationship of trust and confidence as set forth hereafter.

7.   Plaintiff **BRYANT** is entitled to "music publishing royalties" including mechanical royalties and synchronization fees relating to the Plaintiff's worldwide-known and utilized Compositions, which were originally commissioned as themes and songs for broadcast use in Defendant **SUNBOW PRODUCTIONS, INC.** [described in greater detail below] musical entertainment television show properties, and/or for advertising purposes related to the similarly named toy products [e.g. Transformer's

6

Theme for Transformers Toy] manufactured and sold by the Defendant
**HASBRO, INC.** named hereafter.

8. Among the uses of the Plaintiff's music are:

   a. The "home video rights" to certain television shows
   which contain all of Plaintiff's compositions [the
   "audio rights"] at issue in this litigation have been
   licensed to numerous distributors of DVD and VHS
   products in collector's editions sold worldwide.

   b. The DVD's utilizing Plaintiff's music often allow for
   a "Play Songs" feature allowing the user to choose a
   music only use of the DVD.

   c. Additionally, Plaintiff **BRYANT's** Transformers main
   theme has been "covered" in CD releases, and has been
   licensed for use in theatrically released feature
   films, and as the main theme in three Transformers
   television shows airing since 2000 worldwide on the
   **CARTOON NETWORK**, and for telephone ring-tones, video
   games, new jingle uses, internet promotions and free
   downloads, for which the Plaintiff has not been
   compensated.

   d. Plaintiff's Transformer's theme is used to promote the
   Transformer's movie and is used in the actual
   Transformer's soundtrack which was released on July 4,
   2007. Plaintiff's Transformer's theme is recognized
   around the world and is inextricably identified with
   the movie's characters.

9. In some cases, Plaintiff's Compositions which were
written in the 1980's [as for example "Transformers"] were
composed at the behest of Jules M. "Joe" Bacal, acting for himself
and for Griffin Bacal, Inc. ["GBI"], a New York ad agency formerly
owned and controlled by Bacal and his partner Tom Griffin. GBI was

hired by Defendant **HASBRO, INC.** to promote its toy products. GBI was sold and is no longer in business.

10.   In other cases, Plaintiff was commissioned by Bacal to write music to be used by and on behalf of Defendant **SUNBOW PRODUCTIONS, INC.,** a TV production company and affiliate commonly owned by Bacal and Thomas Griffin, his partner.   **SUNBOW,** [now believed to be known as **CHAD ENTERTAINMENT**] was sold by Bacal and Griffin in 1998 to Defendant **SONY WONDER, INC.** and **SUNBOW** was thereafter transferred to Defendant **TV LOONLAND AG.** Regardless of the entity for which any of plaintiff's music was nominally commissioned, Plaintiff's music was freely used by Bacal and his companies including the Sunbow defendants, [and their successors in interest] for their own use and benefit without regard to Plaintiff's rights.

## E.   THE PLAINTIFF'S CLAIMS- GENERALLY

11.   Plaintiff's claims are initially derived from her agreements as the writer and composer with Bacal [in whom Plaintiff reposed trust and confidence and thus had a special relationship] and his companies: GBI and **SUNBOW** each of which was also subject to that same relationship of trust and confidence. At certain relevant times, these companies controlled the original registrations and publishing of Plaintiff's compositions with,

8

among others, performing rights societies such as, but not limited to, Broadcast Music, Inc. [sometimes "BMI" herein].

## F. THE JEM AGREEMENT DATED JUNE 1, 1985 - REPRESENTATIVE AGREEMENT

12.   Plaintiff is a signatory to a certain Agreement dated as of June 1, 1985 related to the composition of feature songs for a TV series-the Jem shows produced by defendant Sunbow Productions, Inc. The Jem Agreement [Exhibit A to this Complaint[2]] [which transferred Plaintiff's copyright in consideration of SUNBOW's exploitation of Plaintiff's music for the mutual benefit of Plaintiff and SUNBOW] includes provisions detailing the nature of the parties relationship:

> a. SUNBOW is given a power of attorney by Plaintiff to execute documents relating to among other matters the licensing and exploitation of the copyrights conveyed and music composed and transferred by Plaintiff [Jem Agreement parag 5 (a)].
> b. SUNBOW received the plaintiff's copyrights to her music and agrees that it holds the copyrights as "copyright owner" and "copyright proprietor" [Jem Agreement parag 5a.] indicating that as "proprietor" the copyrights transferred are for the mutual benefit of Plaintiff and SUNBOW.
> c. SUNBOW licenses back to the Writer [Plaintiff] the Writer's share of performance royalties to enable

---

[2]  Also accessible at http://litigation.monaghanlawyers.com.

9

Writer, the Plaintiff, to collect her share of the performance royalties [Jem Agreement parag. 5 (c).]

d. **SUNBOW** acknowledges that the term "Writer's Share" has the meaning commonly understood in the motion picture, television and music publishing industry [Jem Agreement paragraph 5 (d) thus importing into the Jem Agreement [and the other contractual relationships] custom and practice in the music publishing industry.

e. **SUNBOW** is given "the complete control of the publication of the Music" and all rights incident thereto" and "music publishing rights " are defined without limitation as including the right to license motion picture synchronization rights and the manufacture of phonograph records. [Jem Agreement paragraph 6]

f. <u>Music Publishing Rights</u> Paragraph 6 of the Jem Agreement, among others, confirms Plaintiff's continued interests in her music publishing rights:

<u>"(a) With respect to Company's exercise of music publishing rights in the Music (as defined above) (but excluding use in connection with Premium Cassettes as defined in Paragraph 2(a) for which Contractor shall not receive any further compensation), uses of the Music combined with lyrics (but, if the Music with lyrics or any form thereof is the composition of Writer and other composers and/or lyricists, then the royalties hereunder shall be shared equally by all such lyricists and/or composers):</u>

<u>(I) sums equal to fifty (50%) percent of the net proceeds (as defined below) received by Company from third parties for licenses for the manufacture or commercial phonograph records and/or licenses of theatrical motion picture synchronization rights (as defined below);</u>

\*\*\*\*

*(vi) with respect to other uses of the Music hereunder, sums equal to the amount resulting form dividing fifty (50%) percent of the net proceeds received by Company from third parties therefore by the total number of copyrighted musical compositions and/or literary materials contained or included in such uses.*

## G. TERMS OF JEM AGREEMENT APPLY TO ALL RELATIONSHIPS

13. As set forth hereafter where the Prior Litigation between certain of the parties is discussed, **SUNBOW**, which exploited the music publishing interests of the parties, has confirmed repeatedly to the New York Supreme Court [and that Court has previously held] that there were "written and valid signed contracts between Plaintiff and Defendant Sunbow"[3] and it was acknowledged that the foregoing terms of the Jem Agreement apply to all the contractual relationships between **SUNBOW** and Plaintiff relative to each of her compositions including Transformers. In its unsuccessful 2004 attempt to obtain Summary Judgment, Sunbow told the Supreme Court that the Jem Agreement was indeed representative of all Sunbow's contractual relationships with plaintiff and that "Under the Standard Sunbow Work-For Hire Agreements, Plaintiff Still Has Publishing Rights" – rights it has now disputed.[4]

---

[3]  See Decision dated June 12, 2006 by Hon. Andrew P. O'Rourke at http://litigation.monaghanlawyers.com.

[4] See Sunbow Reply Memorandum of Law in Further Support of Motion to Dismiss, dated May 7, 2005, paragraph 4 at http://litigation.monaghanlawyers.com.

## H. PLAINTIFF'S COPYRIGHTS CONVEYED UNDER SPECIAL CIRCUMSTANCES

### AND UNDERSTANDING

14.   When   Plaintiff   conveyed   the   copyrights   in   her
compositions  to  Bacal's  companies,  and  relinquished  exclusive
control  of  her  Musical  Compositions,  based  upon  Bacal's    and
SUNBOW's  express  and  implied  representations,  Plaintiff  did  so
based on the mutual trust and confidences conveyed to her by Bacal
acting for himself and for his companies SUNBOW and GBI[5].

15.   Bacal  and  his  companies,  SUNBOW  and  GBI  including  the
publishing entities and agents used by SUNBOW (STARWILD, the BMI
publisher   and   WILDSTAR,   the   ASCAP   publisher)   received   the
Plaintiff's  copyrights  and  musical  compositions  and  exclusive
control  of  the  intellectual  properties  embodied  therein  with  the
understanding  and  commitment  that  the  compositions  were  to  be
exploited and used by said Defendants for the mutual benefit of
Plaintiff and those Defendants. This understanding is set forth in
the   express   terms   of   the   agreement   to   divide   the   publishing
royalties on an equal basis i.e. 50% to Plaintiff and 50% to those
Defendants,  as  exemplified  in  Paragraph  6  of  the  Jem  Agreement
[set forth in Paragraph 11] and incorporated by reference herein.

---

[5] The Supreme Court had held initially, before its premature dismissal on
procedural grounds, that plaintiff would be permitted to make out a claim
against Sunbow and Sunbow's music publishing entities defendants Starwild and
Wildstar named herein based on her relationship with Bacal. See Decision of Hon.
Andrew P. O'Rourke dated May 28, 2004 at http://litigation.monaghanlawyers.com.

This is in accord with custom and practice in the music publishing business.

## I. SUNBOW'S CONTROL OF THE REGISTRATION PROCESS

16.    At the time of the transfer of copyrights to her Music, **SUNBOW** received the copyrights, a Power of Attorney from Plaintiff, and complete control over the plaintiff's compositions. This enabled **SUNBOW** via Registration ["Clearance"] Forms and/or Cue Sheets, to register the Plaintiff's compositions with the respective performing rights societies [such as BMI] and attribute to plaintiff, the 100% composer of the music, her respective credits and percentage interests in the musical compositions. Initially, Plaintiff was credited properly via formal registrations submitted to BMI on BMI Clearance Forms. However, [unknown and unknowable to plaintiff for many years], Defendant **SUNBOW** subsequently submitted "Cue Sheet" registrations for those same compositions which had the effect of altering the initial registrations by falsely attributing the "Lion's Share" of Plaintiff's composer credits to others, thus reducing Plaintiff's performance royalties to a negligible amount.[6]  Additionally,

---

[6] For example, plaintiff is the 100% composer of the valuable TRANSFORMERS Main Theme for which her credit was reduced by Sunbow's subsequent re-registrations and additional registrations from 100% to as low as 8.3% at BMI and less than 4% in music publishing statements belatedly submitted at the December 2006 trial. And there are many composers who have been registered subsequently [and falsely] as the composers for the Transformers them via Cue sheet registrations that had the effect of directing the flow of royalty income away from plaintiff.

SUNBOW, as Publisher, [or its publishing entities STARWILD and WILDSTAR] submitted numerous additional registrations for those same compositions that it had registered to plaintiff which gave no credit at all to Plaintiff, BRYANT, the actual composer. SUNBOW as Publisher [or its publishing entities STARWILD and WILDSTAR] protected itself, made deals giving away shares and percentages belonging to Plaintiff and violated both the spirit and letter of its agreements with Plaintiff.

## J.  PRIOR LITIGATION IN STATE COURT AND RULING OF MARCH 9, 2007

17.  In 2000, after Plaintiff had finally, through tooth-pulling and previously unsuccessful efforts, obtained her writer's catalog from her performing rights society, BMI, and began to understand that, as a result of Bacal's and Sunbow's wrongful actions, including filing false Cue Sheets with BMI, Plaintiff's compositions registered with BMI had incorrect attribution of writer credits and that she had not received all the performance or other royalties to which she was entitled, Plaintiff commenced actions against her performing rights society BMI and Defendant SUNBOW PRODUCTIONS and other Defendants in New York State Supreme Court[7], Rockland County (Index No. 2821/02 and 5192/00) for an accounting, imposition of a constructive trust and based on unjust

---

[7] The New York Supreme Court is the first level Trial court and there are two Appellate courts above it in the New York Court system.

14

enrichment, and a recovery of not only the writer performance royalties to which she was entitled but also all writer royalties from the sale of CD's; videos and any products in which her music was employed.

18.   In the course of that litigation and in its last decision before the commencement of the trial in 2004, the Supreme Court held [and its decision was affirmed on appeal] that

*"..plaintiff has offered some evidence supporting her claim that she is entitled to allegedly wrongfully withheld performance royalties in excess of $238,000 and that the value of her services in the 1980's includes fifty percent of the publishing royalties….[Decision dated May 28,2004]*

19. After years of litigation, a multitude of unsuccessful procedural and substantive motions filed by **SUNBOW** and Bacal[8] seeking dismissal and appeals by **SUNBOW** [all of which were won by Plaintiff], and after the case was returned by the Appellate Division to the Supreme Court, that Court held in March of 2007 at the continuation of a non-jury trial begun in 2004 that *"Plaintiff is entitled to whatever rights still exist under her agreements with Defendants"* but also held that Plaintiff was not "…entitled to any equitable accounting" dismissing the case on procedural grounds prior to the close of evidence at trial.[9]

---

[8] Bacal settled the case in Plaintiff's favor.
[9] The March 9, 2007 Decision is also available at http://litigation.monaghanlawyers.com

15

## K.   SUNBOW'S SPOLIATION AND WITHHOLDING OF RECORDS

20.   As set forth in detail below, the March 9, 2007 Decision of the Supreme Court [Exhibit B] [which is the subject of a separate recent appeal to the New York Appellate Division] was based upon its finding that plaintiff had sued on oral agreements for an equitable accounting from the defendants, inter alia, and then later after Sunbow produced "contracts", Plaintiff had allegedly "switched" theories and then moved to amend her claims to add claims based on the written Jem Agreement as it applied to all the Plaintiff's compositions.

## L. DOCUMENTS SUPPOSEDLY DESTROYED BY FLOOD ARE MYSTERIOUSLY DREDGED FROM THE DEEP AND PRODUCED DURING TRIAL

21.   The unspecified "contracts" referred to by the Supreme Court's decision, and specifically the Jem Agreement, were not in Plaintiff's possession when the action was filed in 2000 and hence Plaintiff could not sue on written agreements she did not have. These agreements were only produced in the middle of the 2004 initial phase of the trial of an action begun in 2000. Plaintiff had demanded production, from the State Court Defendants SUNBOW and Jules M. "Joe" Bacal, of all relevant documents and agreements long before that 2004 trial. SUNBOW failed to produce any written

16

agreements between the parties and had made numerous false sworn representations to the Court that the contracts regarding the Plaintiff's compositions had been lost in a flood at its offices in New York City[10]. Yet in the middle of the 2004 trial, Sunbow was able to find the allegedly lost documents and produce agreements, including the Jem Agreement that provides significant rights to the Plaintiff. The Court accepted SUNBOW's late production without penalty and placed the onus on Plaintiff for not suing on a written agreement that she did not have, notwithstanding that SUNBOW had previously misrepresented the status of the agreements to the Court and Counsel. The Court also would not allow the case at that stage to be reopened for discovery which had been closed since mid-2003, nor would the Court allow the amendment of pleadings.

## M.   COURT'S REFUSAL TO ALLOW AMENDMENT

22.   The Supreme Court wrongly refused to allow Plaintiff to amend her Complaint based on newly produced evidence to add her claims based on the written Jem Agreement, even though Sunbow had only produced the Agreement four years after the action commenced, finding that Plaintiff was too late in seeking the amendment.   Not only was Plaintiff prejudiced by SUNBOW's wrongful retention of a

---

[10] See Plaintiff's Request for Production of Documents dated June 30, 2003 and Sunbow's Response dated November 10, 2003 at http://litigation.monaghanlawyers.com.

17

relevant agreement in terms of her basic claims, but the Court apparently blamed her, the victim, for switching theories when the fault lay entirely with SUNBOW, the wrongdoer, in withholding documents and making false representations to the Supreme Court. Plaintiff had no motive whatsoever to avoid the terms of the Jem Agreement or hide from it since that Agreement merely confirmed exactly what Plaintiff and her Expert Witness David Berman, former President of Capitol Records, had testified and urged[11] throughout the case - namely, that she was entitled to her writer publishing and mechanical royalties and synchronization fees when SUNBOW licensed properties which included her music.[12]

## N.   THIS ACTION VS STATE COURT RULING

23.   By Sunbow's actions, in withholding documents and making false representations to the Supreme Court, Plaintiff was deprived of her remedies in the Supreme Court and Sunbow damaged her causes and claims.

24.   Certain defendants may urge incorrectly that the dispute has been resolved against Plaintiff by the New York Court's Ruling of March 9, 2007 [which has now been reduced to a Clerk's Judgment, which is under appeal], however the Plaintiff's claims

---

[11]   The Trial Testimony of David Berman of December 6, 2007 is accessible at the http//:litigation.monaghanlawyers.com link.

[12]   See the Jem Agreement paragraph 6 a (1) and 6(a) vi and see Trial Testimony of David Berman-former President of Capitol Records of December 6, 2006 at http://litigation.monaghanlawyers.com.

18

in this action are not barred by the New York Supreme Court's Ruling as its Decision of March 9, 2007 was on procedural grounds, not substantive grounds, and is relevant only to the extent that the New York Supreme Court held that the Plaintiff had whatever rights she had under her agreements with defendants. This action is based on additional facts and causes of action for relief which were not decided or affected by the New York Supreme Court's Ruling and against additional parties on different claims.

## O.   THE DEFENDANTS

25.   Upon information and belief, Defendant **AB DROITS AUDIOVISUELS** ("DROITS") is a foreign corporation organized and existing under the laws of France with its principal place of business at 132 Avenue Du, President Wilson, 932 13 La Plaine Saint Denis, France.   **DROITS** entered into an Agreement with **HOME ENTERTAINMENT**[13], date unknown, for a period of seven years for the rights of all television and video DVDs for the properties Visionaries in France, Belgium, Switzerland, Madagascar, Mauritius Island, French-speaking Africa, Monaco, and Luxembourg.

26.   Upon information and belief, Defendant **AB PRODUCTIONS** is a foreign corporation organized under the laws of France, with a

---

[13]   This Agreement and all others mentioned herein are accessible at
http//:litigation.monaghanlawyers.com

principal place of business at 43-45 Avenue Kleber, 75116 Paris, France. Defendant **AB PRODUCTIONS** is licensee of various television programs featuring Plaintiff's Compositions as per Television License Agreement dated September 1, 1990 with **HASBRO INTERNATIONAL, INC.**, licensor, and **SUNBOW PRODUCTIONS, INC.**, licensing representative. One of the properties being licensed under these agreements is Transformers.

27. Upon information and belief, Defendant **APOLLO'S CHARIOT MUSIC** is or was at relevant times an affiliated company of Defendant **SUNBOW PRODUCTIONS**. Defendant **APOLLO'S CHARIOT MUSIC** entered into an Agreement dated March 11, 1996 with **SUNBOW ENTERTAINMENT**, now known as Defendant **CHAD ENTERTAINMENT, STARWILD MUSIC, WILDSTAR MUSIC, BANANA ALERT MUSIC, SONY/ATV TUNES** and **SONY/ATV SONGS** wherein **SONY/ATV TUNES** and **SONY/ATV SONGS** became the administrators and/or publishers of all compositions defined as "old compositions" and "acquired compositions." Upon information and belief, Plaintiff's Compositions were included within the subject compositions of this agreement.

28. Upon information and belief, Defendant **BANANA ALERT MUSIC** is or was at relevant times an affiliated company of Defendant **SUNBOW PRODUCTIONS**. Defendant **BANANA ALERT MUSIC** entered into an Agreement dated March 11, 1996 with Defendant

SUNBOW ENTERTAINMENT, now known as Defendant CHAD ENTERTAINMENT, STARWILD MUSIC, WILDSTAR MUSIC, APOLLO'S CHARIOT MUSIC, SONY/ATV TUNES and SONY/ATV SONGS wherein SONY/ATV TUNES and SONY/ATV SONGS became the administrators and/or publishers of all compositions defined as "old compositions" and "acquired compositions." Upon information and belief, Plaintiff's Compositions were included within the subject compositions of this agreement.

29.   Upon   information   and   belief,   Defendant   **BEST ENTERTAINMENT, AG** ("BEST") is a foreign corporation existing under the laws of Germany with its principal address at Frankfurter Strasse 32, 63150 Heusenstamm, Germany.   BEST entered into an Agreement dated December 18, 2003 with HOME ENTERTAINMENT for a seven year term for rights to home videos and DVDs of the properties Transformers the Movie in the countries of Germany, Austria, and Switzerland.

30.   Upon information and belief, Defendant BLOKKER B.V. is a foreign corporation organized under the laws of the Netherlands, with a principal place of business at Van Der Madeweg 13, P.O. Box 4072-1099 AB, Amsterdam, the Netherlands. Defendant BLOKKER B.V., as distributor, entered into an International Video Recording Distribution Agreement dated October 1, 1993 with Defendants licensor   **HASBRO   INTERNATIONAL,   INC.**   and   producer   **SUNBOW**

PRODUCTIONS, INC. for the programs Transformers, Jem, Visonaries, and the Great Space Coaster which include Plaintiff's Compositions.

31. Upon information and belief, Defendant **BRIDGE RIGHTS, B.V.** ("**BRIDGE**") is a foreign corporation organized under the laws of The Netherlands with an address of Lorentzweg 46B, 1221 EH Hilversum, The Netherlands. **BRIDGE** entered into an Agreement with **LOONLAND** dated September 12, 2002 as distributor of Transformers: Generation 2 in the locales of Holland, Belgium, and Luxembourg.

32. Upon information and belief, Defendant **CARTOON NETWORK, INC.**, ("**CNI**") is a Delaware corporation, qualified to do business in New York, which at relevant times, had its offices at 1050 Techwood Drive, Atlanta, Georgia 30318. Upon information and belief, CNI has broadcast and produced television shows which use the Transformers main theme music composed by the Plaintiff as the main theme for their newly-created, episode television shows "Transformers Armada", "Transformers Energon" and [Transformers] "Cybertron." Episodes from these new television shows have also been licensed for distribution in the home video market as collector's edition DVD box sets.

22

33. Upon information and belief, Defendant **CENICIENTA VIDEO,**
**S.A.** ("CV") is a foreign corporation organized under the laws of
Mexico, with a principal place of business at C.V. Av. Blancarte
No. 130 Ensenada, B.C., Mexico. **CV**, as distributor, entered into
an International Video Recording Distribution Agreement dated
September 1, 1989 with Defendants producer **SUNBOW PRODUCTIONS,**
**INC.** and licensor Milton Bradley International, Inc., now known as
Defendant **HASBRO INTERNATIONAL, INC.** The property being licensed
under this Agreement is Transformers.

34. Upon      information   and    belief,   Defendant    **CHAD**
**ENTERTAINMENT,**   **LLC,**  ("CHAD"),  formerly   known   as   **SUNBOW**
**ENTERTAINMENT, LLC,** is  a  domestic  corporation  existing  and
organized under the laws of the State of New York, which at
relevant times, had its offices at 55 Madison Avenue, New York,
New York 10022. Upon information and belief, Defendant **SUNBOW**
**ENTERTAINMENT LLC**, subsequently known as **CHAD,** granted exclusive
English language home video rights to Defendant **RHINO HOME VIDEO**
in 1999 for the entire 65-episode Jem television show, the
original Transformers television show episodes (formerly broadcast
during multiple seasons from 1984 to 1988), and 52 Transformers
television episodes re-edited with computer graphics added in
1994, and "Transformers - The Movie," a 90-minute animated
feature-length movie originally released in theatres in 1986. Each

23

of these properties included Plaintiff's musical compositions in
the US territory.[14]

35.   Upon information and belief, Defendant **COLUMBIA TRISTAR
HOME VIDEO, INC.** ("CTHV") is a Delaware corporation qualified to
do business in New York, which at relevant times, had its offices
at Sony Pictures Plaza, 10202 West Washington Blvd., Culver City,
California 90232.   Upon information and belief, Defendant **CTHV**, is
a   video   distributor,   and   subsidiary   of   Sony   Pictures
Entertainment, Inc. Upon information and belief, Defendant CTHV
operates a video club and among other things, manufacturers and/or
distributes   videos   of   Transformers   and   other   Plaintiff's
compositions through a license and/or other agreement with **SUNBOW
PRODUCTIONS** and/or **WARNER STRATEGIC MARKETING.**

36.   Upon information and belief, Defendant **DREAMWORKS, LLC**
a/k/a **DREAMWORKS PICTURES** ("DREAMWORKS") is a Delaware corporation
qualified to do business in New York, with its principal place of
business   at   1000   Flower   Street,   Glendale,   California   91210.
**DREAMWORKS,** along with Defendant **PARAMOUNT**, has produced and/or
distributed a live action movie entitled "Transformers" released
on   July   4,   2007.   **DREAMWORKS**   has   utilized   Plaintiff's
"Transformer's" compositions – which include the famous choruses

[14] This Agreement and all others mentioned herein are accessible at
http//:litigation.monaghanlawyers.com

24

"Transformers More than Meets the Eye…" and "Transformers Robots in Disguise" in promoting the movie. Upon information and belief, **DREAMWORKS** may have obtained a license for use of all or part of the famous Transformers theme music from certain Defendants named herein.

37. Upon information and belief, Defendant **FLEX MEDIA ENTERTAINMENT GMBH** ("**FLEX**") is a foreign corporation organized and existing under the laws of Germany with its principal address of Adalbert-Stifter-Strasse 8, 69509 Moerlenbach, Germany. **FLEX** entered into an Agreement with **HOME ENTERTAINMENT** dated December 10, 2003 for a duration of six and one half years commencing December 15, 2003 and ending June 10, 2010 for the rights to home videos, DVDs, and video CDs to the properties of Transformers and Visionaries in Germany, Switzerland, and Austria.

38. Upon information and belief, Defendant **FILMFACTORY** ("**FILMFACTORY**") is a foreign corporation organized under the laws of Sweden, with an address at P.O. Box 28, Rydebaeck, Sweden. Licensee **FILMFACTORY**, as distributor, entered into an International Video Recording Distribution Agreement dated May 21, 1997 with Defendant **SUNBOW PRODUCTIONS, INC.**, as licensor. The **SUNBOW – FILMFACTORY** Agreement relates to the distribution of the 65-episode, musical television show, Jem and the Transformers

25

intellectual properties containing music composed by the Plaintiff and in which she has royalty interests in the territory of Sweden, Finland, Denmark, and Norway.

39. Upon information and belief, Defendant **HASBRO, INC.,** (**"HASBRO"**) is a Rhode Island corporation existing and organized under the laws of the State of Rhode Island and with a principal place of business at 1027 Newport Avenue, Pawtucket, Rhode Island 02862-1059. Upon information and belief, at relevant times, Defendant Hasbro, was also doing business at 200 Naragansett Park Drive, P.O. Box 1228, Pawtucket, Rhode Island 02862. Upon information and belief, Defendant **HASBRO** joined with Milton Bradley International, Inc. in the original Production License Agreements granted to Sunbow Productions, Inc. in 1984 and 1987 which engaged Sunbow to produce and then distribute Transformers and Visionaries television programming. Defendant **HASBRO** joined with Milton Bradley International, Inc. again when entering into a Publishing Administration Agreement dated November 12, 1987, in which they state that they each own and/or control copyrights to the Plaintiff's Compositions. **HASBRO** is also a signatory of the Standard Terms and Conditions dated October 21, 1988 with Milton Bradley International, Inc., Defendant **STARWILD,** Defendant **SUNBOW PRODUCTIONS**, and Defendant **WILDSTAR.**

40. Upon information and belief, Defendant **HASBRO INTERNATIONAL, INC.** ("**HASBRO INTL**"), formerly known as Milton Bradley International, Inc., is a Massachusetts corporation duly organized and existing under the laws of the Commonwealth of Massachusetts, and a wholly-owned subsidiary of Defendant Hasbro, Inc., with a principal place of business at 1027 Newport Avenue, Pawtucket, Rhode Island 02862-1059. Upon information and belief, **HASBRO INTL** has entered into numerous licensing agreements as the licensor granting distribution rights of the Plaintiff's compositions to various licensee defendants. Furthermore, **HASBRO INTL** is accountable for the Publishing Administration Agreement of November 12, 1987 and the Standard Terms and Conditions of October 21, 1988 that were signed under its former name, Milton Bradley International, Inc.

41. Upon information and belief, Defendant **INITIAL S.A.** ("**INITIAL**") is a foreign corporation organized under the laws of France, with a principal place of business at 6 rue de Penthievre, 75008 Paris, France. **INITIAL**, as distributor, entered into an International Video Recording Distribution Agreement, dated March 5, 1989, with Defendant **HASBRO INTERNATIONAL, INC.**, as licensor, and Defendant **SUNBOW PRODUCTIONS, INC.** The Agreement's term is from April 1, 1989 to March 31, 1994.

27

42.   Upon information and belief, Defendant **LOONLAND UK LTD.** ("**LOONLAND UK**") is a foreign corporation organized under the laws of the United Kingdom of Great Britain, with a principal place of business at Royalty House, 3rd Floor, 72-74 Dean Street, W1V 6AE London, Great Britain. Upon information and belief, Defendant **LOONLAND UK** is a wholly-owned subsidiary of Defendant **TV LOONLAND AG**. Upon information and belief, Defendant **LOONLAND UK** is an integrated media company and distributors of animation for children and families in Continental Europe, Latin America, Great Britain and the United States of America. **LOONLAND UK** is an affiliated company of Defendant **METRODOME GROUP PLC**.

43.   Upon information and belief, **MADMAN ENTERTAINMENT** ("**MADMAN**") is a foreign corporation organized under the laws of Australia, with a principal place of business at 51 Wellington Street, Collingwood, Victoria 3066, Australia.   **MADMAN** entered into an Agreement with **TV LOONLAND AG** dated May 1, 2003 for the property Transformers Original Series for home video and DVD rights in the countries of New Zealand and Australia.   In a separate Agreement with **HOME ENTERTAINMENT** dated February 26, 2002 with a term of four years and six months, **MADMAN** contracted for home video and DVD rights in Australia and New Zealand for the property Transformers the Movie.

28

44. Upon information and belief, Defendant **MAVERICK ENTERTAINMENT LIMITED** ("MEL") is a foreign corporation organized under the laws of England, with a principal place of business at the Sheriff House, The Broadway, Farnham Common, Buckinghamshire, SL2 3QH, England. **MEL**, as licensee, entered into a License Agreement dated October 29, 1999 with licensor **SUNBOW ENTERTAINMENT, LLC.** The **SUNBOW – MAVERICK** Agreement includes licenses of intellectual properties, included but was not limited to, numerous compositions composed by Plaintiff, including Great Space Coaster, the Jem show themes and song score, Transformers, and Visionaries.

45. Upon information and belief, Defendant **MEDIA SALES GROUP AND LICENSING, B.V.** ("MEDIA") is a corporation organized and existing under the laws of The Netherlands with its principal place of business at Weerwilleweg 12, 7958 RW, Koekange, The Netherlands. **MEDIA** entered into an Agreement with **HOME ENTERTAINMENT** dated June 10, 2003 for a six year term for the property Transformers.

46. Upon information and belief, **MEGA ENTERTAINMENT INTERNATIONAL, INC.** ("MEGA") is a corporation organized and existing under the laws of the State of New York with a business address of 160 West 95th Street, New York, New York at all

29

relevant times. **MEGA** was a licensee in two License Agreements, dated September 1, 1991 and March 15, 1994 respectively, with licensor Defendant **SUNBOW PRODUCTIONS, INC** regarding the distribution of the video property the Jem Show in the territory of Israel as well as the properties of Transformers and Visionaries.

47.  Upon information and belief, Defendant **METRODOME GROUP PLC** ("**METRODOME**") is organized under the laws of Great Britain with a principal place of business at Royalty House, 3rd Floor, 72-74 Dean Street, London W1D 3SG, United Kingdom. Upon information and belief, Defendant **METRODOME** is a wholly-owned subsidiary of Defendant TV **LOONLAND** and is an audio/visual entertainment group with an emphasis on the ownership of media rights which are exploited through **METRODOME** Distribution.

48.  Upon information and belief, Defendant **PARAMOUNT PICTURES, CORP.** ("**PARAMOUNT**") is a Delaware corporation duly organized and existing under the laws of the State of Delaware, with a principal place of business as the Paramount Studios, 5555 Melrose Avenue, Hollywood, California 90038. Upon information and belief, Defendant **PARAMOUNT** is involved in the distribution, along with **DREAMWORKS**, of the live-action feature film Transformers that was released on July 4, 2007. **PARAMOUNT** has utilized Plaintiff's

"Transformer's" compositions – which include the famous choruses "Transformers More than Meets the Eye…" and "Transformers Robots in Disguise" in promoting the movie.

49. Upon information and belief, Defendant **PEXLAND INTERNATIONAL (PICTURES) LTD** (**"PEX"**) is a foreign corporation organized under the laws of Hong Kong with its principal place of business at 902-3, 9/F Wai Wah Commerce Centre, 6 Wilmer Street, Sheung Wan, Hong Kong. **PEX** entered into an Agreement with **HOME ENTERTAINMENT** dated April 1, 2004 for a period of five years for the properties Transformers the Movie and Transformers the Series (television series) for rights of home videos, video CDs and DVDs in the country of China.

50. Upon information and belief, Defendant **PROXIMA FILMS** (**"PROXIMA"**) is a foreign corporation organized and existing under the laws of Bulgaria with its principal address of 39 Velcho Atanasov St., 1505 Sofia, Bulgaria. **PROXIMA** entered into an Agreement with **HOME ENTERTAINMENT** dated June 20, 2003, which is effective for the term September 1, 2003 through August 30, 2007 for the home video and DVD rights for the properties Visionaries the Movie and Transformers the Movie in the country of Bulgaria.

31

51. Upon information and belief, Defendant **RHINO ENTERTAINMENT CO.** ("RHINO") is a California corporation duly organized and existing under the laws of the State of California, with a principal place of business at 10635 Santa Monica Blvd., 2nd Floor, Los Angeles, California 90025, and at relevant times is doing business as **RHINO HOME VIDEO** and **RHINO HOME VIDEO CORE**. Upon information and belief, Defendant **RHINO** is a subsidiary of Defendant **WARNER MUSIC GROUP** or **WARNER STRATEGIC MARKETING, INC.,** which is involved in the licensing and distribution of Plaintiff's musical compositions including the Transformers theme, the Jem Show themes and songs and The Visionaries Theme. Defendant **RHINO** was a party to license agreements with **CHAD ENTERTAINMENT LLC** and **SUNBOW ENTERTAINMENT LLC**, which included intellectual properties containing Plaintiff's Compositions.

52. Upon information and belief, Defendant **RHINO HOME VIDEO CORE** is a California corporation duly organized and existing under the laws of the State of California, with a principal place of business at 10635 Santa Monica Blvd., 2nd Floor, Los Angeles, California 90025. Upon information and belief, **RHINO HOME VIDEO CORE** entered into a Licensee Agreement dated April 18, 2000 with licensor **SUNBOW ENTERTAINMENT LLC.** that included intellectual properties featuring Plaintiff's Compositions.

32

53. Upon information and belief, Defendant **ROUGE CITRON PRODUCTIONS, S.A.R.L.** ("ROUGE") is a foreign corporation organized under the laws of France with a principal place at Studio Le Fay, 78780, Maurecourt, France. **ROUGE** entered into an Agreement with **HOME ENTERTAINMENT** dated September 29, 2003 for the home video rights and DVD rights of the property Transformers The Movie and Transformers The Series (for television) for a period of five years commencing September 1, 2003 in the locales of France, French-speaking Africa, Belgium, and Luxembourg.

54. Upon information and belief, Defendant **SILVER MEDIA GROUP, S.A.** ("SILVER") is a foreign corporation organized under the laws of Greece with its principal place of business at 44 Dedalou Street, 17342 Saint Dimitrious, Athens, Greece. **SILVER**, as licensee, contracted with licensors **LOONLAND** and **SUNBOW ENTERTAINMENT** in an Agreement dated August 16, 2001 for the home video rights in Greece for five years of the properties Visionaries the Movie and Transformers the Movie.

55. Upon information and belief, Defendants **SONY/ATV SONGS LLC,** and **SONY/ATV TUNES, LLC** (collectively "SONY ATV") are foreign corporations organized under the laws of Sweden, and possibly under the same name under the laws of the State of New York, with a principal place of business at **SONY/ATV** Scandinavia,

Drottinggatan 77, 111 60 Stockholm, Sweden. Upon information and belief, **SONY/ATV SONGS** is a wholly-owned subsidiary of Defendant Sony Corporation. Defendant **SONY/ATV TUNES** and **SONY/ATV SONGS** entered into an Agreement dated March 11, 1996 with Defendant **SUNBOW ENTERTAINMENT**, now known as Defendant **CHAD ENTERTAINMENT**, **APOLLO'S CHARIOT MUSIC STARWILD MUSIC, WILDSTAR MUSIC, BANANA ALERT MUSIC** wherein **SONY/ATV TUNES** and **SONY/ATV SONGS** became the administrators and/or publishers of all compositions defined as "old compositions" and "acquired compositions." Upon information and belief, Plaintiff's Compositions were included within the subject compositions of this agreement.

56. Upon information and belief, Defendant **SONY BMG MUSIC ENTERTAINMENT, INC.** ("SONY BMG") is a Delaware corporation duly organized and existing under the laws of the United States of America, with a principal place of business at 550 Madison Avenue, New York, New York 10022. Upon information and belief, Defendant **SONY BMG** is a wholly-owned subsidiary of Sony Corporation. Upon information and belief, **SONY BMG** is an affiliated company of Defendant **VOLCANO** and Defendant **SONY LEGACY**.

57. Upon information and belief, Defendant **SONY LEGACY** is a Delaware corporation duly organized and existing under the laws of the United States of America, with a principal place of business

at 550 Madison Avenue, New York, New York 10022. Defendant **SONY LEGACY** was involved along with Defendant **VOLCANO** in the release of the Transformers the Movie: Original Motion Picture Soundtrack 20th Anniversary edition, which was released on May 29, 2007. Upon information and belief, Defendant **SONY LEGACY** is wholly-owned subsidiary of **SONY BMG**.

58.   Upon information and belief, Defendant **SONY PICTURES HOME ENTERTAINMENT, INC. /HOME ENTERTAINMENT ("SONY PICTURES")** is a Delaware corporation duly organized and existing under the laws of the State Of New York, with a principal place of business at 10202 West Washington Blvd., Culver City, California 90232.   Upon information and belief, Defendant **SONY PICTURES** is a wholly-owned subsidiary of Sony Corporation. Upon information and belief, in 2006  **SONY  PICTURES**  released  the  1986  animated  feature "Transformers the Movie 20th Anniversary Special Edition DVD and CD Soundtrack," and is to release the entire Jem television series, on DVD "home video."   Plaintiff has not been paid her 50% writer's share from Defendant **SONY/ATV**, the music publishing administrator, from any of its activities in exploiting the competition for the mutual benefit of the parties.

59.   Upon information and belief, Defendant **SONY WONDER, INC.** ("SONY WONDER") is a Delaware corporation, duly organized and

35

existing under the laws of the State of Delaware, with a principal place of business at Sony Plaza, 550 Madison Avenue, New York, New York 10022.  Upon information and belief, Defendant **SONY WONDER** is a wholly-owned subsidiary of Sony Corporation. Upon information and belief Defendant **SONY WONDER** owned and controlled Defendant **SUNBOW ENTERTAINMENT**.    In the year 2000, Defendant **TV LOONLAND** acquired the television production and distribution business for Defendant **SONY WONDER** which purported to include intellectual properties and rights for Plaintiff's compositions.

60.  Upon    information    and    belief,    Defendant    **SUNBOW ENTERTAINMENT, LLC** ("SUNBOW ENTERTAINMENT") is or was, at relevant times, a Delaware corporation, duly organized and existing under the laws of the State of Delaware.  At relevant times, both **SUNBOW ENTERTAINMENT** and Defendant **SUNBOW PRODUCTIONS, INC.** ("SUNBOW PRODUCTIONS"), had principal places of business at 826 Broadway, 9th Floor, New York, New York 10003, and at relevant times 100 Fifth Avenue, New York, New York 10011. Upon information and belief, **SUNBOW ENTERTAINMENT** was founded by defendant **TV LOONLAND** and is or was at relevant times known as **CHAD ENTERTAINMENT**. Defendant  **SUNBOW  ENTERTAINMENT**,  now  known  as  Defendant  **CHAD ENTERTAINMENT**, entered into an Agreement dated March 11, 1996 with Defendants **APOLLO'S CHARIOT MUSIC, STARWILD MUSIC, WILDSTAR MUSIC, BANANA ALERT MUSIC, SONY/ATV TUNES** and **SONY/ATV SONGS** wherein

36

SONY/ATV TUNES and SONY/ATV SONGS became the administrators and/or publishers of all compositions defined as "old compositions" and "acquired compositions." Upon information and belief, Plaintiff's Compositions were included within the subject compositions of this agreement. Upon information and belief, licensor SUNBOW ENTERTAINMENT entered into Licensing Agreements with licensees Defendants MEL and RHINO regarding programs featuring Plaintiff's Compositions.

61. Upon information and belief, Defendant SUNBOW PRODUCTIONS is or was, at relevant times, a New York corporation that at relevant times had principal places of business at 826 Broadway, 9th Floor, New York, New York 10003 and 100 Fifth Avenue, New York, New York 10011. SUNBOW PRODUCTIONS has served as licensor and producer in various License Agreements granting licensing and distribution rights of works featuring Plaintiff's Compositions. SUNBOW PRODUCTIONS controlled the publishing and affected the registration of the compositions with the performing rights societies, including BMI. As a result, SUNBOW PRODUCTIONS directly and through its affiliates (such as publishing subsidiaries Defendants STARWILD MUSIC, INC., WILDSTAR MUSIC, INC., APOLLO'S CHARIOT MUSIC, and BANANA ALERT MUSIC) and their respective assignees have engaged in worldwide licensing and exploitation of intellectual properties containing Plaintiff's

37

musical compositions. **SUNBOW PRODUCTIONS** was a signatory of the October 21, 1988 Standard Terms and Conditions with Milton Bradley International, Inc., Defendant **HASBRO**, Defendant **STARWILD**, and Defendant **WILDSTAR**.

62. Upon information and belief, Defendant **STARWILD MUSIC, INC.** ("STARWILD") is a domestic corporation, duly organized and existing under the laws of the State of New York, with a principal place of business at 100 Fifth Avenue, New York, New York 10011. Upon information and belief, Defendant **STARWILD** is an affiliated corporation of **SUNBOW PRODUCTIONS**. As a **SUNBOW** publishing subsidiary, **STARWILD** was involved in the exploitation of Plaintiff's Compositions and was a signatory of the October 21, 1988 Standard Terms and Conditions with Milton Bradley International, Inc., Defendant **HASBRO,** Defendant **SUNBOW PRODUCTIONS**, and Defendant **WILDSTAR**. Defendant **STARWILD** entered into an Agreement dated March 11, 1996 with **SUNBOW ENTERTAINMENT**, now known as Defendant **CHAD ENTERTAINMENT, APOLLO'S CHARIOT MUSIC, WILDSTAR MUSIC, BANANA ALERT MUSIC, SONY/ATV TUNES** and **SONY/ATV SONGS** wherein **SONY/ATV TUNES** and **SONY/ATV SONGS** became the administrators and/or publishers of all compositions defined as "old compositions" and "acquired compositions." Upon information and belief, Plaintiff's Compositions were included within the subject compositions of this agreement.

63.  Upon information and belief, Defendant **TALENT PARTNERS,**
**INC.** [ASCAP] and **ROYALTY REPORTING SERVICES** [BMI] ("TP") is a Music
Publishing  Administrator  and  an  Illinois  corporation  duly
organized and existing under the laws of the State of Illinois,
with a principal place of business at 541 North Fairbanks Court,
Suite 2800, Chicago, IL 60611, and at relevant times at 101 South
First Street, Suite 302, Burbank, CA 91502, and at relevant times
115 West 18th Street, 5th Floor, New York New York 10011. Upon
information and belief, Defendant TP was responsible for filing
cue sheets with **BMI** and **ASCAP** which accurately reflected the names
of composers who were to receive credit and payment for the theme
music used in Defendant **CARTOON NETWORK** productions and broadcasts
of the Transformers [newly-produced] television shows, "Armada,"
"Energon" and "Cybertron," which use Plaintiff's Transformers main
theme as their opening theme. To date, no credits whatsoever have
been given to Plaintiff, the actual composer. This omission has
impacted the Plaintiff's BMI catalogue payments worldwide and has
become the basis for excluding her from any payment of music
publishing royalties for subsequent DVD home video releases of
these television programs in collector's editions.

64.  Upon information and belief, Defendant **TRANS ENTERTEL**
**TELECOMMUNICATIONS, LTD** ("TRANS")  is  a  foreign  corporation

organized and existing under the laws of Hong Kong with its principal place of business at 803 Chinachem, Leighton Plaza, 29 Leighton Road, Causeway Bay, Hong Kong. **TRANS** entered into an Agreement dated March 7, 2003 with **HOME ENTERTAINMENT** for the rights of home video, video CD, and DVD rights in Singapore for the properties of Transformers the Series and Transformers the Movie for a term of three years.

65. Upon information and belief, Defendant **TV LOONLAND AG** ("**LOONLAND**") is a foreign corporation organized under the laws of Germany, registered in the Commercial Register of the Local Court of Munich with registered number HRB 129612, having a principal place of business at Munchener Strasse 16, 85774 Unterfohring-Munchen, Germany. **LOONLAND** also has another international location where Defendant **LOONLAND UK** is located at Royalty House, 72-74 Dean Street, London, W1V68E, United Kingdom. Upon information and belief, **LOONLAND** has a domestic place of business located at 100 Fifth Avenue, 3rd Floor, New York, New York 10011. **LOONLAND** is currently the parent of numerous Sunbow entities including the UK-based **METRODOME GROUP PLC. LOONLAND**, as licensor with **SUNBOW PRODUCTIONS**, entered into a Licensing Agreement dated December 21, 2000 with Defendant **SONY MUSIC ENTERTAINMENT** and was the sole licensor in a Licensing Agreement dated December 5, 2002 with Defendant **UNION FILMS GROUP**.

40

66. Upon information and belief, Defendant **TV LOONLAND HOME ENTERTAINMENT, LTD** ("**HOME ENTERTAINMENT**") is a foreign corporation organized under the laws of the United Kingdom, with a principal place of business at Royalty House, 72-74 Dean Street, London, W1V68E, United Kingdom.

67. Upon information and belief, Defendant **UNICORN TV DISTRIBUTORS LTD.** ("**UNICORN**") is a foreign corporation organized under the laws of Hong Kong, with a principal place of business at 40th Floor, 89 Queensway, Hong Kong. Licensee **UNICORN**, as distributor, entered into an International Video Recording Distribution Agreement, dated March 1, 1991, with Licensor Defendant **SUNBOW PRODUCTIONS, INC.,** as licensor. The **SUNBOW – UNICORN** Video Recording Distribution Agreement related to TV programs containing music that Plaintiff composed including Transformers and Visionaries.

68. Upon information and belief, Licensee **UNION FILMS GROUPS** ("**UFG**") is a foreign corporation organized under the laws of France, with a principal place of business at 94 Rue Lauriston, Paris, France 75016. **UFG**, as licensee, entered into a License Agreement dated December 5, 2002 with Defendant **LOONLAND**, as licensor. The **UFG – LOONLAND** license runs for seven years from

December 15, 2002 to December 14, 2009 and covers Plaintiff's composition Transformers and provides for royalty fees, including an upfront royalty fee with continued royalties.

69.  Upon information and belief, Licensee **VIDART LIMITADA** ("**VL**") is a foreign corporation organized under the laws of Chile, with a principal place of business at Matias Cousino 82, Oficina 404-405, Santiago, Chile.  **VL**, as representative, entered into a Television Representative Agreement dated June 1, 1990 with Defendant **HASBRO INTERNATIONAL, INC.**, as licensor, and Defendant **SUNBOW PRODUCTIONS, INC.**, as producer.  The **VIDART – HASBRO** Agreement relates to videos licensed in connection with Transformers and covers the territory of Chile.

70.  Upon information and belief, Defendant **VOLCANO RECORDS** ("**VOLCANO**") is a Delaware corporation duly organized and existing under the laws of the United States of America, with a principal place of business at 550 Madison Avenue, New York, New York 10022. Upon information and belief, Defendant **VOLCANO** is the record label that that acquired and maintained the catalogue of CBS/SCOTTI BROS. RECORDS, the record label that released the original Transformers the Movie Soundtrack in 1986. Upon information and belief, Defendant **VOLCANO** was involved in the release of the Transformers the Movie: Original Motion Picture Soundtrack 20th

Anniversary edition, which was released on May 29, 2007, along with Defendant **SONY LEGACY**. Upon information and belief, Defendant **VOLCANO** is a part of the Zomba Label Group and a wholly-owned subsidiary of **SONY BMG**. No mechanical royalties have ever been paid to plaintiff for her Transformers Theme from audio CD's and DVD home videos for these releases.

71. Upon information and belief, Defendant **WARNER MUSIC GROUP CORP.** ("WMG") is a Delaware corporation organized under the laws of the State of Delaware, with a principal place of business at 3400 West Olive Avenue, Burbank, CA 91505-4614. Upon information and belief, Defendant **WMG** is an affiliated company of **RHINO ENTERTAINMENT CO.** Upon information and belief Defendant **RHINO ENTERTAINMENT CO.** was developed to promote Defendant **WMG's** catalog and artists in 1998. Upon information and belief, Defendant **WMG** and/or its affiliated companies are involved in the production and distribution of the soundtrack of the upcoming Transformers movie, featuring musical compositions by the Plaintiff.

72. Upon information and belief, Defendant **WARNER STRATEGIC MARKETING** ("WSM") is a Delaware corporation organized under the laws of the State of Delaware, with a principal place of business at 3400 West Olive Avenue, Burbank, California 91505-4614. Upon

information and belief, Defendant **WSM** is an affiliated company of **RHINO ENTERTAINMENT CO.**

73.  Upon information and belief, Defendant **WILDSTAR MUSIC, INC.** ("WILDSTAR") is a New York corporation organized and existing under the laws of the State of New York, with a principal place of business at 100 Fifth Avenue, New York, New York 10011.  Upon information and belief, Defendant **WILDSTAR** is an affiliated corporation of Sunbow. Defendant **WILDSTAR** entered into an Agreement dated March 11, 1996 with **SUNBOW ENTERTAINMENT**, now known as Defendant **CHAD ENTERTAINMENT, APOLLO'S CHARIOT MUSIC, STARWILD MUSIC, BANANA ALERT MUSIC, SONY/ATV TUNES** and **SONY/ATV SONGS** wherein **SONY/ATV TUNES** and **SONY/ATV SONGS** became the administrators and/or publishers of all compositions defined as "old compositions" and "acquired compositions." Upon information and belief, Plaintiff's Compositions were included within the subject compositions of this agreement.

74.  Each of the Defendants identified supra entered into license and/or distribution agreements which involved one or more of Plaintiff's Compositions.

44

75. Defendants **JOHN AND JANE DOE 1-20** are parties who engaged in wrongful conduct and/or withheld license and other royalty fees due Plaintiff.

76. Defendants **ABC CORPORATIONS 1-20** are parties who engaged in wrongful conduct and/or withheld license and other royalty fees due Plaintiff.

77. Pursuant to the terms of the license and/or distribution agreements that each of the Defendants executed, each was contractually obligated to account for and pay all applicable royalties and/or license fees to the authors and composers. Plaintiff was a third-party beneficiary of each and every such agreement involving Plaintiff's Compositions.

78. Each of the Defendants failed to account and to remit payment to Plaintiff in connection with their distribution and/or licensing of the animated television productions featuring Plaintiff's musical compositions.

## P. FIRST COUNT AGAINST THE SUNBOW-LOONLAND-SONY DEFENDANTS BREACH OF CONTRACT

79. Plaintiff repeats and re-alleges each and every allegation contained above as if set forth at length herein.

80. This Count is against Defendants **SUNBOW PRODUCTIONS, INC.** its affiliated Sunbow entities **SUNBOW ENTERTAINMENT LLC; STARWILD MUSIC, INC.** and **WILDSTAR MUSIC, INC.**, publishing entities owned and controlled by Sunbow and associated with the respective performing rights societies BMI and ASCAP; **TV LOONLAND AG** which acquired both the rights and obligations of **SUNBOW** and **SONY** which acquired the rights and obligations of **TV LOONLAND AG.**

81. Plaintiff and Sunbow were parties to an Agreement dated June 1, 1985 regarding the composition of feature songs for a TV Production the Jem Show produced by **SUNBOW**. Plaintiff composed the Jem Girls [Jem show TV closing] theme; The Jem TV show feature songs score [154 songs] and the Jem Show Main Themes-opening and closing. At the time suit was filed in the State Supreme Court, Plaintiff did not have in her possession copies or originals of any written agreements with **SUNBOW**. The written Jem Agreement dated June 1, 1985 produced by **SUNBOW** in mid-trial in 2004 concerns only the feature songs and is the only relevant written agreement produced by Sunbow.

82. The Jem Agreement has been accepted by Sunbow as embodying the arrangement between the parties.

83.  The New York Supreme Court has also accepted the Jem Agreement as controlling as to the rights and obligations of the parties as to all Plaintiff's Compositions at issue between the parties.[15]


84.  The Jem Agreement in paragraph 6 therein contains the following provisions among others relating to plaintiff's continuing interests in music publishing:

> "(a)  With respect to Company's exercise of music publishing rights in the Music (as defined above) (but excluding use in connection with Premium Cassettes as defined in Paragraph 2(a) for which Contractor shall not receive any further compensation), uses of the Music combined with lyrics (but, if the Music with lyrics or any form thereof is the composition of Writer and other composers and/or lyricists, then the royalties hereunder shall be shared equally by all such lyricists and/or composers):
>
> (I)  sums equal to fifty (50%) percent of the net proceeds (as defined below) received by Company from third parties for licenses for the manufacture or commercial phonograph records and/or licenses of theatrical motion picture synchronization rights (as defined below);
>
> ****
>
> (vi) with respect to other uses of the Music hereunder, sums equal to the amount resulting form dividing fifty (50%) percent of the net proceeds received by Company from third parties therefore by the total number of copyrighted musical compositions and/or literary materials contained or included in such uses.

---

[15] . See Exhibit B, Court Decision of March 9, 2007 page 4 referring to Trial Exhibit M, which is the Jem Agreement dated June 1, 1985.

85.   The  Agreement  allowed  **SUNBOW**  to  exploit  Plaintiff's
Compositions for the mutual benefit of the parties consistent with
the above considerations and conditions.


86.   Sunbow through licensing and distribution agreements of
various  shows  and  other  media  containing  plaintiff's  music  set
forth herein in fact has exploited the Plaintiff's Compositions
reaping many millions of dollars in revenues a significant portion
of which is attributable to the Plaintiff's Compositions and her
music as distinct from other visual properties reflected in the
various licenses. **SUNBOW** has never fully and accurately and timely
accounted to plaintiff or to her former company Kinder Bryant for
the publishing revenues earned by it.


87.   On the eve of trial in 2004 Sunbow sent Plaintiff a
small payment of $4,792.58 with the Memo portion of the check
indicating it represented "Publishing Royalties".   This check was
the first sent by **SUNBOW** in the years between 1992 and 2004 and is
significant only as an admission that Sunbow is obligated to pay
plaintiff publishing royalties.   A copy of the check is marked as

'Sun 0507'' which was produced with a host of agreements and documents belatedly in 2004 by Sunbow's lawyers.[16]

## Q. SECOND COUNT AGAINST ALL DEFENDANTS BREACH OF LICENSE AND/OR DISTRIBUTION AGREEMENTS

88. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs the paragraphs above as if set forth at length herein.

89. Defendants on This Count and relevant agreements and/or relationships as referenced below:[17]

| Defendant | Relevant Agreement(s) and/or Relationship(s) |
|---|---|
| A. AB DROITS AUDIOVISUELS | Agreement between Licensor **HOME ENTERTAINMENT** and Licensee **AB DROITS AUDIOVISUELS**, date unknown, for a period of seven years for the rights of all television and video DVDs for the properties Visionaries. |
| B. AB PRODUCTIONS | Television License Agreement dated September 1, 1990 between licensor **HASBRO INTERNATIONAL, INC.**, producer **SUNBOW PRODUCTIONS, INC.** and licensee **AB PRODUCTIONS** for telecast of GI Joe the Movie, My Little Pony the Movie and the Transformers |
| C. APOLLO'S CHARIOT MUSIC | Agreement dated March 11, 1996 between **SUNBOW ENTERTAINMENT, LLC, WILDSTAR MUSIC, INC.** (ASCAP), |

---

[16] See http://litigation.monaghanlawyers.com.
[17] All Relevant Agreements are accessible at http://litigation.monaghanlawyers.com

| Defendant | Relevant Agreement(s) and/or Relationship(s) |
|---|---|
| | STARWILD MUSIC, INC. (BMI), APOLLO'S CHARIOT MUSIC (ASCAP), and BANANA ALERT MUSIC, INC. (BMI) Attention: SONY/ATV TUNES LLC (ASCAP) and SONY/ATV SONGS LLC (BMI) re: all compositions defined as "old compositions" and "acquired compositions." |
| D. BANANA ALERT MUSIC, INC. | Agreement dated March 11, 1996 between SUNBOW ENTERTAINMENT, LLC, WILDSTAR MUSIC, INC. (ASCAP), STARWILD MUSIC, INC. (BMI), APOLLO'S CHARIOT MUSIC (ASCAP), and BANANA ALERT MUSIC, INC. (BMI) Attention: SONY/ATV TUNES LLC (ASCAP) and SONY/ATV SONGS LLC (BMI) re: all compositions defined as "old compositions" and "acquired compositions." |
| E. BEST ENTERTAINMENT | Agreement dated December 18, 2003 between HOME ENTERTAINMENT and licensee BEST ENTERTAINMENT for a seven year term for rights to home videos and DVDs of the properties Transformers The Movie in the countries of Germany, Austria, and Switzerland. |
| F. BLOKKER B.V. | International Video Recording Distribution Agreement dated October 1, 1993 with licensor HASBRO INTERNATIONAL, INC., producer SUNBOW PRODUCTIONS, INC. and distributor BLOKKER B.V. for Transformers, Jem, and Great Space Coaster |
| G. BRIDGE RIGHTS, B.V. | Agreement between licensor LOONLAND dated September 12, 2002 BRIDGE as distributor of Transformers: Generation 2 in the locales of Holland, Belgium, and Luxembourg |

|          Defendant          | Relevant Agreement(s) and/or Relationship(s) |
|-----------------------------|----------------------------------------------|
| H. | CARTOON NETWORK INC. | Defendant **CARTOON NETWORK INC.** has used the Plaintiff's Transformer's main theme music in television series which it has broadcast, produced, and licensed for distribution in the home video market. |
| I. | **CENICIENTA VIDEO, S.A.** | International Video Recording Distribution Agreement dated September 1, 1989 between licensor **HASBRO INTERNATIONAL, INC.**, producer **SUNBOW PRODUCTIONS, INC.**, and distributor **CENICIENTA VIDEO, S.A.** for Transformers |
| J. | **CHAD ENTERTAINMENT, LLC.** | Defendant **CHAD ENTERTAINMENT, LLC.** is the successor to defendant **SUNBOW ENTERTAINMENT, LLC.** |
| K. | **COLUMBIA TRISTAR HOME VIDEO, INC.** | Defendant **COLUMBIA TRISTAR HOME VIDEO, INC.** operates a video club and, among other things, manufactures and/or distributes videos featuring Plaintiff's compositions through a license and/or other agreement with Defendants **SUNBOW PRODUCTIONS** and/or **WARNER STRATEGIC MARKETING** |
| L. | **DREAMWORKS** | Upon information and belief, **DREAMWORKS** is producing and/or distributing a live action film entitled "Transformers." **DREAMWORKS** has utilized Plaintiff's Transformer's theme in promoting the movie and it is on the soundtrack. |
| M. | **FILMFACTORY, INC.** | International Video Recording Distribution Agreement dated May 21, 1997 between licensor **SUNBOW PRODUCTIONS, INC.** and distributor **FILMFACTORY** for Transformers and Jem |

| Defendant | Relevant Agreement(s) and/or Relationship(s) |
|---|---|
| N.   FLEX MEDIA ENTERTAINMENT | Agreement between licensee **FLEX** and licensor **HOME ENTERTAINMENT** dated December 10, 2003 for a duration of six and one half years commencing December 15, 2003 and ending June 10, 2010 for the rights to home videos, DVDs, and video CDs to the properties of Transformers and Visionaries in Germany, Switzerland, and Austria. |
| O.   HASBRO, INC. | Publishing Administration Agreement dated November 12, 1987 between **HASBRO, INC.** and **HASBRO INTERNATIONAL, INC.** (then known as MBI) and the Law Offices of William M. Dobishinksi for Jem, My Little Pony, and Transformers<br><br>Standard Terms and Conditions dated October 21, 1988 between **HASBRO, INC., MILTON BRADLEY INTERNATIONAL, INC., SUNBOW PRODUCTIONS, INC., STARWILD MUSIC, INC.,** and **WILDSTAR MUSIC, INC.** |
| P.   HASBRO INTERNATIONAL, INC. (formerly known as Milton Bradley, Inc.) HASBRO INTERNATIONAL, INC. | Publishing Administration Agreement dated November 12, 1987 between **HASBRO, INC.,** Milton Bradley International, Inc. and the Law Offices of William M. Dobishinksi Standard Terms and Conditions dated October 21, 1988 between **HASBRO, INC.,** Milton Bradley International, Inc., **SUNBOW PRODUCTIONS, INC., STARWILD MUSIC, INC.,** and **WILDSTAR MUSIC, INC.**<br><br>License Agreement dated April 1, 1989 Between licensor **HASBRO INTERNATIONAL, INC.** and distributor **INITIAL S.A.** |

|                        | Relevant Agreement(s) and/or |
| Defendant              | Relationship(s)              |

International Video Recording Distribution Agreement dated September 1, 1989 between licensor **HASBRO INTERNATIONAL, INC.**, producer **SUNBOW PRODUCTIONS, INC.**, and distributor **CENICIENTA VIDEO, S.A.** for Transformers

License Agreement dated June 1, 1990 between licensor **HASBRO INTERNATIONAL, INC.**, producer **SUNBOW PRODUCTIONS, INC.** and licensee distributor **VIDART LIMITADA**

Television License Agreement dated September 1, 1990 between licensor **HASBRO INTERNATIONAL, INC.**, producer **SUNBOW PRODUCTIONS, INC.** and licensee **AB PRODUCTIONS** for telecast of GI Joe the Movie, My Little Pony the Movie and the Transformers

Television License Agreement dated November 1, 1990 between licensor **HASBRO INTERNATIONAL, INC.**, producer **SUNBOW PRODUCTIONS, INC.** and licensee **AB PRODUCTIONS** for the telecast of GI Joe the Movie, My Little Pony the Movie and the Transformers

International Video Recording Distribution Agreement dated October 1, 1993 with licensor **HASBRO INTERNATIONAL, INC.**, producer **SUNBOW PRODUCTIONS, INC.** and distributor **BLOKKER B.V.** for Transformers, Jem, and Great Space Coaster

Q.   **INITIAL S.A.**     License Agreement dated April 1, 1989 between licensor **HASBRO INTERNATIONAL, INC.** and distributor **INITIAL S.A.** re: Jem

| Defendant | Relevant Agreement(s) and/or Relationship(s) |
|---|---|
| R. | LOONLAND UK LTD | Defendant **LOONLAND UK** is a wholly-owned subsidiary of Defendant **TV LOONLAND AG**. **LOONLAND UK** is an affiliated company of Defendant **METRODOME GROUP PLC**. |
| S. | MADMAN ENTERTAINMENT | Agreement between licensee **MADMAN** and licensor **HOME ENTERTAINMENT** dated May 1, 2003 for the property Transformers Original Series for home video and DVD rights in the countries of New Zealand and Australia |
| | | Agreement between licensee **MADMAN** and licensor **TV LOONLAND AG** dated February 26, 2002 with a term of four years and six months, **MADMAN** contracted for home video and DVD rights in Australia and New Zealand for the property Transformers The Movie |
| T. | MAVERICK ENTERTAINMENT LIMITED | License Agreement dated October 29, 1999 between licensor **SUNBOW ENTERTAINMENT, LLC.** and licensee **MAVERICK ENTERTAINMENT LIMITED** |
| U. | MEDIA SALES GROUP AND LICENSING | **MEDIA** entered into an Agreement with **HOME ENTERTAINMENT** dated June 10, 2003 for a six year term for the property Transformers. |
| V. | MEGA ENTERTAINMENT INC. | License Agreement between licensor **SUNBOW PRODUCTIONS, INC.** and distributor **MEGA ENTERTAINMENT INC.** dated September 1, 1991 |
| | | License Agreement dated March 15, 1994 between licensor **SUNBOW PRODUCTIONS, INC.** and distributor **MEGA ENTERTAINMENT INC.** |

| Defendant | Relevant Agreement(s) and/or Relationship(s) |
|---|---|
| W. | METRODOME GROUP PLC | Defendant **METRODOME GROUP PLC** is a wholly-owned subsidiary of Defendant **LOONLAND**. It is an audio/visual entertainment group that exploits the media rights it owns through **METRODOME** distribution. |
| X. | PARAMOUNT PICTURES, CORP. | Upon information and belief, Defendant **PARAMOUNT PICTURES CORP.** is involved in the distribution and production of the Transformers feature film due to be released July 4, 2007 featuring Plaintiff's compositions. |
| Y. | PEXLAND INTERNATIONAL | Agreement between **PEX** and **HOME ENTERTAINMENT** dated April 1, 2004 for a period of five years for the properties Transformers The Movie and Transformers The Series (television series) for rights of home videos, video CDs and DVDs in the country of China |
| Z. | PROXIMA FILMS | Agreement between **PROXIMA** and **HOME ENTERTAINMENT** dated June 20, 2003 for the home video and DVD rights for the properties Visionaries The Movie and Transformers The Movie in the country of Bulgaria |
| AA. | RHINO ENTERTAINMENT COMPANY | Exclusive License Agreement dated April 18, 2000 between licensee distributor **RHINO ENTERTAINMENT COMPANY** d/b/a **RHINO HOME VIDEO** and licensor **SUNBOW ENTERTAINMENT, LLC.** |
| BB. | RHINO HOME VIDEO | Exclusive License Agreement dated April 18, 2000 between licensor **SUNBOW ENTERTAINMENT, LLC.** and licensee distributor **RHINO ENTERTAINMENT COMPANY** d/b/a **RHINO HOME VIDEO** |

| Defendant | Relevant Agreement(s) and/or Relationship(s) |
|---|---|
| CC. ROUGE CITRON PRODUCTIONS | Agreement between **ROUGE** and Licensor **HOME ENTERTAINMENT** dated September 29, 2003 for the home video rights and DVD rights of the property Transformers The Movie and Transformers The Series (for television) for a period of five years commencing September 1, 2003 in the locales of France, French-speaking Africa, Belgium, and Luxembourg. |
| DD. SILVER MEDIA GROUP | Licensee Agreement between licensee **SILVER** and licensors **LOONLAND** and **SUNBOW ENTERTAINMENT** dated August 16, 2001 for the home video rights in Greece for five years of the properties Visionaries The Movie and Transformers The Movie |
| EE. SONY/ATV SONGS LLC [BMI] | Agreement dated March 11, 1996 between **SUNBOW ENTERTAINMENT, WILDSTAR MUSIC, INC.** (ASCAP), **STARWILD MUSIC, INC.** (BMI), **APOLLO'S CHARIOT MUSIC** (ASCAP), and **BANANA ALERT MUSIC, INC.** (BMI) Attention: **SONY/ATV TUNES LLC** (ASCAP) and **SONY/ATV SONGS LLC** (BMI) re: all compositions defined as "old compositions" and "acquired compositions." |
| FF. SONY/ATV TUNES LLC [ASCAP] | Agreement dated March 11, 1996 between **SUNBOW ENTERTAINMENT, LLC, WILDSTAR MUSIC, INC.** (ASCAP), **STARWILD MUSIC, INC.** (BMI), **APOLLO'S CHARIOT MUSIC** (ASCAP), and **BANANA ALERT MUSIC, INC.** (BMI) Attention: **SONY/ATV TUNES LLC** (ASCAP) and **SONY/ATV SONGS LLC** (BMI) re: all compositions defined as "old compositions" and "acquired compositions." |

| Defendant | Relevant Agreement(s) and/or Relationship(s) |
|---|---|
| GG. **SONY BMG MUSIC ENTERTAINMENT, INC.** | License Agreement dated December 21, 2000 between licensors **TV LOONLAND AG** and **SUNBOW PRODUCTIONS, INC.** and licensee distributor **SONY MUSIC ENTERTAINMENT, INC.**<br><br>**SONY BMG** is an affiliated company of Defendant **VOLCANO** and Defendant **SONY LEGACY**. |
| HH. **SONY LEGACY** | Defendant **SONY LEGACY** was involved along with Defendant **VOLCANO** in the release of the Transformers the Movie: Original Motion Picture Soundtrack 20th Anniversary edition, which was released on May 29, 2007. |
| II. **SONY PICTURES HOME ENTERTAINMENT INC.** | Defendant **SONY PICTURES HOME ENTERTAINMENT INC.** has not paid the required music publishing royalties to the Plaintiff following its release of the "Transformers the Movie 20th Anniversary Special Edition DVD and CD Soundtrack" and its pending release of the entire Jem television series. |
| JJ. **SONY WONDER** | Defendant **SONY WONDER** owned and controlled defendant **SUNBOW ENTERTAINMENT**. In the year 2000, the television production and distribution business of **SONY WONDER** was acquired by **TV LOONLAND**, which purported to include intellectual properties and rights for Plaintiff's compositions. |
| KK. **SUNBOW ENTERTAINMENT, LLC.** | Agreement dated March 11, 1996 between **SUNBOW ENTERTAINMENT, LLC. WILDSTAR MUSIC, INC.** (ASCAP), **STARWILD MUSIC, INC.** (BMI), **APOLLO'S CHARIOT MUSIC** (ASCAP), and **BANANA ALERT MUSIC, INC.** (BMI) Attention: **SONY/ATV TUNES LLC** (ASCAP) and |

57

<u>Defendant</u>                 <u>Relevant Agreement(s) and/or</u>
                               <u>Relationship(s)</u>

SONY/ATV SONGS LLC (BMI) re: all compositions defined as "old compositions" and "acquired compositions."

License Agreement dated October 29, 1999 between licensor **SUNBOW ENTERTAINMENT, LLC.** and licensee **MAVERICK ENTERTAINMENT LIMITED**

Exclusive License Agreement dated April 18, 2000 between licensor **SUNBOW ENTERTAINMENT, LLC.** and licensee distributor **RHINO ENTERTAINMENT COMPANY** d/b/a **RHINO HOME VIDEO**

Licensee Agreement between licensee **SILVER** and licensors **LOONLAND** and **SUNBOW ENTERTAINMENT** dated August 16, 2001 for the home video rights in Greece for five years of the properties Visionaries The Movie and Transformers The Movie

LL.   **SUNBOW PRODUCTIONS, INC.**

Standard Terms and Conditions dated October 21, 1988 between **HASBRO,** Milton Bradley International, Inc., **SUNBOW PRODUCTIONS, STARWILD,** and **WILDSTAR**

International Video Recording Distribution Agreement dated September 1, 1989 between licensor **HASBRO INTL,** producer **SUNBOW PRODUCTIONS,** and distributor **CENICIENTA VIDEO, S.A.** for Transformers

License Agreement dated June 1, 1990 between licensor **HASBRO INTL,** producer **SUNBOW PRODUCTIONS** and licensee distributor **VIDART LIMITADA**

| Defendant | Relevant Agreement(s) and/or Relationship(s) |
| --- | --- |
| | Television License Agreement dated September 1, 1990 between licensor **HASBRO INTERNATIONAL, INC.**, producer **SUNBOW PRODUCTIONS, INC.** and licensee **AB PRODUCTIONS** for telecast of GI Joe the Movie, My Little Pony the Movie and the Transformers |
| | Television License Agreement dated November 1, 1990 between licensor **HASBRO INTERNATIONAL, INC.**, producer **SUNBOW PRODUCTIONS, INC.** and licensee **AB PRODUCTIONS** for the telecast of GI Joe the Movie, My Little Pony the Movie and the Transformers |
| | License Agreement dated March 1, 1991 between licensor **SUNBOW PRODUCTIONS** and distributor **UNICORN TV DISTRIBUTORS LTD.** |
| | License Agreement dated September 1, 1991 between licensor **SUNBOW PRODUCTIONS** and distributor **MEGA ENTERTAINMENT INTERNATIONAL, INC.** |
| | International Video Recording Distribution Agreement dated October 1, 1993 with licensor **HASBRO INTERNATIONAL, INC.**, producer **SUNBOW PRODUCTIONS, INC.** and distributor **BLOKKER B.V.** for Transformers, Jem, and Great Space Coaster |
| | License Agreement dated March 15, 1994 between licensor **SUNBOW PRODUCTIONS, INC.** and distributor **MEGA ENTERTAINMENT INTERNATIONAL, INC.** |
| | International Video Recording Distribution Agreement dated May 21, 1997 between licensor **SUNBOW PRODUCTIONS, INC.** and distributor |

|  Defendant | Relevant Agreement(s) and/or Relationship(s) |
|---|---|

FILMFACTORY for Transformers and Jem

License Agreement dated December 21, 2000 between licensors **TV LOONLAND AG** and **SUNBOW PRODUCTIONS, INC.** and licensee distributor **SONY MUSIC ENTERTAINMENT, INC.**

MM.  STARWILD MUSIC, INC.

Standard Terms and Conditions dated October 21, 1988 between **HASBRO, INC.**, **MILTON BRADLEY INTERNATIONAL, INC.**, **SUNBOW PRODUCTIONS, INC.**, **STARWILD MUSIC, INC.**, and **WILDSTAR MUSIC, INC.**

Agreement dated March 11, 1996 between **SUNBOW ENTERTAINMENT, LLC.**, **WILDSTAR MUSIC, INC.** (ASCAP), **STARWILD MUSIC, INC.** (BMI), **APOLLO CHARIOT MUSIC** (ASCAP), and **BANANA ALERT MUSIC, INC.** (BMI) Attention: **SONY/ATV TUNES LLC** (ASCAP) and **SONY/ATV SONGS LLC** (BMI)

NN.  TALENT PARTNERS, INC.

Defendant **TALENT PARTNERS, INC.** is a music publishing administrator that failed in its responsibility to file cue sheets with BMI and ASCAP which accurately reflected the names of the composers of the theme music used in defendant **CARTOON NETWORK**'s Transformers television shows. Plaintiff has not received any royalty payments for the use of her compositions in these television shows, indicating the inaccuracy of the cue sheets that Defendant **TALENT PARTNERS, INC** filed.

OO.  TRANS ENTERTEL TELECOMMUNICA-TIONS

License Agreement dated March 7, 2003 between licensee **TRANS** and licensor **HOME ENTERTAINMENT** for the rights of home video, video CD, and DVD rights in Singapore for the properties of

|                    Defendant | Relevant Agreement(s) and/or Relationship(s) |
|------------------------------|----------------------------------------------|
|                              | Transformers The Series and Transformers The Movie for a term of three years |
| PP.        TV LOONLAND AG    | License Agreement dated December 21, 2000 between licensors **TV LOONLAND AG** and **SUNBOW PRODUCTIONS, INC.** and licensee **SONY MUSIC ENTERTAINMENT, INC.** |
|                              | License Agreement dated December 5, 2002 between licensor **TV LOONLAND AG** and licensee **UNION FILMS GROUP** |
|                              | Agreement between licensor **LOONLAND** dated September 12, 2002 **BRIDGE** as distributor of Transformers: Generation 2 in the locales of Holland, Belgium, and Luxembourg |
|                              | Licensee Agreement between licensee **SILVER** and licensors **LOONLAND** and **SUNBOW ENTERTAINMENT** dated August 16, 2001 for the home video rights in Greece for five years of the properties Visionaries The Movie and Transformers The Movie |
|                              | Agreement between licensee **MADMAN** and licensor **TV LOONLAND AG** dated February 26, 2002 with a term of four years and six months, **MADMAN** contracted for home video and DVD rights in Australia and New Zealand for the property Transformers The Movie |
| QQ.        TV LOONLAND HOME ENTERTAINMENT | Agreement between Licensor **HOME ENTERTAINMENT** and Licensee **AB DROITS AUDIOVISUELS**, date unknown, for a period of seven years for the rights of all television and video DVDs for the properties Visionaries. |

<u>Defendant</u>

<u>Relevant Agreement(s) and/or
Relationship(s)</u>

Agreement dated December 18, 2003 between **HOME ENTERTAINMENT** and licensee **BEST ENTERTAINMENT** for a seven year term for rights to home videos and DVDs of the properties Transformers The Movie in the countries of Germany, Austria, and Switzerland.

Agreement between licensee **FLEX** and licensor **HOME ENTERTAINMENT** dated December 10, 2003 for a duration of six and one half years commencing December 15, 2003 and ending June 10, 2010 for the rights to home videos, DVDs, and video CDs to the properties of Transformers and Visionaries in Germany, Switzerland, and Austria.

**MEDIA** entered into an Agreement with **HOME ENTERTAINMENT** dated June 10, 2003 for a six year term for the property Transformers.

Agreement between **PEX** and **HOME ENTERTAINMENT** dated April 1, 2004 for a period of five years for the properties Transformers The Movie and Transformers The Series (television series) for rights of home videos, video CDs and DVDs in the country of China

License Agreement dated March 7, 2003 between licensee **TRANS** and licensor **HOME ENTERTAINMENT** for the rights of home video, video CD, and DVD rights in Singapore for the properties of Transformers The Series and Transformers The Movie for a term of three years

| Defendant | Relevant Agreement(s) and/or Relationship(s) |
|---|---|
| | Agreement between **ROUGE** and Licensor **HOME ENTERTAINMENT** dated September 29, 2003 for the home video rights and DVD rights of the property Transformers The Movie and Transformers The Series (for television) for a period of five years commencing September 1, 2003 in the locales of France, French-speaking Africa, Belgium, and Luxembourg.

Agreement between licensee **MADMAN** and licensor **HOME ENTERTAINMENT** dated May 1, 2003 for the property Transformers Original Series for home video and DVD rights in the countries of New Zealand and Australia |
| RR.  **UNICORN TV DISTRIBUTORS LTD.** | License Agreement dated March 1, 1991 between licensor **SUNBOW PRODUCTIONS, INC.** and distributor **UNICORN TV DISTRIBUTORS LTD.** |
| SS.  **UNION FILMS GROUP** | License Agreement dated December 5, 2002 between licensor **TV LOONLAND AG** and licensee **UNION FILMS GROUP** |
| TT.  **VIDART LIMITADA** | License Agreement dated June 1, 1990 between licensor **HASBRO INTERNATIONAL, INC.** producer **SUNBOW PRODUCTIONS, INC.** and licensee distributor **VIDART LIMITADA** |
| UU.  **VOLCANO RECORDS** | **VOLCANO** is the record label that released the original Transformers the Movie Soundtrack in 1986. **VOLCANO** was involved in the release of the Transformers the Movie: Original Motion Picture Soundtrack 20th Anniversary edition, which was released on May 29, 2007, along with Defendant **SONY LEGACY**. |

| Defendant | Relevant Agreement(s) and/or Relationship(s) |
|---|---|
| VV.   **WARNER MUSIC GROUP** | Defendant **WARNER MUSIC GROUP** is an affiliated company of **RHINO ENTERTAINMENT CO.**, which was developed in 1998 to promote Defendant **WARNER MUSIC GROUP**'s catalog and artists. Upon information and belief, Defendant **WMG** and/or its affiliated companies are involved in the production and distribution of the soundtrack of the upcoming Transformers movie, featuring musical compositions by the Plaintiff. |
| WW.   **WARNER STRATEGIC MARKETING** | Defendant **WSM** is an affiliated company of **RHINO ENTERTAINMENT CO.** |
| XX.   **WILDSTAR MUSIC, INC.** | Standard Terms and Conditions dated October 21, 1988 between **HASBRO, INC.**, **MILTON BRADLEY INTERNATIONAL, INC.**, **SUNBOW PRODUCTIONS, INC.**, **STARWILD MUSIC, INC.**, and **WILDSTAR MUSIC, INC.**<br><br>Agreement dated March 11, 1996 between **SUNBOW ENTERTAINMENT LLC.**, **WILDSTAR MUSIC, INC.** (ASCAP), **STARWILD MUSIC, INC.** (BMI), **APOLLO'S CHARIOT MUSIC** (ASCAP), and **BANANA ALERT MUSIC, INC.** (BMI) Attention: **SONY/ATV TUNES LLC** (ASCAP) and **SONY/ATV SONGS LLC** (BMI) re: all compositions defined as "old compositions" and "acquired compositions." |

90.  All Defendants listed above entered into distribution and/or license agreements or other agreements which involved the licensing and distribution of animated television and Feature Film productions for distribution as videos and DVDs which contained

one or more of the Plaintiff's Compositions including Transformers TV show episodes, the Transformers 1986 Feature Film, the Jem TV Show episodes, Visionaries and Great Space Coaster TV Show episodes.

91.    Pursuant   to   these   agreements,   Defendants   were contractually   obligated   either   directly   or   indirectly   by assumption   of   the   obligation   to   and   account   and   to   pay   all applicable   royalties   and/or   license   fees   to   Plaintiff   as   the composer of music contained in these animated television and movie productions.

92.    None   of   the   Defendants   has   properly   accounted   for   and remitted the required payments to Plaintiff.

93.    As   a   direct   result   of   Defendants'   breaches   of   their obligations under the international licensing and/or distribution agreements or other agreements set forth above, Plaintiff has been damaged   in   an   amount   to   be   determined   at   trial   after   full discovery and a proper accounting.

## R. THIRD COUNT AGAINST ALL DEFENDANTS – JUDICIAL ACCOUNTING SPECIAL CIRCUMSTANACES – FIDUCIARY DUTIES

94. Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above as if set forth at length herein.

95. Defendants entered into numerous international licensing and/or distribution agreements, pursuant to which Plaintiff was a third-party beneficiary entitled to all applicable royalties and license fees with respect to Defendants' use of musical compositions which Plaintiff composed.

96. Defendants utilized Plaintiff's musical compositions in the animated television and theatrically-released film productions that were the subject of the international licensing and/or distribution agreements.

97. Each of the Defendants on this Count has failed to remit monies due and payable as royalty and license fees for use of Plaintiff's compositions, as required under the international licensing and/or distribution agreements or other agreements.

## SPECIAL CIRCUMSTANCES – JOINT VENTURE

98. As set forth above, the transfer of Plaintiff's copyrights to Defendant SUNBOW and/or an affiliate of SUNBOW was accomplished under unique and special circumstances wherein Plaintiff relinquished complete control to SUNBOW in consideration of SUNBOW's expressed and implied promise to do nothing to frustrate Plaintiff's benefits under the respective agreements with SUNBOW. SUNBOW, in receiving complete control of the publishing rights subject to Plaintiff's reservations, was able to exercise complete dominion and control over the copyrights, licensing and entering into distribution agreements which were in the sole discretion and control of SUNBOW and its affiliates, designees, successors, or licensees.

99. Under these circumstances the parties relationship i.e. Plaintiff and originally SUNBOW and SUNBOW's affiliates was in the nature of a joint-venture with Plaintiff providing her copyrights and control thereof in exchange for and in consideration and in reliance upon the Defendant's promise to exploit the copyrights, license and distribute same, for the mutual benefit of the parties.

100. As a result of the foregoing and the complete relinquishment of control in favor of SUNBOW, SUNBOW (and its successors and assignees) had imposed upon it an obligation to act truthfully and account fairly to Plaintiff and to ensure that third parties with whom it dealt did likewise.

101. Contrary to the obligations inherent in the joint-venture relationship, SUNBOW acted solely and exclusively for its own benefit licensing properties which contain Plaintiff's music at will and reaping millions of dollars in compensation for itself without properly accounting to or paying Plaintiff.

102. Further, the fiduciary obligations inherent in the joint-venture relationship, an obligation to account, were either expressly or by operation of law imposed upon the licensees and successors in interests to SUNBOW.

103. Each of the relevant arguments as well as custom and practice in the entertainment industry requires a periodic accounting and payment relative to the intellectual properties under license. To this day, Plaintiff has not received full, complete and accurate accounting from any Defendant, for the compensation to which she is entitled for the use of her compositions.

## THE FUTILITY OF CONTRACT ACCOUNTING

104.  Although Plaintiff was entitled to an accounting from each of the Defendants who utilized her music, no such accountings have ever been rendered notwithstanding that certain of the agreements between the parties identified previously do require a contractual accounting. A demand for a contractual accounting at this stage after many years of failure to accurately report and account and pay would be futile under these circumstances and absent a judicial accounting and an Order from a Court directing the Defendants to properly account, the Plaintiff is without knowledge as to the actual damages she has sustained and the moneys to which she is entitled.

105. As a result of the foregoing, there is now due and owing to the Plaintiff **ANNE BRYANT** from the Defendants, sums of money, the exact amount of which cannot be determined without a judicial accounting, for which demand is hereby made. Plaintiff lacks an adequately remedy at law.

## S. FOURTH COUNT AGAINST ALL DEFENDANTS BREACHES OF FIDUCIARY DUTY

106. Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above as if set forth at

length herein. Plaintiff specifically incorporates and re-alleges the language concerning the special circumstances under which her copyrights were conveyed to the SUNBOW Defendants.

107. Pursuant to the foregoing, Defendants had fiduciary obligations to notify Plaintiff of their uses of her musical compositions in the animated television and feature film productions embodied in the international licensing and distribution agreements and to remit the required payments due thereunder to Plaintiff.

108. Defendants have failed to account for or pay such funds to plaintiff and thus are in breach of their fiduciary duties, as well as the international licensing and distribution agreements.

109. As a result of the foregoing, Defendants owe plaintiff an accounting and payment of sums due upon such accountings, plus interest and costs.

110. Furthermore, because of their egregious breach of their fiduciary duties, Defendants are liable for punitive damages, compensatory damages, attorneys' fees and costs of suit.

## T. FIFTH COUNT AGAINST ALL DEFENDANTS
### UNJUST ENRICHMENT

111. Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above as if set forth at length herein. Plaintiff specifically incorporates and re-alleges the language concerning the special circumstances under which her copyrights were conveyed to the SUNBOW Defendants.

112. Upon information and belief, Defendants received substantial funds as the international licensors/licensees and distributors/distributees of the animated television productions at issue.

113. A portion of such funds constituted monies due and payable to plaintiff as royalty and license fees for use of her musical compositions, which were featured in these animated television productions.

114. By licensing and distributing Plaintiff's musical compositions which were featured in these animated television productions, feature films, releases, and CD soundtracks, Defendants' personal and business assets have been substantially increased in value and improved.

71

115. As third-party beneficiary under the international licensing and distribution agreements, plaintiff was entitled to receive a portion of these sums, which have been wrongfully withheld from her by Defendants.

WHEREFORE, Plaintiff demands judgment as follows:

    a. On the First Count against the **SUNBOW-LOONLAND-SONY** Defendants for Breach of Contract for such damages in a contract, which are elicited upon full discovery in this action, and as proven at trial but not less than one million dollars ($1,000,000.00) in compensatory damages;

    b. On the Second Count against all Defendants for breach of the respective license and/or distribution agreements as identified in the second count and upon full discovery in this action, and as proven at trial, but not less than one million dollars ($1,000,000.00) in compensatory damages as against the respective Defendants;

    c. On the Third Count against each Defendant for a judicial accounting and an Order directing the Defendants to account and upon such full and complete judicial accounting a Judgment against the respective

Defendants adjudicating the rights and liabilities of the parties and upon such accounting a judgment in favor of the Plaintiff for such amounts as shown are due together with attorneys fees, punitive damages, costs and fees;

d. Against those Defendants on the Fourth Count which the proofs established at trial indicate had a fiduciary relationship to the Plaintiff and upon such finding for a Judgment for such damages as proven by Plaintiff at trial based on the breach of such fiduciary duties and for punitive damages, attorneys fees, costs and fees;

e. Against all Defendants based on Unjust Enrichment and following the rendering of full discovery and a complete and accurate accounting, as against each Defendant individually, with respect to such amounts as have shown to have unjustly enriched the respective Defendants, and for a judgment against such Defendants for all such amounts plus attorneys fees, punitive damages, costs and fees;

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

MONAGHAN, MONAGHAN, LAMB & MARCHISIO, LLP
Attorneys for Plaintiff Anne Bryant

By: _____
Patrick J. Monaghan, Jr. (PM6297)

401 E. 65th Street Apt 10C
New York, New York 10065
(212) 541-6980
      -AND-
28 West Grand Avenue
Montvale, New Jersey 07645
(201) 802-9060