# EXHIBIT 15

## G.I. JOE: A REAL AMERICAN HERO
## PRODUCTION LICENSE AGREEMENT

AGREEMENT made and entered into by and between Hasbro, Inc. ("Hasbro"), Milton Bradley International, Inc. ("MBI"), Sunbow Productions, Inc. ("Sunbow"), Starwild Music, Inc. ("Starwild"), and Wildstar Music, Inc. ("Wildstar").

Hasbro hereby engages Sunbow, and Sunbow hereby agrees, to produce certain television programming as defined in Paragraph 2 below ("Programs") and to distribute such Programs in the United States, its territories and possessions and Canada, and MBI hereby engages Sunbow, and Sunbow hereby agrees, to distribute such Programs throughout the universe excluding the United States, its territories and possessions and Canada, all in accordance with the provisions herein contained and the Standard Terms and Conditions attached hereto and incorporated fully herein by reference ("Standard Terms and Conditions").

Hasbro and Sunbow hereby engage Starwild and Wildstar, and Starwild and Wildstar agree, to publish those musical compositions initially created for synchronization with the Programs in accordance with the provisions herein contained and the Standard Terms and Conditions.

1.   The Property.  The Programs shall be based on the name, characters, symbols, designs, likenesses and visual representations of G.I. JOE (the "Property"), all of which Hasbro and MBI represent to be owned or controlled by them as set forth in the Preamble to and Paragraph L of the Standard Terms and Conditions.

2.   The Programs.  The Programs shall consist of a series of eighty-three (83) episodes under the general title: "G.I. JOE: A REAL AMERICAN HERO." The Programs shall be animated in color, and each Program shall be approximately 28:50 minutes in length (including main and end titles and commercials).  The Programs are to be produced for and will be initially telecast on a syndicated basis over so-called "free television" as such term is defined in Paragraph D(1) of the Standard Terms and Conditions.

3.    Completion of Production.    The eighty-three (83) Programs shall be completed and delivered in time for initial telecast to commence September, 1985.

4.    Payment for Programs.

(a)    In consideration for Sunbow's production and initial distribution of the Programs for the Initial Telecast Term, Hasbro will pay to Sunbow the "Costs of Production" (as defined in Paragraph H(3)(a) of the Standard Terms and Conditions) and those costs, expenses and fees pertaining to free television syndication of the Programs in the United States and its territories and possessions for the Initial Telecast Term, all of which amounts total Thirteen Million One Hundred Nine Thousand Six Hundred Twelve and 51/100 Dollars ($13,109,612.51) as enumerated in Exhibit A appended hereto; provided, however, that Hasbro will not be required to pay such portion of said amounts which are paid by a "Third Party Participant" (as defined in the Standard Terms and Conditions) as reflected in Exhibit A.

(b)    The aforementioned payments include all (i) sales expenses, distribution fees and commissions, and distribution expenses in connection with the syndication of the Programs over free television (as defined in the Standard Terms and Conditions) in the United States and its territories and possessions, for the 'Initial Telecast Term,' as defined in Paragraph 5 below, (ii) all residual fees (other than so-called supplemental market payments) for the distribution of the Programs on a syndicated basis over free television for the Initial Telecast Term due to performing and other creative personnel or those furnishing same and applicable union payments, (iii) Sunbow's Production Fee Percentage as set forth in Paragraph 8 of this Production License Agreement ("PLA"), and (iv) all other 'Costs of Production' as defined in the Standard Terms and Conditions.

5.    Initial Telecast Term--Hasbro's Media Time.    The 'Initial Telecast Term' for the eight-three (83) Programs shall be September 1, 1983 through September 28, 1988.    In regard to the distribution of the Programs in the Initial Telecast Term, as between Hasbro and Sunbow, Hasbro shall be entitled to receive, without the payment of additional compensation to Sunbow, (i) all

-2-

SUN 412

commercial time granted by television stations in consideration for carrying any Programs and (ii) one hundred percent (100%) of all monies paid by television stations in consideration for carrying any Programs.

6. _Hasbro's Time Subsequent to the Initial Telecast Term_. Hasbro shall have the right to determine if the Programs are to be distributed subsequent to the Initial Telecast Term ("Subsequent Term") or whether to "rest" same from time to time during the Subsequent Term. Subject to the immediate preceding sentence and provided that Sunbow is not in breach of its obligations hereunder or under the Standard Terms and Conditions, all distribution during the Subsequent Term shall be effected through Sunbow under the terms and provisions set forth herein and in the Standard Terms and Conditions. In this regard, Hasbro shall have the right, exercisable by notice to Sunbow given in reasonable time prior to the commencement of the Subsequent Term, to utilize for itself the media time available on the Programs during the Subsequent Term.

7. _Additional Programming_. Sunbow shall have a first negotiation right to both produce and distribute for telecast over free television as herein provided, any additional Programs in the Series and any additional television programming based on the Property or any principal character thereof which Hasbro determines to have produced primarily for initial telecast over free television, as well as a right of first negotiation to produce and distribute any motion pictures, phonograph recordings, videodiscs or videocassettes, original programming for cable or pay television, or any other productions or programming based, in whole or in part, upon the Property which Hasbro determines to have produced or distributed. Such right of first negotiation shall be effected in accordance with the provisions set forth in the Standard Terms and Conditions, but such right shall remain effective only if Sunbow is not in breach of its obligations under the PLA or the Standard Terms and Conditions and Sunbow has performed its obligations hereunder and thereunder in a manner reasonably satisfactory to Hasbro.

8. _Sunbow's Compensation_. The payments made and to be made pursuant to Paragraph 4 hereof by Hasbro to Sunbow include a percentage payment to Sunbow ("Production Fee Percentage") based upon the animation costs, script/teleplay costs, studio costs, costs of music, costs and fees of contractors, costs of

-3-

SUN 413

sets, costs of travel in connection with the production of the Programs, and talent costs (including all performing, creative, technical and other personnel) but excluding so-called "supplemental market" payments to or on behalf of performing artists, all of which are enumerated under the caption "Production" in Exhibit A.

Said Production Fee Percentage shall be six percent (6%) with respect to the Programs produced hereunder. In addition, Sunbow shall be entitled to the "Sunbow Share" of the "Distribution Proceeds" (as such terms are defined in the Standard Terms and Conditions), if any, and to the percentage of the "Barter Media Value" (as defined in the Standard Terms and Conditions) of all time utilized by Hasbro subsequent to the Initial Telecast Term, all as provided for in the Standard Terms and Conditions. All revenues and expenses regarding the Programs shall be fully cross-collateralized with all revenues and expenses regarding all other episodes produced by Sunbow for initial telecast on a syndicated basis and which are based upon the Property in the determination of Distribution Proceeds pursuant to the Standard Terms and Conditions.

9.    Term.    Provided that Sunbow is not in breach of this Agreement or the Standard Terms and Conditions, Sunbow's distribution rights shall be perpetual.

10.    Territory.    The Territory covered by this Agreement shall be the entire Universe.

11.    Profit Participation of Marvel Entertainment Group ("Marvel"). Subject to compliance by Marvel with its obligations under Sunbow's agreement with Marvel and unless otherwise agreed with Marvel, Marvel shall be entitled to, and Sunbow shall pay Marvel a "Third Party Share" (as such term is defined in the Standard Terms and Conditions) in an amount equal to ten percent (10%) of the Distribution Proceeds, if any. Further, unless otherwise agreed with Marvel, Marvel shall be entitled to receive an amount equal to ten percent (10%) of sixty-five percent (65%) of the "Barter Media Value" of time utilized directly by Hasbro or any of its companies during the Subsequent Term.

-4-

12.   <u>Integration of Standard Terms and Conditions.</u>   The Standard Terms
and Conditions previously executed by and between the parties hereto are hereby
incorporated by reference as though fully set forth herein.   In the event of
any irreconcilable inconsistency between the Standard Terms and Conditions and
this Production License Agreement, this Production License Agreement shall
control.


HASBRO, INC.                              SUNBOW PRODUCTIONS, INC.
By: _____            By: _____
Its: _____            Its: _____


MILTON BRADLEY INTERNATIONAL, INC.        STARWILD MUSIC, INC.
By: _____            By: _____
Its: _____            Its: _____


                                          WILDSTAR MUSIC, INC.
                                          By: _____
                                          Its: _____


-5-

HASBRO/SUNBOW PRODUCTION LICENSE AGREEMENT          EXHIBIT A

TITLE :   G. I. JOE SERIES (63)
ESTIMATE #2011

PRODUCTION                          BUDGET

   Animation
   Script
   Talent
 - Music
   Production

Total production

OTHER PRODUCTION

   Production Fee @ 6%
   Operations (Insurance ect)
   Residuals
   Holding Cost
   CA. Sales Tax

Total Other Production

SALES

   Sales
   Sales Material
   Station Promo Material
   Public Relations
   Conventions
   Advertising
   Station Compensation

Total Sales

Distribution

   Syndication Fee
   Distribution

Total Distribution

RESERVE

TRANSFER

THIRD PARTY PARTICIPANT CONTRIBUTION

TOTAL NET COST

**REDACTED**

SUN 416

## G.I. JOE: A REAL AMERICAN HERO
## PRODUCTION LICENSE AGREEMENT

AGREEMENT made and entered into by and between Hasbro, Inc. ("Hasbro"), Milton Bradley International, Inc. ("MBI"), Sunbow Productions, Inc. ("Sunbow"), Starwild Music, Inc. ("Starwild"), and Wildstar Music, Inc. ("Wildstar").

Hasbro hereby engages Sunbow, and Sunbow hereby agrees, to produce certain television programming as defined in Paragraph 2 below ("Programs") and to distribute such Programs in the United States, its territories and possessions and Canada, and MBI hereby engages Sunbow, and Sunbow hereby agrees, to distribute such Programs throughout the universe excluding the United States, its territories and possessions and Canada, all in accordance with the provisions herein contained and the Standard Terms and Conditions attached hereto and incorporated fully herein by reference ("Standard Terms and Conditions").

Hasbro and Sunbow hereby engage Starwild and Wildstar, and Starwild and Wildstar agree, to publish those musical compositions initially created for synchronization with the Programs in accordance with the provisions herein contained and the Standard Terms and Conditions.

1.    The Property.  The Programs shall be based on the name, characters, symbols, designs, likenesses and visual representations of G.I. JOE (the "Property"), all of which Hasbro and MBI represent to be owned or controlled by them as set forth in the Preamble to and Paragraph L of the Standard Terms and Conditions.

2.    The Programs.  The Programs shall consist of a series of five (5) episodes under the general title: "G.I. JOE: A REAL AMERICAN HERO."  The Programs shall be animated in color, and each Program shall be approximately 28:50 minutes in length (including main and end titles and commercials).  The Programs are to be produced for and will be initially telecast on a syndicated basis over so-called "free television" as such term is defined in Paragraph D(1) of the Standard Terms and Conditions.

SUN 0768

3.   Completion of Production.  The five (5) Programs shall be completed and delivered in time for initial telecast to commence September, 1983.

4.   Payment for Programs.

(a)   In consideration for Sunbow's production and initial distribution of the Programs for the Initial Telecast Term, Hasbro will pay to Sunbow the "Costs of Production" (as defined in Paragraph B(3)(a) of the Standard Terms and Conditions) and those costs, expenses and fees pertaining to free television syndication of the Programs in the United States and its territories and possessions for the Initial Telecast Term, all of which amounts total One Million Nine Hundred Sixty-Two Thousand Two Hundred Ninety and 40/100 Dollars ($1,962,290.40) as enumerated in Exhibits A and B appended hereto.

(b)   The aforementioned payments include all (i) sales expenses, distribution fees and commissions, and distribution expenses in connection with the syndication of the Programs over free television (as defined in the Standard Terms and Conditions) in the United States and its territories and possessions, for the "Initial Telecast Term," as defined in Paragraph 5 below, (ii) all residual fees (other than so-called supplemental market payments) for the distribution of the Programs on a syndicated basis over free television for the Initial Telecast Term due to performing and other creative personnel or those furnishing same and applicable union payments, (iii) Sunbow's Production Fee Percentage as set forth in Paragraph 8 of this Production License Agreement ("PLA"), and (iv) all other "Costs of Production" as defined in the Standard Terms and Conditions.

5.   Initial Telecast Term--Hasbro's Media Time.  The "Initial Telecast Term" for the five (5) Programs shall be September 1, 1983 through September 28, 1983.  In regard to the distribution of the Programs in the Initial Telecast Term, as between Hasbro and Sunbow, Hasbro shall be entitled to receive, without the payment of additional compensation to Sunbow, (i) all commercial time granted by television stations in consideration for carrying any Programs and (ii) one hundred percent (100%) of all monies paid by television stations in consideration for carrying any Programs.

-2-

SUN 0769

6. **Hasbro's Time Subsequent to the Initial Telecast Term**. Hasbro shall have the right to determine if the Programs are to be distributed subsequent to the Initial Telecast Term ('Subsequent Term') or whether to 'rest' same from time to time during the Subsequent Term. Subject to the immediate preceding sentence and provided that Sunbow is not in breach of its obligations hereunder or under the Standard Terms and Conditions, all distribution during the Subsequent Term shall be effected through Sunbow under the terms and provisions set forth herein and in the Standard Terms and Conditions. In this regard, Hasbro shall have the right, exercisable by notice to Sunbow given in reasonable time prior to the commencement of the Subsequent Term, to utilize for itself the media time available on the Programs during the Subsequent Term.

7. **Additional Programming**. Sunbow shall have a first negotiation right to both produce and distribute for telecast over free television as herein provided, any additional Programs in the Series and any additional television programming based on the Property or, any principal character thereof which Hasbro determines to have produced primarily for initial telecast over free television, as well as a right of first negotiation to produce and distribute any motion pictures, phonograph recordings, videodiscs or videocassettes, original programming for cable or pay television, or any other productions or programming based, in whole or in part, upon the Property which Hasbro determines to have produced or distributed. Such right of first negotiation shall be effected in accordance with the provisions set forth in the Standard Terms and Conditions, but such right shall remain effective only if Sunbow is not in breach of its obligations under the PSA or the Standard Terms and Conditions and Sunbow has performed its obligations hereunder and thereunder in a manner reasonably satisfactory to Hasbro.

8. **Sunbow's Compensation**. The payments made and to be made pursuant to Paragraph 4 hereof by Hasbro to Sunbow include a percentage payment to Sunbow ('Production Fee Percentage') based upon the animation costs, script/teleplay costs, studio costs, costs of music, costs and fees of contractors, costs of sets, costs of travel in connection with the production of the Programs, and talent costs (including all performing, creative, technical and other personnel) but excluding so-called 'supplemental market' payments to or on behalf of performing artists, all of which are enumerated under the caption 'Production' in Exhibits A and B.

-3-

SUN 0770

Said Production Fee Percentage shall be zero percent (0%) with respect to the Programs produced hereunder. In addition, Sunbow shall be entitled to the "Sunbow Share" of the "Distribution Proceeds" (as such terms are defined in the Standard Terms and Conditions), if any, and to the percentage of the "Barter Media Value" (as defined in the Standard Terms and Conditions) of all time utilized by Hasbro subsequent to the Initial Telecast Term, all as provided for in the Standard Terms and Conditions. All revenues and expenses regarding the Programs shall be fully cross-collateralized with all revenues and expenses regarding all other episodes produced by Sunbow for initial telecast on a syndicated basis and which are based upon the Property in the determination of Distribution Proceeds pursuant to the Standard Terms and Conditions.

9.    Term.    Provided that Sunbow is not in breach of this Agreement or the Standard Terms and Conditions, Sunbow's distribution rights shall be perpetual.

10.    Territory.    The Territory covered by this Agreement shall be the entire Universe.

11.    Profit Participation of Marvel Entertainment Group ("Marvel"). Subject to compliance by Marvel with its obligations under Sunbow's agreement with Marvel and unless otherwise agreed with Marvel, Marvel shall be entitled to, and Sunbow shall pay Marvel a "Third Party Share" (as such term is defined in the Standard Terms and Conditions) in an amount equal to ten percent (10%) of the Distribution Proceeds, if any. Further, unless otherwise agreed with Marvel, Marvel shall be entitled to receive an amount equal to ten percent (10%) of sixty-five percent (65%) of the "Barter Media Value" of time utilized directly by Hasbro or any of its companies during the Subsequent Term.

12.    Integration of Standard Terms and Conditions.    The Standard Terms and Conditions previously executed by and between the parties hereto are hereby incorporated by reference as though fully set forth herein. In the event of

-4-

SUN 0771

any irreconcilable inconsistency between the Standard Terms and Conditions and this Production License Agreement, this Production License Agreement shall control.

HASBRO, INC.

By:
Its:

SUNBOW PRODUCTIONS, INC.

By:
Its:

MILTON BRADLEY INTERNATIONAL, INC.

By:
Its:

STARWILD MUSIC, INC.

By:
Its:

WILDSTAR MUSIC, INC.

By:
Its:

-5-

SUN 0772

HASBRO/SUNBOW PRODUCTION LICENSE AGREEMENT          EXHIBIT A

TITLE :  G.I. JOE I MINI-SERIES
ESTIMATE #2001

| PRODUCTION | BUDGET |
|---|---|
| Animation | $1,500,000.00 |
| Script | 52,547.59 |
| Talent | 10,840.25 |
| Music | 5,309.11 |
| Production | 34,913.72 |
| **Total production** | 1,503,612.59 |

OTHER PRODUCTION

| | |
|---|---|
| Production Fee 0 | |
| Operations (insurance act) | 13,575.64 |
| Residuals | 17,999.76 |
| Holding Cost | |
| CA. Sales Tax | |
| **Total Other Production** | 31,575.40 |

SALES

| | |
|---|---|
| Sales | 195,259.72 |
| Sales Material | |
| Station Promo Material | |
| Public Relations | |
| Conventions | |
| Advertising | |
| Station Compensation | 4,580.00 |
| **Total Sales** | 201,339.78 |

Distribution

| | |
|---|---|
| Syndication Fee | |
| Distribution | |
| **Total Distribution** | 0.00 |

| RESERVE | 0.00 |
|---|---|
| TRANSFER | 0.00 |

| TOTAL COST | $1,835,539.77 |
|---|---|

SUN  0773

HASBRO/SUNBOW PRODUCTION LICENSE AGREEMENT          EXHIBIT B

TITLE :  G.I. JOE I MINI-SERIES (RERUN)
ESTIMATE #2009

| PRODUCTION | BUDGET |
|---|---|
| Animation | |
| Script | |
| Talent | |
| Music | |
| Production | |
| Total production | 0.00 |

OTHER PRODUCTION

| | |
|---|---|
| Production Fee 9 | |
| Operations (Insurance act) | |
| Residuals | 24,232.55 |
| Holding Cost | |
| CA. Sales Tax | |
| Total Other Production | 24,232.55 |

SALES

| | |
|---|---|
| Sales | 96,186.11 |
| Sales Material | |
| Station Promo Material | |
| Public Relations | |
| Conventions | |
| Advertising | |
| Station Compensation | 5,281.87 |
| Total Sales | 101,467.93 |

Distribution

| | |
|---|---|
| Syndication Fee | |
| Distribution | |
| Total Distribution | 0.00 |

| RESERVE | 0.00 |
|---|---|
| TRANSFER | 0.00 |

| TOTAL COST | $125,750.63 |
|---|---|

.

### G.I. JOE: A REAL AMERICAN HERO
### PRODUCTION LICENSE AGREEMENT

AGREEMENT made and entered into by and between Hasbro, Inc. ("Hasbro"), Milton Bradley International, Inc. ("MBI"), Sunbow Productions, Inc. ("Sunbow"), Starwild Music, Inc. ("Starwild"), and Wildstar Music, Inc. ("Wildstar").

Hasbro hereby engages Sunbow, and Sunbow hereby agrees, to produce certain television programming as defined in Paragraph 2 below ("Programs") and to distribute such Programs in the United States, its territories and possessions and Canada, and MBI hereby engages Sunbow, and Sunbow hereby agrees, to distribute such Programs throughout the universe excluding the United States, its territories and possessions and Canada, all in accordance with the provisions herein contained and the Standard Terms and Conditions attached hereto and incorporated fully herein by reference ("Standard Terms and Conditions").

Hasbro and Sunbow hereby engage Starwild and Wildstar, and Starwild and Wildstar agree, to publish those musical compositions initially created for synchronization with the Programs in accordance with the provisions herein contained and the Standard Terms and Conditions.

1.   The Property.  The Programs shall be based on the name, characters, symbols, designs, likenesses and visual representations of G.I. JOE (the "Property"), all of which Hasbro and MBI represent to be owned or controlled by them as set forth in the Preamble to and Paragraph 1 of the Standard Terms and Conditions.

2.   The Programs.  The Programs shall consist of a series of five (5) episodes under the general title: "G.I. JOE: A REAL AMERICAN HERO."   The Programs shall be animated in color, and each Program shall be approximately 28:50 minutes in length (including main and end titles and commercials).   The Programs are to be produced for and will be initially telecast on a syndicated basis over so-called "free television" as such term is defined in Paragraph D(1) of the Standard Terms and Conditions.

SUN 0775

3.    Completion of Production.  The five (5) Programs shall be completed and delivered in time for initial telecast to commence September, 1984.

4.    Payment for Programs.

(a)    In consideration for Sunbow's production and initial distribution of the Programs for the Initial Telecast Term, Hasbro will pay to Sunbow the "Costs of Production" (as defined in Paragraph E(3)(a) of the Standard Terms and Conditions) and those costs, expenses and fees pertaining to free television syndication of the Programs in the United States and its territories and possessions for the Initial Telecast Term, all of which amounts total Two Million One Hundred Twenty Thousand Eight Hundred Forty-Seven and 42/100 Dollars ($2,120,847.42) as enumerated in Exhibit A appended hereto.

(b)    The aforementioned payments include all (i) sales expenses, distribution fees and commissions, and distribution expenses in connection with the syndication of the Programs over free television (as defined in the Standard Terms and Conditions) in the United States and its territories and possessions, for the "Initial Telecast Term," as defined in Paragraph 5 below, (ii) all residual fees (other than so-called supplemental market payments) for the distribution of the Programs on a syndicated basis over free television for the Initial Telecast Term due to performing and other creative personnel or those furnishing same and applicable union payments, (iii) Sunbow's Production Fee Percentage as set forth in Paragraph 8 of this Production License Agreement ("PLA"), and (iv) all other "Costs of Production" as defined in the Standard Terms and Conditions.

5.    Initial Telecast Term--Hasbro's Media Time.  The "Initial Telecast Term" for the five (5) Programs shall be September 1, 1983 through September 28, 1988.  In regard to the distribution of the Programs in the Initial Telecast Term, as between Hasbro and Sunbow, Hasbro shall be entitled to receive, without the payment of additional compensation to Sunbow, (i) all commercial time granted by television stations in consideration for carrying any Programs and (ii) one hundred percent (100%) of all monies paid by television stations in consideration for carrying any Programs.

-2-

SUN 0776

6.  Hasbro's Time Subsequent to the Initial Telecast Term.  Hasbro shall have the right to determine if the Programs are to be distributed subsequent to the Initial Telecast Term ('Subsequent Term') or whether to 'rest' same from time to time during the Subsequent Term.  Subject to the immediate preceding sentence and provided that Sunbow is not in breach of its obligations hereunder or under the Standard Terms and Conditions, all distribution during the Subsequent Term shall be effected through Sunbow under the terms and provisions set forth herein and in the Standard Terms and Conditions.  In this regard, Hasbro shall have the right, exercisable by notice to Sunbow given in reasonable time prior to the commencement of the Subsequent Term, to utilize for itself the media time available on the Programs during the Subsequent Term.

7.  Additional Programming.  Sunbow shall have a first negotiation right to both produce and distribute for telecast over free television as herein provided, any additional Programs in the Series and any additional television programming based on the Property or any principal character thereof which Hasbro determines to have produced primarily for initial telecast over free television, as well as a right of first negotiation to produce and distribute any motion pictures, phonograph recordings, videodiscs or videocassettes, original programming for cable or pay television, or any other productions or programming based, in whole or in part, upon the Property which Hasbro determines to have produced or distributed.  Such right of first negotiation shall be effected in accordance with the provisions set forth in the Standard Terms and Conditions, but such right shall remain effective only if Sunbow is not in breach of its obligations under the PLA or the Standard Terms and Conditions and Sunbow has performed its obligations hereunder and thereunder in a manner reasonably satisfactory to Hasbro.

8.  Sunbow's Compensation.  The payments made and to be made pursuant to Paragraph 4 hereof by Hasbro to Sunbow include a percentage payment to Sunbow ('Production Fee Percentage') based upon the animation costs, script/teleplay costs, studio costs, costs of music, costs and fees of contractors, costs of sets, costs of travel in connection with the production of the Programs, and talent costs (including all performing, creative, technical and other personnel) but excluding so-called 'supplemental market' payments to or on behalf of performing artists, all of which are enumerated under the caption 'Production' in Exhibit A.

-3-

SUN 0777

Said Production Fee Percentage shall be ten percent (10%) with respect to the Programs produced hereunder. In addition, Sunbow shall be entitled to the "Sunbow Share" of the "Distribution Proceeds" (as such terms are defined in the Standard Terms and Conditions), if any, and to the percentage of the "Barter Media Value" (as defined in the Standard Terms and Conditions) of all time utilized by Hasbro subsequent to the Initial Telecast Term, all as provided for in the Standard Terms and Conditions. All revenues and expenses regarding the Programs shall be fully cross-collateralized with all revenues and expenses regarding all other episodes produced by Sunbow for initial telecast on a syndicated basis and which are based upon the Property in the determination of Distribution Proceeds pursuant to the Standard Terms and Conditions.

9. __Term__. Provided that Sunbow is not in breach of this Agreement or the Standard Terms and Conditions, Sunbow's distribution rights shall be perpetual.

10. __Territory__. The Territory covered by this Agreement shall be the entire Universe.

11. __Profit Participation of Marvel Entertainment Group__ ("Marvel"). Subject to compliance by Marvel with its obligations under Sunbow's agreement with Marvel and unless otherwise agreed with Marvel, Marvel shall be entitled to, and Sunbow shall pay Marvel a "Third Party Share" (as such term is defined in the Standard Terms and Conditions) in an amount equal to ten percent (10%) of the Distribution Proceeds, if any. Further, unless otherwise agreed with Marvel, Marvel shall be entitled to receive an amount equal to ten percent (10%) of sixty-five percent (65%) of the "Barter Media Value" of time utilized directly by Hasbro or any of its companies during the Subsequent Term.

12. __Integration of Standard Terms and Conditions__. The Standard Terms and Conditions previously executed by and between the parties hereto are hereby incorporated by reference as though fully set forth herein. In the event of

-4-

SUN 0778

any irreconcilable inconsistency between the Standard Terms and Conditions and
this Production License Agreement, this Production License Agreement shall
control.

HASBRO, INC.

By: _____
Its: _____

SUNBOW PRODUCTIONS, INC.

By: _____
Its: _____

MILTON BRADLEY INTERNATIONAL, INC.

By: _____
Its: _____

STARWILD MUSIC, INC.

By: _____
Its: _____

WILDSTAR MUSIC, INC.

By: _____
Its: _____

-5-

SUN 0779

HASBRO/SUNBOW PRODUCTION LICENSE AGREEMENT          EXHIBIT A

TITLE :  G.I. JOE II MINI-SERIES
ESTIMATE #2007

| PRODUCTION | BUDGET |
|---|---|
| Animation | $1,570,240.00 |
| Script | 50,504.45 |
| Talent | 350.30 |
| Music | 1,162.00 |
| Production | 39,594.25 |
| | |
| Total production | 1,566,571.50 |

OTHER PRODUCTION

| | |
|---|---|
| Production Fee @ 10% | 166,657.15 |
| Operations (Insurance act) | 3,875.00 |
| Residuals | 33,555.02 |
| Holding Cost | |
| CA. Sales Tax | |
| | |
| Total Other Production | 304,088.17 |

SALES

| | |
|---|---|
| Sales | 224,451.75 |
| Sales Material | |
| Station Promo Material | |
| Public Relations | |
| Conventions | |
| Advertising | |
| Station Compensation | 25,725.00 |
| | |
| Total Sales | 250,187.75 |

Distribution

| | |
|---|---|
| Syndication Fee | |
| Distribution | |
| | |
| Total Distribution | 0.00 |

| RESERVE | 0.00 |
|---|---|
| TRANSFER | 0.00 |

| TOTAL COST | $2,120,847.42 |
|---|---|

SUN 0780

## G.I. JOE: A REAL AMERICAN HERO
## PRODUCTION LICENSE AGREEMENT

AGREEMENT made and entered into by and between Hasbro, Inc. ("Hasbro"), Milton Bradley International, Inc. ("MBI"), Sunbow Productions, Inc. ("Sunbow"), Starwild Music, Inc. ("Starwild"), and Wildstar Music, Inc. ("Wildstar").

Hasbro hereby engages Sunbow, and Sunbow hereby agrees, to produce certain television programming as defined in Paragraph 2 below ("Programs") and to distribute such Programs in the United States, its territories and possessions and Canada, and MBI hereby engages Sunbow, and Sunbow hereby agrees, to distribute such Programs throughout the universe excluding the United States, its territories and possessions and Canada, all in accordance with the provisions herein contained and the Standard Terms and Conditions attached hereto and incorporated fully herein by reference ("Standard Terms and Conditions").

Hasbro and Sunbow hereby engage Starwild and Wildstar, and Starwild and Wildstar agree, to publish those musical compositions initially created for synchronization with the Programs in accordance with the provisions herein contained and the Standard Terms and Conditions.

1.    The Property.  The Programs shall be based on the name, characters, symbols, designs, likenesses and visual representations of G.I. JOE (the "Property"), all of which Hasbro and MBI represent to be owned or controlled by them as set forth in the Preamble to and Paragraph D of the Standard Terms and Conditions.

2.    The Programs.  The Programs shall consist of a series of eighty-three (83) episodes under the general title: "G.I. JOE: A REAL AMERICAN HERO." The Programs shall be animated in color, and each Program shall be approximately 28:50 minutes in length (including main and end titles and commercials).  The Programs are to be produced for and will be initially telecast on a syndicated basis over so-called "free television" as such term is defined in Paragraph D(1) of the Standard Terms and Conditions.

SUN 0781

3.    Completion of Production.  The eighty-three (83) Programs shall be completed and delivered in time for initial telecast to commence September, 1985.

4.    Payment for Programs.

(a)    In consideration for Sunbow's production and initial distribution of the Programs for the Initial Telecast Term, Hasbro will pay to Sunbow the 'Costs of Production' (as defined in Paragraph B(3)(a) of the Standard Terms and Conditions) and those costs, expenses and fees pertaining to free television syndication of the Programs in the United States and its territories and possessions for the Initial Telecast Term, all of which amounts total Thirteen Million One Hundred Nine Thousand Six Hundred Twelve and 51/100 Dollars ($13,109,612.51) as enumerated in Exhibit A appended hereto; provided, however, that Hasbro will not be required to pay such portion of said amounts which are paid by a 'Third Party Participant' (as defined in the Standard Terms and Conditions) as reflected in Exhibit A.

(b)    The aforementioned payments include all (i) sales expenses, distribution fees and commissions, and distribution expenses in connection with the syndication of the Programs over free television (as defined in the Standard Terms and Conditions) in the United States and its territories and possessions, for the 'Initial Telecast Term,' as defined in Paragraph 5 below, (ii) all residual fees (other than so-called supplemental market payments) for the distribution of the Programs on a syndicated basis over free television for the Initial Telecast Term due to performing and other creative personnel or those furnishing same and applicable union payments, (iii) Sunbow's Production Fee Percentage as set forth in Paragraph 8 of this Production License Agreement ('PLA'), and (iv) all other 'Costs of Production' as defined in the Standard Terms and Conditions.

5.    Initial Telecast Term--Hasbro's Media Time.  The 'Initial Telecast Term' for the eight-three (83) Programs shall be September 1, 1983 through September 28, 1988.  In regard to the distribution of the Programs in the Initial Telecast Term, as between Hasbro and Sunbow, Hasbro shall be entitled to receive, without the payment of additional compensation to Sunbow, (i) all

-2-

SUN 0782

commercial time granted by television stations in consideration for carrying any Programs and (ii) one hundred percent (100%) of all monies paid by television stations in consideration for carrying any Programs.

6. <u>Hasbro's Time Subsequent to the Initial Telecast Term</u>. Hasbro shall have the right to determine if the Programs are to be distributed subsequent to the Initial Telecast Term ("Subsequent Term") or whether to "rest" same from time to time during the Subsequent Term. Subject to the immediate preceding sentence and provided that Sunbow is not in breach of its obligations hereunder or under the Standard Terms and Conditions, all distribution during the Subsequent Term shall be effected through Sunbow under the terms and provisions set forth herein and in the Standard Terms and Conditions. In this regard, Hasbro shall have the right, exercisable by notice to Sunbow given in reasonable time prior to the commencement of the Subsequent Term, to utilize for itself the media time available on the Programs during the Subsequent Term.

7. <u>Additional Programming</u>. Sunbow shall have a first negotiation right to both produce and distribute for telecast over free television as herein provided, any additional Programs in the Series and any additional television programming based on the Property or any principal character thereof which Hasbro determines to have produced primarily for initial telecast over free television, as well as a right of first negotiation to produce and distribute any motion pictures, phonograph recordings, videodiscs or videocassettes, original programming for cable or pay television, or any other productions or programming based, in whole or in part, upon the Property which Hasbro determines to have produced or distributed. Such right of first negotiation shall be effected in accordance with the provisions set forth in the Standard Terms and Conditions, but such right shall remain effective only if Sunbow is not in breach of its obligations under the PLA or the Standard Terms and Conditions and Sunbow has performed its obligations hereunder and thereunder in a manner reasonably satisfactory to Hasbro.

8. <u>Sunbow's Compensation</u>. The payments made and to be made pursuant to Paragraph 4 hereof by Hasbro to Sunbow include a percentage payment to Sunbow ("Production Fee Percentage") based upon the animation costs, script/teleplay costs, studio costs, costs of music, costs and fees of contractors, costs of

-3-

SUN 0783

sets, costs of travel in connection with the production of the Programs, and talent costs (including all performing, creative, technical and other personnel) but excluding so-called "supplemental market" payments to or on behalf of performing artists, all of which are enumerated under the caption "Production" in Exhibit A.

Said Production Fee Percentage shall be six percent (6%) with respect to the Programs produced hereunder. In addition, Sunbow shall be entitled to the "Sunbow Share" of the "Distribution Proceeds" (as such terms are defined in the Standard Terms and Conditions), if any, and to the percentage of the "Barter Media Value" (as defined in the Standard Terms and Conditions) of all time utilized by Hasbro subsequent to the Initial Telecast Term, all as provided for in the Standard Terms and Conditions. All revenues and expenses regarding the Programs shall be fully cross-collateralized with all revenues and expenses regarding all other episodes produced by Sunbow for initial telecast on a syndicated basis and which are based upon the Property in the determination of Distribution Proceeds pursuant to the Standard Terms and Conditions.

9.   Term.   Provided that Sunbow is not in breach of this Agreement or the Standard Terms and Conditions, Sunbow's distribution rights shall be perpetual.

10.   Territory.   The Territory covered by this Agreement shall be the entire Universe.

11.   Profit Participation of Marvel Entertainment Group ("Marvel"). Subject to compliance by Marvel with its obligations under Sunbow's agreement with Marvel and unless otherwise agreed with Marvel, Marvel shall be entitled to, and Sunbow shall pay Marvel, a "Third Party Share" (as such term is defined in the Standard Terms and Conditions) in an amount equal to ten percent (10%) of the Distribution Proceeds, if any. Further, unless otherwise agreed with Marvel, Marvel shall be entitled to receive an amount equal to ten percent (10%) of sixty-five percent (65%) of the "Barter Media Value" of time utilized directly by Hasbro or any of its companies during the Subsequent Term.

-4-

12.   Integration of Standard Terms and Conditions.   The Standard Terms and Conditions previously executed by and between the parties hereto are hereby incorporated by reference as though fully set forth herein.   In the event of any irreconcilable inconsistency between the Standard Terms and Conditions and this Production License Agreement, this Production License Agreement shall control.

HASBRO, INC.

By: _____
Its: _____

SUNBOW PRODUCTIONS, INC.

By: _____
Its: _____

MILTON-BRADLEY INTERNATIONAL, INC.

By: _____
Its: _____

STARWILD MUSIC, INC.

By: _____
Its: _____

WILDSTAR MUSIC, INC.

By: _____
Its: _____

-5-

SUN 0785

HASBRO/SUNBOW PRODUCTION LICENSE AGREEMENT                EXHIBIT A

TITLE :   G. I. JOE SERIES (65)
ESTIMATE #2011

| PRODUCTION | BUDGET |
|---|---|
| Animation | $17,888,848.88 |
| Script | 778,688.88 |
| Talent | 11,698.47 |
| Music | 5,343.13 |
| Production | 198,383.88 |
| Total production | 17,977,873.58 |
| OTHER PRODUCTION | |
| Production Fee @ 5% | 1,979,572.32 |
| Operations (Insurance ect) | 98,864.87 |
| Residuals | 1,255,712.23 |
| Holding Cost | |
| CA. Sales Tax | |
| Total Other Production | 2,532,149.72 |
| SALES | |
| Sales | 288,192.41 |
| Sales Material | 98.88 |
| Station Promo Material | 25,988.25 |
| Public Relations | 9,798.55 |
| Conventions | 82,949.44 |
| Advertising | 49,491.57 |
| Station Compensation | 7,464.91 |
| Total Sales | 465,982.88 |
| Distribution | |
| Syndication Fee | 688,888.88 |
| Distribution | 535,329.11 |
| Total Distribution | 1,235,329.11 |
| RESERVE | -8.88 |
| TRANSFER | 0.28 |
| THIRD PARTY PARTICIPANT CONTRIBUTION | (9,888,688.88) |
| TOTAL NET COST | 113,189,512.51 |

THE JEM (WEEKLY AND DAILY) SERIES PRODUCTION LICENSE AGREEMENT

AGREEMENT made and entered into by and between Hasbro, Inc., a Rhode Island corporation with offices at 1027 Newport Avenue, Pawtucket, Rhode Island 02861 ("Hasbro"), and Sunbow Productions, Inc., a Delaware corporation with offices at 130 Fifth Avenue, New York, NY 10011 ("Sunbow").

Hasbro engages Sunbow to produce and to distribute, and Sunbow agrees to produce and distribute for Hasbro, certain television programming (the "Programs") in accordance with the following terms and conditions and the Standard Terms and Conditions annexed hereto (the "Standard Terms and Conditions"), it being understood that the Programs are being produced for and will be initially telecast on a syndicated basis over so-called "free" over-the-air television, a such term is defined in the Standard Terms and Conditions.

1.    The Property:  The Programs shall be based on The JEM characters (the "Characters"), all of which Hasbro represents to be owned or controlled by it as set forth in the Standard Terms and Conditions.

2.    The Programs:  The Programs shall consist of

a series of 65 Programs

(60 new plus five transferred from Super Sunday)

under the general title,

"JEM"

2245A/-1-
6/22/87

SUN 0787

The Program shall be animated, and each Program shall be approximately 28:50 minutes in length (including commercials). It is acknowledged that the Programs have heretofore been produced and have heretofore been telecast over "free" over air television and are currently being so telecast.

3. **Completion of Production:** Certain of the 60 Programs (those not transferred from Super Sunday) were or will be completed and delivered by Sunbow beginning May 4, 1986 and the balance will be completed and delivered on or before March 1, 1988. The five Programs transferred from Super Sunday were delivered in or about February 1986.

4. **Payment For Programs:**

(a) Subject to Paragraph H of the Standard Terms and Conditions, the total cost to Hasbro for the Production of the Programs, and the items, costs and expenses itemized in subparagraph (b) of this Paragraph 4 is $17,814,540. (including $688,200 transferred from Super Sunday) as outlined in Exhibits "A" through "D", annexed, which amount shall be paid by Hasbro to Sunbow.

(b) The aforementioned payments include all (i) sales expenses, distribution fees and commissions, and distribution expenses, all in connection with the syndication of the Programs over "free-over-the-air" television in the United States, for the Intial Telecast Term, as defined, (ii)

2245A/-2-
6/22/87

SUN 0788

for the Initial Telecast Term an estimate of all residual fees
by reason of use in "free-over-the-air" television (and without
limitation other than so-called supplemental market payments
and any other payments) due to performing and other creative
personnel (or those furnishing same) and applicable unions and
(iii) Sunbow's Production Fee Percentage as set forth in
Paragraph 8 of this Agreement.

(c)  It is acknowledged by Sunbow that
$7,344,499.58 has heretofore been paid by Hasbro to Sunbow as
of May 31, 1987.

(d)  The balance of said remaining $10,470,040.42
shall be paid at such times as the parties may agree, except
that in all events, Production Costs, as defined in The
Standard Terms and Conditions, shall be paid in sufficient time
to enable Sunbow to meet its production requirements and its
residual payment obligations.

5.  Initial Telecast Term--Hasbro's Media Time:  The
"Initial Telecast Term" for the 60 Programs (other than the
five transferred from Super Sunday) shall be May 3, 1986 to
September 17, 1989.  The Initial Telecast Term for the five
Programs transferred from Super Sunday is September 1, 1985 to
September 17, 1989.

During the Initial Telecast Term, Hasbro shall be
entitled, without the payment of additional compensation, to
the following:

2245A/-3-
6/22/87

SUN 0789

With respect to the aforesaid 65 Programs (which have
been and are to be distributed on a "barter" basis)
Hasbro shall be entitled to 1,332 30-second spots
either in the Programs or spun into "children's time",
as such phrase is understood in the television
business and defined in the Standard Terms and
Conditions, over "free" over-the-air television in the
United States, its territories, possessions and
commonwealths (the "Domestic Territory"), all spots to
air between May 3, 1986 and September 17, 1989, as
well as the monies, if any, paid by the particular
television stations carrying such programs for such
programs.

6.  Hasbro's Time Subsequent to the Initial Telecast
Term:  Hasbro shall have the right to determine if the Programs
are to be distributed subsequent to the Initial Telecast Term
(the "Subsequent Term") or whether to "rest" same from time to
time during the Subsequent Term.  Provided that Sunbow is not
in breach of its obligations hereunder or in the Standard Terms
and Conditions, all distribution during the Subsequent Term
shall be effected through Sunbow under the terms and provisions
set forth herein and in the Standard Terms and Conditions.  In
this regard, Hasbro shall have the right, exercisable by notice
to Sunbow given in reasonable time prior to the commencement of
the Subsequent Term, to utilize for itself the media time
available on the Programs during the Subsequent Term.

2245A/-4-
6/22/87

7.   Additional Programming:  Sunbow shall have a
right of first negotiation to both produce and distribute for
broadcast, as herein provided, any additional Programs in the
Series and any additional television programming based on the
Characters or additional characters which Hasbro determines to
have produced as well as a right of first negotiation to
produce and distribute any motion pictures, phonograph
recordings, video discs or video cassettes, original
programming for cable or pay television, or any other
productions or programming based, in whole or in part, upon the
Characters or additional characters which Hasbro determines to
have produced or distributed.  Such rights shall be effected in
accordance with the provisions set forth in the Standard Terms
and Conditions, but shall remain in effect only if Sunbow shall
not be in breach of its obligations hereunder or in the
Standard Terms and Conditions and shall have performed its
obligations hereunder and thereunder in a manner reasonably
satisfactory to Hasbro.

8.   Sunbow's Production Fee Percentage and Other
Payments To Sunbow:  The payments made and to be made pursuant
to Paragraph 4 hereof by Hasbro to Sunbow include a percentage
payment to Sunbow based upon the costs set forth under the
caption "Production" (the "Production Fee Percentage") set
forth in Exhibits "A" through "D" hereof.

Such percentage (included in the Paragraph 4
payments) shall be 6% with respect to the 60 Programs in

2245A/-5-
6/22/87

SUN  0791

Exhibits "A" through "D" and 10% for the five Programs
transferred from Super Sunday.

In addition, Sunbow shall be entitled to the share of the
Sunbow net Proceeds and to the percentage of the "media value"
or "syndicated value" of all time utilized by Hasbro subsequent
to the Initial Telecast Term as provided for in Paragraph 5(a)
of Section H of the Standard Terms and Conditions, which is
payable only with respect to the amounts set forth on said
Exhibits and not with respect to any costs in excess thereof
for any of the items listed therein.

    9.   Term:  Provided that it is not in breach of this
Agreement or the Standard Terms and Conditions, Sunbow's
distribution rights shall be perpetual.

    10.  Territory:  The territory covered by this
Agreement shall be the entire universe.

    11.  Profit Participation of Marvel Entertainment
Group ("Marvel"):  Subject to compliance by Marvel with its
obligations under Sunbow's agreements with Marvel, Marvel shall
be entitled to, and Sunbow shall pay to Marvel from the Sunbow
Net Proceeds, an amount equal to 10% of the Sunbow Net Proceeds
as defined in Section H of the Standard Terms and Conditions.
Further, Marvel shall be entitled to receive an amount equal to
10% of 65% of the "media value" or "syndicated value" of time
utilized directly by Hasbro or any of its companies during the
Subsequent Term as such terms are defined in Paragraph 5(a) of

2245A/-6-
6/22/87

SUN 0792

Section H of the Standard Terms and Conditions.

Dated:  New York, New York
                    , 198

                              HASBRO, INC.


                              By:_____

                              SUNBOW PRODUCTIONS, INC.


                              By:_____

2245A/-7-
6/22/87

SUN  0793

EXHIBIT A

HASBRO/SUNBOW PRODUCTION LICENSE AGREEMENT     JULY 15,1987

TITLE:  J E M ( 1 6 )

ESTIMATE #  2029

| PRODUCTION | BUDGET |
|---|---|
| Animation | $3,564,000.00 |
| Script | $130,000.00 |
| Talent | $45,000.00 |
| Music | $400,000.00 |
| Production | $28,000.00 |
| Total Production | $4,167,000.00 |

| OTHER PRODUCTION | |
|---|---|
| Professional Fee @ 6% | $249,840.00 |
| Operations (Insurance etc) | $40,000.00 |
| Residuals | $300,000.00 |
| Holding Cost | |
| CA. Sales Tax | |
| Total Other Production | $589,840.00 |

| SALES | |
|---|---|
| Sales | $249,300.00 |
| Sales Material | $1,100.00 |
| Station Promotion Material | $23,700.00 |
| Public Relations | $9,700.00 |
| Conventions | $65,300.00 |
| Advertising | $16,300.00 |
| Station Compensation | $8,600.00 |
| Total Sales | $372,000.00 |

| DISTRIBUTION | |
|---|---|
| Syndication Fee | $263,100.00 |
| Distribution | $132,300.00 |
| Total Distribution | $395,400.00 |

| RESERVE | $0.00 |
|---|---|

| TRANSFER | $688,200.00 ð |
|---|---|

| PROJECT COST | $6,212,440.00 |
|---|---|

| REVENUES | |
|---|---|
| Partner Contribution | |
| Stations | |
| Total Revenue | $0.00 |

| TOTAL NET COST | $6,212,440.00 |
|---|---|

SUN 0794

EXHIBIT B

HASBRO/SUNBOW PRODUCTION LICENSE AGREEMENT          JULY 15, 1987

TITLE:  J E M ( 5 )

ESTIMATE #  2035

| PRODUCTION | BUDGET |
|---|---|
| Animation | $1,395,000.00 |
| Script | ($40,000.00 |
| Talent | $5,000.00 |
| Music | $120,000.00 |
| Production | $5,000.00 |
| Total Production | $1,565,000.00 |

| OTHER PRODUCTION | |
|---|---|
| Professional Fee @ 6% | $93,900.00 |
| Operations (Insurance etc) | |
| Residuals | |
| Holding Cost | |
| CA. Sales Tax | |
| Total Other Production | $93,900.00 |

| SALES | |
|---|---|
| Sales | |
| Sales Material | |
| Station Promotion Material | |
| Public Relations | |
| Conventions | |
| Advertising | |
| Station Compensation | |
| Total Sales | $0.00 |

| DISTRIBUTION | |
|---|---|
| Syndication Fee | |
| Distribution | |
| Total Distribution | $0.00 |

| RESERVE | $0.00 |
|---|---|

TRANSFER

| PROJECT COST | $1,658,900.00 |
|---|---|

| REVENUES | |
|---|---|
| Partner Contribution | |
| Stations | |
| Total Revenue | $0.00 |

| TOTAL NET COST | $1,658,900.00 |
|---|---|

SUN  0795

EXHIBIT C

HASBRO/SUNBOW PRODUCTION LICENSE AGREEMENT          JULY 15, 1987

TITLE:   J E M ( 2 2 )

ESTIMATE # 2045

| PRODUCTION | BUDGET |
|---|---|
| Animation | $5,863,000.00 |
| Script | $242,000.00 |
| Talent | $50,800.00 |
| Music | $440,000.00 |
| Production | $141,000.00 |
| Total Production | $6,736,800.00 |

OTHER PRODUCTION

| | |
|---|---|
| Professional Fee @ 6% | $404,200.00 |
| Operations (Insurance etc) | $73,000.00 |
| Residuals | $800,000.00 |
| Holding Cost | $57,000.00 |
| CA. Sales Tax | $160,600.00 |
| Total Other Production | $1,494,800.00 |

SALES

| | |
|---|---|
| Sales | $600,000.00 |
| Sales Material | |
| Station Promotion Material | $50,000.00 |
| Public Relations | |
| Conventions | $122,000.00 |
| Advertising | $28,000.00 |
| Station Compensation | |
| Total Sales | $800,000.00 |

DISTRIBUTION

| | |
|---|---|
| Syndication Fee | $400,000.00 |
| Distribution | $745,800.00 |
| Total Distribution | $1,145,800.00 |

| | |
|---|---|
| RESERVE | $110,000.00 |
| TRANSFER | |
| PROJECT COST | $10,287,400.00 |

REVENUES

| | |
|---|---|
| Partner Contribution | ($6,000,000.00) |
| Stations | |
| Total Revenue | ($6,000,000.00) |
| TOTAL NET COST | $4,287,400.00 |

SUN 0796

EXHIBIT D.

HASBRO/SUNBOW PRODUCTION LICENSE AGREEMENT        JULY 15, 1987

TITLE:  J E M ( 1 7 )

ESTIMATE #  2050

| PRODUCTION | BUDGET |
|---|---|
| Animation | $4,463,200.00 |
| Script | $187,000.00 |
| Talent | $39,200.00 |
| Music | $340,000.00 |
| Production | $109,000.00 |
| Total Production | $5,138,400.00 |

| OTHER PRODUCTION | |
|---|---|
| Professional Fee @ 6% | $308,300.00 |
| Operations (Insurance etc) | |
| Residuals | |
| Holding Cost | $124,100.00 |
| CA. Sales Tax | |
| Total Other Production | $432,400.00 |

| SALES | |
|---|---|
| Sales | |
| Sales Material | |
| Station Promotion Material | |
| Public Relations | |
| Conventions | |
| Advertising | |
| Station Compensation | |
| Total Sales | $0.00 |

| DISTRIBUTION | |
|---|---|
| Syndication Fee | |
| Distribution | |
| Total Distribution | $0.00 |

| RESERVE | $85,000.00 |
|---|---|

| TRANSFER | |
|---|---|

| PROJECT COST | $5,655,800.00 |
|---|---|

| REVENUES | |
|---|---|
| Partner Contribution | |
| Stations | |
| Total Revenue | $0.00 |

| TOTAL NET COST | $5,655,800.00 |
|---|---|

```
MAESTRO/SUNBOW PRODUCTION LICENSE AGREEMENT          EXHIBIT 1

TITLE :   JEM (16)
ESTIMATE #    2923

PRODUCTION                        BUDGET
-----------                       ------------
   Animation                      $3,587,683.60
   Script                         130,000.00
   Talent                         18,003.10
   Music                          390,901.43
   Production                     21,358.16

Total production                  $4,187,933.05

OTHER PRODUCTION
----------------
   Production Fee 9    5.0%%       $319,393.19
   Operations (Insurance, Etc)    16,790.91
   Rebates                        298,655.46
   Staff Production
   Holding Cost
   CA. Sales Tax

Total Other Production            $586,901.26

SALES
-----
   Sales                          $53,893.16
   Sales Material                 1,633.36
   Station Promo Material         23,613.64
   Public Relations               7,509.11
   Contractions                   36,565.49
   Advertising                    16,290.33
   Staffed Compensation           11,385.33

Total Sales                       $302,513.61

Distribution
------------
   Unification Fee                $63,595.04
   Distribution                   124,378.45

Total Distribution                $186,883.45

RESERVE                           0.00

TRANSFERS                         $384,243.00
---------

TOTAL COST                        $6,186,181.30
                                  ============
```

SUN  0798

HANSON/JOHNSON PRODUCTION LICENSE AGREEMENT          EXHIBIT A

TITLE :   JSN (5)
ESTIMATE #   2035

| PRODUCTION | BUDGET |
|---|---|
| Animation | $1,205,800.00 |
| Script | 13,875.00 |
| Talent | |
| Music | 106,530.41 |
| Production | 4,927.06 |
| | |
| Total production | $1,323,332.47 |

| OTHER PRODUCTION | |
|---|---|
| Production Fee @   5.00% | $92,411.95 |
| Operations (Insurance etc) | |
| Deliverals | |
| Staff Production | |
| Holding Cost | |
| CA. Sales Tax | |
| | |
| Total Other Production | $92,411.95 |

| SALES | |
|---|---|
| Sales | |
| Sales Material | |
| Station Promo Material | |
| Public Relations | |
| Conventions | |
| Advertising | |
| Station Compensation | |
| | |
| Total Sales | $0.00 |

| DISTRIBUTION | |
|---|---|
| Syndication Fee | |
| Distribution | |
| | |
| Total Distribution | $0.00 |

| RESERVE | 0.00 |

| TRANSFER | |
|---|---|
| | |
| TOTAL COST | $1,816,564.32 |

SUN  0799

```
HASBRO/SUNBOW PRODUCTION LICENSE AGREEMENT          EXHIBIT A

TITLE :   JEM (22)
ESTIMATE #   2145

PRODUCTION                         BUDGET
----------                         ------------

    Animation                     $5,305,953.74
    Script                           237,555.00
    Talent                            25,445.51
    Music                            641,590.35
    Production                       130,144.18
                                   ------------
Total production                  $6,515,153.13

OTHER PRODUCTION
-----------------

    Production Fee @   5.00%         395,559.60
    Operations (Insurance etc)        75,555.00
    Residuals                        753,555.00
    Staff Production
    Holding Cost                      57,755.60
    CA. Sales Tax                    165,755.51
                                   ------------
Total Other Production            $1,439,595.15

SALES
-----

    Sales                            235,445.00
    Sales Material
    Station Promo Material            11,111.15
    Public Relations
    Conventions                      295,555.60
    Advertising                       55,117.51
    Station Compensation
                                   ------------
Total Sales                        $151,515.35

Distribution
------------

    Syndication Fee                  155,555.60
    Distribution                     555,555.60
                                   ------------
Total Distribution                 $525,555.36

RESERVE                               5.60
Partner Investment               (5,435,555.55)
TRANSFER
                                   ------------
TOTAL COST                        $4,535,555.95
                                   ============
```

SUN  0800

HASBRO/SUNBOW PRODUCTION LICENSE AGREEMENT          EXHIBIT A

TITLE :   JEM (??)
ESTIMATE #   2050

PRODUCTION                              BUDGET
-----------                            --------

    Animation              $3,397,155.65
    Script                    70,965.00
    Talent                     3,709.00
    Music                    266,752.35
    Production                 9,327.75

Total production           $3,861,616.26
                           --------------

OTHER PRODUCTION
---------------

    Production Fee @   6.00%    256,436.19
    Operations (insurance, etc.)
    Residuals
    Staff Production
    Holding Cost
    CA. Sales Tax              43,369.15
                           --------------
Total Other Production      $297,605.41

SALES
-----

    Sales
    Sales Material
    Station Promo Material
    Public Relations
    Conventions
    Advertising
    Station Compensation
                           --------------
Total Sales                    $0.00

Distribution
------------

    Syndication Fee
    Distribution
                           --------------
Total Distribution             $0.00

RESERVE                        $0.00
-------

TRANSFER
--------
                           --------------
TOTAL COST                 $5,723,117.19
                           ==============

.

## MY LITTLE PONY I
## PRODUCTION LICENSE AGREEMENT

AGREEMENT made and entered into by and between Hasbro, Inc. ("Hasbro"), Milton Bradley International, Inc. ("MBI"), Sunbow Productions, Inc. ("Sunbow"), Starwild Music, Inc. ("Starwild"), and Wildstar Music, Inc. ("Wildstar").

Hasbro hereby engages Sunbow, and Sunbow hereby agrees, to produce certain television programming as defined in Paragraph 2 below ("Program") and to distribute such Program in the United States, its territories and possessions and Canada, and MBI hereby engages Sunbow, and Sunbow hereby agrees, to distribute such Program throughout the universe excluding the United States, its territories and possessions and Canada, all in accordance with the provisions herein contained and the Standard Terms and Conditions attached hereto and incorporated fully herein by reference ("Standard Terms and Conditions").

Hasbro and Sunbow hereby engage Starwild and Wildstar, and Starwild and Wildstar agree, to publish those musical compositions initially created for synchronization with the Program in accordance with the provisions herein contained and the Standard Terms and Conditions.

1.    The Property.  The Program shall be based on the name, characters, symbols, designs, likenesses and visual representations of MY LITTLE PONY (the "Property"), all of which Hasbro and MBI represent to be owned or controlled by them as set forth in the Preamble to and Paragraph L of the Standard Terms and Conditions.

2.    The Program.  The Program shall consist of one (1) episode under the general title: "MY LITTLE PONY I."  The Program shall be animated in color, and shall be approximately 28:50 minutes in length (including main and end titles and commercials).  The Program is to be produced for and will be initially telecast on a syndicated basis over so-called "free television" as such term is defined in Paragraph D(1) of the Standard Terms and Conditions.

SUN 0802

3.   _Completion of Production_.   The one (1) Program shall be completed and delivered in time for initial telecast to commence April, 1984.

4.   _Payment for Program_.

(a)   In consideration for Sunbow's production and initial distribution of the Program for the Initial Telecast Term, Hasbro will pay to Sunbow the "Costs of Production" (as defined in Paragraph H(3)(2) of the Standard Terms and Conditions) and those costs, expenses and fees pertaining to free television syndication of the Program in the United States and its territories and possessions for the Initial Telecast Term, all of which amounts total Eight Hundred Forty-Two Thousand Two Hundred Twenty-Five and 61/100 Dollars ($842,225.61) as enumerated in Exhibit A appended hereto.

(b)   The aforementioned payments include all (i) sales expenses, distribution fees and commissions, and distribution expenses in connection with the syndication of the Program over free television (as defined in the Standard Terms and Conditions) in the United States and its territories and possessions, for the "Initial Telecast Term," as defined in Paragraph 5 below, (ii) all residual fees (other than so-called supplemental market payments) for the distribution of the Program on a syndicated basis over free television for the Initial Telecast Term due to performing and other creative personnel or those furnishing same and applicable union payments, (iii) Sunbow's Production Fee Percentage as set forth in Paragraph 8 of this Production License Agreement ("PLA"), and (iv) all other "Costs of Production" as defined in the Standard Terms and Conditions.

5.   _Initial Telecast Term—Hasbro's Media Time_.   The "Initial Telecast Term" for the one (1) Program shall be April 1, 1984 through September 28, 1988.   In regard to the distribution of the Program in the Initial Telecast Term, as between Hasbro and Sunbow, Hasbro shall be entitled to receive, without the payment of additional compensation to Sunbow, (i) all commercial time granted by television stations in consideration for carrying the Program and (ii) one hundred percent (100%) of all monies paid by television stations in consideration for carrying the Program.

-2-

SUN 0803

6.  Hasbro's Time Subsequent to the Initial Telecast Term.  Hasbro shall have the right to determine if the Program is to be distributed subsequent to the Initial Telecast Term ('Subsequent Term') or whether to 'rest' same from time to time during the Subsequent Term.  Subject to the immediate preceding sentence and provided that Sunbow is not in breach of its obligations hereunder or under the Standard Terms and Conditions, all distribution during the Subsequent Term shall be effected through Sunbow under the terms and provisions set forth herein and in the Standard Terms and Conditions.  In this regard, Hasbro shall have the right, exercisable by notice to Sunbow given in reasonable time prior to the commencement of the Subsequent Term, to utilize for itself the media time available on the Program during the Subsequent Term.

7.  Additional Programming.  Sunbow shall have a first negotiation right to both produce and distribute for telecast over free television as herein provided, any additional Programs in the Series and any additional television programming based on the Property or any principal character thereof which Hasbro determines to have produced primarily for initial telecast over free television, as well as a right of first negotiation to produce and distribute any motion pictures, phonograph recordings, videodiscs or videocassettes, original programming for cable or pay television, or any other productions or programming based, in whole or in part, upon the Property which Hasbro determines to have produced or distributed.  Such right of first negotiation shall be effected in accordance with the provisions set forth in the Standard Terms and Conditions, but such right shall remain effective only if Sunbow is not in breach of its obligations under the PLA or the Standard Terms and Conditions and Sunbow has performed its obligations hereunder and thereunder in a manner reasonably satisfactory to Hasbro.

8.  Sunbow's Compensation.  The payments made and to be made pursuant to Paragraph 4 hereof by Hasbro to Sunbow include a percentage payment to Sunbow ('Production Fee Percentage') based upon the animation costs, script/teleplay costs, studio costs, costs of music, costs and fees of contractors, costs of ..., costs of travel in connection with the production of the Program, and talent costs (including all performing, creative, technical and other personnel) but excluding so-called 'supplemental market' payments to or on behalf of performing artists, all of which are enumerated under the caption 'Production' in Exhibit A.

-3-

SUN 0804

Said Production Fee Percentage shall be ten percent (10%) with respect to the Program produced hereunder.  In addition, Sunbow shall be entitled to the "Sunbow Share" of the "Distribution Proceeds" (as such terms are defined in the Standard Terms and Conditions), if any, and to the percentage of the "Barter Media Value" (as defined in the Standard Terms and Conditions) of all time utilized by Hasbro subsequent to the Initial Telecast Term, all as provided for in the Standard Terms and Conditions.  All revenues and expenses regarding the Program shall be fully cross-collateralized with all revenues and expenses regarding all other episodes produced by Sunbow for initial telecast on a syndicated basis and which are based upon the Property in the determination of Distribution Proceeds pursuant to the Standard Terms and Conditions.

9.    Term.  Provided that Sunbow is not in breach of this Agreement or the Standard Terms and Conditions, Sunbow's distribution rights shall be perpetual.

10.    Territory.  The Territory covered by this Agreement shall be the entire Universe.

11.    Profit Participation of Marvel Entertainment Group ("Marvel").  Subject to compliance by Marvel with its obligations under Sunbow's agreement with Marvel and unless otherwise agreed with Marvel, Marvel shall be entitled to, and Sunbow shall pay Marvel a "Third Party Share" (as such term is defined in the Standard Terms and Conditions) in an amount equal to ten percent (10%) of the Distribution Proceeds, if any.  Further, unless otherwise agreed with Marvel, Marvel shall be entitled to receive an amount equal to ten percent (10%) of sixty-five percent (65%) of the "Barter Media Value" of time utilized directly by Hasbro or any of its companies during the Subsequent Term.

12.    Integration of Standard Terms and Conditions.  The Standard Terms and Conditions previously executed by and between the parties hereto are hereby incorporated by reference as though fully set forth herein.  In the event of

-4-

any irreconcilable inconsistency between the Standard Terms and Conditions and this Production License Agreement, this Production License Agreement shall control.

HASBRO, INC.

By: _____
Its: _____

MILTON BRADLEY INTERNATIONAL, INC.

By: _____
Its: _____

SUNBOW PRODUCTIONS, INC.

By: _____
Its: _____

STARWILD MUSIC, INC.

By: _____
Its: _____

WILDSTAR MUSIC, INC.

By: _____
Its: _____

-5-

SUN 0806

HASBRO/SUNBOW PRODUCTION LICENSE AGREEMENT             EXHIBIT R

TITLE :   MY LITTLE PONY ANIMATED SPECIAL
ESTIMATE #2005

| PRODUCTION | BUDGET |
|---|---|
| Animation | $343,888.39 |
| Script | 14,472.89 |
| Talent | 35,598.29 |
| Music | 21,509.14 |
| Production | 20,393.73 |
| Total production | 431,863.67 |

OTHER PRODUCTION

| | |
|---|---|
| Production Fee @   10:03% | 43,105.33 |
| Operations (Insurance ect) | 3,409.74 |
| Residuals | 12,731.43 |
| Holding Cost | |
| CA  Sales Tax | |
| Total Other Production | 59,365.61 |

SALES

| | |
|---|---|
| Sales | 177,968.25 |
| Sales Material | |
| Station Promo Material | |
| Public Relations | |
| Conventions | |
| Advertising | |
| Station Compensation | 173,065.85 |
| Total Sales | 351,033.13 |

Distribution

| | |
|---|---|
| Syndication Fee | |
| Distribution | |
| Total Distribution | 0.00 |

| | |
|---|---|
| RESERVE | 0.00 |
| TRANSFER | 0.00 |
| TOTAL COST | $842,255.51 |

# MY LITTLE PONY II
## PRODUCTION LICENSE AGREEMENT

AGREEMENT made and entered into by and between Hasbro, Inc. ('Hasbro'), Milton Bradley International, Inc. ('MBI'), Sunbow Productions, Inc. ('Sunbow'), Starwild Music, Inc. ('Starwild'), and Wildstar Music, Inc. ('Wildstar').

Hasbro hereby engages Sunbow, and Sunbow hereby agrees, to produce certain television programming as defined in Paragraph 2 below ('Program') and to distribute such Program in the United States, its territories and possessions and Canada, and MBI hereby engages Sunbow, and Sunbow hereby agrees, to distribute such Program throughout the universe excluding the United States, its territories and possessions and Canada, all in accordance with the provisions herein contained and the Standard Terms and Conditions attached hereto and incorporated fully herein by reference ('Standard Terms and Conditions').

Hasbro and Sunbow hereby engage Starwild and Wildstar, and Starwild and Wildstar agree, to publish those musical compositions initially created for synchronization with the Program in accordance with the provisions herein contained and the Standard Terms and Conditions.

1.    The Property.  The Program shall be based on the name, characters, symbols, designs, likenesses and visual representations of MY LITTLE PONY (the 'Property'), all of which Hasbro and MBI represent to be owned or controlled by them as set forth in the Preamble to and Paragraph L of the Standard Terms and Conditions.

2.    The Program.  The Program shall consist of one (1) episode under the general title: 'MY LITTLE PONY II.'  The Program shall be animated in color, and shall be approximately 28:50 minutes in length (including main and end titles and commercials).  The Program is to be produced for and will be initially telecast on a syndicated basis over so-called 'free television' as such term is defined in Paragraph D(1) of the Standard Terms and Conditions.

3.   Completion of Production.   The one (1) Program shall be completed and delivered in time for initial telecast to commence March, 1985.

4.   Payment for Program.

(a)   In consideration for Sunbow's production and initial distribution of the Program for the Initial Telecast Term, Hasbro will pay to Sunbow the "Costs of Production" (as defined in Paragraph H(3)(a) of the Standard Terms and Conditions) and those costs, expenses and fees pertaining to free television syndication of the Program in the United States and its territories and possessions for the Initial Telecast Term, all of which amounts total Eight Hundred Fifty-Six Thousand Two Hundred Thirty and 58/100 Dollars ($856,230.58) as enumerated in Exhibit A appended hereto.

(b)   The aforementioned payments include all (i) sales expenses, distribution fees and commissions, and distribution expenses in connection with the syndication of the Program over free television (as defined in the Standard Terms and Conditions) in the United States and its territories and possessions for the "Initial Telecast Term," as defined in Paragraph 5 below, (ii) all residual fees (other than so-called supplemental market payments) for the distribution of the Program on a syndicated basis over free television for the Initial Telecast Term due to performing and other creative personnel or those furnishing same and applicable union payments, (iii) Sunbow's Production Fee Percentage as set forth in Paragraph 8 of this Production License Agreement ("PLA"), and (iv) all other "Costs of Production" as defined in the Standard Terms and Conditions.

5.   Initial Telecast Term--Hasbro's Media Time.   The "Initial Telecast Term" for the one (1) Program shall be March 22, 1985 through September 28, 1988.   In regard to the distribution of the Program in the Initial Telecast Term, as between Hasbro and Sunbow, Hasbro shall be entitled to receive, without the payment of additional compensation to Sunbow, (i) all commercial time granted by television stations in consideration for carrying the Program and (ii) one hundred percent (100%) of all monies paid by television stations in consideration for carrying the Program.

-2-

SUN 0809

6.   <u>Hasbro's Time Subsequent to the Initial Telecast Term</u>.  Hasbro shall have the right to determine if the Program is to be distributed subsequent to the Initial Telecast Term ("Subsequent Term") or whether to "rest" same from time to time during the Subsequent Term.  Subject to the immediate preceding sentence and provided that Sunbow is not in breach of its obligations hereunder or under the Standard Terms and Conditions, all distribution during the Subsequent Term shall be effected through Sunbow under the terms and provisions set forth herein and in the Standard Terms and Conditions.  In this regard, Hasbro shall have the right, exercisable by notice to Sunbow given in reasonable time prior to the commencement of the Subsequent Term, to utilize for itself the media time available on the Program during the Subsequent Term.

7.   <u>Additional Programming</u>.  Sunbow shall have a first negotiation right to both produce and distribute for telecast over free television as herein provided, any additional Programs in the Series and any additional television programming based on the Property or any principal character thereof which Hasbro determines to have produced primarily for initial telecast over free television, as well as a right of first negotiation to produce and distribute any motion pictures, phonograph recordings, videodiscs or videocassettes, original programming for cable or pay television, or any other productions or programming based, in whole or in part, upon the Property which Hasbro determines to have produced or distributed.  Such right of first negotiation shall be effected in accordance with the provisions set forth in the Standard Terms and Conditions, but such right shall remain effective only if Sunbow is not in breach of its obligations under the PLA or the Standard Terms and Conditions and Sunbow has performed its obligations hereunder and thereunder in a manner reasonably satisfactory to Hasbro.

8.   <u>Sunbow's Compensation</u>.  The payments made and to be made pursuant to Paragraph 4 hereof by Hasbro to Sunbow include a percentage payment to Sunbow ("Production Fee Percentage") based upon the animation costs, script/teleplay costs, studio costs, costs of music, costs and fees of contractors, costs of sets, costs of travel in connection with the production of the Program, and talent costs (including all performing, creative, technical and other personnel) but excluding so-called "supplemental market" payments to or on behalf of performing artists, all of which are enumerated under the caption 'Production' in Exhibit A.

-3-

SUN 0810

Said Production Fee Percentage shall be ten percent (10%) with respect to the Program produced hereunder. In addition, Sunbow shall be entitled to the "Sunbow Share" of the "Distribution Proceeds" (as such terms are defined in the Standard Terms and Conditions), if any, and to the percentage of the "Barter Media Value" (as defined in the Standard Terms and Conditions) of all time utilized by Hasbro subsequent to the Initial Telecast Term, all as provided for in the Standard Terms and Conditions. All revenues and expenses regarding the Program shall be fully cross-collateralized with all revenues and expenses regarding all other episodes produced by Sunbow for initial telecast on a syndicated basis and which are based upon the Property in the determination of Distribution Proceeds pursuant to the Standard Terms and Conditions.

9.   Term.  Provided that Sunbow is not in breach of this Agreement or the Standard Terms and Conditions, Sunbow's distribution rights shall be perpetual.

10.   Territory.  The Territory covered by this Agreement shall be the entire Universe.

11.   Profit Participation of Marvel Entertainment Group ("Marvel"). Subject to compliance by Marvel with its obligations under Sunbow's agreement with Marvel and unless otherwise agreed with Marvel, Marvel shall be entitled to, and Sunbow shall pay Marvel a "Third Party Share" (as such term is defined in the Standard Terms and Conditions) in an amount equal to ten percent (10%) of the Distribution Proceeds, if any.  Further, unless otherwise agreed with Marvel, Marvel shall be entitled to receive an amount equal to ten percent (10%) of sixty-five percent (65%) of the "Barter Media Value" of time utilized directly by Hasbro or any of its companies during the Subsequent Term.

12.   Integration of Standard Terms and Conditions.  The Standard Terms and Conditions previously executed by and between the parties hereto are hereby incorporated by reference as though fully set forth herein.  In the event of

-4-

SUN 0811

any irreconcilable inconsistency between the Standard Terms and Conditions and
this Production License Agreement, this Production License Agreement shall
control.


HASBRO, INC.

By:
Its:


MILTON BRADLEY INTERNATIONAL, INC.

By:
Its:


SUNBOW PRODUCTIONS, INC.

By:
Its:


STARWILD MUSIC, INC.

By:
Its:


WILDSTAR MUSIC, INC.

By:
Its:


-5-

SUN 0812

SUNBOW/SEMCON PRODUCTION LICENSE AGREEMENT

EXHIBIT A

TITLE :" MY LITTLE PONY ANIMATED SPECIAL II
ESTIMATE #2817

| PRODUCTION | BUDGET |
|---|---|
| Animation | $388,110.89 |
| Script | 11,828.00 |
| Talent | 33,422.25 |
| Music | 28,157.38 |
| Production | 18,975.91 |
| Total production | 483,693.54 |

OTHER PRODUCTION

| | |
|---|---|
| Production Fee @   10.00% | 46,369.35 |
| Operations (Insurance est) | 2,192.00 |
| Residuals | 8,513.37 |
| Holding Cost | |
| CA. Sales Tax | |
| Total Other Production | 57,174.72 |

SALES

| | |
|---|---|
| Sales | 159,740.52 |
| Sales Material | |
| Station Promo Material | |
| Public Relations | |
| Conventions | |
| Advertising | |
| Station Compensation | 175,622.00 |
| Total Sales | 335,362.52 |

Distribution

| | |
|---|---|
| Syndication Fee | |
| Distribution | |
| Total Distribution | 0.00 |

| RESERVE | 0.00 |
|---|---|

| TRANSFER | 0.00 |
|---|---|

| TOTAL COST | 1255,230.53 |
|---|---|

SUN 0813

AUG-29-2001  11:58        SUNBOW ENT.                        2128864936    P.02/27

## THE TRANSFORMERS
## PRODUCTION LICENSE AGREEMENT

AGREEMENT made and entered into by and between Hasbro, Inc. ("Hasbro"), Milton Bradley International, Inc. ("MBI"), Sunbow Productions, Inc. ("Sunbow"), Starwild Music, Inc. ("Starwild"), and Wildstar Music, Inc. ("Wildstar").

Hasbro hereby engages Sunbow, and Sunbow hereby agrees, to produce certain television programming as defined in Paragraph 2 below ("Programs") and to distribute such Programs in the United States, its territories and possessions and Canada, and MBI hereby engages Sunbow, and Sunbow hereby agrees, to distribute such Programs throughout the universe excluding the United States, its territories and possessions and Canada, all in accordance with the provisions herein contained and the Standard Terms and Conditions attached hereto and incorporated fully herein by reference ("Standard Terms and Conditions").

Hasbro and Sunbow hereby engage Starwild and Wildstar, and Starwild and Wildstar agree, to publish those musical compositions initially created for synchronization with the Programs in accordance with the provisions herein contained and the Standard Terms and Conditions.

1.  The Property.  The Programs shall be based on the name, characters, symbols, designs, likenesses and visual representations of THE TRANSFORMERS (the "Property"), all of which Hasbro and MBI represent to be owned or controlled by them as set forth in the Preamble to and Paragraph L of the Standard Terms and Conditions.

2.  The Programs.  The Programs shall consist of a series of thirteen (13) episodes under the general title: "THE TRANSFORMERS."  The Programs shall be animated in color, and each Program shall be approximately 23:30 minutes in length (including main and end titles and commercials).  The Programs are to be produced for and will be initially released on a syndicated basis over so-called "free television" as such term is defined in Paragraph D(1) of the Standard Terms and Conditions.

SUN 0814

AUG-29-2001  11:50    SUNBOW ENT.                    2128864936   P.03/27

3.   Completion of Production.  The thirteen (13) Programs shall be completed and delivered in time for initial telecast to commence September, 1984.

4.   Payment for Programs.

(a)   In consideration for Sunbow's production and initial distribution of the Programs for the Initial Telecast Term, Hasbro will pay to Sunbow the "Costs of Production" (as defined in Paragraph 8(3)(a) of the Standard Terms and Conditions) and those costs, expenses and fees pertaining to free television syndication of the Programs in the United States and its territories and possessions for the Initial Telecast Term, all of which amounts total Three Million Five Hundred Fifty-Nine Thousand Five Hundred Five and 20/100 Dollars ($3,559,505.20) as enumerated in Exhibit A appended hereto.

(b)   The aforementioned payments include all (i) sales, expenses, distribution fees and commissions, and distribution expenses in connection with the syndication of the Programs over free television (as defined in the Standard Terms and Conditions) in the United States and its territories and possessions, for the "Initial Telecast Term," as defined in Paragraph 5 below, (ii) all residual fees (other than so-called supplemental market payments) for the distribution of the Programs on a syndicated basis over free television for the Initial Telecast Term due to performing and other creative personnel or those furnishing same and applicable union payouts, (iii) Sunbow's Production Fee Percentage as set forth in Paragraph 8 of this Production License Agreement ("PLA"), and (iv) all other "Costs of Production" as defined in the Standard Terms and Conditions.

5.   Initial Telecast Term; Hasbro's Media Time.  The "Initial Telecast Term" for the thirteen (13) Programs shall be September 1, 1984, through September 24, 1987.  In regard to the distribution of the Programs in the Initial Telecast Term, as between Hasbro and Sunbow, Hasbro shall be entitled to receive, without the payment of additional compensation to Sunbow, (i) all commercial time granted by television stations in consideration for carrying any Programs and (ii) one hundred percent (100%) of all monies paid by television stations in consideration for carrying any Programs.

-2-

SUN  0815

6.    **Hasbro's Time Subsequent to the Initial Telecast Term.** Hasbro shall
have the right to determine if the Programs are to be distributed subsequent to
the Initial Telecast Term ("Subsequent Term") or whether to "Rest" same from
time to time during the Subsequent Term.  Subject to the immediate preceding
sentence and provided that Sunbow is not in breach of its obligations hereunder
or under the Standard Terms and Conditions, all distribution during the
Subsequent Term shall be effected through Sunbow under the terms and provisions
set forth herein and in the Standard Terms and Conditions.  In this regard,
Hasbro shall have the right, exercisable by notice to Sunbow given in
reasonable time prior to the commencement of the Subsequent Term, to utilize
for itself the media time available on the Programs during the Subsequent Term.

7.    **Additional Programming.**  Sunbow shall have a first negotiation right
to both produce and distribute for telecast over free television as herein
provided, any additional Programs in the Series and any additional television
programming based on the Property or any principal character thereof which
Hasbro determines to have produced primarily for initial telecast over free
television, as well as a right of first negotiation to produce and distribute
any motion pictures, phonograph recordings, videodisc or videocassettes,
original programming for cable or pay television, or any other productions or
programming based, in whole or in part, upon the Property which Hasbro
determines to have produced or distributed.  Such right of first negotiation
shall be effected in accordance with the provisions set forth in the Standard
Terms and Conditions, but such right shall remain effective only if Sunbow is
not in breach of its obligations under the PLA or the Standard Terms and
Conditions and Sunbow has performed its obligations hereunder and thereunder in
a manner reasonably satisfactory to Hasbro.

8.    **Sunbow's Compensation.**  The payments made and to be made pursuant to
Paragraph 4 hereof by Hasbro to Sunbow include a percentage payment to Sunbow
("Production Fee Percentage") based upon the animation costs, script/teleplay
costs, studio costs, costs of music, costs and fees of contractors, costs of
sets, costs of travel in connection with the production of the Programs, and
talent costs (including all performing, creative, technical and other
personnel) but excluding so-called "supplemental market" payments to or on
behalf of performing artists, all of which are enumerated under the caption
"Production" in Exhibit A.

-3-

SUN 0816

AUG-29-2001  11:51        SUNBOW ENT.                    2128864936   P.05/27

Said Production Fee Percentage shall be nine percent (9%) with respect to the Programs produced hereunder. In addition, Sunbow shall be entitled to the 'Sunbow Share' of the 'Distribution Proceeds' (as such terms are defined in the Standard Terms and Conditions), if any, and to the percentage of the 'Barter Media Value' (as defined in the Standard Terms and Conditions) of all time utilized by Hasbro subsequent to the Initial Telecast Term, all as provided for in the Standard Terms and Conditions. All revenues and expenses regarding the Programs shall be fully cross-collateralized with all revenues and expenses regarding all other episodes produced by Sunbow for initial telecast on a syndicated basis and which are based upon the Property in the determination of Distribution Proceeds pursuant to the Standard Terms and Conditions.

9.    Term.    Provided that Sunbow is not in breach of this Agreement or the Standard Terms and Conditions, Sunbow's distribution rights shall be perpetual.

10.    Territory.    The territory covered by this Agreement shall be the entire Universe, excluding Japan.

11.    Profit Participation of Marvel Entertainment Group ("Marvel"). Subject to compliance by Marvel with its obligations under Sunbow's agreement with Marvel and unless otherwise agreed with Marvel, Marvel shall be entitled to, and Sunbow shall pay Marvel a 'Third Party Share' (as such term is defined in the Standard Terms and Conditions) in an amount equal to ten percent (10%) of the Distribution Proceeds, if any. Further, unless otherwise agreed with Marvel, Marvel shall be entitled to receive an amount equal to ten percent (10%) of sixty-five percent (65%) of the 'Barter Media Value' of time utilized directly by Hasbro or any of its companies during the Subsequent Term.

12.    Integration of Standard Terms and Conditions. The Standard Terms and Conditions previously executed by and between the parties hereto are hereby incorporated by reference as though fully set forth herein. In the event of

-4-

SUN  0817

any irreconcilable inconsistency between the Standard Terms and Conditions and
this Production License Agreement, this Production License Agreement shall
control.

HASBRO, INC.                        SUNBOW PRODUCTIONS, INC.

By:                                 By:
Its:                                Its:

MILTON BRADLEY INTERNATIONAL, INC.: STARWILD MUSIC, INC.

By:                                 By:
Its:                                Its:

                                    WILDSTAR MUSIC, INC.

                                    By:
                                    Its:

-5-

HASBRO/SUNBOW PRODUCTION LICENSE AGREEMENT              EXHIBIT A

TITLE :  TRANSFORMERS WEEKLY SERIES (13)
ESTIMATE #2016

| PRODUCTION | BUDGET |
|---|---|
| Animation | $2,669,743.00 |
| Script | 13,000.00 |
| Talent | 2,892.00 |
| Music | 2,764.34 |
| Production | 18,037.23 |
| Total production | 2,706,436.57 |

| OTHER PRODUCTION | |
|---|---|
| Production Fee @    9.00% | 243,579.29 |
| Operations (Insurance etc) | 2,377.00 |
| Residuals | 56,551.69 |
| Holding Cost | |
| CA. Sales Tax | |
| Total Other Production | 302,507.78 |

| SALES | |
|---|---|
| Sales | 399,119.23 |
| Sales Material | |
| Station Promo Material | |
| Public Relations | |
| Conventions | |
| Advertising | -441,441.42 |
| Station Compensation | |
| Total Sales | 390,560.65 |

| Distribution | |
|---|---|
| Syndication Fee | |
| Distribution | 0.00 |
| Total Distribution | 0.00 |

| RESERVE | 0.00 |
|---|---|
| TRANSFER | |
| TOTAL COST | £3,557,505.20 |

# THE TRANSFORMERS
## PRODUCTION LICENSE AGREEMENT

AGREEMENT made and entered into by and between Hasbro, Inc. ("Hasbro"), Milton Bradley International, Inc. ("MBI"), Sunbow Productions, Inc. ("Sunbow"), Starwild Music, Inc. ("Starwild"), and Wildstar Music, Inc. ("Wildstar").

Hasbro hereby engages Sunbow, and Sunbow hereby agrees, to produce certain television programming as defined in Paragraph 2 below ("Programs") and to distribute such Programs in the United States, its territories and possessions and Canada, and MBI hereby engages Sunbow, and Sunbow hereby agrees, to distribute such Programs throughout the universe excluding the United States, its territories and possessions and Canada, all in accordance with the provisions herein contained and the Standard Terms and Conditions attached hereto and incorporated fully herein by reference ("Standard Terms and Conditions").

Hasbro and Sunbow hereby engage Starwild and Wildstar, and Starwild and Wildstar agree, to publish those musical compositions initially created for synchronization with the Programs in accordance with the provisions herein contained and the Standard Terms and Conditions.

1.    The Property.   The Programs shall be based on the name, characters, symbols, designs, likenesses and visual representations of THE TRANSFORMERS (the "Property"), all of which Hasbro and MBI represent to be owned or controlled by them as set forth in the Preamble to and Paragraph L of the Standard Terms and Conditions.

2.    The Programs.   The Programs shall consist of a series of three (3) episodes under the general title: "THE TRANSFORMERS." The Programs shall be animated in color, and each Program shall be approximately 28:30 minutes in length (including main and end titles and commercials). The Programs are to be produced for and will be initially telecast on a syndicated basis over so-called "free television" as such term is defined in Paragraph D(1) of the Standard Terms and Conditions.

3.    Completion of Production.  The three (3) Programs shall be completed and delivered in time for initial telecast to commence September, 1984.

4.    Payment for Programs.

(a)    In consideration for Sunbow's production and initial distribution of the Programs for the Initial Telecast Term, Hasbro will pay to Sunbow the "Costs of Production" (as defined in Paragraph H(3)(a) of the Standard Terms and Conditions) and those costs, expenses and fees pertaining to free television syndication of the Programs in the United States and its territories and possessions for the Initial Telecast Term, all of which amounts total One Million Three Hundred Ten Thousand Seven Hundred Twenty-Eight and 68/100 Dollars ($1,310,728.68) as enumerated in Exhibit A appended hereto.

(b)    The aforementioned payments include all (i) sales expenses, distribution fees and commissions, and distribution expenses in connection with the syndication of the Programs over free television (as defined in the Standard Terms and Conditions) in the United States and its territories and possessions, for the "Initial Telecast Term," as defined in Paragraph 5 below, (ii) all residual fees (other than so-called supplemental market payments) for the distribution of the Programs on a syndicated basis over free television for the Initial Telecast Term due to performing and other creative personnel or those furnishing same and applicable union payments, (iii) Sunbow's Production Fee Percentage as set forth in Paragraph 8 of this Production License Agreement ("PLA"), and (iv) all other "Costs of Production" as defined in the Standard Terms and Conditions.

5.    Initial Telecast Term--Hasbro's Media Time.  The "Initial Telecast Term" for the three (3) Programs shall be September 1, 1984 through September 28, 1987.  In regard to the distribution of the Programs in the Initial Telecast Term, as between Hasbro and Sunbow, Hasbro shall be entitled to receive, without the payment of additional compensation to Sunbow, (i) all commercial time granted by television stations in consideration for carrying any Programs and (ii) one hundred percent (100%) of all monies paid by television stations in consideration for carrying any Programs.

-2-

SUN  0821

6.    Hasbro's Time Subsequent to the Initial Telecast Term.  Hasbro shall
have the right to determine if the Programs are to be distributed subsequent to
the Initial Telecast Term ('Subsequent Term') or whether to "rest" same from
time to time during the Subsequent Term.  Subject to the immediate preceding
sentence and provided that Sunbow is not in breach of its obligations hereunder
or under the Standard Terms and Conditions, all distribution during the
Subsequent Term shall be effected through Sunbow under the terms and provisions
set forth herein and in the Standard Terms and Conditions.  In this regard,
Hasbro shall have the right, exercisable by notice to Sunbow given in
reasonable time prior to the commencement of the Subsequent Term, to utilize
for itself the media time available on the Programs during the Subsequent Term.

7.    Additional Programming.  Sunbow shall have a first negotiation right
to both produce and distribute for telecast over free television as herein
provided, any additional Programs in the Series and any additional television
programming based on the Property or any principal character thereof which
Hasbro determines to have produced primarily for initial telecast over free
television, as well as a right of first negotiation to produce and distribute
any motion pictures, phonograph recordings, videodiscs or videocassettes,
original programming for cable or pay television, or any other productions or
programming based, in whole or in part, upon the Property which Hasbro
determines to have produced or distributed.  Such right of first negotiation
shall be effected in accordance with the provisions set forth in the Standard
Terms and Conditions, but such right shall remain effective only if Sunbow is
not in breach of its obligations under the PLA or the Standard Terms and
Conditions and Sunbow has performed its obligations hereunder and thereunder in
a manner reasonably satisfactory to Hasbro.

8.    Sunbow's Compensation.  The payments made and to be made pursuant to
Paragraph 4 hereof by Hasbro to Sunbow include a percentage payment to Sunbow
('Production Fee Percentage') based upon the animation costs, script/teleplay
costs, studio costs, costs of music, costs and fees of contractors, costs of
sets, costs of travel in connection with the production of the Programs, and
talent costs (including all performing, creative, technical and other
personnel) but excluding so-called 'supplemental market' payments to or on
behalf of performing artists, all of which are enumerated under the caption
'Production' in Exhibit A.

-3-

SUN 0822

Said Production Fee Percentage shall be nine percent (9%) with respect to the Programs produced hereunder. In addition, Sunbow shall be entitled to the "Sunbow Share" of the "Distribution Proceeds" (as such terms are defined in the Standard Terms and Conditions), if any, and to the percentage of the "Barter Media Value" (as defined in the Standard Terms and Conditions) of all time utilized by Hasbro subsequent to the Initial Telecast Term, all as provided for in the Standard Terms and Conditions. All revenues and expenses regarding the Programs shall be fully cross-collateralized with all revenues and expenses regarding all other episodes produced by Sunbow for initial telecast on a syndicated basis and which are based upon the Property in the determination of Distribution Proceeds pursuant to the Standard Terms and Conditions.

9.   Term.  Provided that Sunbow is not in breach of this Agreement or the Standard Terms and Conditions, Sunbow's distribution rights shall be perpetual.

10.   Territory.  The Territory covered by this Agreement shall be the entire Universe, excluding Japan.

11.   Profit Participation of Marvel Entertainment Group ("Marvel"). Subject to compliance by Marvel with its obligations under Sunbow's agreement with Marvel and unless otherwise agreed with Marvel, Marvel shall be entitled to, and Sunbow shall pay Marvel a "Third Party Share" (as such term is defined in the Standard Terms and Conditions) in an amount equal to ten percent (10%) of the Distribution Proceeds, if any. Further, unless otherwise agreed with Marvel, Marvel shall be entitled to receive an amount equal to ten percent (10%) of sixty-five percent (65%) of the "Barter Media Value" of time utilized directly by Hasbro or any of its companies during the Subsequent Term.

12.   Integration of Standard Terms and Conditions.  The Standard Terms and Conditions previously executed by and between the parties hereto are hereby incorporated by reference as though fully set forth herein.  In the event of

-4-

SUN 0823

any irreconcilable inconsistency between the Standard Terms and Conditions and this Production License Agreement, this Production License Agreement shall control.

HASBRO, INC.

By: _____
Its: _____

SUNBOW PRODUCTIONS, INC.

By: _____
Its: _____

MILTON BRADLEY INTERNATIONAL, INC.

By: _____
Its: _____

STARWILD MUSIC, INC.

By: _____
Its: _____

WILDSTAR MUSIC, INC.

By: _____
Its: _____

-5-

SUN 0824

HASBRO/SUNBOW PRODUCTION LICENSE AGREEMENT          EXHIBIT A

TITLE :  TRANSFORMERS WEEKLY SERIES (3)
ESTIMATE #2005

| PRODUCTION | BUDGET |
|---|---|
| Animation | 1,984,751.00 |
| Script | 48,691.20 |
| Talent | 6,557.03 |
| Music | 3,525.00 |
| Production | 7,759.50 |
| **Total production** | **1,051,206.25** |

| OTHER PRODUCTION | |
|---|---|
| Production Fee @   9.00% | 94,509.55 |
| Operations (Insurance act) | 2,531.80 |
| Residuals | 25,997.40 |
| Holding Cost | |
| CA. Sales Tax | |
| **Total Other Production** | **123,125.55** |

| SALES | |
|---|---|
| Sales | 113,355.31 |
| Sales Material | |
| Station Promo Material | |
| Public Relations | |
| Conventions | |
| Advertising | |
| Station Compensation | 13,999.12 |
| **Total Sales** | **126,355.43** |

| Distribution | |
|---|---|
| Syndication Fee | |
| Distribution | |
| **Total Distribution** | **0.00** |

| RESERVE | 0.00 |
|---|---|

| TRANSFER | 0.00 |
|---|---|

| **TOTAL COST** | **$1,318,728.63** |
|---|---|

SUN 0825

# THE TRANSFORMERS
## PRODUCTION LICENSE AGREEMENT

AGREEMENT made and entered into by and between Hasbro, Inc. ("Hasbro"), Milton Bradley International, Inc. ("MBI"), Sunbow Productions, Inc. ("Sunbow"), Starwild Music, Inc. ("Starwild"), and Wildstar Music, Inc. ("Wildstar").

Hasbro hereby engages Sunbow, and Sunbow hereby agrees, to produce certain television programming as defined in Paragraph 2 below ("Programs") and to distribute such Programs in the United States, its territories and possessions and Canada, and MBI hereby engages Sunbow, and Sunbow hereby agrees, to distribute such Programs throughout the universe excluding the United States and its territories and possessions, Canada and Japan, all in accordance with the provisions herein contained and the Standard Terms and Conditions attached hereto and incorporated fully herein by reference ("Standard Terms and Conditions").

Hasbro and Sunbow hereby engage Starwild and Wildstar, and Starwild and Wildstar agree, to publish those musical compositions initially created for synchronization with the Programs in accordance with the provisions herein contained and the Standard Terms and Conditions.

1.    The Property.  The Programs shall be based on the name, characters, symbols, designs, likenesses and visual representations of THE TRANSFORMERS (the "Property"), all of which Hasbro and MBI represent to be owned or controlled by them as set forth in the Preamble to and Paragraph L of the Standard Terms and Conditions.

2.    The Programs.  The Programs shall consist of a series of three (3) episodes under the general title: "THE TRANSFORMERS."  The Programs shall be animated in color, and each Program shall be approximately 28:50 minutes in length (including main and end titles and commercials).  The Programs are to be produced for and will be initially telecast on a syndicated basis over so-called "free television" as such term is defined in Paragraph D(1) of the Standard Terms and Conditions.

SUN 0826

3. <u>Completion of Production</u>. The three (3) Programs shall be completed and delivered in time for initial telecast to commence September, 1987.

4. <u>Payment for Programs</u>.

(a) In consideration for Sunbow's production and initial distribution of the Programs for the Initial Telecast Term, Hasbro will pay to Sunbow the 'Costs of Production' (as defined in Paragraph H(3)(a) of the Standard Terms and Conditions) and those costs, expenses and fees pertaining to free television syndication of the Programs in the United States and its territories and possessions for the Initial Telecast Term, all of which amounts total Eight Hundred Ninety-One Thousand One Hundred Ninety-Seven and 47/100 Dollars ($891,197.47) as enumerated in Exhibit A appended hereto.

(b) The aforementioned payments include all (i) sales expenses, distribution fees and commissions, and distribution expenses in connection with the syndication of the Programs over free television (as defined in the Standard Terms and Conditions) in the United States and its territories and possessions, for the "Initial Telecast Term," as defined in Paragraph 5 below, (ii) all residual fees (other then so-called supplemental market payments) for the distribution of the Programs on a syndicated basis over free television for the Initial Telecast Term due to performing and other creative personnel or those furnishing same and applicable union payments, (iii) Sunbow's Production Fee Percentage as set forth in Paragraph 8 of this Production License Agreement ("PLA"), and (iv) all other "Costs of Production" as defined in the Standard Terms and Conditions.

5. <u>Initial Telecast Term--Hasbro's Media Time</u>. The "Initial Telecast Term" for the three (3) Programs shall be September 14, 1987 through September 18, 1988. In regard to the distribution of the Programs in the Initial Telecast Term, as between Hasbro and Sunbow, Hasbro shall be entitled to receive, without the payment of additional compensation to Sunbow, (i) all commercial time granted by television stations in consideration for carrying any Programs and (ii) one hundred percent (100%) of all monies paid by television stations in consideration for carrying any Programs.

-2-

SUN 0827

6.    <u>Hasbro's Time Subsequent to the Initial Telecast Term</u>. Hasbro shall have the right to determine if the Programs are to be distributed subsequent to the Initial Telecast Term ("Subsequent Term") or whether to "rest" same from time to time during the Subsequent Term.    Subject to the immediate preceding sentence and provided that Sunbow is not in breach of its obligations hereunder or under the Standard Terms and Conditions, all distribution during the Subsequent Term shall be effected through Sunbow under the terms and provisions set forth herein and in the Standard Terms and Conditions.    In this regard, Hasbro shall have the right, exercisable by notice to Sunbow given in reasonable time prior to the commencement of the Subsequent Term, to utilize for itself the media time available on the Programs during the Subsequent Term.

7.    <u>Additional Programming</u>.  Sunbow shall have a first negotiation right to both produce and distribute for telecast over free television as herein provided, any additional Programs in the Series and any additional television programming based on the Property or any principal character thereof which Hasbro determines to have produced primarily for initial telecast over free television, as well as a right of first negotiation to produce and distribute any motion pictures, phonograph recordings, videodiscs or videocassettes, original programming for cable or pay television, or any other productions or programming based, in whole or in part, upon the Property which Hasbro determines to have produced or distributed.  Such right of first negotiation shall be effected in accordance with the provisions set forth in the Standard Terms and Conditions, but such right shall remain effective only if Sunbow is not in breach of its obligations under the PLA or the Standard Terms and Conditions and Sunbow has performed its obligations hereunder and thereunder in a manner reasonably satisfactory to Hasbro.

8.    <u>Sunbow's Compensation</u>.  The payments made and to be made pursuant to Paragraph 4 hereof by Hasbro to Sunbow include a percentage payment to Sunbow ("Production Fee Percentage") based upon the animation costs, script/teleplay costs, studio costs, costs of music, costs and fees of contractors, costs of sets, costs of travel in connection with the production of the Programs, and talent costs (including all performing, creative, technical and other personnel) but excluding so-called "supplemental market" payments to or on behalf of performing artists, all of which are enumerated under the caption "Production" in Exhibit A.

-3-

SUN 0828

Said Production Fee Percentage shall be six percent (5%) with respect to the Programs produced hereunder. In addition, Sunbow shall be entitled to the 'Sunbow Share' of the 'Distribution Proceeds' (as such terms are defined in the Standard Terms and Conditions), if any, and to the percentage of the 'Barter Media Value' (as defined in the Standard Terms and Conditions) of all time utilized by Hasbro subsequent to the Initial Telecast Term, all as provided for in the Standard Terms and Conditions. All revenues and expenses regarding the Programs shall be fully cross-collateralized with all revenues and expenses regarding all other episodes produced by Sunbow for initial telecast on a syndicated basis and which are based upon the Property in the determination of Distribution Proceeds pursuant to the Standard Terms and Conditions.

9.    Term.    Provided that Sunbow is not in breach of this Agreement or the Standard Terms and Conditions, Sunbow's distribution rights shall be perpetual.

10.    Territory.    The Territory covered by this Agreement shall be the entire Universe, excluding Japan.

11.    Profit Participation of Marvel Entertainment Group ('Marvel'). Subject to compliance by Marvel with its obligations under Sunbow's agreement with Marvel and unless otherwise agreed with Marvel, Marvel shall be entitled to, and Sunbow shall pay Marvel a 'Third Party Share' (as such term is defined in the Standard Terms and Conditions) in an amount equal to ten percent (10%) of the Distribution Proceeds, if any. Further, unless otherwise agreed with Marvel, Marvel shall be entitled to receive an amount equal to ten percent (10%) of sixty-five percent (65%) of the 'Barter Media Value' of time utilized directly by Hasbro or any of its companies during the Subsequent Term.

12.    Integration of Standard Terms and Conditions.    The Standard Terms and Conditions previously executed by and between the parties hereto are hereby incorporated by reference as though fully set forth herein. In the event of

-4-

any irreconcilable inconsistency between the Standard Terms and Conditions and this Production License Agreement, this Production License Agreement shall control.

HASBRO, INC.

By: _____
Its: _____

SUNBOW PRODUCTIONS, INC.

By: _____
Its: _____

MILTON BRADLEY INTERNATIONAL, INC.

By: _____
Its: _____

STARWILD MUSIC, INC.

By: _____
Its: _____

WILDSTAR MUSIC, INC.

By: _____
Its: _____

-5-

HASBRO/SUNBOW PRODUCTION LICENSE AGREEMENT     EXHIBIT A
TITLE :  TRANSFORMERS (?)
ESTIMATE #  2848

| PRODUCTION | BUDGET |
|---|---|
| Animation | $350,000.00 |
| Script | 17,500.00 |
| Talent | |
| Music | 10.00 |
| Production | 13,583.71 |
| Total production | $381,113.75 |

OTHER PRODUCTION
---------------

| Production Fee @    6.00% | 40,833.15 |
| Operations (Insurance etc) | 2,163.25 |
| Residuals | |
| Editing Cost | |
| Ca. Sales Tax | |
| Total Other Production | $12,363.30 |

SALES
-----

| Sales | $61,113.75 |
| Sales Material | |
| Station Promo Material | |
| Public Relations | |
| Conventions | |
| Advertising | |
| Station Compensation | |
| Total Sales | $61,113.75 |

Distribution
------------

| Syndication Fee | |
| Distribution | |
| Total Distribution | $0.00 |
| RESERVE | 0.00 |
| TRANSFER | 0.00 |
| TOTAL COST | $391,113.17 |

## THE TRANSFORMERS
## PRODUCTION LICENSE AGREEMENT

AGREEMENT made and entered into by and between Hasbro, Inc. ("Hasbro"), Milton Bradley International, Inc. ("MBI"), Sunbow Productions, Inc. ("Sunbow"), Starwild Music, Inc. ("Starwild"), and Wildstar Music, Inc. ("Wildstar").

Hasbro hereby engages Sunbow, and Sunbow hereby agrees, to produce certain television programming as defined in Paragraph 2 below ("Programs") and to distribute such Programs in the United States, its territories and possessions and Canada, and MBI hereby engages Sunbow, and Sunbow hereby agrees, to distribute such Programs throughout the universe excluding the United States and its territories and possessions, Canada and Japan, all in accordance with the provisions herein contained and the Standard Terms and Conditions attached hereto and incorporated fully herein by reference ("Standard Terms and Conditions").

Hasbro and Sunbow hereby engage Starwild and Wildstar, and Starwild and Wildstar agree, to publish those musical compositions initially created for synchronization with the Programs in accordance with the provisions herein contained and the Standard Terms and Conditions.

1.    The Property.  The Programs shall be based on the name, characters, symbols, designs, likenesses and visual representations of THE TRANSFORMERS (the "Property"), all of which Hasbro and MBI represent to be owned or controlled by them as set forth in the Preamble to and Paragraph L of the Standard Terms and Conditions.

2.    The Programs.  The Programs shall consist of a series of thirty (30) episodes under the general title: "THE TRANSFORMERS."  The Programs shall be animated in color, and each Program shall be approximately 28:50 minutes in length (including main and end titles and commercials).  The Programs are to be produced for and will be initially telecast on a syndicated basis over so-called "free television" as such term is defined in Paragraph D(1) of the Standard Terms and Conditions.

SUN  0832

3.  **Completion of Production.**  The thirty (30) Programs shall be completed and delivered in time for initial telecast to commence September, 1986.

4.  **Payment for Programs.**

(a)  In consideration for Sunbow's production and initial distribution of the Programs for the Initial Telecast Term, Hasbro will pay to Sunbow the "Costs of Production" (as defined in Paragraph H(3)(a) of the Standard Terms and Conditions) and those costs, expenses and fees pertaining to free television syndication of the Programs in the United States and its territories and possessions for the Initial Telecast Term, all of which amounts total Seven Million Seven Hundred Twenty-Nine Thousand Five Hundred Eighty-Nine and 16/100 Dollars ($7,729,589.16) as enumerated in Exhibits A and B appended hereto.

(b)  The aforementioned payments include all (i) sales expenses, distribution fees and commissions, and distribution expenses in connection with the syndication of the Programs over free television (as defined in the Standard Terms and Conditions) in the United States and its territories and possessions, for the "Initial Telecast Term," as defined in Paragraph 5 below, (ii) all residual fees (other than so-called supplemental market payments) for the distribution of the Programs on a syndicated basis over free television for the Initial Telecast Term due to performing and other creative personnel or those furnishing same and applicable union payments, (iii) Sunbow's Production Fee Percentage as set forth in Paragraph 8 of this Production License Agreement ("PLA"), and (iv) all other "Costs of Production" as defined in the Standard Terms and Conditions.

5.  **Initial Telecast Term--Hasbro's Media Time.**  The "Initial Telecast Term" for the thirty (30) Programs shall be September 15, 1986 through September 18, 1988.  In regard to the distribution of the Programs in the Initial Telecast Term, as between Hasbro and Sunbow, Hasbro shall be entitled to receive, without the payment of additional compensation to Sunbow, (i) all commercial time granted by television stations in consideration for carrying any Programs and (ii) one hundred percent (100%) of all monies paid by television stations in consideration for carrying any Programs.

-2-

SUN 0833

6.    Hasbro's Time Subsequent to the Initial Telecast Term.  Hasbro shall have the right to determine if the Programs are to be distributed subsequent to the Initial Telecast Term ("Subsequent Term") or whether to 'rest' same from time to time during the Subsequent Term.  Subject to the immediate preceding sentence and provided that Sunbow is not in breach of its obligations hereunder or under the Standard Terms and Conditions, all distribution during the Subsequent Term shall be effected through Sunbow under the terms and provisions set forth herein and in the Standard Terms and Conditions.  In this regard, Hasbro shall have the right, exercisable by notice to Sunbow given in reasonable time prior to the commencement of the Subsequent Term, to utilize for itself the media time available on the Programs during the Subsequent Term.

7.    Additional Programming.  Sunbow shall have a first negotiation right to both produce and distribute for telecast over free television as herein provided, any additional Programs in the Series and any additional television programming based on the Property or any principal character thereof which Hasbro determines to have produced primarily for initial telecast over free television, as well as a right of first negotiation to produce and distribute any motion pictures, phonograph recordings, videodiscs or videocassettes, original programming for cable or pay television, or any other productions or programming based, in whole or in part, upon the Property which Hasbro determines to have produced or distributed.  Such right of first negotiation shall be effected in accordance with the provisions set forth in the Standard Terms and Conditions, but such right shall remain effective only if Sunbow is not in breach of its obligations under the PLA or the Standard Terms and Conditions and Sunbow has performed its obligations hereunder and thereunder in a manner reasonably satisfactory to Hasbro.

8.    Sunbow's Compensation.  The payments made and to be made pursuant to Paragraph 4 hereof by Hasbro to Sunbow include a percentage payment to Sunbow ("Production Fee Percentage") based upon the animation costs, script/teleplay costs, studio costs, costs of music, costs and fees of contractors, costs of sets, costs of travel in connection with the production of the Programs, and talent costs (including all performing, creative, technical and other personnel) but excluding so-called "supplemental market" payments to or on behalf of performing artists, all of which are enumerated under the caption "Production" in Exhibits A and B.

-3-

SUN 0834

Said Production Fee Percentage shall be six percent (6%) with respect to the Programs produced hereunder. In addition, Sunbow shall be entitled to the "Sunbow Share" of the "Distribution Proceeds" (as such terms are defined in the Standard Terms and Conditions), if any, and to the percentage of the "Barter Media Value" (as defined in the Standard Terms and Conditions) of all time utilized by Hasbro subsequent to the Initial Telecast Term, all as provided for in the Standard Terms and Conditions. All revenues and expenses regarding the Programs shall be fully cross-collateralized with all revenues and expenses regarding all other episodes produced by Sunbow for initial telecast on a syndicated basis and which are based upon the Property in the determination of Distribution Proceeds pursuant to the Standard Terms and Conditions.

9.    **Term.**    Provided that Sunbow is not in breach of this Agreement or the Standard Terms and Conditions, Sunbow's distribution rights shall be perpetual.

10.    **Territory.**    The Territory covered by this Agreement shall be the entire Universe, excluding Japan.

11.    **Profit Participation of Marvel Entertainment Group ("Marvel").** Subject to compliance by Marvel with its obligations under Sunbow's agreement with Marvel and unless otherwise agreed with Marvel, Marvel shall be entitled to, and Sunbow shall pay Marvel a "Third Party Share" (as such term is defined in the Standard Terms and Conditions) in an amount equal to ten percent (10%) of the Distribution Proceeds, if any. Further, unless otherwise agreed with Marvel, Marvel shall be entitled to receive an amount equal to ten percent (10%) of sixty-five percent (65%) of the "Barter Media Value" of time utilized directly by Hasbro or any of its companies during the Subsequent Term.

12.    **Integration of Standard Terms and Conditions.**    The Standard Terms and Conditions previously executed by and between the parties hereto are hereby incorporated by reference as though fully set forth herein. In the event of

-4-

any irreconcilable inconsistency between the Standard Terms and Conditions and this Production License Agreement, this Production License Agreement shall control.

HASBRO, INC.

By: _____
Its: _____

MILTON BRADLEY INTERNATIONAL, INC.

By: _____
Its: _____

SUNBOW PRODUCTIONS, INC.

By: _____
Its: _____

STARWILD MUSIC, INC.

By: _____
Its: _____

WILDSTAR MUSIC, INC.

By: _____
Its: _____

-5-

SUN 0836

```
HASBRO/SUNBOW PRODUCTION LICENSE AGREEMENT        EXHIBIT A
TITLE :   TRANSFORMERS (24)
ESTIMATE #   2028

PRODUCTION                        BUDGET
-----------                       --------

  Animation                    $1,989,300.00
  Script                          203,500.00
  Talent                            2,443.97
  Music                             1,013.21
  Production                       35,394.13
                              --------------
Total production               23,137,160.27

OTHER PRODUCTION
---------------

  Production Fee A    6.00%       306,339.62
  Operations (Insurance etc)       94,623.71
  Residuals                       296,979.16
  Holding Cost
  CA. Sales Tax
                              --------------
Total Other Production          $647,781.32

SALES
-----

  Sales                           115,470.43
  Sales Material
  Station Promo Material            4,302.10
  Public Relations
  Conventions                      95,851.35
  Advertising                       1,202.00
  Station Compensation
                              --------------
Total Sales                      $211,344.10

Distribution
------------

  Syndication Fee                 298,990.00
  Distribution                    215,796.27
                              --------------
Total Distribution              $513,786.27

RESERVE                               0.00
-------

TRANSFER                              0.00
--------

                              --------------
TOTAL COST                     $6,112,951.03
                              ==============
```

```
MAENSO/SUNROW PRODUCTION LICENSE AGREEMENT        EXHIBIT B
TITLE :   TRANSFORMERS (S)
ESTIMATE #   2036

PRODUCTION                        BUDGET
----------                        ------
  Animation                       $1,198,313.00
  Script                          $3,500.00
  Talent
  Music
  Production                      4,310.36
                                  --------------
  Total production                $1,253,103.36

OTHER PRODUCTION
----------------
  Production Fee @   5.00%        74,512.23
  Obligations (Insurance etc)
  Residuals
  Holding Cost
  CA Sales Tax
                                  --------------
  Total Other Production          $74,512.23

SALES
-----
  Sales
  Sales Material
  Station Promo Material
  Public Relations
  Conventions
  Advertising
  MRTPE/INTV
  Station Compensation
                                  --------------
  Total Sales                     $00.00

Distribution
------------
  Sjndication Fee
  Distribution
                                  --------------
  Total Distribution              $0.00

RESERVE                           0.00
-------

TRANSFER                          0.00
--------
                                  --------------
TOTAL COST                        $1,716,335.39
                                  ==============
```

SUN 0838

# THE TRANSFORMERS
## PRODUCTION LICENSE AGREEMENT

AGREEMENT made and entered into by and between Hasbro, Inc. ("Hasbro"), Milton Bradley International, Inc. ("MBI"), Sunbow Productions, Inc. ("Sunbow"), Starwild Music, Inc. ("Starwild"), and Wildstar Music, Inc. ("Wildstar").

Hasbro hereby engages Sunbow, and Sunbow hereby agrees, to produce certain television programming as defined in Paragraph 2 below ("Programs") and to distribute such Programs in the United States, its territories and possessions and Canada, and MBI hereby engages Sunbow, and Sunbow hereby agrees, to distribute such Programs throughout the universe excluding the United States, its territories and possessions and Canada, all in accordance with the provisions herein contained and the Standard Terms and Conditions attached hereto and incorporated fully herein by reference ("Standard Terms and Conditions").

Hasbro and Sunbow hereby engage Starwild and Wildstar, and Starwild and Wildstar agree, to publish those musical compositions initially created for synchronization with the Programs in accordance with the provisions herein contained and the Standard Terms and Conditions.

1.    The Property.  The Programs shall be based on the name, characters, symbols, designs, likenesses and visual representations of THE TRANSFORMERS (the "Property"), all of which Hasbro and MBI represent to be owned or controlled by them as set forth in the Preamble to and Paragraph L of the Standard Terms and Conditions.

2.    The Programs.  The Programs shall consist of a series of forty-nine (49) episodes under the general title: "THE TRANSFORMERS."  The Programs shall be animated in color, and each Program shall be approximately 28:50 minutes in length (including main and end titles and commercials).  The Programs are to be produced for and will be initially telecast on a syndicated basis over so-called "free television" as such term is defined in Paragraph D(1) of the Standard Terms and Conditions.

3.    Completion of Production.    The forty-nine (49) Programs shall be completed and delivered in time for initial telecast to commence November, 1984.

4.    Payment for Programs.

(a)    In consideration for Sunbow's production and initial distribution of the Programs for the Initial Telecast Term, Hasbro will pay to Sunbow the "Costs of Production" (as defined in Paragraph H(3)(A) of the Standard Terms and Conditions) and those costs, expenses and fees pertaining to free television syndication of the Programs in the United States and its territories and possessions for the Initial Telecast Term, all of which amounts total Eight Million Four Hundred Sixty-Two Thousand Three Hundred Thirty-Four and 37/100 Dollars ($8,462,334.37) as enumerated in Exhibit A appended hereto.

(b)    The aforementioned payments include all (i) sales expenses, distribution fees and commissions, and distribution expenses in connection with the syndication of the Programs over free television (as defined in the Standard Terms and Conditions) in the United States and its territories and possessions, for the "Initial Telecast Term," as defined in Paragraph 5 below, (ii) all residual fees (other than so-called supplemental market payments) for the distribution of the Programs on a syndicated basis over free television for the Initial Telecast Term due to performing and other creative personnel or those furnishing same and applicable union payments, (iii) Sunbow's Production Fee Percentage as set forth in Paragraph 8 of this Production License Agreement ("PLA"), and (iv) all other "Costs of Production" as defined in the Standard Terms and Conditions.

5.    Initial Telecast Term - Hasbro's Media Time.    The "Initial Telecast Term" for the forty-nine (49) Programs shall be November 1, 1984 through September 28, 1987.    In regard to the distribution of the Programs in the Initial Telecast Term, as between Hasbro and Sunbow, Hasbro shall be entitled to receive, without the payment of additional compensation to Sunbow, (i) all commercial time granted by television stations in consideration for carrying any Programs and (ii) one hundred percent (100%) of all monies paid by television stations in consideration for carrying any Programs.

-2-

SUN 0840

6.    <u>Hasbro's Time Subsequent to the Initial Telecast Term</u>.  Hasbro shall have the right to determine if the Programs are to be distributed subsequent to the Initial Telecast Term ("Subsequent Term") or whether to "rest" same from time to time during the Subsequent Term.    Subject to the immediate preceding sentence and provided that Sunbow is not in breach of its obligations hereunder or under the Standard Terms and Conditions, all distribution during the Subsequent Term shall be effected through Sunbow under the terms and provisions set forth herein and in the Standard Terms and Conditions.    In this regard, Hasbro shall have the right, exercisable by notice to Sunbow given in reasonable time prior to the commencement of the Subsequent Term, to utilize for itself the media time available on the Programs during the Subsequent Term.

7.    <u>Additional Programming</u>.  Sunbow shall have a first negotiation right to both produce and distribute for telecast over free television as herein provided, any additional Programs in the Series and any additional television programming based on the Property or any principal character thereof which Hasbro determines to have produced primarily for initial telecast over free television, as well as a right of first negotiation to produce and distribute any motion pictures, phonograph recordings, videodiscs or videocassettes, original programming for cable or pay television, or any other productions or programming based, in whole or in part, upon the Property which Hasbro determines to have produced or distributed.    Such right of first negotiation shall be effected in accordance with the provisions set forth in the Standard Terms and Conditions, but such right shall remain effective only if Sunbow is not in breach of its obligations under the PLA or the Standard Terms and Conditions and Sunbow has performed its obligations hereunder and thereunder in a manner reasonably satisfactory to Hasbro.

8.    <u>Sunbow's Compensation</u>.  The payments made and to be made pursuant to Paragraph 4 hereof by Hasbro to Sunbow include a percentage payment to Sunbow ("Production Fee Percentage") based upon the animation costs, script/teleplay costs, studio costs, costs of music, costs and fees of contractors, costs of sets, costs of travel in connection with the production of the Programs, and talent costs (including all performing, creative, technical and other personnel) but excluding so-called "supplemental market" payments to or on behalf of performing artists, all of which are enumerated under the caption "Production" in Exhibit A.

-3-

SUN 0841

Said Production Fee Percentage shall be nine percent (9%) with respect to the Programs produced hereunder. In addition, Sunbow shall be entitled to the 'Sunbow Share' of the 'Distribution Proceeds' (as such terms are defined in the Standard Terms and Conditions), if any, and to the percentage of the 'Barter Media Value' (as defined in the Standard Terms and Conditions) of all time utilized by Hasbro subsequent to the Initial Telecast Term, all as provided for in the Standard Terms and Conditions. All revenues and expenses regarding the Programs shall be fully cross-collateralized with all revenues and expenses regarding all other episodes produced by Sunbow for initial telecast on a syndicated basis and which are based upon the Property in the determination of Distribution Proceeds pursuant to the Standard Terms and Conditions.

9.    Term.   Provided that Sunbow is not in breach of this Agreement or the Standard Terms and Conditions, Sunbow's distribution rights shall be perpetual.

10.    Territory.   The Territory covered by this Agreement shall be the entire Universe, excluding Japan.

11.    Profit Participation of Marvel Entertainment Group ('Marvel'). Subject to compliance by Marvel with its obligations under Sunbow's agreement with Marvel and unless otherwise agreed with Marvel, Marvel shall be entitled to, and Sunbow shall pay Marvel a 'Third Party Share' (as such term is defined in the Standard Terms and Conditions) in an amount equal to ten percent (10%) of the Distribution Proceeds, if any. Further, unless otherwise agreed with Marvel, Marvel shall be entitled to receive an amount equal to ten percent (10%) of sixty-five percent (65%) of the 'Barter Media Value' of time utilized directly by Hasbro or any of its companies during the Subsequent Term.

12.    Integration of Standard Terms and Conditions.   The Standard Terms and Conditions previously executed by and between the parties hereto are hereby incorporated by reference as though fully set forth herein. In the event of

-4-

any irreconcilable inconsistency between the Standard Terms and Conditions and this Production License Agreement, this Production License Agreement shall control.

HASBRO, INC.

By: _____

Its: _____

SUNBOW PRODUCTIONS, INC.

By: _____

Its: _____

MILTON BRADLEY INTERNATIONAL, INC.

By: _____

Its: _____

STARWILD MUSIC, INC.

By: _____

Its: _____



WILDSTAR MUSIC, INC.

By: _____

Its: _____

-5-

SUN 0843

Exhibit A

```
HASBRO/SUNBOW PRODUCTION LICENSE AGREEMENT
TITLE :  TRANSFORMERS (43)
ESTIMATE #2043

PRODUCTION                    BUDGET
----------                    ------------

   Animation                  [9,656,175.99
   Script                     46,809.99
   Talent                     12,785.92
   Music                      26,297.58
   Production                 49,949.36
                              ------------
Total production              9,855,445.35

OTHER PRODUCTION
---------------

   Production Fee @  9.000    881,290.15
   Operations (Insurance est) 16,919.29
   Residuals                  153,909.99
   Relating Costs
   CA Sales Tax
                              ------------
Total Other Production        1,853,324.75

SALES
-----

   Sales                      335,493.41
   Sales Material
   Station Promo Material     13,816.15
   Public Relations           9,902.32
   Conventions
   Advertising                11,493.58
   WATES/INTV                 187535.13
   Station Compensation       (4,257,425.26)
                              ------------
Total Sales                   (4,359,693.28)

Distribution
------------

   Syndication Fee            469,000.00
   Distribution               722,255.15
                              ------------
Total Distribution            1,328,255.15

RESERVE                       0.99

TRANSFER                      0.00


TOTAL COST                    [9,452,311.37
                              ============
```

SUN  0844

## VISIONARIES
## PRODUCTION LICENSE AGREEMENT

AGREEMENT made and entered into by and between Hasbro, Inc. ("Hasbro"), Milton Bradley International, Inc. ("MBI"), Sunbow Productions, Inc. ("Sunbow"), Starwild Music, Inc. ("Starwild"), and Wildstar Music, Inc. ("Wildstar").

Hasbro hereby engages Sunbow, and Sunbow hereby agrees, to produce certain television programming as defined in Paragraph 2 below ("Programs") and to distribute such Programs in the United States, its territories and possessions and Canada, and MBI hereby engages Sunbow, and Sunbow hereby agrees, to distribute such Programs throughout the universe excluding the United States, its territories and possessions and Canada, all in accordance with the provisions herein contained and the Standard Terms and Conditions attached hereto and incorporated fully herein by reference ("Standard Terms and Conditions").

Hasbro and Sunbow hereby engage Starwild and Wildstar, and Starwild and Wildstar agree, to publish those musical compositions initially created for synchronization with the Programs in accordance with the provisions herein contained and the Standard Terms and Conditions.

1.  The Property.  The Programs shall be based on the name, characters, symbols, designs, likenesses and visual representations of VISIONARIES (the "Property"), all of which Hasbro and MBI represent to be owned or controlled by them as set forth in the Preamble to and Paragraph U of the Standard Terms and Conditions.

2.  The Programs.  The Programs shall consist of a series of thirteen (13) episodes under the general title: "VISIONARIES."  The Programs shall be animated in color, and each Program shall be approximately 28:50 minutes in length (including main and end titles and commercials). The Programs are to be produced for and will be initially telecast on a syndicated basis over so-called "free television" as such term is defined in Paragraph D(1) of the Standard Terms and Conditions.

SUN  0845

3.    Completion of Production.    The thirteen (13) Programs shall be completed and delivered in time for initial telecast to commence September, 1987.

4.    Payment for Programs.

(a)    In consideration for Sunbow's production and initial distribution of the Programs for the Initial Telecast Term, Hasbro will pay to Sunbow the 'Costs of Production' (as defined in Paragraph H(3)(a) of the Standard Terms and Conditions) and those costs, expenses and fees pertaining to free television syndication of the Programs in the United States and its territories and possessions for the Initial Telecast Term, all of which amounts total Four Million Five Hundred Sixty Thousand Two Hundred Forty-Seven and 65/100 Dollars ($4,560,247.65) as enumerated in Exhibits A and B appended hereto.

(b)    The aforementioned payments include all (i) sales expenses, distribution fees and commissions, and distribution expenses in connection with the syndication of the Programs over free television (as defined in the Standard Terms and Conditions) in the United States and its territories and possessions, for the 'Initial Telecast Term,' as defined in Paragraph 5 below, (ii) all residual fees (other than so-called supplemental market payments) for the distribution of the Programs on a syndicated basis over free television for the Initial Telecast Term due to performing and other creative personnel or those furnishing same and applicable union payments, (iii) Sunbow's Production Fee Percentage as set forth in Paragraph 8 of this Production License Agreement ('PLA'), and (iv) all other 'Costs of Production' as defined in the Standard Terms and Conditions.

5.    Initial Telecast Term--Hasbro's Media Time.    The 'Initial Telecast Term' for the thirteen (13) Programs shall be September 26, 1987 through September 25, 1988.    In regard to the distribution of the Programs in the Initial Telecast Term, as between Hasbro and Sunbow, Hasbro shall be entitled to receive, without the payment of additional compensation to Sunbow, (i) all commercial time granted by television stations in consideration for carrying any Programs and (ii) one hundred percent (100%) of all monies paid by television stations in consideration for carrying any Programs.

-2-

SUN 0846

6.   Hasbro's Time Subsequent to the Initial Telecast Term.   Hasbro shall have the right to determine if the Programs are to be distributed subsequent to the Initial Telecast Term ("Subsequent Term") or whether to "rest" same from time to time during the Subsequent Term.   Subject to the immediate preceding sentence and provided that Sunbow is not in breach of its obligations hereunder or under the Standard Terms and Conditions, all distribution during the Subsequent Term shall be affected through Sunbow under the terms and provisions set forth herein and in the Standard Terms and Conditions.   In this regard, Hasbro shall have the right, exercisable by notice to Sunbow given in reasonable time prior to the commencement of the Subsequent Term, to utilize for itself the media time available on the Programs during the Subsequent Term.

7.   Additional Programming.   Sunbow shall have a first negotiation right to both produce and distribute for telecast over free television as herein provided, any additional Programs in the Series and any additional television programming based on the Property or any principal character thereof which Hasbro determines to have produced primarily for initial telecast over free television, as well as a right of first negotiation to produce and distribute any motion pictures, phonograph recordings, videodiscs or videocassettes, original programming for cable or pay television, or any other productions or programming based, in whole or in part, upon the Property which Hasbro determines to have produced or distributed.   Such right of first negotiation shall be affected in accordance with the provisions set forth in the Standard Terms and Conditions, but such right shall remain effective only if Sunbow is not in breach of its obligations under the PLA or the Standard Terms and Conditions and Sunbow has performed its obligations hereunder and thereunder in a manner reasonably satisfactory to Hasbro.

8.   Sunbow's Compensation.   The payments made and to be made pursuant to Paragraph 4 hereof by Hasbro to Sunbow include a percentage payment to Sunbow ("Production Fee Percentage") based upon the animation costs, script/teleplay costs, studio costs, costs of music, costs and fees of contractors, costs of sets, costs of travel in connection with the production of the Programs, and talent costs (including all performing, creative, technical and other personnel) but excluding so-called "supplemental market" payments to or on behalf of performing artists, all of which are enumerated under the caption "Production" in Exhibits A and B.

-3-

SUN 0847

Said Production Fee Percentage shall be ten percent (10%) with respect to the Programs produced hereunder. In addition, Sunbow shall be entitled to the "Sunbow Share" of the "Distribution Proceeds" (as such terms are defined in the Standard Terms and Conditions), if any, and to the percentage of the "Barter Media Value" (as defined in the Standard Terms and Conditions) of all time utilized by Hasbro subsequent to the Initial Telecast Term, all as provided for in the Standard Terms and Conditions. All revenues and expenses regarding the Programs shall be fully cross-collateralized with all revenues and expenses regarding all other episodes produced by Sunbow for initial telecast on a syndicated basis and which are based upon the Property in the determination of Distribution Proceeds pursuant to the Standard Terms and Conditions.

9.    Term.  Provided that Sunbow is not in breach of this Agreement or the Standard Terms and Conditions, Sunbow's distribution rights shall be perpetual.

10.    Territory.  The Territory covered by this Agreement shall be the entire Universe.

11.    Profit Participation of Marvel Entertainment Group ("Marvel"). Subject to compliance by Marvel with its obligations under Sunbow's agreement with Marvel and unless otherwise agreed with Marvel, Marvel shall be entitled to, and Sunbow shall pay Marvel a "Third Party Share" (as such term is defined in the Standard Terms and Conditions) in an amount equal to ten percent (10%) of the Distribution Proceeds, if any. Further, unless otherwise agreed with Marvel, Marvel shall be entitled to receive an amount equal to ten percent (10%) of sixty-five percent (65%) of the "Barter Media Value" of time utilized directly by Hasbro or any of its companies during the Subsequent Term.

12.    Integration of Standard Terms and Conditions.  The Standard Terms and Conditions previously executed by and between the parties hereto are hereby incorporated by reference as though fully set forth herein.  In the event of

-4-

SUN 0848

any irreconcilable inconsistency between the Standard Terms and Conditions and this Production License Agreement, this Production License Agreement shall control.

HASBRO, INC.

By: _____
Its: _____

MILTON BRADLEY INTERNATIONAL, INC.

By: _____
Its: _____

SUNBOW PRODUCTIONS, INC.

By: _____
Its: _____

STARWILD MUSIC, INC.

By: _____
Its: _____

WILDSTAR MUSIC, INC.

By: _____
Its: _____

-5-

SUN 0849

RADIO/SYNERGY PRODUCTION LICENSE AGREEMENT          EXHIBIT A

TITLE :   VISIONARIES (II)
ESTIMATE #   1039

| PRODUCTION | BUDGET |
|---|---|
| Animation | $2,290,000.30 |
| Script | $22,995.50 |
| Talent | $3,101.37 |
| Music | $2929.15 |
| Production | $7,565.11 |
| Total production | $3,955,955.2 |

OTHER PRODUCTION

| Production Fee & (30%) | $101,155.51 |
|---|---|
| Operations (Insurance etc) | $16,616.30 |
| Residuals | $19,505.42 |
| Staff Production | |
| Bidding Cost | |
| CA Sales Tax | |
| Total Other Production | $353,555.42 |

SALES

| Sales | $105,155.35 |
|---|---|
| Sales Material | $11,515.55 |
| Station Promo Material | $5,555.57 |
| Public Relations | $555.51 |
| Conventions | $73,725.35 |
| Advertising | $16,555.36 |
| Station Compensation | |
| Total Sales | $232,315.32 |

DISTRIBUTION

| Syndication Fee | $105,505.42 |
|---|---|
| Distribution | $53,595.55 |
| Total Distribution | $153,555.35 |

| Reserve | 0.55 |
|---|---|
| Air Raiders Cancel Transfer | $6,555.55 |

| TOTAL COST | $3,555,555.55 |
|---|---|
| | ============= |

SUN 0850

MARROW/SUNBOW PRODUCTION LICENSE AGREEMENT          EXHIBIT B

TITLE :  VISIONARIES (?
ESTIMATE #   1986

PRODUCTION                          BUDGET
-----------                         ------

  Animation                         $819,498.00
  Script
  Talent                            990.43
  Music
  Production                        15.58
                                    ------------
  Total production                  $924,463.38

OTHER PRODUCTION
----------------

  Production Fee @    10%           $2,608.24
  Operations (Insurance etc).
  Overheads
  Staff Production
  Holding Cost
  CA. Sales Tax
                                    ------------
  Total Other Production            $92,695.43

SALES
-----

  Sales
  Sales Material
  Station Promo Material
  Public Relations
  Conventions
  Advertising
  Station Compensation
                                    ------------
  Total Sales                       $0.00

Distribution
------------

  Syndication fee
  Distribution
                                    ------------
  Total Distribution                $0.00

  Reserve                           $0.00
  Air Raiders Cancel
  Transfer
                                    ------------
  TOTAL COST                        $932,318.72
                                    ============

SUN  0851