# EXHIBIT 24

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

ANNE BRYANT

INDEX NO.

Plaintiff

-against-

**AMENDED COMPLAINT**

Sunbow Productions, Inc.

Defendant

1. Plaintiff Anne Bryant is a citizen and resident of the State of New York residing at 21 Collaberg Road, Stony Point, New York. She is an accomplished composer, arranger, lyricist, music producer and songwriter and has won industry awards for her compositions including Clio awards.

2. Defendant Sunbow Productions, Inc. ("Sunbow") is a television production company that, during relevant times, had its offices at 100 Fifth Avenue, New York, NY 10011. Defendant corporation was once owned by Griffin-Bacal, Inc. ("GBI"), an advertising agency. GBI was owned and operated by Jules "Joe" Bacal. Upon information and belief, GBI was sold to Sony Music in 1998. *For purposes of receiving performing rights royalty payments from performing rights societies such as ASCAP and BMI*

*, Sunbow utilizes and utilized at relevant times, entities known as STARWILD AND WILDSTAR.*

BACKGROUND

3. In or about November, 1991 plaintiff brought an action in the Supreme Court, State of New York, County of Rockland (Index, No. 8721/91) against Kinder & Co., Ltd., among others (hereafter Bryant-Kinder suit). The litigation arose out of the prior business relationship between Bryant and Clifford "Ford" Kinder ("Kinder") and an entity known as Kinder-Bryant, Ltd. in which Bryant and Kinder were officers and directors of the corporation which was engaged in the jingle business dealing with advertising agencies such as GBI.

4. As a result of differences which arose between Bryant and Kinder, it was determined that Kinder and Bryant would effect a corporate divorce and a property settlement, and did so by virtue of an agreement dated November 8, 1989 (known and designated as the "Separation Agreement").

5. Among other things, the Kinder-Bryant litigation alleged that Kinder had breached the Agreement, owed Bryant an accounting, had breached fiduciary duties, had converted certain royalties and other monies due and owing to Bryant, and further alleged that Kinder had engaged in fraud and a conspiracy to

2

convert monies due plaintiff.

## SETTLEMENT OF BRYANT-KINDER LITIGATION

6. Following extensive discovery, document production and negotiations, the Bryant-Kinder suit was settled on or about September 21, 1994. The essentials of the settlement were set forth in the record before the Hon. Howard Miller, J.S.C.

7. Prior to the settlement and in connection therewith, specific representations were made to plaintiff by Kinder concerning the then existing registrations with Broadway Music, Inc. ("BMI").

8. BMI is a performing rights society that, along with the American Society of Composers and Publishers ("ASCAP") is an organization comprised of publisher members and writer members which, as transferee of its members such as the plaintiff Anne Bryant, licenses the non-dramatic performing rights in the musical works of its members. BMI monitors, pools and collects royalty payments due to writers and publishers and then, in exchange for good and valuable consideration to it, distributes payments to its member writes and publishers in accordance with a formula and schedule relative to the respective parties'

3

contribution to the compositions.

9. During the course of their relationship, Kinder and Bryant were the principal suppliers of music and lyrics for Griffin Bacal, an advertising agency, which selected music for its client Hasbro which marketed a number of popular toy products including, but not limited to, the Transformers, My Little Pont, Jem and G.I. Joe. All musical titles which were produced by Bryant-Kinder were listed in plaintiff's name. As between Bryant and Kinder, the parties divided their profits from any such royalties received from BMI on a fifty/fifty basis. Griffin Bacal, as publisher, also received a portion of publishing royalties through BMI. All of the foregoing was done for the mutual benefit of plaintiff, Kinder and Griffin Bacal. Plaintiff's compositions actually out-earned Kinder's compositions through BMI by at least a two to one ratio. The foregoing arrangement was established by Kinder, Griffin/Bacal and William Dobishinski through Tamad, Inc. which administered and received the royalties and then made distributions to the interested parties.

4

10. *Through its employees, agents and principals, including but not limited to Jules "Joe" Bacal,* Sunbow *was involved in and received financial benefits from* musical compositions and musical cues, which were formerly registered in plaintiff's BMI account, *which subsequent to 1993 were* altered and re-registered in a manner to benefit Kinder, Griffin-Bacal and Bacal, *and Sunbow,* both before and after said settlement.

REGISTRATION OF MUSICAL COMPOSITIONS WITH BMI

11. Defendant Sunbow *received such benefits* without plaintiff's knowledge *and* without plaintiff's consent or approval *and was thereby unjustly enriched by monies to which it was not entitled. Set forth hereafter are compositions, utilized in various Sunbow productions and videos which have used plaintiff's music without approval or compensation:* G.I. Joe; *Transformers; Visionaries; Jem and My Little Pony.*

12. Bryant attempted diligently to determine the background facts concerning this re-registration, but BMI failed and refused to provide relevant information until in or about May of 2000 *and plaintiff then sought to review and analyze the information.*

13. Furthermore, since BMI pays its members approximately

5

one to one and a half years afer the airing of the music in question, plaintiff had no way of knowing that the significant revenue generating G.I. Joe Theme had been removed from her catalogue when the Bryant-Kinder litigation was settled in September of 1994.

14. Bryant has no way of knowing the extent to which the royalties and payments otherwise due her have been wrongly paid to other persons, including defendant Sunbow.

15. Absent a full and accurate accounting from defendant Sunbow of the monies generated *through the use of* the various compositions, plaintiff Bryant has no way of knowing the extent to which she has been damaged. Plaintiff estimates, however, that said damage is in excess of five hundred thousand dollars.

AS AND FOR A FIRST AMENDED CAUSE OF ACTION AGAINST DEFENDANT SUNBOW FOR UNJUST ENRICHMENT

1. Plaintiff repeats and realleges each and every allegation hereinbefore alleged as though fully set forth at length hereat.

2. Sunbow has been involved in the production, distribution and sale of television and movie productions, videos and c.d.'s including, but not limited to, My Little Pony

6

and G.I. Joe including G.I. Joe shows with music allegedly written by "Monroe Michaels", the Transformers, Visionaries and Jem.

3. The foregoing productions, movies, videos, television productions, and cd's all utilize music written by plaintiff but without compensation to plaintiff or authorization from plaintiff for its use.

4. Sunbow wrongfully profited and retained the fruits of its wrongful conduct from its exploitation of music written and owned by plaintiff. This includes its use of the music from G.I. Joe, Transformers, Jem and My Little Pony in all of the Sunbow productions, the full extent of which is not now known to plaintiff and will not be known until completion of discovery.

5. Plaintiff therefore demands that the Court direct Sunbow to render a true and complete accounting as to any and all monies received or to be received by defendant Sunbow from the production and exploitation of the foregoing compositions and that judgment be had in plaintiff's favor for all such monies together with interest and attorney's fees and costs of suit. Plaintiff has no adequate remedy at law.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANT SUNBOW TO IMPOSE A CONSTRUCTIVE TRUST

1. Plaintiff repeats and realleges each and every allegation hereinbefore alleged as though fully set forth at length herein.

2. Defendant Sunbow has received and will continue to receive credit and monies for the exploitation of musical compositions authored by plaintiff including the Transformers, My Little Pony, G.I. Joe and Jem and is thereby unjustly enriched to the detriment of plaintiff. Such credits and monies are paid by third parties including but not limited to BMI, and possibly ASCAP, another performing rights society and other third parties unknown to plaintiff.

3. The defendant on this Cause of Action upon information and belief has received payments from the sale and marketing of videos, movies and CD's and other products which use plaintiff's compositions without compensation due her and defendant is thereby unjustly enriched to the detriment of plaintiff.

5. Plaintiff has no adequate remedy at law.

6. Plaintiff seeks an accounting as to any monies received by the defendant relative to the sale and distribution of any products, cd's, videos, tapes or any product whatsoever which

utilized music from the composition set forth above and regardless of the source of any such monies received by defendant.

7. Plaintiff further demands that the defendant hold in trust any and all monies received by it or any of it, now or in the future until this matter is finally resolved, from the sale and distribution of any product, cd's, videos, movies, tapes, or any product whatsoever which utilized music from the compositions set forth above and regardless of the source of any such monies received by defendant.

WHEREFORE, plaintiff demands judgment as set forth in the respective causes of action herein, together with such other further and different relief as to the Court seems just and proper including, but not limited to, punitive damages, attorneys' fees, and the costs and disbursements incident to this action.

Dated: November 15, 2002

                MONAGHAN, MONAGHAN, LAMB & MARCHISIO
                Attorneys for Plaintiff

                By: _____
                     PATRICK J. MONAGHAN, JR.

150 West 55th Street, Suite 1G
New York, NY 10019
212-541-6980 (tel)
212-541-6994 (fax)

25 East Salem Street
Hackensack, NJ 07601
201-488-1201 (tel)
201-488-8289 (fax)

14459

# EXHIBIT 25

DECISION AND ORDER

S 5516-017
SERIAL NO. 20A
SERVED
RECEIVED
FILED

FILED SS
MAR 1 3 2003
ROCKLAND COUNTY
CLERK'S OFFICE

To commence the statutory time
period of appeals as of right
(CPLR 5513[a]), you are advised
to serve a copy of this order,
with notice of entry, upon all
parties.

SUPREME COURT OF THE STATE OF NEW YORK
IAS PART, ROCKLAND COUNTY

Present: HON. ANDREW P. O'ROURKE
Supreme Court Justice

-----------------------------------------------X
ANNE BRYANT,
                                Plaintiff,
    -against-                                   Index No. 2821/02
                                                Motion Date: 3/7/03
SUNBOW PRODUCTIONS, INC.
                                Defendant.
-----------------------------------------------X

The following papers numbered 1 to 8 were read on this motion by defendant for an Order dismissing the amended complaint pursuant to CPLR 3211, subdivision (a), paragraphs 5 and 7.

Notice of Motion  - Affirmation (Kitson) -   Exhs. (A-B) .....   1 - 3
Answering Affidavit (Bryant)- Exh. ..........................   5 - 6
Memoranda of Law .............................................   4,7,8

Upon the foregoing papers it is Ordered that this motion is disposed of as follows:

The pertinent facts have been set forth by this Court in prior Decisions and Orders in a related action commenced under Rockland County Index No. 5192/00 and thus will not be restated herein except to the extent necessary for an understanding of the Court's analysis with respect to the instant motion. The crux of the instant amended complaint is that defendant Sunbow Productions, Inc. (Sunbow), which

BOOK 94 PAGE 5332

plaintiff alleges was at one time owned by Griffin Bacal, Inc.[1], an advertising agency that had produced commercials on behalf of its clients and to which plaintiff and her then partner Ford Kinder had submitted their collaborative musical and lyrical advertising jingles, which were registered with a performing rights society known as BMI, wrongfully had effected re-registrations of plaintiff's musical compositions in ways designed to financially benefit Kinder and Bacal. By Decision and Order of this Court, dated December 2, 2002, plaintiff had been granted permission to serve the instant amended complaint pleading causes of action for unjust enrichment and imposition of a constructive trust and seeking an accounting and punitive damages.

Defendant is now moving to dismiss the amended complaint, arguing that plaintiff still has failed to set forth any viable cause of action and that same are, in any event, time-barred by the six-year statute of limitations applicable to causes of action for unjust enrichment and constructive trust. Plaintiff's action against Sunbow had been commenced in 2002. According to defendant, any claims against Sunbow alleged to have occurred prior to 1996 are necessarily time-barred. Further analyzing plaintiff's amended complaint, defendant argues that plaintiff only vaguely refers to wrongs committed "subsequent to 1993," with no further specification. Therefore, the asserted claims should be dismissed, defendant argues, because plaintiff

---

[1] Plaintiff alleges that Griffin Bacall, Inc. was owned and operated by Jules "Joe" Bacall.

has failed to set forth any specific facts that the alleged wrongs had occurred within the limitations period.

Moreover, defendant submits that plaintiff cannot successfully argue that a tolling of her claims pursuant to CPLR 206, subdivision (a), paragraph 1 had occurred up until the time of her discovery in May, 2000 of the facts supporting her claims since there had been no fiduciary relationship between plaintiff and defendant Sunbow prior to plaintiff's assertion of her claims and, in any event, plaintiff has not alleged a specific continuing wrong sufficient to toll the running of the statute of limitations, only that there allegedly has been continuing harm as an effect of the alleged earlier unlawful act.

Furthermore, defendant urges that plaintiff's claim for a constructive trust is not viable because plaintiff has not alleged, and indeed cannot allege, that she had the requisite confidential or fiduciary relationship with Sunbow, rather than merely a commercial relationship. Nor is there any allegation that there had been any necessary promise by Sunbow which reasonably had caused plaintiff to make any kind of transfer to Sunbow in reliance thereon. The mere allegation in the amended complaint that Sunbow had "received financial benefits" from plaintiff's musical compositions is not, defendant adamantly maintains, sufficient to establish the elements necessary for a viable constructive trust claim.

Addressing defendant's statute of limitations argument, plaintiff contends that this suit in 2002 is timely because there is a

continuing wrong against her being committed by defendant and others as they continue to receive unauthorized payments for her compositions.

Initially, this Court wholly rejects plaintiff's erroneous argument that defendant's motion is procedurally defective since it is duplicative of a previously made motion. That earlier dismissal motion had been directed at different causes of action pleaded in the original complaint and no judicial decision with respect thereto had been made since said dismissal motion had been deemed moot based upon plaintiff's having been granted permission to serve the superceding amended complaint, which is the subject of defendant's instant motion.

Having carefully considered the record at bar, the applicable law and the parties' respective arguments, the Court denies defendant's motion for an Order dismissing either cause of action pleading unjust enrichment and constructive trust.

On the record before the Court, including this Court's earlier finding that Mr. Bacal had been less than candid in the discovery process, having consistently testified to a lack of knowledge of relevant and important facts which he, as president of defendant Sunbow, ought to have known or was charged with the responsibility to inquire, investigate and find out, the Court necessarily finds that defendant has failed to demonstrate that plaintiff's claims are time-barred because commencement of this action had occurred more than six years after the allegedly improper re-registrations of her work about which she complains. To date, plaintiff, albeit not for a lack of trying, remains

unable to ascertain exactly when the irrefutabl facts of certain re-registrations of her work had occurred. While the Court agrees with defendant that any wrongful re-registration which may ultimately be proven to have occurred prior to 1996 would be time-barred[2], under all of the circumstances presenting, the Court finds that it would be unfair and improper at this time to reward defendant with a dismissal; plaintiff properly should be granted the opportunity for further discovery, if necessary, and to litigate this matter and have a finder of fact determine when the alleged re-registrations had occurred. Should it ultimately be determined that the wrongful re-registrations of plaintiff's work had occurred prior to 1996, then the Court finds, as a matter of law, that plaintiff's claims properly would have to be dismissed as untimely.

The Court also finds devoid of merit defendant's argument that dismissal otherwise is warranted because plaintiff has failed to state any viable cause of action. Unjust enrichment requires a showing that defendant has been enriched, that such enrichment was at the expense of

---

[2]The Court finds defendant's dismissal argument correct to the extent that defendant contends that plaintiff is unable to otherwise avoid the running of the statute of limitations by claiming the existence of a "continuing wrong." That doctrine is applicable only where there is a showing of continuing and on-going unlawful conduct and is inapplicable where, as possibly here, there is only a singular act which brings in its wake continuous harm. See Warren v. Altieri, _ F. Supp. _, 2002 WL 334463 (S.D.N.Y. 2002); Deepwells Estates, Inc. v. Incorporated Village of Head of Harbor, 973 F. Supp. 338, 346 (E.D.N.Y. 1997), app. dsmd. 162 F.3d 1147 (2nd Cir. 1998); Commack Self-Service Kosher Meats, Inc. v. State, 270 A.D.2d 687 (3rd Dept. 2000); Selkirk v. State, 249 A.D.2d 818 (3rd Dept. 1998).

plaintiff and that circumstances presenting e such that, in good conscience and in equity, defendant should make restitution therefore. See Chase Manhattan Bank (Nat. Ass'n) v. Banque Intra, S.A., 274 F. Supp. 496 (S.D.N.Y. 1967); Fandy Corp. v Chang, 272 A.D.2d 369 (2nd Dept. 2000); Bugarsky v. Marcantonio, 254 A.D.2d 384 (2nd Dept. 1998); iWon, Inc. v. Ourhouse, Inc., 192 Misc.2d 1 (N.Y. Sup. Ct. 2001). The Court, having reviewed the amended complaint at bar, finds that plaintiff sufficiently has stated said claim against defendant to the extent that she has set forth facts concerning her professional business relationship with Ford Kinder, Joe Bacal, Griffin-Bacal and BMI, and she alleges that unauthorized re-registrations of her musical works had occurred and that defendant Sunbow is among those persons/entities receiving financial benefit from plaintiff's work through its productions of videos which use plaintiff's music, without plaintiff's permission and authorization, and without royalty compensation to her. Defendant's claim that plaintiff's foregoing allegations are insufficient and defective is thus found to be without merit, particularly where, as previously noted, defendant's principal had been less than candid and forthcoming during his examination before trial with respect to his claimed lack of knowledge of the relevant facts.

Nor does the Court find that there presently exists any basis to dismiss plaintiff's claim alleging a constructive trust. Although defendant has correctly set forth the elements comprising such a cause of action, the Court does not agree that plaintiff is precluded from

maintaining said cause of action against defendant Sunbow on the facts presented because of an alleged absence of any fiduciary relationship or promise. This Court, in the companion case under Index Number 5192/00, expressly had held that a relationship of trust and confidence had existed between plaintiff and Bacal based upon their professional collaborative relationship. Bacal is alleged herein, without correction, to have been the principal of Sunbow at the relevant time. If plaintiff is able to establish that Bacal's relationship with his company Sunbow had been such that he had exercised such complete domination and control thereof that it may be said that the corporation was in reality a shell or dummy corporation for Bacal's own purposes, then the Court fails to see why the Court, to achieve justice, should not permit plaintiff in essence to pierce the corporate veil, find such an identity between Bacal and Sunbow that Bacal's relationship with plaintiff is the same as Sunbow's relationship to plaintiff, and thereby permit plaintiff to recover any financial benefit that has been wrongfully conferred upon Sunbow. Cf. Morris v. New York State Department of Taxation, 82 N.Y.2d 135, 141 (1993); Port Chester Electrical Construction Corp. v. Atlas, 40 N.Y.2d 652, 656-657 (1976); International Aircraft Trading Co. v. Manufacturers Trust Co., 297 N.Y. 285, 292 (1948).

Finally, the parties shall appear for a conference before the undersigned, as previously had been scheduled, at 9:30 a.m. on April 11, 2003. All discovery should be completed by that date. Any discovery

not completed may be deemed waived. This date may not be adjourned without the Court's permission. Any party's failure to appear may result in the imposition of costs and/or sanctions.

Dated: February 25, 2003
       New City, New York

_____
ANDREW P. O'ROURKE
J.S.C.



To: Patterson, Belknap, Webb & Tyler LLP
    Attys. For Deft.
    1133 Avenue of the Americas
    New York, New York 10036-6710

    Monaghan, Monaghan, Lambs & Marchisco
    Attys. For Pltf.
    150 West 55th Street, Ste. IG
    New York, New York 10022

BOOK    94   PE5339

-8-