# EXHIBIT 41

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND
————————————————————————x

ANNE BRYANT,

          Plaintiff,                        Index No. 5192/00

         - against -                    Hon. Andrew P. O'Rourke

BROADCAST MUSIC, INC., (a/k/a "BMI"),
CLIFFORD A. "FORD" KINDER, KINDER & CO.,
LTD., VADIVOX, LTD., JULES M. "JOE"
BACAL, GRIFFIN BACAL, INC., STARWILD
MUSIC BMI, WILSTAR MUSIC ASCAP,
SUNBOW PRODUCTIONS, INC., and JOHN
AND JANE DOES 1-10,

          Defendants.

————————————————————————x
————————————————————————x

ANNE BRYANT,

          Plaintiff,                        Index No. 2821/02

         - against -                    Hon. Andrew P. O'Rourke

SUNBOW PRODUCTIONS, INC.,

          Defendant.

————————————————————————x

### DEFENDANT SUNBOW PRODUCTIONS, INC.'S BRIEF IN SUPPORT OF ITS MOTION FOR RECONSIDERATION AND CLARIFICATION OF THE COURT'S DECEMBER 15 AND 24, 2003 ORDERS DENYING SUNBOW'S MOTIONS FOR SUMMARY JUDGMENT AND TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Pursuant to CPLR § 2221 and N.Y. Court Rules, 2d Dep't §§ 670.6 and 731.11,

Defendant Sunbow Productions, Inc. ("Sunbow") submits this brief in support of its motion for

reconsideration and clarification of the Court's December 15, 2003 Order partially granting and

partially denying Defendant Sunbow's motion for summary judgment and its December 24, 2003

Order denying Sunbow's motion for dismissal for lack of subject matter jurisdiction.

Reconsideration and clarification are necessary because it is not clear what non-copyright issues remain before this Court for trial.[1]

## PRELIMINARY STATEMENT

It is impossible for anyone to determine what is the subject of the trial in this case, because whenever Plaintiff is confronted with an argument that demolishes her prior theory of the case, she introduces a new one. Until Sunbow moved for summary judgment, Plaintiff claimed that she had been deprived of public performance royalties because at some time in the 1990s, Sunbow had been responsible for the "re-registration" with Broadcast Music, Inc. of the works she created for Sunbow's TV shows. When Sunbow demonstrated on its motion for summary judgment that most of her claims were time-barred and that, in any event, her share of royalties for those TV musical compositions had never changed, see Brief in Support of Sunbow's Motion for Summary Judgment (Jennings Affirm., Ex. A) at 9-14, Plaintiff revised her theory for the first time in response to defendants' motions for summary judgment.

Plaintiff now claims – without a shred of supporting evidence other than her say-so – that her TV musical compositions were in fact derivative works of jingles she had written for Griffin-Bacal, Inc. ("GBI") and that she was entitled to the same percentage of performance royalties for these TV musical compositions she wrote for Sunbow as she had received for the jingles she had written for GBI. See Plaintiff's Memorandum of Law in Opposition to Motions for Summary Judgment Submitted By Defendants Jules M. Bacal and Sunbow and in Support of Plaintiff's Cross-Motion for Partial Summary Judgment (Jennings Affirm., Ex. B) at 23, 31. As

---

[1]    Because the Court reports that it was unable to consider Sunbow's motion to dismiss for lack of subject matter jurisdiction fully because the Court had returned the relevant documents to the Clerk's Office, Sunbow is providing duplicate copies of all the documents relevant to decision of this motion. See Affirmation of Kathleen L. Jennings ("Jennings Affirm.") and exhibits thereto. To simplify matters and not create duplicate citations for documents the parties have previously submitted to the Court, citations in this brief are to those documents and their individual exhibits.

2

the basis for what she was entitled to receive under this new theory, she appears to rely on her own statements in a new November 25, 2003 affidavit that contradicts her prior deposition testimony. See Krakowska v. Niksa, 749 N.Y.S.2d 55, 56, 298 A.D.2d 561, 562 (2d Dep't 2002) (affidavit that contradicts earlier deposition testimony should be ignored). (Because this theory has been raised only weeks before the scheduled trial, none of the discovery in this case relates to these new theories.)

It is here that Plaintiff's case for the first time implicates the Copyright Act and disqualifies this Court on the ground of lack of subject matter jurisdiction. We can understand why the Court might have misunderstood which issues currently remain in this case because, although Plaintiff does not invoke the Copyright Act in express terms, her muddy theories implicate the Copyright Act. To that extent, this Court is deprived of subject matter jurisdiction. See cases cited in Brief in Support of Sunbow's Motion for Partial Dismissal for Lack of Subject Matter Jurisdiction (Jennings Affirm., Ex. C) at 5 (showing that copyright claims, however characterized, are preempted by the Copyright Act).

## COPYRIGHT ISSUES

The right to make a derivative work is one of the exclusive rights granted by statute to a copyright owner. 17 U.S.C. § 106(2). By claiming that she has rights to the derivative works of her jingles, Plaintiff is implicitly claiming to be a copyright owner. This implicit claim of copyright ownership is at odds with Plaintiff's prior deposition testimony that throughout her career she had created music on a "work for hire" basis. See Affirmation of Gloria C. Phares in Support of Sunbow's Motion for Partial Dismissal for Lack of Subject Matter Jurisdiction (Jennings Affirm., Ex. D), ¶ 3 & Ex. B thereto (Bryant Dep. at 42:18-43:7); see also Affirmation of Roseann Kitson Schuyler in Support of Defendant Sunbow's Motion for Summary Judgment ("Kitson Affirm.") (Jennings Affirm., Ex. E), Ex. D (Bryant Dep.) at 43:23-

3

44:2; 49:5-16; 109:6-110:2. The conflict arises from the fact that where work is created for hire, as a matter of law, the commissioning party (not the hired party) owns the copyright and "all the rights comprised in the copyright," including the right to make derivative works. 17 U.S.C. § 201(b). In other words, once Plaintiff claims that she is entitled to royalties from derivative works, she is denying a work-for-hire relationship and claiming rights as a copyright owner.

In response to Plaintiff's amazing new claims of copyright ownership made in her opposition brief (but not in her affidavit), Sunbow proffered in support of its motions for summary judgment and for partial dismissal for lack of subject matter jurisdiction a copy of the Jem Agreement, a work-for-hire agreement, in which Plaintiff agreed to prepare music for the Jem TV show and in which she agreed that Sunbow would be the "author" of the copyright of the TV musical compositions, which of course includes the right to create derivative works. See Affidavit of Neil R Rigby ("Rigby Aff.") (Jennings Affirm., Ex. F), Ex. A at § 5(a).  The consideration to Plaintiff under the Jem Agreement is similar, though not identical, to the terms of the work-for-hire arrangement that Plaintiff described at her deposition – a flat fee, the writer's share of the performance royalties and limited publishing rights. Compare id. at §§ 2, 5(c), and 6(a), with Kitson Affirm., Ex. D at 43:3-6, 49:5-16; see also Reply Brief in Support of Sunbow's Motion for Summary Judgment ("Sunbow SJ Reply Br.") (Jennings Affirm., Ex. G) at 20-23 & n.14; Reply Brief in Support of Defendant Sunbow's Motion for Partial Dismissal for Lack of Subject Matter Jurisdiction ("Sunbow Jurisdiction Reply Br.") (Jennings Affirm., Ex. H) at 3-4. Although Plaintiff is entitled to some compensation from later exploitation of the Jem compositions themselves, she is not entitled to royalties from exploitation of the TV shows which contain the compositions (i.e, distribution of those shows on DVD or video). See Rigby Aff., Ex. A, § 6(a); Sunbow SJ Reply Br. at 22-23; Sunbow Jurisdiction Reply Br. at 4. Sunbow also offered proof that the Jem agreement was typical of the agreements for all the TV music at issue in this case. Sunbow Reply SJ Br. at 10 n. 8; Affirmation of Gloria C. Phares in

4

Support of Sunbow's Motion for Summary Judgment ("Phares SJ Affirm.") (Jennings Affirm., Ex. I), ¶¶ 11-13 & Exs. E, F, G thereto. Having proved that there were work-for-hire agreements with Plaintiff for all her TV compositions, but that the originals of those agreements had been destroyed by the flood from a water main break in New York City in 1991 – a fact that Plaintiff did not contest, see Plaintiff's Memorandum of Law in Opposition to Defendant Sunbow Productions Inc.'s Motion for Partial Dismissal for Lack of Subject Matter Jurisdiction at 4 & n.2 – Sunbow offered evidence that the Jem Agreement had been signed, based on Plaintiff's testimony and contemporaneous documents from Plaintiff's own lawyer. See Sunbow SJ Reply Br. at 10 n.8; Sunbow Jurisdiction Reply Br. at 5-6; Rigby Aff., Exs. A-F.

Naturally, Plaintiff wants to deny the authenticity of the Jem Agreement because, by its terms, she is not entitled to receive the monies she claims from the videotape or DVD distribution of the TV shows. Plaintiff wants this Court to believe that her "working arrangement" with Sunbow that entitled her to royalties was oral and based on a course of dealing – contrary to her admission that there was a written agreement between the parties. The legal significance of an oral agreement – in copyright terms – is that Plaintiff could not have conveyed exclusive rights to her TV musical compositions, because as a matter of copyright law, a "transfer of copyright ownership," which includes an assignment and an exclusive license, "is not valid" unless it is in writing. 17 U.S.C. § 204(a) and 101("transfer of copyright ownership"). In other words, Plaintiff wants this Court to believe that Sunbow commissioned her to write music for valuable TV shows without a written agreement. (If Plaintiff tries to backtrack and claim anew that her work was "for hire," but that the details of that "working arrangement" were negotiated orally and through a "course of doing business," her argument fails for another reason: as a matter of copyright law, a work-for-hire relationship for works created after January 1, 1978, (i.e., for a work created under the Copyright Act of 1976), must be in writing and signed by both parties. 17 U.S.C. § 101(2) ("work made for hire").) Simply put, Plaintiff's admission that she

5

961715v1

created the compositions in connection with written work-for-hire agreements dooms her claim for royalties based either on a copyright ownership theory or an oral agreement.

According to the Court, it intends at trial to determine the "working arrangement" between the parties and Plaintiff's "fair share of royalties related to her compositions, the rights to which she never voluntarily [] relinquished . . . and, also, for derivative works therefrom." Dec. 24, 2003 Order (Jennings Affirm., Ex. J) at 4 (emphasis added). To the extent that this Court intends to try a case in which it will determine whether Plaintiff has any copyright rights in the TV musical compositions or whether those TV musical compositions are derivative works of Plaintiff's jingles (which so far Plaintiff has never identified or produced), or whether work-for-hire rights can be established through oral testimony and a course of dealing, this Court does not have subject matter jurisdiction, because all those issues require consideration of the Copyright Act and the policies undergirding it.

This Court has jurisdiction to decide whether Sunbow has provided sufficient evidence to prove that the Jem Agreement is illustrative of the destroyed, original work-for-hire agreements for the TV shows, see Sunbow SJ Reply Br. at 10-11 & n.8; Phares SJ Affirm., ¶¶ 11-13 & Exs. E, F, G thereto; Sunbow Jurisdiction Reply Br. at 5-6, and if so, to determine whether under the terms of those agreements Plaintiff is entitled to the extravagant payments that she seeks. See Rigby Aff., Ex. A, § 6(a). Those are both issues of state law (evidence and construction of a contract) within this Court's jurisdiction. If, however, the Court determines that Sunbow has not proved under New York law that the Jem Agreement is an example of the destroyed signed agreements and that as a consequence, there was no work-for-hire agreement, then the Court loses subject matter jurisdiction because in the absence of a written agreement, the Copyright Act specifies that Plaintiff be considered a copyright owner. The only court authorized to consider her rights and claims as a copyright owner, including that the TV musical

6

961715v1

compositions are derivative works of the jingles, is a federal court. 28 U.S.C. § 1338(a); see T.B. Harms Co., v. Eliscu, 339 F.2d 823, 828 (2d Cir. 1964).

Before the Court embarks on a full blown trial on copyright issues, which could take a week or more and which would likely result in the Court losing subject matter jurisdiction anyway, this Court should consider a simpler alternative. Specifically, the Court should bifurcate the issues and first conduct a hearing (analogous to a traverse hearing for determining personal jurisdiction, see, e.g., Jenny Oil Corp. v. Petro Products Distr., 503 N.Y.S.2d 888, 888, 121 A.D.2d 686, 687 (2d Dep't 1986)), which should not take much more than a day, in which Plaintiff would be required to prove a set of facts that do not implicate any copyright issues that establish the terms of a contract under which she is entitled to all the royalties she claims. If she cannot do this, then both the Court and the parties are saved the burden of preparing for and trying the full copyright issues that are implicated by Plaintiff's new theory of copyright ownership, over which this Court lacks jurisdiction.

## CONCLUSION

For the foregoing reasons, Defendant Sunbow Productions, Inc. requests this Court to consider all the materials that Sunbow has submitted showing a written work-for-hire agreement with Plaintiff – and which Sunbow is providing on this motion for clarification – and determine whether Sunbow has proved the terms of the destroyed work-for-hire agreements with the unsigned copy of the Jem Agreement. If the Court concludes that Sunbow has, then Sunbow urges this Court to examine the terms of the Jem Agreement and to dismiss as a matter of law Plaintiff's constructive trust claim to the monies Sunbow earned from the video and DVD exploitation of the TV shows. If the Court concludes that Sunbow has not satisfied its burden, then it must dismiss the remaining claims against Sunbow for lack of subject matter jurisdiction.

7

961715v1

If the Court is determined to hear testimony in this case, then as an alternative, it should conduct a preliminary hearing at which Plaintiff is first required to show a set of facts, not requiring construction of copyright issues, on which she is entitled to the royalties she is now claiming. If she fails to do so, then this Court is without jurisdiction to proceed.

Dated:        New York, New York
              December 31, 2003

                              Respectfully submitted,

                              PATTERSON, BELKNAP, WEBB & TYLER LLP

                              By: _____
                                  Gloria C. Phares
                                  Kathleen L. Jennings

                              1133 Avenue of the Americas
                              New York, New York 10036
                              (212) 336-2000

                              Attorneys for Defendant Sunbow Productions, Inc.

8

# EXHIBIT 42

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

| | | |
|---|---|---|
| ANNE BRYANT, | : | |
| Plaintiff, | : | |
| | : | |
| -v- | : | |
| | : | |
| BROADCAST MUSIC, INC. | : | |
| (a/k/a/"BMI"), FORD KINDER, | : | |
| KINDER & CO., LTD., | : | Index No. 5192/00 |
| VADIVOX, INC., JULES M. "JOE" | : | |
| BACAL; GRIFFIN BACAL, INC., | : | Hon. Andrew P. O'Rourke |
| STARWILD MUSIC BMI, WILDSTAR | : | |
| MUSIC ASCAP, SUNBOW | : | |
| PRODUCTIONS, INC., | : | |
| | : | |
| Defendants. | : | |
| ANNE BRYANT, | : | |
| Plaintiff, | : | |
| | : | Index No. 2821/02 |
| -v- | : | |
| | : | Hon. Andrew P. O'Rourke |
| | : | |
| SUNBOW PRODUCTIONS, INC., | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER CROSS-MOTION
FOR MODIFICATION OF THE COURT'S DECEMBER 15, 2003 ORDER TO
DECLARE THE STATUTE OF LIMITATIONS TOLLED ON AUGUST 24, 2000,
AND IN OPPOSITION TO DEFENDANT SUNBOW PRODUCTIONS, INC.'S
MOTION FOR RECONSIDERATION AND CLARIFICATION OF THE COURT'S
DECEMBER 15 AND 24, 2003 ORDERS**

Monaghan, Monaghan, Lamb & Marchisio
Attorneys for Plaintiff
150 West 55th Street, Suite 1G
New York, New York 10019
Tel. (212) 541-6980
Fax. (212) 541-6994

Of Counsel:
Patrick J. Monaghan, Jr.

On the Brief:
Jeffrey C. Primiano

### PRELIMINARY STATEMENT

### Plaintiff's Motion for Modification

Plaintiff respectfully urges the Court to modify its December 15, 2003 Decision and Order with respect to the application of the statute of limitations to reflect the fact that plaintiff interposed this action and tolled the statute of limitations by filing her Verified Complaint against all defendants, including Sunbow Productions, Inc. ("Sunbow"), on August 24, 2000. Although plaintiff subsequently filed another Complaint against Sunbow on or about April 3, 2002, and the actions were thereafter consolidated by Order dated January 31, 2003, the fact remains that plaintiff initially interposed this action against Sunbow in August 2000.

Indeed, the Court's Order consolidating these actions specifically provided as follows:

> ORDERED that the above-entitled actions be and are hereby consolidated into one action in this Court **under the first filed action** <u>Bryant v. Broadcast Music, Inc. et al.</u>, and the respective pleadings in the actions hereby consolidated stand as the pleadings in the consolidated action, and that discovery proceed in the consolidated action....
>
> [<u>See</u> Affirmation of Patrick J. Monaghan dated January 6, 2004 ("Monaghan Aff."), Exhibit D, (emphasis added).]

Plaintiff therefore commenced this action against Sunbow by filing her Verified Complaint in August 2000. However, in its December 15, 2003 Decision and Order, the Court held that "any and all claims against Sunbow for alleged wrongdoings

2

which pre-date six years *before the commencement of this action against Sunbow in 2002* are time-barred and hereby dismissed." See Affirmation of Kathleen L. Jennings dated December 31, 2003 ("Jennings Aff."), Exhibit K at page 16 (emphasis added). This action, however, was first filed and interposed against the defendants, including Sunbow, in August 2000.

Plaintiff therefore respectfully urges the Court to modify its ruling to reflect that, to the extent a six-year statute applies,[1] *plaintiff commenced this action against Sunbow in 2000* and the statute is tolled as of that time.

## Sunbow's Specious Motion for Reconsideration and Clarification

Sunbow disingenuously claims that reconsideration or clarification of the Court's prior Orders is appropriate because "it is not clear what non-copyright issues remain before this Court for trial." (Def. Br. at 2). In so arguing, Sunbow evidently fails to accept the simple fact that this Court clearly has subject matter jurisdiction over plaintiff's claim for imposition of a constructive trust on funds wrongfully received by defendants and unpaid to plaintiff for use of her music.

Indeed, by Decision and Order dated December 24, 2003, the Court highlighted precisely which "non-copyright issues remain before this Court" in ruling as follows:

---

[1] Plaintiff nonetheless seeks to apply the estoppel doctrine against both Sunbow and defendant Jules M. Bacal.

3

> [T]his Court finds that plaintiff is not seeking
> relief under or construction of the Copyright Act,
> but rather relief pursuant to a working
> arrangement, the specific terms of which will be
> determined at trial, and that she is claiming that
> pursuant to said agreement defendants wrongfully
> have deprived her of her fair share of royalties
> related to her compositions, the rights to which
> she never voluntarily had relinquished, and that
> she therefore is entitled to a constructive trust
> on those monies paid by their parties for her
> compositions, and, also, for derivative works
> therefrom. This claim plainly is within the ambit
> of state court's jurisdiction.

> [See Decision and Order dated December 24, 2003 at
> page 4.]

Nevertheless, Sunbow persists in claiming that

plaintiff's claims "implicate the Copyright Act," which

divests this Court of subject matter jurisdiction over this

case. (Def. Br. at 3). Sunbow even goes so far as to make

the following patronizing remarks on page two of its brief:

> We can understand why the Court might have
> misunderstood which issues currently remain in this
> case because, although Plaintiff does not invoke
> the Copyright Act in express terms, her muddy
> theories implicate the Copyright Act. To that
> extent, this Court is deprived of subject matter
> jurisdiction.

Yet it is Sunbow who seeks to "muddy the waters" by

claiming that the Court's well-reasoned holding "misunderstood

the issues currently remain[ing] in this case."

### An Unsigned, Unconfirmed Agreement<br>Has No Evidentiary Value Whatsoever<br>and Would Not Be Admissible for any Purpose.

Sunbow also continues its inappropriate attempt to divert

the Court's attention to an unsigned, inadmissible draft of a

contract pertaining to the Jem TV show. (See Def. Br. at 4).

4

Only now, Sunbow has the sheer audacity to allege that it has "offered proof that the Jem agreement was typical of the agreements for all the TV music at issue in this case." (Def. Br. at 4). This alleged "proof" consists of nothing more than its attorney's own self-serving Affirmation - hardly evidence. Nevertheless, Sunbow is now requesting that the Court "determine whether Sunbow has proved the terms of the destroyed work-for-hire agreements with the unsigned copy of the Jem Agreement." (Def. Br. at 7). This specious reasoning deserves a swift rejection.

Sunbow simply cannot "prove[] that there were work-for-hire agreements with Plaintiff for all her TV compositions," or that "the originals of those agreements had been destroyed" as a result of a flood. (Def. Br. at 5). Plaintiff has, and will continue to, vigorously dispute Sunbow's woefully inadequate proffer of patently inadmissible evidence in this context.

Moreover, Sunbow once again makes much of the fact that plaintiff, who is not a lawyer, characterized her working arrangement and agreement with defendants as "work for hire" during the course of her deposition testimony. But Sunbow conveniently ignores the full context of plaintiff's testimony, in which she stated as follows:

Q. [Ms. Kitson] Okay. So you get your fee and performance rights, royalties and other royalties?

A. [Plaintiff] Yes.

Q. What other types of royalties?

5

A.    Mechanical royalties.  If we write a piece for a jingle, then it becomes a television show, then it becomes a video, then it becomes a VHS and television special, you know, go into these different areas that generate royalties for the writers.

See Affirmation of Roseann Kitson Schuyler dated September 30, 2003 ("Schuyler Aff."), Exh. D at 43:13-18, attached to the Jennings Aff. as Exhibit E.

### LEGAL ARGUMENT

I.    The Court should Modify its Decision and Order dated December 15, 2003 to Reflect the Fact that Plaintiff Commenced this Action against Sunbow in August of 2000 and that the Statute of Limitations is Tolled as of that Time.

The caption of this matter reflects the fact that Sunbow is named as a defendant in both Index No. 5192/00 and in Index No. 2821/02. As the Court may recall, plaintiff initially filed her Verified Complaint against Sunbow et al. on August 24, 2000 and served Sunbow with a copy of same on September 8, 2000.  See Monaghan Aff., Exhibits B and C, respectively. Sunbow failed to submit an answer or other responsive pleading, and plaintiff was unable to pursue a default judgment against Sunbow as contemplated by CPLR § 3215(c) for failure to file for it within one year.

### Plaintiff Interposed this Action Against All Defendants, Including Sunbow, on August 24, 2000.

CPLR § 304, "Method of commencing action or special proceeding," states that "[a]n action is commenced by filing a summons and complaint or summons with notice."  Concomitantly, CPLR § 203, "Method of computing periods of limitation

generally, provides in relevant part:

> (c) Claim in complaint where action commenced by
> filing. In an action which is commenced by filing,
> a claim asserted in the complaint is interposed
> against the defendant or a co-defendant united in
> interest with such defendant when the action is
> commenced.

In this context, Weinstein, Korn & Miller instruct that
"actions in the Supreme Court or a county court are commenced
by filing," and that "[f]iling for this purpose is
accomplished by delivering the papers to the clerk, and paying
the fee required for an index number." See 1-2 Weinstein,
Korn & Miller CPLR Manual § 2.08.  The filing of the summons
and verified complaint in the county clerk's office therefore
tolls the statute of limitations.  See Perrin v. McKenzie, 266
A.D.2d 269, 270 (2nd Dept. 1999).

In short, plaintiff interposed this action against
defendants and tolled the statute of limitations by filing her
Verified Complaint against all defendants, including Sunbow,
on August 24, 2000.  Subsequently, after plaintiff proved
unable to pursue a default judgment against Sunbow as
contemplated by CPLR § 3215(c), plaintiff filed another
Complaint against Sunbow and served Sunbow with a copy of same
on or about April 3, 2002.  See Jennings Aff., Exhibit E, ¶ 3.
The actions were thereafter consolidated.

By Order Consolidating Actions dated January 31, 2003,
the Court consolidated these actions and provided as follows:

> ORDERED that the above-entitled actions be and
> are hereby consolidated into one action in this

Court **under the first filed action** <u>Bryant v.</u>
<u>Broadcast Music, Inc. et al.</u>, and the respective
pleadings in the actions hereby consolidated stand
as the pleadings in the consolidated action, and
that discovery proceed in the consolidated
action....

[<u>See</u> Monaghan Aff., Exhibit D, (emphasis added).]

By entering this Order Consolidating Actions, the Court <u>did</u>
<u>not dismiss</u> plaintiff's earlier Complaint here against Sunbow.

Plaintiff thus commenced this action against Sunbow by
filing her Verified Complaint in 2000. However, in its
December 15, 2003 Decision and Order, the Court held that "any
and all claims against Sunbow for alleged wrongdoings which
pre-date six years *before the commencement of this action*
*against Sunbow in 2002* are time-barred and hereby dismissed."
<u>See</u> Jennings Aff., Exhibit K at page 16 (emphasis added).
This action, however, was first filed and interposed against
the defendants, including Sunbow, in August 2000.

Plaintiff therefore respectfully urges the Court to
modify its ruling to reflect that, to the extent a six-year
statute applies,[2] *plaintiff commenced this action against*
*Sunbow in 2000* and the statute is tolled as of that time.[3]

---

[2] Plaintiff nonetheless seeks to apply the estoppel doctrine
against both Sunbow and Bacal.

[3] This issue has significant consequences. Defendant
Sunbow's motion for summary judgment noted that 28 out of 48
wrongful registrations occurred between August and November 1994,
based upon plaintiff's answers to Sunbow's Interrogatories.
Accordingly, even if Sunbow is not estopped from asserting its
statute of limitations defense, this action filed in August 2000
would include claims for wrongful registrations that occurred
between August and November 1994. <u>See</u> Monaghan Aff., Exh. E.

II.  **The Court should Summarily Deny Sunbow's Motion for Reconsideration and Clarification of the Court's December 15 and 24, 2003 Orders.**

CPLR § 2221(d)(2) provides that a "motion for leave to reargue ... shall be based upon matters of fact or law allegedly overlooked or misapprehended by the court in determining the prior motion...." Under this standard, defendant Sunbow's motion must fail, since Sunbow is not claiming that the Court overlooked or misapprehended any "matters of fact or law." Rather, in this latest attempt to take yet another bite at the apple, Sunbow simply reiterates the same arguments that the Court previously considered and rejected in denying Sunbow's motion to dismiss plaintiff's claim for a constructive trust. Because Sunbow cannot fault the Court for its legal analysis or for overlooking any matters of fact, the Court should summarily deny this latest motion.

As the Court correctly determined, plaintiff's claim for a constructive trust does not "seek relief under or construction of the Copyright Act, but rather relief pursuant to a working arrangement, the specific terms of which will be determined at a trial...." (See Decision and Order dated December 24, 2003 at page 4).

As indicated supra, Plaintiff has already testified that, pursuant to her agreement with Bacal on behalf of Sunbow and GBI, she was to receive the "performance rights, royalties and any other outside royalties," since "the performance rights,

9

royalties and other items would go to the writers."  <u>See</u>
Schuyler Aff., Exh. D at 43:4-5; 48:6-9.

Defendants once again conveniently ignore plaintiff's
testimony in this regard and persist in focusing upon the fact
that plaintiff - who is not an attorney - described her
understanding of this working arrangement and agreement with
defendants as "work for hire."  By repeatedly brushing aside
plaintiff's testimony regarding the parties' working agreement
and her entitlement to royalties thereunder, defendants have
relegated themselves to a tenuous position where they have
been attempting to rely upon an unsigned, inadmissible draft
of a contract pertaining to one of the many compositions at
issue in this case, which they claim somehow governed the
parties' entire working relationship.

Yet, in light of the uniform testimony elicited from *both*
plaintiff *and defendant Bacal* denying the existence of any
written agreement by which plaintiff relinquished any rights
to her compositions, defendants simply cannot prove the
existence or authenticity of this draft document.  Indeed,
plaintiff's Supplemental Interrogatory # 1 specifically
questioned defendant Bacal as follows:

> **Are you aware of any agreements wherein plaintiff**
> **relinquished any rights she may have possessed**
> **relative to any of the compositions at issue in**
> **this litigation: G.I. Joe; Visionaries; My Little**
> **Pony; Jem and Transformers?**

Bacal's Response, which followed his objections:

> **Bacal is not aware of any written agreements**
> **responsive to this Interrogatory.**

10

<u>See</u> Monaghan Aff., Exhibit A.

Plaintiff was entitled to receive performance and mechanical royalties, as well as license fees, pursuant to her working arrangement/agreement with defendants, *and there are no admissible documents contradicting this fact.* Although defendants attempt to establish that plaintiff relinquished these rights and seek to proffer an unsigned, inadmissible draft of a contract in support of their contention without any foundational testimony or affidavits, plaintiff has testified she retained these very rights pursuant to the parties' agreement, and that she never signed any document relinquishing her rights to these royalties.

### III. Sunbow's Motion for Reconsideration and Clarification Fails to Cite Any Legal Authority in Support of the Relief it Seeks, Precisely Because All Available Authority Supports this Court's Prior Determination.

The legal premise underlying Sunbow's entire subject matter jurisdiction argument has been and continues to be fundamentally flawed. As discussed at length in the preeminent copyright treatise:

Not every action predicated on rights derived from the Copyright Act is necessarily an action for copyright infringement or ... an action otherwise "arising under" the Copyright Act. For example, many cases raising general copyright issues may arise in the context of a contractual dispute between the parties. ...

Because contractual rights arise under state law, jurisdiction lies solely with the state courts in an action to enforce contracts relating to works subject to statutory copyright or rights under those contracts. Along these lines, it has been held that construction of an assignment of

11

> royalties under copyright implicates strictly a
> question of state law.  By the same token, an
> action to invalidate such contractual rights, or
> to enforce arbitration of those claims, belongs
> in state courts.  An "aroma of copyright" is
> insufficient to confer federal jurisdiction.
>
> **_The fact that questions of copyright law may_**
> **_also have to be determined in such an action does_**
> **_not oust state jurisdiction._**
>
> [3 _Nimmer on Copyright_, § 12.01 (2003) (citations
> omitted and emphasis added).

Nevertheless, Sunbow disregards this, along with the

substantial body of case law discussed _infra_, in suggesting

that the Court bifurcate the pending trial in this matter so

that plaintiff would first be "required to prove _a set of_

_facts that do not implicate any copyright issues_..."  (Def.

Br. at 7 (emphasis added)).  Contrary to Sunbow's misguided

view of the law, this Court clearly has jurisdiction to

consider contractual matters that "implicate" copyright

issues.

Federal jurisdiction is only "properly invoked" where a

party has no "colorable claim under contract or state law to

copyrighted works."  Shaw v. Kastner, 152 Misc.2d 654, 656

(New York Co. 1991).  In _Shaw_, the Court explained that

because "[n]o infringement of the copyright is alleged and no

construction of the Copyright Act is required for resolution

of the parties' dispute[,] State, not federal, principles

control the interpretation of the contracts involved."  _Id._ at

657.  The Court continued:

> Although there is a surplusage with an "aroma of
> copyright" in the complaint, i.e. the request

12

> that plaintiff be declared the sole owner of the
> copyright and the demand for damages for
> deprivation of the enjoyment of the copyright and
> for counsel fees, the dispute is over
> interpretation of the contract.

[Id.]

Here, plaintiff's constructive trust claim to monies wrongfully withheld by defendants arises directly from plaintiff's working agreement with defendants, pursuant to which she was contractually entitled to receive specified royalties and fees.

In the final analysis, the relevant case law clearly reveals that this Court certainly has jurisdiction over this contractual matter. See Eden Music Corp. v. Times Square Music Publications Co., 127 A.D.2d 161, 163 (1st Dept. 1987) (in which the Supreme Court properly exercised its jurisdiction over a case concerning ownership of renewal rights to copyrighted songs, where plaintiff sought a declaratory judgment that defendants had no ownership in the disputed songs); see also Durgom v. Janowiak, 74 Cal. App. 4th 178, 186 (Cal. App. 1999) (holding that a dispute over ownership or entitlement to royalties via an assignment of royalties involves "purely state law claims"); Golden West Melodies, Inc. v. Capitol Records, Inc., 274 Cal. App.2d 713, 718 (Cal. App. 1969) (where plaintiff sought "to recover royalties allegedly due under the agreement between plaintiff's predecessor and defendant," the Court held that "[a]lthough the subject matter of the agreement related to

13

statutory copyrights, the superior court had jurisdiction over the action").

### CONCLUSION

For the foregoing reasons, plaintiff respectfully requests that the Court modify its December 15, 2004 Decision and Order to reflect that plaintiff commenced this action against Sunbow on August 24, 2000 and the statute of limitations was tolled at that time, and that defendant Sunbow's motion for reconsideration and clarification be summarily denied.

Monaghan, Monaghan, Lamb & Marchisio
Attorneys for Plaintiff

Dated: January 6, 2004     By: _____
JEFFREY C. PRIMIANO

150 West 55th Street, Suite 1G
New York, New York 10019
Tel. (212) 541-6980
Fax. (212) 541-6994

28 W. Grand Avenue
Montvale, New Jersey 07645
Tel. (201) 802-9060
Fax. (201) 802-9066

17341

14

# EXHIBIT 43

# DECISION AND ORDER

To commence the statutory time
period of appeals as of right
(CPLR 5513[a]), you are advised
to serve a copy of this order,
with notice of entry, upon all
parties.

SERIAL NO.
SERVED
RECEIVED
FILED

FILED AND ENTERED
ON _____ 2004
ROCKLAND
COUNTY CLERK

**SUPREME COURT OF THE STATE OF NEW YORK**
**IAS PART, ROCKLAND COUNTY**

Present:  HON. ANDREW P. O'ROURKE
          Supreme Court Justice

-------------------------------------------X
ANNE BRYANT,
                              Plaintiff,

        -against-                        Index No. 5192/00
                                         Motion Date: 1/16/04
BROADCAST MUSIC INC., (a/k/a "BMI"),
CLIFFORD A. "FORD" KINDER, KINDER &
CO., LTD., VADIVOX, LTD., JULES M.
"JOE" BACAL, GRIFFIN BACAL, INC.,
STARWILD MUSIC BMI, WILDSTAR MUSIC
ASCAP, SUNBOW PRODUCTIONS, INC. AND
JOHN AND JANE DOES 1 - 10,
                              Defendants.
-------------------------------------------X
ANNE BRYANT,
                              Plaintiff,

        -against-

SUNBOW PRODUCTIONS, INC.,

                              Defendant.
-------------------------------------------X

        The following papers numbered 1 to 14 were read on this motion
by  defendant  Sunbow  Productions,  Inc.  for  reconsideration  and
clarification of the Court's December 15, and 24, 2003, Decision and
Orders, and on this cross-motion for an Order granting modification of
this Court's December, 2003 Decision and Order.

Notice of Motion  - Affirmation (Jennings) - Exhs. (A - J)..... 1 - 3
Notice of Cross-Motion - Affirmation (Monaghan) - Exhs. (A-F).. 5 - 7
Answering/Replying Affirmation (Phares) - Exh. (A-B) .......... 9 - 10
Answering Affidavit (Tannenbaum) - Exhs. (A-B) ................ 11 - 12
Replying Affirmation (Monaghan) .............................. 14

Memoranda of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,8,13

Upon the foregoing papers, it is Ordered that these motions are disposed of as follows:

Defendant Sunbow's motion for "reconsideration and clarification" of this Court's December 15, and 24, 2003, Decision and Orders is denied.  The Court is unaware of any authority for such relief and, to the extent that what defendant seeks is actually reargument of those Decisions and Orders, the Court finds that defendant has failed to demonstrate that this Court, in reaching its prior Decision and Order, had misapprehended any of the relevant facts or had misapplied any controlling principal of law.   See CPLR 2221, subd. (d), par. 2; Pro Brokerage Inc. v. Home Insurance Co., Inc., 99 A.D.2d 971 (1st Dept. 1984); Foley v. Roche, 68 A.D.2d 558, 567 (1st Dept. 1979).   Indeed, it is notable that defendant does not even set forth the proper standard of review, and instead merely attempts to get a second bite at the proverbial apple and have this Court once again consider the very same arguments that had been asserted by defendant at the time of the original motion and rejected.

Defendant's protestations to the contrary notwithstanding, this Court previously determined in its December 24, 2003, Decision and Order, that plaintiff is not seeking relief within the exclusive ambit of the Copyright Act.  While defendant continues to maintain a contrary position, its recourse is to take an appeal of this Court's earlier Decision and Order.

To the extent that defendant is seeking to have this Court herein review and determine whether the submitted JEM Agreement is illustrative of the destroyed, original written agreements that plaintiff had for TV shows and, if so, whether plaintiff is entitled thereunder to the payments she seeks, the Court finds that defendant has not demonstrated entitlement to any declaration that the JEM Agreement is representative of the terms of all agreements plaintiff had with Sunbow with respect to TV shows and that, as previously stated by this Court in its December 24th Decision and Order, the scope and terms of the parties' work relationship and their agreements shall properly be the subject of inquiry and examination at trial.

Having previously determined that this Court has subject matter jurisdiction of plaintiff's claims, it rejects defendant's proposal herein that the Court conduct, prior to the full trial, a framed issue hearing as to whether plaintiff can "prove a set of facts that do not implicate any copyright issues that establish the terms of a contract under which she is entitled to all the royalties she claims."

Addressing the cross-motion, the Court, in the exercise of its discretion, grants same to the extent that it finds, under all of the circumstances presenting and in the interests of justice, that it must re-visit its earlier interlocutory Order which had determined that all of plaintiff's claims against Sunbow which pre-dated six years before the commencement of this action in 2002 are time-barred and dismissed. See Liss v. Trans Auto Systems, Inc., 68 N.Y.2d 15, 19 (1986); General

-3-

Electric Real Estate Equities, Inc. v. Bell Realty Management, Inc., 291
A.D.2d 313, 314 (1st Dept. 2002); Matter of Budihas v. Board of Education
of City of New York, 285 A.D.2d 549, 550 (2nd Dept. 2001); Matter of
Estate of Burns, 228 A.D.2d 674, 675 (2nd Dept. 1996), lv. to app. dsmd.
98 N.Y.2d 765 (2002).   This Court is not persuaded that plaintiff's
failure to have raised this issue in a more timely manner or to have
sought reargument from this Court's prior Decision and Order that had
been issued in March, 2003, and which first had referenced 2002 as the
relevant date for statute of limitation purposes, requires, as defendant
earnestly contends, the outright rejection of plaintiff's request for
relief at this time.

Upon reconsideration, the Court finds that, in previously
having stated that 2002 was the year of commencement of the action
against Sunbow and thus the relevant date for statute of limitations
analysis, the Court inadvertently had overlooked the fact that Sunbow
had been served with process in the initial action commenced in 2000,
wherein it had defaulted[1], and that by subsequent Court Order the action
commenced against Sunbow in 2002 had been consolidated with the earlier
action "under the first filed action."

While plaintiff properly should have raised this issue much
earlier, nevertheless, upon equitable considerations and this Court's

---

[1] Plaintiff had been forced to commence a subsequent separate
action against Sunbow since she had not timely moved for entry of
a default judgment against Sunbow within one year of its default
and her delay could not be reasonably excused.

-4-

attempt to do full and complete justice, it accordingly finds that plaintiff is entitled to have the statute of limitations measured from the time the original action had been commenced; therefore, Sunbow properly is entitled to dismissal on statute of limitation grounds only those claims which pre-date six years before the commencement of the original action in 2000. Any heretofore erroneously dismissed claims of plaintiff are hereby re-instated.

The trial shall take place at 9:30 a.m. on March 22, 2004. This date may not be changed without the Court's consent. Any party's failure to appear may result in the imposition of costs and/or sanctions.

Dated: January 22, 2004
       New City, New York

ANDREW P. O'ROURKE
J.S.C.

To:  Patterson, Belknap, Webb & Tyler LLP
     Attys. For Deft. Sunbow
     1133 Avenue of the Americas
     New York, New York 10036-6710

-5-

Monaghan, Monaghan, Lamb & Marchisio
Attys. for Pltf.
150 West 55th Street, Suite 1G
New York, New York 10019

# EXHIBIT 44

# DECISION AND ORDER

To commence the statutory
period of appeals as of right
(CPLR 5513[a]), you are advised
to serve a copy of this order,
with notice of entry, upon all
parties.

SUPREME COURT OF THE STATE OF NEW YORK
IAS PART, ROCKLAND COUNTY

Present:  HON. ANDREW P. O'ROURKE
                Supreme Court Justice

-------------------------------------------X
ANNE BRYANT,                                              Motion Date: 5/7/04
    —                         Plaintiff,
            -against-                                     Index No. 5192/00

BROADCAST MUSIC INC., (a/k/a "BMI"),
CLIFFORD A. "FORD" KINDER, KINDER &
CO., LTD., VADIVOX, LTD., JULES M.
"JOE" BACAL, GRIFFIN BACAL, INC.,
STARWILD MUSIC BMI, WILDSTAR MUSIC
ASCAP, SUNBOW PRODUCTIONS, INC. AND
JOHN AND JANE DOES 1 - 10,
                              Defendants.
-------------------------------------------X
ANNE BRYANT,
                                                         Index No. 2821/02
                              Plaintiff,
            -against-

SUNBOW PRODUCTIONS, INC.,

                              Defendant.
-------------------------------------------X

        The following papers numbered 1 to 34 were read on this
motion by defendant Jules M. Bacal for an Order of dismissal pursuant
to CPLR 3211, subdivision (a), paragraphs 5 and 7, or for an Order
granting summary judgment, and on this motion by defendant Sunbow
Productions, Inc. for an Order of dismissal pursuant to CPLR 3211,

-1-

subdivision (a), paragraph 5, and for summary judgment.

**Papers Numbered**

Notice of Motion - Affidavit (Tannenbaum) - Exhs. (A-G) -
  Affidavit (Bacal) - Exhs. (1-5) - Affidavit (Griffen) -
  Exhs. (1-2) ........................................  1 - 7
Notice of Motion - Affidavits (Blue, Rigby, Harris,
  Weitzman) - Affirmation (Phares) - Exhs. (A-Y, 1-48) ...  9 - 15
  Exhs. (1-2) - Affirmation (Kitson) - Exhs. (A-K) ........  6 - 11
Answering Affidavit (Bryant) - Exhs. (A-C) - Affidavit
  (Bryant) - Exhs. (1-3) - Affidavit (Bryant) - Exhs. (1-3)
  - (Bryant) - Exhs. (1-2) - Affidavit (Bryant) - Affidavit
  (Bryant) ................................................ 12 - 26
  Affirmation (Monaghan) - Exhs. (A-G) .................... 13 - 17
Answering/Replying Affirmation (Tannenbaum) - Exhs. (A-B). 19 - 20
Answering/Replying Affidavit (Rigby) - Exhs. (A-F) -
  Affirmation (Phares) - Exhs. A-J) ...................... 22 - 25
Replying Affirmation (Bacal) - Exhs. (A-D) .............. 28 - 29
Objection - Exh. - Affidavit (Blue) ..................... 31 - 33
Memoranda of Law ........................................ 8,16,27
                                                          30,34

Upon the foregoing papers, it is Ordered that these motions are disposed of as follows:

The relevant background facts of these actions previously have been set forth in numerous prior Court Decisions and Orders and will thus not be restated herein except to the extent necessary. At the pre-trial conference conducted on March 2, 2004, this Court had granted defendants an additional final opportunity to move for dismissal, the Court's intention being to clarify the issues remaining for trial; defendants Bacal and Sunbow each have made their respective motions.[1]

---

[1]Contrary to plaintiff's contention, the Court did not limit defendants' dismissal motion solely to the issue of the Statute

-2-

Following extensive prior motion practice, plaintiff's First Amended Complaint specifically pleads two causes of action against defendant Bacal for unjust enrichment and constructive trust, and a single cause of action against defendant Sunbow for unjust enrichment, for which plaintiff seeks compensatory damages and an accounting.[2]    With respect to these two defendants, plaintiff essentially asserts that she had an oral working relationship with defendant Bacal, part-owner of both defendants Griffin Bacal, Inc., an advertising agency, and Sunbow Productions, Inc., a television production company, with respect to her created musical arrangements, compositions and jingles whereby she allegedly had reserved her writer's royalties in her works, but had transferred her musical creations to defendants GBI and Sunbow for them to exploit on her behalf.    Plaintiff contends that in recent years she has lost substantial royalties with respect to her works, allegedly as the result of wrongful re-registrations of her work by the named defendants, including defendant BMI, the performing rights

---

of Frauds.

[2]However, the Court notes that while unorthodox, plaintiff, in her First Amended Complaint under Index Number 5192/00, states in paragraph one thereof that she "repeats and realleges every allegation contained in the Verified Complaint as though fully set forth at length hereat."    This Court necessarily finds that plaintiff has not abandoned her claims against defendant Bacal of wrongful re-registrations of her works.    This theory of wrongful re-registration is also asserted in plaintiff's Amended Complaint against defendant Sunbow under Index Number 2821/02.

society which monitors, collects and distributes performance royalties, either separately or conspiratorially.[3]  Plaintiff also maintains that she wrongfully has been deprived of mechanical royalties and synchronization license fees from the sales of videos, DVD's, cassettes and other products wherein her re-used and/or rearranged compositions were included.

According to defendant Bacal, plaintiff's claims are false and predicated upon misstatements of the relevant facts pertaining to the parties' relationship and agreements.   He adamantly denies plaintiff's claims that any oral working agreement had existed between plaintiff, Bacal and Sunbow, and specifically denies her claim that she had agreed to receive a far lower creative fee for her work than she ordinarily would have received in exchange for additional writer's share rights in her compositions. Instead, defendant Bacal and his Sunbow and Griffin Bacal, Inc. partner, Thomas Griffin, have submitted supporting affidavits wherein both assert that it was Sunbow's "strictly enforced" general practice, and the industry-wide standard, to require signed work-for-hire agreements from all artistic contributors, including musical composers like plaintiff.  Indeed, Griffin avers that, at his direction, Sunbow did not work with

_____

[3]The Court has no current information regarding the current status of the Court-Ordered arbitration of plaintiff's dispute with BMI.

-4-

artists without the requisite written agreement. While Bacal claims that all of the executed work-for-hire contracts were damaged in the January, 1990 Manhattan water main break that had flooded the basement where their business records were stored, Griffin states that he is "certain" that Sunbow had insisted that plaintiff's company execute work-for-hire agreements for all the musical compositions it had delivered to Sunbow for use in the Hasbro T.V. shows, and specifically the JEM Agreement. This meant, according to defendant, that plaintiff, as composer, would have received a flat creative fee for her work, the writer's share of income from the public performance rights in the music (allocated in accordance with contributions to the work) and certain additional payments from the publication of sheet music, arrangements and orchestrations. Bacal and Griffin claim that, with respect to plaintiff, Hasbro, pursuant to its contract with Sunbow, alone owns all other usage rights of plaintiff's works and the underlying copyrights to her compositions. Bacal specifically denies having had any fee negotiations with plaintiff or her company. According to Bacal and Griffin, the payment terms in the work-for-hire agreements that Sunbow had used in the 1980's were comparable to the payment terms in typical work-for-hire agreements.

Defendant Bacal submits that, in addition to the

-5-

foregoing establishing that plaintiff does not have a viable cause of action, he is also entitled to dismissal of the complaint because, firstly, plaintiff cannot state a viable cause of action for constructive trust since he claims there is no fiduciary relationship between him and plaintiff, secondly, that plaintiff's claims are time-barred, thirdly, that he has not been enriched by receiving any mechanical royalties or license fees purportedly paid to Sunbow after SONY purchased Sunbow in 1998, and lastly that the alleged oral working relationship between plaintiff and Sunbow is void under the Statute of Frauds.

In support of his above arguments, Bacal avers that he has not, either directly or through Sunbow, ever received any mechanical royalties or license fees for the works in issue.[4] Moreover, Bacal notes that plaintiff's allegations involving mechanical royalties or license fees relating to video and DVD sales is for the period of October 1999 through September 2002, whereas SONY had purchased Sunbow in 1998, more than one year earlier. Since Bacal has not received any monies from Sunbow from the re-use or re-work of plaintiff's compositions in issue, he maintains that there has not been any unjust enrichment and no basis for imposition of a constructive trust.

---

[4] Bacal's income from BMI for public performance royalties during the period of 1995 through 2003 was $11,532.11, according to his Miscellaneous Income tax Returns for 1995 forward.

-6-

Moreover, defendant Bacal contends that plaintiff's claims predicated upon an oral working arrangement are barred by the Statute of Frauds and since, as a matter of law, there is no fiduciary relationship between Bacal and plaintiff based merely upon their musical collaborations, particularly where Bacal claims to only have spoken briefly with plaintiff on limited prior occasions, that Bacal is not estopped from arguing that plaintiff's claims are also time-barred under the applicable six year statute of limitations. Bacal maintains that based upon the commencement of this action on August 24, 2000, any claims against Bacal that arose prior to August 24, 1994, clearly are barred, and yet plaintiff complains herein about alleged re-registrations of her compositions in the 1980's when the cue sheets for her compositions were originally submitted to defendant BMI. Plaintiff, according to defendant Bacal, had failed to exercise due diligence at that time to ascertain whether she was receiving the royalties to which she claims entitlement and her claims herein are time-barred.

Sunbow, in support of its motion, argues that plaintiff has taken the legally untenable and internally inconsistent position herein that plaintiff orally had conveyed exclusive rights to Sunbow for it to decide how the compositions she authored for the TV Series would be exploited, notwithstanding that the Copyright Act requires that any such agreement be in writing, and

that this asserted "working arrangement" entitles her to a portion of whatever monies Sunbow earns from the exploitation of plaintiff's musical compositions, in whatever medium. According to Sunbow, plaintiff's claim, if true, is barred by the Statute of Frauds, as set forth in General Obligation Law Section 5-701, subdivision (a), since such agreement, if made, would have been made in the 1980's and the obligation thereunder to continue to make royalty payments to plaintiff would have taken longer than one year to perform. Indeed, defendant Sunbow submits that it is this very scenario, where a plaintiff surfaces twenty years after an alleged oral agreement, when witnesses are no longer available and memories are vague, claiming that a different deal had been made, that had prompted enactment of the Statute of Frauds. According to Sunbow, New York law is very clear that oral agreements involving royalties or commissions based on exploitation of copyrights are prohibited.

Since the Statute of Fraud applies here to bar plaintiff's claims, Sunbow contends plaintiff may not succeed on a theory of unjust enrichment. While a quantum meruit cause of action may provide plaintiff with an avenue of relief, Sunbow notes that plaintiff has not pleaded such cause of action.

In any event, Sunbow argues that plaintiff would not otherwise be entitled to pursue a quantum meruit cause of action

-8-

because she already has been reasonably compensated for her services consistent with industry standards at the time. According to Sunbow, plaintiff has not established what the market rate was for her TV production song writing services in the 1980's and she cannot demonstrate that she did not receive the "going market rate" for such services. Sunbow observes that plaintiff never asserts nor offers evidence that the alleged working arrangement she had with Sunbow was for the market value paid and she never identifies the specified percentage of profits she allegedly was to have received from all other uses of her compositions.

In further support of its dismissal motion, defendant Sunbow has proffered an affidavit from Helene Blue, a music publisher and administrator for 35 years, wherein she describes the commissioning of television and movie music and evaluates four sample Sunbow Agreements from the 1980's, concluding that they were similar and typical, and not substantively dissimilar to more recent agreements, and opines that "it would be inconceivable for a producer to commission or acquire the rights to use music in an audiovisual work without entering into a written agreement of some sort that secures the rights to the producer;" she states that "producers insist on a work-for-hire agreement ... because works for hire are not subject to the Copyright Act's termination provisions."

-9-

Defendant Sunbow further has proffered an affidavit from Neil Rigby, head of Legal and Business Affairs for TV-Loonland AG, which had acquired Sunbow from SONY in 2000.    Therein he sets forth the efforts he and his company have made to locate documents pertaining to plaintiff, Ford Kinder and /or Kinder & Bryant Ltd. and Sunbow, Griffin Bacal, Inc. Starwild Music, Inc. and/or Wildstar Music, Inc., as well as production agreements between Sunbow and Hasbro. His efforts have uncovered an unsigned copy of an agreement between Kinder & Bryant, Ltd. and Sunbow relating to the JEM television series, and three related letters, two dated in 1986 between plaintiff and Sunbow's legal counsels relating to "revisions to the JEM Contract and the contract for My Little Pony." The other letter was between counsel, dated February 9, 1987, relating to a proposed amendment of the JEM Contract.

Also, defendant Sunbow has submitted an affidavit from Robert C. Harris, an attorney who had represented Sunbow for 15 years, up until its sale in 1998, wherein he avers that he had drafted and negotiated agreements between Sunbow and various artists whom Sunbow commissioned to create works and that "it was always Sunbow's practice to commission work ..., including composers of music, on a 'work-for-hire' basis using written agreements," because Sunbow desired to own all rights in the television series and movies it was producing for Hasbro and the

-10-

Copyright Act specifies that such agreements be in writing. He recalls having prepared several work-for-hire agreements commissioning music from Kinder & Bryant, Ltd. While he no longer has client files relating to Sunbow, he reviewed the four sample agreements submitted herein by Sunbow and believes that he had drafted all of those agreements. He specifically states that he has no recall of Sunbow ever working with an artist except pursuant to a work-for-hire agreement.

Similarly, defendant Sunbow has submitted an affidavit from Carole Weitzman, who had been employed by Sunbow from 1980 through 2001, and was Senior Vice President of Production at the time she had left its employ. She relates that the Manhattan water main break in January, 1990, had caused immense flooding to Sunbow's sub-basement storage facility, destroying many boxes of Sunbow documents. To her knowledge, however, "Sunbow required every artist that it employed for the TV Series to sign agreements ... referred to as 'work-for-hire' agreements." She states that "Sunbow's practice was never to authorize paying an artist unless he or she had signed an agreement with Sunbow." Ms. Weitzman avers that plaintiff "must have signed work-for-hire agreements with Sunbow. I know that I would not have authorized payments to her ... if she had not signed such an agreement. This would have been contrary to Sunbow's policy."

-11-

Sunbow submits "that on the record [it] has now assembled, there is no material issue of fact that Plaintiff signed work-for-hire agreements with Sunbow for the Hasbro TV Series, and under the terms of their agreements she is not entitled to the broad recovery she claims"; indeed, it claims that the "overwhelming evidence shows that the unsigned JEM agreement is a copy of the agreement signed by Plaintiff, the JEM agreement is identical to all the other agreements for the Hasbro TV Series relating to what Plaintiff is entitled to receive from later exploitation of the TV Series or her compositions, which does not include the monies from Sunbow's distribution of the TV Series on videotapes and DVD's ...".[5]

Plaintiff vigorously opposes the motions in all respects and argues that in the circumstances presented that this Court should refuse to address any issues raised by defendants other than the issue of the Statute of Frauds, and that as to that defense it should determine that defendants had waived invocation of same by their failures any time earlier to have raised said defense. Plaintiff argues that not only have defendants waited until the eve

_____

[5]Previously, this Court had determined that plaintiff's cause of action for constructive trust was not viable as against defendant Sunbow because it did not have a fiduciary relationship with plaintiff. (Dec. & Ord., 12/15/03). Further, the Court had determined that plaintiff's claims against Sunbow relating to conduct occurring before 1994 are barred by the six year Statute of Limitations. (Dec. & Ord.,1/2/04).

-12-

of trial to invoke this defense, but that the record is replete with transcript testimony and Interrogatory Responses wherein Bacal had stated that he was not aware of any written agreements, and defendants have offered no reasonable explanation for their failure to have interposed the defense at an earlier time.

In any event, plaintiff contends that the law is well settled that the Statute of Frauds is not a defense to an action seeking imposition of a constructive trust and/or unjust enrichment.

Were this Court to otherwise find the defense viable, plaintiff further maintains that her agreement with defendants is outside the ambit of the Statute of Frauds because, by its terms, it was capable of being fully performed within one year[6] and was not subject to the will of a third party.[7]

Furthermore, plaintiff argues that royalty statements such as those received by plaintiff constitute a writing sufficient to satisfy the Statute of Frauds and that her full performance of her obligations which are "unequivocally referable" to the parties' working relationship also removes this action from the Statute of

---

[6]Said argument is predicated upon evidence that animated TV series and the commercials upon which many of them were based were expected to run only for a thirteen-week period of time.

[7]Indeed, plaintiff argues that Sunbow, the production company, had exercised complete control as to whether to continue running the series using plaintiff's compositions.

Frauds.

Alternatively, plaintiff suggests that defendants should be equitably estopped from asserting said defense since plaintiff, to her detriment, had relied upon Bacal's promise on behalf of Sunbow and Griffin Bacal that she would receive all of the writer's royalties on her compositions.

Finally, plaintiff argues that were this Court to find that plaintiff may only recover in quantum meruit, the reasonable value of her services must include all writer's royalties attributable to her musical compositions, including mechanical royalties and synchronization license fees.

Firstly, the Court must note that this action has been an intensive study in "all one needs to know about royalties associated with jingle and musical compositions for commercial use." The attorneys are to be commended and thanked for their exemplary lawyering and the skill with which they have made this highly specialized, technical area of law both comprehensible and more user-friendly to a Court with heretofore limited experience in this field. As the record unfortunately demonstrates, however, even those more learned in the field apparently have differing understandings of the musical registration process and many of the applicable terms of art.

Secondly, while the Court had offered to entertain this

-14-

one final dismissal motion by defendants, it had not been the Court's intention to re-visit specific issues previously decided on prior summary judgment motions, including the issues of whether a fiduciary relationship had existed between Bacal and plaintiff and the related statute of limitations issue. This Court's determinations with respect to those issues are law of the case, and the Court notes that defendant Bacal has offered nothing more herein, other than his self-serving affidavit on this issue regarding the nature of his allegedly limited relationship with plaintiff - he offers nothing new obtained through subsequent discovery which otherwise justifies his having a second bite of the proverbial apple on these issues. Accordingly, defendant Bacal cannot and will not be rewarded herein for arguably making a stronger case this go round on these issues, particularly where this Court previously had admonished Bacal for his less than candid earlier discovery responses.[8]

Nor does this Court find that defendant Bacal correctly contends that the claims for unjust enrichment and constructive trust must be dismissed against him because plaintiff has asserted claims involving mechanical royalties or license fees relating to

---

[8]In any event, the Court still concludes that a triable issue of fact is presented with respect to the nature of plaintiff's relationship with Bacal and specifically whether he had owed a fiduciary duty to her.

video and DVD sales for the period of October 1999 through September 2002, whereas SONY had purchased Sunbow in 1998, more than one year earlier, and Bacal claims that he has not received any monies from Sunbow from the re-use or re-work of plaintiff's compositions in issue.     Firstly regarding this issue, the Court observes that plaintiff has not limited her First Amended Complaint to the time period that defendant Bacal identifies; rather, she seeks "any and all monies received by ... now or in the future until this matter is finally resolved, from the sale and distribution of any products, cd's videos, movies, tapes, or any product whatsoever which utilized music from the compositions set forth above and regardless of the source of any such monies received by defendants."  Further, defendant Bacal has not denied indirectly receiving such royalty payments and licensing fees from Sunbow or through his various companies, or that said companies have received such benefits.

Secondly, while plaintiff has not proffered any evidence directly tracing to Bacal personally mechanical royalties or license fees monies acquired through plaintiff's works, she has produced evidence that substantial mechanical royalties and license fees generated by the use of her compositions have been received by

-16-

defendant Bacal's various companies, named defendants herein.[9]   As this Court had noted in a prior Decision and Order, erroneously dated February 25, 2003,[10] "if plaintiff is able to establish that Bacal's relationship with his company Sunbow had been such that he had exercised such complete domination and control thereof that it may be said that the corporation was in reality a shell or dummy corporation for Bacal's own purposes, then the Court fails to see why the Court, to achieve justice, should not permit plaintiff in essence to pierce the corporate veil, find such an identity between Bacal and Sunbow that Bacal's relationship with plaintiff is the same as Sunbow's relationship to plaintiff, and thereby permit plaintiff to recover any financial benefit that has been wrongfully conferred upon Sunbow. Cf. Morris v. New York State Department of Taxation, 82 N.Y.2d 135, 141 (1993); Port Chester Electrical Construction Corp. v. Atlas, 40 N.Y.2d 652, 656-657 (1976); International Aircraft Trading Co. v. Manufacturers Trust Co., 297 N.Y. 285, 292 (1948).   This same analysis applies to defendant Bacal's other companies, defendants Starwild Music BMI and Wildstar

---

[9]Plaintiff claims that despite her repeated requests, defendants have failed to provide plaintiff with records of payments received prior to 1999 pursuant to the licensing and distribution agreements in place

[10]The return of this referenced motion had been March 7, 2003; therefore, the Decision and Order properly could not have been dated February 25, 2003.

-17-

Music ASCAP.

Further with respect to this issue, in a prior Decision and Order, dated September 26, 2002, this Court had noted that a video using plaintiff's work had identified Bacal personally as the executive producer with respect to same and that it had been marketed and sold as recently as February 15, 2001 by Amazon.com.    This Court necessarily finds that defendant Bacal has not demonstrated entitlement to judgment as a matter of law dismissing this aspect of the complaint.

The last issue to be addressed as an urged basis for dismissal is the defense of the Statute of Frauds.    Having carefully considered the parties' respective arguments on this defense, the Court is greatly troubled by the extreme lateness with which defendants have raised this defense.    While it is true that plaintiff had expanded her theories of recovery in this action in November, 2002, as condoned by this Court's granting of her cross-motion to amend her complaint against Sunbow, it must be stated that defendants had notice as early as of that date that plaintiff was claiming entitlement to share in royalties for derivative uses of her jingles and compositions.    Indeed, she specifically pleads in her Amended Complaint that defendant "has received payments from the sale and marketing of videos, movies and CD's and other products which use plaintiff's compositions without compensation due her and that defendants is thereby unjustly enriched to the

-18-

detriment of plaintiff."

Thereafter, during her examination before trial in March, 2003, plaintiff had testified about her arrangement with Bacal and Sunbow, specifically her asserted entitlement to performance royalties, mechanical royalties and other considerations for composers, never mentioning that she had a written agreement with defendant Bacal with respect to her works. Notwithstanding her testimony, defendants had failed to raise the defense of the Statute of Frauds, let alone move to move to dismiss based upon same. Nor had defendants raised the Statute of Frauds defense in their answering papers to plaintiff's cross-motion for partial summary judgment, or in their replying papers to their motions for summary judgment, all returnable December 15, 2003, notwithstanding that plaintiff had definitively stated in her November 25, 2003, affidavit that she had "never executed a written contract with GBI, Sunbow, Wildstar or Starwild concerning the music I composed." Nor had defendant Sunbow argued the Statute of Frauds as a basis for dismissal when, just two weeks after the aforementioned failed summary judgment motion, it attempted to have the complaint dismissed based upon an alleged lack of subject matter jurisdiction. Nor is there any indication that defendants had raised this defense at the pre-trial conference held on January 14, 2004. It was not until more than two months thereafter, at the

-19-

pre-trial conference conducted on March 22, 2004, and after years of litigation and numerous dispositive motion practice, that defendants finally have raised this issue.

Upon all of the circumstances presenting, the Court finds defendants' attempt to interpose said defense at this late date must fail. See CPLR 3211, subd. (e); 23/23 Communications Corp. v. General Motors Corporation, 257 A.D.2d 367 (1st Dept. 1999), lv. to app. den. 93 N.Y.2d 805 (1999); Con-Solid Contracting, Inc. v. Liwak Development Corp., 236 A.D.2d 437 (2nd Dept. 1997); Raoul v. Olde Village Hall, Inc., 76 A.D.2d 319, 333 (2nd Dept. 1980); cf. Bronson v. Potsdam Urban Renewal Agency, 74 A.D.2d 967, 967 (3rd Dept. 1980).

In any event, the Court notes that even were it to have permitted defendants to rely upon the Statute of Frauds and the Court were to find that said defense operates as a bar to plaintiff's claims, as defendants recognize, this would not preclude plaintiff from otherwise recovering from defendants on a theory of quantum meruit, at least to the extent that plaintiff's claims are not otherwise barred by the statute of limitations. Defendants concede that all of the elements of such claim, save the element of plaintiff's establishing the reasonable value of her services, have been established.

The Court finds, however, that plaintiff has offered

some evidence supporting her claim that she is entitled to allegedly wrongfully withheld performance royalties in excess of $238,000.00 and that the value of her services in the 1980's includes fifty percent of the publishing royalties, as evidenced by a copy of a written agreement she had with another company wherein she had retained 50% of the publishing royalties. Additionally, she has quoted both Donald S. Passman, an author of "All You Need to Know About the Music Business," as well as a supposed treatise on the music industry, entitled "This Business of Music: The Definitive Guide to the Music Industry," by Krasilovsky and Shemmel, wherein it is stated that a songwriter's customary share is 50% of the publisher's net collections, which includes mechanical and synchronization income that plaintiff seeks to recover.

While defendant Sunbow aptly notes that there are critical differences between the nature of Bryant's relied upon agreement, which is for a one-time record album, as compared to music for an on-going television series, the matter here in issue, as well as other critical payment differences, which renders this agreement insufficient to establish the market value of plaintiff's song writing services for television in the 1980's, the Court finds that plaintiff has sufficiently raised a triable issue of fact regarding same.

-21-

Parenthetically, the Court notes that in its replying memorandum, Sunbow clarifies that it agrees that is obliged to pay plaintiff a royalty fo 50% of the net profits from licenses to third parties of mechanical or synchronization rights. Sunbow does not agree, however, that the licenses that were made for the distribution of the television shows in videocassettes and DVDs is an exercise of such right since, from its view, a mechanical license refers only to the right to reproduce and distribute non-dramatic musical works, such as CDs and audiotapes. Also, according to Sunbow, the synchronization license requires payment to plaintiff only where plaintiff's song is synchronized into a film exhibited in movie theaters. Accordingly, defendant Sunbow maintains that the dramatic TV series and the videocassettes and DVD recordings of the TV series, are not subject to mechanical royalties and synchronization licenses.

Finally, Sunbow's request pursuant to CPLR 3103, subdivision (c), that plaintiff be precluded from introducing at trial any and all documents improperly obtained is reserved for determination at trial. It would, of course, behoove plaintiff, if she has not already done so, to forthwith provide defendants with full disclosure relating to these documents which allegedly have been improperly obtained.

There are to be no further motions in this action. The

-22-

parties shall appear, as previously scheduled, for trial at 9:30 a.m. on June 2, 2004. This date will not presently be adjourned. Any party's failure to appear may result in the imposition of costs and/or sanctions.

Dated: May 26, 2004
       New City, New York

_____

ANDREW P. O'ROURKE
J.S.C.

Duane Morris LLP
Atty. for Deft. Bacal
380 Lexington Avenue
New York, New York 10168

Patterson, Belknap, Webb & Tyler LLP
Attys. For Deft. Sunbow
1133 Avenue of the Americas
New York, New York 10036-6710

Monaghan, Monaghan, Lamb & Marchisio
Attys. for Pltf.
150 West 55th Street, Suite 1G
New York, New York 10019

-23-

# EXHIBIT 45

Contractor

## ASSIGNMENT AND AGREEMENT - MUSICAL COMPOSITION

<u>April 8, 1988</u>
DATE

Griffin Bacal, Inc., as Agent for
Hasbro, Inc.      ("Sponsor")
130 Fifth Avenue
New York, N.Y. 10011

Gentlemen:

1.    This will confirm that you hereby engage us and we hereby accept the engagement to furnish to you the services of <u>Kinder & Bryant,</u>
<u>Ltd.</u>        (hereinafter referred to as "Artist") for the musical composition now entitled    <u>Visionaries</u>        , in connection with the creation, writing, composition and delivery of the following musical, literary, creative and artistic materials based on the commercial copyrighted material furnished by you:

Music Only
Lyrics Only
Music and Lyrics

2.    We hereby sell, assign, transfer and set over to you, your successors and assigns, all material prepared, created, written and delivered by Artist and/or us hereunder and all copyrights and all other rights there in perpetuity throughout the universe. We hereby acknowledge that the material delivered hereunder shall constitute a "work for hire" within the meaning of the 1976 Copyright Act of the United States.

3.    In full payment for and in consideration of all services to be performed by us and/or Artist hereunder and all of our and/or Artist's obligations hereunder, you shall pay us the following compensation within ten (10) days after the respective event indicated below requiring such payment:

(a) The basic payment of $250.00 following receipt of said materials.

(b) In the event that you determine, in your discretion to use the materials for use in radio, television and/or other advertising purposes you shall give us written notice of such determination. After the giving of such written notice you shall pay us an additional sum of $1,500.00 less any payment made pursuant to Subparagraph 3(a) above.



DEFENDANT'S
EXHIBIT
B

SUN 511

(d) In the event that you determine, in your discretion, to use the materials in radio and/or television in more than one of the three major markets (New York, Chicago and Los Angeles) you shall after such use, pay us, as a one-time payment, such additional sum as will increase the total payments hereunder to $3,500.00, inclusive of all payments made to us pursuant to Subparagraph 3(a) and 3(b) above.

(e) Except as otherwise expressly provided for herein, neither we nor Artist shall be entitled to any payment and/or other consideration.

(f) In the event that you neither give us the notice referred to in Subparagraph 3(b) above, nor make the payment referred to in said Subparagraph within twelve (12) months after the final submission to you of the materials, we may give you a written notice requiring you to make the payment referred to in Subparagraph 3(b) above within (12) months after the date of our notice and in the event that you fail to do so, we shall then have the right to sell the materials to other persons; provided, however, the we shall in each instance purchase the materials as provided for herein; and provided further, however, that in no event will either we or Artist make, permit or allow the use of any commercial copy material furnished to us by you hereunder.

4.   If you request, we shall, within ten (10) days after such request furnish you with a disc or tape recording of such materials. In such event you shall reimburse us for the actual and substantiated reasonable cost and expenses incurred by us in connection with furnishing such disc or tape recording.

5.   We agree, represent and warrant that:

(a) We are free to enter into and fully perform this agreement.

(b) We have the full right, power and authority to furnish the services of Artist and to grant and confirm all rights (including copyrights) conveyed and/or confirmed herein.

(c) All material prepared, created, written and delivered hereunder shall be new and original with us and Artist will be the sole creator thereof.

(d) No element of such material shall in any way infringe upon or violate the trademark, copyright, literary, dramatic and/or any other rights of any person, firm or corporation or the right of privacy or right of publicity of any such person (whether living or dead

(e) The material is a "work for hire" as such term is defined by the 1976 Copyright Act of the United States.

(f) We do not have and shall not seek to exercise any right to terminate the grant of a transfer of copyright and rights under copyright made hereunder pursuant to Sections 203 or 304 of such Act or otherwise.

SUN 512

(b) Artist does not have and shall not have and shall not seek to exercise any right to terminate the grant of a transfer of copyright and rights under copyright made hereunder, or heretofore or hereafter made by Artist to us, pursuant to Sections 203 or 304 of such Act or otherwise.

6.    We agree to defend, indemnify and hold you, Sponsor, all other users of such materials and your and their successors, assigns, licensees, and disclosees and the agents, employees, directors and stockholders of you and all of them harmless from and against any claims, suits, losses, costs and liabilities which may arise in connection with the use of said materials or the breach or alleged breach of any representation. (SEE ATTACHED PAGE) FK

7.    You may use and authorize others to use the name, photograph, portrait, art, likeness and biographical material of Artist in connection with said materials and the exploitation and promotion thereof, but you shall not be obligated to do so.

8.    This Agreement shall be binding upon us and Artist and his successors, assigns, heirs, next-of-kin, executors and administrators. This Agreement shall inure to the benefit of you and Sponsor and your and their respective successors, assigns and licensees.

9.    The rights granted and confirmed hereunder are special, unique and intellectual and my failure to honor this Agreement in any way will cause you irreparable loss and damage which shall entitle you to equitable relief by way of injunction and otherwise, to prevent either us or Artist from breaching this agreement or failing to perform our and/or Artist's obligation hereunder.

10.    This agreement shall be governed by and in accordance with the laws of the State of New York for agreements and to be performed in the State of New York.

Very truly yours,

KINDGOL & BRYANT LTD
Name of Contractor

By: _Fox Londer_
Its    PRES

Address: 47 W 73
    NYC NY

Contractor ID #: 13-3186088

ACCEPTED AND AGREED TO:
GRIFFIN BACAL, INC, as agent for

By: _____
Its

6.

(a) We warrant and represent, except as the Composition may contain or be based upon lyrical or literary material or melody and arrangement such as [...] furnished by you, that the music and lyrics [...] is original with us and do not violate or infringe upon the [...] of any third party. We further warrant and represent that [...] the full right, power and authority to enter into, and [...] [...] In this connection we agree to save and hold harmless [...] [...] damages resulting from a breach of the foregoing warranties and representations, including reasonable attorneys fees, [...] that such claim constituting such breach is the subject of [...] [...] adjudication of a court of competent jurisdiction or you [...] [...] into a settlement of a claim constituting such breach which [...] [...] has been approved by us in writing. Notwithstanding [...] [...] [...] of this license agreement or the Basic Agreement [...] [...] shall we be liable to you or any other person for [...] [...] [without limitation lost profits, lost sales [...] [...] [...] [...] [...] or consequential loss) resulting from [...] [...] breaches of the foregoing warranties and representations [...] [...] extent such damages exceed the amount of the License Fee.

(b) You warrant and represent that any lyrics, literary material, melody and/or [...] [...] suggested by you or the client, shall not, where [...] [...] are utilized in and as part of the Composition, violate [...] [...] infringe upon the rights of any third party. You further warrant and [...] represent that you have the full right, power and authority to [...] [...] into and perform this agreement. In this connection you agree to save and hold us harmless from any damages resulting from a breach of the foregoing warranties and representations, including reasonable attorneys fees, provided that such a claim constituting such breach is the subject of a final adjudication of a court of competent jurisdiction or we have entered into a settlement of a claim constituting such a breach which settlement has been approved by you in writing.



## ADDENDUM A

(Copy of Words and/or Music,
Assignment and Endorsement of Assignment and
Agreement - Musical Composition Dated)



SUN 516

ADDENDUM B

Administrator's Compensation

The total compensation of the Administrator for service rendered pursuant to this Agreement and Pursuant to similar agreements with producers and/or distributors of phonograph records and/or electrical transcriptions shall be at the total rate of Ten Thousand Dollars ($10,000.00) per annum.

SCHEDULE 1

Date: _____ 19____

The undersigned, desiring to become an additional First Party to the Within Agreement, does hereby adopt the declarations of The First Parties set forth therein, does hereby make the request made by the First Parties therein, and in consideration of the undertakings assumed therein by each First Party and of the undertaking assumed therein by the Administrator at the request of the First Parties, does hereby request the Administrator to accept the undersigned as an additional First Party to such Agreement, and does assume and agree to be bound by the terms, covenants and conditions to be performed thereunder.

_____
(Name of Company or Individual Signatory)

By _____
(Signature of Officer and Title)

Address: _____

_____

ACCEPTED:

United States Trust Company of New York

By _____
Vice President
Administrator

(If executed in the Province of Quebec this Agreement shall be properly notarized and shall be executed according to the laws of the Province.)

SUN  517

## SCHEDULE 1

Date .................., 19 ......

The undersigned, desiring to become an additional first party to the within Agreement, does hereby adopt the declarations of the first parties set forth therein, does hereby make the request made by the first parties therein, and in consideration of the undertakings assumed therein by each first party and of the undertakings assumed therein by the Trustee at the request of the first parties, does hereby request the Trustee to accept the undersigned as an additional first party to such Agreement, and does assume and agrees to be bound by the covenants and conditions to be performed thereunder.

...............................................................
PLEASE PRINT (Name of Company or Individual Signatory)

By ...............................................................
    PRINT Name of Officer and Title

...............................................................
Signature

Address: ...............................................................

................................................ Zip Code ...........

Telephone ...............................................................

Accepted:

...............................................................
Trustee

(If executed in the Province of Quebec, this contract shall be properly notarized and otherwise executed according to the laws of that Province.)

# EXHIBIT 46

Contractor

<u>ASSIGNMENT AND AGREEMENT – MUSICAL COMPOSITION</u>

<u>April 8, 1988</u>
DATE

Griffin Bacal, Inc., as Agent for
▓▓▓▓▓▓▓▓▓ ("Sponsor")
130 Fifth Avenue
New York, N.Y. 10011

Gentlemen:

1.     This will confirm that you hereby engage us and we hereby
accept the engagement to furnish to you the services of Kinder & Bryant,
Ltd. ▓▓▓▓▓▓▓▓▓ hereinafter referred to as "Artist") for the musical
composition now entitled ▓▓▓▓▓▓▓ , in connection
with the creation, writing, composition and delivery of the following
musical, literary, creative and artistic materials based on the
commercial copy material furnished by you:

          Music Only          _____
          Lyrics Only         _____
          Music and Lyrics    _____

2.     We hereby sell, assign, transfer and set over to you, your
successors and assigns all materials prepared, created, written and
delivered by Artist and/or us hereunder and all copyrights and all other
rights there in perpetuity throughout the universe. We hereby acknowledge
that the material delivered hereunder shall constitute a "work for hire"
within the meaning of the 1976 Copyright Act of the United States.

3.     In full payment for and in consideration of all services
to be performed by us and/or Artist hereunder and all of our and/or
Artist's ▓▓▓▓▓▓▓ hereunder, you shall pay us the following compen-
sation ▓▓▓▓▓▓▓ days after the respective event indicated below
requiring such payment:

          (a) The basic payment of $250.00 following receipt of said
materials.

          (b) In the event that you determine, in your discretion to
use the materials for use in radio, television and/or other advertising
purposes, you shall ▓▓▓▓▓ us written notice of such determination, after
the giving of such written notice you shall pay us an additional sum
of $1,500.00 less any payment made persuant to Subparagraph 3(a) above.


DEFENDANT'S
EXHIBIT
C

(c) In the event that you determine, in your discretion to use the materials in radio and/or television in more than one of the three major markets (New York, Chicago and Los Angeles) you shall after such use, pay us, as a one-time payment, such additional sum as will increase the total payments hereunder to $3,500.00, inclusive of all payments made to us pursuant to Subparagraphs 3(a) and 3(b) above.

(d) Except as otherwise expressly provided for herein, neither we nor Artist shall be entitled to any payment and/or other consideration.

(e) In the event that you neither give us the notice referred to in Subparagraph (b) above, nor make the payment referred to in said Subparagraph within twelve (12) months after the final sub-mission to you of the materials, we may give you a written notice requiring you to make the payment referred to in Subparagraph 3(b) above within (12) months after the date of our notice and in the event that you fail to do so we shall then have the right to sell the materials to other persons provided, however, that we shall in each instance purchase the materials provided for herein; and provided further, however, that in no event shall either we or Artist shall, permit or allow the use of any commercial __ __ material furnished to us by you hereunder.

4.      If you request, we shall, within ten (10) days after such request furnish you with a disc or tape recording of such materials. In such event you shall reimburse us for the actual and substantiated reasonable cost and expenses incurred by us in connection with furnishing such disc or tape recording.

5.      We agree, represent and warrant that:

(a) We are free to enter into and fully perform this agreement.

(b) We have the full right, power and authority to furnish the services of Artist and to grant and confirm all rights (including copyrights) conveyed and/or confirmed herein.

(c) All material prepared, created, written and delivered hereunder shall be new and original with us and Artist will be the sole creator thereof.

(d) No element of such material shall in any way infringe upon or violate the trademark, copyright, literary, dramatic and/or any other rights of any person, firm or corporation or the right of privacy or right of publicity of any such person (whether living or dead

(f) The material is a "work for hire" as such term is defined by the 1976 Copyright Act of the United States.

(g) We do not have and shall not seek to exercise any right to terminate the grant of a transfer of copyright and rights under copyright made hereunder pursuant to Sections 203 or 304 of such Act or otherwise; and

6.

(a)  We warrant and represent, except as the Composition may con-
tain or be based upon lyrical or literary material or melody and
arrangement suggestions furnished by you, that the music and lyrics
of the Composition are wholly original with us and do not violate or
infringe upon the rights of any third party.  We further warrant and
represent that we have the full right, power and authority to enter
into and perform this agreement.  In this connection we agree to save
and hold you harmless from any damages resulting from a breach of
the foregoing warranties and representations, including reasonable
attorneys fees, provided that a claim constituting such breach is
the subject of a final adjudication of a court of competent juris-
diction or you have entered into a settlement of a claim constituting
such breach which has been approved by us in writing.
Notwithstanding any other provisions of this License agreement or the
Basic Agreement, in no event shall we be liable to you or any other
person for any ... including without limitation lost profits,
lost sales ... direct, incidental or consequential loss)
resulting ... breaches of the foregoing warranties and
representations ... such damages exceed the amount of the
License Fee.

(b)  You warrant and represent that any lyrics, literary material,
melody and/or musical arrangements suggested by you or the client,
shall not, whenever the same are utilized in and as part of the Compo-
sition, violate or infringe upon the rights of any third party.  You
further warrant and represent that you have the full right, power
and authority to enter into and perform this agreement.  In this
connection ... and hold us harmless from any damages
resulting from ... of the foregoing warranties and representat-
ions, including reasonable attorneys fees, provided that such a
claim constituting such a breach is the subject of a final adjudi-
cation of a court of competent jurisdiction of we have entered into
a settlement of a claim constituting such a breach which settlement
has been approved by you in writing.

(h) Artist does not have and shall not have and shall not seek to exercise any right to terminate the grant of a transfer of copyright and rights under copyright made hereunder, or heretofore or hereafter made by Artist to us, pursuant to Sections 203 or 304 of such Act or otherwise.

6. We agree to defend, indemnify and hold you, Sponsor, all other users of said materials and your and their successors, assigns, licensees, and assigns and the agents, employees, directors and stockholders of any of them harmless from and against any claims, suits, costs and liabilities which may arise in connection with the use of said materials or the breach or alleged breach of any representation contained herein by us.

7. You may use and authorize others to use the name, photograph, portrait, life likeness and biographical material of Artist in connection with said materials and the exploitation and promotion thereof, but you shall not be obligated to do so.

8. This Agreement shall be binding upon us and Artist and his successors, assigns, heirs, next-of-kin, executors and administrators. This Agreement shall inure to the benefit of you and Sponsor and your and their respective successors, assigns and licensees.

9. The rights granted and confirmed hereunder are special, unique and intellectual and my failure to honor this Agreement in any way will cause you irreparable loss and damage which shall entitle you to equitable relief, by way of injunction and otherwise, to prevent either us or Artist from breaching this agreement or failing to perform our and/or Artist's obligation hereunder.

10. This agreement shall be governed by and in accordance with the laws of the State of New York for agreements and to be performed in the State of New York.

Very truly yours,

KINGEE BRYAN LTD.
Name of Contractor

By: _____
Its  PRES

Address: H W 73rd
         NY NY

Contractor ID #: 13 3186088

ACCEPTED AND
GRIFFIN BRCAL    as agent for

By: _____
Its

SUN 506



ADDENDUM A

COPY of Words and/or Music
Attached to and Made Part of Assignment and
Agreement - Musical Composition Dated:

SUN 507



## ADDENDUM B

### Administrator's Compensation

The total compensation of the Administrator for service rendered pursuant to this Agreement and pursuant to similar agreements with producers and/or distributors of phonograph records and/or electrical transcriptions shall be at the total rate of Ten Thousand Dollars ($10,000.00) per annum.

### SCHEDULE 1

Date: _____ 19___

The undersigned, desiring to become an additional First Party to the Within Agreement, does hereby adopt the declarations of the First Parties set forth therein, does hereby make the request made by the First Parties therein, and in consideration of the undertakings assumed therein by any First Party and of the undertaking assumed therein by the Administrator at the request of the First Parties, does hereby request the Administrator to accept the undersigned as an additional First Party to such Agreement and does assume and agree to be bound by the terms, covenants and conditions to be performed thereunder.

_____
(Name of Company or Individual Signatory)

By _____
(Signature of Officer and Title)

Address: _____

_____

ACCEPTED:

United States Trust Company of New York

By _____
Vice President
Administrator

(If executed in the Province of Quebec this Agreement shall be properly notarized and otherwise executed according to the laws of the Province.)

## SCHEDULE L.

Date .................................., 19 ......

The undersigned, willing to become an additional first party to the within Agreement, does hereby adopt the declarations of the first parties set forth therein, does hereby make the request made by the first parties therein, and in consideration of the undertakings assumed therein by each first party and of the undertakings assumed therein by the Trustee at the request of the first parties, does hereby request the Trustee to accept the undersigned as an additional first party to such Agreement, and does assume and agree to be bound by the covenants and conditions to be performed thereunder.

.........................................................................

PLEASE PRINT (Name of Company or Individual Signatory)

By .........................................................................
    PRINT Name of Officer and Title

.........................................................................
Signature

Address: .........................................................................

........................................................Zip Code ..........................

Telephone .........................................................................

Accepted:

.........................................................................
Trustee

(If executed in the Province of Quebec, this contract shall be properly notarized and otherwise executed according to the laws of that Province.)

# EXHIBIT 47

*Transformers Vocal Theme*

BROADCAST MUSIC INC
RECEIVED CLEARANCE REPORT

TTLNB40
PAGE : 21

PARIS ACCT #: 009681013    CLEARANCE #: 7046202

SUBMITTER : SONY/ATV SONGS, INC SP ACCT

TITLE: TRANSFORMERS VOCAL THEME 11    TIMESTAMP    04/24/97   20:54:50
ORIG TITLE :                          ORIG TITLE #:

AKAS : TRANSFORMERS OPENING THEME

COMMENT :

PUB DOMAIN TITLE :
PUB DOMAIN WRITER :

ORIGIN        : N          FILM/SHOW TITLE :                     SOURCE:
DURATION      : 00:00:35   RECORDING ARTIST:                    JAZZ IND : N
CREDIT RATE   : 1.00       MULTIPLE CREDIT : N     TYPE CLEAR : D   FIRST REL :
LOG US        : Y          LOG CANADA      : Y     BMI LICENSE : Y   PUB SONG #: 000000000420811

>> WRITER : BACAL, JOE                       PARIS ACCT #: ----------
   ADDRESS : UNKNOWN              SSN :
   PAY MODE :                     AFFIL : BMI
   SHARE   : 8.30                 WTHLD PAY : N

>> WRITER : BRYANT, ANNE                     PARIS ACCT #: ----------
   ADDRESS : UNKNOWN              SSN :
   PAY MODE :                     AFFIL: BMI
   SHARE   : 8.30                 WTHLD PAY : N

>> WRITER : KINDER, FORD                     PARIS ACCT #: ----------
   ADDRESS : UNKNOWN              SSN :
   PAY MODE :                     AFFIL: BMI
   SHARE   : 83.40                WTHLD PAY : N

ACCEPT
REJECT (MSG REQD)
OPERATOR'S INITIALS : Y
DATE



PLAINTIFF'S
EXHIBIT 6
7-7-04

04/24/97
20:54:57

TTLM0040
PAGE : 22

BROADCAST MUSIC INC.
RECEIVED CLEARANCE REPORT

>> PUBLISHER : STARWILD MUSIC, INC.

PUB TYPE: O          ARTIST : BMI          PARTIS ACCT #: ...........

ADMINISTRATOR: SONY/ATV SONGS LLC E4814     WTHLD PAY      : N

US SHARE:: 100.00  WORLD SHARE: 100.00      WORLD SHARE :

04/24/97
20:54:57

# EXHIBIT 48



*Ten vocal theme 4/24/97*

BROADCAST MUSIC INC.
RECEIVED CLEARANCE REPORT

TTLMB40
PAGE : 25

SUBMITTER : SONY/ATV SONGS TREE 2% ACCT

PARTS ACCT #: 000621013          CLEARANCE #: 7046204
                                 TIMESTAMP : 04/24/97    20:54:50
                                 ORIG TITLE #:

TITLE : JEM VOCAL THEME
ORIG TITLE:
AKAS : JEM OPENING THEME
COMMENT
COMMENT

PUB DOMAIN TITLE :
PUB DOMAIN WRITER :
ORIGIN : N              FILM/SHOW TITLE
DURATION : 00:00:42     RECORDING ARTIST
CREDIT RATE : 1.00      MULTIPLE CREDIT : N    TYPE CLEAN : D    JAZZ IND   N
LOG US : Y   LOG CANADA   Y                    BMI LICENSE   Y   FIRST REL   02/00/86
                                               PUB SONG #: 00000000001J3R16
                        SOURCE

>> WRITER : BACAL, JOE          PARTS ACCT #:
   ADDRESS : UNKNOWN            SSN
   PAY MODE:                    AFFIL: BMI
   SHARE    50.00               WTHLD PAY: N

>> WRITER : BRYANT, ANNE        PARTS ACCT #:
   ADDRESS : UNKNOWN            SSN
   PAY MODE:                    AFFIL: BMI
   SHARE    50.00               WTHLD PAY: N

ACCEPT
REJECT (MUST REDO)
OPERATIONS INITIALS
DATE

PLAINTIFF'S
EXHIBIT
7-7-04

04/24/97
20:54:58

BROADCAST MUSIC INC.
RECEIVED CLEARANCE REPORT

FILMBIRD
PAGE:   26

PUBLISHER : STARFIELD MUSIC INC          PARTS AFF : ...
PUB TYPE: D              AFFIL: BMI       WORLD PAY:   N
ADMINISTRATOR: SONY/ATV SONGS LLC E+B1M
US SHARE: 100.00   CAN SHARE: 100.00     WORLD RIGHTS:  Y

01/24/07
20:54:58

Sem Vocal
page 2

# EXHIBIT 49

```
11M040
PAGE :   12

SUBMITTER : SONY/ATV SONG TREE SP ACCT

  ORIG TITLE:

  TITLE: VISIONARIES OPENING TITLE

  AKAS :

  COMMENT :

  COMMENT :

PUB DOMAIN TITLE :
PUB DOMAIN WRITER :

  ORIGIN        : N          FILM/SHOW TITLE :
  DURATION      : 00:00:30.  RECORDING ARTIST :
  CREDIT RATE:  1.00         MULTIPLE CREDIT : N    TYPE CLEAR : U
  LOG US        : Y          LOG CANADA      : Y    BMI LICENSE : Y

>> WRITER : BRYANT, ANNE                    PARIS ACCT #:
   ADDRESS : UNKNOWN
                                            SSN :
   PAY MODE: -                              AFFIL: BMI
   SHARE   :  50.00                         WITHLD PAY: N

>> WRITER : BACAL, JOE                      PARIS ACCT #:
   ADDRESS : UNKNOWN
                                            SSN :
   PAY MODE: -                              AFFIL: BMI
   SHARE   :  25.00                         WITHLD PAY: N

>> WRITER : BACAL, JAY MICHAEL              PARIS ACCT #:
   ADDRESS : UNKNOWN
                                            SSN :
   PAY MODE: -                              AFFIL: BMI
   SHARE   :  25.00                         WITHLD PAY: N
```

```
BROADCAST MUSIC INC.
RECEIVED CLEARANCE REPORT

PARIS ACCT #: 000621013          CLEARANCE #: 7046197
                                 TIMESTAMP : 04/24/97  20:54:50
                                 ORIG TITLE :

SOURCE:

                                 JAZZ IND :        N
                                 FIRST REL : 00/00/87
                                 PUB SONG #: 00000000003165

                                 ACCEPT
                                 REJECT (MSG REQD)
                                 OPERATORS INITIALS :
                                 DATE
```

Visionaries
Opening title (Page 1)
Submitted by Sony

4/24/97

2 pages

PLAINTIFF'S
EXHIBIT
40 GW

000680

TTLM840
PAGE : 13

BROADCAST MUSIC INC.
RECEIVED CLEARANCE REPORT

04/24/97
20:54:57

-> PUBLISHER : STANWILD MUSIC, INC.

PUB TYPE: O

ADMINISTRATOR: SONY/ATV SONGS LLC E4814

US SHARE: 100.00

AFFIL: BMI

CAN SHARE: 100.00

PARIS ACCT # : ----------

WTHLD PAY   : N

WORLD RIGHTS: Y

Opening title
page 2

000681