# EXHIBIT 70

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

```
_____
ANNE BRYANT,                       :
              Plaintiff,           :
                                   :
    -v-                            :
                                   :
BROADCAST MUSIC, INC.              :
(a/k/a/"BMI"), FORD KINDER,        :
KINDER & CO., LTD.,                :Index No. 5192/00
VADIVOX, INC., JULES M. "JOE"      :
BACAL; GRIFFIN BACAL, INC.,        :Hon. Andrew P. O'Rourke
STARWILD MUSIC BMI, WILDSTAR       :
MUSIC ASCAP, SUNBOW                :
PRODUCTIONS, INC.,                 :
                                   :
              Defendants.          :       **AFFIDAVIT**
                                   :
_____
ANNE BRYANT,                       :
              Plaintiff,           :
                                   :Index No. 2821/02
    -v-                            :
                                   :Hon. Andrew P. O'Rourke
                                   :
SUNBOW PRODUCTIONS, INC.,          :
                                   :
              Defendant.           :
_____   :
```

STATE OF NEW YORK   )
                    ) :ss
COUNTY OF ROCKLAND  )

**ANNE BRYANT**, being duly sworn deposes and says:

1. I am Plaintiff and ask the Court for the following
   relief:

   A. Entry of an Order directing resumption of
      further proceedings in this matter;

   B. Bifurcation of the two basic royalty claims that
      I have made in this case (performance and
      publishing) as I describe them below to

permit claims based on performance royalties
against defendant Sunbow Production, Inc.
["Sunbow"]and Broadcast Music, Inc. ["BMI"] to
conclude discovery and proceed to trial on the
performance royalty claims without further undue
delay;

C. For permission to take deposition testimony on
damages and testimony to protect and preserve the
record of important witnesses, such as Ford
Kinder, a Florida resident and my expert David
Berman, a California resident; and

D. To allow and to deem my claims and pleadings
amended to conform to the proofs elicited at
trial to state claims for breach of written
contracts with defendant Sunbow based on among
other things, the additional and subsequent
transactions and occurrences in this case
including Sunbow's August 2004 mid-trial
production of written agreements.

## BIFURCATE CLAIMS

2.    I ask the Court to separate the two basic claims and
recognize that there are distinct royalty claims
that I have made in this case:

A. **PERFORMANCE ROYALTIES**.  I have sued both Sunbow
and BMI for my correct, agreed-upon share of
"Public Performance Rights Royalties"—those
royalties which are collected and distributed by
Defendant BMI for domestic and foreign broadcast
licensing and use of the themes and songs
composed by me;

B. **MUSIC PUBLISHING CLAIMS**.  I have also sued Sunbow
for my 50% share of "Music Publishing Royalty

Income," earned from mechanical royalties, and
from various licenses issued to third party
manufacturers and distributors of tangible goods,
such as CDs, Home Videos and DVDs featuring my
music. *[Music Publishing income is customarily
split 50/50 between writer and publisher and the
Jem contracts in evidence provides for that and
the experts and even Helene Blue, Sunbow's
expert, agree that writers retain these rights
even with a "work for hire" contract]*[1];

C. Although I am puzzled at the Court's imposition
of a stay; *I feel that it's unfair for the Court
put my trial on hold, damaging and interfering
with my BMI income stream, <u>without any formal
motion from the Defendant, Sunbow Productions,
Inc.</u> ["Sunbow"]— accepting letters from its
attorney, Gloria Phares as some sort of a motion,
to which I had no opportunity at all to respond.*
While I understand that the Court might consider
the Publishing Royalty issues to be somewhat more
complex [although I feel it is not and that the
Jem agreement and all other experts—including
Sunbow's expert and its attorney Robert Harris
support my view], I don't understand why this
part of my case has been delayed.  If for some
reason your Honor can't hear this part of the
case, perhaps another Judge or Special Master
could make findings on these claims and report to

---

[1]  These music Publishing Rights are referred to in Paragraph 6 of the
Jem Feature Song Agreement— 6/1/86 Exhibit M in Evidence at trial— a
copy is attached.

your Honor after I have had an opportunity to at least bring the information current;

D. I <u>cannot</u>, however, accept that the court has issued a *stay* on the **entire** trial in progress, because my claims to "Public Performance Rights Royalties" are not really at issue on the appeals. In fact, the Defendants have stipulated that I am entitled to these royalties. Sunbow's counsel, Ms. Phares, in particular, has made much of this stipulation in that she built her theories during her protracted cross examination of me on the premise that I am entitled to my Public Performance Royalties—*but no other royalties*; [2]

E. <u>The appeals are not dispositive of the entire case</u>; *Your Honor has the power to rule and the contracts to guide his rulings in matters regarding my claims to* **Public Performance Rights Royalty income** from 1994-2000 [that is long past due to me] that has accumulated to more than $238,000, as well as even greater losses mounting up to the present— and ongoing;

---

[2] I of course, vehemently disagree with Ms. Phares. The contracts that her client Sunbow belatedly produced, as well as the testimony of expert witness— even Sunbow's expert— supports my position that I am entitled to both Public Performance royalties as well as a 50% share of Music Publishing Income.

F. There is no basis for further delay of the trial
of my claims to past, present and future Public
Performance Royalty income that has been
wrongfully diverted and withheld from me; and

G. After more than ten years of debilitating income
losses, five years of unduly burdensome legal
expenses and legal work occasioned by Sunbow's
transparent delays from motions and legal
sideshows intended to break my back and to punish
my attorney, I beseech this court to use its
powers to restore my right to seek relief for
these losses and abuses.  I do this with belief
in mind and in heart in the powers and just
mission of this Court, and the implicit promise
of 'justice for all.'

## AMENDED CLAIMS

3.    I also ask to Court to allow my claims to be
deemed amended to include claims based on certain of the
writings produced in 2004 during trial and consider my
Amended Complaint dated December 11, 2003 and my pleadings
amended to conform to the evidence already in this case and
proofs to state claims for breach of written contracts
(including a certain Jem Agreement dated June 1986)[3] dealing

---

[3]   Although this is the Jem Feature Song Agreement, not the
Jem Theme Song Agreement, I have accepted it as stating the

5

with my performance royalties and publishing rights.   This
is only fair because of Sunbow's August 2004 mid-trial
production of those very written agreements I had requested
specifically for more than a year before commencement of
trial and Sunbow's false claims of their destruction in a
flood.

4.    In addition to the above, I point out the
following reasons why my pleading should be deemed amended
in this case to include claims based on written and oral
agreements:

a. **WRITTEN AGREEMENTS CONCERNING PERFORMANCE
ROYALTIES**.  Sunbow, as copyright holder,
controlled all aspects of the BMI registrations.
Paragraph 5c of the "Jem Agreement" [Exhibit M in
Evidence and attached hereto as well] provides
that the Company (Sunbow, holder of the
copyright) licenses back to the writer the
writer's share of performance royalties:

"…**so as to enable writer,,, to collect the 'writer's
share' of royalties derived there from**."

b.  **MY TESTIMONY**.  A review of my testimony in
the record at trial and in depositions clearly

---

terms of my Sunbow agreements with Jules M. "Joe" Bacal and
Sunbow Agreements related to Sunbow productions.

states that I worked for the Defendants using
both oral and written understandings.[4]


      I testified at trial as follows:

4   Q. Did you have a written agreement to produce

5   the compositions at issue in this case?"

6   A."Ford Kinder told me that there was

7   a contract. I don't remember ever signing a

8   contract with them, but he was my partner and
    he

9   said there was a contract at some point in our

10  association with those people."

11  Q. And then later, or -- so, according to your

12  testimony in March, Mr. Kinder had told you
there was a

13  written contract with Sunbow, had he not?"

14  Was he talking about Sunbow?

15  A. He was." [Trial Trans p.94].


    5.   I also testified at my deposition in March 2003
as follows:


      Q. Did you have a written contract to produce the
      compositions at issue in this case?

---

[4]  It is common practice in the competitive commercial music business
to work with both oral and written agreements. We most often compete
with other producers to win each job. The agency's representative
outlines the creative direction and all of the specs and payment terms
of the job. This is done orally—usually over the phone. If the specs
and terms are agreeable to both parties, we compose and produce a
"demo" of our version of the music and hope that our version is
selected for broadcast. If we are successful and our music is chosen
and scheduled for broadcast, written agreements are sent to us that
bear out the details discussed when we accepted the [competitive] job.
There is no need for us to sign a contract unless we win the
competition and until our music is scheduled for broadcast.

A.   Ford Kinder told me that there was a
contract.  I don't remember signing a contract
with them, but he was my partner and he said
there was a contract at some point in our
association with those people.

        *       *       *       *

Q. Did you ever have a copy of a contract that
you've had to produce these jingles?
A.   Those specifically?
Q. Yes, I'm sorry, those compositions.
**A. No, I don't have the contracts.**  [p. 44 Lines
3-23-3/31/03]

6.   Some of these agreements and especially the Jem
Agreement concerning feature songs are now in evidence
although Sunbow refused to allow the appeals court to see
them.

### OBTAIN AND PRESERVE TESTIMONY

7.   I ask the Court's permission to update and permit
me to take deposition testimony on my damages and
additional testimony on the merits of all claims to protect
and preserve the record of important out-of-state witnesses
including my former partner Ford Kinder, a Florida
resident, and my expert David Berman, Esq., a California
resident whose Declaration is already on file.  I need this
because:

8

a. **ADDITIONAL ACCRUALS**.  In addition to the $238,000 loss of income that was tabulated from BMI payment reports obtained by way of subpoena, amounts accruing until today [that will continue to mount in the future] need to be tabulated from *like* BMI payment reports. To do this we will need the restoration of full subpoena powers that can only be restored when the court vacates its Order of March 2005 which incidentally arrested our power to gather accounting information pertinent to my Public Performance Rights Royalty claims as reported and paid to all parties by Defendant, BMI.

b. **LACK OF CREDIT FOR MY WORK – DAMAGE TO MY CAREER**.  In addition to royalty payments from defendant, BMI that have been made to persons *not entitled to receive them,* in lieu of payments to me for music I composed, the Court must be made aware here that there are three new TRANSFORMERS television programs that broadcast daily around the world. The theme song used for Transformers "Armada" and Transformers "Energon" is my Transformers Theme, yet I have not received one penny of royalties for the daily broadcasts of my theme in these two shows, which have been broadcast for several years now. The latest Transformers television program, "Cyberton" is also using my Transformers theme. In all three of the above programs, my theme is credited as written by others who are and have been, without a doubt, collecting my royalties [see Exhibit A]. We need the restoration of subpoena powers in order to compel "Royalty Reporting Services" [a division of Talent Partners, Inc.] to produce cue sheets identifying the names of those credited with writing my Transformers theme and paid royalties that are due exclusively to me, the composer.[5]  Only then can we begin to

---

[5] New "arrangements" of my music do not entitle the arrangers to royalties and the BMI records show arrangers

tabulate the large sums of Performance rights
royalties that have been denied me, the true
composer, for several years of worldwide, daily
broadcasts of three television programs using
my theme.

c. Perhaps Ford Kinder, who settled with me and
now lives in Florida, would recall better than
me events regarding the original music
contracts because he signed more of them than I
did. I was more focused in the recording
studios because I did our final arrangements,
so more of my time was spent away from the
office. The contracts requiring more oversight
from me were the Union contracts that governed
terms of employment for the talent we sub-
contracted for the recording sessions I
conducted on behalf of Sunbow and Griffin Bacal
Inc.

d. I implore the court to allow me to preserve the
testimony of important witnesses for the record
dealing with events and circumstances that go
back 20 years and more.  Look at how long
Sunbow took to dredge up documents it claimed
were lost in a New York City flood.

---

getting my royalties. I have made my living as both a
composer and an arranger in the commercial music business. I
speak from long professional experience when I testify to
the court that *only the Composers are entitled paid
royalties. Arrangers are paid* "arranging and production
fees." Arrangements are *fashionings* of "existing works."
Arrangements are not "derivative works." I look forward to
presenting a roomful of industry witness [if it pleases the
court]  that will attest to this in court.

## AFTER THE ABOVE TESTIMONY

8.   Therefore, as soon as possible after the above-
discovery, I ask the Court to resume trial of at least my
Public Performance Rights Royalty claims if not the
entire case for the following urgent reasons:

> a.   Defendant, Sunbow was my **"publisher,"**
> through its publishing arms, "Starwild Music
> [BMI]" and "Wildstar Music [ASCAP];
>
> b.   It is indisputable that the Publisher is
> responsible to file correct registrations with
> BMI and ASCAP; that the appeals in this case do
> not involve or affect matters concerning my
> Public Performance Rights Royalty claims; and
> that on numerous occasions the Defendants have
> stipulated on the record that I am entitled to
> these Public Performance Royalties.  Nothing- no
> "work for hire" agreement- would have given them
> up.[6]  The Publisher, as administrator is
> responsible to maintain those registrations
> properly so that only the correct party is paid;[7]
> and, the publisher has a continuing

---

[6]  I have all of my original payment statements and also the
original registrations that were filed by SUNBOW. Those
registrations, which declare my true author credits are not
to be changed without my formal release. I have never
released them. [see also 6].

[7]  Please see Declaration of my expert witness, David
Berman, Esq., already on file.

11

responsibility to transfer accurate authorship information if and when the publisher's catalogue is sold to another publishing company;

c.   I reiterate to the Court that there have been <u>21 quarterly statements</u> issued to me by Defendant BMI since this action was filed in 2000 reflecting insufficient credits and payments to me; and

d.   <u>I continue to be damaged every year in this five-year-old case:</u>

• No accountings have been ordered by the Court; nor any tolling of BMI royalty payments to Defendants Bacal and Kinder, with whom I have settled;

• **<u>Defendant BMI has never consummated the settlement that has been on the table for more than one year. Clearly, Defendant BMI has left Your Honor in 2004 with the impression that a settlement was imminent.</u>**

• Defendant, BMI will not even return our telephone calls and emails.

- Defendant BMI is clearly riding along on Ms. Phares' coat tails hoping to avoid paying damages or changing records.

- I am trapped for yet another two years as a BMI member/affiliate [my contract rolled over automatically on 9.3.05 for another two years] because BMI has neglected to change its records to conform to the settlements terms that they must honor.

- Defendant BMI shows no willingness to make changes authorized by my settlements with Kinder and Bacal.

- Defendant BMI has not changed its records to reflect adjustments in writer credits that were authorized in my hard-won settlements with Defendants Bacal and Kinder.

- Nothing has been done at all— no justice— only mounting costs from deliberate, devious delays. *It is a though I never worked to bring this case to trial at all.*

- *In the matter of my valuable TRANSFORMERS title,[8] for example, I continue to be paid at a rate as low as 8% in lieu of the 100% that is due to me for this title. This means that I have been*

---

[8] My "Transformers" music was not written as or for a Sunbow Production- the music was written for GBI.

13

*living on as little as 8% of my income for*
*approximately 15 years.*

\*     \*     \*     \*

9.   At the heart of my respect for the awesome design of our democracy, and the inestimable value I place on my American Citizenship, is the underlying promise that an individual American who has been harmed—myself in this case—has the right to seek justice from the courts in matters in which a more powerful and wealthy opponent's advantage cannot outweigh the facts at hand. It is with that belief in mind and in heart that I have made these motions to the court, trusting that the Court will at least bifurcate the claims. allow me to amend my pleading, obtain additional discovery, preserve testimony and continue with at least trial of my performance royalty claims <u>as soon as possible</u> so that we can reach a fair accounting for all of the income that has been due to me for so many years, which has never been paid to me, and for the damages these losses have caused and continue to cause to my life and career.

10.   I therefore beg the Court to grant the relief I have requested.

ANNE BRYANT

Sworn to before me this
6th day of December, 2005.

Notary Public

PATRICK J. MONAGHAN JR.
NOTARY PUBLIC, STATE OF NEW YORK
NO. 02MO6000355
QUALIFIED IN NEW YORK COUNTY
COMMISSION EXPIRES

14

# EXHIBIT 71

S5576-017

SPECIAL NO. 277

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

————————————————————— x
ANNE BRYANT,                                          :

                    Plaintiff,                        :        Index No. 5192/00

          - against -                                 :        Hon. Andrew P. O'Rourke

BROADCAST MUSIC, INC., (a/k/a "BMI"),                 :
CLIFFORD A. "FORD" KINDER, KINDER &
CO., LTD., VADIVOX, LTD., JULES M. "JOE"              :
BACAL, GRIFFIN BACAL, INC., STARWILD
MUSIC BMI, WILDSTAR MUSIC ASCAP,                      :
SUNBOW PRODUCTIONS, INC., and JOHN
AND JANE DOES 1-10,                                   :

                    Defendants.                       :
————————————————————— x
                                                      :
ANNE BRYANT,

                    Plaintiff,                        :

                                                      :        Index No. 2821/02
          - against -
                                                      :        Hon. Andrew P. O'Rourke
SUNBOW PRODUCTIONS, INC.,
                                                      :
                    Defendant.
                                                      :
————————————————————— x

**SUNBOW PRODUCTIONS, INC.'S  MEMORANDUM OF LAW IN  OPPOSITION
TO PLAINTIFF'S MOTION (1) TO VACATE  ORDER OF MARCH 3, 2005; (2) TO
DEEM PLEADINGS AMENDED TO INCLUDE CAUSES OF ACTION FOR
BREACH OF WRITTEN CONTRACTS; (3) FOR ADDITIONAL DISCOVERY; AND
(4) FOR BIFURCATION OF CLAIMS RELATING TO PERFORMANCE ROYALTIES
AND PUBLISHING ROYALTIES; AND [(5)] FOR A DATE CERTAIN FOR
RESUMPTION OF TRIAL AS TO PERFORMANCE ROYALTY CLAIMS**

PATTERSON, BELKNAP, WEBB & TYLER LLP
Attorneys for Defendant  Sunbow Productions, Inc.
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000
Gloria C. Phares

# Table of Contents

Page

Table of Authorities ...................................................................................................... ii

I.   Plaintiff's Motion to Amend Her Complaint
     Should Be Denied............................................................................................8

     A.   Plaintiff Has Failed to Make the Showing Required
          to Amend a Complaint in the Midst of Trial. ....................................9

     B.   Plaintiff Fails to Show that Her Amended Pleading
          Has Merit..............................................................................................11

     C.   Amendment of the Complaint Significantly
          Prejudices Sunbow..............................................................................14

II.  No Performance Royalty Issues Remain to be
     Tried as to Sunbow. .........................................................................................16

III. Resumption of Trial Should Await the Decision
     of the Appellate Division. .............................................................................17

CONCLUSION.............................................................................................................18

## Table of Authorities

Page

Bellini v. Gersalle Realty Corp.,
120 A.D.2d 345, 501 N.Y.S.2d 674 (1st Dep't 1986)........................................9, 15

Boyd v. Trent,
297 A.D.2d 301, 746 N.Y.S.2d 191 (2d Dep't 2002)...............................................8

Clark v. Foley,
240 A.D.2d 458, 658 N.Y.S.2d 429 (2d Dep't 1997)...............................................8

DiRusso v. Kravitz,
21 N.Y.2d 1008, 238 N.E.2d 329, 290 N.Y.S.2d 928 (1968)................................15

Mente v. Wenzel,
577 N.Y.S.2d 167 (N.Y. App. Div. 1991) .............................................................16

Sharp v. Kosmalski,
40 N.Y.2d 119, 386 N.E.2d 721 (1976)..................................................................16

Torres v. Educational Alliance, Inc.,
300 A.D.2d 469, 752 N.Y.S.2d 80 (2d Dep't 2002).................................................8

### STATUTES

17 U.S.C. § 101..................................................................................................................12

CPLR § 3025(b)....................................................................................................................8

CPLR § 3025(d)..................................................................................................................18

### MISCELLANEOUS

David D. Siegel, Practice Commentaries,
§ 237 (3rd ed. 1999).............................................................................................................9

1244310v2

Defendant Sunbow Productions, Inc. ("Sunbow") responds as follows to Plaintiff Anne Bryant's ("Bryant") notice of motion (1) to vacate the Court's March 3, 2005 order to suspend proceedings pending decision by the Second Department on Sunbow's appeals; (2) to amend the pleadings to include causes of action for breach of written contracts; (3) to permit additional discovery necessary for Plaintiff to prove her new theory; (4) to bifurcate her claims for performance and publishing royalties; and [(5)] to set a date certain for resumption of the trial on her performance royalties.[1]

### PRELIMINARY STATEMENT

Except for Plaintiff's motion to vacate the Court's March 3, 2005 order suspending proceedings in this Court, Plaintiff's motion amounts to a request <u>in the middle of trial</u> to amend the pleadings so as to introduce a new cause of action – breach of written contracts with Sunbow.  Implicitly acknowledging that there has been no discovery on this new theory, she also asks the Court – <u>in the middle of trial</u> – for permission to conduct discovery necessary for her to prove her new claim and to develop evidence supporting her damage claims  (<u>see</u> Bryant Aff. at ¶ 7).   Plaintiff also seems to be asking for amendment to add new defendants.  <u>See</u> Bryant Aff. at 9, alleging that new TV Transformers television programs (not created by Sunbow) are also using her music without crediting (or paying) her.[2]

Not only is Plaintiff attempting to add causes of action for breach of agreements of which she was aware (or should have been aware) because she signed

---

[1]      Sunbow notes that although Bryant's notice of motion and supporting affidavits were served on December 6, 2005, her supporting memorandum of law was not served until December  14, 2005, two days before her initial return date.

[2]      Bryant's affidavit refers to an Exhibit A, which was not attached to her affidavit.  <u>See</u> Bryant Aff. at 9, ¶ 7(b).

them in the mid-1980s, but she does so in the middle of trial on an oral contract theory that Plaintiff has vehemently pressed since November 2003, simultaneously denying that she had ever worked pursuant to the written agreements that she now claims should be the basis for amendment.

This Court should deny Plaintiff's motion in its entirety. Plaintiff offers no reasonable explanation why she waited several years before making her motion to amend. In addition, the affidavit of Plaintiff's counsel on the merits of the new claims is unpersuasive. Permitting amendment of the pleadings at this late date not only will result in significant prejudice to Sunbow, but rewards Plaintiff for her sworn misrepresentations to this Court and for her prior efforts to obfuscate the record.

Two of the issues before the Appellate Division could result in termination of this case. Plaintiff's conduct has already caused Sunbow considerable expense, and resuming trial in a case that may be terminated means incurring unnecessary expense. For that reason Sunbow also opposes resumption of any proceedings before a decision by the Appellate Division on the pending appeals.

## COUNTER-STATEMENT OF RELEVANT FACTS

Plaintiff signed the agreements on which she now wishes to proceed in the mid-1980s, so she should have been aware of her new cause of action when she first claimed to have sued Sunbow in 2000, over five years ago[3] and in her two subsequent complaints, both filed in 2002.[4] Yet in none of those three complaints has she ever

---

[3]    Sunbow continues to deny that it was ever served with Plaintiff's 2000 complaint.

[4]    Plaintiff's memo of law begins (Bryant Br. at 7-8; see also Dec. 6, 2005 Affirmation of Patrick J. Monaghan, Jr. ("Monaghan Affirm.") at 9-10, ¶ 12) with a series of statements that it characterizes as "findings which were already law of the case." Id. Nothing could be farther

1244310v2

alleged a claim for breach of contract, written or oral. Her current complaint contains

two causes of action — unjust enrichment and constructive trust.

Bryant knew of the written contracts in March 2003 when at deposition

she stated, as she now concedes (Bryant Aff. at 8), that Kinder & Bryant Ltd. had signed

work-for-hire agreements with Sunbow, but she made no effort then to amend her

complaint to allege breach of those written contracts. She did not even inquire about

agreements between the parties until the date she filed the note of issue in this case,

June 30, 2003, when she also filed a late document request for them.[5]

---

from fact. The catalogue of quotations are from the Court's May 28, 2004 Order on the Motion to Dismiss on the Statute of Frauds. Exhibit A to the Affirmation of Gloria C. Phares ("Phares Affirm."). Several of these statements (Bryant Br. at 7-8, ¶¶ (ii, iii, iv, v, vi)) that Plaintiff is passing off as findings include statements regarding arguments made, not by Sunbow, but by co-defendant Bacal, with whom Plaintiff has now settled. Phares Affirm., Exh. A. at 15 n.8, 16, 17, 18.

Two of the statements (Bryant Br. at 7, ¶¶ (v) & (vi)) are not "law of the case," but merely descriptions of Plaintiffs allegations. More importantly, those statements overlook the conflicting holding of the Court's December 15, 2003 decision, that "plaintiff has woefully failed to demonstrate that it is appropriate to pierce the corporate veil and find that Bacal's identity was one with his production company Sunbow, which of course otherwise had no confidential relationship to plaintiff, so as to render Sunbow potentially liable for alleged wrongdoings which otherwise would be time-barred" (Phares Affirm., Exh. B at 15-16).

Two other statements (Bryant Br. at 8, ¶¶ (ix) & (x)) are based on an affidavit of David Berman, which Plaintiff does not provide. Sunbow, however, offered a motion in limine at trial to exclude Mr. Berman's expert testimony on the ground that (a) as a former recording company executive, he was not qualified to give expert testimony regarding the publishing rights of composers commissioned to compose for television shows; (b) his testimony, which relates to the recording industry would not be relevant to the television business; and (c) one of the issues on which he was to give "expert" fact testimony was an issue of law, an interpretation of the Copyright Act.

Three of the statements are misleadingly incomplete. For example, the statement quoted in Bryant Br. at 8, ¶ (xi) omits the Court's acknowledgment that "Sunbow does not agree … that the licenses that were made for the distribution of the television shows in videocassettes and DVDs is an exercise of [either the mechanical or the synchronization licenses in Bryant's written agreements with Sunbow." Phares Affirm., Exh. A. at 22). And the while it is true that Sunbow acknowledged in its Motion to Dismiss on Statute of Frauds grounds that Bryant's only remedy (if the Court granted Sunbow's Statute of Frauds motion) was under quantum meruit (Bryant Br. at 8, ¶¶ (vii & viii)), Plaintiff fails to add that Sunbow also argued that based on comparable contracts in the record of other composers and lyricists, she was not entitled to more than the millions of dollars she had already been paid.

[5]    Over Sunbow's objections that the requests were too late, Sunbow was required to respond, and it replied accurately that it was unable to locate documents responsive to the document requests. See Bryant Br. at 13-14. Plaintiff seems to take the position that once Sunbow said it could

Then in November 2003, in response to Sunbow's motion for summary judgment, and after learning that Sunbow could not locate the signed work-for-hire agreements (see note 5, supra), Bryant claimed for the first time that she had never signed any agreements with Sunbow, claimed to be entitled to broad performance and publishing rights (and royalties), and insisted that there was an issue of fact regarding the oral agreements she had made with Sunbow that warranted a trial. On reply, Sunbow disputed Bryant's argument and in support of the argument that the parties had always worked pursuant to written agreements, it provided an unsigned copy of the Jem agreement with supporting documentation (including a proposed amendment of it from Bryant's lawyer, Dobishinski) supporting the inference that the Jem agreement had been signed.

Through the next two rounds of briefing relating to the Court's jurisdiction, Sunbow explained the jurisdictional consequences of Plaintiff's position and argued that the parties' relations had been governed only by written agreements, which, if accepted by the Court, would sustain the Court's jurisdiction. Plaintiff opposed Sunbow's arguments, claiming that (1) she had never signed any agreements with Sunbow, (2) the unsigned Jem agreement did not evidence anything, (3) she had always worked only pursuant to oral agreements; and (4) she was the copyright owner and her claims were "firmly rooted in U.S. Copyright Law." This Court was persuaded

---

not locate the documents, it could not later produce them. (Bryant Br. at 15-16.) Responding to document requests is a continuing obligation, and when Sunbow found the requested documents, it produced them promptly. For Plaintiff to complain that Sunbow did not follow appropriate procedure is both wrong, and under the circumstances, ironic.

4

by those arguments and ordered the parties to trial on Plaintiff's oral agreement theory.
Sunbow removed the case to federal court.

Contrary to the statement of Plaintiff's counsel (December 6, 2005
Affirmation of Patrick J. Monaghan, Jr. ("Monaghan Affirm.") at 4, ¶ 6), the federal court
<u>never reached the merits</u> of Sunbow's motion.  It denied the removal on the ground that
it was late <u>and</u> on the representation of Plaintiff's counsel that her copyright claims to
this Court were "over the top" and that she would not pursue them on remand to the
state court.  <u>See</u> Affirmation of Gloria C. Phares ("Phares Affirm."), Exh. C at 4.

After remand to this Court, the parties met in chambers with the Court on
March 2, 2004, where, contrary to his representation to the federal district court,
Plaintiff's counsel stated that he was still pursuing his oral agreement theory.  Sunbow
and Bacal urged that (1) Plaintiff be required to amend her complaint to clarify the basis
of the oral agreement on which she relied, (2) to permit Defendants to allege their
affirmative defenses including the Statute of Frauds, which seemed appropriate for oral
agreements made in the 1980s, and (3) to allow any necessary additional discovery
before trial.  Plaintiff's counsel opposed any such amendment.

This Court did not require Plaintiff to amend her complaint, but, noting
that a motion based on the statute of frauds was a legal issue, directed Defendants
Sunbow and Bacal to file motions to dismiss on Statute of Frauds grounds.[6]  Defendants
did so, and "Plaintiff vigorously oppose[d] the motions in all respect . . . " Phares
Affirm., Exh. A at 12.  The Court's decision <u>never reached the merits</u> of Sunbow's

---

[6]        Defendant Bacal's settlement with Plaintiff was announced on July 9, 2005, during trial.

motion.  Id. at 19-20.  It denied the motion on the ground that it was late, despite the

fact that the Court had granted Sunbow leave to make it.[7]

   Over Sunbow's objection that requiring it to go to trial on a theory that

was not the subject of any complaint and on which it had been allowed no discovery

violated due process (Phares Affirm., Exh. D at 12-20), trial on Plaintiff's oral argument

theory began on July 6, 2004.  During a hiatus in the trial, after five trial days, Sunbow

found and immediately produced on August 24, 2004, three of the signed work-for-hire

agreements between Kinder & Bryant Ltd. and Sunbow.  Although Bryant submitted an

affidavit from Ford Kinder admitting the authenticity of  his signatures, Bryant denied

that her signatures on the ancillary agreements were genuine.

   At a September 13, 2004 hearing, Sunbow showed the Court and Plaintiff

the original responsive documents that it had found and explained the efforts that had

been made to find them.  Phares Affirm, Exh. E at 4-18.  Noting Bryant's sworn affidavit

that her signatures were forged (id. at 22:20-24), Plaintiff's counsel demanded a framed

issue hearing on "the validity of these documents" (id. at 24:17-28).  That framed hearing

was held on October 29, 2004.  Sunbow called a handwriting expert, who testified that

Bryant's signatures on the agreements were authentic (Phares Affirm., Exh. F at 61-65,

78), and Robert Harris, the lawyer who drafted all the Sunbow work-for-hire

agreements, who testified that Sunbow's work-for-hire agreement was a form

agreement and identical in all material respects (except for monetary terms) to the

signed agreements Sunbow produced (id. at 14-25).  Because Sunbow had not found the

---

[7]  This ruling and the merits of the Statute of Frauds motion are both part of the appeals
pending in the Appellate Division.

work-for-hire agreements for all the TV Shows at issue in the case, Mr. Harris's

testimony was offered to support the inference that they were all identical as to the

rights granted to Plaintiff. Id. at 21-24. Plaintiff offered no witnesses, and she did not

testify.

At the conclusion of the framed issue hearing, this Court asked the parties

to submit briefs. In Bryant's affidavit, with no explanation, she stated "I do not contest

the signatures on the JEM Agreement . . . ." Phares Affirm, Exh. G at 6. Having sworn

to the Court that her signatures were forged and maintained that position through two

hearings, Plaintiff offered no explanation for the reversal of her position. Plaintiff's

memorandum of law similarly made no mention of the principal issue that the parties

were directed to address: whether plaintiff's signatures were genuine. Instead, it

contended that the parties' working arrangement could be determined only by a

continuation of trial where the participants in Plaintiff's oral agreements could be

examined. In the alternative, Plaintiff argued that "in the event that the Court finds that

the Sunbow Jem agreement governed the parties' relationship, the Plaintiff should be

permitted to amend the complaint to include a breach of contract claim by defendant,

Sunbow." Phares Affirm, Exh. H at 7.

As with the current motion, Plaintiff offered no explanation why she had

contested the signatures six months earlier or why she had not acknowledged the Jem

agreement when it was first produced (unsigned) in November 2003, when she had

acknowledged earlier that year (at her March 2003 deposition) that she had signed

agreements with Sunbow.

## ARGUMENT

**I.     Plaintiff's Motion to Amend Her Complaint Should Be Denied.**

While amendment of a complaint under CPLR § 3025(b) is not subject to strict time periods, there are limits to a court's liberality.

> Where . . . an action has long been certified as ready for trial, judicial discretion in allowing [an amended complaint] should be discrete, circumspect, prudent and cautious.  In deciding whether to grant a motion to serve an amended pleading in a long-pending case, the court should consider how long the amending party was aware of the facts upon which the motion was predicated, whether the amendment is meritorious, and whether a reasonable excuse for the delay was offered.  Indeed, where a party is guilty of extended delay in moving to amend, the court should insure that the amendment procedure is not abused [and should] requir[e] a reasonable excuse for the delay and an affidavit of merit.

Boyd v. Trent, 297 A.D.2d 301, 303-04, 746 N.Y.S.2d 191, 194 (2d Dep't 2002) (internal quotes and citations omitted) (denying a motion to amend a complaint made after the case was certified as trial ready where the plaintiff offered no excuse for its 10-year delay and offered no affidavit showing any merit to the proposed amendments); Torres v. Educational Alliance, Inc., 300 A.D.2d 469, 470-71, 752 N.Y.S.2d 80, 82 (2d Dep't 2002) (denying supplement bill of particulars where plaintiff moved to amend after jury selection and failed to provide a reasonable excuse and an affidavit of merit in support of the supplemental bill); Clark v. Foley, 240 A.D.2d 458, 458-59, 658 N.Y.S.2d 429, 430 (2d Dep't 1997) (denying a motion to amend made five years after plaintiff's injury because the supporting attorney affidavit failed to provide a "persuasive" explanation why the allegations were not in the original complaint).

In particular, courts are less willing to grant late motions to amend "when the facts on which they are based were known to the movant from the beginning and

1244310v2

could have been pleaded without trouble earlier" and when the late motion creates

significant prejudice (David D. Siegel, <u>Practice Commentaries</u>, § 237 (3rd ed. 1999) "to

the other party traceable to the omission from the original pleading, some change of

position, hindrance in the preparation of a case, or significant trouble or expense that

could have been avoided had the original pleading contained what the amended one

seeks to add" (<u>Bellini v. Gersalle Realty Corp.</u>, 120 A.D.2d 345, 347, 501 N.YS.2d 674,

676 (1st Dep't 1986).

      A.      Plaintiff Has Failed to Make the Showing Required
                 <u>to Amend a Complaint in the Midst of Trial.</u>

      If a court is counseled to be cautious when evaluating a motion to amend

on the eve of trial, it should act with even greater caution when the motion comes in the

middle of trial, as this one does.

      Neither Bryant's affidavit nor her counsel's affirmation provides a

reasonable explanation why before the middle of trial she could not have amended her

complaint to allege a breach of her written contracts with Sunbow.  Kinder & Bryant

entered into these agreements in the mid-1980s, so she knew (or should have known)

about them when she claims she first filed a complaint against Sunbow in 2000.

Plaintiff's May 2002 Complaint against Sunbow similarly omitted any contract claim —

written or oral.  Nor did her Amended Complaint in November 2002 include such a

claim even though soon afterwards, during her March 2003 deposition, Plaintiff

testified repeatedly that she had always worked on a work-for-hire basis with Sunbow

pursuant to written contracts.  Bryant Aff. at 7, ¶ 4.  But even then, she did not make

any effort to amend her complaint to allege breach of those agreements.

That Bryant did not possess the agreements, as she now claims (Bryant Br. at 12), is no excuse for her failure to acknowledge their existence and failing to move expeditiously to locate them, either in discovery or from third parties. The first time that Plaintiff made any such effort was the day she filed the note of issue on June 30, 2003.

Worse, beginning in November 2003, after Bryant knew that Sunbow was unable to locate the agreements, she denied that such agreements ever existed, contradicting her own sworn deposition testimony given months before (Bryant Aff. at 7-8), presumably so that she could ignore the restriction of the written contracts and try to strike a better deal at trial. She persisted in her denial of the written agreements despite the fact that in November 2003, Sunbow produced an unsigned copy of the Jem agreement and credible evidence supporting the conclusion that it had been signed. When Sunbow produced the original signed Jem agreement and two other signed agreements in August 2004, Plaintiff still denied that she had signed the agreements and then signed another affidavit claiming that her signatures had been forged.

Then, suddenly in February 2005, as part of her submission on the Framed Issue hearing, she signed yet another affidavit saying that she did not contest the signatures. Phares Affirm., Exh. G at 6. And her counsel suggested that if the Court found that the signatures were genuine, it should consider an amendment of the Complaint. Id., Exh. H at 7-8. Neither Bryant nor her counsel has offered the Court any explanation for this shocking reversal, although presumably their silence is an admission of the overwhelming evidence against her. After submitting to the Court

what now appear to be false statements, Bryant simply withdrew them with no explanation and now asks for leave to amend her complaint to rely on the very agreements she formerly denied. Not only does this record offer no explanations for Plaintiff's failure to amend earlier, it compels the conclusion that she seeks relief with unclean hands.

B.    Plaintiff Fails to Show that Her Amended Pleading Has Merit.

Plaintiff also fails to offer a persuasive argument that her amended complaint would have any merit. The sum total of the affidavit of Plaintiff's counsel relating to the merits of her new claim (Monaghan Affirm. at 6-7) is his statement that Paragraphs 6(a)(i) and (vi) of the Jem agreement, which he sets out, "confirm[] her right to 50% of the publishing royalty income received by Sunbow, which Plaintiff claims includes the income from release of the 1980s television shows in the home video market. He offers no explanation why the language of those provisions entitles Bryant to 50% of that income. That is because those provisions do not entitle her to that income.

A careful review of those provisions shows of the those provisions of the Jem agreement (Phares Affirm, Exh. I at 5) provide for royalties to Bryant only for certain uses of "Music" and not for uses of "Shows." The Jem agreement defines "Music" as the original musical material that Kinder & Bryant were engaged to compose, and it defines "Show" to mean a fully-animated television show in installments or a television motion picture. Phares Affirm., Exh. I ¶ 1

The provisions on which Plaintiff's counsel is relying have nothing to do with the distribution of television <u>Shows</u> in the home video market. The provisions that

11

Plaintiff is relying on provide a royalty from a "license [to use the <u>Music</u>] for the manufacture o[f] commercial phonograph records," (Phares Affirm, Exh. I at 5 (Paragraph 6(a)(i)), or from "other uses of the <u>Music</u>" (<u>id.</u> (Paragraph 6(a)(vi)(emphasis added)).[8]  Paragraph 6(a)(vi) also offers the same royalty to "other uses of the <u>Music</u>," but does not refer to "other uses of the Shows."

In other words, Plaintiff relies on provisions that grant her a royalty only for use of her Music but claims that they entitle her to 50% of all of Sunbow's income from the distribution of the <u>Shows</u> in the home video market.  Thus, even if the complaint were amended to include the written contracts, Plaintiff would not be entitled to the monies she is claiming.

Plaintiff's counsel is also wrong when he claims that the testimony of Robert Harris at the Framed Issue hearing and his prior correspondence with Sunbow "confirms Ms. Bryant's 50% interest" in Sunbow's income from the distribution of the Shows in the home video market.  Monaghan Affirm. at 7-8, ¶ 9.  His basis for making this claim is based on a statement from a 1994 letter from Mr. Harris to a Sunbow executive that is taken out of context.

Mr. Harris has acknowledged, as does Sunbow, that Plaintiff is entitled to royalties under Paragraph 6(a)(i) of the Jem agreement (and the other Sunbow work-for-hire agreements) if any of her <u>songs</u> are produced on <u>phonorecords</u>.  To Sunbow's

---

[8]    Indeed, the Jem agreement's use of the word "phonograph records" in Paragraph 6(a)(i) corroborates the conclusion that that provision was never intended to refer to Shows. "Phonorecord" is a term that the Copyright Act of 1976 reserves to refer to reproductions of music that is not part of the soundtrack of an audiovisual work, such as a television show. The Act defines a "phonorecord" as "material objects in which sounds, <u>other than those accompanying a motion picture or other audiovisual work</u>. . . are fixed." 17 U.S.C. § 101 ("phonorecord") (emphasis added).  When Paragraph 6(a)(i) used "phonograph records," it specifically used a term that by definition excluded copies of the television Shows.

12

knowledge, the only time a recording was considered was when MCA Records and

Bulletproof Recording Company, Inc. wrote to Sunbow in July 1994 for permission to

record the Jem theme song for use on a compilation album to be entitled "Cartoons

Greatest Hits." Phares Affirm., Exh. J. Commenting on the request to include the song

on a phonorecord compilation, Mr. Harris wrote to Sunbow and based on the unsigned

Jem agreement he had in his files and the work-for-hire agreement of Barry Harmon,

the lyricist for the Jem TV shows, he concluded that Plaintiff was entitled to music

publishing income from a use of her song. Id., Exh. K.[9]  He was not, as Plaintiff's

counsel implies by omission (Monaghan Affirm. at 7 ¶ 9), referring to exploitation of the

Shows in the home video market. He was referring to the recording of a song on a

phonorecord, which is covered by Paragraph 6(a)(i) of the Jem agreement. [10]

      Plaintiff has failed to provide a persuasive attorney affidavit showing that

amendment of the complaint with her new cause of action for breach of contract would

have legal merit and would lead to her recovering royalties from distribution of the

Shows in the home video market.[11]  Without such an affidavit, Plaintiff fails to provide

essential support to a request to amend a complaint in the midst of trial.

---

[9]     The MCA Records letter and Mr. Harris's 1994 letter were found during discovery in the
same file folder with the unsigned Jem agreement and correspondence between Bryant's
lawyer, William Dobishinski, and Mr. Harris, relating to both the negotiation and an attempt to
amend the Jem agreement (see p. 4 supra). Phares Affirm., Exh. L at ¶¶ 9-11.

[10]     As it happened, Sunbow never licensed the song for the compilation.

[11]     Bryant's argument that her agreements with Sunbow were both written and oral is
baseless and overlooks the integration clause in the Sunbow work-for-hire agreements that
"This Agreement contains the entire understanding of the parties hereto relating to the subject
matter herein contained and this Agreement cannot be changed, rescinded or terminated
orally." See, e.g., Phares Affirm,. Exh. I at 10, ¶ 13(c). Thus, if Bryant is relying on the Sunbow
written agreements, she cannot rely on oral understandings outside of them.

1244310v2

C.    <u>Amendment of the Complaint Significantly Prejudices Sunbow.</u>

Plaintiff's argument completely ignores the prejudice that Sunbow has already endured as the result of Plaintiff's litigation tactics — in particular, her repudiation of the written contracts and false reliance on a theory of an oral contract. Because Plaintiff failed to allege breach of written agreements and then denied them once they were produced, Sunbow was required to make two successive motions in short order at the end of 2003 and the beginning of 2004 relating to the Court's jurisdiction. It then removed the case to federal court where Plaintiff's counsel repudiated Plaintiff's prior copyright arguments, but repeated them on remand. On remand, Sunbow moved to dismiss based on the Statute of Frauds. Then it incurred the expense of preparing for and attending five days of trial on Plaintiff's oral working arrangement theory.

After the signed Jem and other work-for-hire agreements were found, Sunbow prepared for and attended the September 2005 hearing to present the documents and describe how they were found. It then prepared for and attended the October 2005 Framed Issue Hearing, which required the expense of retaining a handwriting expert to refute Plaintiff's claims that her signatures were forged and arranging for Robert Harris to testify about Sunbow's form work-for-hire agreements. Sunbow then submitted papers on the issues that the Court asked the parties to address.

Finally, Sunbow has incurred the expense of appealing several of the adverse decisions that have resulted from Plaintiff's failure to plead breach of her written agreements with Sunbow at the outset, and from her conflicting sworn

14

statements about whether she ever entered into such agreements. All of this effort and expense more than qualifies as "hindrance in the preparation of a case, or significant trouble or expense that could have been avoided had the original pleading contained what the amended one seeks to add." Bellini v. Gersalle Realty Corp., 120 A.D.2d at 347, 501 N.YS.2d at 676. None of this labor would have been necessary had Plaintiff pleaded a breach of contract case from the beginning, and if she had not denied the copies of the contracts that Sunbow submitted beginning over two years ago.

This narration also demonstrates another element of the prejudice that Sunbow has suffered: the consequences of Plaintiff's repeated false sworn statements made to this Court on which this Court has relied to Sunbow's detriment. It is Plaintiff's repeated misconduct that lies at the root of all these wasted efforts. Whether to grant Plaintiff's motion to amend the complaint is a discretionary act. In exercising that discretion, this Court can properly take account of Plaintiff's prior conduct before the Court. Cf. DiRusso v. Kravitz, 21 N.Y.2d 1008, 238 N.E.2d 329, 290 N.Y.S.2d 928 (1968) (where court discovered during trial that plaintiff's false affidavit was used to defeat defendant's right to a dismissal of the action, it was not an abuse of discretion to grant defendant's motion to dismiss). In this case, it is appropriate for the Court to consider Plaintiff's repeated false statements on the very subject on which she now seeks relief and deny her that relief.

Finally, granting Plaintiff's motion will exacerbate the prejudice to Sunbow by subjecting it to a whole new round of pleading and discovery, including the possible joinder of new parties, with the potential of stretching this case out far beyond

the four years it has already endured.  At some point, a litigant's efforts to prolong a

case indefinitely must be stopped.  We have reached that point.

* * * * * * * * * *

Plaintiff has made her motion to amend in the middle of trial; she has not

offered the Court any, let alone a "persuasive," explanation why she did not move

earlier, nor has she shown that her amended pleading would have any merit.  In

addition, her conduct has prejudiced Sunbow.  Under the circumstances, this Court

should deny Plaintiff's motion to amend her complaint.

## II.    No Performance Royalty Issues Remain to be Tried as to Sunbow.

Even if issues remain to be tried relating to Plaintiff's entitlement to

performance royalties, they do not involve Sunbow.  Sunbow has always conceded that

pursuant to Bryant's written contracts with Sunbow, she is entitled to be paid

performance royalties.  But those performance royalties are collected and distributed

not by Sunbow, but by Broadcast Music, Inc. ("BMI"), the performing rights society of

which Bryant is a member.

An element of unjust enrichment and constructive trust, the only two

claims pled in Bryant's Amended Complaint, is that the party charged must have

received the monies that the plaintiff claims.  See e.g., Mente v. Wenzel, 577 N.Y.S.2d

167, 168 (N.Y. App. Div. 1991) (unjust enrichment arises when defendants obtain a

"benefit that in equity and good conscience they should not have obtained or

possessed"); Sharp v. Kosmalski, 40 N.Y.2d 119, 121, 386 N.E.2d 721, 723 (1976)

(constructive trust warranted where defendant has acquired property under

circumstances where it cannot "in good conscience" retain it).

16

During both her March 2003 deposition and on cross-examination at trial, Bryant conceded that Sunbow has never received any of the performance royalties that she claims she was deprived of, and that her claim for performance royalties concerns BMI and the people to whom BMI distributed those royalties, and not Sunbow. Phares Affirm, Exh. M at 30-34 and Exh. N at 194. Thus, as to Sunbow, there is nothing left to be tried on the performance royalty issue.[12]

## III.   Resumption of Trial Should Await the Decision of the Appellate Division.

As described above, the strategy of Plaintiff's case, which does not appear designed to resolving any issues, has already put Sunbow to considerable unnecessary expense. Two of the three issues — copyright preemption and statute of frauds — could dispose of this case altogether. In view of that, resuming trial before the decision of the Appellate Division risks wasting more resources unnecessarily. In its March 3, 2005, Order, this Court observed that any decision it might render while the Appellate Decision was considering Sunbow's appeals, "may well be an exercise in futility." Phares Affirm., Exh. O at 2. For the same reason and the desire to avoid the expense of that futility, Sunbow opposes resumption of trial until it receives the Appellate Division's guidance.

---

[12]   Although Bryant repeatedly implies that Sunbow was responsible for the incorrect reporting of her contributions to BMI, Sunbow long ago (on its September 2003) motion for summary judgment submitted a voluminous exhibit showing that the original Sunbow cue sheets for the original television episodes show the same splits as Bryant's 2003 catalogue. Bryant has never responded to that argument.

17

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to amend the complaint should be denied in its entirety. But if the Court is inclined to grant Plaintiff's motion, it should not, as Plaintiff requests, "deem" the complaint amended. It is that kind of procedure that has already unnecessarily complicated this case. Rather, Plaintiff should be required to amend and serve the complaint setting forth with specificity the basis for her breach of contract claims, and Sunbow should then be permitted to answer as is provided by CPLR § 3025(d).

New York, New York
January 5, 2006

Respectfully submitted,

PATTERSON, BELKNAP, WEBB & TYLER LLP

By: _____
        Gloria C. Phares
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000
Attorneys for Defendant Sunbow Productions, Inc

18

# Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas     New York, NY 10036-6710     212.336.2000     fax 212.336.2222     www.pbwt.com

Gloria C. Phares
(212) 336-2686
Direct Fax (212) 336-7978
gcphares@pbwt.com

January 10, 2006

By Federal Express

The Honorable Andrew P. O'Rourke
Supreme Court of New York
County of Putnam
40 Gleneida Avenue
Carmel, NY 10512

                 Re:     Bryant v. Broadcast Music, Inc., No. 5192/00
                           Bryant v. Sunbow Productions, Inc., No. 2821/02

Dear Justice O'Rourke:

         As agreed with your new law secretary, Amelia Del Vecchio, I am sending
directly to you the original of

> Sunbow Productions, Inc.'s Memorandum of Law in Opposition to
> Plaintiff's Motion (1) to Vacate Order Of March 3, 2005; (2) to Deem
> Pleadings Amended To Include Causes Of Action For Breach Of Written
> Contracts; (3) for Additional Discovery; and (4) for Bifurcation Of Claims
> Relating To Performance Royalties And Publishing Royalties; and [(5)] for
> A Date Certain For Resumption Of Trial As To Performance Royalty
> Claims; and the

> Affirmation of Gloria C. Phares in Opposition to Plaintiff's Motion,
> dated January 5, 2006, with attached Exhibits A-O,

which I served as an email attachment on counsel for Plaintiff Anne Bryant and
Defendant Broadcast Music, Inc. on January 5, 2006; the exhibits were faxed on January
6, 2006.

The Honorable Andrew P. O'Rourke
January 10, 2006
Page 2

We understand that when the briefing is complete and the Court has issued its decision, all pleadings will be filed with the Clerk of the Supreme Court in Rockland County.

Sincerely yours,

Gloria C. Phares

enc.

cc:    Patrick J. Monaghan, Jr., Esq.
       Judith M. Saffer, Esq.
       The Honorable Paul Piperato,
           Clerk, Supreme Court of New York, Rockland County

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK          )
                           :ss.:
COUNTY OF NEW YORK         )

        GLORIA C. PHARES, being duly sworn, deposes and says:

        1.    I am over 18 years of age, not a party to this action, and am a member of the law firm of Patterson, Belknap, Webb & Tyler LLP, located at 1133 Avenue of the Americas, New York, New York 10036.

        2.    I caused to be served the foregoing **Sunbow Productions, Inc.'s Memorandum of Law in Opposition to Plaintiff's Motion (1) to Vacate Order of March 3, 2005; (2) to Deem Pleadings Amended to Include Causes of Action for Breach of Written Contracts; (3) for Additional Discovery; and (4) for Bifurcation of Claims Relating to Performance Royalties and Publishing Royalties; and (5) for a Date Certain for Resumption of Trial as to Performance Royalty Claims** upon Patrick J. Monaghan, Esq. via e-mail at mmlmlawyers@aol.com on January 5, 2006 and via fax at (201) 802-9066 on January 6, 2006.  Mr. Monaghan has confirmed receipt of said document.

GLORIA C. PHARES

Sworn to before me this 10th
day of January, 2006

Notary Public

MATTHEW M. FINNEGAN
Notary Public, State of New York
No. 01FI5080222
Qualified in New York County
Commission Expires June 16, 2007