# EXHIBIT 87

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

-----------------------------------------------------------------X

ANNE BRYANT,

                                   Index No. 5192/00

                        Plaintiff,

   -against-

BROADCAST MUSIC, INC.
(a/k/a "BMI"), FORD KINDER,
KINDER & CO., LTD., VADIVOX,
INC., JULES M. "JOE" BACAL,
GRIFFIN BACAL, INC., STARWILD
MUSIC BMI, WILDSTAR MUSIC ASCAP,
SUNBOW PRODUCTIONS, INC.,

                       Defendants.

-----------------------------------------------------------------X

ANNE BRYANT,

                                   Index No. 2821/02

                        Plaintiff,

   -against-

SUNBOW PRODUCTIONS, INC.,

                       Defendant.

-----------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT
## OF PLAINTIFF'S MOTION FOR JUDGMENT
## AND IN OPPOSITION TO SUNBOW'S MOTIONS FOR
## DIRECTED VERDICT AND TO DISMISS THE AMENDED COMPLAINT

Time and time again, Defendant Sunbow Productions, Inc. ("SUNBOW") has attempted to distort and confuse the issues throughout this case. When this matter was originally set for trial on June 2, 2004 at 9:30 a.m. after the May 26, 2004 Decision and Order annexed hereto as Exhibit "A," the Court specifically ordered that no further motions be made in this actions. However, despite the Court's ruling, SUNBOW has continued to make motion after motion. Furthermore, it is during the trial that SUNBOW proffered, and this Court accepted, a written agreement, i.e. the June 1, 1985 JEM Agreement, as the agreement that governed all relations between SUNBOW and Plaintiff. *See* Defendant's Trial Exhibit "M." There has now been extensive testimony by Plaintiff's and the Plaintiff's expert, David Berman, as to that agreement and SUNBOW's breach of the terms of the subject agreement. The only party whose case should be on death row here is SUNBOW.

Plaintiff is now before this Court, a Court of law and equity, to enforce rights granted to her under the JEM Agreement between SUNBOW and Plaintiff. Therefore, this Court must consider all of the evidence before it and decide this case based upon the facts as they are, not as SUNBOW and its Counsel seeks them to be. On the basis of the arguments and facts discussed below, this Court should grant Plaintiff's Motion for Judgment and order that an accounting be held to determine the extent of SUNBOW's harm caused to Plaintiff. Furthermore, this Court must deny SUNBOW's meritless Motion to Dismiss as it does not address the issues that are before this Court

1

and appears as nothing more than Defendant's last ditch effort to bail water out of a sinking ship.

## FACTS ALREADY OF RECORD

The Plaintiff has testified extensively as to her agreement and understanding with BACAL and SUNBOW. Plaintiff did not waive any rights to the writer's share of the publishing royalties nor did Plaintiff waive any rights to any performance royalties that are due as part of the JEM Agreement. The evidence already of record and the admissions of record demonstrate that SUNBOW has breached the terms of the JEM Agreement, as discussed below, by not rendering statements to Plaintiff at least twice per year as required by the terms of the JEM Agreement. By not providing these statements, Plaintiff has been unable to exercise her rights under the Agreement to object to said statements. The so-called royalty statements allegedly provided by SUNBOW were not addressed to Plaintiff but to Loonland, SUNBOW's parent company, and were mailed to Plaintiff's Counsel after this lawsuit was well underway. David Berman, Plaintiff's Expert, has testified the Plaintiff is entitled to specific royalties that are provided by the terms of the Agreement. Plaintiff has not received any royalties at all except for two checks (one in 2004 and one on November 30, 2006) which operate as an admission that Plaintiff is entitled to royalties under the Agreement. SUNBOW has admitted, as explained below, that Plaintiff is entitled to the royalties that she seeks. Therefore, based upon the foregoing facts, already before the Court, the Court should grant Plaintiff's Motion for Partial Summary Judgment and deny SUNBOW's Motions for a Directed Verdict and Dismissal of the Amended Complaint.

2

ARGUMENT

## SUNBOW'S MOTION TO DISMISS AND
## MOTION FOR A DIRECTED VERDICT MUST BE DENIED

### POINT I

## PLAINTIFF IS ENTITLED TO AN ACCOUNTING - THE PLEADINGS
## ARE TO BE LIBERALLY CONSTRUED – THE FACTS OF THE CASE CONTROL

A motion to dismiss should not be granted unless it is clear that there can

be no relief under any facts alleged in the pleading for the relief requested or for other

relief. *Richardson v Coy* 28 A.D.2d 640, 280 N.Y.S.2d 623, *motion to dismiss app*

*withdrawn* 21 N.Y.2d 864, 288 N.Y.S.2d 1015, 236 N.E.2d 16 (1967). Based upon the

facts alleged, it is clear that this Court has the power to grant relief to Plaintiff. The

traditional judicial equity power in the New York Constitution, Article VI, § 7 is

implemented by C.P.L.R. §3017(a), which directs that:

> "the court may grant any type of relief within its jurisdiction
> appropriate to the proof **whether or not demanded**, imposing
> such terms as may be just."

A Plaintiff may properly be limited to a recovery based upon the transactions,

occurrences, or series of transactions or occurrences set out in his complaint (see

C.P.L.R. §3013), but, if the Plaintiff establishes a right to money damages on the basis

thereof, the complaint should not be dismissed merely because it was framed to support a

cause of action for equitable type relief. *Kaminsky v. Kahn*, 23 A.D.2d 231, 259 N.Y.S.2d

716 (1st Dept. 1965). The converse must be true.

3

The present day trend, under the C.P.L.R., is to give total effect to the statutory abolishment of "the distinctions between actions at law and suits in equity, and the forms of such actions and suits" and it would be a reproach to the efficiency of our courts if, under such circumstances, the court were to dismiss a complaint and remit the plaintiff to the necessity of bringing a new action at law. *See* C.P.L.R. §103(a) and *Lane* v. *Mercury Record Corp.*, 21 A.D.2d 602; 252 N.Y.S.2d 1011 (1st Dept. 1965). The court has power to render whatever judgment is appropriate under the plaintiff's allegations and the proofs "so long as its jurisdiction was properly couched in the first instance and it is retained." *April Prods.* v. *G. Schirmer, Inc.*, 284 A.D. 639; 131 N.Y.S.2d 341 (1st Dept. 1954) *revd. on other grounds; See also Jamaica Sav. Bank* v. *M. S. Investing Co.*, 274 N.Y. 215; 8 N.E.2d 493 (1937).

"Therefore.... the court, following a trial of an action wherein plaintiff has demanded equitable relief, may award the plaintiff a recovery of money damages where, as here, such a recovery is supported by the plaintiff's allegations and proofs." *Kaminsky* 23 A.D.2d at 237; 259 N.Y.S.2d at 722 *citing I. H. P. Corp.* v. *210 Cent. Park S. Corp., et al.* 16 A.D.2d 461, 228 N.Y.S.2d 883 (1st Dep't. 1962); *Lane* v. *Mercury Records Corp., supra; April Prods.* v. *G. Schirmer, Inc., supra,* at 643, 644. "And, in a proper case, an accounting may be directed for the purpose of fixing the amount of such damages." *See Kaminsky* 23 A.D.2d at 237; 259 N.Y.S.2d at 722.

4

In *Kaminsky*, a case on point, Plaintiff stock transferor transferred all of his stock in a company to the Defendant stock transferee, subject to a lien and a beneficial interest. The Defendant then sold a substantial quantity of the stock without proper notice to the Plaintiff. *Kaminsky v. Kahn*, 23 A.D.2d 231, 259 N.Y.S.2d 716 (1st Dept. 1965). The Court, in holding that the Court clearly has the power and should render such relief as is appropriate to the wrongs of the defendant because "[t]he power of equity is as broad as equity and justice require." *Kaminsky* 23 A.D.2d at 237, 259 N.Y.S.2d at 722-723 *citing London v. Joslovitz*, 279 A.D. 280, 110 N.Y.S.2d 58 (3d Dept. 1952). "It is a familiar principle that a court of equity having obtained jurisdiction of the parties and the subject matter of the action will adapt its relief to the exigencies of the case" *Phillips* v. *West Rockaway Land Co.*, 226 N.Y. 507, 515; 124 N.E. 87, 90 (1919). The court "may properly shape its decree in accordance with the equities of the case." *Weil* v. *Atlantic Beach Holding Corp.*, 1 N.Y.2d 20, 29; 133 N.E.2d 505, 509; 150 N.Y.S.2d 13, 19 (1956); *See further I.H.P. Corp.* v. *210 Cent. Park South Corp., supra*, at p. 465.

The Court in *Kaminsky* cited C.J.S. and held that "[equity] has jurisdiction to compel an accounting whenever one party has profits in which another is entitled to share regardless of the relationship between the parties at the time the profits were earned if the remedy at law is inadequate." 1 C. J. S., Accounting, § 24, pp. 658-659, and cases cited. Clearly, under the special circumstances here, where SUNBOW has wrongfully pocketed and refused to disclose the profits on the licensing and sales of items containing Plaintiff's musical composition, here, just as in *Kaminsky*, the equitable powers of the

Court are properly exercised to compel SUNBOW to account for the money SUNBOW has received for Plaintiff's benefit.

A basis for equitable relief also rests upon proof of such acts and conduct on the part of SUNBOW as amount to a violation of its obligation to handle and deal with the Plaintiff's royalties fairly and with due regard to the rights of the Plaintiff granted under the JEM Agreement. Bad faith and unconscionable conduct on the part of SUNBOW furnish grounds for equitable relief where, as here, such relief is required in the interests of justice and to afford the Plaintiff an adequate remedy. *See* 20 N. Y. Jur., Equity, §§ 67, 68, 70, 71, *and cases cited*.

Therefore, despite SUNBOW's continued attempts to distort the focus of this trial, the equities and the law favor Plaintiff and SUNBOW's motions must be denied.

## POINT II

## THE AMENDED COMPLAINT CAN BE CONFORMED TO THE EVIDENCE

When Plaintiff's Complaint was drafted, the JEM Agreement did not exist within the realm of this litigation. It was after the close of discovery and mid-trial when SUNBOW claimed it suddenly discovered the JEM Agreement. After careful consideration and review of the Agreement, Plaintiff authenticated and adopted the

agreement as the agreement that governed the rights and relationships of SUNBOW and Plaintiff.

This Court has held that the JEM Agreement governs the rights and responsibilities of SUNBOW and Plaintiff as to all compositions. As such, the Agreement is not at issue. However, it is unjust, unconscionable and inequitable for SUNBOW to spring this agreement upon Plaintiff (mid-trial) and invoke the Agreement to show Plaintiff's "condition precedent" yet claim that Plaintiff cannot rely upon the very terms of the same agreement to show that SUNBOW breached the terms of the JEM Agreement by failing to provide royalty statements and payments due Plaintiff.

This is a Court of Law and Equity and as such, this Court is entrusted with the right to allow pleadings to be conformed to the evidence. The Agreement and SUNBOW's responsibilities under it have been in existence since June 1, 1985. SUNBOW is well aware of its responsibilities under this contract, in fact it has alluded to them many times at trial and in its frivolous motion to dismiss. SUNBOW has reaped millions from third party licenses (e.g. Plaintiff's Exhibits 7-11). SUNBOW has been on notice of Plaintiff's claims since this litigation began approximately six years ago and there is no surprise nor prejudice. SUNBOW's motion must be denied and this matter must be allowed to proceed to hold SUNBOW accountable for the material breaches of the JEM Agreement.

7

## POINT III

## PLAINTIFF DOES NOT POSSESS AN ADEQUATE LEGAL REMEDY TO CHALLENGE ROYALTY STATEMENTS THAT SHE HAS NOT RECEIVED.

SUNBOW is attempting to use the JEM Agreement as both a shield and a sword. SUNBOW cannot have it both ways. The Court has already ruled that the JEM Agreement is in the case and that the terms of the JEM Agreement govern the rights and relationships of the parties. As such, SUNBOW's argument that Plaintiff's contractual remedy under the JEM Agreement, pursuant to §6b, requiring the Plaintiff to objection within one year from the date of the royalty statement, must fail because there is no evidence it ever issued any accountings to Plaintiff.

As a condition precedent to Plaintiff's obligation to complain, Plaintiff must first receive these royalty statements, at least twice a year, following June 1, 1985. There has been no evidence that any such royalty statements were sent to Plaintiff. In fact, arguably, the only royalty "statement" (addressed to Loonland) received by Plaintiff was sent to Plaintiff's Counsel on November 30, 2006, days before this trial was continued. SUNBOW's claim that a royalty statement was sent to Plaintiff in 2004 ("2004 Royalty Statement") is incorrect.[1] *See* Phares Affirmation at ¶3 dated December 5, 2006 and the referenced Exhibit "B" annexed thereto. The 2004 Royalty Statement

---

[1] The 2004 Royalty Statement does not qualify as a true royalty statement as it does not reflect what was paid to the Plaintiff. The Royalty Statement is from SONY ATV Publishing, LLC to TV Loonland purporting to set forth what royalties Loonland (not SUNBOW) would be obligated to pay certain writers. See 12-6-06 Trial Transcript annexed hereto as Exhibit "D" at page 69, lines 12-22. Even an expert, reviewing these "statements" is unable to discern what is/is not payable to the Plaintiff. Certainly, these "statements" do not fulfill SUNBOW's obligations to Plaintiff under JEM Agreement ¶ 6(a).

was produced as part of discovery and was a continued response to Plaintiff's on-going discovery request.[2] *Id.*

Clearly, a royalty statement produced during litigation and *only* as the result of litigation does not fulfill SUNBOW's obligations under the JEM Agreement as required by §6(a). Therefore, without the receipt of these royalty statements, Plaintiff is unable to object to them in writing within the 1 year allotted by §6(b). As such, SUNBOW's breach of its obligations to account to Plaintiff under §6(a) of the JEM Agreement do not result in Plaintiff's waiver of her rights to object to these agreements. Plaintiff's only remedy was to commence this action, in equity, to receive that which she is entitled to under the very Agreement upon which SUNBOW relies.

## PLAINTIFF IS ENTITLED TO JUDGMENT

### POINT IV

SUNBOW has made damaging admissions, as noted by this Court and referenced by the annexed Korik Affirmation. As such, SUNBOW cannot dispute the terms of its agreement. SUNBOW cannot dispute that it has violated the terms of the agreement, as set forth below. SUNBOW has made damaging admissions that are undeniably prejudicial to its case, as set forth below. Therefore, on the basis of the foregoing, Plaintiff's Motion for Judgment should be granted.

---

[2] See Also Annexed 12-6-06 Trial Transcript as Exhibit "D" at pages 62-63 wherein Ms. Phares indicates that the "royalty statements" provided in 2004 were "...produced in discovery in this case." (See Lines 2-3 on page 63).

## POINT V

## PLAINTIFF IS ENTITLED TO AN
## ACCOUNTING UNDER THE JUNE 1, 1985 "JEM AGREEMENT"

As per the terms of the subject Agreement, admitted into evidence at trial as Defendant's Exhibit "M," ("JEM Agreement") SUNBOW was obliged to "...render royalty statements to Contractor [defined as Kinder Bryant], accompanied by any remuneration due Contractor...at least twice during each calendar year during which royalties are payable." *See* Defense Exhibit "M" – June 1, 1985 "JEM Agreement" at ¶6(a). The first royalty statement received and reviewed by Ms. Bryant was immediately before this trial began on Thursday, November 30, 2006, accompanied by a check in the for approximately $7,000.00. *See* Exhibit "B" annexed hereto.[3] It does not account to Plaintiff for anything.

SUNBOW has argued that it provided a statement to Plaintiff in 2004 as part of discovery which purported to "account" for royalties.[4] *See* SUNBOW Exhibit "AA" (not in evidence) ("2004 Royalty Statement"). The 2004 Royalty Statement contained statements dating back to 1998 through 2003. The 2004 Royalty Statement was provided to Plaintiff's Counsel as discovery by SUNBOW during this litigation. This was the first time that any such statement was made available by SUNBOW. Prior to this action, SUNBOW had never sent a single statement to Plaintiff.

---

[3] Exhibit "B" consists of the royalty statement, accompany letter and check as received by Plaintiff's Counsel on November 30, 2006. This "statement" addressed to Loonland and accompanying check was never sent to Plaintiff. Thereafter, Counsel for SUNBOW faxed additional statements to Plaintiff's annexed hereto as Exhibit "C" that purported to demystify the earlier "statement" submitted to Plaintiff's Counsel accompanied by the check.

[4] For a brief discussion of this Royalty Statement and it's failure to fulfill SUNBOW's responsibilities under ¶6(a) of the JEM Agreement, see footnote 1 and the associated discussion, above.

Therefore, as Plaintiff never received a royalty statement – despite an Agreement stating that SUNBOW would send statement at least twice a year, it is clear that SUNBOW breached the provisions of the JEM Agreement providing for at least two royalty statements per year to Plaintiff. Plaintiff has never had a chance to review these statements, never mind raise objections to them as they do not exist even now. Clearly, the "condition precedent" upon Plaintiff to raise an objection to the royalty statements within one year is inapplicable in this case as there were no royalty statements until after this action was initiated. [5]

Furthermore, the statements that were produced by SUNBOW, are incomplete as they do not account for Plaintiff's share of publishing royalties for items for which SUNBOW has admitted to owing royalties to Plaintiff. SUNBOW has conceded and this Court has noted, that "…[SUNBOW] agrees that it is obliged to pay Plaintiff a royalty of 50% of the net profits from licenses to third parties of mechanical or synchronization rights…" *See* SUNBOW Reply Memorandum cited in Court on December 6, 2006 and Decision and Order dated May 26, 2004 at page 22. Berman testified that these products are within the JEM Agreement's obligation to pay mechanical royalties to Plaintiff.

---

[5] David Berman, Plaintiff's Expert, testified on December 6, 2006 that under the agreement, Plaintiff could sue after complaining about the royalty statements after they were received. However, if the royalty statements were never received, Plaintiff's 1 year term to complain about the agreements would not begin to run. Assuming arguendo, that these statements even qualify as "royalty statements", the statements were never sent by SUNBOW until after this litigation began—and as such, the year to complain about them has never begun. See Trial Transcript annexed hereto as Exhibit "D" at pages 90-92.

As a result of SUNBOW's willful breach of the terms of the JEM Agreement, SUNBOW has been unjustly enriched with the fruits resulting from the licensing and sale of millions of copies of Plaintiff's compositions for which she has not been compensated. Furthermore, the only keeper of knowledge of such information is SUNBOW as SUNBOW willingly licensed each of these compositions to unknown third parties throughout the duration of this Agreement.[6] Therefore, while Plaintiff has a remedy at law, Plaintiff seeks an accounting under the agreement to allow Plaintiff to determine the extent of SUNBOW's willful violation of the terms of the JEM Agreement resulting in the loss of unknown and untold dollars that unjustly enriched SUNBOW.

## CONCLUSION

SUNBOW has admittedly breached the terms of the JEM Agreement. As a result of SUNBOW's breach, Plaintiff has suffered and will continue to suffer severe financial damage until the breach is remedied. This Court must weigh all of the evidence before it and make a just and equitable finding. SUNBOW is not entitled to a dismissal of this case. SUNBOW has not put forth any evidence demonstrating its entitlement to such relief. Therefore, Plaintiff requests that her Motion for Judgment be granted and SUNBOW's Motions for a Directed Verdict and to Dismiss denied.

---

[6] It is known that SUNBOW licensed the compositions to numerous third parties, as evidenced by the videocassettes and DVDs in evidence as Plaintiff's Exhibits 7, 8, 9, 10, 11, 13, 14, 15, 25, 26, 36 and the upcoming Summer theatrical release of a live-action "Transformers" movie containing Plaintiff's composition, as demonstrated by the preview trailers advertising the movie. However, the full extent of to whom Plaintiff's compositions (all of the compositions that are the subject of this case) have been licensed, is within the exclusive knowledge of SUNBOW.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

---

ANNE BRYANT,

Plaintiff,

Index No. 5192/00

-v-

Broadcast Music, Inc. a/k/a "BMI",
et al.,
(Action No. 1)
(Index No. 5192/00)

**AFFIDAVIT OF SERVICE**

Defendants.

---

ANNE BRYANT, PLAINTIFF-RESPONDENT,

Plaintiff,

-v-

Sunbow Productions, Inc., Defendant-
Appellant
(Action No. 2)
(Index No. 2821/02)

Defendants.

STATE OF NEW JERSEY )
                     ss:
COUNTY OF BERGEN     )

MELISSA AURIEMMA, being of full age, deposes and says:

1.    I am a Law Clerk employed at Monaghan, Monaghan, Lamb &
Marchisio, LLP, attorneys for Plaintiff in the above referenced
matter.

2.    On December 8, 2006, I served the following documents via
facsimile and E-mail on Gloria C. Phares, Esq., Patterson, Belknap,
Webb & Tyler LLP, 1133 Avenue of the Americas, New York, NY
10036 and Judith Saffer, Esq., BMI Legal Department, 320 West 57th
Street, New York, New York 10019:

**Affirmation and Memorandum of Law**

Melissa V. Auriemma

Sworn to and subscribed before
me this 8th of December 2006

Michael Korik
ATTORNEY AT LAW FOR THE
STATE OF NEW JERSEY

# EXHIBIT 88

—————————————————————————— x

ANNE BRYANT,
        :

      Plaintiff,        :    Index No. 5192/00

                    :

        v.          Hon. Andrew P. O'Rourke

                    :

BROADCAST MUSIC, INC., (a/k/a "BMI"),
CLIFFORD A. "FORD" KINDER, KINDER & :
CO., LTD., VADIVOX, LTD., JULES M.
"JOE" BACAL, GRIFFIN BACAL, INC.,   :
STARWILD MUSIC BMI, WILDSTAR
MUSIC ASCAP, SUNBOW PRODUCTIONS, :
INC., and JOHN AND JANE DOES 1-10,

                    :

      Defendant.

                    :

—————————————————————————— x

                    :

ANNE BRYANT,

                    :    Index No. 2821/02

      Plaintiff,

                    :    Hon. Andrew P. O'Rourke

        v.

                    :

SUNBOW PRODUCTIONS, INC.,

                    :

      Defendant.

                    :

—————————————————————————— X

## **SUNBOW PRODUCTIONS, INC.'S MOTION TO DISMISS**

### **INTRODUCTION**

        Defendant Sunbow Productions, Inc. ("Sunbow") moves this Court

for an order dismissing the next new theory—an accounting—that plaintiff

Anne Bryant advanced for the first time in this case only after her testimony

had undermined the theory for which this Court had resumed trial.  In

addition, Sunbow contends that it would be impossible to conform the pleadings to the surprise evidence that plaintiff now wishes to introduce to support the new theory of her case without prejudicing Sunbow.

Plaintiff's December 5, 2006 testimony undercut her theory that an oral agreement with Sunbow co-existed with the written agreements that she admits governed all her relations with Sunbow. That was the theory that this Court had repeatedly said was the only theory to be tried during the resumption of trial. As plaintiff failed to carry her burden of showing that her independent oral agreements were not superseded by the merger clauses in the Sunbow agreements, Sunbow contends that this case should be dismissed as a matter of law.

## I.    PLAINTIFF IS NOT ENTITLED TO AN ACCOUNTING

No where in plaintiff's November 15, 2002 Amended Complaint ("Amended Complaint") does she state a claim for an accounting. Under her claim for unjust enrichment, which is no longer in this case,[1] plaintiff demands Sunbow "render a true and complete accounting as to any and all monies received or to be received by defendant Sunbow" from the exploitation of the compositions. Likewise, under her claim for constructive trust, which is also no longer in this case, she demands "an accounting as to any monies received by the defendant relative to the sale or distribution" of various products. These

---

[1]    The Court stated on the record at trial on December 4, 2006 that the oral agreements—the only theories that would support her unjust enrichment and constructive trust claims—were no longer in the case.

- 2 -

are statements of the remedies she demanded under theories of the case long abandoned. They do not constitute a cause of action for equitable accounting.

An action for an equitable accounting under New York law requires the plaintiff to establish four elements: "(1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal." *Dayan Enterprises, Corp. v. Nautica Apparel, Inc.*, 2003 WL 22832706 at *1 (S.D.N.Y. Nov. 26, 2003).

Plaintiff cannot make out a prima facie case for an equitable accounting because "entitlement to . . . an equitable remedy [such as an accounting] rests upon a trust or fiduciary relationship and a duty to account, or where special circumstances are present warranting equitable relief in the interest of justice." *Watson v. Sony Music Entertainment, Inc.*, No. 108802/98, slip op. at 12 (N.Y. Sup. Ct., N.Y. Cnty 1999) (copy attached as Exh. A to the December 5, 2006 Affirmation of Gloria C. Phares ("Phares Affirm"), *aff'd*, 282 A.D.2d 222, 222, 722 N.Y.S.2d 385, 386 (1st Dep't 2001) (citing *Grossman v. Laurence Handprints-N.J., Inc.*, 90 A.D.2d 95, 105 (2d Dep't 1982)); *S.O. Textiles Co. v. A&E Prods. Group*, 18 F. Supp. 2d 232, 241 (S.D.N.Y. 1998); *Rodgers v. Roulette Records, Inc.*, 677 F. Supp. 731, 739 (S.D.N.Y. 1988).

Not only does "[a] royalty agreement not establish a fiduciary relationship," *Watson v. Sony Music*, slip op. at 12, but this Court has already

- 3 -

held that the relationship between plaintiff and Sunbow was contractual, not fiduciary. Decision and Order at 15-16 (Dec. 15, 2003).

Moreover, plaintiff's claim fails as matter of fact because she has admitted that Sunbow received no performance royalty payments for Kinder & Bryant works. See Exh. Y. She has proffered no evidence that Sunbow received any royalties that were owed to Kinder & Bryant.

Finally, unjust enrichment, like a constructive trust, is an equitable remedy available only when no remedy is available at law. Plaintiff has a remedy at law, discussed below in Part III. *Kensington Pub. Corp. v. Kable News Co.*, 100 A.D. 2d 802, 803, 474 N.Y.S.2d 524, 27 (1st Dep't 1984) ("an account stated is nothing more or less than a contract express or implied between the parties"). Plaintiff has not, and cannot, allege the requisite element of a fiduciary relationship and so equitable accounting is not available.

## II.  IN THIS CASE, THE AMENDED COMPLAINT CANNOT BE CONFORMED TO THE EVIDENCE

Plaintiff has never stated a claim for an equitable accounting, cannot make out a prima facie case for that cause of action, and certainly should not be allowed to add this claim literally in the middle of trial. Under CPLR § 3025(c), a court may permit pleadings to be amended to conform them to the evidence "upon such terms as may be just including costs and continuances." CPLR § 3025(c). A court abuses its discretion, however, where the amendment to conform causes prejudice or surprise to the non-moving party. *Hird v. General Motors Corp.*, 61 A.D.2d 832, 833 (N.Y. App. Div. 2d Dep't 1978).

- 4 -

A defendant is prejudiced and a motion to conform is barred when "plaintiffs' new theory of recovery is based on a factual scenario which is completely at odds with that alleged in the complaint," *Lewis v. New York City Housing Authority,* 237 A.D.2d 414, 414 (N.Y. App. Div., 2d Dep't 1997), or there was "lengthy and unexcused delay in raising a new theory predicated in significant part on facts lying peculiarly within plaintiff's knowledge throughout the course of this litigation." *Giordano v. Friedman,* 85 A.D.2d 707, 708-709, 449 N.Y.S.2d 650, 652 (N.Y. App. Div. 2 Dep't 1981) (collecting cases). *See also Gutierrez v. Enright,* 91 A.D.2d 972, 457 N.Y.S.2d 343 (N.Y. App. Div. 2d Dep't 1983) (reversing grant of motion to conform where plaintiff sought to amend her pleading "to set forth and specify an entirely new theory," years after service of the original and amended pleadings and months after filing of a statement of readiness).

In anticipation of the resumption of trial, plaintiff told the parties and the Court that she was proceeding on a theory of oral agreements in addition to the Sunbow agreements. In correspondence and decisions preceding the resumption of trial, the Court repeatedly held that this was to be the sole issue litigated. Sunbow relied on these statements and prepared its defense extensively only to learn less than an hour into trial that plaintiff had again changed her theory and was now proposing a cause of action that had never been discussed once in all the years of this litigation.

No one can seriously question that Sunbow was surprised and is harshly prejudiced by plaintiff's sudden announcement—at trial and then only

- 5 -

after plaintiff's testimony undermined her concurrent oral agreement theory—

that she was in fact pursuing an equitable cause of action for an accounting.

As discussed above, this cause of action was not included in the

Amended Complaint and plaintiff never once raised this theory before. To be

sure, if she had, Sunbow would have raised then the objections it is now forced

to raise in the evening hours between the first two days of trial. This is not fair

to Sunbow and it is not fair to this Court.

Indeed, with regard to CPLR 3025(c) it has been noted that

when a plaintiff alleges A-B-C and then proceeds at trial to show X-Y-Z, the court will refuse to permit the amendment.... The explanation is obvious enough. If substantial disparities between pleading and proof are treated as mere trivia, to be rectified by the granting of pro forma motions to amend, why insist upon pleadings at all? Why not try the case first and write the pleadings later? Why should the Bar inconvenience itself with the drafting of complaints and answers when a motion under CPLR 3025(c) will be granted routinely to relieve a party of the consequences of stupidity, inattentiveness, or prevarication? Absurd. Self-evidently, we need pleadings-so that litigants may know what claims or defenses they must prepare to meet, so that issues are defined for trial, so that parties will be discouraged from tempering their testimony to meet the needs of the occasion. Then CPLR 3025(c) has its limits. And wherever they lie, this case falls beyond them.

*DuBose v. Velez*, 63 Misc.2d 956, 958, 313 N.Y.S.2d 881,884, 885 (N.Y.City

Civ. Ct. 1970) (*citing Walrath v. Hanover Fire Ins. Co.*, 216 N.Y. 220, 110 N.E.

426 (1915); *Procho v. Procho*, 30 A.D.2d 615, 290 N.Y.S.2d 696 (3d Dep't 1968)

(*mem.*); *Yantic Grain & Products Co. v. Bullet Hole Farms, Inc.*, 29 A.D.2d 764,

287 N.Y.S.2d 522 (2d Dep't 1968) (mem.); *Kirschbaum v. Lee Brothers Storage,*

*Inc.*, 71 N.Y.S.2d 782 (Sup. App. Ct., 1st Dep't 1947) (per curiam); *Household*

- 6 -

*Coal and Oil Distributors, Inc. v. Sage,* 57 Misc.2d 428, 292 N.Y.S.2d 800
(Civ.Ct., N.Y. Co.1968)).

This Court has exhibited patience beyond what any party can or
should expect. The Court has indulged plaintiff time and again and given her
every opportunity to make out her case. Plaintiff has repaid this indulgence
with contradiction, evasion and prevarication. The Court should allow it no
more.

## III.  THE SUNBOW AGREEMENTS PROVIDE A LEGAL REMEDY FOR CHALLENGING FAULTY ROYALTY STATEMENTS.

Sunbow objects to the proposed admission of the Sunbow
agreements to support plaintiff's most recent effort to salvage her case. The
Sunbow agreements were introduced by Sunbow to refute plaintiff's earlier
claim that she had never signed any agreements with Sunbow and had instead
operated under an oral agreement—a claim in which she persisted for 18
months, even after discovery of the signed written agreements. Moreover, the
Court correctly denied plaintiff's December 2005 motion to amend her
complaint to sue on the Sunbow agreements because the parties were then in
the middle of a trial that had begun in July 2004, plaintiff's motion was not
adequately supported, and amendment would have severely prejudiced
Sunbow. Sunbow preserves and expressly does not waive those objections.
Therefore, we discuss the terms of the agreements solely for the purpose of this
motion.

Plaintiff has a contractual legal remedy under the Sunbow
agreements if she believes that Sunbow's royalty statements to her are

- 7 -

deficient. Section 6(b) of the Sunbow agreements with Kinder & Bryant, which this Court has held governed all the relations between the parties, provides that plaintiff has the right to inspect Sunbow's books and records relating to gross receipts derived from use of the Music that Kinder & Bryant delivered under the agreements. That provision also provides an "incontestability clause" that

> All royalties, statements and other accounts rendered by [Sunbow] shall be binding upon [plaintiff] and not subject to any objection by [plaintiff] unless specific objection in writing, stating the basis thereof, is given to [Sunbow] by [plaintiff] by one (1) year from the date thereof.

Plaintiff's failure to comply with the contractual condition precedent (i.e., auditing the relevant books and records and then giving a written notice detailing the specific defects in the royalty statements within the specified one-year period from the date the statements were rendered) acts as a bar to her seeking judicial relief. *See Watson v. Sony Music,* Phares Affirm., Exh. A at 6-8; *Franconero v. Universal Music Corp.,* 2003 WL 22990060 *4 (S.D.N.Y. Dec., 19, 2003); *Kensington Pub. Co.,* 100 A.D.2d at 803; 474 N.Y.S.2d at 527. In *Watson,* the plaintiff sued on its contract, claiming that its lawsuit was the notice required under its agreement with defendant. *Watson,* Phares Affirm., Exh. A at 7. When asked whether she had ever invoked the audit-and-notice procedure prescribed by Section (b), Plaintiff tried to make the same claim. The *Watson* court rejected such a theory, and this Court should do so also.

- 8 -

Plaintiff testified on December 4, 2006, that she has never invoked the audit-and-notice procedure prescribed by Section 6(b) of the Sunbow agreements. Although she acknowledged receiving a payment from Sunbow in 2004, she claimed not to recall having received royalty statements from Sunbow, dated January 1998 through December 2003. But Sunbow's records show that on June 22, 2004, it produced those statements. See Phares Affirm., Exh. B. Not having objected to the statements produced in June 2004 or any earlier royalty statement, plaintiff is barred from challenging those statements and they are considered binding upon her.

On December 1, 2006, Sunbow provided plaintiff with royalty statements for the period January 2004 through December 2005. Plaintiff may object to these statements within a year of her receipt of them if she does so in writing and with the required degree of specificity, *i.e.*, specifying which payments in the royalty statements were deficient and her basis for that allegation. If she is unsure of the specific bases for her objections, Section 6(b) of the Sunbow agreements also permits her to audit Sunbow's books and records to make that determination. Such audits are commonplace and provide a comprehensive and efficient way for artists to ensure they are being paid what they are owed and to challenge their payments if they feel they are inaccurate. *See* Phares Affirm., Exhs. C and D. They often help avoid litigation, and provide a complete account of the artist's rights and payments should a suit ensue.

- 9 -

If, and only if, such a specific objection is made would any court have jurisdiction over her claim that the audit reflects deficient payments. Only then would a court know explicitly what rights she claims to have and what payments she claims should have been made, and only then can it be sure it will not have a situation where the plaintiff claims she is not paid for ringtones and then two years later it is discovered that she is.

## CONCLUSION

Each and every claim and theory plaintiff has made over the past six years has been shown to be meritless, including this latest one invented from whole cloth. Plaintiff is owed no more. It is time to end this litigation. For the foregoing reasons plaintiff's Amended Complaint must be dismissed.

New York, N.Y.
December 5, 2006

Respectfully submitted,

Patterson Belknap Webb & Tyler LLP

By: _____

Gloria C. Phares
John C. Knapp

1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

Attorneys for Defendant Sunbow
Productions, Inc.

- 10 -

# Paul Piperato County Clerk
1 South Main St Ste 100
New City, NY 10956
Phone Number : (845) 638-5221

**Official Receipt :** 2006-00064618

**Printed On :** 12/12/2006   **at** 2:09:02 PM

**By :** 78   **on** FEE4

PATTERSON

,

Date Recorded : December 12, 2006

| Instrument ID | Recorded Time | Amount |
|---|---|---|
| | 2:08:46 PM | $45.00 |

Transaction : Motion/Cross Motion
Remarks : 5192/00

### Itemized Check Listing

| Check Number : 5041 | | $45.00 |
|---|---|---|

| | **Total Due :** | $45.00 |
|---|---|---|
| | **Paid by Check :** | $45.00 |
| | **Change Tendered :** | $0.00 |

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK )
                               :ss.:

COUNTY OF NEW YORK )

        JOHN C. KNAPP, being duly sworn, deposes and says:

        1.     I am over 18 years of age, not a party to this action, and am associated with the law firm of Patterson, Belknap, Webb & Tyler LLP, located at 1133 Avenue of the Americas, New York, New York 10036.

        2.     On December 5, 2006 I served the foregoing **Sunbow Productions, Inc.'s Motion to Dismiss** upon Patrick J. Monaghan, Esq., counsel for plaintiff, and Judith M. Saffer, Esq., counsel for co-defendant via hand delivery in open court.

_____
JOHN C. KNAPP

Sworn to before me this 8th
day of December, 2006

_____
Notary Public

MATTHEW M. FINNEGAN
Notary Public, State of New York
No. 01FI5080222
Qualified in New York County
Commission Expires June 16, 2007