# EXHIBIT 90

Supreme Court of the State of New York
COUNTY OF ROCKLAND
——————————————————————— x
                                                    :
ANNE BRYANT,                                        :
                                                    :
                    Plaintiff,                      :   Index No. 5192/00
                                                    :
        v.                                          :   Hon. Andrew P. O'Rourke
                                                    :
BROADCAST MUSIC, INC., (a/k/a "BMI"),               :
CLIFFORD A. "FORD" KINDER, KINDER &                 :
CO., LTD., VADIVOX, LTD., JULES M.                  :
"JOE" BACAL, GRIFFIN BACAL, INC.,                   :
STARWILD MUSIC BMI, WILDSTAR                        :
MUSIC ASCAP, SUNBOW PRODUCTIONS,                    :
INC., and JOHN AND JANE DOES 1-10,                  :
                                                    :
                    Defendant.                      :
                                                    :
——————————————————————— x
                                                    :
ANNE BRYANT,                                        :
                                                    :
                                                    :   Index No. 2821/02
                    Plaintiff,                      :
                                                    :   Hon. Andrew P. O'Rourke
        v.                                          :
                                                    :
SUNBOW PRODUCTIONS, INC.,                           :
                                                    :
                    Defendant.                      :
——————————————————————— x

**SUNBOW PRODUCTIONS, INC.'S REPLY BRIEF IN FURTHER SUPPORT OF
ITS MOTION TO DISMISS**

**INTRODUCTION**

The only issue set for trial has been decided. In its June 12, 2006 Order, this Court held that it was "satisfied that there were written and valid signed contracts between Plaintiff and Defendant Sunbow. The Plaintiff now claims that there were also oral agreements besides these written contracts

1

and these form the basis of her complaint. This is a matter for Plaintiff to prove on future trial of this matter." Decision and Order, June 12, 2006 (Phares Reply Affirm. Exh. A)[1]

After Sunbow suggested that, having found plaintiff's relation with Sunbow to be governed by written agreements, the case should be dismissed immediately, the Court gave her one last chance to make her case. On August 10, 2006, the Court wrote to the parties and stated that "[i]f Plaintiff intends to now say there were oral contracts, it is up to her to prove this especially in the face of the integration or merger clauses." (Phares Reply Affirm. Exh. B). The Court went on to order that "[a]t the end of the Plaintiff's case the Court will decide if a prima facie case has been made, if not, it will dismiss the Plaintiff's case. If the case has been made by Plaintiff, Defendant will proceed." *Id.* On December 1, 2006, the Court held a conference call with the parties and reiterated that the only issue to be tried is whether there were oral agreements. Thus, the narrow scope of the trial could not have been more clear.

On Monday, December 4, at the resumption of trial, Defendant Sunbow continued its cross-examination of plaintiff, which ended with the following exchange:

> Q: So, you're saying that if there was later a written contract on one of those speculative offers, that then the only thing that governs is the written agreement; is that what you're saying?

---

[1] "Phares Reply Affirm. Exh. _" refers to the December 8, 2006 Affirmation of Gloria C. Phares in Further Support of Defendant Sunbow Production, Inc.'s Motion to Dismiss. "Phares Affirm Exh. _" refers to the December 5, 2006 Affirmation of Gloria C. Phares in Support of Defendant Sunbow Production, Inc.'s Motion to Dismiss.

2

1330251v2

> A. Yes, there's nothing about the oral agreement that was more than the written agreement. It was the basis of the written agreement. That's what I'm saying.

Dec. 4, 2006 Trial Transcript 56:24-57:5 (Phares Reply Affirm. Exh. C). With that admission, the only issue set for trial by the Court—whether or not there were oral agreements in addition to the written agreements—was decided. There were no oral agreements. Defendant Sunbow immediately moved for a directed verdict. *Id.*

The Court did not decide the motion[2] and instead enquired "Well, Counsel, isn't she still entitled to an accounting?" *Id.* at 66:20-21. The Court then determined that it would hear testimony the next day from David Berman on the issue of an accounting and on the interpretation of the agreement. Dec. 5, 2006 Trial Transcript 52:12-16), (Phares. Reply Affirm. Exh. D). At the outset of the next day's proceedings, Sunbow asked the Court on what cause of action Mr. Berman was testifying, which the Court declined to answer.[3] Defendant Sunbow therefore sets forth its reply to plaintiff's opposition to its motion to dismiss under protest and without waiving and explicitly reserving

---

[2] The Court did eventually and unequivocally rule that oral agreements were not in this case. Dec. 4, 2006 Trial Transcript, 68:16-21 (Phares Reply Affirm. Exh. C) ("MS. PHARES: But, Your Honor, I would like to confirm on the record what I think was said before we all adjourned, and in which I think you indicated in chambers, was that the theory of there being an oral contract still in this case is now over. THE COURT: That's correct.").

[3] "MS. PHARES: Your Honor, just for the record, could we please have an explanation of what cause of action we are proceeding on this morning?

THE COURT: I'm going to take the testimony. As I said yesterday, I limited this witness to certain things that I would take testimony from him on, and I think that's what we're going on it." Dec. 6, 2006, Trial Transcript, 4:2-8 (Phares Reply Affirm. Exh F).

3

1330251v2

all objections to the proceedings themselves and to the testimony of Mr. David Berman in particular.

*   *   *

I. **THE AMENDED COMPLAINT DOES NOT ALLEGE AN EQUITABLE ACCOUNTING**

    A.    This Court Has Already Held that Plaintiff's Amended Complaint Does not State a Claim for an Accounting

Plaintiff does not and cannot refute Sunbow's claim that she did not allege a cause of action for an accounting. In fact, plaintiff *abandoned that claim.* The clearest evidence of her intent *not* to allege an equitable accounting—and this Court's acknowledgement of that intent—is a comparison of plaintiff's initial and amended complaints in her action against Sunbow.

Plaintiff's original complaint against Sunbow, filed on May 1, 2002, pled a "Second Cause of Action for Accounting." Sunbow moved to dismiss the complaint, arguing (among other things) that the accounting cause failed to allege any facts supporting the necessary element of a fiduciary relationship or relationship of trust. In response, plaintiff sought and was granted leave to amend her complaint.

Because the resulting Amended Complaint omitted a cause of action for an accounting, this Court ruled that "Defendant's motion to dismiss is denied as moot because the amended complaint omits those improper claims for which plaintiff [sic] had sought dismissal." Dec. 3, 2002 Decision and Order at 6 (Phares Reply Affirm. Exh. G). The improper claims for which defendant had sought dismissal were those, including an equitable accounting,

4

1330251v2

that plaintiff had excluded from her Amended Complaint. In other words, this Court has already *held* that there is no claim for an accounting in the Amended Complaint.

> B. Mere Mention of the Word "Accounting" in Other Causes of Action Is Insufficient to Allege an Accounting

Plaintiff's claim to have alleged an equitable accounting rests on her request for an "accounting" as a *remedy* for the only two causes of action (unjust enrichment and constructive trust) pled in the Amended Complaint. But those two causes of action are no longer in this case either. These claims obviously relate to plaintiff's original theory of the case – that Sunbow received monies that were intended for plaintiff. But plaintiff has already admitted that Sunbow did not receive any performance royalties intended for her (Phares Reply Affirm., Exh. H), and has alleged no diversion to Sunbow of any publishing royalties intended for her. Accordingly, this claim must be dismissed.[4]

Moreover, both claims are equitable and require a showing that there was a fiduciary or trust relationship between Kinder & Bryant and Sunbow, but this Court has already held that there was no such relationship between Kinder & Bryant and Sunbow. Dec. 15, 2003 Decision and Order at 15-16 (Phares Reply Affirm., Exh. I). Finally, plaintiff implicitly abandoned both causes of action when she moved to amend the Amended Complaint and

---

[4] *Mente v. Wenzel*, 577 N.Y.S.2d 167, 168 (N.Y. App. Div. 1991) (unjust enrichment arises when defendants obtain "benefit that in equity and good conscience they should not have obtained or possessed"); *Sharp v. Kosmalski*, 40 N.Y.2d 119, 121, 386 N.E.2d 721, 723 (1976) (constructive trust warranted where defendant has acquired property under circumstances where he cannot "in good conscience" retain it).

5

admitted that her relationship with Sunbow was completely contractual. Trial Exh. Z (Phares Reply Affirm., Exh. J).

  C. <u>Plaintiff *Cannot* Allege a Cause of Action for an Equitable Accounting</u>

As Sunbow demonstrated in its moving brief (Sunbow Br. at 3-4), plaintiff *cannot* as a matter of law make out a prima facie case for an equitable accounting because she has admitted that her relationship with Sunbow rested entirely on written royalty agreements (Tr.X Z (Phares Reply Affirm. Exh.J)), and such agreements do not establish a fiduciary relationship, an element of an action for an equitable accounting. Finally, this Court has already held that Sunbow "had no confidential relationship to plaintiff . . ." Dec. 15, 2003 Decision and Order p. 15-16 (Phares Reply Affirm. Exh. I).[5]

  D. <u>The Amended Complaint Cannot Be Amended to Conform to the Evidence</u>

Permitting plaintiff to allege under the guise of conforming the pleadings to the evidence under CPLR § 3025(c) wholly new causes of action, inconsistent with any of the many previous theories that plaintiff has tried and with the narrow theory under which trial was resumed, would be an abuse of discretion.

As Sunbow explained in its moving papers (Sunbow Br. at 5-6), not only was this cause of action not pled, but plaintiff had given no indication that

---

[5]  Plaintiff spends much of its brief relying on *Kaminsky v. Kahn*, 23 A.D.2d 231, 259 N.Y.S.2d 716 (1st Dep't 1965). It is unclear to Sunbow how this case, in which there was admitted proof that the defendant possessed profits owed to plaintiff, that defendant had acted unconscionably and in bad faith, and that plaintiff had no remedy at law, is at all relevant. That the Court in *Kaminsky* awarded money damage even though the case was brought in equity has no bearing on plaintiff's failure to state any case, in law, equity or otherwise. Equity is no help to meritless actions.

she was relying on it in the three years since she amended her complaint to delete it. Plaintiff tried to reprise it only after her own testimony at trial destroyed the theory on which the Court had permitted her to resume trial, a theory that the Court had repeatedly stated would be the *sole* issue on which trial was resuming.

Springing this eleventh-hour expansion of her causes of action, which Sunbow could not possibly have anticipated, is the very definition of surprise. Permitting plaintiff to continue on a dramatically different claim after this Court had repeatedly stated that the resumption of trial would focus only on plaintiff's oral agreement theory, the only issue Sunbow prepared to try, is the very definition of prejudice. Plaintiff has offered nothing to suggest the contrary.

## II. PLAINTIFF HAS NEVER EXERCISED HER CONTRACTUAL RIGHT TO AUDIT AND INSPECT

Even if plaintiff did not assert a cause of action for an equitable accounting, the written agreements that she signed with Sunbow contain an audit-and-objection right in Section 6(b) (Phares Reply Affirm., Exh. K, that affords her a procedure more robust than an equitable accounting to question royalty statements paid to her under the Sunbow agreements.

The procedure permits plaintiff the right to audit Sunbow's books relating to gross receipts from use of the Music at any time, which means that she can enlist expert auditors with experience in royalty audits. *See* Phares Affirm., Exh. C and D. The provision also states that the royalty statements are binding on plaintiff unless within one year from her receipt of the

7

statements she objects to them in writing specifically describing the bases of her objections.

Complying with that audit-and-objection procedure is a condition precedent to bringing a lawsuit to complain about the adequacy of the statements. See Sunbow Br. at 8. Conditions precedent "may come from a contract...or from a statute." Siegel, New York Practice § 32. *See also Muller v. New York*, 184 Misc. 2d 500; 708 N.Y.S.2d 798 (N.Y. Ct. Cl. March 28, 2000) (O'Rourke, J.). Nor can plaintiff claim that this lawsuit is her "written objection, describing specifically the failings in the royalty statements." *See Watson v. Sony Music Entertainment, Inc.*, No. 108802/98, slip op. at 6-8 (N.Y. Sup. Ct., N.Y. Cnty 1999) (Phares Affirm., Exh. A). Only if she has availed herself of the audit-and-objection procedure and is unable to settle her dispute (as happens in most cases) has she fulfilled the condition precedent to filing a lawsuit.

Plaintiff contends that because Sunbow has not sent royalty statements according to the schedule set out in the Sunbow agreements, she is somehow relieved of complying with the condition precedent to any lawsuit. (Pl. Br. at 11). But the Sunbow agreements clearly state that Plaintiff's one-year right to challenge the statements, using an audit to do so, does not begin to run until she *receives* the royalty statements. Even Plaintiff's own expert, David Berman, conceded that Plaintiff was not prejudiced if Sunbow sent the royalty statements late, because her opportunity to challenge them did not begin until she received them. (Phares Reply Affirm., Exh. F at 88:17-89:4.).

8

1330251v2

In fact, the Court expressed concern on several occasions that plaintiff had let decades pass without enquiring as to her payments.

Moreover, even if Plaintiff did not have the benefit of her contractual right running from receipt of the royalty statements, the case law is clear that when a songwriter is on notice that she is entitled to statements, she cannot fail to make inquiries if she fails to receive them and then claim that she was without notice as plaintiff does here. (Pl. Br. at 11.) *See, e.g., Rodgers v. Roulette Records, Inc.*, 677 F. Supp. 731, 737 (S.D.N.Y. 1988).

Plaintiff signed the written agreements that govern her relationship with Sunbow and has known of them since the 1980s. But even if we accept plaintiff's claim that she was not aware of them, she should have been reminded of them on August 19, 2004, when Sunbow produced to both plaintiff and the Court the signed copies of the agreements for *Jem* and *My Little Pony and Friends*. Phares Reply Affirm., Exh. L. Less than two months before then, Sunbow had also produced to plaintiff the royalty statements covering the period January 1998 through December 2003. Phares Affirm., Exh. B.[6] (It was during that period that DVD versions of the TV Shows were first released in the home video market.) In other words, when plaintiff received a signed copy of

---

[6] Plaintiff testified that she did not remember these statements (Dec. 4, 2006 Trial Transcript 5:12-21 (Phares Reply Affirm. Exh. C), and she now claims that she has "never received a royalty statement" (Pl. Br. at 11). But there is no doubt that royalty statements were produced to her through her counsel on June 22, 2004. *See* Phares Affirm., Exh. B; Phares Reply Affirm., Exh. M and Exh. N. A lawyer is an agent and fiduciary to his or her client. Production of documents on a party's lawyer in the course of a lawsuit is the same as providing them to the party. Just as production of the signed Jem agreement in August 2004 on plaintiff's counsel was constructive receipt by her, so too was production of the royalty statements in June 2004 on her counsel constructive receipt by her, even if she does not remember them now. Plaintiff admits receiving both checks paying the royalties due according to the 2004 and 2006 royalty statements.

the Jem agreement, she was well within the one-year period provided in Section 6(b) in which she could have objected to the royalty statements if she had had any complaints about them. Plaintiff did not take advantage of that opportunity, and they are now binding upon her.[7]

On December 1, 2006, Sunbow produced another set of royalty statements to plaintiff through her counsel. Tr. Exh. 48 (Phares Reply Affirm., Exh. O). These statements cover the period January 2004 through June 30, 2006, and show that, contrary to plaintiff's claims throughout this case, plaintiff is indeed being paid pursuant to the Sunbow agreements for the licensing of ringtones. If plaintiff has other complaints about these new royalty statements, a condition precedent to her bringing a lawsuit on the statements is her making a written statement before December 1, 2007, detailing her objections.

### III.    THE COURT SHOULD NOT CONSIDER THE TESTIMONY OF DAVID M. BERMAN ON THIS MOTION

Plaintiff has not bothered to respond to Sunbow's motion and instead takes the opportunity to argue the substance of Berman's testimony on a new cause of action. In the common law system, a plaintiff must make out her prima facie claim to survive a motion to dismiss. Siegel, New York Practice, §265. The motion to dismiss for failure to state a claim "lies if the pleading is defective on its face." *Id.* As stated above, plaintiff has not pled a proper cause of action for an accounting. Testimony of any kind is unable to cure that

---

[7] Plaintiff complains in one paragraph of her opposition to this motion that Sunbow "spr[u]ng this agreement upon Plaintiff (mid-trial)," and then in the next paragraph states that the agreements have "been in existence since June 1, 1985." Pl. Br. at 7.

defect, and so Mr. Berman's testimony should not be considered on this motion.[8]

Sunbow's motion in limine directed against Mr. Berman was based on the Court's orders and representations that he would be testifying as to oral agreements. If Sunbow had had notice that his testimony would focus on the construction of the Sunbow agreements, Sunbow's motion certainly would have included an objection to his testimony as an expert on the construction of the contract. It is well settled that expert witnesses "should not be called to offer opinion as to the legal obligations of parties under a contract; that is an issue to be determined by the trial court." *Colon v. Rent-A-Center, Inc.*, 276 A.D.2d 58, 62, 716 N.Y.S.2d 7, 10 (N.Y. App. Div. 1 Dep't, 2000); *Hess v. Zoological Soc. of Buffalo, Inc.*, 134 A.D.2d 824, 825, 521 N.Y.S.2d 903, 904 (N.Y. App. Div. 4 Dep't 1987). The testimony should have been excluded on those grounds.

To the extent the Court is nonetheless going to permit such prohibited testimony and allow it to be considered on a motion made as a matter of law, Sunbow is again prejudiced, not having had an opportunity to be heard on this issue. Indeed, Sunbow is prepared with overwhelming evidence that Mr. Berman's understanding of the terms of the contract is inaccurate.

Mr. Berman's understanding is at odds with the facts in the record. On March 3, 1986, plaintiff's attorney wrote to Sunbow requesting that

---

[8] If anything, Mr. Berman's testimony would be relevant to damages, but plaintiff has not even alleged, never mind proved, any kind of breach that would justify them. *See Lee v. Capital Automotive Resources Inc.*, March 5, 2002 N.Y.L.J. 26 (col. 1) (N.Y. Sup. Ct. Rockland Cnty. 2002) (O'Rourke, J.).

11

1330251v2

rights for videocassette tapes be included in her agreement. Defendant's Trial Exh. H at ¶ A(3) (Phares Reply Affirm. Exh P.) On May 30, 1986, Sunbow's attorney replied to plaintiff indicating that this request was "*unacceptable.*" Defendant's Trial Exh. I at ¶ A(3) (Phares Reply Affirm. Exh. Q)(emphasis added).[9] In other words, plaintiff originally sought a change in the language because she knew the existing language did not cover videocassettes. If plaintiff had thought it had the meaning Mr. Berman now ascribes to it, she would have had no reason to ask for a change. Indeed, she certainly knew that, as drafted, the language did not include videocassette rights, and she signed it with that knowledge.

Mr. Berman offers an opinion as to how the essential terms of the agreement are used in the television publishing industry even though he admits to having little familiarity with that industry and no contact with it at all in the last 30 years.[10] For his understanding of terms used in the context of

---

[9] "Q. So, you're not aware that -- that Ms. Bryant's lawyer asked for payments for videocassettes and that they were denied?

A. I'm not aware of that." Trial Transcript, Dec. 6, 2006, 55:17-20 (Phares Reply Affirm. Exh. F).

[10] "Q: Have you ever done any music publishing work in connection with the commissioning of work for television?

A. Yes, but much less.

Q. When did you do it?

A. I know I did some at Mitchell Silberberg.

Q. You mean in the early in the 70s?

A. Yeah, I left in 78, yes.

Q. '78 or '76? Maybe I misread this.

A. I left Mitchell, Silberberg in '76; you're right.

Q. And any other occasion which you have done the commissioning of music for television in the last 30 years?

A. Yes, yes, but I can't recall specifically right now.

1330251v2

the production of audiovisual media, that is, television and movies, Mr. Berman instead relies on his understanding of the terms used in the music industry. He looks not to the Copyright Act, not to usage in the industry at issue, not even to the usage between the actual parties in past agreements, but rather to the usage in an irrelevant industry that by definition does not deal with audiovisual works. Indeed, what light can a record licensing agreement shed on the meaning of the "Show" in the Sunbow television production agreement?

Even without Sunbow's evidence, Court must see as a matter of logic that the agreement simply cannot mean what plaintiff alleges it does. Paragraph 6(a) lists six uses for which plaintiff is owed varying percentages of income. Jem Agreement (Phares Reply Affirm. Exh. K) Each of the first five uses is of the Music on its own: phonograph records, piano copies, band arrangements, songbooks, folios and motion picture synchronization rights. These are all uses of the Music separate from the Show. They do not mention the Show. And yet, plaintiff wants the Court to believe, without explanation other than Mr. Berman's proclamation, that section 6(a)(vi)'s reference to "other uses of the Music" refers not to uses of the Music but to the Music as an integrated part of the Show. There is no basis for this conclusion.

Moreover, the interpretation Mr. Berman advances for the section 6(a)(vi) has absurd financial results. If plaintiff is owed 50% of the net proceeds of every DVD sold of a Show for which she wrote the music, is 50%

---

    Q.    Is that because there's so little of it?
    A.    There wasn't that much television work." Trial Transcript, Dec. 6, 2006, 21:10-25. (Phares Reply Affirm. Exh. F).

1330251v2

also owed to the other creative artists - lyricist, screenwriter, animator, and graphic designers? Plaintiff claims she is due what Sunbow's experts would explain is not earned by the most famous and successful songwriters. Logic, reason and the record require the Court to reject this argument.

IV. **PROCEEDING ON ANY OF PLAINTIFFS NEW CLAIMS DEPRIVES SUNBOW OF DUE PROCESS**

Until the morning of trial, plaintiff's theory had been that she had made oral agreements with unnamed persons which promised her rights above and beyond what was in the written agreements. During the December 4th proceedings, it became clear that plaintiff intended to introduce testimony on the substance and interpretation of the Sunbow agreements. She had never before argued, or conducted discovery on, or in any other way gave notice that she was alleging that the written agreements *themselves* did not reflect what was owed to her or what she had received. That plaintiff intended to rely on the written agreements was sprung totally without warning on Sunbow *at trial*. Forcing Sunbow to try a case on this new theory without notice deprives it of the basic process due to a civil litigant and is reversible error. Prince v. O'Brien, 256 A.D.2d 208, 683 N.Y.S.2d 504 (1st Dep't 1998); Dolan v. Garden City Union Free School Dist., 113 A.D.2d 781, 493 N.Y.S.2d 217 (2d Dep't 1985).

There is a name for the cause of action plaintiff is attempting to try: breach of contract. Even under the loosest standard of pleading that the Constitution allows, "notice and hearing are prerequisite to due process in civil proceedings." *Joint Anti-Fascist Refugee Committee v. McGrath*, 41 U.S. 123, 71

S.Ct. 624 (1951). The word "breach" does not appear in the amended complaint. The written agreements do not appear in the complaint. Indeed, this Court denied, and properly so, plaintiff's motion to amend her complaint to sue on the agreements because the motion was made too late, after the initial trial in the case was well underway. The Court cannot undo that holding. Plaintiff signed these agreements in the 1980s, and they were produced to her again in 2004. She has had ample opportunity to bring suit to have their terms construed or to allege a breach of them, and she did not do so.

Sunbow came to trial ready to defend against allegations that oral agreements somehow promised plaintiff rights beyond what was provided in the written. Sunbow prepared itself in accordance with this Court's orders. Sunbow conducted no discovery on the terms of the written agreements, did not depose plaintiff's witnesses on that issue, and, indeed, did not even cross-examine plaintiff at trial on that issue because it was not raised until that day after she left the stand.

Even Sunbow's cross-examination of plaintiff's expert, David Berman, was prepared on the expectation he would be testifying as to oral agreements plaintiff had with Sunbow. Instead, Sunbow had less than twenty-four hours to prepare a new cross-examination on the question of an "accounting," an ambiguous term that refers either to an equitable accounting which plaintiff cannot allege as a matter of law or her contractual audit-and-opposition right, which is a condition precedent to a suit. Neither of these are before the Court. In either case, forcing Sunbow to now proceed on what can only be considered a breach of contract action with absolutely no notice or

15

opportunity to prepare its defense passes the limits of what due process is guaranteed to litigants in the United States. The idea that there has been "extensive testimony" on the meaning of the Sunbow agreements (Pl. Br. at 1) is nonsense.

Plaintiff began this suit with some vague sense that someone somewhere owed her money. This sense remained vague because she never took the effort to find out; she just filed suit. First she claimed that Sunbow, BMI and her former partner conspired to re-register her credits so she was paid less than she was due. Once she learned that Sunbow could not locate the Sunbow agreements, she abandoned the prior theories in favor an oral working arrangement, the theory on which trial commenced in 2004. When discovery of the written agreements undermined that position, she swore to this Court that she had never signed them and that the signatures were forgeries. When they were proven to be her signatures she swore to this Court that there were also oral agreements that promised more. When it was proven that there were no oral agreements she now claims that she has mutually inconsistent claims for an equitable account *and* breach of contract – neither of which had been mentioned until the afternoon of December 4, 2006, the day trial resumed.

The Court has indulged plaintiff's efforts to state a case, but she has repeatedly failed to do so. In the process Sunbow has been forced repeatedly and without notice to defend against plaintiff's multiple serial claims.

The Court's August 10, 2006 letter provided plaintiff one final opportunity to make out her most recent oral agreement claim. As the Court

16

1330251v2

found, she failed. Nothing of her Amended Complaint remains, and requiring Sunbow to defend on further causes of action nowhere alleged deprives it of due process. The Amended Complaint must be dismissed.

## V. PLAINTIFF'S MOTION FOR JUDGMENT MUST BE DENIED

Plaintiff moves for judgment just days after this Court observed with regard to her case that if it is not dead, it is breathing heavy. Plaintiff states that Sunbow cannot dispute the terms of the agreements, in reply to a motion disputing the terms of the agreements. Plaintiff states that Sunbow cannot dispute that it has violated terms of the agreements, in reply to a motion disputing that it has violated the terms of the agreements. Plaintiff argues that Sunbow has made admissions that support this motion, when in fact those admissions state nothing more than that plaintiff is owed the royalties that she has been paid, and nothing more. Plaintiff's motion for judgment is contemptuous of the Court's order, frivolous and must be denied.

1330251v2

## CONCLUSION

For all the foregoing reasons and those stated in Sunbow's Motion to Dismiss and all the accompanying documentation, the Court must dismiss this action.

New York, N.Y.
December 7, 2006

>Respectfully submitted,
>
>Patterson Belknap Webb & Tyler LLP
>
>By: _____
>Gloria C. Phares
>John C. Knapp
>
>1133 Avenue of the Americas
>New York, New York 10036
>(212) 336-2000
>
>Attorneys for Defendant Sunbow