# EXHIBIT 91

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

———————————————————————— x

ANNE BRYANT,                                    :

                     Plaintiff,        :

                v.              :

BROADCAST MUSIC, INC., (a/k/a "BMI"), :
CLIFFORD A. "FORD" KINDER, KINDER &
CO., LTD., VADIVOX, LTD., JULES M.     :
"JOE" BACAL, GRIFFIN BACAL, INC.,
STARWILD MUSIC BMI, WILDSTAR          :
MUSIC ASCAP, SUNBOW PRODUCTIONS,
INC., and JOHN AND JANE DOES 1-10,    :

             Defendants.       :

———————————————————————— x

                             :

ANNE BRYANT

                    Plaintiff,        :

                v.              :

SUNBOW PRODUCTIONS, INC.             :

                  Defendant.        :

———————————————————————— x

Index No. 5192/00

Hon. Andrew P. O'Rourke

Index No. 2821/02

Hon. Andrew P. O'Rourke

**REPLY AFFIRMATION OF
GLORIA C. PHARES IN
SUPPORT OF SUNBOW
PRODUCTIONS, INC.'S MOTION
TO DISMISS**

RECEIVED
ROCKLAND COUNTY

DEC 1 2 2006

CHIEF CLERKS
OFFICE

55576-017

SERIAL NO. 367

SERVED

RECEIVED

FILED

GLORIA C. PHARES, an attorney admitted to practice before the courts of

this State, makes the following affirmation under penalty of perjury:

      1.    I am a member of the firm Patterson Belknap Webb & Tyler LLP,

attorneys for Defendant Sunbow Productions, Inc. ("Sunbow"), and admitted to practice

in the State of New York. I am thoroughly familiar with the facts contained in this reply

affirmation in support of Sunbow's Motion to Dismiss.

2. <u>Exhibit A</u> is a true copy of this Court's Decision and Order dated June 12, 2006.

3. <u>Exhibit B</u> is a true copy of a letter from the Honorable Andrew J. O'Rourke to the parties, dated August 10, 2006.

4. <u>Exhibit C</u> is a true copy of pages 5, 56-57, 68 of the Trial Transcript on December 4, 2006.

5. <u>Exhibit D</u> is a true copy of page 5 of the Trial Transcript on December 5, 2006.

6. <u>Exhibit E</u> is a true copy of is a true copy of plaintiff's original Verified Complaint, filed May 1, 2002.

7. <u>Exhibit F</u> is a true copy of pages 4, 21, 55, 87-89 of the Trial Transcript on December 6, 2006.

8. <u>Exhibit G</u> is a true copy of the Decision and Order of this Court's December 3, 2002.

9. <u>Exhibit H</u> is a true copy of Defendant's Trial Exhibit Y.

10. <u>Exhibit I</u> is a true copy of the December 15, 2003 Decision and Order of this Court.

11. <u>Exhibit J</u> is a true copy of Defendant's Trial Exhibit Z.

12. <u>Exhibit K</u> is a true copy of Defendant's Trial Exhibit M.

13. <u>Exhibit L</u> is a true copy of an August 19, 2004 from me to the Court with copies to Patrick J. Monaghan, Esq. and Judith M. Saffer, Esq.

14.     Exhibit M is a true copy of a July 2, 2004 letter from me to Patrick J. Monaghan, Esq.

15.     Exhibit N is a true copy of a July 5, 2004 letter from Patrick J. Monaghan, Esq. to the Court.

16.     Exhibit O is a true copy of Plaintiff's Trial Exhibit 48.

17.     Exhibit P is a true copy of Defendant's Trial Exhibit H, a March 3, 1986 letter from William M. Dobishinski, Esq. to Robert C. Harris, Esq.

18.     Exhibit Q is a true copy of Defendant's Trial Exhibit I, a May 30, 1986 letter from Robert C. Harris, Esq. to William M. Dobishinski, Esq.

Dated:     New York, N.Y.
           Dec. 8, 2006

Gloria C. Phares

1330301v1

Exhibit A

# DECISION AND ORDER

To commence the statutory period of appeals as of right CPLR (5515 [a]), you are advised to serve a copy of this order, with notice of entry, upon all parties.

**FILED**

JUN 1 6 2006  9

ROCKLAND COUNTY
CLERK'S OFFICE

SUPREME COURT OF THE STATE OF NEW YORK
IAS PART, PUTNAM COUNTY

Present:  Hon. Andrew P. O'Rourke
                 Supreme Court Justice

---------------------------------------------------X

ANNE BRYANT,

INDEX NO.: 5192/2000

Plaintiff,

-against-

BROADCAST MUSIC, INC., (a/k/a "BMI") CLIFFORD
A. "FORD" KINDER, KINDER & CO., LTD.,
VADIVOX, LTD., JULES M. "JOE" BACAL,
GRIFFIN BACAL, INC., STARWILD MUSIC BMI,
WILDSTAR MUSIC ASCAP, SUNBOW
PRODUCTIONS, INC., and JOHN AND JANE
DOES 1-10,

Defendants.

---------------------------------------------------X

ANNE BRYANT,

INDEX NO.: 2821/2002

Plaintiff,

-against-

SUNBOW PRODUCTIONS, INC.,

Defendant.

---------------------------------------------------X

1

BOOK **106** PAGE **2345**

This intellectual properties action was set down for a framed issue hearing on October 29, 2004 before this Court. Thereafter a stay of these proceedings was initiated by the Court awaiting the appeal of three determinative decisions of this Court by the Appellate Division, Second department. The appeal was argued in February, 2006 and a decision rendered in March 2006 unanimously affirming this Court's decisions below.

In the interim the Court had both cases transferred from Rockland County Supreme Court to Putnam County Supreme Court and since this was an ongoing bench trial retained jurisdiction there over.

It appears that no decision was ever rendered in the framed issue hearing and having finally obtained copies of the post trial briefs and submissions the Court decided as follows:

The Court is satisfied that there were written and valid signed contracts between Plaintiff and Defendant Sunbow. The Plaintiff now claims that there were also oral agreements besides these written contracts and these form the basis of her complaint. This is a matter for Plaintiff to prove on future trial of this matter.

At the end of the framed issue hearing the Court also asked each side to submit a "short analysis" of this issue on the signatures and also:

"If those signatures are Ms. Bryant's ...what is the stand of each party about what remains, if anything, in this trial..."

Each party has submitted briefs and various submissions on these matters. The Defendant's claim that the case is over and should be dismissed. The Plaintiff has taken further deposition of no-parties. This Court wished that the matter were as clear as the parties suggest. However it is not.

2

This case must go on for a while longer. Both sided should decide which are their essential witnesses and be prepared to present them before the end of this year in person or by videos (EBT's.) From the Court's point of view experts in this particular area of authorship and attendant needs for compensation would be a benefit to both sides. Multiple fact cumulative witnesses will not be tolerated.

The Court will have a telephone conference with each side on July 7, 2006 or at a later mutual agreed upon date. Each side should furnish the Court with a new witness list, including the subject matter of such witnesses and approximate times involved.

There will be no further discovery allowed in this matter.

This constitutes the order of the Court.

Hon. Andrew P. O'Rourke
Justice of the Supreme Court

Dated: June 12, 2006
Carmel, NY

ENTERED
A.M.
JUN 1 5 2006
P.M.
County Clerk Rockland

3

Exhibit B



Andrew P. O'Rourke
Justice
August 10, 2006

Patterson Belknap Webb and Tyler, LLP
Gloria C. Phares, Esq.
1133 Avenue of the Americas
New York, NY 10036-6710

Monaghan Monaghan Lamb and Marchisio LLP
Patrick J. Monaghan Jr., Esq.
28 West Grand Avenue
Montvale, NJ 07645

BMI
Judith M. Saffer, Esq.
320 West 57ᵗʰ Street
New York, NY10019-3790

Re: Anne Bryant v BMI, etc.
2821/2002
5192/2000

Dear Councillors:

At the request of Ms. Phares I am writing to tell you what I expect to be the next order of business in the above matter. The Court's latest decision was amplified by our recent telephone conversation.

The Court has already found that there were "written and valid signed contracts between Plaintiff and Defendant, Sunbow." Defendant has presented evidence that said written contracts were the only way Defendant, Sunbow, operated with the artists it employed. If Plaintiff intends to now say there were oral contracts, it is up to her to prove this especially in the face of the integration or merger clauses.

In view of the Appellate Division's decisions I believe it is necessary for us to conclude this case. This matter is still on the Plaintiff case and thus that case must go forward. Ms. Bryant's testimony must be finished. Plaintiff has stated that it was also to call an expert.

At the end of the Plaintiff's case the Court will decide if a prima facie case has been made, if not, it will dismiss the Plaintiff's case. If the case had been made by Plaintiff, Defendant will then proceed.

Both sides will be given adequate Court time to make their case or defense. Apparently, by agreement of the parties, the case will continue during the week of December 4th, 2006.

Sincerely,

Andrew P. O'Rourke
Justice of the Supreme Court

Exhibit C

1           DRAFT/NOT CERTIFIED
2         Continuing Bench Trial
              (Day 3)
3
                              December 4, 2006
4                             10:10 AM
                                 40 Gleneida Avenue
5                             Putnam County Office
                               Building
6                             Carmel, New York
7
    BEFORE:   HON. ANDREW P. O'ROURKE
8             Presiding Supreme Court Justice
9
    SUPREME COURT OF THE STATE OF NEW YORK
10  COUNTY OF ROCKLAND
                                             X
11
    ANNE BRYANT
12                          Plaintiff
13  - versus -                      Index No.
                                    5192/00
14  BROADCAST MUSIC, INC., (a/k/a "BMI"),
    FORD KINDER, KINDER & CO., LTD., VADIVOX, INC.,
15  JULES M. "JOE" BACAL; GRIFFIN BACAL, INC.,
    STARWILD MUSIC BMI, WILDSTAR MUSIC ASCAP,
16  SUNBOW PRODUCTIONS, INC.,
                          Defendants
17                                           X
18  ANNE BRYANT
                          Plaintiff
19                               Index No.
    - versus -                    2821/02
20
21  SUNBOW PRODUCTIONS, INC.,
                          Defendant
22
23  _____
                  Laurie Hardisty, RMR
24              Official Court Reporter
          44 Gleneida Avenue, Carmel, NY 10512
25              (845) 225-3641 Ext. 294

1          Let's start with BMI.

2          MS. PHARES:  Your Honor, where you can see,

3    I'm afraid we can't.

4          THE COURT:  If you need to move around ...

5    The accommodations are not spacious here.  We're

6    hoping for the new courthouse, though I hope this case

7    is over by the time the new courthouse gets here.  So,

8    just moved around at your where you can see best.

9          MS. PHARES:  If you don't mind, I'm just

10   going to go stand over here.

11         THE COURT:  You can take the witness chair if

12   you want.

13         MS. PHARES:  All right.

14         THE COURT:  It won't hurt.  Most lawyers

15   doesn't like to be witnesses.

16         Go ahead.

17         MR. MONAGHAN:  In the course of the

18   litigation, in various pleadings before you, Judge, on

19   the many, many motions we've had to deal with, Sunbow

20   has made some damaging admissions.  They're damaging

21   because they acknowledge, and we're going to bring

22   some of them up on the screen, and they're

23   evidentiary.  These are not just pleadings or motions.

24   When they made informal judicial proceedings they

25   become formally judicially binding.

1        that were related to that.

2   Q.   I am talking about agreements with Sunbow.

3   A.   I don't know.  I don't -- I don't have them, and I

4        wish you did.

5   Q.   But you have agreed that the Jem agreement is the form

6        of agreement that governed all your relationships with

7        Sunbow.  That was what you stated in your affidavit,

8        that is what the Court found in his decision on June

9        15th at the end of the framed -- ruling on the framed

10       issue hearing.  That's -- that's your testimony; is

11       that correct?

12  A.   Yes.  And all of the -- the agreements with Sunbow's

13       Productions all track with this agreement.

14  Q.   So, I am asking you:  Are you contending whether --

15       that you also have a written -- an oral agreement in

16       addition to your written agreements with Sunbow?

17  A.   No.  I'm saying that all -- all the jobs I got from

18       GBI, Sunbow, anybody involved in -- in that double

19       company, all of them came to me as all my jobs today

20       come to me, on spec, with the terms being given

21       orally.  That's how the industry runs.  Later on,

22       those terms are fleshed out in a written contract if

23       lightening strikes and something goes on the air.

24  Q.   So, you're saying that if there was later a written

25       contract on one of those speculative offers, that then

1           the only thing that governs is the written agreement;

2           is that what you're saying?

3      A.   Yes, there's nothing about the oral agreement that was

4           more than the written agreement.  It was the basis of

5           the written agreement.  That's what I'm saying.

6                MS. PHARES:  Well, Your Honor, on the basis

7           of that, it seems to me that I am going to make a

8           motion for a directed verdict right now, because the

9           Court has already found that the Sunbow agreements

10          governed all of her relationships.  They have a merger

11          clause in them.  She apparently is conceding that any

12          prior oral agreement was merged into them; and we're

13          done.

14               THE COURT:  Mr. Monaghan?

15               MR. MONAGHAN:  That's easy.  The Jem

16          agreement that was just inquired about relates to a

17          particular subject matter.  The particular subject

18          matter were the feature songs for the shows.  Does not

19          cover, does not describe the subject matter as

20          anything other than that.  Doesn't describe

21          transformers, doesn't identify the Jem themes, which

22          are the more valuable property.  So that the merger

23          clause, which I don't know why counsel keeps stressing

24          it, can only relate to that particular composition.

25          That merger clause in the Jem agreement can only

1           THE WITNESS:  It's just that if I bought a

2    house --

3           THE COURT:  Yeah.

4           THE WITNESS:  -- wouldn't I talk to my

5    attorney, say I want this and that and that?  And then

6    he'd say, Okay, I'll do the contract.  I mean, that's

7    what I'm saying.

8           THE COURT:  Okay.

9           THE WITNESS:  I think everything begins with

10   an oral contract.

11

12   (Whereupon a recess was taken at approximately 11:55

13   AM.)

14

15   (Luncheon recess taken at approximately 12:40 PM.)

16

17   (Court reconvened at approximately 2:35 PM.)

18

19           THE COURT:  All right.  We're back on the

20   record.

21           All right, Ladies and Gentlemen, I took as

22   much time as I could during lunch and the -- and I

23   could not answer some of the questions that were in my

24   mind.  So, I'm going to take some more time this

25   afternoon and tomorrow morning.  At 2:00 o'clock

Exhibit D

<pre>
 1          DRAFT/NOT CERTIFIED
 2          Continuing Bench Trial
              (Day 4)
 3
                              December 5, 2006
 4                            2:15 PM
                                40 Gleneida Avenue
 5                            Putnam County Office
                               Building
 6                            Carmel, New York
 7

    BEFORE:  HON. ANDREW P. O'ROURKE
 8           Presiding Supreme Court Justice
 9

    SUPREME COURT OF THE STATE OF NEW YORK
10  COUNTY OF ROCKLAND
                                          X
11

    ANNE BRYANT
12                      Plaintiff
13  - versus -                    Index No.
                                  5192/00
14  BROADCAST MUSIC, INC., (a/k/a "BMI"),
    FORD KINDER, KINDER & CO., LTD., VADIVOX, INC.,
15  JULES M. "JOE" BACAL; GRIFFIN BACAL, INC.,
    STARWILD MUSIC BMI, WILDSTAR MUSIC ASCAP,
16  SUNBOW PRODUCTIONS, INC.,
                         Defendants
17  _____X
18  ANNE BRYANT
                        Plaintiff
19                            Index No.
    - versus -                 2821/02
20
21  SUNBOW PRODUCTIONS, INC.,
                         Defendant
22
23  _____
                Laurie Hardisty, RMR
24            Official Court Reporter
        44 Gleneida Avenue, Carmel, NY 10512
25              (845) 225-3641 Ext. 294
</pre>

1   them?  You know, we've been sort of going quickly

2   through this and the witness lists were truly only

3   available a few days ago.  So, I excuse that.  And

4   that -- what you're saying, I take it, is that it's up

5   to the trial Judge to decide whether or not these

6   witnesses are -- are necessary to the case and not up

7   to Defense Counsel to do it.

8           MR. MONAGHAN:  That's correct, Your Honor.

9           THE COURT:  And to that extent, since I've

10  already ruled in this case that there is -- there are

11  written contracts to cover the parameters between the

12  Plaintiff and the Defendant -- the Defendants, and

13  since there are no longer -- there's no longer any

14  claim of oral contracts, then what do we need these

15  witnesses for?  Maybe you'd address that.

16          MR. MONAGHAN:  Yes, Your Honor.

17          Well, let me take each of the in limines.

18          Now, I would assume, though, that no more

19  motions should apply to apparently a motion that was

20  just served, this omnibus motion.  You did advise all

21  of us that at the end of the Plaintiff's case, there

22  would be an opportunity to make one more motion.  You

23  gave them that opportunity back in 2004.

24          THE COURT:  Okay.  But what they're saying is

25  the case is over, why shouldn't we make it now.

Exhibit E

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

ANNE BRYANT

                Plaintiff

    -against-

SUNBOW PRODUCTIONS, INC.

           Defendant

INDEX NO.

Summons Filed:

_____ , 2002

Plaintiff designates
Rockland County as
the place of trial

The basis of venue is
plaintiff's residence

## SUMMONS

To the above named Defendant: Sunbow Productions, Inc.

YOU ARE HEREBY SUMMONED to reply to the Complaint in this
action and to serve a copy of your answering papers, or, if the
Complaint is not served with this Summons, to serve a notice of
appearance, on the Plaintiff's Attorney(s) within 20 days after the
service of this Summons, exclusive of the day of service (or within
30 days after the service is complete if this Summons is not
personally delivered to you within the State of New York); and in
case of your failure to appear or answer, judgment will be taken
against you by default for the relief demanded.

DATED:   April 3, 2002

Defendant's address: 100 Fifth Avenue, New York, NY 10011

         By:   *Robert Baratta*

Robert M. Baratta, Esq.
MONAGHAN, MONAGHAN, LAMB & MARCHISIO
Attorneys for Plaintiff
150 West 55th Street, Suite 1G
New York, New York 10019
(212) 541-6980
      -and-
25 East Salem Street
Hackensack, New Jersey 07601
(201) 488-1201

MONAGHAN, MONAGHAN
LAMB & MARCHISIO
ATTORNEYS
25 EAST SALEM STREET
HACKENSACK, NJ 07601

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

---

ANNE BRYANT

                                       INDEX NO.

                    Plaintiff

      -against-                              VERIFIED COMPLAINT

Sunbow Proctions, Inc.


                    Defendant

---

     1.  Plaintiff Anne Bryant is a citizen and resident of the State of New York, residing at 21 Collaberg Road, Stony Point, New York.  She is an accomplished composer, arranger, lyricist, music producer and songwriter and has won industry awards for her compositions including Clio awards.

     2.  Defendant Sunbow Productions, Inc. ("Sunbow") is a television production company that, during relevant times, had its offices at 100 Fifth Avenue, New York, NY 10011.  Defendant corporation was once owned by Griffin-Bacall, Inc., an advertising agency.  Griffin-Bacall, Inc. was owned and operated by Jules "Joe" Bacall.  Upon information and belief, GBI was sold to Sony Music in 1998.

MONAGHAN, MONAGHAN
LANO & MARCHISIO
ATTORNEYS
28 EAST SALEM STREET
HACKENSACK, NJ 07601

## BACKGROUND

3.  In or about November, 1991, plaintiff brought an action in the Supreme Court, State of New York, County of Rockland (Index No. 8721/91) against Kinder & Co., Ltd., among others (hereafter Bryant-Kinder suit). The litigation arose out of the prior business relationship between Bryant and Clifford "Ford" Kinder ("Kinder") and an entity known as Kinder-Bryant, Ltd. in which Bryant and Kinder were officers and directors of the corporation which was engaged in the jingle business dealing with advertising agencies such as Griffin Bacal.

4.  As a result of differences which arose between Bryant and Kinder, it was determined that Kinder and Bryant would effect a corporate divorce and a property settlement, and did so by virtue of an agreement dated November 8, 1989 (known and designated as the "Separation Agreement").

5.  Among other things, the Kinder-Bryant litigation alleged that Kinder had breached the Agreement, owed Bryant an accounting, had breached fiduciary duties, had converted certain royalties and other monies due and owing to Bryant; and further alleged that Kinder had engaged in fraud and a conspiracy to convert monies due plaintiff.

MONAGHAN, MONAGHAN
LANG & HARCHISIO
ATTORNEYS
20 EAST SALEM STREET
HACKENSACK, N.J. 07601

2

## SETTLEMENT OF BRYANT-KINDER LITIGATION

6.   Following extensive discovery, document production and negotiations, the Bryant-Kinder suit was settled on or about September 21, 1994.   The essentials of the settlement were set forth in the record before the Hon. Howard Miller, J.S.C.

7.   Prior to the settlement and in connection therewith, specific representations were made to plaintiff by Kinder concerning the then existing registrations with Broadway Music, Inc. ("BMI").

8.   BMI is a performing rights society that, along with the American Society of Composers and Publishers ("ASCAP") is an organization comprised of publisher members and writer members which, as transferee of its members such as the plaintiff Anne Bryant, licenses the non-dramatic performing rights in the musical works of its members.   BMI monitors, pools and collects royalty payments due to writers and publishers and then, in exchange for good and valuable consideration to it, distributes payments to its member writers and publishers in accordance with a formula and schedule relative to the respective parties' contribution to the compositions.

9.   During the course of their relationship, Kinder and

MONAGHAN, MONAGHAN
LANE & MARCHISO
ATTORNEYS
25 EAST SALEM STREET
HACKENSACK, NJ 07601

3

Bryant were the principal suppliers of music and lyrics for Griffin Bacal, an advertising agency, which selected music for its client Hasbro which marketed a number of popular toy products including, but not limited to, the Transformers, My Little Pony, Jem and G.I Joe. All musical titles which were produced by Bryant-Kinder were listed in plaintiff's name. As between Bryant and Kinder, the parties divided their profits from any such royalties received from BMI on a fifty/fifty basis. Griffin Bacal, as publisher, also received a portion of publishing royalties through BMI. All of the foregoing was done for the mutual benefit of plaintiff, Kinder and Griffin/Bacal. Plaintiff's compositions actually out-earned Kinder's compositions through BMI by at least a two to one ratio. The foregoing arrangement was established by Kinder, Griffin/Bacal and William Dobishinski through Tamad, Inc. which administered and received the royalties and then made distributions to the interested parties.

10. As will be shown hereafter, Sunbow Productions caused musical compositions and musical cues, which were formerly registered in plaintiff's BMI account, to be altered and re-registered in a manner to benefit Kinder, Griffin-Bacal and Bacal, both before and after said settlement.

MONAGHAN, MONAGHAN
LAMB & MARCHISIO
ATTORNEYS
25 EAST SALEM STREET
HACKENSACK, NJ 07601

4

## REGISTRATION OF MUSICAL COMPOSITIONS WITH BMI

11.   Defendant Sunbow knowingly and without plaintiff's knowledge caused the re-registration of plaintiff's titles and compositions registered to her, without plaintiff's consent or approval. .

12.   Set forth in Exhibit A hereafter are the some of the songs, title and musical cues and themes which were registered with BMI in her name and her account and the dates of re-registration and the change in credits.

13. G.I. Joe: As aforesaid, from the time of the settlement with Kinder, Bryant was to receive the entire writer's share relative to the music for various G.I. Joe "themes" (a Hasbro product).   This included G.I. Joe/G.I. Joe Main Theme/G.I. Joe Theme/G.I. Joe Avg/American Hero/G.I. Joe PM/G.I. Joe/Bryant PM, and numerous G.I. Joe episode themes.

14. My Little Pony: As aforesaid, from the time of the settlement with Kinder, Bryant was to receive the entire writer's share relative to the music for the My Little Pony themes. My Little Pony themes were fraudulently re-registered in 1993, according to the information recently received from BMI.   With respect to the "My Little Pony and Friends" theme, such was wrongfully re-registered in June of 1993 to accomplish

MONAGHAN, MONAGHAN
LANG & MARCHESIO
ATTORNEYS
25 EAST SALEM STREET
HACKENSACK, NJ 07601

5

a sharing in the music royalties of twenty-five percent to
Bryant, twenty-five percent to Kinder.   Sunbow fraudulently
effected the re-registration.

15. The Transformers:   The musical theme for the Hasbro
Products "Transformers" was composed by Bryant (50%) with lyrics
by Bacal (50%) (the "writers share" of 100%) and upon
information and belief, registered accordingly in 1983 or 1984
at BMI.  Kinder had no participation in the musical composition.
The Transformers theme has been re-registered on numerous
occasions, upon information and belief beginning on 8/25/94, to
benefit Kinder by granting him writer's shares of from 50% to
83.40%, (see Exhibit A). This is false and fraudulent, as Kinder
had no interest in the musical theme.

16. Registrations in 1988 of the Transformers "From film"
reduce Bryant's writer share from 50% to 20%, crediting Kinder
20% and Bacal 10%.

17. Re-registrations in 1994 and 1998 of instrumental
versions of the Transformers musical theme have been wrongfully
divided to benefit Joe Bacal, the lyricist, (See Exhibit A.).
The foregoing compositions were solely musical cues written
based upon music composed by Bryant with no involvement from
Bacal.

MONAGHAN, MONAGHAN
LANE & MARCHISO
ATTORNEYS
20 EAST SALEM STREET
HACKENSACK, NJ 07601

6

18. Plaintiff Bryant and Kinder, while in business together (Kinder and Bryant, Ltd., 1983-1989) had a policy by which all income to either of them that was generated from music written by either of them would be divided equally between them. Plaintiff Bryant at all times accounted to Kinder, and paid him one half of her royalties in good faith. It was only after receiving a copy of Bryant's catalog from BMI in or about May 2000 that Bryant learned that Kinder had always listed himself as the other 50% writer of the Transformers. Unbeknownst to her, while she was actively in partnership with Kinder, it appears that for a significant period of time Kinder was collecting through his own BMI catalog 50% of The Transformers writer's share, while also demanding one half of Bryant's share. Kinder had been collecting, until 1994 re-registrations began, a total of 75% of the writer's share of the music. This is false and fraudulent, as Kinder had no participation in the music.

19. <u>Jem</u>:  Bryant composed the music and Bacal the lyrics for the theme Jem (another Hasbro product)as set forth in Exhibit A.  As indicated in Exhibit A, the "Jem instrumental theme" title registered to Bryant was re-registered in or about April of 1996 reducing, what had previously been a one hundred

MONAGHAN, MONAGHAN
LANG & MARCHESIO
ATTORNEYS
35 EAST SALEM STREET
HACKENSACK, NJ 07601

7

percent interest in Bryant's favor on the Jem music and derivatives thereof, to fifty percent, thereby granting fifty percent of that interest to defendant Bacal. Bryant was the sole composer of the music and Bacal had no contribution thereto.

20.    Plaintiff only recently discovered in May of 2000 that the G.I. Joe and My Little Pony compositions were re-registered in 1993 in BMI's catalogue without any explanation or basis. According to information only recently revealed by BMI after tooth-pulling efforts by plaintiff and her counsel, the lucrative opening and closing G.I. Joe themes (the Main Themes) are missing entirely from Bryant's catalogue.

21.    Bryant attempted diligently to determine the background facts concerning this re-registration, but BMI failed and refused to provide relevant information until in or about May of 2000.

22.    Furthermore, since BMI pays its members approximately one to one and a half years after the airing of the music in question, plaintiff had no way of knowing that the significant revenue generating G.I. Joe Theme had been removed from her catalogue when the Bryant-Kinder litigation was settled in September of 1994.

MONAGHAN, MONAGHAN
LAMB & HARCHIRO
ATTORNEYS
38 EAST SALEM STREET
HACKENSACK, NJ 07601

8

## FRAUDULENT RE-REGISTRATION OF BRYANT'S COMPOSITIONS

23.    As will be set forth hereafter, at various times beginning at a point unknown to plaintiff, defendant Sunbow without the approval or knowledge of Bryant, transferred and altered registrations at BMI with respect to the foregoing compositions thereby depriving plaintiff of royalties to which she is entitled.

31.    Bryant has no way of knowing the extent to which the royalties and payments otherwise due her have been wrongly paid to other persons, including defendants Kinder, Bacal and others.

32.    The foregoing reflects a pattern of fraud and self-dealing on the part of defendant Sunbow.

34.    Absent a full and accurate accounting from defendant Sunbow of the monies generated by the various compositions and received and paid to the Kinder, Bacal, GBI or John and Jane Does, plaintiff Bryant has no way of knowing the extent to which she has been damaged.    Plaintiff estimates, however, that said damage is in excess of five hundred thousand dollars.

MONAGHAN, MONAGHAN
LANG & MARCHISIO
ATTORNEYS
☐☐ EAST SALON STREET
HACKENSACK, N.J 07601

9

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST SUNBOW

### (CONVERSION)

1.  Plaintiff repeats and re-alleges each and every allegation hereinbefore alleged as though fully set forth at length hereat.

2.  Upon information and belief, defendant Sunbow Productions, has converted monies and royalties otherwise due plaintiff.

3.  Absent the accounting hereinafter demanded, plaintiff has no way of knowing the full extent to which he has been damaged.

4.  As a result of the foregoing, plaintiff has been damaged in an amount not less than $500,000.00 and demands compensatory and punitive damages and attorneys' fees.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS

### (ACCOUNTING)

1.  Plaintiff repeats and re-alleges each and every allegation hereinbefore alleged as though fully set forth at length hereat.

2.  As a result of the wrongful conduct hereinbefore alleged including, but not limited to, the fraudulent re-registrations of plaintiff's titles, plaintiff has been

MONAGHAN, MONAGHAN
LAMB & HARCHISO
ATTORNEYS
70 EAST SALEM STREET
HACKENSACK NJ 07601

10

deprived of monies and royalties otherwise due her for her
musical compositions.

3.  Without a full and true accounting by Sunbow as to the
    monies and royalties paid with respect to the compositions
    identified by plaintiff herein (and as set forth in Exhibit
    A), plaintiff is without knowledge of the amounts due her
    and cannot obtain such knowledge or ascertain said amounts.

4.  Plaintiff is without adequate remedy at law and demands a
    full and true accounting from all defendants as to all
    dealings with, and transactions concerning, plaintiff's
    titles and monies collected and disbursed with respect
    thereto.

5.  Plaintiff is entitled to a full and accurate accounting by
    all defendants, and upon such accounting, a judgment for
    all amounts of royalties and payments due plaintiff as
    against all defendants.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANTS SUNBOW

### (PRIMA FACIE TORT)

1.  Plaintiff repeats and realleges each and every allegation
    hereinbefore alleged as though fully set forth at length
    hereto.

11

2.  As set forth herein, the defendant Sunbow, by its wrongful conduct and fraudulent re-registrations, is greatly hindering and damaging plaintiff in the conduct of her business.

3.  The wrongful acts and representations of the defendant, as hereinbefore set forth, have seriously impaired the vested property rights of the plaintiff, and the continuation of such wrongful acts is calculated to cause grave and irreparable harm to the plaintiff.

4.  The said acts of the defendant are fraudulent in purpose and design, are malicious and made with intent to deceive, and constitute deceptions to plaintiff, to the public at large, to the advertising community and jingle industry, and others with whom plaintiff does business, or relies upon in connection with her business.

5.  The aforesaid acts by the defendant were made with the intent to maliciously injure the plaintiff.

6.  By reason of the foregoing, plaintiff has been damaged in an amount, which can only be determined by an accounting , and demands compensatory and punitive damages and attorneys' fees.

7.  As a result of the foregoing, plaintiff is entitled to

MONASHAN MONAGHAN
LANG & MARCHESO
ATTORNEYS
25 EAST GALEN STREET
HACKENSACK, NJ 07601

12

compensatory damages, and such other relief as to the Court seems proper.

WHEREFORE, plaintiff demands judgment as set forth in the respective causes of action herein together with such other further and different relief as to the Court seems just and proper including, but not limited to, punitive damages, attorneys' fees, and the costs and disbursements incident to this action.

                    MONAGHAN, MONAGHAN, LAMB & MARCHISIO
                    Attorneys for Plaintiff

                    By: _Robert Baratta_
                        ROBERT M. BARATTA

                    150 West 55th Street, Suite 1G
                    New York, NY   10019
                    Tel. (212) 541-6980
                    Fax. (212) 541-6994

                              and

                    25 East Salem Street
                    Hackensack, NJ   07601
                    Tel. (201) 488-1201
                    Fax. (201) 487-8030

March 25, 2002

13266

                              13

## CERTIFICATION NYCRR 130-1.1-A

I hereby affirm under penalties of perjury that I am an attorney admitted to the Courts of the State of New York and that I certify that all papers submitted in support of the within are non-frivolous, upon diligent inquiry under the circumstances, as defined in subsection C of section 130.1.1

14

## VERIFICATION

I, Robert M. Baratta, Esq., am an attorney duly admitted to practice law before the courts of the State of New York, and say that:

1.  I am the attorney of record, or of counsel with the attorney of record, for plaintiff herein.

2.  I have read the annexed Complaint, know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged upon information and belief, and as to those matters I believe them to be true. My belief, as to those matters therein not stated upon knowledge, is based upon information supplied by plaintiff and the books and records and information supplied by plaintiff and maintained in the office files of the undersigned for the prosecution of the within action.

3.  The reason I make this affirmation instead of plaintiff is that plaintiff does not reside in the county where deponent has his office.

I AFFIRM that the foregoing statements are true under penalties of perjury.

DATED:     March 21, 2002
           Hackensack, N.J.

                                    _____
                                    ROBERT M. BARATTA

MONAGHAN, MONAGHAN
LAMO & MARCHISIO
ATTORNEYS
373 EAST SALEM STREET
HACKENSACK NJ 07601

15

1           (EXPEDITED COPY)
2        Continuing Bench Trial
              (Day 5)
3

                          December 6, 2006
4                         9:30 AM
                            40 Gleneida Avenue
5                         Putnam County Office
                           Building
6                         Carmel, New York
7

    BEFORE:   HON. ANDREW P. O'ROURKE
8             Presiding Supreme Court Justice
9

    SUPREME COURT OF THE STATE OF NEW YORK
10  COUNTY OF ROCKLAND
                                        X
11  _____

    ANNE BRYANT
12                          Plaintiff
13  - versus -                      Index No.
                                    5192/00
14  BROADCAST MUSIC, INC., (a/k/a "BMI"),
    FORD KINDER, KINDER & CO., LTD., VADIVOX, INC.,
15  JULES M. "JOE" BACAL; GRIFFIN BACAL, INC.,
    STARWILD MUSIC BMI, WILDSTAR MUSIC ASCAP,
16  SUNBOW PRODUCTIONS, INC.,
                          Defendants
17  _____X
18  ANNE BRYANT
                          Plaintiff
19                            Index No.
    - versus -                  2821/02
20
21  SUNBOW PRODUCTIONS, INC.,
                          Defendant
22
23  _____
                  Laurie Hardisty, RMR
24              Official Court Reporter
          44 Gleneida Avenue, Carmel, NY 10512
25              (845) 225-3641 Ext. 294

1    B-E-R-M-A-N, 5142 Calvin Avenue, Tarzana, California.

2    MS. PHARES:  Your Honor, just for the record,

3    could we please have an explanation of what cause of

4    action we are proceeding on this morning?

5    THE COURT:  I'm going to take the testimony.

6    As I said yesterday, I limited this witness to certain

7    things that I would take testimony from him on, and I

8    think that's what we're going on it.

9    Let's go ahead.

10   MS. PHARES:  And, for the record, I object to

11   our proceeding with this witness until there has been

12   a decision on our motion to dismiss.

13   THE COURT:  Overruled.  Exception granted.

14   Go ahead.

15   MR. MONAGHAN:  Thank you, Your Honor.

16   DIRECT EXAMINATION BY MR. MONAGHAN:

17   Q.   Mr. Berman, you have given your full name and address

18        to the Court Reporter?

19   A.   Yes.

20   Q.   Okay.  And what is your occupation, sir?

21   A.   Essentially I'm retired, but I do do a fair amount of

22        expert witnessing in music-related matters.

23   Q.   Okay.  And are you also an attorney?

24   A.   I'm currently an inactive member of the California

25        Bar.

```
 1              animated side, the Walt Disney Company demands

 2              complete and total ownership of a hundred percent of

 3              the copyright on any composition that is written for

 4              and included in their animated features.  And while I

 5              was there, we did Tarzan, and, you know ...  I can't

 6              remember all the features we did.  So, yeah, I was

 7              involved in those issues.

 8    Q.        Now, you mentioned throughout your answers references

 9              to movies.

10                   Have you ever done any music publishing work

11              in connection with the commissioning of work for

12              television?

13    A.        Yes, but much less.

14    Q.        When did you do it?

15    A.        I know I did some at Mitchell Silberberg.

16    Q.        You mean in the early in the 70s?

17    A.        Yeah, I left in 78, yes.

18    Q.        '78 or '76?  Maybe I misread this.

19    A.        I left Mitchell, Silberberg in '76; you're right.

20    Q.        And any other occasion which you have done the

21              commissioning of music for television in the last 30

22              years?

23    A.        Yes, yes, but I can't recall specifically right now.

24    Q.        Is that because there's so little of it?

25    A.        There wasn't that much television work.
```

1          -those things in 1978, and '85 for that matter?

2    A.    I don't know.

3    Q.    You don't know.  All right.

4    A.    I don't know what you were calling them.

5    Q.    And are you aware that in connection with the

6          negotiation of this Jem contract, that there was a

7          negotiation involving videocassettes, and that video-

8          cassettes were denied by Sunbow?

9                MR. MONAGHAN:  Objection.  He would not have

10         any knowledge, nor can he be asked about what the

11         negotiations were.

12               MS. PHARES:  I asked him --

13               THE COURT:  Well, this is Cross-examination.

14         He's being asked if he knows anything about it.  He

15         can answer it either way.

16   A.    No, I have no information on that.

17   Q.    So, you're not aware that -- that Ms. Bryant's lawyer

18         asked for payments for videocassettes and that they

19         were denied?

20   A.    I'm not aware of that.

21   Q.    And I have another question for you.  If you would --

22         since we don't have the front page of this agreement,

23         if you would turn to the front page of this contract,

24         and in Paragraph 1, you'll see that there is a

25         reference to the -- the writing, preparing, and

1   writer.

2   Q.   Have you ever, in your many, many, many years of being

3        in the music business, submitted a cue sheet and had

4        BMI come to you and say, wait a minute, this is a new

5        cue sheet for a show and, therefore, we're rejecting

6        your cue sheet?

7   A.   No.

8   Q.   Has that ever happened to you?

9   A.   Not to me, no.

10            MS. SAFFER:  Okay.  Thank you.

11            No further questions.

12            THE COURT:  Ms. Phares?

13   RE-RECROSS EXAMINATION BY MR. BERMAN:

14   Q.   Mr. Berman, I want to talk about this -- this

15        provision of --

16            MR. MONAGHAN:  Your Honor said any questions

17        generated by the questions --

18            MS. PHARES:  Yes, I do know.

19            MR. MONAGHAN:  -- that Your Honor asked.

20            THE COURT:  Right.

21            MS. PHARES:  That he asked, and that's

22        exactly what I'm asking about.

23   Q.   I'm asking about this audit and notice right of the --

24        of the composer.  Specifically where it says that the

25        Contractor -- which under this agreement was Kinder

1   whenever it's received by the -- by the artist, the

2   composer; correct?

3  A.  Yes.  I don't know if that negates a breach, but in

4   general I agree with that.

5  Q.  All right.  And then -- and then what is the

6   obligation exactly of the -- of the composer at that

7   point?

8   MR. MONAGHAN:  The contract speaks for

9   itself, Judge.

10   THE COURT:  No, I'll allow it.

11  A.  The obligation is nothing.  The right of the

12   contractor is to object within a year of receiving the

13   statement.

14  Q.  And, in order to help them do that, they can even

15   demand the right to inspect the books of the company;

16   is that correct?

17  A.  That have -- that is a fairly typical audit provision,

18   yes, they have the right to audit the books.

19  Q.  And they could do that if they had a problem

20   interpreting or they questioned something on the

21   statement, isn't that correct?

22  A.  Yes, they could.

23  Q.  And that is -- and if they don't do that, however,

24   then that claim is barred; is that correct?

25  A.  Well, you know, that's ...  What's interesting about

Exhibit G

# DECISION AND ORDER

To commence the statutory time
period of appeals as of right
(CPLR 5513[a]), you are advised
to serve a copy of this order,
with notice of entry, upon all
parties.

▓ FILED AND ENTERED▓
▓ ON_____2002▓
▓    ROCKLAND        ▓
▓   COUNTY CLERK     ▓

SUPREME COURT OF THE STATE OF NEW YORK
IAS PART, ROCKLAND COUNTY

FILED SS

DEC - 3 2002   9

ROCKLAND COUNTY
CLERK'S OFFICE

Present: HON. ANDREW P. O'ROURKE
        Supreme Court Justice

------------------------------------------------X
ANNE BRYANT,

                         Plaintiff,

          -against-                        Index No. 2821/02
                                           Motion Date: 11/22/02

SUNBOW PRODUCTIONS, INC.

                         Defendant.
------------------------------------------------X

          The following papers numbered 1 to 11 were read on this motion
by defendant for an Order dismissing this action pursuant to CPLR 3211,
subdivision (a), paragraphs 1, 5 and 7, etc., and on this cross-motion
for an Order pursuant to CPLR 3025, subdivision (b) granting plaintiff
the right to serve an amended complaint.

Notice of Motion  - Affirmation (Zalesin) -   Exhs. (A - D) ..... 1 - 3
Notice of Cross-Motion - Affirmation (Monaghan) - Exh. ......... 5 - 7
Amended Complaint - Affidavit (Bryant) - Exhs. (A-G) ............ 8 - 10
Answering Affidavit (Zalesin) ..................................... 11
Memoranda of Law .................................................. 4

          Upon the foregoing papers it is Ordered that these motions are

disposed of as follows:

          The pertinent facts have been set forth by this Court in prior

Decisions and Orders in a related action commenced under Rockland County

Index No. 5192/00 and thus will not be restated herein except to the

extent necessary for an understanding of the Court's analysis with

respect to the instant motions.  The crux of the instant complaint is

                          93 4749

that defendant Snow Productions, Inc. (Snow), which plaintiff alleges was at one time owned by Griffin Bacal, Inc.[1], an agency that produced commercials on behalf of its clients and to which plaintiff and her then partner Ford Kinder had submitted their collaborative musical and lyrical advertising jingles, wrongfully had effected re-registrations of plaintiff's musical compositions in ways designed to financially benefit Kinder and Bacal.

Defendant is now moving to dismiss the complaint, which pleads claims for conversion, accounting and prima facie tort and seeks compensatory and punitive damages. Defendant claims that the causes of action pleading conversion and prima facie tort both are subject to a three year Statute of Limitations, thus rendering plaintiff's allegations of wrongful re-registration of her musical compositions by defendant in 1988, 1994, 1996 and 1998 all untimely. With respect to plaintiff's claim for an accounting to which a six year statute of limitations applies, defendant maintains that any claims regarding re-registrations which are alleged to have occurred prior to 1996 are also all time-barred.

Additionally, defendant contends that documentary evidence exists in the form of plaintiff's interrogatory responses which demonstrate that plaintiff, by examination of statements from Broadcast Music Inc. (BMI), had been aware of certain discrepancies in the credit

---

[1]Plaintiff alleges that Griffin Bacall, Inc. was owned and operated by Jules "Joe" Bacall.

-2-

given to her for her compositions since 1992, that reasonable diligence at that time would have uncovered the alleged unauthorized registrations about which plaintiff complains herein and that her ten-year delay in asserting her claims necessarily warrants dismissal of all of the claims as time-barred.

As a final basis for dismissal, defendant submits that plaintiff has failed to state any viable cause of action. Specifically, defendant argues that plaintiff has failed to allege any factual basis of defendant's alleged wrongdoing and that her conversion claim fails because, other than stating that defendant was at one time owned by GBI, there are no allegations supporting any claim that defendant had exercised any control over plaintiff's BMI registrations or royalty income. According to defendant, plaintiff merely alleges in conclusory fashion that Sunbow had "caused" and "effected" or "transferred and altered" plaintiff's composition registrations without anywhere specifying or identifying the means by which Sunbow had been able to cause the alleged registration changes.

The complaint also fails to state a cause of action for an accounting, defendant argues, because not only does the complaint fail to allege as a necessary element the existence of a fiduciary relationship between the parties, but it fails to even allege facts demonstrating that any relationship had existed between them.

Nor does the complaint satisfy the pleading requirements to establish a viable claim for prima facie tort, according to defendant.

-3-

Defendant submits that not only does plaintiff assert facts tending to plead a cause of action for fraud, the existence of such a traditional tort rendering a cause of action for prima facie tort improper, but plaintiff cannot plead the necessary element of "disinterested malevolence" because if defendant had effected the registrations as alleged its motive for doing so would have been self-interest and pecuniary profit. Also lacking from plaintiff's prima facie tort claim is any allegation of special damages, which defendant argues is a necessary element of such cause of action which must be pleaded with specificity.

Alternatively, in the event the Court were inclined to deny defendant's dismissal motion, defendant requests that plaintiff be ordered pursuant to CPLR 3024, subdivision (a) to furnish a more definite statement so as to remedy the allegedly vague and ambiguous complaint.

In response to defendant's dismissal motion, plaintiff is cross-moving for an Order granting her permission to serve an amended complaint deleting the previously asserted causes of action and instead pleading causes of action for constructive trust and unjust enrichment based upon this Court's analysis as set forth in its Decision and Order dated September 26, 2002, in the action under Index No. 5192/00, finding that such claims are viable as against defendant Bacal. According to plaintiff, defendant Sunbow and Bacal "have a community, if not identity, of interests and the issues are similar." Bacal had been the

chairman and director of Griffin-Bacal, Inc. and had co-owned defendant Sunbow with Tom Griffin. Sunbow in turn had owned Wildstar Music and Starwild Music, both of which evidentially are shown in BMI's catalog to have publishing rights to two of plaintiff's works, JEM and Transformers.[2] Additionally, plaintiff claims that the evidence establishes that Sunbow had been marketing videos using plaintiff's compositions, including the JEM, G.I. Joe and Transformers compositions, and that Bacal's son, Jay Bacal, is listed as the director on the Transformer video. It is plaintiff's contention that "to the extent that Bacal may have been unjustly enriched and had obligations to plaintiff, those issues do not cease because Bacal transferred rights to Sunbow and Sony. Sunbow took any such rights with notice of plaintiff's interests." Plaintiff submits that the proposed amended claims are not only meritorious but that defendant cannot demonstrate any prejudice since the action is in its infancy.

Addressing defendant's statute of limitations argument, plaintiff contends that the first time that she had information concerning the claims at bar was in 2000 when she had received a copy of her catalog from BMI and that the commencement of this suit in 2002 is timely. Moreover, plaintiff argues that there is a continuing wrong against her being committed by defendant and others as they continue to receive payments for her compositions.

---

[2]Sunbow had been sold to SONY in 1998.

972 PAGE 4753

Addressing first plaintiff's cross-motion to serve an amended complaint, same is granted as unopposed and without prejudice to defendant's rights to make whatever motion it deems appropriate with respect thereto. The amended complaint in the form annexed to the cross-moving papers is deemed served as of the date of entry of this Decision and Order. Defendant shall have the statutory time in which to answer.

Defendant's motion to dismiss is denied as moot because the amended complaint omits those improper claims for which plaintiff had sought dismissal.

Finally, the parties shall appear before the undersigned at 9:30 a.m. on January 30, 2003 for a preliminary conference. This date may not be adjourned without the Court's permission. Any party's failure to appear may result in the imposition of costs and/or sanctions.

Dated: December 2, 2001
      New City, New York

ENTERED
A.M.
DEC - 3 2002
P.M.
Edward Dorman
County Clerk Rockland

_____
ANDREW P. O'ROURKE
J.S.C.

BOOK 9 3 PAGE 4 7 5 4

Patterson, Belknap, Webb & Tyler LLP
Attys. For Deft.
1133 Avenue of the Americas
New York, New York 10036-6710

Monaghan, Monaghan, Lambs & Marchisco
Attys. For Deft.
150 West 55th Street, Ste. IG
New York, New York 10022

Exhibit H

2 Bryant v. Sunbow jury trial continued.  Bryant v. Sunbow.

3 Jury trial continued.  July 9th 2004.  Judge O'Rourke.

4     MR. MONAGHAN:

5     MS. PHARES:

6     MR. TANNENBAUM:    (Convened:  Ten a.m.)

7     (Convened 1045 a.m.)

8     THE COURT:  Good morning, ladies and

9    gentlemen.  I understand that one party is leaving

10    us.

11     MR. MONAGHAN:  Yes your Honor.  That would

12    be Defendant Jules M. Joe Bacal.

13   ,

14     a Witness, having been previously

15     duly sworn by the     , resumed the

16     witness stand and testified further

17       . as follows:

18    . THE COURT:  Anything you want to put on the

19    record.

20     MR. MONAGHAN:  Well judge just report that

21    there has been a settlement with that Defendant.

22    This will be followed with formal stipulation of

23    dismissal.

24     MR. TANNENBAUM:  Right we'll draft

25    settlement papers we'll execute them and then

DEFENDANT'S EXHIBIT

2       Q.   When you were working for Sunbow, that is

3   when Kinder & Bryant were working for Sunbow, is it your

4   understanding that the publisher's share went to Sunbow.

5       A.   Publisher's share went to Sunbow's

6   publishing companies.

7       Q.   By that you mean Starwide or Wildstar?

8       A.   Yes.

9       Q.   And you don't have a dispute with the

10   propriety of that money being paid to the publishers isn't

11   that correct?

12       A.   Yeah that's correct we gave them the

13   publishing.

14       Q.   All right, now, if you turn to the writer's

15   share -- turn to the writer's share of this, you are not

16   saying are you that BMI paid any part of the writer's

17   share to Sunbow, are you or to its publishing companies?

18       A.   No.

19       Q.   Okay, so you are okay with this.  And

20   nothing was paid to Sunbow?

21       A.   Nothing that I know of.

22       MR. MONAGHAN:  I just want to make sure we

23       are talking about public performance royalties.

24       MS. PHARES:  Public performance royalties is

25       all that is at issue here.

Exhibit I

# DECISION AND ORDER

To commence the statutory
period of appeals as of right
(CPLR 5513[a]), you are advised
to serve a copy of this order,
with notice of entry, upon all
parties.

SUPREME COURT OF THE STATE OF NEW YORK
IAS PART, ROCKLAND COUNTY

Present:   HON. ANDREW P. O'ROURKE
               Supreme Court Justice

-------------------------------------------X
ANNE BRYANT,

                                    Plaintiff,

           -against-
                                               Index No. 5192/00
                                               Motion Date: 12/5/03
BROADCAST MUSIC INC., (a/k/a "BMI"),
CLIFFORD A. "FORD" KINDER, KINDER &
CO., LTD., VADIVOX, LTD., JULES M.
"JOE" BACAL, GRIFFIN BACAL, INC.,
STARWILD MUSIC BMI, WILDSTAR MUSIC
ASCAP, SUNBOW PRODUCTIONS, INC. AND
JOHN AND JANE DOES 1 - 10,

                                    Defendants.
-------------------------------------------X
ANNE BRYANT,

                                               Index No. 2821/02

                                    Plaintiff,

           -against-

SUNBOW PRODUCTIONS, INC.,

                                    Defendant.
-------------------------------------------X

         The following papers numbered 1 to 26 were read on this
motion by defendant Jules M. Bacal for an Order granting summary
judgment dismissing this action, and on this motion by defendant
Sunbow Productions for an Order granting summary judgment
dismissing this action, and on this cross-motion by plaintiff for

-1-

an Order granting her partial summary judgment.

Papers Numbered

Notice of Motion - Affidavits (Tannenbaum, Bacal) -
  Exhs. (B-H) ........................................... 1 - 4
Notice of Motion - Affidavits (Weitzman, Smith) -
  Exhs. (1-2) - Affirmation (Kitson) - Exhs. (A-K) ........ 6 - 11
Notice of Cross-Motion -Affidavit (Bryant) - Exhs. (A-U) -
  Affirmation (Monaghan) - Exhs. (A-G) .................... 13 - 17
Answering/Replying Affirmation (Tannenbaum) - Exhs. (A-B). 19 - 20
Answering/Replying Affidavit (Rigby) - Exhs. (A-F) -
  Affirmation (Phares) - Exhs. A-J) ...................... 22 - 25
Memoranda of Law ......................................... 5,12,18
                                                           21,26

Upon the foregoing papers, it is Ordered and adjudged
that these motions are disposed of as follows:

The relevant background facts of these actions previously
have been set forth in a number of prior Court Decisions and
Orders. Basically, plaintiff asserts a loss of royalty income over
recent years from a number of her created musical arrangements,
compositions and jingles, allegedly as the result of wrongful re-
registrations of her work by the named defendants, either
separately or conspiratorially.

Defendant Broadcast Music, Inc. ("BMI") is a performing
rights society, comprised of publisher members and writer members,
which licenses to third parties rights to the musical works of its
members. BMI registers its members' works in catalogs, and
monitors and collects royalty payments due to its writers and
publishers and distributes same to them pursuant to a formula which

-2-

recognizes the respective parties' contribution to the particular compositions.

Defendant Sunbow Production Company ("Sunbow") is a television production company which, from 1980 until approximately 1998, had been owned by defendant Joe Bacal and Tom Griffen. Sunbow had registered the musical compositions used in its television productions with BMI so that the various writers and publishers of those compositions could be paid the royalties to which they are entitled. Payment of royalties is effected through the use of cue sheets which list the television producer for the particular episode, the air date for the episode, the title given to each musical compositions used in the episode, the writer(s) and publisher(s) of each individual composition used in the episode and their respective shares of the public performance royalties for each composition used. The cue sheets thereafter would be submitted to BMI by music administrators.

Griffen and defendant Bacal at this time also had been partners in an advertising agency, Griffen Bacal, Inc., which was responsible for writing musical compositions for commercials. At a certain time, plaintiff had been employed by Griffen Bacal, Inc.

Following extensive motion practice, the single cause of action pleaded against defendant Bacal in the Amended Complaint under Index No. 5192/00 and against Sunbow in the Amended Complaint

-3-

under Index No. 2821/02 is for unjust enrichment and imposition of a constructive trust and accounting. Both defendants are now separately moving for summary judgment dismissing this sole remaining claim. Their respective arguments are similar to the extent that they both argue that plaintiff's allegations with respect to the 48 specific works that plaintiff has identified as being here in issue are either time-barred pursuant to the applicable six-year statute of limitations, or must be dismissed based upon the documentary proof which establishes that, contrary to plaintiff's theory, there had not been any re-registration of the work since the time that BMI first accepted the registration thereof in the 1980's, or must be dismissed based upon the documentary proof which establishes that plaintiff is mistaken in her claims because the cue sheets establish that she in fact is receiving the full percentage shares for which she is entitled, and therefore neither defendant could not have been unjustly enriched, or must be dismissed based upon the documentary proof which establishes that for most of plaintiff's registered works Bacal is not listed as receiving a percentage and therefore could not have been unjustly enriched, or must be dismissed because plaintiff lacks standing to assert claims of injury to parties other than herself.

In an affidavit submitted by Sunbow in support of its

-4-

motion for summary judgment, Sunbow's former production assistant and later vice president of production, Carole Weitzman, avers that she was responsible for maintaining copies of the BMI submitted cue sheets and "to the best of [her] knowledge, [she has] never submitted a cue sheet of any other type of form to BMI that sought to change the amount of royalties that Plaintiff would receive for her compositions." Additionally, she has "no knowledge of anyone else at Sunbow or on Sunbow's behalf ever submitting a cue sheet or other form to BMI seeking to reduce the amount of royalties the Plaintiff would receive for any of her compositions."

Bacal also has submitted in support of his motion an affidavit from Alison Smith, presently Senior Vice President of BMI, who has worked at BMI since 1985. Ms. Smith oversees the process by which BMI pays out royalties to its affiliated songwriters, composers and music publishers, and she investigates questions of problems with respect to same. According to Ms. Smith, unless BMI is notified in writing otherwise as to a different distribution, BMI allocates royalties collected to its affiliates by giving 100 percent of the writers' share to the writers of the composition and 100 percent of the publisher's share to the publishers, so that the total performance royalties available for a particular composition equal 200 percent. If there are multiple writers for a single composition, usually the cue

sheet would specify how much goes to each; if the cue sheet does not indicate any specific distribution, BMI would equally divide the royalty.

' A catalog is published by BMI which lists all compositions that are registered, including those by the use of cue sheets. At times, Ms. Smith admits that mistakes occur in the catalog to the extent that there may be multiple entries for the same composition used on the same day. Her examination of plaintiff's catalog reveals that mistakes have occurred in plaintiff's catalog whereby multiple listings inadvertently appear for a single composition.

Ms. Smith avers that she had met with plaintiff and her counsel in October, 2000, at which time they had reviewed "hundreds of cue sheets that had been submitted to BMI by or on behalf of Sunbow in the 1980's for television episodes in which her compositions had been used." Plaintiff thereafter had been sent copies of the cue sheets, along with a copy of her catalog. According to Ms. Smith, a comparison of the writer's royalty shares listed for plaintiff on these cue sheets with the writer's royalty shares listed for BMI's then-current BMI catalog "demonstrated to plaintiff that there had been no change to her share of the writer's royalty for the compositions in her catalog." While there were entry dates listed in June, 1993, for compositions in

plaintiff's catalog which plaintiff asserts evidence that her writer's shares were reduced for those compositions on those dates, Ms. Smith explains BMI had changed computer systems on that date, which caused an entry "change" on that date, but that "the writer's royalties for her compositions did not change on this date."

Furthermore, Ms. Smith avers that BMI has a process for changing the writer's share on a composition which is already listed with BMI and that is to request documentation or confirmation from all of the affected persons before changing its records to reflect any new change as to writer's percentages. As to plaintiff's works which are here in issue, Ms. Smith states that BMI has not located any cue sheets or registration forms submitted to it after the original cue sheets or registration forms for those compositions which purport to make any writer's share changes.

Both moving defendants have submitted charts which list each of the compositions which plaintiff has identified as being in issue in these cases, along with a statement of plaintiff's allegation as to wrongful conduct involving the identified composition and a synopsis of why, according to defendants, summary judgment dismissing any claim with respect to that identified composition is warranted.

Plaintiff vigorously opposes both defendants' motions and has attempted to cross-move for partial summary judgment. The

Court, however, will not accept plaintiff's untimely motion for substantive consideration. It had been made clear to all parties that summary judgment motions, in this long protracted action, were to have been served by September 30, 2003. Plaintiff not only had failed to request prior permission from the Court for the making of her untimely motion for summary judgment, but she has offered herein no explanation or excuse for her two month delay in making her motion. Her papers shall therefore be considered only as opposition to defendants' motions.

Essentially, plaintiff maintains that defendants have attempted to portray the claims and issues presented in an overly simplified matter where instead complex factual issues abound. Moreover, plaintiff submits that defendants' entire presentations exclusively address the issue of plaintiff's entitlement to performance royalties and that they have failed to address plaintiff's further claims that she is entitled to mechanical royalties and synchronization, as well.[1] According to plaintiff, it is inaccurate to view this matter, as defendants have done, as involving 48 of plaintiff's compositions where instead it is more

---

[1]Mechanical royalties are royalties paid on sales of music reproduced and sold on records, cassettes and compact discs, as distinguished from performance royalties which are based upon public performances of songs on radio, television and the like. Synchronization licensing fees are paid in exchange for a license to use a copyrighted composition in "timed-relation" or synchronization with an audiovisual work.

accurate to view the matter as involving 7 compositions - one for
Transformers, GI Joe, JEM, My Little Pony, Visionaries, Inhumanoids
and Robotics, all with subsequent numerous derivative uses, re-uses
and arrangements.

Moreover, it is entirely misleading, plaintiff contends,
for defendants to simply compare the cue sheets submitted to BMI by
Sunbow with BMI's catalog to establish, as they contend, that no
reduction in plaintiff's royalties has occurred. Plaintiff notes
that BMI creates its catalog based upon submissions from production
companies, i.e., Sunbow, and here the cue sheets submitted by
Sunbow were wrong and not reflective of the agreements she had with
Bacal and Griffen Bacal Inc.

Plaintiff has submitted evidence which she claims
demonstrates that defendants had filed BMI Clearance Forms that
diluted the percentage of royalties attributed to plaintiff for her
compositions and that by filing such defendants simply took
plaintiff's composition, gave it a new name, and thereupon
wrongfully took claim to the performance royalties. Other times,
plaintiff maintains, the evidence establishes that defendants had
re-registered plaintiff's compositions, diluting or vitiating her
royalty allocation, through the use of cue sheets, which cue sheets
plaintiff argues she had no involvement with and are properly only
used to register music when the composition is composed

specifically for a television production, which is not her situation; all of plaintiff's music in issue having been composed as jingles for television commercials. A comparison of plaintiff's early royalty statements with later statements or BMI catalog entries for re-uses of plaintiff's compositions appears to support plaintiff's claim that her royalties have been diminished. By altering royalty allocations on cue sheets, plaintiff submits that defendant Sunbow had effected changes in the original registration of her works and saved on production costs by not having to pay what are called creative fees to those persons who subsequently used plaintiff's compositions in a re-arrangement. Plaintiff claims that she never had given approval to royalty changes for any of her compositions and that she had never been notified by defendants that others would be receiving a percentage of royalties originally allocated to plaintiff.

With respect to her additional claims seeking mechanical and synchronization fees, plaintiff contends that the evidence demonstrates that Sunbow has been paid $2,471,868.61 in mechanical royalties and/or synchronization licenses from Rhino Entertainment for video and DVD sales during the period of October, 1999 through September, 2002, that plaintiff is the owner of the compositions prominently used in these videos and DVDs, that she has never been paid any fees for the use of her compositions and that she

therefore is entitled to a constructive trust on the sum paid by Rhino to Sunbow.

Plaintiff further insists that, contrary to defendants' contentions, she is entitled to pursue her claims regarding re-registrations of three Visionaries works attributed to Ford Kinder because of her 1994 legal settlement with Kinder in which it had been contractually agreed that she would be entitled to his royalty shares with respect to such works. Accordingly, she argues here that the three compositions in which Kinder's royalty shares were improperly reduced consequently diminishes the amount of royalties to which plaintiff is entitled.

Finally, it is plaintiff's position that defendants should be equitably estopped from asserting a defense based upon the statute of limitations because, as previously found by this Court, there was a confidential relationship between plaintiff and Bacal, wherein Bacal had a duty to disclose to plaintiff wrongful conduct which diminished her royalty rights and that his failure to have done so, where it "is virtually impossible for Bacal not to have known that he was given a new or larger share of certain compositions, and that this would negatively affect Bryant's royalties," estops him from asserting that plaintiff's claims are time-barred, particularly since plaintiff commenced action within a reasonable time after first learning that she had a cause of

action.

Similarly, since the re-registrations of plaintiff's works had been effected through cue sheets submitted by Sunbow, Bacal's production company, and Sunbow had carte blanche with respect to musical compositions that had been created specifically for Griffen Bacal Productions, also owned by Bacal, plaintiff claims that "Bacal had treated Sunbow and GBI as one and the same entity, which he clearly controlled, dominated, and operated for his personal gain" and the fiction of Sunbow's corporate entity should be disregarded, so that Sunbow to should be equitably estopped from asserting a statute of limitations defense.

By way of their replies, defendants make several arguments. Firstly, defendants contend that plaintiff has altered her theory of liability from initially claiming that she had written compositions for Sunbow, a TV and movie production company, to instead arguing that the seven musical jingles that she had written were for Griffen Bacal Inc, an advertising company, and that her works here in issue are derivative works of those seven jingles, and that when the musical compositions for the TV series were registered with BMI there had been an unauthorized change in the percentage of performance royalties.

They further contend that plaintiff has failed to come forward with any proof supporting her bald assertion that her

jingles and compositions are the derivative source of the compositions for which she claims she is entitled to share in royalties.

Further, it appears that defendants have hit upon what they argue is a major flaw in plaintiff's theory, that being that plaintiff, contrary to her position, is not the copyright owner of her jingle works, since same were created for hire; therefore, they submit that she is not entitled to any apportion of royalty interests for the claimed derivative works.

Defendant Bacal also argues that plaintiff is mistaken in her claim that certain works have been excluded or removed from her catalog because the BMI catalog does not list commercial jingles written prior to the late 1990's and that "none of the jingles addressed by Bryant were ever in her BMI catalog."

Additionally, defendant Sunbow argues that it is not bound by this Court's earlier determination that there had existed a fiduciary relationship between Bacal and plaintiff because it had not had an opportunity to be heard at the time that issue was presented to the Court and, in any event, that evidence now establishes that theirs was actually in the nature of a conventional business relationship (plaintiff's relationship with him was that his companies were clients of companies for which she had worked or where she had been a principal, i.e. Kinder and

Bryant) and contracts between plaintiff's company and Sunbow, which had been negotiated by counsel, had existed between them. Moreover, defendant Sunbow insists that plaintiff merely glosses over the fact that Sunbow was a corporate entity separate from Bacal and argues that plaintiff has made no showing that it is appropriate to pierce the corporate veil.

Initially, the Court finds that defendant Bacal has failed to establish entitlement to judgment as a matter of law dismissing plaintiff's claims which are alleged to be time-barred. It is well settled that a defendant may be precluded from pleading the statute of limitations as a defense where the plaintiff had been induced by fraud, misrepresentations or deception from filing suit. Simcuski v. Saeli, 44 N.Y.2d 442, 448-449 (1978); Herman v. Depinies, 273 A.D.2d 146 (1ˢᵗ Dept. 2000). While ordinarily the doctrine requires proof of an actual misrepresentation, if a fiduciary had concealed facts which he was required by virtue of his relationship to disclose, and the plaintiff had relied upon the non-disclosure and based thereon had delayed suit, a defendant may properly be estopped from asserting that the plaintiff's late filed claims are time-barred. See (1ˢᵗ Dept. 2003); Gleason v. Spota, 194 A.D.2d 764 (2ⁿᵈ Dept. 1993); Powers Mercantile Corp. v. Feinberg, 109 A.D.2d 117, 122 (1ˢᵗ Dept. 1985), affd. 67 N.Y.2d 981 (1986). The doctrine does not properly apply, however, where a plaintiff

possesses timely knowledge sufficient to place him under a duty to inquire and ascertain the relevant facts. <u>See</u> <u>Contento v. Cortland Memorial Hosp.</u>, 237 A.D.2d 725 (3rd Dept. 1997), lv. to app. den. 90 N.Y.2d 802 (1997); <u>Greene v. Abbott Laboratories</u>, 148 A.D.2d 403 (1st Dept. 1989); <u>Gleason v. Spota</u>, <u>supra</u>; <u>Melvor v. DiBenedetto</u>, 121 A.D.2d 519 (2nd Dept. 1986).

Here, this Court previously had determined that a relationship of trust and confidence had existed between plaintiff and Bacal. Clearly, discovery has since transpired which may, as defendant Bacal argues, limit that earlier determination. Therefore, the Court finds that a triable issue of fact is presented as to whether a confidential fiduciary relationship had existed between plaintiff and Bacal with respect to any of the works here in issue, whether Bacal had failed to disclose to plaintiff that which he was obligated to disclose with respect to diminished royalties and whether plaintiff had been in possession of sufficient facts by virtue of her having received periodic statements and royalty payments which had imposed upon her the duty to inquire earlier. <u>See</u> <u>Nick v. Greenfield</u>, 299 A.D.2d 172 (1st Dept. 2002); <u>Thompson v. Whitestone Savings and Loan Association</u>, 131 A.D.2d 749, 751 (2nd Dept. 1987).

The Court further finds, however, that plaintiff has woefully failed to demonstrate that it is appropriate to pierce the

-15-

corporate veil and find that Bacal's identity was one with his production company Sunbow, which of course otherwise had no confidential relationship to plaintiff, so as to render Sunbow potentially liable for alleged wrongdoings which otherwise would be time-barred. Accordingly, the Court finds that any and all claims against Sunbow for alleged wrongdoings which pre-date six years before the commencement of the action against Sunbow in 2002 are time-barred and hereby dismissed.

The Court also rejects at this time defendants' contentions that plaintiff lacks standing to assert any diminishment of royalty rights of her former partner Kinder since she, by virtue of her prior settlement with Kinder, had stepped into his shoes and inherited his rights with respect to those musical compositions. Summary judgment as to those claims is therefore also denied.

As to the substantive merits of defendants' summary judgment motions, the Court, after careful review of the record at bar and the parties' respective arguments, finds that the issues presented are highly complex, even more so than originally thought, and that the evidence presented and pertaining to this unique industry is, on the whole, seemingly contradictory and confusing; consequently, the Court finds that there exists triable issues of fact which preclude outright dismissal of the non-time-barred

claims.

Initially in this regard, the Court notes, contrary to defendant Bacals' contention that plaintiff has failed to offer any proof that the additional works for which she seeks royalties had derived from her jingles or compositions, that as the movant for summary judgment, the burden had been on Bacal - not plaintiff- to remove all triable issues of fact.    Here, the Court finds that Bacal has not submitted any evidence establishing that the compositions in question were not derived from plaintiff's original jingles or compositions, and thus he is not entitled to summary judgment on this basis.

The Court finds that plaintiff has submitted sufficient evidence of allegedly improper re-registrations of her work, through a comparison of original BMI royalty statements with later statements of catalog entries for re-uses of the same composition showing a diminishment in her royalty share or in no credit at all being given to her for compositions for which she originally had been receiving 100 percent of the royalties, and that improper credit may be being given to Bacal and/or Kinder and/or others with respect to works for which she has demonstrated entitlement to 100 percent of performance royalties and that Bacal appears to be receiving shares of royalty credit for compositions authored by plaintiff on which he previously had received no royalties.

Defendants therefore have failed to establish entitlement to judgment as a matter of law with respect to plaintiff's claims pertaining to performance royalties.

_ The Court also finds that a triable issue of fact is presented with respect to whether plaintiff has any copyright rights in the musical compositions used for the TV shows and whether she is entitled to any royalties with respect thereto. While defendants have addressed this issue at length in their respective replying memoranda of law, same appears to not have been raised in their initial briefs and plaintiff has not been afforded the opportunity to respond to same. The function of a reply is to address arguments made in opposition to the movant's position and not to afford the movant to introduce new arguments in support of his motion. See Lumbermens Mutual Casualty Company v. Morse Shoe Company, 218 A.D.2d 624, 625 (1ⁿᵗ Dept. 1995); Azzopardi v. American Blower Corp., 192 A.D.2d 453 (1ˢᵗ Dept. 1993).

With respect to plaintiff's claims that she is owed mechanical royalties and synchronization, the Court finds that, notwithstanding that Bacal had sold Sunbow in 1998 and plaintiff alleges that Sunbow has been profiting from mechanical royalties and synchronization license fees beginning in 1999, that there still exists an issue of fact as to whether Bacal nevertheless improperly is receiving monies from these other mediums using

derivatives of plaintiff's work product, which properly belong to plaintiff. Contrary to defendant's claim that this issue of mechanical royalties and synchronization license fees is newly contrived by plaintiff, plaintiff had asserted in her amended complaint that "defendants ..., including defendant Bacal, ..., have received payments from the sale and marketing of videos, movies, and CD's and other products which use plaintiff's compositions, without compensation due her, and defendants are thereby unjustly enriched to the detriment of plaintiff."

The parties are reminded that these actions are scheduled to be heard in the Mediation Part, at 10:00 a.m. on January 14, 2004, with a scheduled trial date of February 23, 2004. These dates may not be changed without the Court's consent. Any party's failure to appear may result in the imposition of costs and/or sanctions.

Dated: December 15, 2003
New City, New York

ANDREW P. O'ROURKE
J.S.C.

Duane Morris LLP
Atty. for Deft. Bacal
380 Lexington Avenue
New York, New York 10168

Patterson, Belknap, Webb & Tyler LLP
Attys. For Deft. Sunbow
1133 Avenue of the Americas
New York, New York 10036-6710

Monaghan, Monaghan, Lamb & Marchisio
Attys. for Pltf.
150 West 55th Street, Suite 1G
New York, New York 10019

Exhibit J

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

ANNE BRYANT,                          :

            Plaintiff,                :

    -v-                               :

                                      :
BROADCAST MUSIC, INC.                 :
(a/k/a/"BMI"), FORD KINDER,           :
KINDER & CO., LTD.,                   :Index No. 5192/00
VADIVOX, INC., JULES M. "JOE"         :
BACAL; GRIFFIN BACAL, INC.,           :Hon. Andrew P. O'Rourke
STARWILD MUSIC BMI, WILDSTAR          :
MUSIC ASCAP, SUNBOW                   :
PRODUCTIONS, INC.,                    :

                                      :
            Defendants.               :        **AFFIDAVIT**
                                      :
ANNE BRYANT,                          :
            Plaintiff,                :
                                      :Index No. 2821/02
    -v-                               :
                                      :Hon. Andrew P. O'Rourke
                                      :
SUNBOW PRODUCTIONS, INC.,             :
                                      :
            Defendant.                :
                                      :

STATE OF NEW YORK   )
                    ) :ss
COUNTY OF ROCKLAND  )


**ANNE BRYANT**, being duly sworn deposes and says:


1.   I am Plaintiff and ask the Court for the following
     relief:

     A. Entry of an Order directing resumption of
        further proceedings in this matter;

     B. Bifurcation of the two basic royalty claims that
        I have made in this case (performance and
        publishing) as I describe them below to

DEFENDANT'S
EXHIBIT
Z

permit claims based on performance royalties
against defendant Sunbow Production, Inc.
["Sunbow"]and Broadcast Music, Inc. ["BMI"] to
conclude discovery and proceed to trial on the
performance royalty claims without further undue
delay;

C. For permission to take deposition testimony on
damages and testimony to protect and preserve the
record of important witnesses, such as Ford
Kinder, a Florida resident and my expert David
Berman, a California resident; and

D. To allow and to deem my claims and pleadings
amended to conform to the proofs elicited at
trial to state claims for breach of written
contracts with defendant Sunbow based on among
other things, the additional and subsequent
transactions and occurrences in this case
including Sunbow's August 2004 mid-trial
production of written agreements.

### BIFURCATE CLAIMS

2.  I ask the Court to separate the two basic claims and
recognize that there are distinct royalty claims
that I have made in this case:

A. **PERFORMANCE ROYALTIES**.  I have sued both Sunbow
and BMI for my correct, agreed-upon share of
"Public Performance Rights Royalties"—those
royalties which are collected and distributed by
Defendant BMI for domestic and foreign broadcast
licensing and use of the themes and songs
composed by me;

B. **MUSIC PUBLISHING CLAIMS**.  I have also sued Sunbow
for my 50% share of "Music Publishing Royalty

2

your Honor after I have had an opportunity to at
least bring the information current;

D. I cannot, however, accept that the court has
issued a *stay* on the entire trial in progress,
because my claims to "Public Performance Rights
.Royalties" are not really at issue on the
appeals. In fact, the Defendants have stipulated
that I am entitled to these royalties. Sunbow's
counsel, Ms. Phares, in particular, has made much
of this stipulation in that she built her
theories during her protracted cross examination
of me on the premise that I am entitled to my
Public Performance Royalties—*but no other
royalties;* [2]

E. The appeals are not dispositive of the entire
case; *Your Honor has the power to rule and the
contracts to guide his rulings in matters
regarding my claims to* Public Performance Rights
Royalty income from 1994-2000 [that is long past
due to me] that has accumulated to more than
$238,000, as well as even greater losses mounting
up to the present— and ongoing;

---

[2] I of course, vehemently disagree with Ms. Phares. The contracts that
her client Sunbow belatedly produced, as well as the testimony of
expert witness— even Sunbow's expert— supports my position that
I am entitled to both Public Performance royalties as well as a 50%
share of Music Publishing Income.

F. There is no basis for further delay of the trial
   of my claims to past, present and future Public
   Performance Royalty income that has been
   wrongfully diverted and withheld from me; and

G. After more than ten years of debilitating income
   losses, five years of unduly burdensome legal
   expenses and legal work occasioned by Sunbow's
   transparent delays from motions and legal
   sideshows intended to break my back and to punish
   my attorney, I beseech this court to use its
   powers to restore my right to seek relief for
   these losses and abuses. I do this with belief
   in mind and in heart in the powers and just
   mission of this Court, and the implicit promise
   of 'justice for all.'

## AMENDED CLAIMS

3. I also ask to Court to allow my claims to be
deemed amended to include claims based on certain of the
writings produced in 2004 during trial and consider my
Amended Complaint dated December 11, 2003 and my pleadings
amended to conform to the evidence already in this case and
proofs to state claims for breach of written contracts
(including a certain Jem Agreement dated June 1986)[3] dealing

---

[3]  Although this is the Jem Feature Song Agreement, not the
Jem Theme Song Agreement, I have accepted it as stating the

with my performance royalties and publishing rights. This is only fair because of Sunbow's August 2004 mid-trial production of those very written agreements I had requested specifically for more than a year before commencement of trial and Sunbow's false claims of their destruction in a flood.

4. In addition to the above, I point out the following reasons why my pleading should be deemed amended in this case to include claims based on written and oral agreements:

a. **WRITTEN AGREEMENTS CONCERNING PERFORMANCE ROYALTIES**. Sunbow, as copyright holder, controlled all aspects of the BMI registrations. Paragraph 5c of the "Jem Agreement" [Exhibit M in Evidence and attached hereto as well] provides that the Company (Sunbow, holder of the copyright) licenses back to the writer the writer's share of performance royalties:

"…so as to enable writer,,, to collect the 'writer's share' of royalties derived there from."

b. **MY TESTIMONY**. A review of my testimony in the record at trial and in depositions clearly

---

terms of my Sunbow agreements with Jules M. "Joe" Bacal and Sunbow Agreements related to Sunbow productions.

states that I worked for the Defendants using
both oral and written understandings.[4]


I testified at trial as follows:

4   Q. Did you have a written agreement to produce

5   the compositions at issue in this case?"

6   A."Ford Kinder told me that there was

7   a contract. I don't remember ever signing a

8   contract with them, but he was my partner and
    he

9   said there was a contract at some point in our

10  association with those people."

11  Q. And then later, or -- so, according to your

12  testimony in March, Mr. Kinder had told you
    there was a

13  written contract with Sunbow, had he not?"

14  Was he talking about Sunbow?

15  A. He was." [Trial Trans p.94].


5.   I also testified at my deposition in March 2003
as follows:

Q. Did you have a written contract to produce the
compositions at issue in this case?

---

[4]   It is common practice in the competitive commercial music business
to work with both oral and written agreements. We most often compete
with other producers to win each job. The agency's representative
outlines the creative direction and all of the specs and payment terms
of the job. This is done orally—usually over the phone. If the specs
and terms are agreeable to both parties, we compose and produce a
"demo" of our version of the music and hope that our version is
selected for broadcast. If we are successful and our music is chosen
and scheduled for broadcast, written agreements are sent to us that
bear out the details discussed when we accepted the [competitive] job.
There is no need for us to sign a contract unless we win the
competition and until our music is scheduled for broadcast.

a. **ADDITIONAL ACCRUALS**.  In addition to the
$238,000 loss of income that was tabulated from
BMI payment reports obtained by way of
subpoena, amounts accruing until today [that
will continue to mount in the future] need to
be tabulated from *like* BMI payment reports. To
do this we will need the restoration of full
subpoena powers that can only be restored when
the court vacates its Order of March 2005 which
incidentally arrested our power to 'gather
accounting information pertinent to my Public
Performance Rights Royalty claims as reported
and paid to all parties by Defendant, BMI.

b. **LACK OF CREDIT FOR MY WORK – DAMAGE TO MY
   CAREER**.  In addition to royalty payments from
   defendant, BMI that have been made to persons
   *not entitled to receive them,* in lieu of
   payments to me for music I composed, the Court
   must be made aware here that there are three
   new TRANSFORMERS television programs that
   broadcast daily around the world. The theme
   song used for Transformers "Armada" and
   Transformers "Energon" is my Transformers
   Theme, yet I have not received one penny of
   royalties for the daily broadcasts of my theme
   in these two shows, which have been broadcast
   for several years now. The latest Transformers
   television program, "Cyberton" is also using my
   Transformers theme. In all three of the above
   programs, my theme is credited as written by
   others who are and have been, without a doubt,
   collecting my royalties [see Exhibit A]. We
   need the restoration of subpoena powers in
   order to compel "Royalty Reporting Services" [a
   division of Talent Partners, Inc.] to produce
   cue sheets identifying the names of those
   credited with writing my Transformers theme and
   paid royalties that are due exclusively to me,
   the composer.[5]  Only then can we begin to

---

[5] New "arrangements" of my music do not entitle the
arrangers to royalties and the BMI records show arrangers

tabulate the large sums of Performance rights royalties that have been denied me, the true composer, for several years of worldwide, daily broadcasts of three television programs using my theme.

c. Perhaps Ford Kinder, who settled with me and now lives in Florida, would recall better than me events regarding the original music contracts because he signed more of them than I did. I was more focused in the recording studios because I did our final arrangements, so more of my time was spent away from the office. The contracts requiring more oversight from me were the Union contracts that governed terms of employment for the talent we sub-contracted for the recording sessions I conducted on behalf of Sunbow and Griffin Bacal Inc.

d. I implore the court to allow me to preserve the testimony of important witnesses for the record dealing with events and circumstances that go back 20 years and more. Look at how long Sunbow took to dredge up documents it claimed were lost in a New York City flood.

getting my royalties. I have made my living as both a composer and an arranger in the commercial music business. I speak from long professional experience when I testify to the court that *only the Composers are entitled paid royalties. Arrangers are paid "arranging and production fees."* Arrangements are *fashionings* of "existing works." Arrangements are not "derivative works." I look forward to presenting a roomful of industry witness [if it pleases the court] that will attest to this in court.

10

8.  Therefore, as soon as possible after the above-discovery, I ask the Court to resume trial of at least my Public Performance Rights Royalty claims if not the entire case for the following urgent reasons:

> a.  Defendant, Sunbow was my **"publisher,"** through its publishing arms, "Starwild Music [BMI]" and "Wildstar Music [ASCAP];
>
> b.  It is indisputable that the Publisher is responsible to file correct registrations with BMI and ASCAP; that the appeals in this case do <u>not</u> involve or affect matters concerning my Public Performance Rights Royalty claims; and that on numerous occasions the Defendants have stipulated on the record that I am entitled to these Public Performance Royalties.  Nothing- no "work for hire" agreement- would have given them up.[6]  The Publisher, as administrator is responsible to maintain those registrations properly so that only the correct party is paid;[7] and, the publisher has a continuing

---

[6]  I have all of my original payment statements and also the original registrations that were filed by SUNBOW. Those registrations, which declare my true author credits are not to be changed without my formal release. I have never released them. [see also 6].

[7]  Please see Declaration of my expert witness, David Berman, Esq., already on file.

responsibility to transfer accurate authorship information if and when the publisher's catalogue is sold to another publishing company;

c.   I reiterate to the Court that there have been 21 quarterly statements issued to me by Defendant BMI since this action was filed in 2000 reflecting insufficient credits and payments to me; and

d.   I continue to be damaged every year in this five-year-old case:

• No accountings have been ordered by the Court; nor any tolling of BMI royalty payments to Defendants Bacal and Kinder, with whom I have settled;

• **Defendant BMI has never consummated the settlement that has been on the table for more than one year. Clearly, Defendant BMI has left Your Honor in 2004 with the impression that a settlement was imminent.**

• Defendant, BMI will not even return our telephone calls and emails.

• Defendant BMI is clearly riding along on Ms. Phares' coat tails hoping to avoid paying damages or changing records.

• I am trapped for yet another two years as a BMI member/affiliate [my contract rolled over automatically on 9.3.05 for another two years] because BMI has neglected to change its records to conform to the settlements terms that they must honor.

• Defendant BMI shows no willingness to make changes authorized by my settlements with Kinder and Bacal.

• Defendant BMI has not changed its records to reflect adjustments in writer credits that were authorized in my hard-won settlements with Defendants Bacal and Kinder.

• Nothing has been done at all— no justice— only mounting costs from deliberate, devious delays. *It is a though I never worked to bring this case to trial at all.*

• *In the matter of my valuable TRANSFORMERS title,[8] for example, I continue to be paid at a rate as low as 8% in lieu of the 100% that is due to me for this title. This means that I have been*

---

[8] My "Transformers" music was not written as or for a Sunbow Production- the music was written for GBI.

> *living on as little as 8% of my income for*
> *approximately 15 years.*

\*    \*    \*    \*

9.  At the heart of my respect for the awesome design of our democracy, and the inestimable value I place on my American Citizenship, is the underlying promise that an individual American who has been harmed—myself in this case—has the right to seek justice from the courts in matters in which a more powerful and wealthy opponent's advantage cannot outweigh the facts at hand. It is with that belief in mind and in heart that I have made these motions to the court, trusting that the Court will at least bifurcate the claims. allow me to amend my pleading, obtain additional discovery, preserve testimony and continue with at least trial of my performance royalty claims <u>as soon as possible</u> so that we can reach a fair accounting for all of the income that has been due to me for so many years, which has never been paid to me, and for the damages these losses have caused and continue to cause to my life and career.

10. I therefore beg the Court to grant the relief I have requested.

ANNE BRYANT

Sworn to before me this
6th day of December, 2005.

Notary Public
PATRICK J. MONAGHAN JR.
NOTARY PUBLIC, STATE OF NEW YORK
NO. 02MO6000355
QUALIFIED IN NEW YORK COUNTY
COMMISSION EXPIRES.

14

Exhibit K

AGREEMENT made of this 1st day of June, 1986, by and between
SUNBOW PRODUCTIONS, INC. ("Company"), whose business address is
380 Lexington Avenue, Suite 1105, New York, New York 10168, and
KINDER & BRYANT LTD. ("Contractor") whose business address is 41
West 73rd Street, New York, New York 10023, f/s/o Anne Bryant and
Ford Kinder (jointly referred to as "Writer").

In consideration of the mutual covenants herein contained, the
parties hereto have agreed and do agree as follows:

1.     Company hereby engages Contractor and Contractor
hereby accepts such engagement, to furnish the services of Writer
to Company for the purpose of writing, preparing and delivering to
Company original musical material (hereinafter referred to as the
"Music") for songs to be used in a fully-animated children's
television show consisting of either five one-half hours, fifteen
segments, or a television motion picture, presently entitled "JEM"
(the "Show")(it being understood that the mention of the Show is
for purposes of identification only and shall in no way restrict
Company's rights in the Music, and the use thereof, as set forth
in this Agreement).  The number of songs for which music is to be
written and delivered by Writer hereunder shall be determined by
Company.  The Music shall be delivered to Company in accordance
with a schedule to be mutually determined by the Company and
Contractor.

2.     (a)  For all rights herein granted to Company in the
Music, and for performance by Contractor of all obligations
hereunder (including but not limited to composing and arranging
the Music, supervision of the orchestra recording of the Music for
the Show, and Company's right to use the Music on and in
connection with phonorecordings sold or distributed in conjunction
with merchandise based on the Show ["Premium Cassettes"]), Company
shall pay Contractor a fee of Two Thousand Two Hundred ($2,200)
Dollars for each song for which Writer writes and delivers the
Music, payable on delivery thereof.

(b)  Payment by a parent or affiliate of Company
shall be deemed to constitute payment by Company hereunder.
Nothing herein contained shall be deemed to impose any obligation
on Company to use or authorize the use of the Music, and Company
shall have fully discharged its obligations to Contractor
hereunder by payment to Contractor of the amount specified in
subparagraph (a) of this Paragraph 2.

3.   · Contractor shall deliver one (1) copy of the Music
to Company as Company shall designate.

.4.     It is understood and agreed that Writer may write
the Music at such times and places as Writer may choose, subject
only to Contractor's obligation to make timely delivery of the
Music in accordance with the terms of this Agreement.



5.   (a)  Contractor warrants, acknowledges and agrees that the Music to be written by Writer and delivered by Contractor is to be written by Writer under and pursuant to an employment agreement between Contractor and Writer pursuant to which Contractor is entitled to the exclusive services of Writer, and to all the results of Writer's services; that the Music was specifically ordered and commissioned by Company for use as part of an audiovisual work; and that the Music is a work made for hire within the meaning of Section 101 of the United States Copyright Act.  Upon writing of the Music, all right, title and interest therein shall automatically vest in Company and Company shall be the sole and unlimited owner thereof and of all rights therein throughout the world forever, and Company shall be entitled to copyright therein, including statutory copyright and all renewals thereof, as copyright author and proprietor.  Company may freely assign and grant rights and licenses with respect to the Music and any copyright therein (including any renewals thereof), and in this connection Contractor agrees to execute and deliver and/or cause Writer to execute and deliver to Company any and all instruments required by Company in connection with the use and enjoyment of the Music and of Company's rights therein and thereto.  Contractor hereby appoints Company as Contractor's and Writer's attorney-in-fact with the right but not the obligation to execute any such instruments in Contractor's or Writer's name on Company's behalf.  On execution hereof, Contractor shall sign and shall cause Writer to sign the Certificate of Authorship attached hereto for the Music.

(b)  Without in any way limiting the generality of the foregoing, it is agreed that Company shall have the exclusive right and may license others to use, adapt, arrange, change, add to, or subtract from the Music and to combine the same with other literary material and/or lyrics and to publish, record, produce, reproduce, transmit, perform, broadcast, telecast, and/or otherwise communicate the same or any version or versions thereof by any means (including, but not limited to, in synchronization with motion pictures, television and/or any other form of recordation or reproduction of sight and/or sound), whether now known or hereafter devised, publicly for profit or otherwise, it being understood that Contractor and Writer hereby waive any so-called "moral rights" which may now be or may hereafter be recognized,  It is understood and agreed that neither Contractor nor Writer shall have any right, title or interest in any other literary material and/or lyrics which may be combined with the Music.

(c)  During any period or periods of time during which Writer is affiliated with any small performing rights society (herein called the "Society"), Company shall and does hereby, under and pursuant to this Paragraph, license back to Writer the so-called "writer's share" (i.e., fifty (50%) percent) (but, if the Music or any form thereof are the composition of

- 2 -

.0040H

.SUN 0871

Writer and other composers and/or lyricists, then the grant hereunder shall be deemed a grant of the "writer's share" to Writer and all other such lyricists and/or composers jointly except that for instrumental uses, only Writer and any other composer(s) shall share in the "writer's share") in the non-dramatic (i.e., "small") performing rights in the Music so as to enable Writer to license such non-dramatic performing rights to Society, and to collect the "writer's share" of royalties derived therefrom, it being understood, in this connection, that Company (or any assignee or licensee of all or any of Company's rights under this Agreement) shall not exercise such non-dramatic performing rights during such period or periods without obtaining a license therefor from Society, except that Company and/or any such assignee or licensee, may exercise such non-dramatic performing rights in the Music by reason of, under and pursuant to this Agreement,

      (i) during any period or periods during which such non-dramatic performing rights are not controlled by and/or available for license to Company or any such assignee or licensee at standard rates from Society, or in the case of public performances of the Music in geographical areas outside of Society's jurisdiction, from any other organization or society which is affiliated with Society or which has a collection agreement with Society and which controls the non-dramatic performing rights in any geographical area in which the Music is to be performed; and/or

      (ii) in connection with theatrical exhibitions in the United States, its territories and possessions; and/or

      (iii) in connection with any performance of the Music within the United States, its territories and possessions, which is not a public performance;

it being understood that Company (and/or any such assignee or licensee) shall have no obligation to pay any royalties or other sums to Writer, Contractor, Society, or any successor to the rights of any of them with respect to non-dramatic performances of the Music made pursuant to subclauses (i) through (iii) hereof. If Company makes or authorizes any non-dramatic performances of the Music under and pursuant to this Agreement, and if Writer or Contractor shall assert any claim that any such performance violates any rights of Writer or Contractor, then (A) under no circumstances shall Writer or Contractor have the right to take any action or initiate any proceeding with respect to such claim which would have the effect of enjoining and/or preventing and/or otherwise interfering with any said non-dramatic performances, it being agreed that any such action or proceeding shall be limited to an action at law for damages; and (B) if Writer or Contractor

— 3 —

SUN 0872

shall assert such a claim pertaining to a non-dramatic performance of the Music made by any assignee or licensee of Company, then any action taken or proceeding brought by Writer or Contractor shall be limited to an action at law for damages against such assigee or licensee exclusively. The foregoing references to Society shall not be construed as giving Society any independent right to take any action or initiate any proceeding against Company or any of its assignees or licensees with respect to any such claim.

(d) Without limiting the generality of any rights granted under this Agreement, and notwithstanding any license hereunder to Writer pursuant to subparagraph (c) above, Writer and Contractor expressly acknowledge that Company, its successors, assigns and/or licensees shall have the right to collect the "publisher's share" of performance royalties becoming due and payable hereunder from any small performing rights society by reason of performances of the Music, it being expressly agreed that Writer and Contractor shall not be entitled to any share of such monies which are distributed to Company, its successors, assigns, and/or licensees by any small performing rights society. Writer shall be entitled to collect the "writer's share" of any such royalties with respect to the Music jointly with any other lyricists and/or composers of such Music. The terms "publisher's share" and "writer's share" as used in this Agreement have the same meaning here as is commonly understood in the music publishing and motion picture and television industries. Company may represent to any domestic or foreign performing rights society or similar organization requiring an acknowledgement of the type made by Writer herein that Contractor and Writer have acknowledged Company's right to collect and retain the publisher's share of royalties; further, if any such society or organization requires written authorization from Writer or Contractor in order to make payments of the publisher's share of royalties to Company, Writer and Contractor shall promptly execute and deliver such authorization. If any such society or organization makes payment to Writer or Contractor of all royalties (i.e., both "writer's" and "publisher's" share) with respect to any performance to Writer, Contractor shall promptly remit one-half (1/2) of such royalty to Company.

6. Further, in the exercise of its rights hereunder and without in any way limiting the generality of the foregoing, Company shall have, as owner and copyright proprietor of the Music, the complete control of the publication of the Music and of all rights incident thereto, including, but not limited to, the right to license the manufacture of phonograph records and other recordings of the Music and the right to license motion picture synchronization rights (all of which rights are herein sometimes collectively called "music publishing rights"). Without limiting the generality of the foregoing, it is agreed that Company may assign or license any or all such music publishing rights and/or any or all other rights granted to Company under this Agreement to

- 4 -

SUN 0873

any music publishing company or production company which is a parent or subsidiary of Company or otherwise affiliated with Company or to any other third party.

(a) With respect to Company's exercise of music publishing rights in the Music (as defined above)(but excluding use in connection with Premium Cassettes as defined in Paragraph 2(a) for which Contractor shall not receive any further compensation), uses of the Music combined with lyrics (but, if the Music with lyrics or any form thereof is the composition of Writer and other composers and/or lyricists, then the royalties hereunder shall be shared equally by all such lyricists and/or composers):

(i) sums equal to fifty (50%) percent of the net proceeds (as defined below) received by Company from third parties for licenses for the manufacture or commercial phonograph records and/or licenses of theatrical motion picture synchronization rights (as defined below);

(ii) for regular piano copies, if any, sold and paid for at wholesale in the United States and/or Canada, sums equal to eight cents (.08) per copy for the first one hundred thousand (100,000) copies sold, and ten cents (.10) per copy for copies sold in excess of 100,000;

(iii) sums equal to fifty (50%) percent of net proceeds received by Company from third parties for regular piano copies, if any, sold and paid for at wholesale outside of the United States and/or Canada;

(iv) with respect to orchestrations, including band arrangements, if any, sold and paid for at wholesale anywhere in the world, sums equal to ten (10%) percent of the wholesale price therefor, after trade discounts;

(v) with respect to any songbook, folio or similar publication, if any, sold and paid for at wholesale anywhere in the world, sums equal to the amount resulting from dividing ten (10%) percent of the wholesale price, after trade discounts, therefor by the total number of copyrighted musical compositions contained in such publication;

(vi) with respect to other uses of the Music hereunder, sums equal to the amount resulting from dividing fifty (50%) percent of the net proceeds received by Company from third parties therefor by the total number of copyrighted musical compositions and/or literary materials contained or included in such uses.

- 5 -

SUN 0874

Music or as a writer of the television series on all release
prints of such programs. Company further agrees to use best
efforts to have Writer given credit in connection with other uses
of the Music;

(b) if any of the Music as described in Paragraph 1
of this Agreement is used as Music for the theme song for a
television pilot program and/or television series, then Company
shall give Writer (or cause Writer to be given) credit on all
release prints of any such program in which such theme song is
used as the theme song, as Writer of the Music of such theme song.

The form, style, size, placement and nature of any credit provided
for herein shall be determined by Company (or its assignee or
licensee) in its sole discretion except that Company agrees that
the identification of Writer shall be in the form "Kinder and
Bryant." Any unintentional and/or inadvertent failure to give
credit as above provided, whether because of lack of broadcast
time or otherwise, shall not be a breach of this Agreement.

8.    Company shall have the right and may grant to others
the right to use, disseminate, reproduce, print and publish
Writer's name, likeness, voice and biographical material
concerning Writer as news or informative matter and in connection
with advertising and for purposes of trade in connection with any
motion picture or television program in which the Music is used,
and/or in connection with any other uses of the Music. The rights
granted herein shall not include the right to use or to grant to
others the right to use Writer's name, voice, likeness and
biographical material in any direct endorsement of any product or
service without Writer's prior written consent.

9.    Contractor hereby warrants that Contractor is free
and able to enter into and fully perform this Agreement, to
furnish the services of Writer, and to grant all rights herein
granted. Further, Contractor warrants that the Music in the form
in which it is delivered shall be wholly original with Writer and
shall not be copied from any other work and shall not, nor shall
the use thereof, infringe or violate the copyright or any common
law right or any personal, proprietary, or other right of any kind
whatsoever of any person, firm, corporation or association. If
any of the Music delivered hereunder is described as based upon
traditional or public domain compositions, Contractor warrants
that such compositions are in the public domain throughout the
world and that Writer's treatment of such compositions is original
and shall not be copied from any work other than such public
domain compositions, nor shall the use thereof infringe or violate
the copyright or any common law right or any personal, proprietary
or other right of any kind whatsoever of any person, firm,
corporation or association. Notwithstanding the foregoing, if any
of the Music delivered hereunder is described as based upon
materials furnished by Company or as based upon traditional or

- 8 -

SUN 0877

public domain compositions furnished by Company. Contractor makes no warranty as to the originality or ownership of such materials or compositions furnished by Company.

10. Contractor shall indemnify and hold Company, its successors, assigns and licensees, any network and/or stations over which the Music shall be broadcast, the sponsors, if any, of any program on which they are broadcast, and their advertising agencies, if any, and any other parties who shall utilize the Music or any part thereof in any way with Company's permission, and the directors, officers, agents and employees of any of the foregoing, free and harmless from any and all claims, damages, liabilities, costs and expenses, including reasonable counsel fees, arising out of any breach by Contractor of any warranty or agreement made by Contractor herein, in an amount not to exceed the monies paid to Contractor by Company hereunder.

11. It is understood and agreed that all or part of this Agreement and all the results and proceeds thereof may be assigned by Company to any third party without Contractor's consent and in this event, Company's successors and/or assigns shall be entitled to any and all rights, privileges, and equities to which Company is entitled under and by virtue of this Agreement. In the event of such an assignment, Company shall not be relieved of its obligations hereunder unless the assignee is a parent, subsidiary or affiliate of Company or a recognized distributor of motion pictures or television programs, or a "major" motion picture company (as that term is understood in the motion picture industry), or a "major" television network (as that term is understood in the television industry), or a "major" record company or music publishing company (as those terms are understood in the music industry).

Nothing in this Agreement shall in any way derogate from, diminish or impair any rights granted to the Company or to any parent, subsidiary or affiliate of Company under any other agreement entered into between Writer and Company or any parent, subsidiary or affiliate thereof.

This Agreement shall be binding upon and shall inure to the benefit of the parties hereto, their successors, assigns and licensees.

12. Company agrees to furnish Contractor with cue sheets of the Music within sixty (60) days of the initial broadcast of the Show.

13. (a) This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York applicable to contracts entered into and fully to be performed therein.

One Revision:

- 9 -

SUN 0878

(b)  A waiver by either party of any of the terms
and conditions of this Agreement in any one instance shall not be
construed to be a waiver of such term or condition for the future,
or of any subsequent breach thereof.  All remedies, rights,
undertakings, obligations and agreements contained in this
Agreement shall be cumulative and none of them shall be in
limitation of any other remedy, right, undertaking, obligation or
agreement of either party.

(c)  This Agreement contains the entire
understanding of the parties hereto relating to the subject matter
herein contained and this Agreement cannot be changed, rescinded
or terminated orally.

(d)  If any provisions of this Agreement as applied
to any party or to any circumstances shall be adjudged by a court
to be void or unenforceable, the same shall in no way affect any
other provision of this Agreement, the application of such
provision in any other circumstances or the validity or
enforceabililty of this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this
Agreement as of the day and year first above written.

SUNBOW PRODUCTIONS, INC. ("Company")

By: _____
    Its

KINDER & BRYANT LTD. ("Contractor")

By: _____
    Its

0040H

- 10 -

## Schedule A

Anne Bryant and Ford Kinder ("Writers") hereby certify that they wrote certain original music as employees of KINDER & BRYANT LTD. ("Contractor") in the regular course of their employment. Contractor hereby certifies that Contractor was specially commissioned by SUNBOW PRODUCTIONS, INC. ("Company") to furnish the services of Writers to write and deliver said music to Company for use as part of a fully-animated children's television program tentatively entitled "JEM" pursuant to an agreement dated as of _____, 1986. Accordingly, Writers and Contractor acknowledge and agree that the said music is a work made for hire within the meaning of Section 101 of the United States Copyright Act and that Company is the author and owner thereof and is entitled to copyright therein (and all renewals thereof), and all rights of any kind or nature therein, with the right to make such changes therein and uses thereof as Company may from time to time determine as such author and owner.

KINDER & BRYANT LTD.
("Contractor")

Dated:                        By:_____

Dated:                        _____
                              Anne Bryant

Dated:                        _____
                              Ford Kinder

- 11 -

00400

SUN 0880

3. That the undersigned is under no obligation or disability by law or otherwise which would prevent or restrict the undersigned from performing and complying with all of the terms, covenants and conditions of the Agreement on the part of the undersigned to be performed or complied with.

4. That, except in the event that the undersigned is deemed substituted for Contractor as a direct party to the Agreement, pursuant to Paragraph 6 hereof, the undersigned will look solely to Contractor and not to you for all compensation and other remuneration for any and all services and rights which the undersigned may render and/or grant under the Agreement.

5. That you shall be entitled to equitable relief against the undersigned by injunction or otherwise to restrain, enjoin and/or prevent the violation or breach by the undersigned of any obligation of the undersigned to be performed as provided in the Agreement and/or the violation or breach by the undersigned of any obligations or agreements under this present instrument.

6. That if Contractor should be dissolved or should otherwise cease to exist or for any reason whatsoever should fail, be unable, neglect or refuse to perform and observe each and all of the conditions of the Agreement requiring performance or compliance on its part, the undersigned shall at your election be deemed substituted as a direct party to the Agreement in the place and stead of Contractor and, further, that in the event of a breach or threatened breach of the Agreement by Contractor or by the undersigned you shall be entitled to legal and equitable relief by way of injunction or otherwise against Contractor or against the undersigned or both of us in your discretion, in any event without the necessity of first resorting to or exhausting any rights or remedies which you may have against Contractor; all of the foregoing to be to the same extent and with the same force and effect as if the undersigned were a direct party to the Agreement in the first instance and as if in the Agreement the undersigned had personally agreed to render the services therein provided to be rendered by the undersigned and to perform and observe each and all of the terms and conditions of the Agreement requiring performance or compliance on the part of the Contractor or the undersigned or both of us.

Very truly yours,

_Ford Kinder_  
FORD KINDER

_Anne Bryant_  
ANNE BRYANT

0040H

SUN 0882

Exhibit L

# Patterson, Belknap, Webb & Tyler LLP

1133 Avenue of the Americas
New York, NY 10036-6710
(212) 336-2000
Fax (212) 336-2222

Christopher C. Angell
Douglas E. Barzelay
Susan F. Bloom
Henry P. Bubel
Laura E. Butzel
William F. Cavanaugh, Jr.
Lisa E. Cleary
Edward F. Cox
John Delli Venneri
Gregory L. Diskant
David W. Dykhouse
Philip R. Forlenza
Hugh J. Freund
Paul G. Gardephe
Eugene M. Gelernter
Alan Gettner
David M. Glaser
Antonia M. Grumbach
Erik Haas
Andrew L. Herz
Dana W. Hiscock
Scott Horton
Scott Howard
Karl Hunter
Kenneth J. King
Rochelle Korman
Robin Krause
Jeffrey E. LaGueux
Kim J. Landsman

Robert W. Lehrburger
Jeffrey I.D. Lewis
Robert P. LoBue
Ellen M. Martin
Maureen W. McCarthy
Thomas C. Morrison
Bernard F. O'Hare
Gloria C. Phares
Thomas W. Pippert
Herman H. Raspé
Robert M. Safron
Karla G. Sanchez
Kenneth L. Sankin
John Saro
Peter J. Schaeffer
Andrew D. Schau
John E. Schmeltzer, III
John P. Schmitt
Arthur D. Sederbaum
Karl E. Seib, Jr.
Saul B. Shapiro
Michael J. Timmons
Peter W. Tomlinson
Richard R. Upton
Frederick B. Warder III
William W. Weisner
John D. Winter
Stephen P. Younger
Steven A. Zalesin

Of Counsel

Harold R. Tyler

───────

Anthony P. Coles
David F. Dobbins
George S. Frazza
Robert M. Pennoyer
Stephen W. Schwarz
Robert B. Shea
Ira T. Wender, P.C.

───────

Direct Phone
(212) 336-2686

Email Address
gcphares@pbwt.com

August 19, 2004

## By Fax

The Honorable Andrew P. O'Rourke
Supreme Court of New York
County of Rockland
27 New Hempstead Road
New City, New York 10956

> Re:  Bryant v. Broadcast Music Inc. No. 5192/00
>      Bryant v. Sunbow Productions, Inc., No. 2821/02

Dear Justice O'Rourke:

On behalf of defendant Sunbow, we are pleased that the Court has agreed to hear the parties at noon tomorrow, but not for the reason advanced by the Plaintiff. We have discovered documentary evidence that justifies dismissing this case immediately.

By a copy of this letter, we are producing copies of agreements between Kinder & Bryant and Sunbow, signed by both Bryant and Kinder, for _Jem_ and _My Little Pony and Friends_. Sunbow found these original documents yesterday in the custody of a

third party.[1] These agreements show that Plaintiff's affidavits, briefs, and trial testimony that there never were written work-for-hire agreements with Sunbow and that she had never signed any such agreements are false.

Plaintiff has put on a show of surprise and astonishment that anyone would think that she would sign such agreements. Now her own signature, which appears more than once on each agreement, reveals that that testimony was a charade intended to mislead Your Honor and to obtain a judgment to which she is not entitled. The record is now clear that the basis on which the Court denied Sunbow's motion for summary judgment – that there was a triable issue of fact about whether there was an oral working arrangement – was founded on Plaintiff's lies. Plaintiff's own admissions (the agreements she signed) destroy the centerpiece of her claim that she worked for Sunbow pursuant to an oral working agreements. This evidence justifies ending this case right now.

The signed agreements demonstrate that beginning with her response on summary judgment in November 2003, Plaintiff and her counsel have alleged a set of facts that is false. They have claimed there are no written agreements with Sunbow when there are. They have claimed that Plaintiff never signed such agreements when she did.

The discovery of the signed agreements is only the most dramatic example of Plaintiff's pattern of falsehoods.

- She denied that Kinder & Bryant ("K&B") ever signed agreements with Griffin Bacal Inc. ("GBI") and then was confronted with agreements between K&B and GBI signed by Ford Kinder on behalf of K&B.

- She denied emphatically that William Dobishinski ever represented K&B and then was confronted with correspondence between Dobishinski (on behalf of "my clients" Kinder & Bryant) negotiating and later attempting to amend the Jem agreement.

- Plaintiff and her counsel have claimed since they first raised the oral working arrangement theory that K&B was entitled to 50% of all that Sunbow earned, including from the exploitation of home videos. Then not until the end of the

---

[1]    Even while the trial has continued, Sunbow has made every effort to locate Anne Bryant's signed agreements from anyone who might have copies of them, and we just discovered this store of documents. We are still reviewing documents and may therefore still discover similar damaging evidence.

second day of cross-examination did Plaintiff casually abandon that
argument and make the astounding statement – contradicting everything that
she had stated on direct – that she was not entitled to 50% of Sunbow's
income. Instead she claimed that her oral working agreement entitled her to
be paid the Copyright Act's compulsory rate paid for phonorecords.[2]

Plaintiff's entire case has always been a lie. Neither Sunbow nor Your
Honor should be required to spend more time and expense pursuing a trial that is built
on lies. Plaintiff has abused the Court and the parties by trying to advance one false
argument after another. The conduct of Plaintiff and her counsel before this Court is
contemptuous of the obligation to be honest in all matters. Your Honor should cut
short Plaintiff's efforts to prolong her baseless proceeding in the hope that Sunbow will
pay her something to make her go away. This case should be dismissed.

Sincerely yours,

Gloria C. Phares

cc:    Patrick J. Monaghan, Esq.
       Judith Saffer, Esq.

---

[2]    When challenged with the statement that her lawyer had told the Court in his opening
statement that Plaintiff was entitled to 50 cents on every dollar that Sunbow earned, Mr.
Monaghan piped up that if he had said that, he did not mean it. This was not the first time Mr.
Monaghan had admitted that representations to Your Honor were false. Beginning in
November 2003, Plaintiff claimed originally that she was a copyright owner and raised several
copyright questions. In federal court before Judge Owen, Mr. Monaghan stated on the record
that those arguments, which were made to Your Honor were "over the top" and that Plaintiff
wasn't pressing them. Mr. Monaghan thus admitted to violating his obligations under 22
N.Y.C. R.R. § 130-1.1.

Exhibit M

## Patterson, Belknap, Webb & Tyler LLP

1133 Avenue of the Americas
New York, NY 10036-6710
(212) 336-2000
Fax (212) 336-2222

Gloria C. Phares

Direct Phone
(212) 336-2686

Eemail:
gcphares@pbwt.com

July 2, 2004

### By Email (PDF format) and, for one document, FedEx (Saturday delivery)

Patrick J. Monaghan, Esq.
Monaghan, Monaghan, Lamb & Marchisio
28 W. Grand Avenue, 2nd Floor
Montvale, NJ 07645
(201) 802-9066

> Re: Bryant v. Sunbow, Index No. 2821/02
> Bryant v. BMI, et al., Index No. 5192/00

Dear Mr. Monaghan:

In Sunbow Productions, Inc.'s ("Sunbow") responses to Plaintiff's Demands for the Production of Documents and Things, it expressly reserved the right to amend or supplement its responses. Accordingly, Sunbow is supplementing its production with the documents bearing production numbers: 000571-000853. This letter and the documents described below are being provided to you today by email in PDF electronic files.

One document, bearing production number 000571, is a photocopy of a check; the check is being sent to you by Federal Express for delivery tomorrow, Saturday, July 3. This check relates to the Sony/ATV royalty statements that have already been produced.

Sincerely yours,

Gloria C. Phares

cc:     Adrienne Valencia, Esq. (w enc.)

Exhibit N

# MONAGHAN, MONAGHAN, LAMB & MARCHISIO, LLP

ATTORNEYS AND COUNSELLORS AT LAW

PATRICK J. MONAGHAN, JR. *
RICHARD F. MONAGHAN* * †
EUGENE G. LAMB* * †
JUVENAL L. MARCHISIO * *
JAMES P. O'NEILL* * * †
KARL J. ROHRBACHER†
JEFFREY C. PRIMIANO *

* ADMITTED IN NJ AND NY
* * ADMITTED IN NY
* * * ADMITTED IN NJA AND NY
† OF COUNSEL

38 WEST GRAND AVENUE
MONTVALE, NEW JERSEY 07645
———
TEL: (201) 802-9060
FAX: (201) 802-9066
E-Mail: mmlmlawyers@aol.com

NEW YORK OFFICE:
130 WEST 55TH STREET
SUITE 1G
NEW YORK, NEW YORK 10019

(212) 541-6980
FAX: (212) 541-6994

July 5, 2004

<u>Via Fax 845-638-5312</u>
Hon. Andrew P. O'Rourke, J.S.C.
Supreme Court of New York
County of Rockland
1 S. Main Street
New City, New York 10956
<u>Attention: Debra Cohen, Esq.</u>

Re:     Bryant v. Broadcast Music, Inc.
        Index Nos. 2821/02 & 5192/00
        Our File No. 3689

Dear Judge O'Rourke:

    I apologize for having to write this letter on literally the
eve of trial, but the defendants' recent conduct has necessitated
the Court's intervention. The defendants have inundated us with
newly produced documents as follows:

1)  On June 22nd, 2004, defendant Sunbow produced 159
    documents bearing Bates Stamp numbers SUN 411 to SUN
    570, which we received the following day. Sunbow
    failed to provide us with any justification for this
    inexcusably late production, despite our request.

2)  On June 23rd, 2004, defendant Bacal produced 1002 pages
    of documents bearing Bates Stamp numbers JB 1 to JB
    1002, which we received on June 24th. These documents
    consist of two volumes of the closing materials
    memorializing defendant Bacal's sale of his ownership
    interest of Griffin Bacal, Inc. on July 22, 1994 and
    Bacal's sale of his ownership interest in Sunbow on
    April 8, 1998. These documents have clearly been in
    defendant Bacal's custody and control from the
    inception of this action in 2000, and were requested
    during Bacal's deposition on November 15, 2001 and
    numerous times thereafter. Bacal's recent production
    of these documents at the 11th hour is therefore
    unjustifiable.

3) On July 2nd, 2004 @ 8:15 p.m., defendant Sunbow emailed 282 documents to our office (Bates Stamped SUN 571 to SUN 853). This production included numerous license agreements and other possibly relevant materials, which we have not even had the opportunity to fully digest.

4) On July 4th, 2004 @ 2:15 p.m., defendant Sunbow emailed an additional 13 documents to our office (Bates Stamped SUN 854 to SUN 867). This latest round of production included an Agreement and an Inducement Letter between Sunbow and a composer named Barry Harman, which were dated September 2nd, 1985. Again, Sunbow provided no excuse for this belated production of this almost twenty year old agreement.

The foregoing reveals that beginning on June 23rd and ending as recently as mid-day on the 4th of July, we received a total of 1,456 documents from the defendants. This action has been pending for over four years, during which time Sunbow produced only 410 documents. Defendants have therefore intentionally held off production until the 11th hour in a concerted effort to swamp Plaintiff with a blizzard of seemingly relevant documents. The defendants' abuse of the discovery process has certainly prejudiced Plaintiff.

Under these circumstances, we must respectfully urge that the trial be bifurcated because we simply do not have sufficient time to analyze the recent document production received from both defendants relative to damages. Many of the documents here bear directly upon the royalty formulas and royalty payments received by Sunbow and TV Loonland with respect to Plaintiff's musical compositions at issue in this case.

Plaintiff therefore reserves her right to object to these newly-produced documents and to bring an in limine motion as to those documents for which no discovery has been had.

Respectfully submitted,

Patrick J. Monaghan Jr.

PJM · nrca
cc: Gloria Phares, Esq. via fax (212) 336-2222
    David Tannenbaum, Esq. via fax (212) 692-1020
18962

# MONAGHAN, MONAGHAN, LAMB & MARCHISIO

**28 W. Grand Avenue**
**Montvale, NJ 07645**
**Phone # 201-802-9060**
**Fax # 201-802-9066**

# FAX TRANSMITTAL

**TO:**      Hon. Andrew P. O'Rourke, J.S.C.    **FAX #:** 845-638-5312
           Gloria Phares, Esq.                   212-336-2222
           David Tannenbaum, Esq.             212-692-1020

**FROM:**   Patrick J. Monaghan, Jr. Esq.

**DATE:**    July 5, 2004

**RE:**      Bryant v. Sunbow Productions, Inc.
          Index No. 5192/00
          Our File No. 3689

NUMBER OF PAGES INCLUDING THIS PAGE: 3

*The information contained in this facsimile message is privileged and confidential intended only for the use of the party named below. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this telecopy is strictly prohibited. All privileges otherwise applicable are strictly reserved.*

*18567*

Exhibit O



PLAINTIFF'S
EXHIBIT

# Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas   New York, NY 10036-6710   212.336.2000   fax 212.336.2222   www.pbwt.com

December 1, 2006

By Email

John C. Knapp
(212) 336-7645
Direct Fax (212) 336-1241
jknapp@pbwt.com

Patrick J. Monaghan, Esq.
Monaghan, Monaghan, Lamb & Marchisio LLP
28 W. Grand Avenue, 2nd floor
Montvale, NJ 07645

> Re:   Bryant v. Sunbow, Index No. 2821/02
> <u>Bryant v. BMI, et al., Index No. 5192/00</u>

Dear Mr. Monaghan:

      I am enclosing the Sony/ATV royalty reports that should have accompanied the payment that Sunbow recently made to Anne Bryant. These reports reflect royalties that Sunbow has always conceded are due to her pursuant to the Kinder & Bryant agreement and her arrangements with various international performing rights societies, many of which collect performance royalties and remit them to Sony/ATV. These reports are the same as those that Sunbow has produced in the past and which Bryant has produced to Sunbow and has had admitted into evidence. See, e.g., Plaintiff's Exhibit 19. Please note these statements contain payments for other artists as well. The recent payment reflects the total of the amounts stated for Ms. Bryant in these five reports.

      Although we can understand why you might want to use this payment and the royalty statements to divert the parties' attention from the business of the upcoming trial, neither the payment nor the statements have any bearing on Ms. Bryant's burden of showing that she had an oral agreement with Sunbow that co-existed with the written agreements she concedes governed all her relations with Sunbow and which contained merger clauses forbidding oral amendments.

Sincerely yours,

John C. Knapp

Enclosures

cc:   Justice Andrew P. O'Rourke (by FAX)
      Judith M. Saffer, Esq.

PLTFS
48
in EYA

# SONY/ATV MUSIC PUBLISHING LLC

SONY MUSIC PUBLISHING - FILM & TV
P.O. BOX 1273
NASHVILLE, TN

37202
615-726-8328

TV-LOONLAND AG
MUENCHNER STRASSE 16
85774 UNTERFOEHRING
GERMANY

WRITER CODE    : O6022
S/S NUMBER     :
PERIOD ENDING  : 03/30/04
PAGE NUMBER    : 1

BALANCE LAST PERIOD :        46064.92 CR

| DATE | REF. | | |
|------|------|---|---|
| 3/19/04 | WIRE36 | CREDIT BALANCE PAYMENT | 46064.92 DR |
| 3/03/04 | PEF4J | APOLLO'S CHARIOT/ ASCAP SPECIAL CABLE DI | 9471.99 CR |
| 3/03/04 | PEF4K | WILDSTAR/ ASCAP SPECIAL CABLE DISTRIBUTI | 7260.85 CR |
| 8/30/04 | FO8022 | ROYALTY WILDSTAR MUSIC | -1284.65 CR |
| 8/30/04 | FO8024 | ROYALTY STARWILD MUSIC | 1052.78 CR |
| 8/30/04 | FO8025 | ROYALTY APOLLO'S CHARIOT MUSIC | 18278.01 CR |
| 8/30/04 | FO8028 | ROYALTY BANANA ALERT MUSIC | 23885.14 CR |
| 8/30/04 | FO8054 | ROYALTY BRYANT, ANNE | 327.12 CR |
| 8/30/04 | FO8055 | ROYALTY BACAL, JOE | 9.72 CR |
| 8/30/04 | FO8056 | ROYALTY KINDER, FORD | 287.84 CR |
| 8/30/04 | FO8058 | ROYALTY HARMAN, BARRY | 3.30 CR |
| 8/30/04 | FO8059 | ROYALTY WALSH,ROBERT J. | 13.70 CR |
| 8/30/04 | FO8060 | ROYALTY GOODMAN, TOMMY | 0.67 CR |
| 8/30/04 | FO8082 | ROYALTY SPENGLER, DAVID | 1.37 CR |
| 8/30/04 | FO8083 | ROYALTY CHASE, TOM | 0.03 CR |
| 8/30/04 | FO8064 | ROYALTY RUCKER, STEVE | 0.03 CR |
| 8/30/04 | FO8473 | ROYALTY DOUGLAS, JOHNNY | 12.83 CR |
| 8/30/04 | F10258 | ROYALTY CAREY, MICHAEL | 43.13 CR |

BALANCE THIS PERIOD :        60822.41 CR

PAYMENT NOW DUE :        60822.41

QUESTIONS REGARDING THIS STATEMENT SHOULD BE DIRECTED TO
SONY/ATV MUSIC PUBLISHING (615/726-8328)

# SONY/ATV MUSIC PUBLISHING LLC

SONY MUSIC PUBLISHING - FILM & TV
P.O. BOX 1273
NASHVILLE, TN

37202
615-726-8328

TV-LOONLAND AQ
NUENCHNER STRASSE 16
85774 UNTERFOEHRING
GERMANY

| | |
|---|---|
| PAYEE CODE | : 06022 |
| WRITER CODE | : 06084 |
| S/S NUMBER | : |
| PERIOD ENDING | : 06/30/04 |
| PAGE NUMBER | : 1 |

IN ACCOUNT WITH : BRYANT, ANNE

| ) RECORD NO. | UNITS | PERIOD | PERC. RCVD. | AMOUNT RECEIVED | YOUR SHARE | AMOUNT DUE | SRCE./SONG TOTAL |
|---|---|---|---|---|---|---|---|
| * MECHANICAL STATEMENT * | | | | | | | |
| GI JOE - CUES | | | | | | | |
| DOUGLAS/BRYANT/WALSH | | | | | | | |
| SONY MUSIC | | | | | | | |
| C5993 RINGN0300171 | 16 | 10/03-12/03 | 100.000 | 1.58 | 14.894 | 0.23 | |
| D7028 RINGP0300271 | 2 | 01/04-03/04 | 100.000 | 0.40 | 14.894 | 0.06 | |
| D7028 RINGP0300271 | 7 | 01/04-03/04 | 100.000 | 1.21 | 14.894 | 0.18 | |
| D7028 RINGP0300271 | 80 | 01/04-03/04 | 100.000 | 27.64 | 14.894 | 4.15 | |
| C9983 RING0300271 | 80 | 10/03-12/03 | 100.000 | 13.84 | 14.894 | 2.07 | |
| C9983 RINGP0300271 | 202 | 10/03-12/03 | 100.000 | 40.20 | 14.894 | 6.02 | |
| | | | | | | | 12.70 ** |
| I'M GONNA CHANGE | | | | | | | |
| BALLARD | | | | | | | |
| SMP CANADA | | | | | | | |
| D5245 7883885882 | 5 | 07/03-12/03 | 75.000 | 0.20 | 22.873(21.250) | 0.04 | |
| D5245 7883885882 | 8 - | 07/03-12/03 | 75.000 | 0.37- | 22.873(21.250) | 0.06- | |
| D5245 7883885892 | 13 | 07/03-12/03 | 75.000 | 0.81 | 22.873(21.250) | 0.11 | |
| D5245 7883885882 | 23 | 07/03-12/03 | 75.000 | 1.87 | 22.873(21.250) | 0.42 | |
| D5245 7883885882 | 68 | 07/03-12/03 | 75.000 | 2.31 | 22.873(21.250) | 0.53 | |
| D5245 7883885882 | 72 | 07/03-12/03 | 75.000 | 2.88 | 22.873(21.250) | 0.68 | |
| D5245 7883885892 | 104 | 07/03-12/03 | 75.000 | 4.32 | 22.873(21.250) | 0.83 | |
| ) | | | | | | | 2.69 ** |
| TRANSFORMERS VOCAL THEME II - UNIDENTIFIED | | | | | | | |
| KENDER/BACAL/BRYANT | | | | | | | |
| SMP UNITED KINGDOM | | | | | | | |
| D5588 | | 07/03-12/03 | 92.500 | 0.68 | 3.859(03.570) | 0.02 | |
| D5588 | 8 | 07/03-12/03 | 92.500 | 1.17 | 3.859(03.570) | 0.04 | |
| D5588 | 15 | 07/03-12/03 | 92.500 | 2.21 | 3.859(03.570) | 0.08 | |
| D5588 NMYN384J | 1 | 07/03-12/03 | 92.500 | 3.44 | 3.859(03.570) | 0.09 | |
| | | | | | | | 0.23 ** |
| TRANSFORMERS INTRUMENTAL THEME | | | | | | | |
| BRYANT/BACAL | | | | | | | |
| MISC. MECHANICAL INCOME | | | | | | | |
| C8311 | 1000 | 10/03-10/03 | | 75.40 | 33.750 | 25.44 | |
| | | | | | | | 25.44 * |
| | | MECHANICAL TOTAL | | 178.64 | | 41.06 | |

SUN 1143

# SONY/ATV MUSIC PUBLISHING LLC

| | | PERIOD | PERC. RCVD. | AMOUNT RECEIVED | YOUR SHARE | | AMOUNT DUE | SRCE./SONG TOTAL |
|---|---|---|---|---|---|---|---|---|
| TRANSFORMERS MAIN THEME | (TV SER) | | | | | | | |
| BRYANT/KINDER | | | | | | | | |
| MISC. INCOME | | | | | | | | |
| C9129 ZINGY | | 717 | 07/03-09/03 | | 71.70 | 22.500 | 16.13 | |
| | | | | | | | | 16.13 * |
| ZINGY, INC. | | | | | | | | |
| E0557 Ringtone | | 8714 | 01/04-03/04 | 100.000 | 671.40 | 22.500 | 151.06 | |
| E0782 Ringtone | | 1 | 01/04-03/04 | 100.000 | 26.00 | 22.500 | 5.82 | |
| D8040 Zingy | | 1244 | 10/03-12/03 | 100.000 | 134.40 | 22.500 | 30.24 | |
| | | | | | | | | 168.92 * |
| | | | | | | | | 203.05 ** |
| | | | | | | | | |
| TRANSFORMERS VOCAL THEME 2 - HASBORO | | | | | | | | |
| KINDER/EUCAL/BRYANT | | | | | | | | |
| SHP HOLLAND | | | | | | | | |
| 5951 | | | 07/03-12/03 | 82.500 | 27.03 | 2.858(03.570) | 1.04 | |
| | | | | | | | | 1.04 ** |
| | | | | | | | | |
| TRANSFORMERS (TV SER - INCIDENTAL MUSIC) | | | | | | | | |
| BRYANT/KINDER | | | | | | | | |
| KANEMATSE USA, INC. | | | | | | | | |
| E0765 Ringtone | | 871 | 01/04-03/04 | 100.000 | 160.43 | 22.500 | 36.09 | |
| | | | | | | | | 36.09 * |
| MIDI RINGTONES, LLC | | | | | | | | |
| E1110 Ringtone | | 823 | 01/04-03/04 | 100.000 | 95.29 | 22.500 | 21.44 | |
| | | | | | | | | 21.44 * |
| MISC. INCOME | | | | | | | | |
| D9141 Ringtone | | 481 | 10/03-12/03 | 100.000 | 49.77 | 22.500 | 11.19 | |
| C9129 ZINGY | | 10 | 07/03-09/03 | | 1.00 | 22.500 | 0.22 | |
| C9129 ZINGY | | 41 | 07/03-09/03 | | 4.10 | 22.500 | 0.92 | |
| C9129 ZINGY | | 398 | 07/03-09/03 | | 39.50 | 22.500 | 8.88 | |
| | | | | | | | | 21.21 * |
| ZINGY, INC. | | | | | | | | |
| E0557 Ringtone | | 24 | 01/04-03/04 | 100.000 | 2.40 | 22.500 | 0.54 | |
| D8036 Zingy | | 91 | 04/03-06/03 | 100.000 | 9.10 | 22.500 | 2.04 | |
| D8040 Zingy | | 29 | 10/03-12/03 | 100.000 | 2.90 | 22.500 | 0.65 | |
| | | | | | | | | 3.23 */ |
| | | | | | | | | 81.97 /* |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ) | | SUNDRY TOTAL | | 1294.02 | | 286.06 | |

# SONY/ATV MUSIC PUBLISHING LLC

ROYALTY STATEMENT                                    12488

SONY MUSIC PUBLISHING - FILM & TV
P.O. BOX 1273
NASHVILLE, TN

37202
615-726-8328

TV-LOONLAND AG                    PAYEE CODE     : 08022
MUENCHNER STRASSE 16             WRITER CODE    : 08054
85774 UNTERFOEHRING              S/S NUMBER     :
GERMANY                          PERIOD ENDING  : 08/30/04
                                 PAGE NUMBER    :    1

IN ACCOUNT WITH : BRYANT, ANNE

|                    | AMOUNT RECEIVED | AMOUNT DUE |
|--------------------|-----------------|------------|
| MECHANICAL TOTAL   | 176.64          | 41.06      |
| SUNDRY TOTAL       | 1294.02         | 286.06     |
| STATEMENT TOTAL :  | 1472.06         | 327.12     |

# SONY/ATV MUSIC PUBLISHING LLC

SONY MUSIC PUBLISHING - FILM & TV
P.O. BOX 1273
NASHVILLE, TN

37202
615-726-8328

TV-LOONLAND AG
MUENCHNER STRASSE 18
85774 UNTERFOEHRING
GERMANY

PAYEE CODE    : 08022
WRITER CODE   : 08084
S/S NUMBER    :
PERIOD ENDING : 08/30/04
PAGE NUMBER   :     1

IN ACCOUNT WITH : BRYANT, ANNE

| DATE | REF. | | | |
|------|------|--|--|--|
| 8/30/04 | T08022 | TRANSFER OF BALANCE TO MAIN ACCOUNT | 327.12 DR | |
| 8/30/04 | ROYLTS | ROYALTIES FOR PERIOD TO 08/04 | 327.12 CR | |

BALANCE THIS PERIOD :     0.00

QUESTIONS REGARDING THIS STATEMENT SHOULD BE DIRECTED TO
SONY/ATV MUSIC PUBLISHING (615/726-8328)

SUN 1146

# SONY/ATV MUSIC PUBLISHING LLC

SONY MUSIC PUBLISHING - FILM & TV
P.O. BOX 1273
NASHVILLE, TN

37202
615-726-8326

TV-LOONLAND AG
MUENCHNER STRASSE 16
85774 UNTERFOEHRING
GERMANY

WRITER CODE   : 06022
S/S NUMBER    :
PERIOD ENDING : 12/31/04
PAGE NUMBER   :   1

BALANCE LAST PERIOD :        60823.41 CR

| DATE | REF. | | |
|------|------|---|---|
| 9/14/04 | 364 | 1H01 CREDIT BALANCE PAYMENT | 60822.41 DR |
| 12/31/04 | F08023 | ROYALTY WILDSTAR MUSIC | 1289.00 CR |
| 12/31/04 | F08024 | ROYALTY STARWILD MUSIC | 4857.83 CR |
| 12/31/04 | F08025 | ROYALTY APOLLO'S CHARIOT MUSIC | 12867.03 CR |
| 12/31/04 | F08028 | ROYALTY BANANA ALERT MUSIC | 2812.02 CR |
| 12/31/04 | F08064 | ROYALTY BRYANT, ANNE | 288.91 CR |
| 12/31/04 | F08055 | ROYALTY BACAL, JOE | 16.52 CR |
| 12/31/04 | F08056 | ROYALTY KINDER, FORD | 288.23 CR |
| 12/31/04 | F08057 | ROYALTY NICHLIN, SPENCER | 15.43 CR |
| 12/31/04 | F08058 | ROYALTY HARMAN, BARRY | 3.31 CR |
| 12/31/04 | F08059 | ROYALTY WALSH,ROBERT J. | 148.37 CR |
| 12/31/04 | F08080 | ROYALTY GOODMAN, TOMMY | 6.82 CR |
| 12/31/04 | F08062 | ROYALTY SPANGLER, DAVID | 5.51 CR |
| 12/31/04 | F08063 | ROYALTY CHASE, TOM | 1.73 CR |
| 12/31/04 | F08064 | ROYALTY RICKER, STEVE | 1.73 CR |
| 12/31/04 | F09472 | ROYALTY DOUGLAS, JOHNNY | 31.88 CR |
| 12/31/04 | F09474 | ROYALTY MERRILL, JONATHAN | 131.33 CR |
| 12/31/04 | F09475 | ROYALTY THOMAS, ALAN | 131.33 CR |
| 12/31/04 | F09476 | ROYALTY ASHFORD, WILLIAM | 131.33 CR |
| 12/31/04 | F09477 | ROYALTY ANDREWS, RUSTY | 5.93 CR |
| 12/31/04 | F09478 | ROYALTY CURRERI, LEE | 5.93 CR |
| 12/31/04 | F09840 | ROYALTY MICHAELS, MONROE | 28.44 CR |
| 12/31/04 | F08841 | ROYALTY TAYLOR, STEPHEN JAMES | 13.22 CR |
| 12/31/04 | F10255 | ROYALTY CAREY, MICHAEL | 0.17 CR |

BALANCE THIS PERIOD :        22853.71 CR
----------------
PAYMENT NOW DUE :        22893.71

QUESTIONS REGARDING THIS STATEMENT SHOULD BE DIRECTED TO
SONY/ATV MUSIC PUBLISHING (615/726-8326)

# SONY/ATV MUSIC PUBLISHING LLC

SONY MUSIC PUBLISHING - FILM & TV
P.O. BOX 1273
NASHVILLE, TN

37202
615-726-8326

TV-LOOHLAND AG
MUENCHNER STRASSE 19
85774 UNTERFOEHRING
GERMANY

| | |
|---|---|
| PAYEE CODE | : 06022 |
| WRITER CODE | : 06054 |
| S/S NUMBER | : |
| PERIOD ENDING | : 12/31/04 |
| PAGE NUMBER | : 1 |

IN ACCOUNT WITH : BRYANT, ANNE

| RECORD NO. | UNITS | PERIOD | PERC. RCVD. | AMOUNT RECEIVED | YOUR SHARE | AMOUNT DUE | SRCE./SONG TOTAL |
|---|---|---|---|---|---|---|---|
| * MECHANICAL STATEMENT * | | | | | | | |
| GI JOE - CUES | | | | | | | |
| DOUGLAS/BRYANT/WALSH | | | | | | | |
| SONY MUSIC | | | | | | | |
| E9458 RINGMO300171 | 1 | 07/04-09/04 | 100.000 | 0.10 | 14.884 | 0.01 | |
| E3905 RINGPO300271 | 6 | 04/04-06/04 | 100.000 | 1.59 | 14.884 | 0.23 | |
| E3905 RINGPO300271 | 159 | 04/04-06/04 | 100.000 | 24.85 | 14.884 | 3.74 | |
| E9458 RINGPO300271 | 130 | 07/04-09/04 | 100.000 | 25.87 | 14.884 | 3.67 | |
| E9458 RINGPO300271 | 258 | 07/04-09/04 | 100.000 | 40.45 | 14.884 | 6.05 | |
| | | | | | | | 13.91 ** |
| I'M GONNA CHANGE | | | | | | | |
| BALLARD | | | | | | | |
| BMP CANADA | | | | | | | |
| E8438 7863965682 | 2 | 01/04-06/04 | 75.000 | 0.04 | 22.873(21.250) | 0.01 | |
| E8428 7863965682 | 5 | 01/04-06/04 | 75.000 | 0.20 | 22.873(21.250) | 0.04 | |
| E8438 7863965682 | 8 | 01/04-06/04 | 75.000 | 0.34 | 22.873(21.250) | 0.07 | |
| E8438 7863965682 | 12 | 01/04-06/04 | 75.000 | 0.51 | 22.873(21.250) | 0.11 | |
| E8438 7863965682 | 107 | 01/04-06/04 | 75.000 | 4.57 | 22.873(21.250) | 1.04 | |
| E8438 70C3965682 | 145 | 01/04-06/04 | 75.000 | 6.18 | 22.873(21.250) | 1.42 | |
| | | | | | | | 2.69 ** |
| TRANSFORMERS VOCAL THEME II - UNIDENTIFIED | | | | | | | |
| KINDER/BACAL/BRYANT | | | | | | | |
| SMP UNITED KINGDOM | | | | | | | |
| 9781 | 4 | 01/04-06/04 | 92.500 | 0.56 | 3.859(03.570) | 0.02 | |
| 9781 | 15 | 01/04-06/04 | 92.500 | 2.16 | 3.859(03.570) | 0.08 | |
| | | | | | | | 0.10 ** |

|  | MECHANICAL TOTAL | 107.62 | | 16.70 ✓ |
|---|---|---|---|---|

# SONY/ATV MUSIC PUBLISHING LLC

| | PERIOD | PERC. RCVD. | AMOUNT RECEIVED | YOUR SHARE | AMOUNT DUE | SRCE./SONG TOTAL |
|---|---|---|---|---|---|---|
| **GI JOE - CUES** | | | | | | |
| DOUGLAS/BRYANT/WALSH | | | | | | |
| MISC. INCOME | | | | | | |
|   E7876 IMPROVISTA | 58 | 04/04-06/04 | | 7.60 | 14.994 | 1.13 |
| | | | | | | 1.13 ** |
| | | | | | | |
| **TRANSFORMERS MAIN THEME**   (TV SER) | | | | | | |
| BRYANT/KINDER | | | | | | |
| KANBRATSE USA, INC. | | | | | | |
|   F1146 RINGTONE | 819 | 07/04-09/04 | 100.000 | 96.23 | 22.500 | 21.65 |
| | | | | | | 21.65 * |
| | | | | | | |
| MIDI RINGTONES, LLC | | | | | | |
|   E3708 MIDI RINGTONES | 702 | 04/04-06/04 | | 70.63 | 22.500 | 15.89 |
|   F1144 RINGTONE | 915 | 07/04-09/04 | 100.000 | 92.88 | 22.500 | 20.89 |
| | | | | | | 36.78 * |
| | | | | | | |
| ZINGY, INC. | | | | | | |
|   E3641 DOWNLOADS | 2 | 04/04-06/04 | | 0.80 | 22.500 | 0.18 |
|   3641 DOWNLOADS | 72 | 04/04-06/04 | | 7.20 | 22.500 | 1.62 |
|   3641 DOWNLOADS | 108 | 04/04-06/04 | | 10.80 | 22.500 | 2.43 |
|   E3641 DOWNLOADS | 5231 | 04/04-06/04 | | 522.10 | 22.500 | 117.99 |
|   F1145 RINGTONE | 1446 | 07/04-09/04 | 100.000 | 272.91 | 22.500 | 61.40 |
| | | | | | | 183.32 * |
| | | | | | | 241.75 ** |
| | | | | | | |
| **TRANSFORMERS**    (TV SER - INCIDENTAL MUSIC) | | | | | | |
| BRYANT | | | | | | |
| ZINGY, INC. | | | | | | |
|   F1145 RINGTONE | 183 | 07/04-09/04 | 100.000 | 16.30 | 45.000 | 7.33 |
| | | | | | | 7.33 ** |

|  | | SUNDRY TOTAL | | 1088.47 | | 250.21 ✓ |

# SONY/ATV MUSIC PUBLISHING LLC

SONY MUSIC PUBLISHING - FILM & TV
P.O. BOX 1273
NASHVILLE, TN

37202
615-726-8325

TV-LOONLAND AG                          PAYEE CODE    : O6022
MUENCHNER STRASSE 16                     WRITER CODE   : O6064
85774 UNTERFOEHRING                      S/S NUMBER    :
GERMANY                                  PERIOD ENDING : 12/31/04
                                         PAGE NUMBER   :    1

IN ACCOUNT WITH : BRYANT, ANNE

|                    | AMOUNT RECEIVED | AMOUNT DUE |
|--------------------|-----------------|------------|
| MECHANICAL TOTAL   | 107.62          | 16.70      |
| SUNDRY TOTAL       | 1098.47         | 250.21     |
| STATEMENT TOTAL :  | 1206.09         | 266.91     |

# SONY/ATV MUSIC PUBLISHING LLC

R O Y A L T Y   S T A T E M E N T                    11984

SONY MUSIC PUBLISHING - FILM & TV
P.O. BOX 1273
NASHVILLE, TN

37202
615-726-8328

TV-LOONLAND AG                          PAYEE CODE    : 06022
MUENCHNER STRASSE 16                     WRITER CODE   : 06054
85774 UNTERFOEHRING                      S/S NUMBER    :
GERMANY                                  PERIOD ENDING : 12/31/04
                                         PAGE NUMBER   : 1    1

IN ACCOUNT WITH : BRYANT, ANNE

DATE      REF.
12/31/04  TO8022   TRANSFER OF BALANCE TO MAIN ACCOUNT           288.91 CR
12/31/04  ROYLTS   ROYALTIES FOR PERIOD TO 12/04                 288.91 CR

                              BALANCE THIS PERIOD :        0.00
                                                      -------------

              QUESTIONS REGARDING THIS STATEMENT SHOULD BE DIRECTED TO
                    SONY/ATV MUSIC PUBLISHING (615/726-8323)

# SONY/ATV MUSIC PUBLISHING LLC

$I/05$

SONY MUSIC PUBLISHING – FILM & TV
P.O. BOX 1273
NASHVILLE, TN

37203
616-726-8328

TV-LOONLAND AG
MUENCHNER STRASSE 16
83774 UNTERFOEHRING
GERMANY

| WRITER CODE   | : | 06022    |
|---------------|---|----------|
| S/S NUMBER    | : |          |
| PERIOD ENDING | : | 06/30/05 |
| PAGE NUMBER   | : | 1        |

BALANCE LAST PERIOD :     22883.71 CR

| DATE | REF. | | |
|------|------|---|---|
| 3/23/05 | 403WIR | CREDIT BALANCE PAYMENT | 22883.71 DR |
| 6/30/05 | F06023 | ROYALTY WILDSTAR MUSIC | 1678.89 CR |
| 6/30/05 | F06024 | ROYALTY STARWILD MUSIC | 4221.83 CR |
| 6/30/05 | F06025 | ROYALTY APOLLO'S CHARIOT MUSIC | 12874.02 CR |
| 6/30/05 | F06026 | ROYALTY BANANA ALERT MUSIC | 25046.63 CR |
| 6/30/05 | F06054 | ROYALTY BRYANT, ANNE | 206.22 CR |
| 6/30/05 | F06055 | ROYALTY BAGAL, JOE | 1206.55 CR |
| 6/30/05 | F06056 | ROYALTY KINDER, FORD | 1480.81 CR |
| 6/30/05 | F06057 | ROYALTY MICHLIN, SPENCER | 1200.24 CR |
| 6/30/05 | F06058 | ROYALTY HARMAN, BARRY | 2.19 CR |
| 6/30/05 | F06059 | ROYALTY WALSH,ROBERT J. | 28.72 CR |
| 6/30/05 | F06060 | ROYALTY GOODMAN, TOMMY | 0.38 CR |
| 6/30/05 | F06062 | ROYALTY SPANGLER, DAVID | 0.16 CR |
| 6/30/05 | F06063 | ROYALTY CHASE, TOM | 0.12 CR |
| 6/30/05 | F06064 | ROYALTY BECKER, STEVE | 0.12 CR |
| 6/30/05 | F06068 | ROYALTY COSENZA, GIACOMO | 2.87 CR |
| 6/30/05 | F06473 | ROYALTY DOUGLAS, JOHNNY | 25.72 CR |
| 6/30/05 | F06477 | ROYALTY ANDREWS, RUSTY | 20.24 CR |
| 6/30/05 | F06478 | ROYALTY CURRERI, LEE | 20.24 CR |
| 6/30/05 | F06840 | ROYALTY MICHAELS, MONROE | 22.78 CR |
| 6/30/05 | F06941 | ROYALTY TAYLOR, STEPHEN JAMES | 11.87 CR |
| 6/30/05 | F10251 | ROYALTY HANLEY, KAY | 0.87 CR |
| 6/30/05 | F10252 | ROYALTY EISENSTEIN, MICHAEL | 0.11 CR |
| 6/30/05 | F10253 | ROYALTY MCKENNA, GREG | 0.11 CR |
| 6/30/05 | F10254 | ROYALTY RIEBLING, SCOTT | 0.11 CR |
| 6/30/05 | F10255 | ROYALTY CAREY, MICHAEL | 476.78 CR |

BALANCE THIS PERIOD :     48206.78 CR
                          ------------
PAYMENT NOW DUE  :        48206.78

QUESTIONS REGARDING THIS STATEMENT SHOULD BE DIRECTED TO
SONY/ATV MUSIC PUBLISHING (615/726-8328)

SUN 1152

# SONY/ATV MUSIC PUBLISHING LLC

SONY MUSIC PUBLISHING - FILM & TV
P.O. BOX 1273
NASHVILLE, TN

37202
615-726-8226

| TV-LOONLAND AG | | | | | PAYEE CODE | : 08022 |
| MUENCHNER STRASSE 16 | | | | | WRITER CODE | : 08054 |
| 85774 UNTERFOEHRING | | | | | S/S NUMBER | : |
| GERMANY | | | | | PERIOD ENDING | : 06/30/05 |
| | | | | | PAGE NUMBER | : 1 |

IN ACCOUNT WITH : BRYANT, ANNE

| RECORD NO. | UNITS | PERIOD | PERC. RCVD. | AMOUNT RECEIVED | YOUR SHARE | AMOUNT DUE | SRCE./SONG TOTAL |
|---|---|---|---|---|---|---|---|
| * MECHANICAL STATEMENT * | | | | | | | |
| GI JOE - CUES | | | | | | | |
| DOUGLAS/BRYANT/WALSH | | | | | | | |
| SONY MUSIC | | | | | | | |
| F3348 RDMPO300271 | 91 | 10/04-12/04 | 100.000 | 18.11 | 14.894 | 2.71 | |
| F3348 RDMPO300271 | 221 | 10/04-12/04 | 100.000 | 34.03 | 14.894 | 5.10 | |
| F8222 RDMPO300271 | 48 | 01/05-03/05 | 100.000 | 8.18 | 14.894 | 1.57 | |
| F8222 RDMPO300271 | 89 | 01/05-03/05 | 100.000 | 13.52 | 14.894 | 2.04 | |
| F8222 RDMPO300271 | 137 | 01/05-03/05 | 100.000 | 20.90 | 14.894 | 3.14 | 14.35 ** |
| I'M GONNA CHANGE | | | | | | | |
| BALLARD | | | | | | | |
| SMP CANADA | | | | | | | |
| F4008 7863865892 | 3 | 07/04-12/04 | 75.000 | 0.13 | 22.973(21.250) | 0.02 | |
| F4008 7863865892 | 5 | 07/04-12/04 | 75.000 | 0.21 | 22.973(21.250) | 0.04 | |
| F4008 7863865892 | 8 | 07/04-12/04 | 75.000 | 0.36 | 22.973(21.250) | 0.08 | |
| F4008 7863865892 | 13 | 07/04-12/04 | 75.000 | 0.55 | 22.973(21.250) | 0.12 | |
| F4008 7863865892 | 58 | 07/04-12/04 | 75.000 | 2.55 | 22.973(21.250) | 0.59 | |
| F4008 7863865892 | 94 | 07/04-12/04 | 75.000 | 4.19 | 22.973(21.250) | 0.93 | 1.81 ** |
| TRANSFORMERS MAIN THEME (TV SER) | | | | | | | |
| BRYANT/KINDER | | | | | | | |
| TURN UP THE MUSIC, INC. | | | | | | | |
| F7508 TUTM1444 | 2285 | 01/05-03/05 | | 89.78 | 22.500 | 20.19 | |
| F7531 TUTM1444 | 2285 | 01/05-03/05 | | 89.78 | 22.500 | 20.19 | 40.38 ** |
| TRANSFORMERS (TV SER - INCIDENTAL MUSIC) | | | | | | | |
| BRYANT/KINDER | | | | | | | |
| MISCELLANEOUS | | | | | | | |
| F7581 | 40 | 11/04-11/04 | | 21.65 | 22.500 | 4.87 | 4.87 ** |
| | | MECHANICAL TOTAL | | 305.06 | | 81.42 | |

# SONY/ATV MUSIC PUBLISHING LLC

| | | PERIOD | PERC. RCVD. | AMOUNT RECEIVED | YOUR SHARE | AMOUNT DUE | SRCE./SONG TOTAL |
|---|---|---|---|---|---|---|---|
| **GI JOE - CLIS** | | | | | | | |
| DOUGLAS/BRYANT/WALSH | | | | | | | |
| DOMPLAY INC | | | | | | | |
| F7538 TV/Film | | 01/05-03/05 | 100.000 | 25.00 | 14.894 | 3.74 | |
| | | | | | | | 3.74 * |
| IMPROVISTA INTERACTIVE MUSIC | | | | | | | |
| F8838 Ringtone | 1 | 01/05-03/05 | 100.000 | 0.13 | 14.994 | 0.01 | |
| | | | | | | | 0.01 * |
| KANEMATSU USA, INC. | | | | | | | |
| F7448 Ringtone | 315 | 01/05-03/05 | 100.000 | 50.45 | 14.894 | 7.56 | |
| | | | | | | | 7.56 * |
| MISC. INCOME | | | | | | | |
| F3125 Ringtone | 6 | 10/04-12/04 | 100.000 | 0.38 | 14.894 | 0.05 | |
| | | | | | | | 0.05 * |
| | | | | | | | 11.36 ** |
| | | | | | | | |
| **TRANSFORMERS MAIN THEME (TV SER)** | | | | | | | |
| BRYANT/KINDER | | | | | | | |
| KANEMATSU USA, INC. | | | | | | | |
| F6202 2411 | 1 | 10/04-12/04 | | 0.15 | 22.500 | 0.03 | |
| F6202 2411 | 2 | 10/04-12/04 | | 0.31 | 22.500 | 0.06 | |
| F6202 2411 | 6 | 10/04-12/04 | | 0.85 | 22.500 | 0.21 | |
| F6202 2411 | 569 | 10/04-12/04 | | 89.57 | 22.500 | 20.15 | |
| | | | | | | | 20.45 * |
| TUTCH MOBILE MEDIA | | | | | | | |
| F4823 Ringtone | 102 | 10/04-12/04 | 100.000 | 20.30 | 22.500 | 4.58 | |
| | | | | | | | 4.58 * |
| ZINGY, INC. | | | | | | | |
| F5098 Ringtone | 1 | 10/04-12/04 | 100.000 | 0.16 | 22.500 | 0.03 | |
| F5098 Ringtone | 2 | 10/04-12/04 | 100.000 | 0.30 | 22.500 | 0.06 | |
| F5098 Ringtone | 5 | 10/04-12/04 | 100.000 | 4.75 | 22.500 | 1.06 | |
| F5098 Ringtone | 16 | 10/04-12/04 | 100.000 | 1.80 | 22.500 | 0.33 | |
| F5098 Ringtone | 45 | 10/04-12/04 | 100.000 | 4.50 | 22.500 | 1.01 | |
| F5098 Ringtone | 1061 | 10/04-12/04 | 100.000 | 211.14 | 22.500 | 47.50 | |
| | | | | | | | 50.02 * |
| | | | | | | | 75.03 ** |
| | | | | | | | |
| **TRANSFORMERS VOCAL THEME II - UNIDENTIFIED** | | | | | | | |
| KINDER/BACAL/BRYANT | | | | | | | |
| SMP UNITED KINGDOM | | | | | | | |
| F3815 | 42 | 07/04-12/04 | 82.500 | 8.85 | 3.859(03.870) | 0.37 | |
| | | | | | | | 0.37 * |
| ZINGY, INC. | | | | | | | |
| F8312 Theme | 72 | 01/05-03/05 | 100.000 | 7.20 | 3.750 | 0.27 | |
| F8312 Theme | 1285 | 01/05-03/05 | 100.000 | 228.81 | 3.750 | 8.58 | |
| | | | | | | | 8.63 * |
| | | | | | | | 9.20 ** |
| | | | | | | | |
| **TRANSFORMERS VOCAL THEME 2 - HASBORO** | | | | | | | |
| KINDER/BACAL/BRYANT | | | | | | | |
| SMP HOLLAND | | | | | | | |
| F3785 | | 07/04-12/04 | 82.500 | 1.48 | 3.859(03.870) | 0.05 | |
| | | | | | | | 0.05 ** |
| | | | | | | | |
| **TRANSFORMERS (TV SER - INCIDENTAL MUSIC)** | | | | | | | |
| BRYANT/KINDER | | | | | | | |
| AMERICAN GREETING CORP. | | | | | | | |
| F8521 | 489 | 01/05-03/05 | 100.000 | 81.95 | 22.500 | 18.44 | |
| | | | | | | | 18.44 * |
| A2 INTERACTIVE | | | | | | | |
| F4530 Ringtone | 638 | 10/04-12/04 | 100.000 | 65.25 | 22.500 | 14.68 | |
| | | | | | | | 14.68 * |
| KANEMATSU USA, INC. | | | | | | | |
| F7448 Ringtone | 383 | 01/05-03/05 | 100.000 | 55.14 | 22.500 | 13.08 | |
| | | | | | | | 13.08 * |
| MISC. INCOME | | | | | | | |
| F5380 Ringtone | 8 | 04/05-06/05 | 100.000 | 1.59 | 22.500 | 0.35 | |

# SONY/ATV MUSIC PUBLISHING LLC

| | | PERIOD | PERC. RCVD. | AMOUNT RECEIVED | YOUR SHARE | AMOUNT DUE | SNCE./SONG TOTAL |
|---|---|---|---|---|---|---|---|
| TRANSFORMERS (TV SER - INCIDENTAL MUSIC) BRYANT/KINDER MISC. INCOME | | | | | | | |
| | | | | | | | 0.35 * |
| ZINGY, INC. | | | | | | | |
| F503I Ringtons | 3 | 10/04-12/04 | 100.000 | 0.30 | 22.500 | 0.08 | |
| F509I Ringtons | 72 | 10/04-12/04 | 100.000 | 7.20 | 22.500 | 1.62 | |
| | | | | | | | 1.68 * 48.23 ** |
| | | SUNDRY TOTAL | | 688.04 | | 143.87 | |

# SONY/ATV MUSIC PUBLISHING LLC

R O Y A L T Y   S T A T E M E N T                                   8125

SONY MUSIC PUBLISHING - FILM & TV
P.O. BOX 1273
NASHVILLE, TN

37202
615-728-8328

TV-LOGNLAND AG
NUEMCHNER STRASSE 16
85774 UNTERFOEHRING
GERMANY

| | |
|---|---|
| PAYEE CODE | : 06022 |
| WRITER CODE | : 06054 |
| S/S NUMBER | : |
| PERIOD ENDING | : 08/30/06 |
| PAGE NUMBER | : 1 |

IN ACCOUNT WITH : BRYANT, ANNE

|  | AMOUNT RECEIVED | AMOUNT DUE |
|---|---|---|
| MECHANICAL TOTAL | 305.06 | 61.42 |
| SUNDRY TOTAL | 868.04 | 143.87 |
| STATEMENT TOTAL : | 1174.10 | 205.28 |

SUN 1156

# SONY/ATV MUSIC PUBLISHING LLC

ROYALTY STATEMENT                                        8828

SONY MUSIC PUBLISHING - FILM & TV
P.O. BOX 1273
NASHVILLE, TN

37202
615-726-8328

TV-LOONLAND AG
MUENCHNER STRASSE 16
85774 UNTERFOEHRING
GERMANY

PAYEE CODE       : 08022
WRITER CODE      : 08064
S/S NUMBER       :
PERIOD ENDING    : 06/30/05
PAGE NUMBER      :      1

IN ACCOUNT WITH : BRYANT, ANNE

| DATE | REF. | | | |
|------|------|--|--|--|
| 8/30/05 | TO8022 | TRANSFER OF BALANCE TO MAIN ACCOUNT | 205.29 DR |
| 8/30/05 | ROYLTS | ROYALTIES FOR PERIOD TO 06/05 | 205.29 CR |

BALANCE THIS PERIOD :      0.00

QUESTIONS REGARDING THIS STATEMENT SHOULD BE DIRECTED TO
SONY/ATV MUSIC PUBLISHING (615/726-8328)

SUN 1157

# Sony/ATV Music Publishing LLC

SONY MUSIC PUBLISHING – FILM & TV
P.O. BOX 1273
NASHVILLE, TN

37202
615-726-8326

TV-LOONLAND AG
MUENCHNER STRASSE 16
85774 UNTERFOEHRING
GERMANY

WRITER CODE    : 05022
S/S NUMBER     :
PERIOD ENDING  : 12/31/05
PAGE NUMBER    :    1

BALANCE LAST PERIOD :    48206.79 CR

| DATE | REF. | | |
|------|------|---|---|
| 9/01/05 | W1R81 | CREDIT BALANCE PAYMENT | 48206.79 DR |
| 12/31/05 | F05023 | ROYALTY WILDSTAR MUSIC | 3596.53 CR |
| 12/31/05 | F06024 | ROYALTY STARCHILD MUSIC | 7919.98 CR |
| 12/31/05 | F06025 | ROYALTY APOLLO'S CHARIOT MUSIC | 4818.80 CR |
| 12/31/05 | F06028 | ROYALTY BANANA ALERT MUSIC | 58068.74 CR |
| 12/31/06 | F06054 | ROYALTY BRYANT, ANNE | 6867.10 CR |
| 12/31/05 | F06056 | ROYALTY BACAL, JOE | 1703.74 CR |
| 12/31/05 | F06058 | ROYALTY KINDER, FORD | 716.11 CR |
| 12/31/05 | F06057 | ROYALTY KRICKLIN, SPENCER | 27.27 CR |
| 12/31/05 | F06058 | ROYALTY HARMON, BARRY | 2.83 CR |
| 12/31/05 | F06069 | ROYALTY WALSH, ROBERT J. | 450.95 CR |
| 12/31/05 | F06063 | ROYALTY CHASE, TOM | 0.63 CR |
| 12/31/05 | F06064 | ROYALTY ROCKER, STEVE | 0.63 CR |
| 12/31/05 | F09472 | ROYALTY DOUGLAS, JOHNNY | 420.78 CR |
| 12/31/05 | F09479 | ROYALTY WANG, NATHAN | 43.01 CR |
| 12/31/05 | F10251 | ROYALTY HANLEY, RAY | 1.67 CR |
| 12/31/05 | F10252 | ROYALTY HISENSTEIN, MICHAEL | 0.33 CR |
| 12/31/05 | F10253 | ROYALTY NOKENGA, GREG | 0.33 CR |
| 12/31/05 | F10254 | ROYALTY KRIEBING, SCOTT | 0.33 CR |
| 12/31/05 | F10255 | ROYALTY CARBY, MICHAEL | 17.36 CR |

BALANCE THIS PERIOD :    83596.01 CR

PAYMENT NOW DUE :    83595.01

QUESTIONS REGARDING THIS STATEMENT SHOULD BE DIRECTED TO
SONY/ATV MUSIC PUBLISHING (615/726-8326)

# Sony/ATV Music Publishing LLC

SONY MUSIC PUBLISHING - FILM & TV
P.O. BOX 1273
NASHVILLE, TN

37202
615-726-8328

| TV-LOOMLAND AG | PAYEE CODE | : 06022 |
| KOENIGSEDER STRASSE 18 | WRITER CODE | : 06064 |
| 85774 UNTERFOEHRING | S/S NUMBER | : |
| GERMANY | PERIOD ENDING | : 12/31/05 |
| | PAGE NUMBER | : 1 |

IN ACCOUNT WITH : BRYANT, ANNE

| | RECORD NO. | UNITS | PERIOD | PERC. RCVD. | AMOUNT RECEIVED | YOUR SHARE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| **GI JOE - CUES** | | | | | | | |
| DOUGLAS/BRYANT/WALSH | | | | | | | |
| IMPRONTISTA INTERACTIVE MUSIC | | | | | | | |
| OTHER | G3473 TV THEMES | 3 | 07/05-09/05 | | 0.38 | 14.994 | 0.05 |
| | | | | | 0.38 | | 0.05 * |
| | | | | | | | |
| **XRINGER INC** | | | | | | | |
| OTHER | G0198 Ringtone | 283 | 04/05-06/05 | 100.000 | 42.18 | 14.994 | 6.32 |
| OTHER | C4937 ------ | 181 | 07/05-09/05 | 100.000 | 28.95 | 14.994 | 4.34 |
| | | | | | 71.13 | | 10.66 * |
| | | | | | | | |
| **SONIC BRANDING SOLUTIONS** | | | | | | | |
| OTHER | G0234 Tv Show Music | 28 | 04/05-06/05 | 100.000 | 2.60 | 14.994 | 0.38 |
| OTHER | G0236 Tv Show Music | 10275 | 04/05-06/05 | 100.000 | 39.02 | 14.994 | 5.85 |
| OTHER | G4653 Tv Show Music | 11583 | 07/05-09/05 | 100.000 | 65.44 | 14.994 | 9.81 |
| | | | | | 107.06 | | 16.04 * |
| | | | | | | | 26.75 ** |
| | | | | | | | |
| **GI JOE (TV SER - INCIDENTAL MUSIC)** | | | | | | | |
| BRYANT | | | | | | | |
| AMERICAN GREETING CORP. | | | | | | | |
| OTHER | G3732 | 128 | 07/05-09/05 | 100.000 | 19.77 | 45.000 | 8.89 |
| | | | | | 19.77 | | 8.89 * |
| | | | | | | | |
| **MISC. INCOME** | | | | | | | |
| OTHER | F9983 | 59 | 04/05-06/05 | | 9.21 | 45.000 | 4.14 |
| | | | | | 9.21 | | 4.14 * |
| | | | | | | | |
| **SKP FRANCE** | | | | | | | |
| M. PERF | G2587 MECH. PERFORM. | | 01/05-06/05 | 92.600 | 306.69 | 45.946(42.600) | 140.45 |
| | | | | | 306.69 | | 140.45 * |
| | | | | | | | 151.48 ** |
| | | | | | | | |
| **I'M GONNA CHANGE** | | | | | | | |
| BALLARD | | | | | | | |
| EMP CANADA | | | | | | | |
| MECH | G1987 7863665892 | 10 | 01/05-06/05 | 75.000 | 0.46 | 22.973(21.250) | 0.10 |
| MECH | G1987 7863665892 | 11 | 01/05-06/05 | 75.000 | 0.51 | 22.973(21.250) | 0.11 |
| MECH | G1987 7863665892 | 20 | 01/05-06/05 | 75.000 | 0.93 | 22.973(21.250) | 0.21 |
| MECH | G1987 7863665892 | 89 | 01/05-06/05 | 75.000 | 4.14 | 22.973(21.250) | 0.95 |
| MECH | G1987 7863665892 | 109 | 01/05-06/05 | 75.000 | 5.07 | 22.973(21.250) | 1.16 |

# Sony/ATV Music Publishing LLC

SONY MUSIC PUBLISHING - FILM & TV
P.O. BOX 1273
NASHVILLE, TN

37202
615-726-8326

TV-LOORLAND AG                      PAYEE CODE    : 06022
NUMBERGER STRASSE 18                WRITER CODE   : 06054
65774 UNTERFOEBRING                 S/S NUMBER    :
GERMANY                             PERIOD ENDING : 12/31/05
                                    PAGE NUMBER   :    1

IN ACCOUNT WITH : BRYANT, ANNE

|  |  | AMOUNT RECEIVED | AMOUNT DUE |
|---|---|---|---|
| MECH | MECHANICAL | 486.88 | 107.55 |
| SYNCH | SYNCHRONIZATION | 15000.00 | 6062.EU |
| OTHER | OTHERS | 2624.28 | 584.51 |
| M. PERF | MECHANICAL PERFORMANCE | 310.12 | 140.62 |
|  | STATEMENT TOTAL : | 18421.28 | 6897.19 |

# Sony/ATV Music Publishing LLC

| | RECORD NO. | UNITS | PERIOD | PERC. RCVD. | AMOUNT RECEIVED | YOUR SHARE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| **I'M GONNA CHANGE** | | | | | | | |
| BALLARD | | | | | | | |
| SMP CANADA | | | | | | | |
| | | | | | 11.11 | | 2.63 * |
| | | | | | | | 2.63 ** 25 |
| | | | | | | | |
| **TRANSFORMERS MAIN THEME   (TV SEG)** | | | | | | | |
| BRYANT/KINDER | | | | | | | |
| INFOSPACE MOBILE INC | | | | | | | |
| OTHER | CC58T Ringtone | 12066 | 04/05-06/05 | 100.000 | 2228.17 | 22.500 | 501.33 |
| | | | | | 2228.17 | | 501.33 * |
| | | | | | | | |
| ) TURN UP THE MUSIC, INC. | | | | | | | |
| WZCH | G1828 1444 | 2748 | 04/05-06/05 | | 108.91 | 22.500 | 24.50 |
| WBFM | G1850 1444 | 2748 | 04/05-06/05 | | 108.91 | 22.500 | 24.50 |
| WBCH | L4124 1444 | 3254 | 07/05-09/05 | | 128.98 | 22.500 | 29.01 |
| KBCH | 64189 1444 | 3255 | 07/05-09/05 | | 128.99 | 22.500 | 29.02 |
| | | | | | 475.77 | | 107.03 * |
| | | | | | | | 608.36 ** 14 |
| | | | | | | | |
| **TRANSFORMERS VOCAL THEME II - UNIDENTIFIED** | | | | | | | |
| KINDER/BACAL/BRYANT | | | | | | | |
| SMP UNITED KINGDOM | | | | | | | |
| M. PERF | C2595 | 23 | 01/05-08/05 | 92.500 | 4.43 | 3.839(83.670) | 0.17 |
| | | | | | | | 0.17 ** 14 |
| | | | | | | | |
| **TRANSFORMERS INSTRUMENTAL THEME II** | | | | | | | |
| BACAL/BRYANT | | | | | | | |
| TWENTIETH CENTURY FOX | | | | | | | |
| SYNCH | F9315 FAM GUY 4ACIDS | 1 | 06/05-06/05 | | 15000.00 | 33.750 | 5062.50 |
| | | | | | | | 5062.50 ** 14 |
| | | | | | | | |
| **TRANSFORMERS INSTRUMENTAL THEME** | | | | | | | |
| BRYANT/BACAL | | | | | | | |
| ADVANCE TELECOM | | | | | | | |
| } OTHER | G3471 RINGTONE | 45 | 07/05-09/05 | | 8.98 | 23.750 | 2.02 |
| | | | | | | | 2.02 ** 14 |
| | | | | | | | |
| **TRANSFORMERS   (TV SER - INCIDENTAL MUSIC)** | | | | | | | |
| BRYANT/KINDER | | | | | | | |
| AMERICAN GREETING CORP. | | | | | | | |
| OTHER | C3732 | 161 | 07/05-09/05 | 100.000 | 24.97 | 22.500 | 5.61 |
| | | | | | 24.97 | | 5.61 * |
| | | | | | | | |
| **KIDINZEN INC** | | | | | | | |
| OTHER | C0198 Ringtone | 282 | 04/05-06/05 | 100.000 | 46.34 | 22.500 | 10.42 |
| OTHER | C6527 ------ | 290 | 07/05-09/05 | 100.000 | 44.80 | 22.500 | 10.08 |
| | | | | | 91.14 | | 20.50 * |
| | | | | | | | |
| **MISC. INCOME** | | | | | | | |
| OTHER | P9983 | 326 | 04/05-06/05 | | 50.56 | 22.500 | 11.37 |
| | | | | | 50.56 | | 11.37 * |
| | | | | | | | |
| **TUTCH MOBILE MEDIA** | | | | | | | |
| OTHER | C2429 | 39 | 04/05-06/05 | 100.000 | 5.97 | 22.500 | 1.34 |
| OTHER | C4920 | 35 | 07/05-09/05 | 100.000 | 6.96 | 22.500 | 1.56 |
| | | | | | 12.93 | | 2.90 * |

# Sony/ATV Music Publishing LLC

|  | RECORD NO. | UNITS | PERIOD | PERC. RCVD. | AMOUNT RECEIVED | YOUR SHARE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| TRANSFORMERS   (TV SER - INCIDENTAL MUSIC) BRYANT/KINDER | | | | | | | 40.38 ** $14$ |
| | | | STATEMENT TOTAL | | 13431.28 | | 5897.19 |

SUN 1162

# Sony/ATV Music Publishing LLC

SONY MUSIC PUBLISHING - FILM & TV
P.O. BOX 1273
NASHVILLE, TN

37203
615-726-8326

TV-LOORLAND AG                          PAYEE CODE    : 06022
MORACERSA STRASSE 16                    WRITER CODE   : 06054
81774 UNTERFOEHRING                     S/S NUMBER    :
GERMANY                                 PERIOD ENDING : 12/31/05
                                        PAGE NUMBER   :   1

IN ACCOUNT WITH : BRYANT, ANNE

| DATE | REF. | | | |
|------|------|---|---|---|
| 12/31/05 | T06022 | TRANSFER OF BALANCE TO MAIN ACCOUNT | | 6897.19 DR |
| 12/31/05 | ROYLIS | ROYALTIES FOR PERIOD TO 12/06 | | 6897.19 CR |
| | | | BALANCE THIS PERIOD : | 0.00 |

QUESTIONS REGARDING THIS STATEMENT SHOULD BE DIRECTED TO
SONY/ATV MUSIC PUBLISHING (615/726-8326)

# Sony/ATV Music Publishing LLC

SONY MUSIC PUBLISHING – FILM & TV
P.O. BOX 1273
NASHVILLE, TN

37202
615-726-8326

TV-LOOPLAND AG
MUENCHNER STRASSE 16
85774 UNTERFOEHRING
GERMANY

WRITER CODE    : 06012
S/S NUMBER     :
PERIOD ENDING : 06/30/06
PAGE NUMBER    :    1

BALANCE LAST PERIOD :        83595.01 CR

| DATE | REF. | | |
|------|------|---|---|
| 3/01/06 | W18816 | 2805 CREDIT BALANCE PAYMENT | 83595.01 DR |
| 6/30/06 | P06021 | ROYALTY WILDSTAR MUSIC | 4631.91 CR |
| 6/30/06 | P06224 | ROYALTY STARCHILD MUSIC | 6162.20 CR |
| 6/30/06 | P06025 | ROYALTY APOLLO'S CHARIOT MUSIC | 2308.79 CR |
| 6/30/06 | P06026 | ROYALTY BANANA ALLEY MUSIC | 6086.98 CR |
| 6/30/06 | P06C54 | ROYALTY BRYANT, ANNE | 720.92 CR |
| 6/30/06 | P06055 | ROYALTY BACAL, JOE | 27.86 CR |
| 6/30/06 | P06056 | ROYALTY KINDER, FORD | 914.87 CR |
| 6/30/06 | P06068 | ROYALTY HARKOM, BARRY | 2.36 CR |
| 6/30/06 | P06069 | ROYALTY WALSH, ROBERT J. | 87.01 CR |
| 6/30/06 | P09473 | ROYALTY DOUGLAS, JOHNNY | 63.05 CR |
| 6/30/06 | P09477 | ROYALTY ANDREWS, RUSTY | 1.43 CR |
| 6/30/06 | P09478 | ROYALTY CORRELL, LEE | 2.43 CR |
| 6/30/06 | P09479 | ROYALTY KANE, NATHAN | 60.59 CR |
| 6/30/06 | P10255 | ROYALTY CAREY, MICHAEL | 0.18 CR |

BALANCE THIS PERIOD :        22229.13 CR

PAYMENT NOW DUE    :        22229.16

QUESTIONS REGARDING THIS STATEMENT SHOULD BE DIRECTED TO
SONY/ATV MUSIC PUBLISHING (616/728-6326)

# Sony/ATV Music Publishing LLC

## ROYALTY STATEMENT

8961

SONY MUSIC PUBLISHING - FILM & TV
P.O. BOX 1273
NASHVILLE, TN

37202
615-726-8125

| TV-LEONLAND AG | | PAYEE CODE : 06022 |
| KUENCHNER STRASSE 16 | | WRITER CODE : 06954 |
| 65774 UNTERFUEHRING | | S/S NUMBER : |
| GERMANY | | PERIOD ENDING : 06/30/06 |
| | | PAGE NUMBER : 1 |

IN ACCOUNT WITH : BRYANT, ANNE

| ) | · RECORD NO. | UNITS | PERIOD | PERC. RCVD. | AMOUNT RECEIVED | YOUR SHARE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| ALONE AGAIN | (FR. TV SER 'JEM') | | | | | | |
| BRYANT/HARMAN | | | | | | | |
| SMP BELGIUM | | | | | | | |
| MECH | G7488 /4228415632/ | 2 | 07/05-12/05 | 92.500 | 0.20 | 22.973 (21.250) | 0.04 |
| MECH | G7488 /4228415632/ | 5 | 07/05-12/05 | 92.500 | 0.48 | 22.973 (21.250) | 0.11 |
| MECH | G7488 /4228415632/ | 10 | 07/05-12/05 | 92.500 | 0.98 | 22.973 (21.250) | 0.22 |
| MECH | G7488 /4228415632/ | 12 | 07/05-12/05 | 92.500 | 1.18 | 22.973 (21.250) | 0.27 |
| MECH | G7488 /4228415632/ | 15 | 07/05-12/05 | 92.500 | 1.46 | 22.973 (21.250) | 0.33 |
| MECH | G7488 /4228415632/ | 17 | 07/05-12/05 | 92.500 | 1.68 | 22.973 (21.250) | 0.38 |
| K. PERF | G7488 | | 07/05-12/05 | 92.500 | 0.26 | 22.973 (21.250) | 0.05 |
| | | | | | 6.24 | | 1.40 * |
| | | | | | | | 1.40 ** |
| GI JOE - CUES | | | | | | | |
| DOUGLAS/BRYANT/WALSH | | | | | | | |
| AMERICAN GREETING CORP. | | | | | | | |
| OTHER | H0061 | 62 | 01/06-03/06 | | 9.14 | 14.994 | 1.37 |
| | | | | | 9.14 | | 1.37 * |
| DOWNPLAY INC | | | | | | | |
| OTHER | H2129 DOWNLOADS | 1 | 01/06-03/06 | | 0.10 | 14.994 | 0.02 |
| OTHER | H2129 DOWNLOADS | 3 | 01/06-03/06 | | 0.60 | 14.994 | 0.08 |
| | | | | | 0.60 | | 0.10 * |
| IMPROVISTA INTERACTIVE MUSIC | | | | | | | |
| OTHER | G6723 L372 | 1 | 10/05-12/05 | | · 0.12 | 14.994 | 0.01 |
| | | | | | 0.12 | | 0.01 * |
| KRINGER INC | | | | | | | |
| OTHER | G7293 ------ | 138 | 10/05-12/05 | 100.000 | 22.15 | 14.994 | 3.33 |
| OTHER | K1756 ------ | 129 | 01/06-03/06 | 100.000 | 20.92 | 14.994 | 3.13 |
| | | | | | 44.07 | | 6.45 * |
| SONIC BRANDING SOLUTIONS | | | | | | | |
| OTHER | G9095 Tv Show Music | 8846 | 10/05-12/05 | 100.000 | 55.81 | 14.994 | 8.36 |
| OTHER | H0948 Tv Show Music | 4597 | 01/06-03/06 | 100.000 | 28.18 | 14.994 | 4.22 |
| | | | | | 83.99 | | 12.58 * |
| SONY MUSIC | | | | | | | |
| MECH | G7294 RINGP0300271 | 221 | 10/05-12/05 | 100.000 | 34.03 | 14.994 | 5.10 |
| MECH | G7294 RINGP0300271 | 216 | 10/05-12/05 | 100.000 | 34.58 | 14.994 | 5.18 |
| MECH | G7294 RINGP0300271 | 391 | 10/05-12/05 | 100.000 | 58.29 | 14.994 | 8.74 |
| MECH | G7294 RINGP0300271 | 498 | 10/05-12/05 | 100.000 | 76.19 | 14.994 | 11.42 |
| OTHER | G7294 RINGP0300271 | 6 | 10/05-12/05 | | 1.21 | 14.994 | 0.18 |

# Sony/ATV Music Publishing LLC

| | RECORD NO. | UNITS | PERIOD | PERC. RCVD. | AMOUNT RECEIVED | YOUR SHARE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| **GI JOE -- CUES** | | | | | | | |
| DOUGLAS/BRYANT/WALSH | | | | | | | |
| SONY MUSIC | | | | | | | |
| OTHER | G7259 RINGPO300271 | 17 | 10/05-12/05 | | 2.45 | 14.994 | 0.36 |
| OTHER | G7258 RINGPO300271 | 221- | 10/05-12/05 | | 34.03- | 14.994 | 5.10- |
| OTHER | G7258 RINGPO300271- | 457 | 10/05-12/05 | | 70.84 | 14.994 | 10.62 |
| | | | | | 241.66 | | 36.60 • |
| | | | | | | | 57.01 •• |
| **I'M GONNA CHANGE** | | | | | | | |
| BULLARD | | | | | | | |
| SMP CANADA | | | | | | | |
| MECH | G7595 7863665892 | 4 | 07/05-12/05 | 75.000 | 0.18 | 22.973 (21.250) | 0.04 |
| MECH | G7696 7863665893 | 11 | 07/05-12/05 | 75.000 | 0.50 | 22.973 (21.250) | 0.11 |
| MECH | G7696 7863665892 | 27 | 07/05-12/05 | 75.000 | 1.24 | 22.973 (21.250) | 0.28 |
| MECH | G7695 7867665892 | 31 | 07/06-12/05 | 75.000 | 1.48 | 22.973 (21.250) | 0.34 |
| | | | | | 3.40 | | 0.77 • |
| | | | | | | | 0.77 •• |
| **STARLIGHT** | (FR. TV SER ' JEM') | | | | | | |
| FARMAN/BRYANT | | | | | | | |
| SMP UNITED KINGDOM | | | | | | | |
| MECH | G7518 | | 07/05-12/05 | 92.500 | 0.84 | 22.973 (21.250) | 0.13 |
| | | | | | | | 0.19 •• |
| **TRANSFORMERS MAIN THEME** | (TV SER) | | | | | | |
| BRYANT/KINDER | | | | | | | |
| AMERICAN GREETING CORP. | | | | | | | |
| OTHER | G8454 | 164 | 10/06-12/05 | | 26.49 | 22.500 | 5.96 |
| OTHER | P0081 | 91 | 01/06-03/06 | | 17.42 | 22.500 | 2.79 |
| | | | | | 38.91 | | 8.75 • |
| **INFOSPACE MOBILE INC** | | | | | | | |
| OTHER | G7310 Ringtone | 5883 | 07/05-09/05 | 100.000 | 1128.16 | 22.500 | 253.91 |
| OTHER | G9096 Ringtone | 3919 | 10/05-12/05 | 100.000 | 748.33 | 22.500 | 168.16 |
| OTHER | R0357 Ringtone | 3009 | 01/06-03/06 | 100.000 | 580.65 | 22.500 | 130.64 |
| | | | | | 2457.71 | | 552.97 • |
| **MODERATI INC** | | | | | | | |
| OTHER | K1558 | | 01/06-03/06 | | 25.00 | 22.500 | 5.62 |
| | | | | | 25.00 | | 5.62 • |
| **TURN UP THE MUSIC, INC.** | | | | | | | |
| MECH | G8209 TUTM1444 | 523 | 04/03-06/03 | | 19.61 | 22.500 | 4.38 |
| MECH | G8310 TUTM1444 | 524 | 04/03-06/03 | | 13.65 | 22.500 | 4.39 |
| | | | | | 39.06 | | 8.77 • |
| | | | | | | | 578.11 •• |
| **TRANSFORMERS VOCAL THEME II – UNIDENTIFIED** | | | | | | | |
| KINDER/BACAL/BRYANT | | | | | | | |
| SMP UNITED KINGDOM | | | | | | | |
| M. PERF | G7518 | 39 | 07/05-12/05 | 92.500 | 7.89 | 3.859 (03.570) | 0.30 |
| | | | | | 7.89 | | 0.30 • |
| **ZINGY, INC.** | | | | | | | |
| OTHER | G2273 Theme | 19 | 10/05-12/05 | 100.000 | 2.21 | 3.780 | 0.08 |
| OTHER | G2273 Theme | 1035 | 10/05-12/05 | 100.000 | 186.35 | 3.780 | 6.96 |
| OTHER | R0833 Theme | 41 | 07/05-09/05 | 100.000 | 4.84 | 3.780 | 0.18 |

# Sony/ATV Music Publishing LLC

| | RECORD NO. | UNITS | PERIOD | PERC. RCVD. | AMOUNT RECEIVED | YOUR SHARE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| **TRANSFORMERS VOCAL THEME II -- UNIDENTIFIED** | | | | | | | |
| **KINGER/BACAL/BRYANT** | | | | | | | |
| **ZINCY, INC.** | | | | | | | |
| OTHER | B0833 Theme | 851 | 07/05-09/05 | 100.000 | 181.60 | 3.780 | 6.10 |
| OTHER | B0878 Theme | 65 | 04/05-06/05 | 100.000 | 6.60 | 3.780 | 0.24 |
| OTHER | B0878 Three | 1101 | 04/05-06/05 | 100.000 | 196.79 | 3.780 | 7.43 |
| OTHER | B2523 Theme | 12 | 01/06-03/06 | 100.000 | 1.37 | 3.750 | 0.05 |
| OTHER | B2523 Theme . | 1049 | 01/06-03/06 | 100.000 | 184.64 | 3.780 | 6.98 |
| | | | | | 742.60 | | 28.02 * |
| | | | | | | | 28.32 ** |
| **TRANSFORMERS** | **(TV SER - INCIDENTAL MUSIC)** | | | | | | |
| **BRYANT/KINDER** | | | | | | | |
| **ERLINGER INC** | | | | | | | |
| OTHER | G7293 ------ | 161 | 10/05-12/05 | 100.000 | 26.18 | 22.500 | 5.89 |
| OTHER | B1758 ------ | 122 | 01/06-03/06 | 100.000 | 19.78 | 22.500 | 4.45 |
| | | | | | 46.96 | | 10.34 * |
| **MODERATI INC** | | | | | | | |
| OTHER | B0896 - | 803 | 01/06-03/06 | 100.000 | 132.63 | 22.500 | 29.84 |
| | | | | | 132.63 | | 29.84 * |
| **MISC. INCOME** | | | | | | | |
| OTHER | G7224 Ringtons | 4 | 07/05-09/05 | 100.000 | 0.80 | 22.500 | 0.18 |
| | | | | | 0.80 | | 0.18 * |
| **SMP UNITED KINGDOM** | | | | | | | |
| M. PERF | G7818 | 15 | 07/05-12/05 | 92.500 | 5.27 | 22.973(21.250) | 1.21 |
| | | | | | 5.27 | | 1.21 * |
| **SMP SPAIN** | | | | | | | |
| M. PERF | G7514 | | 07/05-12/05 | 92.500 | 0.48 | 22.973(21.250) | 0.11 |
| | | | | | 0.48 | | 0.11 * |
| **3GUPLOAD.COM** | | | | | | | |
| OTHER | G9179 Tv Theme | 226 | 10/05-12/05 | 100.000 | 29.38 | 22.500 | 6.61 |
| OTHER | B0681 Tv Theme | 302 | 01/05-03/06 | 100.000 | 39.26 | 22.500 | 8.83 |
| | | | | | 68.64 | | 15.44 * |
| | | | | | | | 57.12 ** |
| | | **STATEMENT TOTAL** | | | 3956.01 | | 720.92 |

# Sony/ATV Music Publishing LLC

## ROYALTY STATEMENT

SONY MUSIC PUBLISHING - FILM & TV
P.O. BOX 1273
NASHVILLE, TN

37202
615-726-8326

TV-LOONLAND AG
NOENCHNER STRASSE 16
65774 UNTERPOEHRING
GERMANY

PAYEE CODE     : 06022
WRITER CODE    : 06054
S/S NUMBER     :
PERIOD ENDING  : 06/30/06
PAGE NUMBER    :    1

IN ACCOUNT WITH : BRYANT, ANNE

|        |        |                         | AMOUNT RECEIVED | AMOUNT DUE |
|--------|--------|-------------------------|-----------------|------------|
| MECH   |        | MECHANICAL              | 252.37          | 41.52      |
| OTHER  |        | OTHERS                  | 3689.74         | 677.73     |
| M. PERF|        | MECHANICAL PERFORMANCE  | 13.90           | 1.67       |
|        |        | STATEMENT TOTAL :       | 3995.01         | 722.92     |

# Sony/ATV Music Publishing LLC

SONY MUSIC PUBLISHING - FILM & TV .
P.O. BOX 1273
NASHVILLE, TN

37202
615-726-8326

| | |
|---|---|
| TV-LOONLAND AG | PAYEE CODE : 06022 |
| NUENCHNER STRASSE 16 | WRITER CODE : 06054 |
| 83774 UNTERFOEHRING | S/B NUMBER : |
| GERMANY | PERIOD ENDING : 06/30/06 |
| | PAGE NUMBER : 1    1 |

IN ACCOUNT WITH : BRYANT, ANNE

| DATE | REF. | | |
|---|---|---|---|
| 6/30/06 | T06022 | TRANSFER OF BALANCE TO MAIN ACCOUNT | .    720.92 DR |
| 6/30/06 | ROYLTS | ROYALTIES FOR PERIOD TO 06/06 | 720.92 CR |
| | | BALANCE THIS PERIOD : | 0.00 |

QUESTIONS REGARDING THIS STATEMENT SHOULD BE DIRECTED TO
SONY/ATV MUSIC PUBLISHING (615/726-8326)

SUN 1169

Exhibit P

LAW OFFICES OF
### WILLIAM M. DOBISHINSKI
SUITE 1500
6430 SUNSET BOULEVARD
HOLLYWOOD, CALIFORNIA 90028
(213) 469-0045

WILLIAM M. DOBISHINSKI*
SCOTT F. PEARCE
LADD S. LJUNGBERG, Law Clerk

* Also member of New York and
District of Columbia Bars
DIRECT LINE (213) 469-4001

TWX 910-121-3738
Cable Address "COBOLEX"

N.Y. OFFICE
SUITE 1820
135 WEST 39TH STREET
NEW YORK, NEW YORK 10020
(212) 333-3301

March 3, 1986

Robert C. Harris, Esq.
Linden & Deutsch
110 E. 59th Street
New York, NY 10022

Re: (1) "JEM" (Kinder & Bryant) and (2) " MY LITTLE PONY" (Kinder & Bryant, Rick Brenckman)

Dear Bob:

Pursuant to my February 13, 1986 letter, I have discussed the above -- mentioned Agreements with my clients. Although they appreciate the revisions that have already been incorporated into these Agreements, my clients wish to pursue the additional points listed below that were denied in our previous negotiations.

(A) "JEM" (Kinder & Bryant), "MY LITTLE PONY" (Kinder & Bryant and Rick Brenckman)

(1) Paragraph 5 (c) - The Agreements should provide that with respect to all compositions for which my clients write the music and a third party writes the lyrics, performance royalties and all other royalties should be split as follows:

royalties from vocal uses of the composition should be shared 50/50, with royalties from instrumental uses being paid at 100% to the music writer (e.g. ASCAP/BMI registration should provide "Music by Ford Kinder & Anne Bryant (50%), lyrics by Barry Harman (50%)" / on cue sheets - vocal cues should provide "Ford Kinder & Anne Bryant (50%) / Barry Harman (50%)", instrumental cues should provide "Ford Kinder & Anne Bryant (100%)".

Alternatively, Kinder & Bryant (not Rick Brenckman) would agree that royalties from all uses (vocal or instrumental) be equally shared between all writers 1/3 — 1/3 — 1/3 (e.g. ASCAP/BMI registration should provide "Music by Ford Kinder (1/3), Anne Bryant (1/3), Barry Harman (1/3)", "Lyrics by Ford Kinder (1/3), Anne Bryant (1/3), Barry Harman (1/3)" / all cue sheets should then provide "Anne Bryant (1/3), Ford Kinder (1/3) and Barry Harman (1/3).

MAR 5 1986



DEFENDANT'S
EXHIBIT

SUN 0380

(2) <u>Paragraph 5 (c), fifth, last line</u> – correct typographical error to read "assignee";

(3) <u>Paragraph 6 (a)</u> – additional payment of 50% of creative fee for each composition embodied on audio recordings distributed as premiums or on videocassettes;

(4) <u>Paragraph 6 (a)</u> – royalties should be paid quarterly;

(5) <u>Paragraph 10</u> – delete "arising out of any use of the Music or any part thereof or";

(6) <u>Paragraph 10</u> – delete second sentence since it pertains to lyrics, which are not furnished by Kinder & Bryant or Rick Brenckman.

(B) "<u>JEM</u>" (Kinder & Bryant)

<u>Additional</u> – if masters produced by Kinder & Bryant are embodied in audio recordings for commercial distribution (i.e. sale or rental), Kinder & Bryant should receive additional producer compensation in the amount of 25% of all advances and royalties received by Griffin Bacal from such distribution.

(C) "MY LITTLE PONY" (Rick Brenckman)

(1) <u>Pages 10, 11, 13</u> – first name is "Rick", not "Rich";

(2) <u>Paragraph 7</u> – credit should read."Rick Brenckman/Easy Writer Music";

(D) Please advise us regarding the desired dates to be inserted in the agreements.

In considering the financial points, please be advised that the performing rights society revenues are not as substantial a source of revenue from these projects as might be expected.

I look forward to your response to this letter.

Best regards.

Sincerely,

William M. Dobishinski

cc: Anne Bryant
    Ford Kinder
    Rick Brenckman

SUN 0381

Exhibit Q

## LINDEN AND DEUTSCH
### ATTORNEYS AT LAW

DAVID BLASBAND
JOSEPH CALDERON
ALVIN DEUTSCH
SIDNEY FEINBERG
FREDERICK F. GREENMAN, JR.
EDWARD KLAGSBRUN
ELLA L. LINDEN
DAVID Z. ROSENSWEIG
NANCY F. WECHSLER
RICHARD A. WHITNEY
PAUL S. WOEFNER

ROBERT C. HARRIS
BERNARD G. SCHNEIDER

110 EAST 59TH STREET
NEW YORK, N.Y. 10022

(212) 758-1100

CABLE; ANALOGUE, N.Y.

TELEX 424280

TELECOPIER (212) 593-3980

May 30, 1986

William M. Dobishinsky, Esq.
Suite 1500
6430 Sunset Boulevard
Hollywood, CA  90028

Re:  JEM; MY LITTLE PONY

Dear Bill:

My apologies for not responding sooner to your March 3, 1986 letter.

I have now had an opportunity to discuss your requested changes with our client and can advise as follows (numbered in accordance with your March 3, 1986 letter):

(A)
(1)  Your first alternative is acceptable and has been incorporated.

(2) OK

(3) This is unacceptable.  The compensation set forth in the agreement is the compensation that had been agreed to by the parties.  Our client is unwilling to change the deal at this time.

(4)  Our client is agreeable to paying semi-annually, and this change has been made in the document.

(5)  Ok

(6)  Ok

(B)
(Additional)-Again, this was not part of the agreement negotiated by the parties and our client is unwilling to change the



SUN 0395

William M. Dobishinsky, Esq.
May 30, 1986.
Page Two

financial terms.  In the event that phonorecordings are made and
our client wishes to utilize the service of Kinder & Bryant as
producers, an agreement will be reached at that time.

<u>(C)</u>

(1)   Ok

(2)   Ok

<u>(D)</u> - We suggest the following dates be inserted in the
agreements: JEM — June 1, 1985; PONY — December 1, 1985.

         I am enclosing three copies of each of the three
agreements incorporating these changes as noted above.  I would
appreciate you having them signed and returned to me.

         Best regards.

                                       Sincerely yours,

                                       Robert C. Harris

RCH:alm
cc:  Ms. Carole Weitzman

SUN 0396

# AFFIDAVIT OF SERVICE

STATE OF NEW YORK          )
                           :ss.:
COUNTY OF NEW YORK         )

JOHN C. KNAPP, being duly sworn, deposes and says:

1.      I am over 18 years of age, not a party to this action, and am associated with the law firm of Patterson, Belknap, Webb & Tyler LLP, located at 1133 Avenue of the Americas, New York, New York 10036.

2.      On December 8, 2006 I caused the foregoing **Reply Affirmation of Gloria C. Phares in Support of Sunbow Productions, Inc.'s Motion to Dismiss** to be served upon the following attorneys for the parties herein via e-mail and facsimile. A copy was also delivered in open court on December 11, 2006.

Patrick J. Monaghan, Esq.
Monaghan, Monaghan, Lamb & Marchisio
38 W. Grand Avenue, 2nd Floor
Montvale, New Jersey 07645

Judith M. Saffer, Esq.
Broadcast Music, Inc.
320 West 57th Street
New York, New York 10019-3790

_John Knapp_
JOHN C. KNAPP

Sworn to before me this 12th
day of December, 2006

_signature_
Notary Public

NICHOLAS J. LAFORGE
Notary Public, State of New York
No. 01LA6150533
Qualified in Kings County
Certificate Filed in New York County
Commission Expires July 31, 2010