# EXHIBIT 94

383

# MONAGHAN, MONAGHAN, LAMB & MARCHISIO, LLP

ATTORNEYS AND COUNSELLORS AT LAW

PATRICK J. MONAGHAN, JR. *
RICHARD F. MONAGHAN * * †
EUGENE G. LAMB * * †
JUVENAL L. MARCHISIO * *
JAMES P. O'NEILL * * * †
ROBERT RICCO * †
MICHAEL KORIK *

*ADMITTED IN NJ AND NY
** ADMITTED IN NY
* * * ADMITTED IN FLA AND NY
† OF COUNSEL

28 WEST GRAND AVENUE
MONTVALE, NEW JERSEY 07645

TEL: (201) 802-9060
FAX: (201) 802-9066
E-Mail: mmlmlawyers@aol.com

NEW YORK OFFICE:
150 WEST 55TH STREET
SUITE 1G
NEW YORK, NEW YORK 10019

(212) 541-6980
FAX: (212) 541-6994

February 2, 2007

**Via Fax:  845-228-0656:**
Hon. Andrew P. O'Rourke
New York State Supreme Court
Putnam County
40 Gleneida Avenue
Carmel, NY 10512

> Re:    Bryant v. Sunbow, et al.
>         Index Nos.    5192/00 and 2821/02

Dear Justice O'Rourke:

Today's telephone conference was a little unsettling and I am not referring to the mispronunciation of my last name.  First, the Court said that it would deny our motion despite not having read the papers, even though they "were floating around the Courthouse."  Then the Court stated that it would read the motion and then deny or not accept it. This is eighteen or so motions after this trial began in 2004 when it was interrupted by the "sudden" discovery and Sunbow's belated production of the 1985 Jem Agreement, which your Honor has already ruled will govern the relationships of the parties [Exhibit M in evidence].  Defendants' papers were due today and Ms. Phares indicated during the teleconference that "[t]he day was young...," leading us to conclude that she has papers ready to file in opposition. Attached is our receipt showing the filing of the subject motion on January 23, 2007 in Rockland County. A copy of the motion was hand-delivered delivered to your Honor that very day.

There is absolutely no basis for this Court to consider a CPLR 4401 or dismissal motion by the Defendants at this juncture and certainly none based on Ms. Phares' repeated mantra that Plaintiff is suing on and testified to an oral agreement.  That is nonsense and an argument decimated and belied by our multiple references to Ms Bryant's prior testimony. We challenge anyone involved in this case to point to a single line of testimony wherein the Plaintiff stated that she was suing exclusively on any oral agreement. As indicated in Weinstein Korn & Miller, a CPLR 4401 motion based on an alleged admission should abide a full presentation of the evidence. *See* §4401.06, enclosed. Plaintiff has not rested. Accordingly, we ask the Court to address our motion, require the Defendants to respond to it, and allow us to complete our case or in the alternative, disregard Defendants' premature motions to dismiss and allow us to complete our case.

Page Two
Justice O'Rourke

Respectfully Submitted,

Patrick J. Monaghan, Jr.

Enclosures
CC:   John C. Knapp, Esq. via fax
      Judith Saffer, Esq. via fax
      Ms. Anne Bryant ✓ Scanned email ─

S:\MATTERS\3689\Letters\letter to Justice O'Rourke2.doc

1 of 1 DOCUMENT

New York Civil Practice: CPLR

Copyright 2006, Matthew Bender & Company, Inc., a member of the LexisNexis Group.

ARTICLE 44 TRIAL MOTIONS

CPLR R4401 Motion for judgment during trial.

*1 New York Civil Practice: CPLR P 4401.06*

## P 4401.06 Motion for Judgment by Proponent Only After Rebuttal or Admission

The proponent of a cause of action or defense may obtain judgment only after the opponent has had a chance to rebut evidence favorable to the proponent. Thus, the plaintiff may not move for judgment during trial until the defendant has rested unless the plaintiff moves on the basis of admissions in the defendant's opening or at trial. Similarly, a plaintiff must be given an opportunity to meet the defendant's proof on a counterclaim or affirmative defense.n1

**FOOTNOTES:**
(n1) Footnote 1. *Thompson v. New York, 471 N.Y.S.2d 50, 60 N.Y.2d 948, 459 N.E.2d 159; 471 N.Y.S.2d 50, 60 N.Y.2d 948, 459 N.E.2d 159; 471 N.Y.S.2d 50, 60 N.Y.2d 948, 459 N.E.2d 159 (1983)*(injured party was entitled to judgment in its favor where evidence of city's fault was not contradicted and by no rational process could trier of fact have based finding in favor of city upon evidence); *Horn v. Ketchum, 30 A.D.2d 624, 290 N.Y.S.2d 677* (3d Dep't 1968) (*citing* Weinstein, Korn & Miller).

But see*Rainbow Hospitality Management, Inc. v. Mesch Engineering, P.C., 270 A.D.2d 906, 705 N.Y.S.2d 765* (4th Dep't 2000) (in negligence action, court below appropriately granted defendants' *CPLR 4401* motion to dismiss during trial because plaintiff, corporation, did not exist when complained of conduct occurred, notwithstanding plaintiff's assertion that objection was waived under *CPLR 3211*[e] by failing to object prior to their answer, because motion at trial did not address plaintiff's capacity to sue, but rather that plaintiff had no right to relief because plaintiff did not exist when conduct complained of occurred and thus sustained no injury as result of that conduct).

**Rockland County, NY**
**Paul Piperato County Clerk**
1 South Main St Ste 100
New City, NY 10956
Phone Number : (845) 638-5221

Official Receipt : 2007-00003819

Printed On : 01/23/2007    at 2:09:13 PM                                          By : 66    on FEE1

MONAGHAN 5192/00
MC

Date Recorded : January 23, 2007

| Instrument ID | Recorded Time | Amount |
|---|---|---|
| | 2:08:48 PM | $45.00 |
| Transaction : Motion/Cross Motion | | |
| | Itemized Check Listing | |
| Check Number : 2712 | | $45.00 |

|  |  |  |
|---|---|---|
| | Total Due : | $45.00 |
| | Paid by Check : | $45.00 |
| | Change Tendered : | $0.00 |

# EXHIBIT 95

55576-017

| SERIAL NO. 38 | | |
| SERVED | | |
| RECEIVED | | |
| FILED | | |



Supreme Court of the State of New York
County Building - Justice Chambers - 3ᵈ Fl.
Route 52 - 40 Gleneida Ave
Carmel, NY 10512

Andrew P. O'Rourke                                          Tel. (845) 225-3641 Ext. 227
Justice                                                     Fax (845) 228-0656
February 8, 2007

Patterson Belknap Webb and Tyler, LLP
Gloria C. Phares, Esq.
1133 Avenue of the Americas
New York, NY 10036-6710

Monaghan Monaghan Lamb and Marchisio LLP
Patrick J. Monaghan Jr., Esq.
28 West Grand Avenue
Montvale, NJ 07645

BMI
Judith M. Saffer, Esq.
320 West 57ᵗʰ Street
New York, NY 10019-3790

                        Re: Anne Bryant v BMI, etc.
                            2821/2002
                            5192/2000

Dear Councillors:

        This Court is in receipt of Mr. Monaghan's letter of February 2 last.

        First let me apologize to Mr. Monaghan for mispronouncing his name in our telephone
conference. Considering the many courtesies and considerations rendered by the Court to all
sides in this matter I hope that the above is sufficient.

        As to why the Court had not seen the latest flurry of motion papers, though they were
here in the Court house, the answer is simple, the return date was February 9ᵗʰ, our conversation
was before that. I would not normally see and review a motion until all papers are received.
Again this is a sufficient answer.

        Lastly the inclusion of a copy of the CPLR 4401 in the above cited letter might be taken
as an affront to this Court, the message being that this Court does not have a copy of the CPLR or

the various commentaries. The Court chooses to disregard this.

As to Plaintiff's latest motion the Court has revised its prior decision to disregard Plaintiff's motion and will consider same. The decision will be incorporated into the presently pending decision. Answering papers are due by February 23rd and any reply by March 3, 2007.

No more motions by any party will be entertained by this Court.

Sincerely,

Andrew P. O'Rourke
Justice of the Supreme Court

APO:gm

# EXHIBIT 96

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

--------------------------------------- x
                                        :
ANNE BRYANT,                            :
                                        :
                    Plaintiff,          :   Index No. 5192/00
                                        :
            v.                          :   Hon. Andrew P. O'Rourke
                                        :
BROADCAST MUSIC, INC., (a/k/a "BMI"),   :
CLIFFORD A. "FORD" KINDER, KINDER &     :
CO., LTD., VADIVOX, LTD., JULES M. "JOE" :
BACAL, GRIFFIN BACAL, INC., STARWILD    :
MUSIC BMI, WILDSTAR MUSIC ASCAP,        :
SUNBOW PRODUCTIONS, INC., and JOHN      :
AND JANE DOES 1-10,                     :
                    Defendant.          :
                                        :
                                        :
--------------------------------------- x
                                        :
ANNE BRYANT,                            :
                                        :   Index No. 2821/02
                    Plaintiff,          :
                                        :   Hon. Andrew P. O'Rourke
            v.                          :
                                        :
SUNBOW PRODUCTIONS, INC.,               :
                                        :
                    Defendant.          :
                                        :
--------------------------------------- x

### SUNBOW PRODUCTIONS, INC.'S
### OPPOSITION TO PLAINTIFF'S SUR-REPLY

Defendant Sunbow Productions, Inc. ("Sunbow") submits this Opposition

to Plaintiff's so-called Motion for an Order "[a]llowing this trial to proceed and to allow

the testimony of Ford Kinder, Jules M. 'Joe' Bacal and Carole Weitzman."

## INTRODUCTION

Plaintiff has filed this alleged "motion" pursuant to no provision of law and in violation of this Court's order that all papers on Sunbow's motions for a directed verdict and to dismiss be filed by the close of business on Friday, December 8, 2006. This unauthorized sur-reply, masquerading as some sort of "motion," is no more than Plaintiff's effort to misconstrue the record once again and to distract the Court from (1) the intervening events that contradict her claims, (2) her own admissions that bar her claims as a matter of law, and (3) the Court's prior rulings on the very issues that Plaintiff asks the Court to address yet again. This trial may not continue unless Plaintiff can make out a cause of action to try, and she has not. Her most recent theory, like all the others she has now discarded, has no foundation in law or fact.

Sunbow urges the Court to grant its motion for a directed verdict under §4401 based on Ms. Bryant's admissions made during trial on December 4, 2006, to grant its CPLR §3211 motion to dismiss Plaintiff's claim, raised after Plaintiff's testimony on December 4, 2006, that she is also entitled to an accounting, and to disallow Plaintiff a reply on her "motion" — a sur-sur-reply in opposition to Sunbow's pending motions.

## BACKGROUND

This trial resumed on December 4, 2006, to decide the sole issue of whether Plaintiff and Sunbow ever entered into an oral agreement that would modify the terms of the written agreements that the Court had ruled and Plaintiff had (finally) admitted governed the relationship between Plaintiff and Sunbow, despite the fact that

2

the agreements all contain merger clauses. On the first day of trial, Plaintiff conceded

that each of the oral agreements Kinder & Bryant had with Sunbow had been followed

by one of the governing written agreements. Sunbow moved for a directed verdict.

Recognizing that Plaintiff's testimony had refuted any need to continue the trial, her

lawyer suddenly claimed that Plaintiff had still another, unresolved claim for an

accounting. Sunbow then also moved to dismiss for failure to state that claim. The

parties submitted their papers as ordered on December 8, 2006.

The parties reconvened in open Court on December 11, and after further

argument by Plaintiff on the same issues that she is arguing now, the Court announced

that it would rule on Sunbow's and BMI's motions within 60 days.

## DISCUSSION

Plaintiff's pending filing is not a motion. Pursuant to no provision of law,

Plaintiff seeks an order resuming the trial while Sunbow's motions are pending. As the

trial cannot resume unless Sunbow's motions are denied, this is merely an attempt to re-

argue her opposition to those motions; as such, it is an authorized sur-reply, which this

Court should have stricken. The Court having decided to consider Plaintiff's motion

and having allowed Sunbow and BMI an opportunity to reply to this sur-reply, the

Court should not allow Plaintiff yet another chance to oppose the pending motions.

Accordingly, Sunbow urges the Court to disallow any further reply by Plaintiff.

Plaintiff's "motion" or sur-reply consists of pages and pages describing

the testimony that she believes certain witnesses will offer if trial resumes, but never

once mentions to what cause of action she thinks the testimony is relevant and never

3

explains whether such a claim was adequately pled to begin with or why the testimony would make any difference in the outcome of the trial. There is no cognizable legal theory that this testimony would support. Plaintiff does not accept that the trial cannot continue without something to try.

In this sur-reply, Plaintiff barely mentions her theory of the written agreement that was investigated during the recent resumption of trial, implicitly conceding that it does not support her claims for royalties from the home video market. Plaintiff implies that she is prepared to offer further testimony and argument on the construction of the written agreements (Monaghan Affirm. p.9 n.4), even though this Court denied her motion to amend her complaint to add a claim for breach of those contracts. (The contracts were admitted in evidence to rebut Plaintiff's earlier theory that she had only oral agreements with Sunbow.) Moreover, those agreements include a condition precedent to a claim for breach: an objection by Plaintiff to any royalties paid within one year from her receipt of them.[1]

Instead, Plaintiff moves on to her "re-registration" theory, ignoring the fact that her case has changed and is not what it was in January 2004, when the Court decided that the parties would go to trial on Plaintiff's "oral argument" theory. In fact,

---

[1]     Plaintiff also makes another attempt to refute the fact that during the negotiation of the Jem agreement, William Dobishinski, representing himself as Kinder & Bryant's counsel, had unsuccessfully attempted to negotiate monies for the home video exploitation that Plaintiff claims she is entitled to. Her newest explanation is factually unsupported: there is no record evidence of "many" exchanges of correspondence between Mr. Dobishinski and Robert Harris, Sunbow's lawyer, relating to the negotiation of the Jem agreement or that the agreements were signed in 1987. Indeed, the points on which Mr. Harris agreed when he responded in his May 30, 1986 letter (Tr. Exh. I) to Mr. Dobishinski's March 3, 1986 letter (Tr. Exh. H) match exactly the final signed Jem agreement (Tr. Exh. M), suggesting that the agreements were signed shortly after Mr. Harris's May 1986 letter. What remains clear is that (1) Mr. Dobishinski would not have asked for the additional monies for the home video exploitation if he thought the agreement already granted it, and (2) Sunbow rejected his requested change.

4

the testimony of Kinder, Bacal, and Weitzman (whose testimony the Court excluded),[2] once potentially relevant to Plaintiff's theory of an oral working relationship, ceased to be relevant when Plaintiff's testimony made clear that the oral agreements to which she referred were merged into the written agreements, each containing a merger clause, which she has conceded govern her relationship with Sunbow.

Sunbow disputes that Plaintiff ever put it or the Court on notice that she was alleging a cause of action for accounting. To the contrary, Plaintiff made clear over four years ago, in November 2002, that she was abandoning any claim for an accounting, when she amended her original complaint against Sunbow and removed her cause of action for an accounting. Sunbow had moved to dismiss the accounting claim on the grounds that Plaintiff had not alleged facts establishing a fiduciary relationship. Plaintiff responded by amending her complaint to omit the claim. The Court then denied Sunbow's motion as moot on December 2, 2002 "because the amended complaint omits those improper claims for which plaintiff sought dismissal." Dec. 2, 2002 Decision and Order at 6 (Knapp Affirm., Exh. B). The claim was improper because *there were no facts alleged to establish a fiduciary relationship between Sunbow and Plaintiff*. The Court should bar the claim as withdrawn or dismiss it as unfounded for the same reasons it did so in 2002.

To the extent Plaintiff claims an accounting is potentially a *remedy* to her equitable claims of unjust enrichment and constructive trust, those claims first require

---

2    The Court granted Sunbow's motion in limine to exclude the testimony of Carole Weitzman as irrelevant. Dec. 5, 2006, Trial Tr. 42:18-25 ("THE COURT: ...Carole Weitzman is not coming in...This record is an Order.") (copy attached as Exh. A to the February 22, 2007 Affirmation of John C. Knapp ("Knapp Affirm.") In addition, Sunbow maintains that her testimony is inadmissible under C.P.L.R. §§ 3116 and 3117.

5

Plaintiff to demonstrate that (1) there is a fiduciary relationship between Sunbow and Kinder & Bryant, and (2) Sunbow received monies to which Plaintiff was entitled. Plaintiff has not made out even a prima facie case of these elements, and accordingly the complaint must be dismissed as a matter of law, and Sunbow hereby renews its motion to dismiss on those grounds.

On the state of the current record, Plaintiff's own admissions and the Court's findings preclude essential elements of each of Plaintiff's equitable claims. Thus, the additional evidence that Plaintiff proposes to offer is irrelevant and inadmissible. By definition, it cannot create a triable issue of fact that requires a trial.

A.    No Fiduciary Relationship between Kinder & Bryant and Sunbow

Over three years ago, Plaintiff advanced the same fiduciary relationship theory she advances here, based on the same facts she offers here, and the Court rejected it for the same reasons it should reject it now. Plaintiff submitted the very same Carole Weitzman and Joe Bacal deposition transcripts on November 26, 2003, in support of her opposition to Sunbow's motion for summary judgement and in support of her cross-motion for summary judgment. *See* Nov. 26, 2003, Affirmation of Patrick J. Monaghan, ¶¶3, 4 (Knapp Affirm., Exh. C). In its decision denying those motions, the Court held that it "previously had determined that a relationship of trust and confidence had existed between plaintiff and Bacal," but "[c]learly, discovery has since transpired which may...limit that earlier determination." Dec. 15, 2003, Decision and Order at 15 (Knapp Affirm., Exh. D). The Court went on to hold that in considering all the evidence Plaintiff proffered, including the Weitzman and Bacal depositions, *"plaintiff has woefully failed to demonstrate* that it is appropriate to pierce the corporate veil

6

and find that Bacal's identity was one with his production company *Sunbow, which of course otherwise had no confidential relationship to plaintiff.*" (*Id.* at 15-16 (emphasis added).) Thus, the Court has *already held* that the Weitzman and Bacal testimony Plaintiff re-offers does not establish a fiduciary duty and that "of course" there is no other basis for such a conclusion.[3] There is no basis to upset the determination.

Furthermore, the law is settled that there is no fiduciary relationship between a songwriter and his or her recording company, *Mellencamp v. Riva Music Ltd.*, 698 F.Supp. 1154, 1157-59 (S.D.N.Y. 1988) (holding that, under New York law, the author-recording company arrangement is not a fiduciary relationship) (Knapp Affirm., Exh. E), and the same applies to other such contractual relationships. *Carter v. Goodman Group Music Publishers*, 848 F.Supp. 438, 445 (S.D.N.Y. 1994) ("In the absence of special circumstances, no fiduciary relationship exists between a music publisher and composers as a matter of law.") (Knapp Affirm., Exh. F). *See also Rogers v. HSN Direct Joint Venture*, No. 97 Civ. 7710, 1998 WL 566804, *3 (S.D.N.Y. Sep 04, 1998) (collecting cases and holding that "[u]nder New York law, an arms-length commercial transaction generally does not give rise to a fiduciary relationship, even if the plaintiff has entrusted

---

3       The only new testimony Plaintiff offers is Ford Kinder's, which was secured after Mr. Kinder settled with Plaintiff and hired Plaintiff's counsel on a contingency arrangement, indicating that he now holds a stake in the outcome of this litigation. (Monaghan Affirm., Exh. A. (Kinder Dep. 109:21-110:14) ("Q. And when did you retain Mr. Monaghan to represent you with respect to the interests that overlap with Ms. Bryant's interests? A. Some time after that...I did sign a document with him. Q. With Mr. Monaghan? A. Yes. Q. An engagement letter, is that what you signed with Mr. Monaghan? A. I don't know what the title of it would be. Q. And are you paying Mr. Monaghan legal fees or is he — A. Contingency.")). In other words Mr. Kinder is now expecting to share in any money Plaintiff should collect from this litigation.

Even thus impeached, Mr. Kinder's testimony offers no basis for a finding that a fiduciary relationship existed between Sunbow and plaintiff. Indeed, as Kinder himself admits that his relationship with Sunbow was purely contractual and he knew that he was signing a contract with Sunbow (Monaghan Affirm., Exh. A. (Kinder Dep. 177:15-24)), there is no triable issue of fact as to whether a fiduciary relationship existed between Plaintiff and Sunbow.

7

the defendant with reporting and distributing profits") (citations omitted) (Knapp Affirm., Exh. G).

Under the *law of this case*, Sunbow owes no fiduciary duty to Plaintiff. That conclusion has been corroborated again and again as Plaintiff's case has changed. It was corroborated when the written agreements were found in August 2004, and again when Plaintiff *admitted* in December 2005 (Tr. Exh. Z at 5-6 n.3) and this Court *found* (in its June 12, 2006, Decision and Order at 2) (Knapp Affirm., Exh. H) that written agreements in the form of the Jem agreement governed all of Plaintiff's relations with Sunbow. In other words, by Plaintiff's own admission and this Court's findings, there is no triable issue of fact as to whether there was a fiduciary relationship, and no evidence or testimony that Plaintiff offers changes that conclusion.[4] Nor can she raise an issue of fact by putting in evidence that is at odds with her own prior admissions. *Maria S. v. Willow Enterprises Inc.*, 234 A.D.2d 177, 651 N.Y.S.2d 486 (1st Dep't) (contradiction between plaintiff's own witness's statements is insufficient to raise a triable issue of fact) (Knapp Affirm., Exh. I).

---

[4]     In claiming a right to offer evidence that Sunbow owed a fiduciary duty to Plaintiff, Plaintiff relies on a statement this Court made in March 2003 (and cited in May 2004). (January 23, 2007 Affirmation of Monaghan, ¶ 13 "Monaghan Affirm.")  But in November 2003, in response to Sunbow's motion for summary judgment, Plaintiff offered all of her "evidence" of this contention, the same evidence she re-offers now, and the Court then found that she "woefully failed to demonstrate" that any such duty existed.  *See supra* at 6-7 (quoting Dec. 15, 2003, Decision and Order at 15 (Knapp Affirm., Exh. D)).

        Moreover, Mr. Monaghan's reliance on this Court's decision is misleading.  When the Court referred in its May 7, 2004 decision to the language in the March 2003 decision about proving facts supporting a fiduciary relationship, the Court was not referring to Sunbow, but to its then co-defendant, Joe Bacal.  (The Court had already resolved that issue against Plaintiff as it related to Sunbow.)  Plaintiff has since settled with Bacal, and that settlement presumably settles any grievance she had against him personally.  What is important here is that none of the testimony Plaintiff now proffers changes the Court's December 2003 determination that Plaintiff failed to make out a prima facie showing of a fiduciary relationship against Sunbow.

B.    Sunbow Received No Monies Due to Kinder & Bryant

In July 2004, Plaintiff *admitted* that Sunbow did *not* receive any of the performance royalties to which Plaintiff claims that she was entitled. (Tr. Exh. Y.) The proffered testimony does not even address, much less alter, that fact. Indeed, no evidence offered or received has ever suggested that Sunbow received any money owed to Plaintiff for any reason whatsoever, whether performance royalties or publishing royalties under the terms of the written agreements or otherwise. As a result, Plaintiff has failed to make out a prima facie case of her equitable causes of action, and they must be dismissed as a matter of law. No evidence in the record or offered now creates a triable issue of fact; the trial should not continue.

\* \* \* \* \* \* \* \* \*

The history of this case is a saga of Plaintiff's constantly changing theories, each one advanced seriatim as the prior one is shown to be baseless, even if it means contradicting representations that have been made to the Court on the prior theory. This Court has given Plaintiff considerable latitude over the last *five years* to formulate and prove a cause of action against Sunbow, and she has failed to do so.

Sunbow paid Kinder & Bryant millions of dollars in the 1980s for their work on the Shows, a fact that Plaintiff conspicuously fails to disclose to the Court. Kinder & Bryant worked for Sunbow pursuant to work-for-hire agreements, which were generous for their times and even permitted her to earn royalties for new uses of her music such as ringtones. Plaintiff is paid pursuant to those agreements and will

9

continue to be paid for years to come. Plaintiff did not sue on those agreements but instead claimed she did not have copies of them. When they became available to her, she persisted in claiming that she had never signed them—to the point of alleging forgery—and pursued her oral working arrangement theory long after it was shown to be baseless. When she finally tried to rely on the written agreements, she did so too late and knowing that they did not grant her the vast publishing royalties she was seeking.

Plaintiff has wasted years of the parties' and the Court's time and resources claiming facts and causes of action that were baseless and inconsistent with her contractual relationship with Sunbow. She should not be permitted to waste any more of the Court's and the parties' resources.

## CONCLUSION

For the foregoing reasons, this Court should grant Sunbow's pending motions for a directed verdict under §4401 as to Plaintiff's oral agreement theory and grant its CPLR §3211 motion to dismiss Plaintiff's remaining claims.

Plaintiff has offered nothing to rebut Sunbow's contention that Plaintiff's own admissions require judgment for Sunbow on the oral agreement issue that was set for trial on December 4, 2006. Her subsequent claim that she is entitled to an accounting should be dismissed because she long ago abandoned it; she is also not entitled to an accounting on her equitable claims, both as a matter of law and because she has admitted facts that preclude a finding of a fiduciary relationship or an unjust enrichment of any kind. This Court should reject Plaintiff's attempt at unending, serial pleading.

10

Sunbow further requests that the Court disallow Plaintiff yet a third

opportunity at opposing Sunbow's motions and bar her "reply" to this "motion."

New York, New York
February 22, 2007

Respectfully submitted,

PATTERSON BELKNAP WEBB & TYLER LLP

By: _____
                Gloria C. Phares
                John C. Knapp

1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

Attorneys for Defendant Sunbow Productions, Inc.

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK       )
                            :ss.:
COUNTY OF NEW YORK    )

        SYLVIA ANDREEV, being duly sworn, deposes and says:

        1.      I am over 18 years of age, not a party to this action, and am employed by

the law firm of Patterson, Belknap, Webb & Tyler LLP, located at 1133 Avenue of the Americas,

New York, New York 10036.

        2.      On February 22, 2007, I served a true copy of the foregoing **SUNBOW**

**PRODUCTIONS, INC.'S OPPOSITION TO PLAINTIFF'S SUR-REPLY** by overnight

courier service (Federal Express) upon the following, directed to them at the addresses below:

        Patrick J. Monaghan, Esq.
        Monaghan, Monaghan, Lamb, Marchisio
        38 W. Grand Avenue, 2nd Floor
        Montvale, New Jersey 07645

        Judith M. Saffer, Esq.
        Broadcast Music, Inc.
        320 West 57th Street
        New York, NY 10019-3790

                                  _____
                                        SYLVIA ANDREEV

Sworn to before me this
22nd day of February, 2007

_____
Notary Public

**ELIZABETH WILLIS**
**Notary Public, State of New York**
**No. 31-01WI6014358**
**Qualified in New York County**
~~~~~~~~~~~~~~~~~~~~~~~~~~ 2010

# EXHIBIT 97

03/03/2007  16:06    2018029066          MONAGHAN & MONAGHAN          PAGE  01/13

S5576-01

SERIAL NO. 387

| SERVED | |
| RECEIVED | |
| FILED | |

# MONAGHAN, MONAGHAN, LAMB & MARCHISIO

**28 W. Grand Avenue**
**Montvale, NJ 07645**
**Phone # 201-802-9060**
**Fax # 201-802-9066**

## FAX TRANSMITTAL

TO:        Justice O'Rourke          FAX #:    (845) 228-0656

cc:        Gloria Phares, Esq.       FAX #:    (212) 336-2222

cc:        Judith Saffer, Esq.       FAX #:    (212) 397-0789

FROM:      Patrick J. Monaghan, Jr.

DATE:      March 3, 2007

RE:        Bryant v. Sunbow Productions, Inc.
           Index No. 5192/00
           Our File No. 3689

NUMBER OF PAGES INCLUDING THIS PAGE:

*The information contained in this facsimile message is privileged and confidential intended only for the use
of the party named below. If the reader of this message is not the intended recipient, you are hereby notified
that any dissemination, distribution or copy of this telecopy is strictly prohibited. All privileges otherwise
applicable are strictly reserved.*

*20271*

# MONAGHAN, MONAGHAN, LAMB & MARCHISIO, LLP

ATTORNEYS AND COUNSELLORS AT LAW

28 WEST GRAND AVENUE
MONTVALE. NEW JERSEY 07645

TEL: (201) 802-9060
FAX: (201) 802-9066
E-Mail: mmlmlawyers@aol.com

PATRICK J. MONAGHAN, JR. *
RICHARD F. MONAGHAN **†
EUGENE G. LAMB **†
JUVENAL L. MARCHISIO **
JAMES P. O'NEILL ***†
ROBERT RICCO *†
MICHAEL KORIK *

NEW YORK OFFICE:
150 WEST 55TH STREET
SUITE 1G
NEW YORK, NEW YORK 10019

(212) 541-6980
FAX: (212) 541-6994

*ADMITTED IN NJ AND NY
**ADMITTED IN NY
***ADMITTED IN FLA AND NY
† OF COUNSEL

March 3, 2006

**VIA FAX (845) 228-0656 & FEDERAL EXPRESS:**
Justice Andrew P. O'Rourke
Supreme Court of the State of New York
Putnam County
40 Gleneida Avenue
Carmel, NY 10512

Re: Bryant v. Broadcast Music, Inc.
    Index Nos. 2821/02 & 5192/00
    Our File No. 3689

Dear Justice O'Rourke:

      Enclosed herewith please find Plaintiff's Reply to
Sunbow's and BMI's Opposition to Plaintiff's Motion as
directed by Your Honor to be served on or before March 3,
2007.

                              Respectfully submitted,

                              Patrick J. Monaghan, Jr., Esq.

MK:mva
Enclosures
cc: Gloria Phares, Esq. via Fax
    Judith Saffer, Esq. via Fax
    Rockland County Clerk - ORIGINAL TO BE FILED

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND
------------------------------------X
ANNE BRYANT,

                                        Index No. 5192/00

                          Plaintiff,

    -against-                           **REPLY AFFIRMATION TO**
                                        **SUNBOW'S OPPOSITION TO**
BROADCAST MUSIC, INC.                   **MOTION TO RESUME TRIAL**
(a/k/a "BMI"), FORD KINDER,             **AND ALLOW DEPOSITION**
KINDER & CO., LTD., VADIVOX,            **TESTIMONY**
INC., JULES M. "JOE" BACAL,
GRIFFIN BACAL, INC., STARWILD
MUSIC BMI, WILDSTAR MUSIC ASCAP,
SUNBOW PRODUCTIONS, INC.,

                          Defendants.
------------------------------------X
ANNE BRYANT,

                                        Index No. 2821/02

                   Plaintiff,

         -against-

SUNBOW PRODUCTIONS, INC.,

              Defendant.
------------------------------------X


    PATRICK J. MONAGHAN, JR., an attorney and member of the

Bar  of  New  York  affirms,  under  penalty  of  perjury  in

accordance with CPLR 2106, the following:

    1.   I  am  a  member  of  MONAGHAN,  MONAGHAN,  LAMB  &

MARCHISIO   LLP,   attorneys   for   Plaintiff   ANNE   BRYANT

("Plaintiff")  and  submit  this  Affirmation  in  reply  to

Sunbow's  opposition  papers  and  in  further  support  of

                                                            1

Plaintiff's Motion for the Court to allow Plaintiff to complete her case including, but not limited to, allowing and considering at trial the *de bene esse* testimony of Plaintiff's partner Dr. Ford Kinder ("Kinder")[1], Defendant Sunbow's representative Carole Weitzman ("Weitzman"), and Jules M. "Joe" Bacal ("Bacal"), who was subpoenaed and agreed to appear for the trial in December of 2006.

### SUMMARY OF POINTS

A.  *THE MOTION IS PROPERLY BEFORE THE COURT.*

B.  *SUNBOW OFFERS NO VALID OPPOSITION TO MOTION AND EVIDENCE OF ITS PRIMA FACIE LIABILITY HAS BEEN SHOWN.*

C.  *BMI CONCEDES THE RELEVANCE OF THE DEPOSITION TESTIMONY AND EVIDENCE OF ITS PRIMA FACIE LIABILITY HAS ALSO BEEN SHOWN.*

D.  *THE TRIAL SHOULD CONTINUE SO A FULL RECORD MAY BE BEFORE THE APPELLATE DIVISION*

### THE MOTION IS PROPERLY BEFORE THE COURT

2.    Sunbow filed a slew of expensive motions, including at least one criticized by the Second Department as unauthorized, and an improper removal to federal court, and now hypocritically complains that plaintiff's motion is

---

[1] By Order dated March 8, 2006 , after Plaintiff's Motion for that relief,  the Court ordered both the Kinder and David Berman depositions be allowed for trial.

not provided for in the CPLR.    CPLR 2211 provides that a

motion is simply a request for an order from the Court and

that is what the Court has before it: a simple and

reasonable request that this Court consider testimony taken

precisely for trial by Order of March 8, 2006 and the

completion of this trial begun over two years ago and not

deem the six years of hard-fought litigation as a waste of

time and resources including the Court's.

### SUNBOW'S OPPOSITION [THE "NOTHING TO TRY" ARGUMENT]

3.    Sunbow says there is nothing to try claiming

falsely that plaintiff keeps switching pleading theories.

Of course Sunbow ignores that it "deep-sixed" documents and

production of the Jem Agreement until 2004 in mid-trial

despite plaintiff's previous demand for all written

agreements.

4.    But more importantly , as a matter of law, this is

not a legitimate battle about pleadings[2] because all issues

about the relationship between Bacal and his companies

including Sunbow have been in the case for five years or

better and not "suddenly" as Sunbow claims. Sunbow can not

claim surprise about anything in this case. Remember, on the

---

[2] As this Court noted on the record in December 2006 , Plaintiff's Amended Complaint dated November 15, 2002 said inter alia "5. Plaintiff therefore demands that the Court direct Sunbow to render a true and complete *accounting* as to any and all monies received or to be received by defendant Sunbow ......". Further in her Second Cause of Action for a Constructive Trust, plaintiff again sought an "..accounting as to any monies received by the defendant relative to the sale and distribution of any products, cd's , videos, tapes...."

eve of both the 2004 and 2006 segments of this trial, Sunbow

suddenly made small payments to plaintiff thus again

acknowledging it owes plaintiff money [see e.g. copy of

letter dated November 28, 2006 from Sunbow's Financial

Controller and also letter from John Knapp, Esq. of

Patterson Belknap dated December 1, 2006 [Plaintiff's Ex

48].

    5.  It is the facts which determine the relief-not the

legal theories. As set forth in the CPLR:

    3017.  **Demand for relief**
                    ****

**Except as provided in section 3215, the court may grant any
type of relief within its jurisdiction appropriate to the
proof whether or not demanded; imposing such terms as may be
just.**

    6.  The  CPLR  mandates  a  liberal  construction  of

pleadings  [CPLR  3026]  and  inconsistent  pleadings  are

likewise permitted [CPLR 3023].

    7.  The Kinder, Weitzman and Bacal testimony sought to

be offered and the relationship of trust and confidence

between plaintiff and Sunbow's President and principal Bacal

[already noted by this Court] are obviously relevant on both

the Constructive Trust and Unjust Enrichment claims and the

accountings related thereto.

    8.  Sunbow's  representation  to  this  Court  that  the

testimony  of  Bacal,  Kinder  and  Weitzman  "  became

irrelevant," is nothing short of silly when one looks at the
record in this case and notes how many times Sunbow had
relied upon Bacal and Weitzman in its own motions.

   9.   Sunbow cannot tell this Court what evidence MAY
come in through these additional witnesses when this trial
continues.  Not only is Sunbow apparently able to read minds
but it is able to predict and foretell the evidence which
may come in through these additional witnesses.  The rest of
us including the Court are not possessed of these powers of
prediction.

<div align="center">**THE ALLEGED ADMISSIONS**</div>

   10.  Sunbow's opposition speaks of admissions.  The
only party entitled to a 4401 ruling here based on
admissions is plaintiff as she demanded in her Cross Motion
presently sub judice.  Remember, on the eve of both the 2004
and 2006 segments of this trial, Sunbow suddenly made small
payments to plaintiff thus again acknowledging it owed and
owes  plaintiff money [see e.g. copy of letter dated
November 28, 2006 from Sunbow's Financial Controller and
also letter from John Knapp, Esq. of Patterson Belknap dated
December 1, 2006 [Plaintiff's Ex 48].  In addition plaintiff
read into the record on December 6, 2006 numerous judicial
and fatal admissions made by Sunbow [see Affirmation of
Michael Korik Esq. dated December 8, 2006].

5

11.    There has never been any admission that Plaintiff
is suing *on only an oral agreement* and none of her three
Complaints so state.  She asked for an accounting in her
Amended Complaint as the Court noted on the record. The JEM
Contract was admitted for all purposes and this Court held
that it applies to the relationships.    It was not admitted
solely for impeachment purposes-evidence comes in from all
sources.

### BMI'S OPPOSITION AND CONCESSION OF RELEVANCE

12.    The statements of BMI's lawyer Ms. Saffir do not
count as **evidence** and letters and BMI affidavits are not
evidence at this trial. Nothing said or put forth by BMI
legitimately controverts the central claim that BMI,  in
violation of its duty to Plaintiff, allowed the alteration
of its records which caused Plaintiff damages in the form of
not only lost performance royalties of over $238,000 prior
to 2003, which the Court has already noted in its May 26,
2004 Decision and Order, but also lost publishing royalties.

13.    BMI allows that Plaintiff's evidence related to
BMI is already before the Court (BMI Opposition at page 4).
This is an interesting point when BMI along with Sunbow is
trying striving mightily to keep that same evidence out
including the deposition testimony of BMI's own director of

6

special research (Brian McLauglin) and BMI's writer and
Plaintiff's former partner Dr. Kinder.

14.  BMI concedes the Court can review the Bacal and
Kinder testimony when it says "neither Mr. McLaughlin's
testimony nor Dr. Kinder's testimony provide sufficient
support to sustain Plaintiff's allocations, and since both
are now before the Court on plaintiffs motion anyway." and
noted "With Dr. Kinder's testimony now before the Court"
(BMI Opposition at page 6 paragraph 8).

15.  BMI's idea of a trial is for it to tell the Court
its own skewed one-sided view of matters and expect that
without benefit of cross examination of BMI witnesses [as
for example, Allison Smith,] the Court should merely accept
on faith what it submitted in affidavits. (see e.g.
reference to "Affidavit of Allison Smith) in BMI's opposing
brief.

16.  But this Court has already indicated that
plaintiff has shown evidence of changes in her registrations
in its ruling of December 16, 2003 over three years ago[3] and
nothing has changed or been controverted by any testimony or

---

[3] - "A comparison of plaintiff's early royalty statements with later
statements or BMI catalog entries for reuses of plaintiff's compositions
appears to support her claim that her royalties have been diminished"
(December 14, 2003 ruling at page 10).

7

evidence: those registrations were altered and BMI allowed the alterations in violation of its obligation to its member writer Anne Bryant.

17.  If BMI pays the wrong persons, as it seems to concede on page 7 of its Opposition when it invites plaintiff to chase others, and as the Court is undoubtedly aware of from the settlements with Kinder and Bacal which per force acknowledge such, it has therefore breached its duty owed to Plaintiff, whether contractual or fiduciary.

18.  BMI claims that the Court "should not penalize BMI for taking a little extra time" in connection for making changes in the Plaintiffs registrations.  A little extra time has turned into years.  BMI knew of the settlements, had the settlement agreements in its possession and interposed a condition which had no right to assert.  BMI should have completed the changes long ago and in the interim the plaintiff has lost additional royalties due her.

19.  BMI has put the cart before the horse in suggesting that it is ridiculous for Plaintiff to claim that there is an obligation to check if they later work bearing the same name as submitted.  This is a simple task and if Plaintiff was to submit a song such as "Dancing In The Dark" contending that she wrote it, we feel confident that BMI

8

would not register the title without checking to see whether or not the original composer had a problem with that as a BMI writer.

### BMI'S UNDERTAKING TO PLAINTIFF AND ITS WRITERS

20.  This is what plaintiff was told by BMI and will establish at the completion of the trial as BMI's commitment.  This will be testified to by Allison Smith of BMI when she appears unless of course BMI is prepared to dispute what is on its own Website and it completely belies what BMI is now telling the Court:

21.

## *BMI quotes their policies on their website...*

### General Information

#### Registering Your Works

**A registration received from any songwriter, composer or publisher of a work will suffice to credit all participants.** If the publisher submits a registration, the writer does not have to submit one as well, and vice-versa. However, we strongly encourage each co-publisher of a work to submit its own song registration form in order to assure that the work is entered into the publisher's correct BMI account. BMI will enter the work into its database for the shares and participants indicated on the first registration received. **If a later registration is received for the same work which conflicts with the earlier registration, we will notify the party submitting the later registration and request documentation or written confirmation from all affected participants in conformity with BMI's conflicting registration rules before changing our records[4].**

---

[4]  BMI never notified plaintiff of any changes as she has testified.

9

## Overpayment of Royalties

**In the event that royalties are paid in error to any writer or publisher, BMI will debit the mistakenly-paid affiliate's account in the amount of the overpayment.[5]** In addition, if based upon past BMI earnings history and projected future royalty earnings from BMI, there is no reasonable expectation that BMI will be able to fully recoup the overpaid amount within the four distribution quarters following the debit, the affiliate will be expected to repay on request the balance of the overpayment that remains unrecouped. In the event that BMI makes a royalty distribution based upon interim fees received from a licensee and the final fees subsequently determined to be payable by that licensee are less than the interim fees upon which the distribution was based, BMI reserves the right to debit all writers and publishers to whom such interim fees were distributed in an amount which appropriately reflects the difference between the interim and final license fees.

## Royalties Withheld Due to Litigation

**If BMI is named as a party to a lawsuit, BMI may withhold royalties relating to that dispute. Further, BMI will withhold royalties earned by any works that are the subject of litigation, upon receipt of a copy of the complaint as filed with the court and a written directive to BMI from the court requiring such withholding.**

    22.  Plaintiff has made out more than prima facie cases against both Sunbow and BMI and her trial should be continued with the testimony sought to be offered.    The

---

[5] It is undisputed that BMI has still not completely changed the registrations of plaintiff's works and it never withheld a dime even when Bacal admitted years ago that the percentages for the Transformer's credits were wrong.

10

parties  deserve  a  full  record  in  this  case  when  it  is appealed as it most certainly will be.

23.  For the foregoing reasons, Plaintiff's motion must be granted and the testimony of Kinder, Bacal, and Weitzman must be allowed and the trial continued.


New York, New York
March 3, 2007

PATRICK J. MONAGHAN, JR.

11

# EXHIBIT 98

55576-01

| SERIAL NO. 388 | | |
|---|---|---|
| SERVED | | |
| RECEIVED | | |
| FILED | | |

## DECISION AND ORDER

**To commence the statutory
period of appeals as of right
CPLR (5515 [a]), you are advised
to serve a copy of this order,
with notice of entry, upon all
parties.**

**SUPREME COURT OF THE STATE OF NEW YORK
IAS PART, ROCKLAND COUNTY**

**Present:   Hon. Andrew P. O'Rourke**
**Supreme Court Justice**

----------------------------------------------------------X

ANNE BRYANT,

INDEX NO.: 5192/2000
ACTION #1

Plaintiff,

-against-

BROADCAST MUSIC, INC., (a/k/a "BMI") CLIFFORD
A. "FORD" KINDER, KINDER & CO., LTD.,
VADIVOX, LTD., JULES M. "JOE" BACAL,
GRIFFIN BACAL, INC., STARWILD MUSIC BMI,
WILDSTAR MUSIC ASCAP, SUNBOW
PRODUCTIONS, INC., and JOHN AND JANE
DOES 1-10,

Defendants.

----------------------------------------------------------X

ANNE BRYANT,

INDEX NO.: 2821/2002
ACTION #2

Plaintiff,

-against-

SUNBOW PRODUCTIONS, INC.,

Defendant.

----------------------------------------------------------X

1

The following documents numbered 1 to   were read on these motions:

| | |
|---|---|
| Defendant Sunbow's motion to dismiss with exhibits | 1-10 |
| Plaintiff's cross motion for judgment | 11-14 |
| Defendant Sunbow's affirmation by Phares with exhibits | 15-18 |
| Defendant BMI's motion to dismiss | 19-25 |
| Plaintiff's affirmation by Monaghan in opposition | 26-31 |
| Plaintiff's sur-reply to motion | 32-44 |
| Plaintiff's affirmation by Koric in opposition and support | 45-57 |
| Defendant's affirmation by Alison Smith in opposition | 58-63 |
| Defendant's affirmation of Knapp in opposition to sur-reply | 64-67 |
| Plaintiff's notice of motion to allow more testimony with exhibits | 68-88 |
| Plaintiff's briefs and memoranda | |
| Defendant's briefs and memoranda | |
| Trial testimony: July 6, 7, 8, 9 and 21, 2004 | |
| and December1, 4, 5, 6 and 11, 2006 | |

This long and complicated case concerns the attempts by Plaintiff to reconcile her belief that she has not been sufficiently recompensed for her obvious talent, artistry and musical abilities. Defendant Sunbow's position is that they have always paid her that which she bargained for as a "work-for-hire" musician. Defendant BMI denies that they have caused registrations or re-registration of Plaintiff's musical works.

The history of these involved actions span a multiplicity of motions, appeals, testimony and exhibits. All of this has been set forth in the many Court decisions and in the trial record and

2

will not be reiterated here except as necessary.

The Plaintiff's amended complaint against Sunbow Productions Inc. (Sunbow) states two causes of action: the first is for unjust enrichment and the second is for constructive trust. Plaintiff claims that Broadcast Music Inc. (BMI) forwarded her share of royalties to improper parties including Sunbow as well as the other Defendants in action number 1.

During the last phase of this non-jury trial (December 6- 11, 2006) the court had limited Plaintiff to proof that there were oral as well as written contracts between the parties. In the very beginning of these cases Plaintiff claimed that there were no written contracts between Plaintiff and Defendant Sunbow. When Sunbow produced signed copies of such contracts and the testimony of Sunbow's then lawyer, was that Sunbow only did business on the basis of signed contracts, the Court found that there were signed contracts.

The Plaintiff claimed that certain of her signatures were forgeries. A framed issue hearing was held thereon. Defendant Sunbow produced an expert witness and Plaintiff produced no witnesses on this issue. The Court decided that the signatures were genuine and that the Plaintiff could proceed to introduce such evidence, as she had, that there were oral agreements as well as written ones between the parties.

While on the stand under cross-examination (Dec. 5, 2006) Plaintiff admitted that there were no oral agreements, except as to discussion of terms and conditions all of which became part of the later written agreements.

At this point, Sunbow moved to dismiss the case based on the admissions of Plaintiff although the Plaintiff had not formally rested. Thus arises this motion to dismiss. Plaintiff moves for an order conforming the pleadings to the proof and for an action for an accounting

3

based on contract law, which was not included in the aforementioned amended complaint..

Sunbow claims that Plaintiff's claim for unjust enrichment and constructive trust are no longer in the case since the Court ruled on December 4, 2006 that Plaintiff's position vis-a-vis oral agreements, a necessary element, were no longer in the case. Sunbow states that Plaintiff is not entitled to a contractual accounting. This cause of action having been abandoned by Plaintiff as she pursued causes of action for an equitable accounting. Defendant Sunbow states that Plaintiff has failed to establish the necessary elements for an equitable accounting since the basis was contractual and there was inter alia no mutual and confidential nature existing between BMI, Sunbow and Plaintiff. Moreover, Plaintiff admitted on the stand that Sunbow had never received performance royalties for Plaintiff's work (trial transcript p. 32, July 9, 2004). Sunbow objects to Plaintiff's motion under CPLR 3025 (c) to amend the pleadings to the proof, claiming that the issue in this case had been limited by Court decisions and testimony to the last remaining issue of oral agreements, which Plaintiff agreed under oath were not there. Moreover, Sunbow states that Plaintiff already has a contractual legal remedy under the Sunbow Contracts (trial ex. M, Section 6 (b) ) which provided Plaintiff with the right to inspect Sunbow's books and records dealing with Plaintiff and her predecessor entity of Kinder & Bryant. This paragraph includes a provision limiting Plaintiff to protest in writing and within one year from date of Sunbow's report.

BMI also moves to dismiss Plaintiff case, stating that Plaintiff's remedy with respect to BMI was to commence an arbitration proceeding which Plaintiff has failed to do. Plaintiff has received royalty statements from BMI and during the discovery phase of this case has again received copies thereof.

4

Plaintiff's agreement with BMI sets up a conflict resolution procedure (trial ex. 1 Paragraph 18) allowing for arbitration. The Plaintiff has never exercised her right and has rather sought relief in this Court. Lastly, BMI states that Plaintiff has produced no evidence of "fraudulent re-registrations" of any of Plaintiff's works.

Plaintiff states in opposition that she is entitled to a judgment directing Sunbow to account to Plaintiff "for its admitted responsibility to pay her publishing royalties..." (Korik affirmation, 12/8/06, p. 2) although Plaintiff has settled her claims against both Defendants' Kinder and Bacal, Plaintiff claims that they had a fiduciary relationship with Sunbow and thus Plaintiff is entitled to an equitable accounting.

Sunbow's reply affirmation of December 8, 2006 attached 18 exhibits that advance its position that this Court has already ruled that "there were written and valid signed contracts between Plaintiff and Defendant Sunbow" (Decision of June 12, 2006). This Court's letter of August 10, 2006 stating "If Plaintiff intends to now say there were oral contracts, it is up to her to prove this especially in the face of the integration or merger clauses." Copies of the trial transcript for December 4, 2006 are attached to show that Plaintiff recanted that there were any oral agreements that were not finally merged into the written agreements. Sunbow through its attorneys forwarded a list of all moneys paid by Sunbow to Plaintiff (trial ex. 48).

Attached also to the Sunbow affirmation in Support inter alia is a letter from Attorney William Dobishinsky, claiming to represent his clients (Kinder and Bryant) seeking changes in the "JEM" and "My Little Pony" agreement. This letter is written to attorney Robert Harris, the then lawyer for Sunbow. An answer letter from Harris to Dobishinsky is also attached (trial exs. H and I). The purpose of this correspondence is that Sunbow would not give Plaintiff additional

5

money for audio recordings, videocassettes or masters produced by Plaintiff embodied in commercial distribution.

In reply BMI states that the Plaintiff's own expert (Berman) conceded that Plaintiff does not own or control the use of the musical compositions at issue in these cases. BMI was willing to arbitrate these issues but Plaintiff refused not withstanding the Order of this Court dated February 27, 2001. BMI contends that Plaintiff specifically instructed the Defendant Bacal not to Cooperate with BMI to re-order the Plaintiff's catalogues. BMI states it has not breached any duty toward Plaintiff, and points to BMI's agreement to pay Plaintiff royalties (trial ex. 1 at para. 7) to show that BMI has furnished statements to Plaintiff as to said royalties, which have not been challenged. Plaintiff states that the very fact of this suit is sufficient challenges.

Plaintiff filed a "sur-reply" which while not proper in the CPLR was accepted and read in this matter. The thrust of this sur-reply was that BMI had waived its right to an arbitration by appearing and participating in the trial of this matter. The court rejects this since it strongly suggested that BMI participate. Moreover Plaintiff states that her e-mail to Kinder not to cooperate with BMI to secure re-registration of Plaintiff's works was an attempt to redress her past wrongs and not to give anything further in the settlement. However she was defeating her own position in the settlement and allowing Kinder to continue receiving her purported royalties.

In the beginning of this case Plaintiff argued that her case was based upon unjust enrichment and a constructive trust based on unjust enrichment (trial transcript June 6, 2004, p. 10). Since that time Plaintiff has failed to prove any confidential or fiduciary relationship between either Sunbow or BMI.

This case has occupied so much time and motions because Plaintiff had advanced several

6

different theories relative to the Defendant's alleged liabilities. In order to maintain the unjust

enrichment theory, Plaintiff postulated that there were a series of oral contracts, which

Defendants breached to Plaintiff's detriment. When written contracts eventually appeared,

Plaintiff claimed they were forgeries. A subsequent framed issue hearing decided that these

contracts held valid signatures and that this was the policy of Sunbow in working with artist-for-

hire. That limited the scope of Plaintiff's case to a single area, the possibility that there were,

outside of the written agreements, some oral agreements. The Plaintiff's testimony on the stand

(above cited) admitted that there were no free standing oral agreements and that all oral

negotiations were merged into written agreements. At that time Sunbow moved under CPLR

4401 for a "directed verdict" based on Plaintiff's addition. BMI joined in this motion. The

Court concluded this case, over Plaintiff's objections. All parties were to submit papers on this

motion. Plaintiff thereafter moved for judgment against Defendants based on certain admission

again under CPLR 4401.

Sunbow filed an opposition affirmation to Plaintiff's sur-reply, which consisted of

various decision and orders of this Court, transcript testimony and some decisions deemed

appropriate.

While this court was considering the aforesaid motion under CPLR 4401 and 3025,

Plaintiff gained reluctant permission to file a motion to allow a continuation of testimony.. The

central issue is the Plaintiff's claims that since the Court allowed additional testimony to be taken

(i.e. depositions of Ford Kinder, Jules Bacal and Carole Weitzman) that the trial should continue

to allow this additional evidence. However, although the Court allowed this motion to help

secure Plaintiff's record, this matter has been over taken by events, the above decision and so this

<p style="text-align:center">7</p>

motion is dismissed.

Based on the exhibits, the many affirmations and affidavits and exhibits attached thereto and the testimony heretofore had, herein the Court finds as follows :

The Plaintiff is not entitled to any equitable accounting having failed to prove a prima facie case against either Defendant.

However Plaintiff is entitled to whatever rights still exist under her agreements with defendants.

This case is dismissed with costs and disbursements.

This constitutes the order of the Court.

_____
Hon. Andrew P. O'Rourke
Justice of the Supreme Court

Dated: March 9, 2007
          Carmel, NY

Monaghan Monaghan Lamb and Marchisio LLP
Attorney for Plaintiff
28 West Grand Avenue
Montvale, NJ 07645

Patterson Belknap Weber and Tyler, Esq.
Attorney for Sunbow
1133 Avenue of the Americas
NY, NY 10036

Judith Saffer, Esq.
Attorney for Broadcast Music
320 West 57th Street
NY, NY 10019

8

# EXHIBIT 99

55576-017

SERIAL NO. 397

| SERVED | | |
| RECEIVED | | |
| FILED | | |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

-------------------------------------------- x
                                             :
ANNE BRYANT,
                                             :
            Plaintiff,          Index No. 5192/00
                                             :
        v.                      Hon. Andrew P. O'Rourke
                                             :
BROADCAST MUSIC, INC., (a/k/a "BMI"),
CLIFFORD A. "FORD" KINDER, KINDER &      :
CO., LTD., VADIVOX, LTD., JULES M. "JOE"
BACAL, GRIFFIN BACAL, INC., STARWILD   :        **FILED**
MUSIC BMI, WILDSTAR MUSIC ASCAP,
SUNBOW PRODUCTIONS, INC., and JOHN  :          MAY – 8 2007
AND JANE DOES 1-10,
            Defendant.          :        ROCKLAND COUNTY
                                             CLERK'S OFFICE
                                             :
-------------------------------------------- x
                                             :
ANNE BRYANT,
                                             :
            Plaintiff,          :  Index No. 2821/02
                                             :
        v.                      :  Hon. Andrew P. O'Rourke
                                             :
SUNBOW PRODUCTIONS, INC.,
                                             :
            Defendant.          :
                                             :
-------------------------------------------- x


### FINAL JUDGMENT

        WHEREAS the issues in this action have duly come on to be heard before

the Honorable Andrew P. O'Rourke, a justice of this Court, without a jury, at the

Rockland County Courthouse, located at 1 South Main Street, New City, NY 10956,

beginning on July 6, 2004; were discontinued several days later; then resumed on

October 29, 2004; and then further resumed on December 6, 2006, at the Putnam County courthouse, located at 40 Gleneida Avenue, Carmel, NY 10512; and

WHEREAS the plaintiff, Anne Bryant, appeared by her attorney, Patrick J. Monaghan, and the defendant Sunbow Productions, Inc. appeared by its attorney Gloria G. Phares, and defendant Broadcast Music, Inc., appeared by its attorney, Judith M. Saffer; and

WHEREAS the issues have been duly tried, and defendants moved the Court for an order dismissing plaintiff's claims pursuant to Sections 4401 and 3211 of the New York Civil Practice Laws and Rules; and

WHEREAS the Court after due deliberation duly made and filed a decision in writing on the 9th day of March, 2007, in favor of the defendants, and against the plaintiff, dismissing the case with prejudice and costs and disbursements; and

WHEREAS that decision has been noticed to the parties on the 20th day of March 2007; and

WHEREAS the costs and disbursements of the defendant Sunbow having been duly taxed by the Clerk of this Court in the sum of ___*950.⁰⁰*___ Dollars;

NOW, on motion of Gloria C. Phares, attorney for defendant Sunbow, it is Ordered, Adjudged and Decreed, that the complaint is dismissed in its entirety with prejudice, judgment is entered for defendants Sunbow Productions, Inc. and Broadcast Music, Inc., including the costs and disbursements of Sunbow Production, Inc. in the

LOCATED AT ROYALTY HOUSE, 72-74 DEAN ST. , LONDON, ENGLAND W1D 3SG,

1366202v1

amount of ___*950.00*___ and against the plaintiff, Anne Bryant, residing at P.O.

Box 418, Stony Point, New York, 10980.

Judgment signed this ___ day of May, 2007.

PAUL PIPERATO
ROCKLAND COUNTY CLERK

_____

Clerk

MAY - 8 2007

3

1366202v1

Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND
------------------------------------------------x
                                                :
ANNE BRYANT,                                    :
                                                :
                Plaintiff,                      :    Index No. 5192/00
                                                :
        v.                                      :    Hon. Andrew P. O'Rourke
                                                :
BROADCAST MUSIC, INC., (a/k/a "BMI"),           :
CLIFFORD A. "FORD" KINDER, KINDER &             :
CO., LTD., VADIVOX, LTD., JULES M. "JOE"        :
BACAL, GRIFFIN BACAL, INC., STARWILD            :
MUSIC BMI, WILDSTAR MUSIC ASCAP,                :
SUNBOW PRODUCTIONS, INC., and JOHN              :
AND JANE DOES 1-10,                             :
                Defendant.                      :
                                                :
                                                :
------------------------------------------------x
                                                :
ANNE BRYANT,                                    :
                                                :
                Plaintiff,                      :    Index No. 2821/02
                                                :
        v.                                      :    Hon. Andrew P. O'Rourke
                                                :
SUNBOW PRODUCTIONS, INC.,                       :
                                                :
                Defendant.                      :
                                                :
------------------------------------------------x

## **BILL OF COSTS**

**Costs**

$200.00        Proceedings before a note of issue was filed (§ 8021(1))

$200.00        Proceedings after a note of issue is filed (§ 8021(2))

$300.00        Proceedings for each trial (§ 8021(3))

COSTS AND DISBURSEMENTS
TAXED AT $ 950 -

PAUL PIPERATO
ROCKLAND COUNTY CLERK

MAY - 8 2007

**Disbursements**

$ 250.00          Fees for taking and making two transcripts of testimony on an
                  examination before trial, not exceeding two hundred and fifty dollars in
                  any one action (§8301(a)(9))

**Total Costs and Disbursements**

**$950.00**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND
------------------------------------------------- x
                                                   :
ANNE BRYANT,                                       :
                                                   :
                         Plaintiff,                :   Index No. 5192/00
                                                   :
              v.                                   :   Hon. Andrew P. O'Rourke
                                                   :
BROADCAST MUSIC, INC., (a/k/a "BMI"),              :
CLIFFORD A. "FORD" KINDER, KINDER &                :
CO., LTD., VADIVOX, LTD., JULES M. "JOE"           :
BACAL, GRIFFIN BACAL, INC., STARWILD               :
MUSIC BMI, WILDSTAR MUSIC ASCAP,                   :
SUNBOW PRODUCTIONS, INC., and JOHN                 :
AND JANE DOES 1-10,                                :
                         Defendant.                :
                                                   :
------------------------------------------------- x
                                                   :
ANNE BRYANT,                                       :
                                                   :   Index No. 2821/02
                         Plaintiff,                :
                                                   :   Hon. Andrew P. O'Rourke
              v.                                   :
                                                   :
SUNBOW PRODUCTIONS, INC.,                           :
                                                   :
                         Defendant.                :
                                                   :
------------------------------------------------- x


### AFFIRMATION OF GLORIA C. PHARES IN SUPPORT OF
### SUNBOW PRODUCTIONS, INC.'S PROPOSED JUDGMENT AND BILL OF COSTS

        GLORIA C. PHARES, an attorney admitted to practice before the courts of

this State, makes the following affirmation under penalty of perjury:

1.      I am a member of the firm Patterson Belknap Webb & Tyler LLP, attorneys for Defendant Sunbow Productions, Inc. ("Sunbow"), and admitted to practice in the State of New York. I submit this affirmation in support of Defendant Sunbow's proposed Judgment and Bill of Costs in this case. I have personal knowledge of the matters set forth herein.

2.      On March 9, 2007, this Court issued a Decision and Order dismissing the case "with costs and disbursements." The Decision and Order was entered on March 20, 2007. A true and correct copy of the Decision and Order is attached hereto as Exhibit A.

3.      Defendant Sunbow Productions, Inc., hereby submits its Proposed Judgment upon the Decision and Order of this Court pursuant to CPLR § 5016(c).

4.      In accordance with the Decision and Order of this Court, Defendant Sunbow seeks to recover costs and disbursements related to the trial of the matter.

5.      The Bill of Costs states costs available pursuant to CPLR § 8201.

6.      The Bill of Costs states disbursements available pursuant to CPLR § 8301(a)(9) paid to procure the transcript of the deposition of the plaintiff, Anne Bryant.

Dated:    New York, N.Y.
         May 8, 2007

_____
Gloria C. Phares

1366297v1

RECYCLED

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND
-----------------------------------------------------------------X
ANNE BRYANT,

        Plaintiff,

  -against-

BROADCAST MUSIC, INC.
(a/k/a "BMI"), FORD KINDER,
KINDER & CO., LTD., VADIVOX,
INC., JULES M. "JOE" BACAL,
GRIFFIN BACAL, INC., STARWILD
MUSIC BMI, WILDSTAR MUSIC ASCAP,
SUNBOW PRODUCTIONS, INC.,

        Defendants.
-----------------------------------------------------------------X
ANNE BRYANT,

        Plaintiff,

   -against-

SUNBOW PRODUCTIONS, INC.,

        Defendant.
-----------------------------------------------------------------X

Index No. 5192/00

**NOTICE OF ENTRY**

Index No. 2821/02

**PLEASE TAKE NOTICE** that the Decision and Order by the Honorable Andrew P. O'Rourke, J.S.C., dated March 9, 2007 and annexed hereto, is a true copy and was duly entered by the Clerk of the Supreme Court of the State of New York, County of Rockland, at the Courthouse located at 27 New Hempstead Road, New City, New York on March 13, 2007.

Dated: New York, New York
      March 20, 2007

                                     MONAGHAN, MONAGHAN,
                                     LAMB & MARCHISIO LLP

By:     _____
                                       Patrick J. Monaghan, Jr.
                                       Attorney for Plaintiff
                                       150 West 55th Street
                                       New York, New York 10019
                                       (212) 541-6980

                                         ---and---

                                     28 West Grand Avenue
                                     Montvale, New Jersey 07645
                                     (201) 802-9060

TO:    Gloria C. Phares, Esq.
       PATTERSON BELKNAP WEBB & TYLER LLP
       1133 Avenue of the Americas
       New York, New York 10112

       Judith M. Saffer, Esq.
       Broadcast Music, Inc.
       320 West 57th Street
       New York, New York 10019

S:\MATTERS\3689 Bryant v Sunbow BMI\Pleadings\Notice Of Entry 3907 Order.doc

# DECISION AND ORDER

To commence the statutory
period of appeals as of right
CPLR (5515 [a]), you are advised
to serve a copy of this order,
with notice of entry, upon all
parties.

**FILED MS**

MAR 13 2007  9 –

ROCKLAND COUNTY
CLERK'S OFFICE

**SUPREME COURT OF THE STATE OF NEW YORK
IAS PART, ROCKLAND COUNTY**

Present:  Hon. Andrew P. O'Rourke
          Supreme Court Justice

-----------------------------------------------------X

ANNE BRYANT,

                                                        INDEX NO.: 5192/2000
                                                        ACTION #1

                    Plaintiff,

        -against-

BROADCAST MUSIC, INC., (a/k/a "BMI") CLIFFORD
A. "FORD" KINDER, KINDER & CO., LTD.,
VADIVOX, LTD., JULES M. "JOE" BACAL,
GRIFFIN BACAL, INC., STARWILD MUSIC BMI,
WILDSTAR MUSIC ASCAP, SUNBOW
PRODUCTIONS, INC., and JOHN AND JANE
DOES 1-10,

                    Defendants.
-----------------------------------------------------X
ANNE BRYANT,

                                                        INDEX NO.: 2821/2002
                    Plaintiff,                          ACTION #2

        -against-

SUNBOW PRODUCTIONS, INC.,

                    Defendant.
-----------------------------------------------------X

1

The following documents numbered 1 to __ were read on these motions:

| | |
|---|---|
| Defendant Sunbow's motion to dismiss with exhibits | 1-10 |
| Plaintiff's cross motion for judgment | 11-14 |
| Defendant Sunbow's affirmation by Phares with exhibits | 15-18 |
| Defendant BMI's motion to dismiss | 19-25 |
| Plaintiff's affirmation by Monaghan in opposition | 26-31 |
| Plaintiff's sur-reply to motion | 32-44 |
| Plaintiff's affirmation by Koric in opposition and support | 45-57 |
| Defendant's affirmation by Alison Smith in opposition | 58-63 |
| Defendant's affirmation of Knapp in opposition to sur-reply | 64-67 |
| Plaintiff's notice of motion to allow more testimony with exhibits | 68-88 |
| Plaintiff's briefs and memoranda | |
| Defendant's briefs and memoranda | |
| Trial testimony: July 6, 7, 8, 9 and 21, 2004 | |
| and December1, 4, 5, 6 and 11, 2006 | |

This long and complicated case concerns the attempts by Plaintiff to reconcile her belief that she has not been sufficiently recompensed for her obvious talent, artistry and musical abilities. Defendant Sunbow's position is that they have always paid her that which she bargained for as a "work-for-hire" musician. Defendant BMI denies that they have caused registrations or re-registration of Plaintiff's musical works.

The history of these involved actions span a multiplicity of motions, appeals, testimony and exhibits. All of this has been set forth in the many Court decisions and in the trial record and

will not be reiterated here except as necessary.

The Plaintiff's amended complaint against Sunbow Productions Inc. (Sunbow) states two causes of action: the first is for unjust enrichment and the second is for constructive trust. Plaintiff claims that Broadcast Music Inc. (BMI) forwarded her share of royalties to improper parties including Sunbow as well as the other Defendants in action number 1.

During the last phase of this non-jury trial (December 6- 11, 2006) the court had limited Plaintiff to proof that there were oral as well as written contracts between the parties. In the very beginning of these cases Plaintiff claimed that there were no written contracts between Plaintiff and Defendant Sunbow. When Sunbow produced signed copies of such contracts and the testimony of Sunbow's then lawyer, was that Sunbow only did business on the basis of signed contracts, the Court found that there were signed contracts.

The Plaintiff claimed that certain of her signatures were forgeries. A framed issue hearing was held thereon. Defendant Sunbow produced an expert witness and Plaintiff produced no witnesses on this issue. The Court decided that the signatures were genuine and that the Plaintiff could proceed to introduce such evidence, as she had, that there were oral agreements as well as written ones between the parties.

While on the stand under cross-examination (Dec. 5, 2006) Plaintiff admitted that there were no oral agreements, except as to discussion of terms and conditions all of which became part of the later written agreements.

At this point, Sunbow moved to dismiss the case based on the admissions of Plaintiff although the Plaintiff had not formally rested. Thus arises this motion to dismiss. Plaintiff moves for an order conforming the pleadings to the proof and for an action for an accounting

based on contract law, which was not included in the aforementioned amended complaint.

Sunbow claims that Plaintiff's claim for unjust enrichment and constructive trust are no longer in the case since the Court ruled on December 4, 2006 that Plaintiff's position vis-a-vis oral agreements, a necessary element, were no longer in the case. Sunbow states that Plaintiff is not entitled to a contractual accounting. This cause of action having been abandoned by Plaintiff as she pursued causes of action for an equitable accounting. Defendant Sunbow states that Plaintiff has failed to establish the necessary elements for an equitable accounting since the basis was contractual and there was inter alia no mutual and confidential nature existing between BMI, Sunbow and Plaintiff. Moreover, Plaintiff admitted on the stand that Sunbow had never received performance royalties for Plaintiff's work (trial transcript p. 32, July 9, 2004). Sunbow objects to Plaintiff's motion under CPLR 3025 (c) to amend the pleadings to the proof, claiming that the issue in this case had been limited by Court decisions and testimony to the last remaining issue of oral agreements, which Plaintiff agreed under oath were not there. Moreover, Sunbow states that Plaintiff already has a contractual legal remedy under the Sunbow Contracts (trial ex. M, Section 6 (b) ) which provided Plaintiff with the right to inspect Sunbow's books and records dealing with Plaintiff and her predecessor entity of Kinder & Bryant. This paragraph includes a provision limiting Plaintiff to protest in writing and within one year from date of Sunbow's report.

BMI also moves to dismiss Plaintiff case, stating that Plaintiff's remedy with respect to BMI was to commence an arbitration proceeding which Plaintiff has failed to do. Plaintiff has received royalty statements from BMI and during the discovery phase of this case has again received copies thereof.

4

Plaintiff's agreement with BMI sets up a conflict resolution procedure (trial ex. 1, Paragraph 18) allowing for arbitration. The Plaintiff has never exercised her right and has rather sought relief in this Court. Lastly, BMI states that Plaintiff has produced no evidence of "fraudulent re-registrations" of any of Plaintiff's works.

Plaintiff states in opposition that she is entitled to a judgment directing Sunbow to account to Plaintiff "for its admitted responsibility to pay her publishing royalties..." (Korik affirmation, 12/8/06, p. 2) although Plaintiff has settled her claims against both Defendants' Kinder and Bacal, Plaintiff claims that they had a fiduciary relationship with Sunbow and thus Plaintiff is entitled to an equitable accounting.

Sunbow's reply affirmation of December 8, 2006 attached 18 exhibits that advance its position that this Court has already ruled that "there were written and valid signed contracts between Plaintiff and Defendant Sunbow" (Decision of June 12, 2006). This Court's letter of August 10, 2006 stating "If Plaintiff intends to now say there were oral contracts, it is up to her to prove this especially in the face of the integration or merger clauses." Copies of the trial transcript for December 4, 2006 are attached to show that Plaintiff recanted that there were any oral agreements that were not finally merged into the written agreements. Sunbow through its attorneys forwarded a list of all moneys paid by Sunbow to Plaintiff (trial ex. 48).

Attached also to the Sunbow affirmation in Support inter alia is a letter from Attorney William Dobishinsky, claiming to represent his clients (Kinder and Bryant) seeking changes in the "JEM" and "My Little Pony" agreement. This letter is written to attorney Robert Harris, the then lawyer for Sunbow. An answer letter from Harris to Dobishinsky is also attached (trial exs. H and I). The purpose of this correspondence is that Sunbow would not give Plaintiff additional

5

money for audio recordings, videocassettes or masters produced by Plaintiff embodied in commercial distribution.

In reply BMI states that the Plaintiff's own expert (Berman) conceded that Plaintiff does not own or control the use of the musical compositions at issue in these cases. BMI was willing to arbitrate these issues but Plaintiff refused not withstanding the Order of this Court dated February 27, 2001. BMI contends that Plaintiff specifically instructed the Defendant Bacal not to Cooperate with BMI to re-order the Plaintiff's catalogues. BMI states it has not breached any duty toward Plaintiff, and points to BMI's agreement to pay Plaintiff royalties (trial ex. 1 at para. 7) to show that BMI has furnished statements to Plaintiff as to said royalties, which have not been challenged. Plaintiff states that the very fact of this suit is sufficient challenges.

Plaintiff filed a "sur-reply" which while not proper in the CPLR was accepted and read in this matter. The thrust of this sur-reply was that BMI had waived its right to an arbitration by appearing and participating in the trial of this matter. The court rejects this since it strongly suggested that BMI participate. Moreover Plaintiff states that her e-mail to Kinder not to cooperate with BMI to secure re-registration of Plaintiff's works was an attempt to redress her past wrongs and not to give anything further in the settlement. However she was defeating her own position in the settlement and allowing Kinder to continue receiving her purported royalties.

In the beginning of this case Plaintiff argued that her case was based upon unjust enrichment and a constructive trust based on unjust enrichment (trial transcript June 6, 2004, p. 10). Since that time Plaintiff has failed to prove any confidential or fiduciary relationship between either Sunbow or BMI.

This case has occupied so much time and motions because Plaintiff had advanced several

different theories relative to the Defendant's alleged liabilities. In order to maintain the unjust enrichment theory, Plaintiff postulated that there were a series of oral contracts, which Defendants breached to Plaintiff's detriment. When written contracts eventually appeared, Plaintiff claimed they were forgeries. A subsequent framed issue hearing decided that these contracts held valid signatures and that this was the policy of Sunbow in working with artist-for-hire. That limited the scope of Plaintiff's case to a single area, the possibility that there were, outside of the written agreements, some oral agreements. The Plaintiff's testimony on the stand (above cited) admitted that there were no free standing oral agreements and that all oral negotiations were merged into written agreements. At that time Sunbow moved under CPLR 4401 for a "directed verdict" based on Plaintiff's addition. BMI joined in this motion. The Court concluded this case, over Plaintiff's objections. All parties were to submit papers on this motion. Plaintiff thereafter moved for judgment against Defendants based on certain admission again under CPLR 4401.

Sunbow filed an opposition affirmation to Plaintiff's sur-reply, which consisted of various decision and orders of this Court, transcript testimony and some decisions deemed appropriate.

While this court was considering the aforesaid motion under CPLR 4401 and 3025, Plaintiff gained reluctant permission to file a motion to allow a continuation of testimony. The central issue is the Plaintiff's claims that since the Court allowed additional testimony to be taken (i.e. depositions of Ford Kinder, Jules Bacal and Carole Weitzman) that the trial should continue to allow this additional evidence. However, although the Court allowed this motion to help secure Plaintiff's record, this matter has been over taken by events, the above decision and so this

motion is dismissed.

Based on the exhibits, the many affirmations and affidavits and exhibits attached thereto and the testimony heretofore had, herein the Court finds as follows :

The Plaintiff is not entitled to any equitable accounting having failed to prove a prima facie case against either Defendant.

However Plaintiff is entitled to whatever rights still exist under her agreements with defendants.

This case is dismissed with costs and disbursements.

This constitutes the order of the Court.

Hon. Andrew P. O'Rourke
Justice of the Supreme Court

Dated: March 9, 2007
    Carmel, NY

Monaghan Monaghan Lamb and Marchisio LLP
Attorney for Plaintiff
28 West Grand Avenue
Montvale, NJ 07645

Patterson Belknap Weber and Tyler, Esq.
Attorney for Sunbow
1133 Avenue of the Americas
NY, NY 10036

Judith Saffer, Esq.
Attorney for Broadcast Music
320 West 57th Street
NY, NY 10019



8