# EXHIBIT 111

Contractor

## ASSIGNMENT AND AGREEMENT - MUSICAL COMPOSITION

April 8, 1988
DATE

Griffin Bacal, Inc., as Agent for
Hasbro, Inc.         ("Sponsor")
130 Fifth Avenue
New York, N.Y.  10011

Gentlemen:

1.       This will confirm that you hereby engage us and we hereby accept the engagement to furnish to you the services of Kinder & Bryant, Ltd.           (Hereinafter referred to as "Artist") for the musical composition now entitled,   Visionaries          , in connection with the creation, writing, composition and delivery of the following musical, literary, creative and artistic materials based on the commercial copy material furnished by you:

            Music Only          _____
            Lyrics Only         _____
            Music and Lyrics    _____

2.       We hereby sell, assign, transfer and set over to you, your successors and assigns, all material prepared, created, written and delivered by Artist and/or us hereunder and all copyrights and all other rights there in perpetuity throughout the universe. We hereby acknowledge that the material delivered hereunder shall constitute a "work for hire" within the meaning of the 1976 Copyright Act of the United States.

3.       In full payment for and in consideration of all services to be performed by us and/or Artist hereunder and all of our and/or Artist's obligations hereunder, you shall pay us the following compensation within ten (10) days after the respective event indicated below requiring such payment.

        (a) The basic payment of $250.00 following receipt of said materials.

        (b) In the event that you determine, in your discretion to use the materials for use in radio, television and/or other advertising purposes you shall give us written notice of such determination, after the giving of such written notice you shall pay us an additional sum of $1,500.00 less any payment made persuant to Subparagraph 3(a) above.

SUN 0911

(c) In the event that you determine, in your discretion to use the materials on radio and/or television in more than one of the three major markets (New York, Chicago and Los Angeles) you shall after such use, pay us, as a one-time payment, such additional sum as will increase the total payments hereunder to $3,500.00, inclusive of all payments made to us pursuant to Subparagraphs 3(a) and 3(b) above.

(d) Except as otherwise expressly provided for herein, neither we nor Artist shall be entitled to any payment and/or other consideration.

(e) In the event that you neither give us the notice referred to in Subparagraph 3(b) above, nor make the payment referred to in said Subparagraph within twelve (12) months after the final submission to you of the materials, we may give you a written notice requiring you to make the payment referred to in Subparagraph 3(b) above within (12) months after the date of our notice and in the event that you fail to do so, we shall then have the right to sell the materials to other persons; provided, however, the we shall in each instance purchase the materials as provided for herein; and provided further, however, that in no event will either we or Artist make, permit or allow the use of any commercial copy material furnished to us by you hereunder.

4.     If you request, we shall, within ten (10) days after such request furnish you with a disc or tape recording of such materials. In such event you shall reimburse us for the actual and substantiated reasonable cost and expenses incurred by us in connection with furnishing such disc or tape recording.

5.     We agree, represent and warrant that:

(a) We are free to enter into and fully perform this agreement.

(b) We have the full right, power and authority to furnish the services of Artist and to grant and confirm all rights (including copyrights) conveyed and/or confirmed herein.

(c) All material prepared, created, written and delivered hereunder shall be new and original with us and Artist will be the sole creator thereof.

(d) No element of such material shall in any way infringe upon or violate the trademark, copyright, literary, dramatic and/or any other rights of any person, firm or corporation or the right of privacy or right of publicity of any such person (whether living or dead)

(f) The material is a "work for hire" as such term is defined by the 1976 Copyright Act of the United States.

(g) We do not have and shall not seek to exercise any right to terminate the grant of a transfer of copyright and rights under copyright made hereunder pursuant to Sections 203 or 304 of such Act or otherwise; and

(h) Artist does not have and shall not have and shall not seek to exercise any right to terminate the grant of a transfer of copyright and rights under copyright made hereunder, or heretofore or hereafter made by Artist to us, pursuant to Sections 203 or 304 of such Act or otherwise.

6. We agree to defend, indemnify and hold you, Sponsor, all other users of said materials and your and their successors, assigns, licensees, and designees and the agents, employees, directors and stockholders of you and all of them harmless from and against any claims, suits, losses, costs and liabilities which may arise in connection with the use of said materials or the breach or alleged breach of any representations. (SEE ATTACHED PAGE) fk

7. You may use and authorize others to use the name, photograph, portrait, life likeness and biographical material of Artist in connection with said materials and the exploitation and promotion thereof, but you shall not be obligated to do so.

8. This Agreement shall be binding upon us and Artist and his successors, assigns, heirs, next-of-kin, executors and administrators. This Agreement shall inure to the benefit of you and Sponsor and your and their respective successors, assigns and licensees.

9. The rights granted and confirmed hereunder are special, unique and intellectual and my failure to honor this Agreement in any way will cause you irreparable loss and damage which shall entitle you to equitable relief, by way of injunction and otherwise, to prevent either us or Artist from breaching this agreement or failing to perform our and/or Artist's obligation hereunder.

10. This agreement shall be governed by and in accordance with the laws of the State of New York for agreements and to be performed in the State of New York.

Very truly yours,

KINDER + BRYANT LTD
Name of Contractor

By: Fred Kindel
Its PRES.

Address: 41 W 73
NYC NY

Contractor ID #: 13-3186088

ACCEPTED AND AGREED TO:
GRIFFIN BACAL, INC. as agent for

By:
Its

SUN 0913

5.

(a)  We warrant and represent, except as the Composition may contain or be based upon lyrical or literary material or melody and arrangement suggestions furnished by you, that the music and lyrics of the Composition are wholly original with us and do not violate or infringe upon the rights of any third party.  We further warrant and represent that we have the full right, power and authority to enter into and perform this agreement.  In this connection we agree to save and hold you harmless from any damages resulting from a breach of the foregoing warranties and representations, including reasonable attorneys fees, provided that a claim constituting such breach is the subject of a final adjudication of a court of competent jurisdiction or you have entered into a settlement of a claim constituting such breach which settlement has been approved by us in writing. Notwithstanding any other provision of this license agreement or the Basic Agreement, we shall in no event be liable to you or any other person for any damages (including without limitation lost profits, lost sales, or any other direct, incidental or consequential loss) resulting from any breach or breaches of the foregoing warranties and representations to the extent such damages exceed the amount of the License Fee.

(b)  You warrant and represent that any lyrics, literary material, melody and/or musical arrangements suggested by you or the client, shall not, wherever same are utilized in and as part of the Composition, violate or infringe upon the rights of any third party.  You further warrant and represent that you have the full right, power and authority to enter into and perform this agreement.  In this connection you agree to save and hold us harmless from any damages resulting from a breach of the foregoing warranties and representations, including reasonable attorneys fees, provided that such a claim constituting such a breach is the subject of a final adjudication of a court of competent jurisdiction or we have entered into a settlement of a claim constituting such a breach which settlement has been approved by you in writing.

<u>ADDENDUM A</u>

Copy of Words and/or Music
Attached to and Made Part of Assignment and
Agreement – Musical Composition Dated:



Visionaires — Kinder & Bryant

ADDENDUM B

Administrator's Compensation


The total compensation of the Administrator for service rendered pursuant to this Agreement and Pursuant to similar agreements with producers and/or distributors of phonograph records and/or electrical transcriptions  shall be at the total rate of Ten Thousand Dollars ($10,000.00) per annum.

SCHEDULE 1

Date:_____ 19_____

The undersigned, desiring to become an additional First Party to the Within Agreement, does hereby adopt the declarations of the First Parties set forth therein, does hereby make the request made by the First Parties therein, and in consideration of the undertakings assumed therein by each First Party and of the undertaking assumed therein by the Administrator at the request of the First Parties, does hereby request the Administrator to accept the undersigned as an additional First Party to such Agreement, and does assume and agrees to be bound by the terms, covenants and conditions to be performed thereunder.


_____
(Name of Company or Individual Signatory)


By _____
               (Signature of Officer and Title)


Address: _____

              _____


ACCEPTED:

United States Trust Company of New York

By _____
                    Vice President
                    Administrator

(If executed in the Province of Quebec this Agreement shall be properly notarized and otherwise executed according to the laws of the Province.)

SUN 0917

## SCHEDULE 1.

Date .............................., 19 ......

The undersigned, desiring to become an additional first party to the within Agreement, does hereby adopt the declarations of the first parties set forth therein, does hereby make the request made by the first parties therein, and in consideration of the undertakings assumed therein by each first party, and of the undertakings assumed therein by the Trustee at the request of the first parties, does hereby request the Trustee to accept the undersigned as an additional first party to such Agreement, and does assume and agrees to be bound by the covenants and conditions to be performed thereunder.

..........................................................................
PLEASE PRINT (Name of Company or Individual Signatory)

By ......................................................................
   PRINT Name of Officer and Title


..........................................................................
Signature

Address: ................................................................

         ........................................Zip Code ...........

Telephone ...............................................................


Accepted:

..........................................................................
Trustee

(If executed in the Province of Quebec, this contract shall be properly notarized and otherwise executed according to the laws of that Province.)

# EXHIBIT 112

## PUBLISHING ADMINISTRATION AGREEMENT

    This AGREEMENT effective as of November 12, 1987, by and between HASBRO, INC., a Rhode Island corporation ("HASBRO"), MILTON BRADLEY INTERNATIONAL, INC., a Massachusetts corporation ("MBI"), whose joint address is 1027 Newport Avenue, Pawtucket, Rhode Island 02862 U.S.A. (hereinafter collectively called "PUBLISHER"), and the LAW OFFICES OF WILLIAM M. DOBISHINSKI, a sole proprietorship whose address is 6430 Sunset Boulevard, Suite 1521, Hollywood, California 90028 U.S.A. (hereinafter called "ADMINISTRATOR").

### W I T N E S S E T H :

    WHEREAS, HASBRO owns and/or controls certain music publishing copyrights in those compositions set forth on Schedule I attached hereto, and in other musical compositions in the United States of America, including its territories and possessions, and will own and/or control additional new music publishing copyrights in the United States in the future; and

    WHEREAS, MBI owns and/or controls certain music publishing copyrights in those compositions set forth on Schedule I attached hereto, and in other musical compositions throughout the Universe outside of the United States of America, and will own and/or control additional new music publishing copyrights throughout the Universe outside of the United States in the future (said music publishing copyrights of both HASBRO and MBI hereinafter referred to as "Compositions"); and

    WHEREAS, ADMINISTRATOR has previously assisted in collecting music publishing royalties for PUBLISHER'S music copyrights pursuant to Agreements with Starwild Music, Inc. and Wildstar Music, Inc., (1) dated as of October 1, 1986, regarding advertising music ("Commercial Jingles") and (2) dated as of November 20, 1986. regarding non-advertising music ("Program Music"), both attached hereto as Exhibits A and B, respectively (hereinafter called "FORMER AGREEMENTS"); and

SUN 0712

WHEREAS, ADMINISTRATOR desires to perform services in collecting music performance and mechanical royalties and other monies with respect to PUBLISHER'S music copyrights, including those music copyrights previously a subject of the FORMER AGREEMENTS and also including other music copyrights owned and/or controlled by PUBLISHER, in the manner hereinafter described; and

WHEREAS, PUBLISHER desires to have ADMINISTRATOR perform such services upon the terms and conditions hereinafter set forth;

NOW, THEREFORE, in consideration of the mutual covenants herein contained and for other good and valuable consideration, the receipt of which is hereby acknowledged, it is hereby agreed:

1. APPOINTMENT

Upon the terms and conditions hereinafter set forth, PUBLISHER grants ADMINISTRATOR, and ADMINISTRATOR accepts, the sole and exclusive universal right and obligation to submit, or supervise the submission by Subpublishers of all materials to Music Publishing Societies in order to obtain the maximum amount of MONIES (as hereinafter defined). Such materials will include, without limitation, Music Publishing Society membership forms, composition registration forms and cue sheets.

For purposes of this Agreement, "Subpublisher" will mean any person or entity, unaffiliated with ADMINISTRATOR, to whom any or all music publishing rights in or to the Compositions is transferred, with PUBLISHER'S prior written consent. "Music Publishing Societies" is to be construed in accordance with its customary meaning in the industry, including, without limitation, so-called "Performing Rights Societies" such as ASCAP and BMI, as well as so-called "Mechanical Societies," such as SDRM in France.

2. TERM

The rights granted to ADMINISTRATOR pursuant to this Agreement will apply to the use, publication, and/or performance (hereinafter "use") of all Compositions throughout the Universe prior to January 1, 1993, regardless of when any MONIES due from such USES are paid (hereinafter "Term").

-2-

SUN 0713

## · 3.  ADMINISTRATOR'S COMPENSATION

In consideration of the services to be rendered by ADMINISTRATOR hereunder, ADMINISTRATOR will be entitled to the following percentages of all MONIES. For purposes of this Agreement, the term "MONIES" will mean the gross amount of all music performance royalties, mechanical royalties, advances, or other payments by any Music Publishing Society and/or Subpublisher in connection with the use, publication, and/or performance of the Compositions during the Term, throughout the Universe, without deduction for ADMINISTRATOR'S compensation, any Subpublisher's fees or co-publisher's participations.

### A.  Program Music

(i) For uses of the Compositions, expressly excluding uses as Commercial Jingles, occurring throughout the Universe prior to January 1, 1987, ADMINISTRATOR will receive Twenty Percent (20%), in accordance with the FORMER AGREEMENT dated as of November 20, 1986, attached hereto as Exhibit B.

(ii) For such uses occurring in the United States after December 31, 1986, ADMINISTRATOR will receive Twelve and One-Half Percent (12.5%).

(iii) For such uses of the Compositions throughout the Universe, excluding the United States, occurring prior to January 1, 1989, ADMINISTRATOR will receive Twenty Percent (20%).

(iv) For such uses of the Compositions throughout the Universe, excluding the United States, occurring after December 31, 1988, ADMINISTRATOR will receive Fifteen Percent (15%).

(v) For such uses of any Compositions, which are composed for background use by composers provided by ADMINISTRATOR without cost to PUBLISHER, ADMINISTRATOR will receive:

-3-

[a] Ten Percent (10%) for uses occurring in the United
States;

[b] Fifteen Percent (15%) for uses occurring throughout
the Universe excluding the United States.

(vi) In the event that ADMINISTRATOR, with the prior written
consent of PUBLISHER, enters into an agreement with any
Subpublisher in order to assist the collection of MONIES outside
the United States, each such Subpublisher will be entitled to
compensation, exclusive of ADMINISTRATOR'S compensation
hereunder, of no more than Ten Percent (10%) of any MONIES
collected by such Subpublisher, provided that such Subpublisher
may also be entited to receive no more than Fifty Percent (50%)
of MONIES arising only from any local "cover recording" obtained
by such Subpublisher for use in its territory only. As used
herein, "cover recording" means any audio record, cassette, or
disc to which any Composition is fixed subsequent to the initial
use of such Composition in the United States.

B. Commercial Jingles

(i) For uses of the Compositions as Commercial Jingles
occurring before July 1, 1987, ADMINISTRATOR will receive
Twenty-Five Percent (25%), in accordance with the FORMER
AGREEMENT dated as of October 1, 1986, attached hereto as
Exhibit A.

(ii) For uses of the Compositions as Commercial Jingles after
June 30, 1987, ADMINISTRATOR will receive Fifteen Percent (15%).

(iii) Notwithstanding Subparagraph 3.B.(ii), for uses of the
Compositions as Commercial Jingles not involving the services of
Griffin Bacal, Inc., 130 Fifth Avenue, New York, New York,
10011, ADMINISTRATOR will receive Twenty Percent (20%) for such
uses occurring during the first full annual period, from July 1

-4-

SUN 0715

through June 30, regarding which ADMINISTRATOR renders services in connection with a different advertising agency for the first time. It is specifically contemplated under this Subparagraph that ADMINISTRATOR may perform services with regard to those Commercial Jingles produced for PUBLISHER as work for hire by the advertising agency Needham Harper & Spears; and for those Needham Harper Commercial Jingles used during the period from July 1, 1987 through June 30, 1988, ADMINISTRATOR will receive Twenty Percent (20%).

4.   EXPENSES

Except as provided in Paragraphs 3 and 8, all expenses incurred by ADMINISTRATOR in any way carrying out the terms of this Agreement, including, but not limited to, travel expenses, telegram, telephone, and other communication expenses, expenses of filing materials, and expenses involved in the collection of MONIES, will be borne by ADMINISTRATOR, and ADMINISTRATOR will not be entitled to be reimbursed for any such expenses incurred, and PUBLISHER will not be held responsible for any costs incurred by ADMINISTRATOR in connection with this Agreement.

5.   STATEMENTS

Any MONIES in which ADMINISTRATOR is entitled to share pursuant to this Agreement will be sent by the relevant Music Publishing Society to whatever person, corporation, or other entity as may be designated by PUBLISHER for such purpose. Any such designee will send all MONIES received on behalf of PUBLISHER to PUBLISHER at the address set forth above no later than within twenty-five (25) days after the end of each calendar quarter during which any such MONIES have been received by such designee. Within thirty (30) days of its receipt of any such MONIES, PUBLISHER will remit all payments due ADMINISTRATOR pursuant to the terms of this Agreement.

-5-

SUN 0716

Notwithstanding the foregoing, in regard to all MONIES received by Starwild Music, Inc. and Wildstar Music, Inc. on behalf of PUBLISHER, said companies will remit ADMINISTRATOR'S compensation, as defined herein, directly to ADMINISTRATOR within fifteen (15) days of their receipt of such MONIES, in accordance with Subparagraph 4 of each FORMER AGREEMENT.

In the event that the relevant Music Publishing Society or Subpublisher remits MONIES directly to ADMINISTRATOR, or other entity designated by ADMINISTRATOR, with the prior consent of PUBLISHER, then ADMINISTRATOR will remit payments to PUBLISHER within fifteen (15) days after ADMINISTRATOR'S receipt of any such MONIES.

Any payments by one party to the other will be accompanied by a copy of the original Music Publishing Society statement, as well as a statement including the following information regarding the MONIES received:

(i)    PUBLISHER'S gross MONIES; and

(ii)   ADMINISTRATOR'S compensation; and

(iii)  Any Subpublisher's compensation; and

(iv)   PUBLISHER'S net MONIES.

6.    RECORDS

PUBLISHER and ADMINISTRATOR agree to keep accurate books of account and records concerning all MONIES owed or received pursuant to this Agreement. Both parties and their duly authorized representatives may, upon at least twenty-four (24) hours written notice, examine one another's books of account and records pertaining to all MONIES and will have free and full access thereto during usual business hours for said purpose and for the purpose of making extracts therefrom, no more than once each calendar year. All books of accounting records will be kept available for at least two (2) years after the occurrence of the transactions which they reflect and record.

-6-

SUN 0717

7. ADMINISTRATOR'S GENERAL OBLIGATIONS

ADMINISTRATOR hereby undertakes, acknowledges, and agrees:

A. To use his best efforts, consistent with good business practice, to promote actively and advance the interest of PUBLISHER in general and in particular with regard to procuring the maximum MONIES;

B. To consult with PUBLISHER respecting the manner and extent of the collection of MONIES and all other matters arising under the provisions of this Agreement;

C. To furnish reports and supply information regarding the collection of MONIES pursuant to this Agreement as may be reasonably requested by PUBLISHER from time to time.

8. EXCLUDED SERVICES

William M. Dobishinski is an attorney licensed to practice in California, New York and the District of Columbia. Except as required to collect the MONIES referred to in this Agreement, William H. Dobishinski is not required to render any other legal or non-legal services. A mutually approved separate agreement would be required for any additional services at additional fees. Specifically without limitation, litigation services by ADMINISTRATOR or anyone else, including all costs associated therewith, are not included under this Agreement.

9. INDEMNITY

PUBLISHER indemnifies and holds ADMINISTRATOR and its employees harmless against any claim, liability or expense (including attorney's fees and court costs) resulting from the use of Compositions, excluding those resulting from ADMINISTRATOR'S wilful misconduct, negligence or breach of this Agreement.

-7-

SUN 0718

ADMINISTRATOR indemnifies and holds PUBLISHER and its employees harmless against any claim, liability or expense (including attorney's fees and court costs) resulting from ADMINISTRATOR'S wilful misconduct, negligence or breach of this Agreement.

10. TERMINATION

In the event that either party breaches any term of this Agreement or fails to fulfill its obligations arising hereunder, the party claiming such breach must notify the breaching party upon written notice sent by certified mail, return receipt requested. The breaching party will have thirty (30) days from receipt of such notice to cure such breach. If after thirty (30) days any material breach has not been cured, or is not in the process of being cured, to the reasonable satisfaction of the party claiming breach, such party may terminate this Agreement without court action or arbitration effective immediately. The Term of this Agreement will be deemed to expire as of the effective date of any such termination.

11. OWNERSHIP

ADMINISTRATOR agrees that it will not during the Term, or at any time thereafter, dispute or contest, directly or indirectly, PUBLISHER'S rights in and to the Compositions.

12. NOTICES

All notices and statements to be given, and all payments to be made hereunder will be given or made at the respective addresses of the parties and of the ADMINISTRATOR as set forth above, unless notification of change of address is given in writing, and the date of mailing shall be deemed the date the notice or statement is given. All notices must be sent by certified mail, return receipt requested.

-8-

SUN 0719

## 13. NO JOINT VENTURE

ADMINISTRATOR will not incur any obligation in PUBLISHER'S name, and nothing contained herein will be construed to constitute the parties joint venturers, nor will any similar relationship be deemed to exist between them. Nothing contained herein will be construed as constituting ADMINISTRATOR as PUBLISHER'S agent or as authorizing ADMINISTRATOR to incur financial or other obligations in PUBLISHER'S name without PUBLISHER'S specific prior written consent; and it is specifically understood and agreed that under no circumstances will any power granted, or which may be deemed to be granted to ADMINISTRATOR, be deemed to be coupled with an interest.

## 14. NO ASSIGNMENT

Except as otherwise set forth in this Agreement, this Agreement and all duties hereunder are personal to ADMINISTRATOR and will not, without the written consent of PUBLISHER, be assigned, sublicensed or delegated by ADMINISTRATOR or by operation of law. Further, any transfer of the COMPOSITIONS by PUBLISHER will be subject to this Agreement.

It is a basis of this Agreement and the understanding between the parties that William A. Dobishinski will be and will remain the "key person" rendering services on behalf of ADMINISTRATOR for PUBLISHER pursuant to this Agreement. In the event that William M. Dobishinski no longer acts as the "key person" rendering such services (including, without limitation, due to death or disability), then PUBLISHER may terminate this Agreement upon written notice within thirty (30) days after PUBLISHER has knowledge of such event, without prejudice to any other rights and remedies. The Term of this Agreement will be deemed to expire as of the effective date of any such termination (which, in the event of ADMINISTRATOR'S death, will be deemed to be the date of death).

Notwithstanding anything to the contrary herein, ADMINISTRATOR may assign its rights to receive MONIES under this Agreement, except that PUBLISHER will not be obligated to make direct payment to any third party.

-9-

SUN 0720

## 15. NO WAIVER

No waiver or modification of any of the terms of this Agreement will be valid unless in writing and signed by the party to be charged. No waiver by either party of a breach hereof or a default hereunder will be deemed a waiver by such party of a subsequent breach or default of like or similar nature. Any approval or consent given by PUBLISHER will not constitute a waiver of any of PUBLISHER'S rights or ADMINISTRATOR'S duties under any provision of this Agreement. The failure of either party to enforce, or the delay by either party in enforcing, any of its rights under this Agreement will not be deemed a continuing waiver or a modification thereof, and either party may, within the time provided by applicable law, commence appropriate legal proceedings to enforce any or all of such rights. No person, firm, group or corporation, other than ADMINISTRATOR and PUBLISHER, will be deemed to have acquired any rights by reason of anything contained in this Agreement, except as otherwise specifically provided herein.

## 16. ENTIRE AGREEMENT

This Agreement contains and embodies the entire agreement and understanding of the parties and supersedes all prior written or oral agreements or understandings between the parties concerning the subject matter hereof, including without limitation the FORMER AGREEMENTS as they relate to the Compositions. Notwithstanding the foregoing, however, the validity of the FORMER AGREEMENTS, but only prior to the effective date of this Agreement and only insofar as said FORMER AGREEMENTS are not inconsistent with the terms and conditions of this Agreement, is confirmed and ratified insofar as said FORMER AGREEMENTS relate to the Compositions. Insofar as PUBLISHER is concerned, the FORMER AGREEMENTS remain unaffected as they relate to any music copyright, other than Compositions, owned or administered by Wildstar Music, Inc., Starwild Music, Inc., Sunbow Productions, Inc. and/or Griffin Bacal, Inc. No warranties, representations, understandings, promises, agreements or conditions, express or implied, not contained herein have been made or will be enforceable by either party concerning the subject matter hereof or any relationship between the parties.

-10-

SUN 0721

## 17. DISPUTES/GOVERNING LAW

Any controversy between the parties hereto involving this Agreement will be resolved by arbitration at New York, New York in accordance with the laws of the State of New York (which State will have exclusive jurisdiction of this Agreement), and the procedural rules of the American Arbitration Association. Any determination or finding by the American Arbitration Association, in regard to any disputes submitted hereunder, will be final and binding upon the parties hereto, and may be entered as a final judgment in any state and/or federal court having jurisdiction thereof.

IN WITNESS WHEREOF, the parties hereto have caused this instrument to be duly signed and effective as of the date first above written upon execution by PUBLISHER and ADMINISTRATOR.

MILTON BRADLEY INTERNATIONAL, INC.

BY: _____
ITS: Senior Vice President
DATE: November 25, 1987

LAW OFFICES OF WILLIAM M. DOBISHINSKI

BY: _____
ITS: Sole Proprietor
DATE: _NOVEMBER 27 1987_

HASBRO, INC.

BY: _____
ITS: Senior Vice President
DATE: November 25, 1987

-11-

SUN 0722

All music published by Starwild Music, Inc. and/or Wildstar Music, Inc., in the following television programs, theatrical motion pictures, videocassettes, audio cassettes or records:

BIGFOOT

CHARMKINS

G.I. JOE

G.I. JOE - THE MOVIE

GLOFRIENDS

GLOFRIENDS SAVE CHRISTMAS

INHUMANOIDS

JEM

MOONDREAMERS

MY LITTLE PONY

MY LITTLE PONY & FRIENDS

MY LITTLE PONY - THE MOVIE

POTATO HEAD KIDS

ROBOTIX

SUPER SATURDAY/SUPER SUNDAY

TRANSFORMERS

TRANSFORMERS - THE MOVIE

VISIONARIES

SUN 0723



MILTON BRADLEY INTERNATIONAL, INC.

1027 NEWPORT AVENUE
PAWTUCKET, RHODE ISLAND 02861 U.S.A.
TELEPHONE (401) 727-5000
TELEX NUMBER: 6817073 HASBINT
FAX NUMBER: 401-727-5544



## LETTER OF REPRESENTATION

As of November 12, 1987

To Whom it May Concern:

The undersigned appoint the law offices of William M. Dobishinski and its designees to represent them at music rights societies throughout the Universe outside of the United States of America in connection with their compositions and to receive all information and checks in connection therewith at 6430 Sunset Boulevard, Suite 1521, Hollywood, California 90028 or as otherwise designated by the Law Offices of William M. Dobishinski.

MILTON BRADLEY INTERNATIONAL, INC.

BY: _____

ITS: Senior Vice President

DATE: November 25, 1987

SUN 0724



HASBRO, INC.

1027 NEWPORT AVENUE .
P.O. BOX 1059
PAWTUCKET, RHODE ISLAND 02862-1059 U.S.A.
TELEPHONE (401) 726-4100
TELEX: (230) 6814168

## LETTER OF REPRESENTATION

As of November 12, 1987

To Whom it May Concern:

The undersigned appoint the law offices of William M. Dobishinski and its designees to represent them at music rights societies throughout the United States of America in connection with their compositions (including, without limitation, ASCAP and BMI) and to receive all information and checks in connection therewith at 6430 Sunset Boulevard, Suite 1521, Hollywood, California 90028 or as otherwise designated by the Law Offices of William M. Dobishinski.

HASBRO, INC.

BY: _____

ITS: _____Senior Vice President_____

DATE: _____November 25, 1987_____

SUN 0725

DATED AS OF: November 12, 1987

ASSIGNMENT

In consideration of the sum of one dollar ($1.00) and other good
and valuable consideration, Television and Advertising Music
Administration ("TAMAD", a d/b/a of William M. Dobishinski), as "Assignor"
hereby assigns to the Law Offices of William M. Dobishinski (a d/b/a
of William M. Dobishinski), as Assignee, all of Assignor's rights and
obligations pursuant to the agreements with Starwild Music, Inc., and
Wildstar Music, Inc. (together "Client") regarding advertising music, dated
as of October 1, 1986, and regarding non-advertising music, dated as of
November 20, 1986, both attached hereto as exhibits A and B, respectively.
Assignee hereby accepts such assignment and Client hereby consents to
such assignment.

Television And Advertising                           Law Offices of
Music Administration                                 William M. Dobishinski


By: _____              By: _____

Starwild Music, Inc.                                 Wildstar Music, Inc.

By: _____              By: _____

TAMAD

d/b/a William M. Dobishinski
6430 Sunset Blvd.
Suite 1521
Hollywood, California  90028

Re:   (1)   Agreement, dated as of October 1, 1986, between Wildstar
            Music, Inc./Starwild Music, Inc. and TAMAD and

      (2)   Agreement, dated as of November 20, 1986, between
            Wildstar Music, Inc./Starwild Music, Inc., and TAMAD
            (together the "Former Agreements")

Dear Bill:

This will confirm that you were requested to renegotiate the Former
Agreements as they relate to compositions ("Company Compositions") owned
and/or controlled by Hasbro, Inc., and/or Milton Bradley Inter-
national, Inc. (together, "Company"). You were authorized to negotiate
and conclude an agreement directly with Company ("Company Agreement").
Such Company Agreement (attached hereto) shall be deemed to supercede the
Former Agreements as they relate to the Company Compositions.

The Former Agreements are ratified and confirmed as they relate to com-
positions not owned and/or controlled by Company.

This letter is without prejudice to the respective rights, if any, of
Starwild Music, Inc./Wildstar Music, Inc. in any income from
the Company Compositions remaining after deductions set forth in the
Company Agreement.

                              Very Truly Yours

                              STARWILD MUSIC, INC.

                              By:

                              WILDSTAR MUSIC, INC.

                              By:

# EXHIBIT 113

AGREEMENT made as of March 11, 1996 between SUNBOW ENTERTAINMENT d/b/a WILDSTAR MUSIC, INC. (ASCAP), STARWILD MUSIC INC. (BMI), APOLLO'S CHARIOT MUSIC (ASCAP) AND BANANA ALERT MUSIC, INC. (BMI), 100 Fifth Avenue, New York, New York, 10011, Attention: Andrew Karpen ("you"), on the one hand, and SONY/ATV TUNES LLC (ASCAP) and SONY/ATV SONGS LLC (BMI), 550 Madison Avenue, New York, New York 10022 (collectively, "Sony"), on the other hand.

## 1.    SUBJECT COMPOSITIONS

   1.01.  As used in this agreement "Compositions" shall mean the following:

         (a)    All Old Compositions.

         (b)    All Acquired Compositions.

You will not, by your acts or omissions, diminish your rights to the Compositions in the Territory.

## 2.    COMPOSITIONS.

      2.01.  Old Compositions.  You warrant and represent that all musical compositions owned, controlled or administered by you or any Affiliate, in whole or in part are listed in Schedule A annexed hereto ("Old Compositions").  Any failure to list any Old Composition on Schedule A as aforesaid shall not affect Sony's rights in and to such Old Composition. You shall Deliver to Sony the Old Compositions for exploitation hereunder simultaneously with your execution of this agreement.

      2.02.  Acquired Compositions.  All musical compositions in which you or any Affiliate acquire any ownership, control, administration interest, or other economic benefit, during the Term ("Acquired Compositions"), shall be Delivered to Sony for exploitation hereunder within 10 days following acquisition in each instance.

## 3.    TERM

      3.01.  The term of this agreement (the "Term") will begin on the date first listed above (the "Commencement Date") and will continue until June 30, 1999.

      3.02.  Upon the termination of the Term,  Sony will sign any and all assignments or other documents relating to the Compositions and the termination of the Term as you shall reasonably request, and Sony hereby appoints you as its attorney-in-fact for the sole purpose

of executing such documents in the event Sony fails to so execute within twenty (20) business days after your written request.

## 4.    GRANT OF RIGHTS

4.01. Execution of Documents. You will execute and deliver to Sony such instruments of transfer and other documents regarding the rights of Sony in the Compositions subject to this agreement as Sony may reasonably request to carry out the purposes of this agreement (including, without limitation, the Exhibits annexed hereto), and Sony may sign such documents in your name or the name of any Songwriter (subject to any restrictions contained in your agreement with any such Songwriter) and make appropriate disposition of them. Sony shall give you twenty (20) business days' notice before signing any document in your name. Sony may dispense with that waiting period when necessary, in Sony's reasonable judgment, to protect or enforce its rights, but Sony shall notify you in each instance when it has done so. Sony shall not be required to notify you before signing short form assignments of rights granted in this agreement for recordation in the Copyright Office.

4.02. Administration. Sony and its Licensees will have the sole and exclusive right during the Term and throughout the Territory, to:

(a)   License and cause others to license the exploitation of the Compositions, including, without limitation, the right to print, publish and sell printed editions of the Compositions, the right to license broadcast and other public performances, sound synchronization in audiovisual works, and the right to license the manufacture, distribution and sale of Records embodying any one or more Compositions.

(b)   Administer and grant rights in the Compositions and the copyrights therein.

(c)   Intentionally omitted.

(d)   Collect all monies payable during the Term, with respect to the Compositions, in addition to all monies due prior to the Term, and all performance royalties payable to you with respect to the Compositions by the American Society of Composers, Authors and Publishers (ASCAP), Broadcast Music, Inc. (BMI), SESAC or any other applicable performing rights society (hereinafter collectively the "Societies"), but excluding any songwriter share of public performance income. If a Society in any territory does not license any particular public performance use of a Composition, it is understood Sony may license that use directly and all income received by Sony in connection with such licenses shall be deemed Gross Income subject to accounting hereunder. In addition, Sony shall have the right to continue to collect after the Term, for a period of one (1) year (the "Collection Period"), all monies earned during the Term.

SUN 0729

4.02.1     Licensing Restrictions.  Notwithstanding anything to the contrary contained in paragraph 4.02 above, Sony's exercise of Sony's rights hereunder shall be subject to the following conditions:

(a)     Sony shall not make or authorize any changes (other than de minimis changes) to the words, music and/or title of any Composition (except authorizing foreign translations thereof) or any parody of such Composition without your prior written consent; provided, however, that any changes to the words and/or music of any Composition in a third Party musical arrangement resulting from any change in breach of a mechanical license granted by Sony voluntarily in the ordinary course of business or involuntarily as a result of the compulsory mechanical license provisions of the U.S. Copyright Act shall not be deemed to be a violation by Sony of this provision.  Notwithstanding the foregoing, Sony shall not, without your prior written consent (which may be withheld by you for any reason), (i) authorize a foreign language translation hereunder which would reduce the royalty payable to you, and (ii) no third Party translator shall acquire a copyright interest in the Composition by virtue of writing the lyrics for a foreign translation, unless a payment of royalties or transfer of copyright is required by applicable law in the country of translation.

(b) ˙    Sony shall not license any Composition in connection with (i) any commercial advertisement, (ii) any political advertisement or (iii) in motion pictures without your prior written consent.

(c)     Sony shall not grant any so-called "grand rights" or dramatization rights in or to any Composition without your prior written consent.

(d)     Sony shall not print, publish or sell printed editions of any of the Compositions without your prior written consent.

(e)     Sony shall not grant any mechanical licenses without your prior written consent. .

4.02.2.     Requested Licenses.  You may direct Sony, by giving notice at any time during the Term, to issue one or more of the following licenses to you or such persons as you direct, subject to the terms of this subparagraph 4.02.2:

(a)     a license for the use of a Composition in a home video version of the audiovisual project in which such Composition was embodied, provided that each such license shall be at a rate and on terms no less than the reasonable and customary rates and terms for the use concerned in the music publishing industry;

(b)     a U.S. mechanical license for the use of a Composition in a Record, provided that the rate for such license is at a rate not less than seventy-five percent (75%) of

the minimum U.S. statutory rate for top-line albums in effect at the time of the initial U.S. release of the master embodying such Composition; and

(c) all licenses to use the music reasonably requested by you in connection with the use of any Composition in any and all media now known or hereinafter developed, provided that each such license shall be at a rate and on terms no less than the reasonable and customary rates and terms for the use concerned in the music publishing industry. If Sony fails to issue any license requested by you in accordance with this subparagraph 4.02.2, you shall be entitled to grant such license on the same terms to the same Person; provided, however, that all income generated by such license (whether in the form of a fee, advance, royalty, or guaranteed payment) shall immediately be turned over to Sony for accounting as "Gross Income" hereunder. For purposes of clarification, "income generated by such license" shall not include the overall fee, advance or guarantee payment payable to you solely for the use of a program, film or character associated with the concerned Compositions; provided that in no event shall such fee, advance or guaranteed payment be an advance against any income generated by the licenses contemplated by this subparagraph.

4.03. Power of Attorney. You hereby irrevocably authorize, empower, and appoint Sony your true and lawful attorney, during the Term and the Collection Period, to secure and renew the copyright in the Compositions for the initial and any renewal periods for your benefit and Sony's rights hereunder, to initiate and compromise any claim or action with respect to the Compositions including any claim or action against infringers of Sony's or your rights in the Compositions, and to execute in your name, and the name of any Songwriter, any and all documents and/or instruments necessary or desirable to accomplish the foregoing and/or to effectuate Sony's rights hereunder. You may participate in any such claim or action through counsel of your selection at your own expense, but Sony shall have the right at all times, in Sony's reasonable discretion, to retain or resume control of the conduct of such claim or action. Notwithstanding the foregoing, Sony shall give you ten (10) days' notice and consult with you before signing any such document in your name. Sony may dispense with that waiting period when necessary, in Sony's reasonable judgment, to protect or enforce Sony's rights, but Sony shall notify you in each instance when Sony has done so, and shall provide you with copies of such documents promptly after your request therefor. Sony shall not be required to notify you before signing short form assignments of rights granted in this agreement for recordation in the Copyright Office. The powers granted herein are coupled with an interest and irrevocable. Without limiting the generality of the foregoing, Sony and its Licensees each shall have the right but not the obligation to cause the copyrights in the Compositions to be registered or re-registered in your name and the names of any additional parties as may be appropriate.

4.04. Names and Likenesses. (a) Subject to subparagraphs 4.04(b) and (c) below, Sony and any Licensee of Sony each shall have the right and may grant to others the right to reproduce, print, publish, or disseminate in any medium your name, the names, portraits, pictures and likenesses of the Songwriters (including, without limitation, all professional,

BTR

SUN 0731

group, and other assumed or fictitious names used by them), and biographical material concerning them, to the extent you have such rights, as news or information, for the purposes of trade, or for advertising purposes solely in connection with the exploitation of musical compositions, institutional advertising and marketing for Sony.

(b)     Sony will furnish to you for your approval at its offices any pictures of one or more Songwriters, or biographical material about such Songwriters, which it proposes to use for packaging, advertising, publicity or other use in the United States during the Term. Sony will not use any such material which you disapprove in writing, provided you furnish substitute material, satisfactory to Sony in its sole discretion, in time for Sony's use within its production and release schedules. This subparagraph will not apply to any material previously approved by you or previously used with your approval by Sony. No inadvertent failure to comply with this subparagraph will constitute a breach of this agreement, and you will not be entitled to injunctive relief to restrain the continuing use of any material used in contravention of this subparagraph provided Sony uses its best efforts to prospectively cure such failure.

(c)     The rights granted by you pursuant to this paragraph 4.04 in respect of the names, portraits, and likenesses of the Songwriters shall be subject only to those limitations on your rights thereto which are set forth in written agreement(s) between you and the Songwriter concerned and of which you have notified Sony with specificity within a reasonable time prior to Sony's intended use.

4.05.   Without limitation of anything contained in this Article 4, for the country of Brazil, you grant to Sony the exclusive right in respect to mechanical and electrical reproduction of the Compositions on Phonograph Records and the exclusive collection of the sub-publishing rights (including performance and mechanical rights) in accordance with local representation by SONY SONGS EDICOES MUSICAIS LTDA., at Praia do Flamengo, 200, Rio de Janeiro, Brazil 22210  (or any successor organizations), to whom all necessary powers are granted for the collection and administration of the Compositions for which Sony agrees to undertake all necessary proceedings to execute the requirements of this agreement.

4.06.   Option to Purchase. If at any time during the Term you receive a bona fide offer from a third party at any time to purchase all or any portion of your interest in the Compositions, or any one of them, and you desire to sell such interest, you shall accord to Sony First Refusal Rights with respect to such proposed purchase.

5.      INTENTIONALLY OMITTED.


ID: 20275                        -5-              BTR          [SMP 95-46.3(1)]
(6/10/96)(20276RL)

                                                          BTR

SUN 0732

## 6. ADMINISTRATION FEES; ROYALTIES

Sony shall be entitled to retain for its own account the following administration fees:

6.01.  United States Income.  ten percent (10%) of Gross Income derived from any exploitation of the Compositions in the United States; except that Sony shall be entitled to retain twenty percent (20%) of Gross Income derived from Cover Recordings in the United States.

6.02.  Non-United States Income.  fifteen percent (15%) of Gross Income derived from any exploitation of the Compositions outside the United States; except that Sony shall be entitled to retain thirty percent (30%) of Gross Income derived from Cover Recordings outside the United States.

6.03.  Any direct or indirect payments to you with respect to the Compositions (other than songwriter share of non-dramatic public performance income) shall be immediately reported and turned over to Sony for accounting under this Article 6.

6.04.  Sony shall pay you a royalty of one hundred percent (100%) of Net Income.

## 7. ROYALTIES ACCOUNTINGS

7.01.  Sony will compute your royalties as of each June 30th and December 31st for the prior six (6) months.  (Sony reserves the right to alter such accounting periods without notice, but in no event shall Sony account less frequently than every six (6) months.)  On the next September 30th or March 31st (or if Sony alters the accounting periods, on the date ninety (90) days following the period concerned) Sony will send you a statement covering those royalties and will pay you any net royalties which are due.  Sony will not be required to send you a royalty payment for any period in which the royalties payable to you will be $50.00 or less; such royalties shall be held and paid along with the next statement requiring payment in excess of $50.00.  If Sony makes any overpayment to you, you will reimburse Sony for it; to the extent not immediately reimbursed, Sony may also deduct it from any payments due or becoming due to you.  In respect of print sales of Compositions made by print operations owned by Sony or any of Sony's affiliates, Sony shall have the right to maintain royalty reserves against unanticipated returns and credits only with respect to print uses of the Compositions not in excess of 15% of Net Income, payable to you in respect of print uses.  Each such royalty reserve shall be liquidated not later than the end of the fourth semi-annual accounting period following the accounting period during which the applicable reserve is initially established.

7.02.  Sony will compute royalties in the same national currency in which Sony's Licensee pays Sony for that exploitation, and Sony will credit those royalties at the same rate

SUN 0733

of exchange at which the Licensee pays Sony. For purposes of accounting to you, Sony will treat any exploitation outside the United States as an exploitation occurring during the same six (6) month period in which Sony receives its Licensee's accounting and payment for that exploitation. If any Sony Licensee deducts any taxes from its payments to Sony, Sony may deduct a proportionate amount of those taxes from your royalties. If after a final audit of its tax returns by the Internal Revenue Service Sony is allowed a credit against its U.S. income taxes for all or a portion of any taxes withheld by a Sony Licensee from its royalty remittances to Sony which were deducted from your royalties, the amount of such tax credit attributable to your royalties will be credited to your account. The amount of the tax credit to be credited to your account will be determined by Sony; such determination will be conclusive and you will not be entitled to examine Sony's tax returns or any portion of them. If any law, any government ruling, or any other restriction affects the amounts which a Sony Licensee can remit to Sony, Sony may deduct from your royalties an amount proportionate to the reduction in the Licensee's remittances to Sony. If Sony cannot collect payment for any foreign exploitation in the United States in U.S. Dollars it will not be required to account to you concerning that exploitation, except as provided in the next sentence. Sony will, at your request and at your expense, deduct from the monies so blocked and deposit in a foreign depository the equivalent in local currency of the royalties which would be payable to you on the foreign sales concerned, to the extent such monies are available for that purpose, and only to the extent to which your royalty account is then in a fully recouped position. All such deposits will constitute royalty payments to you for accounting purposes.

7.03. Sony will maintain Books and Records which report exploitation of Compositions for which royalties are payable to you. You may, at your own expense, examine those books and records, as provided in this paragraph only. You may make those examinations only for the purpose of verifying the accuracy of the statements sent to you under paragraph 7.01. You may make such an examination for a particular statement only once, and only within three (3) years after the date when Sony sends you that statement under paragraph 7.01. Sony will be deemed conclusively to have sent you each statement on the date prescribed in paragraph 7.01 unless you notify Sony otherwise, with respect to any statement, within thirty (30) days after that date. You may make those examinations only during Sony's usual business hours, and at the place where it keeps the books and records to be examined. If you wish to make an examination you will be required to notify Sony at least 30 days before the date when you plan to begin it. Sony may postpone the commencement of your examination only twice and by notice given to you not later than seven (7) days before the commencement date specified in your notice; if it does so, the running of the time within which the examination may be made will be suspended during the postponement. If your examination has not been completed within one month from the time you begin it, Sony may require you to terminate it on seven (7) days' notice to you at any time, provided any delay is not caused directly by Sony; Sony will not be required to permit you to continue the examination after the end of that seven-day period. You will not be entitled to examine any records that do not specifically report exploitation of Compositions as to which royalties are payable to you. You may appoint a certified public accountant to

ID: 20275                    -7-              BTR          [SMP 95-46.3(1)]
(6/10/96)(20276RL)

BTR

SUN 0734

make such an examination for you, but not if he or his firm has begun an examination of Sony's books and records for any Person except you, unless the examination has been concluded and any applicable audit issues have been resolved.

7.03.1. Notwithstanding the last sentence of paragraph 7.03, if Sony notifies you that the representative designated by you to conduct an examination of Sony's books and records under paragraph 7.03 is engaged in an examination on behalf of another Person ("Other Examination"), you may nevertheless have your examination conducted by your designee, and the running of the time within which such examination may be made shall be suspended until your designee has completed the Other Examination, subject to the following conditions:

(a) You shall notify Sony of your election to that effect within 30 days after the date of Sony's said notice to you;

(b) Your designee shall proceed in a reasonably continuous and expeditious manner to complete the Other Examination and render the final report thereon to the client and Sony; and

(c) Your examination shall not be commenced by your designee before the delivery to Sony of the final report on the Other Examination, shall be commenced within seventy-five (75) days thereafter, and shall be conducted in a reasonably continuous manner.

(The preceding provisions of this paragraph 7.03.1 will not apply if Sony elects to waive the provisions of the last sentence of paragraph 7.03 which require that your representative shall not be engaged in any Other Examination.)

7.04. If you have any objections to a royalty statement, you shall give Sony specific notice of that objection and your reasons therefor within three (3) years after the date when Sony is deemed to have sent you that statement under paragraph 7.01 (giving effect to the fifth sentence of paragraph 7.03). Each royalty statement shall become conclusively binding on you at the end of that three (3)-year period, and you shall no longer have any right to make any other objections to the statement. You shall not have the right to sue Sony in connection with any royalty accounting unless you commence the suit within that three (3)-year period. If you commence suit on any controversy or claim concerning royalty accountings rendered to you under this agreement, you will have no right to seek termination of this agreement or avoid the performance of your obligations hereunder by reason of any such claim. The preceding two sentences shall not apply to any item in a royalty accounting if you establish that the item was intentionally misstated by Sony.

BTR

SUN 0735

## 8. SONGWRITER AGREEMENTS

8.01. The term "you," as used in this Article, and Article 9, means and includes you and every Affiliate.

8.02. (a)    You will fulfill all of your obligations to Songwriters under your agreements with Songwriters ("Songwriter Agreement") including, without limitation, all payment obligations thereunder. You shall notify Sony promptly of every material default and alleged default by you in doing so. If you do not cure any such default within thirty (30) days of notice from Sony, Sony shall have the right at its election to cure the default on your behalf. If Sony does so by making payment therefor, then you shall repay Sony immediately for such payment, or Sony shall have the right to deduct such amount from royalties payable to you hereunder.

(b)    In the event of your dissolution or the liquidation of your assets, or the filing of a petition in reorganization, by, for or against you, or the appointment of a receiver or a trustee for all or a portion of your property, or if you make an assignment for the benefit of creditors or commit any act for, or in, bankruptcy or become insolvent, then at any time after the occurrence of any such event, in addition to any other remedies under this agreement or otherwise, Sony shall have the right to cause your rights in respect of the applicable Compositions under any or all of the Songwriter Agreements to be assigned to Sony.

8.03. You shall protect, implement and enforce all of your rights under the Songwriter Agreements unless Sony agrees otherwise in writing. Sony shall have the right to do any act or thing, in your name and on your behalf, which you could do yourself under any Songwriter Agreements or for the purpose of protecting, implementing or enforcing your rights thereunder, if you do not do so within (10) days of Sony's notice.

8.04. Except as otherwise expressly provided in this agreement, each assignment to Sony of a Songwriter Agreement or your rights thereunder in respect of the applicable Compositions pursuant to Sony's rights under this agreement shall be effective upon the giving of notice by Sony that it elects to cause such assignment. Notwithstanding the preceding sentence, you will execute and deliver such further instruments and documents and will take such other steps as Sony shall reasonably request for the purpose of implementing any such assignment; if you fail to do so promptly upon Sony's request in any instance, Sony shall have the right to do so in your name and on your behalf.

8.05. If a Songwriter Agreement or your rights thereunder in the applicable Compositions shall be assigned to Sony pursuant to this agreement. Sony will credit to your royalty account an amount equal to the royalties you would have been paid hereunder (but for such assignment) on Compositions delivered prior to such assignment (after deduction of Songwriter or other third party share.)

ID: 20275                        -9-            BTR            [SMP 95-46.3(1)]
(6/10/96)(20276RL)

## 9. ADDITIONAL WARRANTIES, REPRESENTATIONS, RESTRICTIONS, COVENANTS, WAIVERS, INDEMNITIES

9.01. You warrant and represent:

(a) You have or will enter into written agreements with each Songwriter and or Songwriter Furnishing Entity. The period during which you are entitled, pursuant to each such agreement, to own and administer the Songwriting services of each such Songwriter and the rights to musical compositions subject thereto shall be no less than the Term and the Collection Period hereunder, as the same may be extended.

(b) The Compositions and all rights and copyrights therein are your sole property, free from any claims whatsoever by any Person. Prior to the execution of this agreement, you have received no notice of any such claim nor are you aware of any such claim.

(c) All rights in the Compositions herein granted to Sony shall be available to Sony throughout the territory without restriction, except as may be specifically indicated herein.

(d) You have the right and power to enter into and fully perform this agreement.

(e) Sony shall not be required to make any payments of any nature for, or in connection with, the acquisition, exercise or exploitation of rights by Sony pursuant to this agreement except as specifically provided in this agreement. Without limiting the generality of the foregoing, you shall be solely responsible for any payments due to Songwriters with respect to Sony's exploitation of the Compositions and the other rights granted to Sony hereunder.

(f) There are no advances made by ASCAP, BMI or any other third parties which are recoupable from income derived from any use of the Compositions. You are entitled to be paid and to collect on all such income (including both the publisher and songwriter share) from the date hereof. On or before your execution of this agreement you will deliver to Sony a letter in the form attached hereto as Exhibits E-1, E-2, E-3 or E-4 from ASCAP and BMI, and such other documents from other third parties as Sony may reasonably request in connection with this subparagraph.

(g) No Materials, as hereinafter defined, or any use thereof, will violate any law or infringe upon or violate the rights of any Person. "Materials," as used in this Article, means: (1) all Compositions, (2) each name used by Songwriters, individually or as a group, in connection with the Compositions, and (3) all other musical, dramatic,

ID: 20275            -10-         BTR        [SMP 95-46.3(1)]
(6/10/96)(20276RL)

artistic and literary materials, ideas, and other intellectual properties, furnished or selected by you or Songwriter(s) and contained in or used in connection with the Compositions or the exploitation thereof.

(h) WILDSTAR MUSIC, INC. and APOLLO'S CHARIOT MUSIC are members in good standing of ASCAP pursuant to valid current membership agreements. STARWILD MUSIC INC. and BANANA ALERT MUSIC, INC. are members in good standing of BMI pursuant to valid current membership agreements.

(i) Neither you, nor any third party, on your behalf, will collect or permit the collection of any income arising in the Territory in connection with the Compositions at any time during the Term or the Collection Period. To the extent you are in breach of your warranty and representation (or your agreement) herein, Sony shall, in addition to its other rights, have the right to deduct from any royalties due you, an amount equal to any monies which Sony is unable to collect by reason of such monies having been collected by you or on your behalf.

9.02.  During the Term of this agreement, neither you nor any Songwriter or Songwriter Furnishing Entity will enter into any agreement which would interfere with the full and prompt performance of your obligations hereunder.

9.03.  You warrant and represent that, to the best of your knowledge, the relevant text of any licenses concerning any Compositions made by you, any Affiliate, any Songwriter, or any Songwriter Furnishing Entity prior to the Term hereof is annexed hereto as Exhibit D.  You shall provide Sony with the text of any additional licenses immediately following your knowledge thereof.

9.04.  The exclusive rights granted hereunder are unique and extraordinary, and the loss thereof cannot be adequately compensated in damages, and Sony shall be entitled to injunctive relief to enforce the provisions of this agreement.  (The preceding sentence shall not be construed to preclude you, from opposing any application for such relief based upon contest of the other facts alleged by Sony in support of the application.)

(a) You will at all times indemnify and hold harmless Sony and any Licensee of Sony from and against any and all claims, damages, liabilities, costs and expenses, including reasonable legal expenses and reasonable counsel fees, arising out of any breach or alleged breach of any warranty or representation made by you in this agreement, or any other act or omission by you or any Songwriter, provided the claim concerned has been settled with your consent or has resulted in a judgment against Sony or its Licensees. If any claim involving such subject matter has not been resolved, or has been resolved by a judgment or other disposition which is not adverse to Sony or its Licensees, you will reimburse Sony for eighty percent (80%) of the expenses actually incurred by Sony and its Licensees in connection with that claim. Pending the resolution of any such claim Sony will

BTR

not withhold monies which would otherwise be payable to you under this agreement in an amount exceeding your potential liability to Sony under this paragraph.

(b)     If Sony pays more than $5,000 in settlement of any such claim, you will not be obligated to reimburse Sony for the excess unless you have consented to the settlement, except as provided in the next sentence. If you do not consent to any settlement proposed by Sony for an amount exceeding $5,000 you will nevertheless be required to reimburse Sony for the full amount paid unless you make bonding arrangements, satisfactory to Sony in its reasonable discretion, to assure Sony of reimbursement for all damages, liabilities, costs and expenses (including legal expenses and counsel fees) which Sony or its Licensees may incur as a result of that claim.

## 10.   DEFINITIONS

As used in this agreement the following terms shall have the meanings set forth below:

10.01.     INTENTIONALLY OMITTED.

10.02.     "Affiliate" - any Person which you own or in which you have an interest, in whole or in part, any Person the operation of which is controlled directly or indirectly by you and any Person which is owned or controlled by the same Person which owns or controls you. Upon formation of an Affiliate subsequent to the date hereof, you shall promptly give notice to Sony thereof and deliver to Sony a counterpart to this agreement executed by such Affiliate. Such execution shall not relieve you of any of your warranties, representations or agreements hereunder.

10.03.     "Books and Records" - that portion of Sony's books and records which specifically report monies received by Sony from the commercial exploitation of the Compositions for which a royalty is payable to you hereunder; provided that the term "Books and Records" shall not be deemed to include any manufacturing records (e.g., inventory and/or production records) or any other of Sony's records.

10.04.     Intentionally Omitted.

10.05.     "Cover Recording" - any recording of a Composition on Records, which recording has not been secured by you.

10.06.     "Delivery" or "Delivered" - when used with respect to Compositions, means the actual receipt by Sony's Business Affairs and Administration Department at its offices in New York, New York of a DAT tape, cue sheets, and a lyric sheet of the Composition, and authorizations in the form of the Exhibits annexed hereto; in addition,

*BTR*

"Delivery" means the actual receipt by Sony of all data and records in your possession or control regarding the copyrights therein and the interests of any co-writers, co-owners and/or other parties in all Compositions, including without limitation, certificates of registration of claims to copyright, notices of use, correspondence, demo records, and mechanical licenses with respect thereto.

    10.07.      INTENTIONALLY OMITTED.

    10.08.      "Gross Income" - all monies earned as compensation for the use of any Composition(s) and any proceeds from litigation regarding such Composition(s). With respect to monies earned outside the United States, calculation of Gross Income" shall be made "at source"; that is, such calculation shall include, for the purposes of this paragraph, any share of such monies retained by Sony's wholly-owned Licensees. For purposes of clarification, "Gross Income" shall exclude any advances or fees paid to you by third parties, unless such advances or fees are paid in connection with the use of Compositions.

    10.09.      "Licensees" - music publishing licensees, including without limitation, music publishing subsidiaries, wholly or partly owned, divisions and affiliates of Sony Music Entertainment Inc., and Subpublishers.

    10.10.      "Net Income" - Gross Income, less any amounts Sony is permitted to deduct from such Gross Income pursuant to the terms of this agreement, including, without limitation, the administration fees permitted under Article 6 hereof, the amounts, if any, paid to partial owners of Compositions or other publishers, the actual costs, if any, incurred in connection with the registration of copyrights, actual third-party costs of translating and arranging the Compositions (subject to subparagraph 4.02.1(a)), actual, third-party costs of collecting income with respect to the Compositions, actual third-party fees paid to or charged by a trustee or collecting agent for the licensing of the Compositions (provided such costs are customary and reasonable in the music publishing industry), all actual, third-party expenses (including reasonable legal fees and expenses) incurred by Sony in connection with any claim or suit brought by or against Sony concerning the Compositions (other than those claims or suits subject to full reimbursement under paragraph 9.04) and demo costs (provided such demos are made with your prior approval). Expenses of salaries of employees, rent and overhead will not be deducted.

    10.11.      "Person" and "Party" - any individual, corporation, partnership, association or other organized group of persons or legal successors or representatives of the foregoing.

    10.12.      INTENTIONALLY OMITTED.

    10.13.      "Records" and "Phonograph Records" - all forms of reproductions, now or hereafter known, manufactured or distributed primarily for home use, school use,

ID: 20275          -13-          BTR          [SMP 95-46.3(1)]
(6/10/96)(20276RL)

BTR

jukebox use, or use in means of transportation, embodying (a) sound alone or (b) sound coupled with visual images, e.g. "sight and sound" devices.

10.14.    "Songwriter(s)" - all writers and composers of the Compositions. "Songwriter Furnishing Entity" - such corporate entity furnishing the songwriting services of, and granting all ownership and administration interest in musical compositions written by, a Songwriter.

10.15.    "Subpublisher" - A Person authorized by Sony, directly or indirectly, to administer and act as a publisher of one or more Compositions on a general basis and grant rights in them to users or other Subpublishers, in a particular territory. Persons who administer particular rights only and do not assume general responsibility for exploiting the composition(s) concerned, such as performance and mechanical right licensing organizations, are not Subpublishers.

10.16.    "Territory" - the universe.

## 11.    NOTICES

11.01.    Except as otherwise specifically provided herein, all notices under this agreement shall be in writing and shall be given by courier or other personal delivery or by registered or certified mail at the appropriate address below or at a substitute address designated by notice by the party concerned.

TO YOU:                    The address shown above.

TO SONY:                   550 Madison Avenue
                           New York, New York  10022-3211

Each notice to Sony shall be addressed for the attention of Sony's Vice President, Business Affairs & Administration, and a copy of each notice to Sony shall be sent simultaneously to the Sony Music Entertainment Inc. Law Department for the attention of Sony's Senior Vice President and General Counsel. Sony shall undertake to send a copy of each notice sent to you to Loeb & Loeb, 345 Park Avenue, New York, New York 10154, Attention: Marc Chamlin, Esq., but Sony's failure to send any such copy shall not constitute a breach of this agreement or impair the effectiveness of the notice concerned. Notices shall be deemed given when mailed or, if personally delivered, when so delivered, except that a notice of change of address shall be effective only from the date of its receipt.

*BTR*

## 12. EVENTS OF DEFAULT; REMEDIES

12.01.       In the event of your dissolution or the liquidation of your assets, or the filing of a petition in bankruptcy or insolvency or for an arrangement or reorganization, by, for or against you, or in the event of the appointment of a receiver or a trustee for all or a portion of your property, or in the event that you shall make an assignment for the benefit of creditors or commit any act for, or in, bankruptcy or become insolvent, or in the event of any default or alleged default by you under a Songwriter Agreement which default is not cured in accord with subparagraph 8.02(a), then at any time after the occurrence of any such event, in addition to any other remedies under this agreement or otherwise, Sony shall have the right to cause your rights under any or all of the Songwriter Agreements in respect of the applicable Compositions to be assigned to Sony.

12.02.       If because of a(n): act of God; inevitable accident, fire; lockout, strike or other labor dispute; riot or civil commotion; act of public enemy; enactment, rule, order or act of any government or governmental instrumentality (whether federal, state, local or foreign); failure of technical facilities; failure or delay of transportation facilities; or other cause of similar or different nature not reasonably within Sony's control; Sony is materially hampered in the exploitation or administration of musical compositions, then, without limiting Sony's rights, Sony shall have the option by giving you notice to suspend the Term for the duration of any such contingency. If any suspension imposed under this paragraph by reason of an event affecting no Record manufacturer or distributor except Sony continues for more than six (6) months, you may request that Sony, by notice, terminate the suspension by notice given to you within sixty (60) days after Sony's receipt of your notice. If Sony does not do so, the Term shall terminate at the end of that sixty (60) day period (or at such earlier time as Sony may designate by notice to you), and all parties shall be deemed to have fulfilled all of their obligations under this agreement except those obligations which survive the end of the Term (such as warranties, re-recording restrictions, and the obligation to pay royalties).

12.03.       If you do not fulfill any of your material obligations hereunder, Sony will have the following options:

(a)       to suspend Sony's obligations to make payments under this agreement until you have cured the default;

(b)       to terminate the Term of this agreement at any time before the expiration of the period of sixty (60) days after the date on which you have fully cured the default; and

-       Sony may exercise each of those options by sending you the appropriate notice. If Sony terminates the Term under subparagraph 12.03(b) all parties will be deemed to have fulfilled all of their obligations under this agreement except those

obligations which survive the end of the Term (such as accountings, indemnification obligations, and your obligations under clause 12.03(c)). No exercise of an option under this paragraph will limit Sony's rights to recover damages by reason of your default, its rights to exercise any other option under this agreement, or any of its other rights.

12.04.        Without limiting any of Sony's rights or remedies contained in this Article 12, in the event of a breach of any of the representations or warranties set forth in subparagraph 9.01(a) hereof, Sony shall, in addition to its other rights, have the right to deduct from any royalties due you, an amount equal to any monies which Sony is unable to collect by reason of such monies having been collected by you or on your behalf as a result of such breach.

## 13.   MISCELLANEOUS

13.01.        This agreement contains the entire understanding of the Parties hereto relating to the subject matter. No change or termination of this agreement shall be binding unless it is made by an instrument signed by an authorized officer of Sony.  No change of this agreement shall be binding upon you unless it is made by an instrument signed by you. A waiver by either Party of any term or condition of this agreement in any instance shall not be deemed a waiver of such provision or any other provision hereof, as to any future instance or occurrence. All remedies, rights, undertakings, obligations, and agreements contained in this agreement shall be cumulative and none of them shall be in limitation of any other remedy, right, undertaking, obligation or agreement of either Party. The captions of the Articles in this agreement are included for convenience only and shall not affect the interpretation of any provision.

13.02.        Neither party shall be entitled to recover damages or impose on the other party any other remedy by reason of any breach by the other party of its material obligations, unless the latter party has failed to remedy the breach within thirty (30) days following receipt of notice thereof (or, if the breach concerned cannot be remedied within thirty (30) days, if the latter party commences to remedy the breach within that time and proceeds to complete the remedy with reasonable promptness).  (The preceding sentence shall not apply to any termination by Sony under subparagraph 12.03.)

13.03.        (a)     As to all matters treated herein to be determined by mutual agreement, or as to which any approval or consent is required, such agreement, approval or consent will not be unreasonably withheld, and you shall not be entitled to withhold your consent to any exploitation of any Composition for financial reasons (e.g., in order to obtain payment of a designated amount in respect of such license) unless the fee or royalty suggested by Sony which is payable in connection with such exploitation is not reasonable and customary in the music publishing industry.

ID:  20275                          -16-              BTR              [SMP 95-46.3(1)]
(6/10/96)(20276RL)

(b)　Your agreement, approval or consent, or that of any Songwriter, whenever required, shall be deemed to have been given unless you notify Sony otherwise within seven (7) days following the date of Sony's request therefor.

13.04.　Sony may assign Sony's rights under this agreement in whole or in part to any subsidiary, affiliated or controlling corporation, to any Person owning or acquiring a substantial portion of the stock or assets of Sony, or to any partnership or other venture in which Sony participates, and such rights may be similarly assigned by any assignee. No such assignment shall relieve Sony of any of Sony's obligations hereunder. Sony may also assign Sony's rights to any of Sony's Licensees if advisable in Sony's sole discretion to implement the license granted, provided that no such assignment shall relieve Sony of any of its obligations hereunder. Any purported assignment by you in violation of this paragraph shall be void.

13.05.　THIS AGREEMENT HAS BEEN ENTERED INTO IN THE STATE OF NEW YORK, AND THE VALIDITY, INTERPRETATION AND LEGAL EFFECT OF THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS ENTERED INTO AND PERFORMED ENTIRELY WITHIN THE STATE OF NEW YORK (WITHOUT GIVING EFFECT TO ANY CONFLICT OF LAW PRINCIPLES UNDER NEW YORK LAW). THE NEW YORK COURTS (STATE AND FEDERAL), SHALL HAVE SOLE JURISDICTION OF ANY CONTROVERSIES REGARDING THIS AGREEMENT; ANY ACTION OR OTHER PROCEEDING WHICH INVOLVES SUCH A CONTROVERSY SHALL BE BROUGHT IN THOSE COURTS IN NEW YORK COUNTY AND NOT ELSEWHERE. THE PARTIES WAIVE ANY AND ALL OBJECTIONS TO VENUE IN THOSE COURTS AND HEREBY SUBMIT TO THE JURISDICTION OF THOSE COURTS. ANY PROCESS IN ANY SUCH ACTION OR PROCEEDING MAY, AMONG OTHER METHODS, BE SERVED UPON YOU BY DELIVERING IT OR MAILING IT, BY REGISTERED OR CERTIFIED MAIL, DIRECTED TO THE ADDRESS FIRST ABOVE WRITTEN OR SUCH OTHER ADDRESS AS YOU MAY DESIGNATE PURSUANT TO ARTICLE 11. ANY SUCH PROCESS MAY, AMONG OTHER METHODS, BE SERVED UPON ANY OTHER PERSON WHO APPROVES, RATIFIES, OR ASSENTS TO THIS AGREEMENT TO INDUCE SONY TO ENTER INTO IT, BY DELIVERING THE PROCESS OR MAILING IT BY REGISTERED OR CERTIFIED MAIL, DIRECTED TO THE ADDRESS FIRST ABOVE WRITTEN OR SUCH OTHER ADDRESS AS THE OTHER PERSON CONCERNED MAY DESIGNATE IN THE MANNER DESCRIBED IN ARTICLE 11. ANY SUCH DELIVERY OR MAIL SERVICE SHALL BE DEEMED TO HAVE THE SAME FORCE AND EFFECT AS PERSONAL SERVICE WITHIN THE STATE OF NEW YORK.

13.06.　In entering into this agreement, and in providing services pursuant hereto, you and the Songwriters have and shall have the status of independent contractors and

ID: 20275　　　　　-17-　　　　BTR　　　[SMP 95-46.3(1)]
(6/10/96)(20276RL)

BTR

SUN 0744

nothing herein contained shall contemplate or constitute you or the Songwriters as Sony's agents or employees.

13.07.    You may assign your rights under this agreement to another corporation, all of whose capital stock is owned solely by you, subject to the following conditions:

(a)    The assignee shall be subject to Sony's approval in Sony's sole reasonable discretion;

(b)    The assignment shall not be effective until you have delivered to Sony an instrument satisfactory to Sony in Sony's sole reasonable discretion effecting the assignment and the assignee's assumption of your obligations, and Sony has executed that instrument to evidence Sony's approval of it;

(c)    No such assignment shall relieve you of your obligations under this agreement; and

(d)    If such an assignment takes place, any further transfer of the rights assigned shall be subject to the same conditions.

Any purported assignment by you in violation of this subparagraph 13.07 shall be void.

13.08.    This agreement shall not become effective until executed by all proposed Parties hereto.

13.09.    Any and all riders annexed hereto together with this basic document shall be taken together to constitute the agreement between you and Sony.

BTR

SUN 0745

13.10.     Your obligations under this agreement are joint and several, and all references to you herein shall apply to both of you collectively and to each of you individually unless otherwise specified.

SUNBOW ENTERTAINMENT d/b/a
WILDSTAR MUSIC, INC. (ASCAP)

By _____

SUNBOW ENTERTAINMENT d/b/a
STARWILD MUSIC INC. (BMI)

By _____

SUNBOW ENTERTAINMENT d/b/a
APOLLO'S CHARIOT MUSIC (ASCAP)

By _____

SUNBOW ENTERTAINMENT d/b/a
BANANA ALERT MUSIC, INC. (BMI)

By _____

SONY/ATV TUNES LLC

By _____

SONY/ATV SONGS LLC

By _____

Our taxpayer identification number (employer identification number) is       .
Under the penalties of perjury, I certify that this information is true, correct, and complete.

_____

SUNBOW ENTERTAINMENT d/b/a
WILDSTAR MUSIC, INC. (ASCAP)


Our taxpayer identification number (employer identification number) is       .
Under the penalties of perjury, I certify that this information is true, correct, and complete.

_____

SUNBOW ENTERTAINMENT d/b/a
STARWILD MUSIC INC. (BMI)


Our taxpayer identification number (employer identification number) is       .
Under the penalties of perjury, I certify that this information is true, correct, and complete.

_____

SUNBOW ENTERTAINMENT d/b/a
APOLLO'S CHARIOT MUSIC (ASCAP)


Our taxpayer identification number (employer identification number) is       .
Under the penalties of perjury, I certify that this information is true, correct, and complete.

_____

SUNBOW ENTERTAINMENT d/b/a
BANANA ALERT MUSIC, INC. (BMI)


ID: 20275
(6/10/96)(20276RL)

-20-

BTR     ···· [SMP 95-46.3(1)]

## SCHEDULE A

to an agreement between SUNBOW ENTERTAINMENT d/b/a WILDSTAR MUSIC, INC. (ASCAP), STARWILD MUSIC INC. (BMI), APOLLO'S CHARIOT MUSIC (ASCAP) AND BANANA ALERT MUSIC, INC. (BMI), 100 Fifth Avenue, New York, New York, 10011, Attention: Andrew Karpen ("you"), on the one hand, and SONY/ATV TUNES LLC (ASCAP) and SONY/ATV SONGS LLC (BMI), 550 Madison Avenue, New York, New York 10022 (collectively, "Sony") on the other hand, dated as of November 3, 1995  [SMP 95-46]

(Reference Paragraph 2.01)

SUNBOW COMPOSITIONS

| Title | Writer(s) | Publisher Splits | U.S. Copyright Registration No./Date |
|-------|-----------|------------------|--------------------------------------|
|       |           |                  |                                      |

ID: 20275                 -21-            BTR            [SMP 95-46.3(1)]
(6/10/96)(20276RL)

## EXHIBIT C-1

to an agreement between SUNBOW ENTERTAINMENT d/b/a WILDSTAR MUSIC, INC. (ASCAP), STARWILD MUSIC INC. (BMI), APOLLO'S CHARIOT MUSIC (ASCAP) AND BANANA ALERT MUSIC, INC. (BMI), 100 Fifth Avenue, New York, New York, 10011, Attention: Andrew Karpen ("you"), on the one hand, and SONY/ATV TUNES LLC (ASCAP) and SONY/ATV SONGS LLC (BMI), 550 Madison Avenue, New York, New York 10022 (collectively, "Sony") on the other hand. dated as of November 3, 1995 [SMP 95-46]

---

(Reference - Paragraph 4.01)

Dated: as of January 1, 1996

American Society of Composers,
  Authors and Publishers
ASCAP Building
One Lincoln Plaza
New York, NY 10023

Gentlemen:

This is to advise you that we intend to assign any publishing royalties which are now or may become due us from you to Sony Tunes Inc. up to the amount of $500,000.

We understand that Sony Tunes Inc. may not make a further assignment for these royalties except to another ASCAP member or to another bank, and any further purported assignment not so limited will not be honored by you. A copy of the proposed administration agreement is attached as Exhibit A to this Notice of Assignment and a brief summary of the terms of the administration agreement is attached as Exhibit C-1.

We have read the Society's Regulation issued pursuant to Article XX, Section 4 of the Society's Articles of Association, and this will certify that the administration agreement conforms in all particulars with the terms of that Regulation, a copy of which is annexed hereto.

In consideration of your agreeing to this assignment, we agree that we may not resign from membership nor will we take any action which would diminish the number of works in our catalogue or reduce our present interest in such works, by assignment or otherwise until our obligations pursuant to the administration agreement are fully met.

If the administration agreement is still in effect, we further agree, on behalf of Sony Tunes Inc. or any other person or persons who may acquire, by will or under any law,

ID: 20275          -30-          BTR          [SMP 95-46.3(1)]
(6/10/96)(20276RL)

our right, title and interest in any musical works in our catalogue, to execute any new assignment, for the period commencing 1996, vesting in you the right to license, upon non-exclusive basis, the non-dramatic public performance of such works which may be approved for the members generally in accordance with Article III, Section 6 of ASCAP's Article of Association.

.  If you agree to this assignment, please so indicate at the foot hereof in the place provided.

Accepted and Agreed:

AMERICAN SOCIETY OF            Sincerely,
COMPOSERS, AUTHORS
AND PUBLISHERS                 SUNBOW ENTERTAINMENT d/b/a
                               WILDSTAR MUSIC, INC. (ASCAP)

By_____            By_____

Subject to the terms of the
Regulation issued pursuant to
Article XX, Section 4 of the
Society's Articles of Association

ID:  20275              -31-          BTR          [SMP 95-46.3(1)]
(6/10/96)(20276RL)



Pursuant to Article XX, Section 4, assignment of royalties will be permitted with the prior written approval of the Society, in order to provide for the repayment of an advance or loan to a member, on the following conditions:

1. The assignment is for a specified amount of money, not to exceed the amount of the loan or advance given to the member.

2. The assignee is a member of ASCAP or a bank who may not further assign except to another member or bank.

3. A copy of the proposed assignment or loan agreement shall be furnished to the Society prior to the execution of the document, together with a statement, on a form supplied by the Society, (a) summarizing the terms of assignment and (b) waiving the member's right to resign from membership until the full amount of the loan or advance covered by the assignment has been repaid.

4. The Society reserves the right, in its discretion, to withhold approval of any assignment for reasons such as, but not limited to, the following: the member is indebted to the Society; the member has any other outstanding assignments; or a tax or judgment lien against the member has been served on ASCAP.

5. If the advance or loan provides for recoupment or repayment from other sources, it shall provide that the assignee shall furnish ASCAP, upon receipt of a written request from the assignor or the Society, with a certified statement showing all amounts recouped or repaid and the current balance owed.

SUN 0751

## EXHIBIT C-2

### SUMMARY OF ASSIGNMENT

1.  Amount of Assignment - $500,000

2.  Amount of loan or advance given to member $500,000

3.  Assignee is: Sony Tunes Inc.
    (Check appropriate Blank)

    _____ Bank

    ____X____ Member

4.  Advance or loan

    ____X____ does

    _____ does not

    provide for recoupment from other sources
    (Check appropriate blank)

SUNBOW ENTERTAINMENT d/b/a
WILDSTAR MUSIC, INC. (ASCAP)

By_____

ID: 20275                        -33-              BTR              [SMP 95-46.3(1)]
(6/10/96)(20276RL)

## EXHIBIT C-3

to an agreement between SUNBOW ENTERTAINMENT d/b/a WILDSTAR MUSIC, INC. (ASCAP), STARWILD MUSIC INC. (BMI), APOLLO'S CHARIOT MUSIC (ASCAP) AND BANANA ALERT MUSIC, INC. (BMI), 100 Fifth Avenue, New York, New York, 10011, Attention: Andrew Karpen ("you"), on the one hand, and SONY/ATV TUNES LLC (ASCAP) and SONY/ATV SONGS LLC (BMI), 550 Madison Avenue, New York, New York 10022 (collectively, "Sony") on the other hand. dated as of November 3, 1995 [SMP 95-46]

---

(Reference - Paragraph 4.01)

Dated: as of January 1, 1996

American Society of Composers,
  Authors and Publishers
ASCAP Building
One Lincoln Plaza
New York, NY 10023

Gentlemen:

This is to advise you that we intend to assign any royalties which are now or may become due us from you to Sony Tunes Inc. up to the amount of $500,000.

We understand that Sony Tunes Inc. may not make a further assignment for these royalties except to another ASCAP member or to another bank, and any further purported assignment not so limited will not be honored by you. A copy of the proposed administration agreement is attached as Exhibit A to this Notice of Assignment and a brief summary of the terms of the administration agreement is attached as Exhibit C-1.

We have read the Society's Regulation issued pursuant to Article XX, Section 4 of the Society's Articles of Association, and this will certify that the administration agreement conforms in all particulars with the terms of that Regulation, a copy of which is annexed hereto.

In consideration of your agreeing to this assignment, we agree that we may not resign from membership nor will we take any action which would diminish the number of works in our catalogue or reduce our present interest in such works, by assignment or otherwise until our obligations pursuant to the administration agreement are fully met.

If the administration agreement is still in effect, we further agree, on behalf of Sony Tunes Inc. or any other person or persons who may acquire, by will or under any law,

ID: 20275                          -34-              BTR              [SMP 95-46.3(1)]
(6/10/96)(20276RL)

SUN 0753

our right, title and interest in any musical works in our catalogue, to execute any new assignment, for the period commencing 1996, vesting in you the right to license, upon non-exclusive basis, the non-dramatic public performance of such works which may be approved for the members generally in accordance with Article III, Section 6 of ASCAP's Article of Association.

If you agree to this assignment, please so indicate at the foot hereof in the place provided.

Accepted and Agreed:

AMERICAN SOCIETY OF
COMPOSERS, AUTHORS
AND PUBLISHERS

Sincerely,

SUNBOW ENTERTAINMENT d/b/a
APOLLO'S CHARIOT MUSIC (ASCAP)

By_____

By_____

Subject to the terms of the
Regulation issued pursuant to
Article XX, Section 4 of the
Society's Articles of Association

ID: 20275
(6/10/96)(20276RL)

-35-

BTR

[SMP 95-46.3(1)]

Pursuant to Article XX, Section 4, assignment of royalties will be permitted with the prior written approval of the Society, in order to provide for the repayment of an advance or loan to a member, on the following conditions:

1. The assignment is for a specified amount of money, not to exceed the amount of the loan or advance given to the member.

2. The assignee is a member of ASCAP or a bank who may not further assign except to another member or bank.

3. A copy of the proposed assignment or loan agreement shall be furnished to the Society prior to the execution of the document, together with a statement, on a form supplied by the Society, (a) summarizing the terms of assignment and (b) waiving the member's right to resign from membership until the full amount of the loan or advance covered by the assignment has been repaid.

4. The Society reserves the right, in its discretion, to withhold approval of any assignment for reasons such as, but not limited to, the following: the member is indebted to the Society; the member has any other outstanding assignments; or a tax or judgment lien against the member has been served on ASCAP.

5. If the advance or loan provides for recoupment or repayment from other sources, it shall provide that the assignee shall furnish ASCAP, upon receipt of a written request from the assignor or the Society, with a certified statement showing all amounts recouped or repaid and the current balance owed.

SUN 0755

## EXHIBIT C-4

### SUMMARY OF ASSIGNMENT

1. . Amount of Assignment - $500,000

2. Amount of loan or advance given to member $500,000

3. Assignee is: Sony Tunes Inc.
   (Check appropriate Blank)

   _____ Bank

   _____X_____ Member

4. Advance or loan

                                          __X·__ does

                                          _____ does not

   provide for recoupment from other sources
   (Check appropriate blank)

SUNBOW ENTERTAINMENT d/b/a
APOLLO'S CHARIOT MUSIC (ASCAP)

By_____

SUN 0756

## EXHIBIT D

to an agreement between SUNBOW ENTERTAINMENT d/b/a WILDSTAR MUSIC, INC. (ASCAP), STARWILD MUSIC INC. (BMI), APOLLO'S CHARIOT MUSIC (ASCAP) AND BANANA ALERT MUSIC, INC. (BMI), 100 Fifth Avenue, New York, New York, 10011, Attention: Andrew Karpen ("you"), on the one hand, and SONY/ATV TUNES LLC (ASCAP) and SONY/ATV SONGS LLC (BMI), 550 Madison Avenue, New York, New York 10022 (collectively, "Sony") on the other hand, dated as of November 3, 1995 [SMP 95-46]

(Reference - Paragraph 9.03)

[text of controlled composition clauses, if any]

ID: 20275
(6/10/96)(20276RL)

-38-

BTR

[SMP 95-46.3(1)]

## EXHIBIT E-1

to an agreement between SUNBOW ENTERTAINMENT d/b/a WILDSTAR MUSIC, INC. (ASCAP), STARWILD MUSIC INC. (BMI), APOLLO'S CHARIOT MUSIC (ASCAP) AND BANANA ALERT MUSIC, INC. (BMI), 100 Fifth Avenue, New York, New York, 10011, Attention: Andrew Karpen ("you"), on the one hand, and SONY/ATV TUNES LLC (ASCAP) and SONY/ATV SONGS LLC (BMI), 550 Madison Avenue, New York, New York 10022 (collectively, "Sony") on the other hand. dated as of November 3, 1995 [SMP 95-46]

(Reference - Subparagraph 9.01(f))

Date: As of January 1, 1996

To:     SONY/ATV TUNES LLC (ASCAP)

Re:     SUNBOW ENTERTAINMENT d/b/a WILDSTAR MUSIC, INC. (ASCAP)

          Please be advised that as of the date set forth above, we have made no advances which are recoupable from public performance royalties payable to the above-referenced publisher member(s).

                          Very truly yours,
                          ASCAP


                          By_____
                          An Authorized Signatory


ID:  20275                    -39-              BTR              [SMP 95-46.3(1)]
(6/10/96)(20276RL)

## EXHIBIT E-2

to an agreement between SUNBOW ENTERTAINMENT d/b/a WILDSTAR MUSIC, INC. (ASCAP), STARWILD MUSIC INC. (BMI), APOLLO'S CHARIOT MUSIC (ASCAP) AND BANANA ALERT MUSIC, INC. (BMI), 100 Fifth Avenue, New York, New York, 10011, Attention: Andrew Karpen ("you"), on the one hand, and SONY/ATV TUNES LLC (ASCAP) and SONY/ATV SONGS LLC (BMI), 550 Madison Avenue, New York, New York 10022 (collectively, "Sony") on the other hand. dated as of November 3, 1995 [SMP 95-46]

(Reference – Subparagraph 9.01(f))

Date: As of January 1, 1996

To: SONY/ATV TUNES LLC (ASCAP)

Re: SUNBOW ENTERTAINMENT d/b/a APOLLO'S CHARIOT MUSIC (ASCAP)

Please be advised that as of the date set forth above, we have made no advances which are recoupable from public performance royalties payable to the above-referenced publisher member(s).

Very truly yours,
ASCAP

By_____
An Authorized Signatory

ID: 20275                    -40-              BTR              [SMP 95-46.3(1)]
(6/10/96)(20276RL)

## EXHIBIT E-3

to an agreement between SUNBOW ENTERTAINMENT d/b/a WILDSTAR MUSIC, INC. (ASCAP), STARWILD MUSIC INC. (BMI), APOLLO'S CHARIOT MUSIC (ASCAP) AND BANANA ALERT MUSIC, INC. (BMI), 100 Fifth Avenue, New York, New York, 10011, Attention: Andrew Karpen ("you"), on the one hand, and SONY/ATV TUNES LLC (ASCAP) and SONY/ATV SONGS LLC (BMI), 550 Madison Avenue, New York, New York 10022 (collectively, "Sony") on the other hand. dated as of November 3, 1995 [SMP 95-46]

---

(Reference Subparagraph 9.01(f))

Date: As of January 1, 1996

To:    SONY/ATV SONGS LLC (BMI)

Re:    SUNBOW ENTERTAINMENT d/b/a STARWILD MUSIC INC. (BMI)

     Please be advised that as of the date set forth above, we have made no advances which are recoupable from public performance royalties payable to the above-referenced publisher member(s).

                    Very truly yours,

                    BMI

                    By_____
                       An Authorized Signatory

ID: 20275          -41-          BTR        [SMP 95-46.3(1)]
(6/10/96)(20276RL)

## EXHIBIT E-3

to an agreement between SUNBOW ENTERTAINMENT d/b/a WILDSTAR MUSIC, INC.
(ASCAP), STARWILD MUSIC INC. (BMI), APOLLO'S CHARIOT MUSIC (ASCAP)
AND BANANA ALERT MUSIC, INC. (BMI), 100 Fifth Avenue, New York, New York,
10011, Attention: Andrew Karpen ("you"), on the one hand, and SONY/ATV TUNES LLC
(ASCAP) and SONY/ATV SONGS LLC (BMI), 550 Madison Avenue, New York, New
York 10022 (collectively, "Sony") on the other hand. dated as of November 3, 1995 [SMP
95-46]

(Reference Subparagraph 9.01(f))

Date: As of January 1, 1996

To: SONY/ATV SONGS LLC (BMI)

Re: SUNBOW ENTERTAINMENT d/b/a BANANA ALERT MUSIC, INC. (BMI)

Please be advised that as of the date set forth above, we have made no advances
which are recoupable from public performance royalties payable to the above-referenced
publisher member(s).

Very truly yours,

BMI

By_____
    An Authorized Signatory

ID: 20275                 -42-           BTR            [SMP 95-46.3(1)]
(6/10/96)(20276RL)

SUN 0761