# EXHIBIT 117

Westlaw.

2006 N.Y. Slip Op. 50576(u)  Page 1
11 Misc.3d 1076(A), 819 N.Y.S.2d 849, 2006 WL 908653 (N.Y.Sup.), 2006 N.Y. Slip Op. 50576(U) (Table)
**Unreported Disposition**
(Cite as: 819 N.Y.S.2d 849, 2006 WL 908653, 2006 N.Y. Slip Op. 50576(U))

H
This opinion is uncorrected and will not be published in the printed Official Reports.

***1 North American Van Lines, Inc., NORTH AMERICAN VAN LINES OF TEXAS, INC., and CLAYTON, DUBILIER & RICE, INC., Plaintiffs,
v.
American International Companies, AMERICAN INTERNATIONAL COMPANIES MERGERS AND
ACQUISITIONS DIVISION, AMERICAN INTERNATIONAL GROUP, INC, AON RISK SERVICES
COMPANIES, INC., AON RISK SERVICES MERGERS & ACQUISITIONS GROUP, AON RISK
SERVICES, INC. OF COLORADO, AON RISK SERVICES, INC. OF NEW YORK, AMERICAN INSURANCE GROUPS, INC., AMERICAN INSURANCE SERVICES GROUP, INC., AIG INSURANCE
SERVICES, INC., AIG MERGERS & ACQUISITIONS GROUP, AIG MERGERS & ACQUISITIONS
DIVISION, AIG RISK FINANCE a division of AMERICAN INTERNATIONAL COMPANIES, AIG
RISK MANAGEMENT, INC., and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,
PA, Defendants. NORTH AMERICAN VAN LINES, INC., and NORTH AMERICAN VAN LINES OF
TEXAS, INC., Plaintiffs, AON RISK SERVICES COMPANIES, INC., AON RISK SERVICES, INC. OF NEW YORK, AMERICAN INTERNATIONAL COMPANIES, AMERICAN INTERNATIONAL
GROUP, INC, AIG RISK MANAGEMENT, INC., AIG INSURANCE SERVICES, INC., and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, Defendants.
600826/04

Supreme Court, New York County

Decided on April 10, 2006
CITE TITLE AS: North Am. Van Lines, Inc. v American Intl. Cos.

ABSTRACT
Fraud

Fraud in Inducement

Contracts

Breach or Performance of Contract

*North Am. Van Lines, Inc. v American Intl. Cos.*, 2006 NY Slip Op 50576(U). Fraud--Fraud in Inducement. Contracts--Breach or Performance of Contract. (Sup Ct, NY County, Apr. 10, 2006, Fried, J.)

APPEARANCES OF COUNSEL

For Plaintiff:

French & Rafter, LLP

29 Broadway, 27th Floor

New York, NY 10006

(Barry Meade)

For Defendants:

Conroy, Simberg, Ganon, Krevans & Abel, P.C.

Attorney for the AIG defendants

420 Lexington Avenue, Suite 335

New York, NY 10170

(Jeffrey J. Imeri)

Dechert LLP

Attorney for the AON defendants

30 Rockefeller Plaza

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

2006 N.Y. Slip Op. 50576(u) Page 2
11 Misc.3d 1076(A), 819 N.Y.S.2d 849, 2006 WL 908653 (N.Y.Sup.), 2006 N.Y. Slip Op. 50576(U) (Table)
**Unreported Disposition**
(Cite as: 819 N.Y.S.2d 849, 2006 WL 908653, 2006 N.Y. Slip Op. 50576(U))

New York, NY 10112

(Rodney M. Zerbe)

## OPINION OF THE COURT

Bernard J. Fried, J.

Both of these actions are related, involve almost identical parties, and seek to recover damages with respect to the same underlying claim. In *North American Van Lines, et al. v American International Companies, et al.* (Index No. 600826/04) (the Breach of Contract Action), plaintiffs North American Van Lines, Inc. (NAVL), North American Van Lines of Texas, Inc. (NATEX), and Clayton, Dubilier & Rice, Inc. assert a single cause of action for breach of contract against fifteen defendants, including: (1) National Union Fire Insurance Company of Pittsburgh, PA (National Union); (2) 10 AIG entities (collectively, with National Union, AIG); and (3) four Aon entities (collectively, Aon), relating to a policy of Portfolio Transfer insurance issued by National Union to NAVL. Plaintiffs demand payment from each of the defendants in the amount of $7,535,605.85, which is the amount that plaintiffs contend that NAVL remains out-of-pocket on a claim brought against it arising out of a 1996 automobile accident involving a tractor-trailer leased to NAVL, and used for a NATEX shipment, which left one of the passengers permanently paralyzed (the *Emmons* action).

In my December 8, 2004 decision and order in the Breach of Contract action (the Decision), I granted the motions of AIG and Aon to dismiss the complaint on the ground that under \*\*\*2 *Springer v Allstate Life Ins. Co. of New York* (94 NY2d 645, 649 [2000]), the March 1998 insurance binders attached to the complaint could not provide a basis for a breach of contract claim, because those binders were nullified by the issuance of the National Union insurance policy. I further held that, given NAVL's judicial admissions in the complaint in this action and in its pleadings and motions in coverage litigation with its excess insurers in Texas (the Texas Coverage Action), acknowledging the receipt, existence, validity and limits of the National Union policy, as well as receipt of payment under the National Union policy, NAVL was barred from denying the existence of a valid National Union policy. Finally, I determined that, to the extent that plaintiffs were claiming that they had stated a valid cause of action for breach of contract against Aon by referencing a broker of record letter, such cause of action was without merit, as plaintiffs failed to identify any provision in the broker of record letter which plaintiffs claim was breached by Aon.

A final judgment of dismissal in favor of defendants was entered on February 16, 2005. On March 16, 2005, plaintiffs filed a notice of appeal with respect to the final judgment. That appeal is currently pending before the Appellate Division.

In *North American Van Lines, et al. v Aon Risk Services Companies, Inc.* (Index No. 601037/05) (the Fraud Action), the third in a series of lawsuits brought by NAVL and NATEX against National Union, AIG and Aon, plaintiffs assert a cause of action for fraud, and seek to recover the same alleged damages relating to the same underlying claim. The only difference between this action and the Breach of Contract action is that NAVL characterizes its cause of action here as "fraud" rather than "breach of contract." However, even a cursory comparison of the amended complaint in the Fraud Action and the complaint in the Breach of Contract action reveals that NAVL is again suing defendants for the very same thing failure to indemnify NAVL in the amount of $7,535,605.85.

The motions in each separate action are consolidated herein for disposition only. In the Breach of Contract Action, plaintiffs move, pursuant to CPLR 2221, for an order granting them leave to reargue the Decision [FN1]. Plaintiffs also move, pursuant to CPLR 3025, for leave to file an amended complaint.

In the Fraud Action, in Motion Sequence No. 002, AIG moves, pursuant to CPLR 3211 (a) (5) and (a) (7), 3013, 3014, 3016 (b) and 213 (8), for dismissal of the amended complaint, or, in the alternative, for a stay of this action pursuant to CPLR 2201. AIG

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

2006 N.Y. Slip Op. 50576(u)   Page 3
11 Misc.3d 1076(A), 819 N.Y.S.2d 849, 2006 WL 908653 (N.Y.Sup.), 2006 N.Y. Slip Op. 50576(U) (Table)
**Unreported Disposition**
**(Cite as: 819 N.Y.S.2d 849, 2006 WL 908653, 2006 N.Y. Slip Op. 50576(U))**

also moves for sanctions, including reimbursement of its costs and fees in connection with this action, and enjoining plaintiffs from filing any further actions in this Court against it relating to the *Emmons* action. In Motion Sequence No. 003, Aon also moves, pursuant to CPLR 3211 (a) (7), for dismissal of the amended complaint, or, alternatively, for a stay.

For the reasons set forth below, plaintiffs' motions for leave to reargue and to file an amended complaint in the Breach of Contract Action are denied, and defendants' motions to dismiss the Fraud Action are granted.

*Plaintiffs' Motion For Leave to Reargue and To File an Amended Complaint in the Breach of Contract Action*\*\*\*3

A motion for reargument is addressed to the sound discretion of the trial court, and may be granted upon a showing that the court overlooked or misapprehended the facts or law, or misapplied any controlling principle of law (*see McGill v Goldman, 261 AD2d 593* [2d Dept 1999]; *Opton Handler Gottlieb Feiler Landau & Hirsch v Patel, 203 AD2d 72* [1st Dept 1994]). It is not designed to provide the unsuccessful party with successive opportunities to argue once again the very issues previously decided (*see William P. Pahl Equip. Corp. v Kassis, 182 AD2d 22* [1st Dept], *lv dismissed in part, denied in part 80 NY2d 1005 [1992]*; *Bliss v Jaffin, 176 AD2d 106* [1st Dept 1991]; *Foley v Roche, 68 AD2d 558* [1st Dept 1979]).

Plaintiffs' motion for reargument is denied. Plaintiffs' moving papers do not identify anything that I overlooked or misapprehended that justifies granting leave to reargue. Rather, plaintiffs' papers merely restate the same arguments that I already rejected in the Decision, or set forth new arguments that are not appropriate for resolution on reargument.

In support of their motion for reargument, plaintiffs once again argue, as they did in their original opposition papers, that *Springer v Allstate Life Ins. Co. of New York* (94 NY2d 645, *supra*) is not applicable here, because no formal National Union policy was ever delivered or issued to NAVL. Moreover, regurgitating the very same arguments that were raised in their prior opposition papers, plaintiffs once again contend that their statements in the Texas Coverage Action are "alternative pleadings" rather than judicial admissions, and thus, do not support dismissal of the complaint. Thus, plaintiffs merely repeat and rehash the same arguments that were originally presented and rejected on the prior motion, which is insufficient to grant a motion for reargument (*see Pro Brokerage, Inc. v Home Ins. Co., 99 AD2d 971* [1st Dept 1984]; *Foley v Roche, 68 AD2d 558*, *supra*). In any event, plaintiffs fail to demonstrate that I overlooked or misapplied any controlling principle of law in granting the dismissal motions (*see* CPLR 2221 [d] [2]; *Daluise v Sottile, 15 AD3d 609* [2d Dept 2005]; *Armstead v Morgan Guar. Trust Co. of New York, 13 AD3d 294* [1st Dept 2004]).

Plaintiffs' contention that reargument is required because I misapprehended the basis of their claims against Aon is likewise without merit. Plaintiffs contend that the agreement between Aon and NAVL that is alleged to have been breached is an oral contract, and not the broker of record letter that merely confirmed the parties' relationship. However, the Decision did not characterize plaintiffs' claim as being based upon the broker of record letter, but rather, merely held that, to the extent that plaintiffs were basing their claim upon such letter, they could not do so, because the complaint failed to identify any provision in the broker of record letter which plaintiffs claim was breached by Aon.

In any event, regardless of whether plaintiffs characterize their claim against Aon as premised on the March 1998 binder, or on an alleged oral agreement between plaintiffs and Aon, plaintiff's breach of contract cause of action fails to state a claim. As set forth in the Decision, because plaintiff's claims were premised upon an alleged "contract" pre-dating the delivery of the National Union insurance policy to NAVL in March 1999, plaintiffs' attempt to sue for breach of a contract pre-dating the deliv-

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

2006 N.Y. Slip Op. 50576(u)　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 4
11 Misc.3d 1076(A), 819 N.Y.S.2d 849, 2006 WL 908653 (N.Y.Sup.), 2006 N.Y. Slip Op. 50576(U) (Table)
**Unreported Disposition**
(Cite as: 819 N.Y.S.2d 849, 2006 WL 908653, 2006 N.Y. Slip Op. 50576(U))

ery of the policy was deficient as a matter of law, as the terms of an issued insurance policy supersede "previous written or oral representations" (Decision at 8, citing *Indian Country Inc. v Pennsylvania Lumbermens Mut. Ins. Co., 284 AD2d 712* [3d Dept 2001]; *Maheu v Long Island R.R., 244 AD2d 465* [2d Dept 1997], *lv dismissed* 92 NY2d 845 [1998]; *Ogdensburg Bldg. Supply, Inc. v Lumber Mut. Ins. Co., 102 AD2d 960* [3d Dept 1984]).***4

Plaintiffs also advance new arguments in support of their motion for reargument. For example, plaintiffs now contend, for the first time, citing Insurance Regulation 107 (11 NYCRR 71.2) that, even if the binder was replaced by the National Union insurance policy, the policy contains no language permitting the limit of liability to be reduced by legal or claims expenses incurred in the *Emmons* action. Plaintiffs also argue, for the first time, that their losses are covered by the binder, because the binder was in effect at the time of loss. These arguments, however, are completely devoid of merit, as a motion for reargument is not a vehicle for parties to "advance arguments different from those tendered on the original application" and "may not be employed as a device for the unsuccessful party to assume a different position inconsistent with that taken on the original motion" (*Foley v Roche, 68 AD2d at 568*; *see also* CPLR 2221 [d]; *DeSoignies v Cornasesk House Tenants' Corp., 21 AD3d 715* [1st Dept 2005]; *85-10 34th Avenue Apartment Corp. v Nationwide Mut. Ins. Co., 283 AD2d 604* [2d Dept 2001]). Moreover, plaintiffs offer no reasons why these arguments were not raised in their original motion papers (*see Hua Nan Commercial Bank, Ltd. v Albicocco, 270 AD2d 265* [2d Dept 2000]).

Plaintiffs' motion for leave to file an amended complaint is also denied. The CPLR does not allow amendment of a complaint that has already been dismissed with prejudice. I granted defendants' motion to dismiss, and ordered the Clerk to enter judgment against plaintiffs. The dismissal was therefore with prejudice. A final judgment was entered on February 16, 2005, and plaintiffs have filed a notice of appeal from that judgment. Plaintiffs do not cite any legal authority that would allow the filing of an amended complaint under these circumstances.

Finally, AIG's request for sanctions is denied. It would be procedurally improper to grant AIG's request, as AIG failed to include this request for relief in a notice of cross motion (*see* CPLR 2214 [a]; *Arriaga v Michael Laub Co., 233 AD2d 244* [1st Dept 1996] [as plaintiffs failed to formally and specifically demand in notice of motion that counterclaims be stricken, the trial court did not err in denying such relief]). In any event, AIG has not demonstrated that plaintiffs' arguments completely lack merit, and, as such, the imposition of costs and fees is not appropriate (*see Grossman v Pendant Realty Corp., 221 AD2d 240* [1st Dept 1995], *lv dismissed* 88 NY2d 919 [1996]).

*AIG and Aon's Motions to Dismiss the Fraud Action*

Plaintiffs commenced the Fraud Action by filing a Summons with Notice on March 23, 2005. The original Summons with Notice stated that "the nature of this action and relief sought is to recover damages for breach of contract" (Aff. of Jeffrey Imeri, Exh A). On March 31, 2005, plaintiffs then filed an Amended Summons With Notice which stated that "the nature of this action and the relief sought is to recover damages for fraud" (Imeri Aff., Exh B). No specifics of the alleged "contract" or the alleged "fraud" were identified in either of plaintiffs' original or amended summons. On June 17, 2005, plaintiffs served their original complaint. On July 25, 2005, AIG served a motion to dismiss the original complaint [FN2]. On the same date, plaintiffs served an amended complaint that added a cause of action for "equitable estoppel" against AIG. The amended complaint seeks damages against all defendants in the amount of $7,535,605.85, along with interest ***5 and punitive damages.

Plaintiffs allege that Aon, as an insurance broker, entered into an agreement with NAVL whereby Aon was to procure "loss portfolio transfer insurance" for NAVL (Amended Complaint, ¶ 23). Count I of the amended complaint charges Aon

Case 1:07-cv-06395-SHS   Document 32-64   Filed 01/04/2008   Page 6 of 11

2006 N.Y. Slip Op. 50576(u)                                                                                              Page 5
11 Misc.3d 1076(A), 819 N.Y.S.2d 849, 2006 WL 908653 (N.Y.Sup.), 2006 N.Y. Slip Op. 50576(U) (Table)
**Unreported Disposition**
(Cite as: 819 N.Y.S.2d 849, 2006 WL 908653, 2006 N.Y. Slip Op. 50576(U))

with "fraud" in connection with the alleged misstatements identified in paragraph 78 of the amended complaint. Paragraph 78 first alleges that Aon misrepresented that plaintiffs required $60 million in loss portfolio transfer insurance coverage for their pre-closing liabilities, when, in fact, plaintiffs required a lesser amount of insurance (*id.*, ¶ 78A). Second, plaintiffs allege that Aon misrepresented that the loss portfolio transfer insurance procured by Aon from National Union in March 1998 would provide "insurance against the *Emmons* judgment and its related expenses" (*id.*, ¶ 78B). Third, plaintiffs allege that Aon misrepresented that the National Union insurance would eliminate open-ended balance sheet accruals for pre-transaction torts, and replace them with a fixed-cost insurance product (*id.*, ¶ 78C). Fourth, plaintiffs allege that Aon misrepresented to plaintiffs that Aon had canvassed the marketplace before selecting National Union as underwriter for the coverage in March 1998 (*id.*, ¶ 78D).

Plaintiffs allege that they detrimentally relied on the foregoing alleged misrepresentations by "purchasing" the loss portfolio transfer insurance issued by National Union (*id.*, ¶ 81). According to the amended complaint, on March 28, 1998, Aon issued a binder "confirming the loss portfolio transfer coverage purchased by NAVL," and provided by AIG (*id.*, ¶ 35).

With respect to AIG, plaintiffs allege that AIG insured NAVL, and issued a "draft" insurance policy on March 23, 1999 (*id.*, ¶ 54). The basis for the fraud cause of action against AIG is that AIG purposefully "induced" NAVL to purchase "loss portfolio transfer insurance" (*id.*, ¶ 92) and "now refuse[s] to indemnify NAVL against the *Emmons* judgment liability and its related expenses" (*id.*, ¶ 94). The basis for the equitable estoppel cause of action is the contention that AIG should be "equitably estopped to deny that NAVL purchased complete loss portfolio transfer insurance coverage on March 28, 1998, indemnifying NAVL for all liabilities and expenses in connection with the *Emmons* case" (*id.*, ¶ 96).

In addition to the instant action, NAVL has sued one or more of the AIG defendants in two prior actions for recovery relating to the underlying *Emmons* action. In September 2002, TIG filed the Texas Coverage action, a declaratory judgment action against NAVL, National Union, and others. NAVL filed a cross claim against National Union, alleging breach of contract and bad faith. In January 2004, NAVL filed a notice of non-suit dismissing its cross claim against National Union.

After dismissing National Union from the Texas Coverage Action, NAVL again sued National Union, along with other AIG defendants, in this Court by bringing the Breach of Contract Action. The complaint in that action alleged a single cause of action for breach of contract against 15 defendants, and sought damages in the amount of $7,535,605.85, the exact sum sought by NAVL in the Fraud Action. The complaint in the Breach of Contract Action alleged that defendants "breached their respective contracts with NAVL ... by failing to procure the complete indemnification insurance coverage required and purchased by NAVL, and by refusing to indemnify NAVL ... against the judgment liability and its related expenses" with respect to the *Emmons* action (Breach of Contract Complaint, ¶ 72).

Both AIG and Aon filed motions to dismiss the complaint in the Breach of Contract ***6 Action. On December 8, 2004, I issued a memorandum decision that granted both motions. Plaintiffs then filed the Fraud Action, in which they now attempt to sue the same defendants on a claim for fraud for precisely the same damage amount $7,535,605.85 on the basis of largely identical allegations to those previously advanced as a basis for plaintiffs' prior action for breach of contract.

In support of their motions to dismiss the amended complaint, AIG and Aon contend, inter alia, that the Fraud Action is barred by both res judicata and the statute of limitations.

Defendants' motions to dismiss are granted, as plaintiffs are precluded by res judicata from at-

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Case 1:07-cv-06395-SHS   Document 32-64   Filed 01/04/2008   Page 7 of 11

2006 N.Y. Slip Op. 50576(u)                                                                                              Page 6
11 Misc.3d 1076(A), 819 N.Y.S.2d 849, 2006 WL 908653 (N.Y.Sup.), 2006 N.Y. Slip Op. 50576(U) (Table)
**Unreported Disposition**
(Cite as: 819 N.Y.S.2d 849, 2006 WL 908653, 2006 N.Y. Slip Op. 50576(U))

tempting to proceed on claims for fraud and equitable estoppel arising out of the same transaction involved in the prior Breach of Contract Action. "Under the doctrine of res judicata, a party may not litigate a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter" (*In re Hunter*, 4 NY3d 260, 269 [2005]; see also *Parker v Blauvelt Volunteer Fire Co.*, 93 NY2d 343, 347 [1999] [citations omitted] ["Under res judicata, or claim preclusion, a valid final judgment bars future actions between the same parties on the same cause of action"]). New York "has adopted the transactional analysis approach in deciding res judicata issues," and hence, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred even if based upon different theories or if seeking a different remedy" (*Brooklyn Welding Corp. v City of New York*, 198 AD2d 189, 189 [1st Dept 1993], *lv dismissed* 83 NY2d 795 [1994] [citations omitted]; see also *Fifty CPW Tenants Corp. v Epstein*, 16 AD3d 292 [1st Dept 2005]). This rule "applies not only to claims actually litigated but also to claims that could have been raised in the prior litigation" (*In re Hunter*, 4 NY3d at 269; see also *Marinelli Assoc. v Helmsley-Noyes Co.*, 265 AD2d 1 [1st Dept 2000]).

Furthermore, "a claim will be barred by the prior adjudication of a different claim arising out of the same factual grouping' even if the claims involve materially different elements of proof' and even if the claims would call for different measures of liability or different kinds of relief" (*Fifty CPW Tenants Corp. v Epstein*, 16 AD3d at 293 [citations omitted]; see e.g. *Fogel v Oelmann*, 7 AD3d 485, 486 [2d Dept 2004] [affirming dismissal of a claim on res judicata grounds, holding that "[a]lthough the instant action was based on different theories and sought different remedies, it was grounded on the same transaction or series of transactions as the prior action"]).

Plaintiffs' amended complaint in the Fraud Action seeks recovery for precisely the same transaction and the same damage amount involved in the prior Breach of Contract Action, from the same defendants. *Dorsey v Medical Society of State of New York* (294 AD2d 129 [1st Dept 2002]) is directly on point. In that case, the Court dismissed a cause of action for fraud on res judicata grounds on the basis of a prior order of dismissal of a related breach of contract claim. The Court held that the application of res judicata "is not avoided by the circumstance that plaintiff now complains of fraud, whereas his prior complaint was for breach of contract, since both causes of action arise out of the same transaction and plaintiff had a full and fair opportunity to litigate his fraud claim in the prior action" (*id.* at 129-130 [citation omitted]). The amended complaint herein must be dismissed on res judicata grounds for the same reasons.

Generally, a set of facts is considered to constitute a single transaction for res judicata purposes "if the facts are closely related in time, space, motivation, or origin, such that treating them as a unit would be convenient for trial and would conform to the parties' expectations" (*Schwartzreich v E.P.C. Carting Co.*, 246 AD2d 439, 441 [1st Dept 1998], citing ***7*Smith v Russell Sage Coll.*, 54 NY2d 185, 192-193 [1981]). Here, plaintiffs' amended complaint, for the most part, copies the operative facts from their complaint in the prior Breach of Contract action, and pastes them into their amended complaint in the Fraud Action (*compare* Fraud Amended Complaint, ¶¶ 12- 77 *with* Breach of Contract Complaint, ¶¶ 36-71).

Thus, paragraph 26 of the amended complaint and paragraph 45 of the prior complaint both allege that Aon was to produce an insurance product intended by NAVL "to eliminate open-ended financial statement accruals on past and future insurance claims, and to replace those liabilities with a fixed-cost loss portfolio transfer product. Specifically, in purchasing this [] insurance coverage, it was intended that NAVL would have no further economic risk or exposure ... in the *Emmons* case" (Fraud Amended Complaint, ¶ 26; Breach of Contract Complaint, ¶ 45). Likewise, paragraphs 35 of the amended complaint and 50 of the prior complaint both allege the issuance of a binder by Aon and National Union in

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Case 1:07-cv-06395-SHS   Document 32-64   Filed 01/04/2008   Page 8 of 11

2006 N.Y. Slip Op. 50576(u)                                                                                           Page 7
11 Misc.3d 1076(A), 819 N.Y.S.2d 849, 2006 WL 908653 (N.Y.Sup.), 2006 N.Y. Slip Op. 50576(U) (Table)
**Unreported Disposition**
(Cite as: 819 N.Y.S.2d 849, 2006 WL 908653, 2006 N.Y. Slip Op. 50576(U))

March 1998: "Effective March 28, 1998, Aon issued its Binder No. 664504 to NAVL, confirming the [] coverage purchased by NAVL fully transferring all of NAVL's pre-closing liabilities, including the *Emmons* case" (Fraud Amended Complaint, ¶ 35; Breach of Contract Complaint, ¶ 59). Plaintiffs also allege in both actions that, after issuance of the March 1998 binder, the policy was not delivered to NAVL until March 23, 1999 (Fraud Amended Complaint, ¶ 54; Breach of Contract Complaint, ¶ 57),

Furthermore, both pleadings allege that, although AIG agreed to provide insurance coverage to NAVL for all of its "pre-closing liabilities," AIG "refused" to fully indemnify NAVL with respect to the underlying *Emmons* action (Fraud Amended Complaint, ¶¶ 36, 94; Breach of Contract Complaint, ¶¶ 50, 72). Both actions likewise allege that National Union notified plaintiffs by "letter dated September 28, 2001" that AIG and National Union were "taking the position that the [L]oss [P]ortfolio insurance purchased by NAVL from Defendants effective March 28, 1998, did not provide coverage that fully indemnified NAVL for all of its pre-closing liabilities and related costs, but instead that it was an []eroding[] policy, from which policy limit attorneys' fees and certain other legal costs are deducted" (Fraud Amended Complaint, ¶ 66; Breach of Contract Complaint, ¶ 63). Finally, both actions seek the same quantum of damages of $7,535,605.85, arising out of the same underlying judgment of liability in the *Emmons* action (Fraud Amended Complaint, ¶¶ 63, 77; Breach of Contract Complaint, ¶¶ 60, 71).

Therefore, as it is evident that the amended complaint in the Fraud Action is based upon the same transaction that formed the basis of the Breach of Contract complaint, the amended complaint must be dismissed on res judicata grounds (*see Brooklyn Welding Corp. v City of New York,* 198 AD2d 189, *supra; see also Santiago v Lalani,* 256 AD2d 397 [2d Dept 1998]).

Plaintiffs' opposition completely fails to address defendants' argument that the amended complaint must be dismissed on res judicata grounds. Thus, plaintiffs do not argue that the amended complaint arises out of a different transaction than the one that was the basis of its claim in the Breach of Contract action. In addition, plaintiffs do not contend that the fraud and equitable estoppel claims raised in this action could not have been raised in the Breach of Contract action. Since plaintiffs have failed to dispute that this action is based on the same transaction as the Breach of Contract action, plaintiffs cannot avoid dismissal under the doctrine of res judicata. As a result, plaintiffs are barred from attempting to resurrect their dismissed contract claims under the guise of a fraud and equitable estoppel action (*see e.g.* ***8*Fifty CPW Tenants Corp v Epstein,* 16 AD3d at 293 ["a claim will be barred by the prior adjudication of a different claim arising out of the same factual grouping'"]; *Evergreen Bank N.A. v Dashnaw,* 246 AD2d 814, 815 [3d Dept 1998] ["the doctrine of res judicata precludes second chance litigation"]).

Plaintiffs' amended complaint must also be dismissed for the separate and independent reason that it is barred by the statute of limitations. With respect to "an action based upon fraud," the "time within which the action must be commenced shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff ... discovered the fraud, or could with reasonable diligence have discovered it" (CPLR 213 [8]). A fraud claim alleging fraud in the inducement of the purchase of an insurance policy accrues on the date that the policy was purchased (*see Goldberg v Manufacturers Life Ins. Co.,* 242 AD2d 175 [1st Dept], *lv dismissed in part, lv denied in part* 92 NY2d 1000 [1998] [dismissing fraud claim based upon purchase of insurance policy on statute of limitations grounds, as fraud claim accrued on date when insurance policy was purchased; *see also Ply\*Gem of Laurel, Inc. v Lee,* 91 AD2d 513, 513 [1st Dept 1982] [with respect to "[a] cause of action for fraud in the inducement of a contract ... the commencement of the running of the Statute of Limitations ... accrues at the time of the execution of the contract"]).

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Case 1:07-cv-06395-SHS    Document 32-64    Filed 01/04/2008    Page 9 of 11

2006 N.Y. Slip Op. 50576(u)                                                                                      Page 8
11 Misc.3d 1076(A), 819 N.Y.S.2d 849, 2006 WL 908653 (N.Y.Sup.), 2006 N.Y. Slip Op. 50576(U) (Table)
**Unreported Disposition**
(Cite as: 819 N.Y.S.2d 849, 2006 WL 908653, 2006 N.Y. Slip Op. 50576(U))

Plaintiffs allege that their purchase of the National Union loss portfolio transfer insurance that forms the basis of their fraud claim occurred on March 28, 1998 (Amended Complaint, ¶¶ 35-38). As plaintiffs' complaint asserts that, in reliance on Aon's alleged misrepresentations, plaintiff agreed to purchase the National Union insurance policy on or before March 28, 1998 (*id.*, ¶ 81), the date on which the six-year statute of limitations accrued was March 28, 1998, which bars plaintiffs' fraud claim. Plaintiffs' fraud action was not commenced until March 2005, more than six years after it accrued, and is therefore untimely as a matter of law (*see Goldberg v Manufacturers Life Ins. Co.*, 242 AD2d 175, *supra*).

Plaintiff's fraud claim is also barred time-barred under the second prong of CPLR 213 (8), as plaintiffs acknowledge that they discovered the circumstances on which their fraud claim is based more than two years before instituting their fraud claim. The amended complaint alleges that NAVL discovered AIG's alleged fraud "[o]n September 28, 2001 ... when AIG's Peter Rasmussen for the first time advised NAVL that AIG/National Union was taking the position that NAVL's coverage was limited to $5,000,000 in the aggregate" (Amended Complaint, ¶ 92P; *see also* ¶ 66 ["on September 28, 2001 ... the AIG defendants and National Union ... for the first time notified NAVL ... that the Loss Portfolio insurance purchased by NAVL [on] March 28, 1998 did not provide coverage that fully indemnified NAVL"]). Thus, plaintiffs concede that they became aware of National Union's coverage position with respect to the subject claim on September 28, 2001. Plaintiffs failed to commence suit until 2005, more than 3ae years after learning of National Union's coverage position on September 28, 2001. Accordingly, the amended complaint must be dismissed pursuant to CPLR 213 (8).

NAVL does not dispute its concession in the amended complaint that it learned of defendants' alleged fraud on September 28, 2001. Instead, NAVL argues that coverage was not purchased or "executed" until March 23, 1999, when a "suspect policy" was sent to NAVL, and that, hence, its fraud cause of action did not accrue until that date (Pl Mem of Law, at 26). However, this argument is contrary to the amended complaint which alleges that, pursuant to the "express terms" of the written insurance binder "issued," dated and "effective March 28, 1998," AIG "agreed to ***9 assume NAVL's pre-closing liability both in the amount of $5,000,000 per accident and also for legal and claims expenses relating to losses that occurred during the buyout period, including the *Emmons* claims" (Amended Complaint, ¶¶ 35, 42). In addition, NAVL's own opposition papers state that the insurance binder "dated March 26, 2998 signed by AON and by AIG ... provid[ed] coverage for losses such as the *Emmons* cases in Texas" (Pl Mem of Law, at 3). NAVL cannot ignore these statements, and now contend that coverage was purchased and executed on March 23, 1999 simply to try to evade the application of the statute of limitations.

NAVL also tries to evade the statute of limitations by relying upon *Asheka Industries v Travelers Indem. Co.* (831 F Supp 74 [ED NY 1993]) a non-binding federal decision, for the proposition that where a plaintiff sustains an injury after the execution of a contract, a cause of action for fraud accrues only when the plaintiff suffers a loss. Moreover, with respect to a claim, like the one at issue here, that alleges fraud in the inducement relating to insurance coverage, the First Department, whose decisions are binding, has held that a fraud cause of action accrues on the date that the insurance contract was purchased or executed (*Goldberg v Manufacturers Life Ins. Co.* (242 AD2d 175, *supra*; *see also Ply*Gem of Laurel, Inc. v Lee*, 91 AD2d 513, *supra*).

NAVL also offers the excuse that "[h]ad the evidence to support the Amended Complaint's allegations of fraud been known earlier to these Plaintiffs (but for AON's non-compliance with the Texas subpoenae), an earlier motion for leave to amend would have been presented" (Pl Mem of Law, at 28). However, NAVL does not articulate what specific evidence was not previously known to it, the date when that evidence was allegedly discovered, or how the "Texas subpoenae" have anything to do

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

2006 N.Y. Slip Op. 50576(u) Page 9
11 Misc.3d 1076(A), 819 N.Y.S.2d 849, 2006 WL 908653 (N.Y.Sup.), 2006 N.Y. Slip Op. 50576(U) (Table)
**Unreported Disposition**
(Cite as: 819 N.Y.S.2d 849, 2006 WL 908653, 2006 N.Y. Slip Op. 50576(U))

with its fraud claim. In any event, NAVL's contention that it was unaware of the AIG defendants' fraud until recently is belied by its allegations in the amended complaint that NAVL learned of the AIG defendants' fraud "on September 28, 2001 [when] AIG's Peter Rasmussen for the first time advised NAVL that AIG/National Union was taking the position that NAVL's coverage was limited to $5,000,000.00 in the aggregate" (Amended Complaint, ¶ 92P).

Plaintiffs' equitable estoppel claim is also barred by the statute of limitations. Because the fraud cause of action would have afforded plaintiffs full and complete relief (see Amended Complaint, ¶ 104 [seeking same amount of damages for equitable estoppel claims as for fraud claim]), plaintiffs' cause of action for equitable estoppel is merely incidental to the fraud cause of action. As such, the six-year statute of limitations for fraud is also applicable to plaintiffs' causes of action for equitable estoppel (see Mohan v Hollander, 303 AD2d 473 [2d Dept 2003]; Gold Sun Shipping Ltd. v Ionian Transport, Inc., 245 AD2d 420 [2d Dept 1997]).

Accordingly, the amended complaint in the Fraud Action is dismissed on the ground that is barred by both the doctrine of res judicata, and by the six-year statute of limitations for fraud set forth in CPLR 302 (8). Defendants' alternative motions for a stay of this action are denied as moot. AIG's motions for the imposition of sanctions, and for an order enjoining plaintiffs from filing any further actions in this Court against it relating to the *Emmons* action, are also denied. AIG has failed to present any concrete evidence that plaintiffs have proceeded in bad faith (see McGill v Parker, 179 AD2d 98 [1st Dept 1992]), and plaintiffs' arguments are not so blatantly meritless as to justify the imposition of costs and fees (see Grossman v Pendant Realty Corp., 221 AD2d 240, supra).

I have considered the remaining claims, and I find them to be without merit.

Accordingly, it is***10

ORDERED that in *North American Van Lines, et al. v American International Companies, et al.* (Index No. 600826/04), plaintiffs' motions for leave to reargue and to file an amended complaint are denied; and it is further

ORDERED that in *North American Van Lines, et al. v Aon Risk Services Companies, Inc.* (Index No. 601037/05), AIG's motion to dismiss (Motion Sequence No. 002) is granted, and the complaint is dismissed with costs and disbursements to AIG as taxed by the Clerk of the Court; and it is further

ORDERED that in *North American Van Lines, et al. v Aon Risk Services Companies, Inc.* (Index No. 601037/05), Aon's motion to dismiss (Motion Sequence No. 003) is granted, and the complaint is dismissed with costs and disbursements to Aon as taxed by the Clerk of the Court; and it is further

ORDERED that in *North American Van Lines, et al. v Aon Risk Services Companies, Inc.* (Index No. 601037/05) defendants' motions for a stay (Motion Sequence Nos. 002 and 003) are denied as moot; and it is further

ORDERED that in *North American Van Lines, et al. v Aon Risk Services Companies, Inc.* (Index No. 601037/05), AIG's motions for the imposition of sanctions, and for an order enjoining plaintiffs from filing any further actions in this Court against it relating to the *Emmons* action, are denied; and it is further

ORDERED that the Clerk is directed to enter judgment accordingly.

Dated: _____

ENTER:

_____
J.S.C.

FOOTNOTES

FN1. Although plaintiffs also move, in the order to show cause, for leave to renew, plaintiffs conceded, during oral argument, that they are solely moving for leave to

2006 N.Y. Slip Op. 50576(u) Page 10
11 Misc.3d 1076(A), 819 N.Y.S.2d 849, 2006 WL 908653 (N.Y.Sup.), 2006 N.Y. Slip Op. 50576(U) (Table)
**Unreported Disposition**
**(Cite as: 819 N.Y.S.2d 849, 2006 WL 908653, 2006 N.Y. Slip Op. 50576(U))**

reargue.

FN2. To the extent that such motion (Motion Sequence No. 001) has not been formally withdrawn, I deny it as moot, given that AIG is now moving to dismiss the amended complaint.

Copr. (c) 2007, Secretary of State, State of New York.

N.Y.Sup. 2006.

North Am. Van Lines, Inc. v American Intl. Cos.

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.