# EXHIBIT 118



2002 N.Y. SLIP OP. 40550(U)
Not Reported in N.Y.S.2d, 2002 WL 31962630 (N.Y.Sup.), 2002 N.Y. Slip Op. 40550(U)
(Cite as: 2002 N.Y. Slip Op. 40550(U))

Page 1

**H**
This opinion is uncorrected and will not be published in the printed Official Reports.

Digest-Index Classification:

Limitation of Actions - Commencement of Action After Termination of Prior Action

*1 NORMAN E. ROTH, UNIVERSITY HILL REALTY, LTD., STAMPEDE LLC, STAMPEDE II, LLC., AND STAMPEDE III, LLC., Plaintiffs
v.
SYRACUSE HOUSING AUTHORITY, FREDERICK R. MURPHY, Individually and in his professional capacity as Director of Syracuse Housing Authority, TERRY KRESSER,
Individually and in his professional capacity as the Supervisor of Syracuse
Housing Authority's Section 8 Program, and VITO SCISCIOLI, Individually and in
his professional capacity as a member of the Board of Directors of the Syracuse
Housing Authority, Defendants
**Index No. 2001-5404**

STATE OF NEW YORK SUPREME COURT
COUNTY OF ONONDAGA

July 17, 2002
APPEARANCES OF COUNSEL

HANCOCK & ESTABROOK ALAN J. PIERCE, ESQ. - For Plaintiffs

BOND, SCHOENECK & KING ROBERT KIRCHNER, ESQ. - For Defendants

OPINION OF THE COURT

The Defendant's counsel filed a Motion for Summary Judgment, dated September 21, 2001, seeking dismissal of the Plaintiffs' Complaint, dated August 20, 2001. Plaintiff opposed the Motion and filed a Cross-Motion, dated November 5, 2001, and amended November 6, 2001, seeking: 1) an Order granting Plaintiffs partial summary judgment on the First Cause of Action that Defendant SHA breached its HAP Contracts with *2 Plaintiffs; and 2) granting Plaintiffs leave to serve an Amended Complaint pursuant to CPLR 3025(b), if necessary. Both counsel appeared and submitted oral arguments with respect to the motions. In addition, the Court has reviewed the Affirmation of Robert Kirchner, Esq., dated September 21, 2001; the Affidavit of Frederick R. Murphy, dated September 21, 2001; the Affidavit of Terry Kresser, dated September 21, 2001; the Affidavit of Vito Sciscioli, dated September 21, 2001; the Affidavit of Joy Loniewski, dated September 21, 2001; the Memorandum of Law In Support of the Motion for Summary Judgment by Defendants Syracuse Housing Authority, Frederick Murphy, Terry Kresser and Vito Sciscioli, dated September 24, 2001; Reply Memorandum of Law in Support of Defendants' Motion for Summary Judgment, dated November 15, 2001; and Defendants' Memorandum of Law in Opposition to Plaintiffs' Cross-Motion, dated November 21, 2001, as well as the Affidavit of Norman E. Roth, dated November 5, 2001; the Affidavit of Alan J. Pierce, Esq., dated November 5, 2001; Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment and in Support of Plaintiffs' Cross-Motion for Partial Summary Judgment for Breach of Contract and for Leave to Serve an Amended Complaint, If Necessary, dated November 5, 2001; and Reply Affidavit of Alan J. Pierce, Esq., dated November 16, 2001. Finally, the Court has considered the letter of Robert Kirchner, Esq., dated November 27, 2001 and the letter of Alan J. Pierce, Esq., dated December 3, 2001.

Plaintiff herein participated in Section 8 Housing Programs. The Section 8 Programs are federally funded programs whereby low-income families rent properties from private landlords, and a portion of their rent is paid to the landlord by the local *3 public housing agency that is authorized to run the Section 8 Programs in a particular location by the United States Department of Housing and Urban Development (HUD). Syracuse Housing Authority (SHA) is a public housing authority that is author-

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

2002 N.Y. SLIP OP. 40550(U)                                                                                           Page 2
Not Reported in N.Y.S.2d, 2002 WL 31962630 (N.Y.Sup.), 2002 N.Y. Slip Op. 40550(U)
**(Cite as: 2002 N.Y. Slip Op. 40550(U))**

ized by HUD to administer Section 8 Programs within the City of Syracuse.

If SHA approves an owner's application to participate in the Section 8 Program, SHA and the owner enter into a Housing Assistance Payments (HAP) contract whereby SHA agrees to pay the owner the amount of monthly assistance for which the Section 8 recipient qualifies in return for various promises by the owner pursuant to a HUD governed lease. In addition, the owner and the Section 8 recipient enter into a lease. HUD regulations in effect in 1997-1998 identify specifically enumerated conditions upon which a lease may be terminated, together with the narrow circumstances where SHA must disapprove an owner who applies for approval of Section 8 housing. HUD regulations also set forth the limited number of instances where, in its discretion, SHA may deny approval to lease a unit from an owner.

In 1996 and 1997, SHA received several complaints that some Section 8 tenants were engaging in conduct that was disturbing the rights of neighbors to peacefully enjoy their own properties; illegal drug activity and other criminal conduct; and/or permitting unauthorized individuals to reside with them - all in violation of lease provisions which are mandated by federal law. SHA was also informed that the landlords were not making efforts to stop tenant's conduct and/or to enforce their leases. Mr. Roth and his companies were the landlords for some of the subject tenants. On September 25, 1997, SHA issued a letter suspending the potential future award of additional HAP contracts to Plaintiffs. *4 None of Plaintiffs' existing HAP contracts were affected and SHA continued to make payments on existing HAP contracts.

On October 30, 1997, in response to a complaint by Plaintiffs, HUD issued a letter to SHA requesting that SHA reinstate Plaintiffs' ability to apply for potential future award of additional HAP contracts. SHA complied with HUD's request.

On November 17, 1997, SHA advised Plaintiffs that SHA's investigation was continuing. On November 18, 2002, Mr. Roth's attorney wrote to SHA and stated "any future decisions on Mr. Roth's status are to be made by HUD and not by the Authority."

On February 5, 1998, SHA issued a letter to Mr. Roth again suspending Plaintiffs' potential ability to apply for future, additional HAP contracts. SHA explained that its decision was based on evidence it gathered which established not only that Roth had not screened tenants as required by his contracts, but that he had falsely represented to SHA that he had done so, with the purpose of influencing the outcome of SHA's investigation. None of Plaintiffs' existing HAP contracts were affected and payments continued thereafter. SHA has not commenced any legal proceedings against Plaintiffs.

Plaintiffs filed an administrative complaint with HUD's Fair Housing and Equal Opportunity Office on October 28, 1997, which was later amended on March 19, 1998. Plaintiffs alleged that SHA and/or Mr. Murphy suspended their right to enter into additional, new HAP contracts and over inspected their properties because Plaintiffs were the only landlord in the residential area of Syracuse University that was willing to rent to Section 8 tenants - who were predominantly minorities. In January, 1999, HUD issued a "Determination of No Reasonable Cause" to believe that SHA engaged in any *5 discriminatory housing practices. HUD's FHEO Office found that Plaintiffs' properties had been the subject of many hundreds of police calls, including over 200 calls to Plaintiffs' two family property known as 315/317 Greenwood Place. The FHEO Office also found that Mr. Roth has "been unresponsive to the needs of the community and is solely interested in collecting rent. Furthermore, both minorities and non-minorities interviewed expressed the feelings that race discrimination is not an issue . . ."

On June 2, 1998, Plaintiffs commenced an Article 78 proceeding against SHA seeking an Order vacating SHA's suspension and directing SHA to accept Plaintiffs future applications to enter into additional, new HAP contracts with new tenants. Plaintiffs

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Case 1:07-cv-06395-SHS    Document 32-65    Filed 01/04/2008    Page 4 of 13

2002 N.Y. SLIP OP. 40550(U)                                                                                     Page 3
Not Reported in N.Y.S.2d, 2002 WL 31962630 (N.Y.Sup.), 2002 N.Y. Slip Op. 40550(U)
(Cite as: 2002 N.Y. Slip Op. 40550(U))

contended that on October 30, 1997, HUD had barred SHA from suspending Plaintiffs without prior HUD approval. The Hon. Parker J. Stone held that owners were not required to screen prospective tenants in order to participate in the Section 8 Program, and granted Mr. Roth's petition in part by vacating SHA's determination not to approve any future Section 8 leases submitted by Roth or his companies. However, Justice Stone denied Plaintiffs' request that SHA be directed to accept Plaintiffs' requests for additional, new HAP contracts in recognition of the fact that Plaintiffs had no right to obtain more HAP contracts. Plaintiffs did not perfect their cross-appeal from the Order, and the Appellate Division, Fourth Department affirmed the Order.

On August 20, 1998, Plaintiffs served a Notice of Claim. At no time did Plaintiffs seek permission to file a late Notice of Claim for events that occurred prior to May 22, 1998. Moreover, at the General Municipal Law, Section 50-h hearing, Mr. Roth refused to answer any questions about the substance of Plaintiffs' tort claims and insisted he *6 would only testify about damages. Plaintiffs refused to reconsider their position and appear at a new date.

On April 15, 1999, Plaintiffs filed a lawsuit in the United States District Court of the Northern District of New York. Plaintiffs alleged federal claims under 42 U.S.C. Section 1983, the Fair Housing Act, and the Equal Protection Clause for selective enforcement. Plaintiffs also attempted to plead state law claims for tortious interference, prima facie tort and defamation. Plaintiffs argued that they had a right to additional, new HAP contracts and that the September 25, 1997 and February 5, 1998 decisions infringed on that right. Plaintiffs claimed that Defendants had acted toward them with animus and an intentional, bad faith and malicious desire to injure them; Defendants selectively treated them; and Defendants have a policy of "racial gerrymandering" that they seek to enforce against Plaintiffs.

On May 5, 2000, United States District Court Judge Norman A. Mordue granted summary judgment to all defendants. Judge Mordue held that: SHA's September 25, 1997 and February 5, 1998 suspensions did not impact Plaintiffs' existing HAP contracts; SHA has discretion to deny applications for HAP contracts and Plaintiffs' argument that the discretion was "narrowly circumscribed" is without merit; and Plaintiffs had no statutory, regulatory or contractual right to additional, new HAP contracts. Judge Mordue noted that the decision in the Article 78 proceeding did not impact SHA's discretion to refuse to do business with Plaintiffs.

In addition, Judge Mordue found that Plaintiffs were not selectively treated, and Defendants did not act intentionally, maliciously, in bad faith, or with animus toward *7 Plaintiffs.

Judge Mordue also determined that Plaintiffs failed to prove that: Defendants acted with racial animus toward any of Plaintiffs' past, present or prospective tenants; Defendants' policies or procedures have had a disparate impact on the ability of minority tenants to finding fair housing; and that Defendants had engaged in "racial gerrymandering".

On February 20, 2001, the Second Circuit issued a summary Order affirming substantially for the reasons set forth by Judge Mordue, and held that federal regulatory law "provides housing authorities with considerable discretion to determine which landlords may participate in Section 8 programs and states ' [n]othing in this rule is intended to give any owner any right to participate in the program'". The Second Circuit denied Plaintiffs motion for rehearing.

On August 20, 2001, Plaintiffs filed the pending complaint and attempted to serve Defendants. The factual allegations set forth in the instant complaint are identical to those which were set forth in Plaintiffs' Federal Court complaint and submissions entered in connection with the Summary Judgment Motion decided by Judge Mordue. In filing the pending Complaint, Plaintiffs seek relief based upon causes of action for: 1) breach of contract; 2) tortious interference with contractual relations; 3) tortious interference with prospective business relations; and 4) prima facie tort.

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Case 1:07-cv-06395-SHS   Document 32-65   Filed 01/04/2008   Page 5 of 13

2002 N.Y. SLIP OP. 40550(U)                                                                                    Page 4
Not Reported in N.Y.S.2d, 2002 WL 31962630 (N.Y.Sup.), 2002 N.Y. Slip Op. 40550(U)
(Cite as: 2002 N.Y. Slip Op. 40550(U))

**\*8 COLLATERAL ESTOPPEL**

Initially, Defendants argue that Plaintiffs are collaterally estopped from pursuing all of their claims against all of the Defendants. "Collateral estoppel, or issue preclusion, prevents a party from 'relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party,'. . ." Pinnacle Consultants, Ltd. v. Leucadia National Corp., 94 N.Y.2d 426, 431 (2000). Further, collateral estoppel "permits . . . the determination of an issue of fact or law raised in a subsequent action by reference to a previous judgment on a different cause of action in which the same issue was necessarily raised and decided. . ." Gramatan Home Investors Corp. v. Lopez, 46 N.Y.2d 481, 485 (1979). Collateral estoppel "applies if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action. . ." Parker v. Blauvelt Volunteer Fire Co., Inc., 93 N.Y.2d 343, 349 (1999). "Where . . . the parties in the State and Federal proceedings are identical and where the merits of the plaintiff's claims were decided by the Federal Court after the plaintiff was afforded a full and fair opportunity to litigate, collateral estoppel precludes relitigation of the claims . . ." Browning Avenue Realty Corp. V. Rubin, 207 A.D.2d 263, 266 (1st Dept., 1994); ap denied 85 N.Y.2d 804.

Defendants contend that all of the factual allegations contained in Plaintiffs' Complaint in this action are identical to the allegations made in Plaintiffs' Federal Court complaint and/or the affidavits submitted by Plaintiffs in opposition to Defendants' \*9 Federal Court motion to dismiss and/or for summary judgment. In support of this contention, Defendants have provided the Court with an uncontroverted chart detailing where each factual allegation appears in the pending Complaint and in the Plaintiffs' Federal Court complaint and affidavits. Defendants argue that, since Plaintiffs' Federal Court complaint alleged that the factual allegations were "Common to All Causes of Action" (See: Kirchner's Affirmation, dated September 21, 2001, Exhibit No. 7), Plaintiffs should be collaterally estopped because the District Court and Second Circuit necessarily considered and rejected each and every allegation.

In opposition, Plaintiffs submit that Defendants appear to concede that there is no identity of issue between the claims specifically addressed and rejected by the District Court and the Second Circuit and the four (4) causes of action asserted in this action. No breach of contract claim was ever asserted in Federal Court, and the District Court and the Second Circuit undeniably never addressed the merits of the tortious interference and prima facie tort causes of action that were asserted in both the Federal Court action and this Complaint. Finally, Plaintiffs argue that the Federal Court action concerned violations of Section 1983, the Equal Protection Clause and the Fair Housing Act, and the elements of those claims were never disputed between the parties.

The Court finds that, although they have alleged one different cause of action in the pending Complaint as compared to their Federal Court action, Plaintiffs have asserted the same factual allegations in this action as they did in the Federal Court action. Insofar as Judge Mordue treated Defendants' Motion in the Federal Court action as a Summary Judgment Motion, Plaintiffs were given an opportunity to, and in fact did submit \*10 substantial affidavits, documents and evidentiary proof in support of their claims. Moreover, a review of Judge Mordue's decision in the Federal Court action clearly reveals that he considered each and every one of Plaintiffs' submissions and arguments, and ultimately rejected their factual allegations.

The Court finds that, in granting summary judgment to Defendants, Judge Mordue necessarily decided issues which are common to the causes of action stated in the Federal Court action and which are alleged in the pending Complaint. The fact that a breach of contract claim was not asserted in the Federal Court action, and that the Federal Court did not address the merits of the tortious interference and prima facie tort claims is irrelevant insofar as

2002 N.Y. SLIP OP. 40550(U)                                                                                                  Page 5
Not Reported in N.Y.S.2d, 2002 WL 31962630 (N.Y.Sup.), 2002 N.Y. Slip Op. 40550(U)
**(Cite as: 2002 N.Y. Slip Op. 40550(U))**

Defendants have asserted collateral estoppel (issue preclusion) and not res judicata (claim preclusion). The Court finds, as is more fully discussed hereinafter with respect to each of Plaintiffs' pending causes of action, that Plaintiffs are collaterally estopped from relitigating in this action identical issues which were raised and decided in the Federal Court action, and therefore, the Complaint should be dismissed. Browning Ave. Realty Corp., supra.

RES JUDICATA CONCERNING CLAIMS FOR LOST INCOME

As noted above, the Federal Court has previously determined that Plaintiffs had no property or contractual right to continued participation in the Section 8 Program. In addition, Plaintiffs have clearly admitted that their existing Section 8 contracts were not affected by the suspensions entered by SHA. As such, whether or not Plaintiffs suffered a *11 loss of income as a result of their inability to participate in the Section 8 Program for a limited time period does not constitute an actionable claim. Even if it were, however, same would be barred in this action by the doctrine of res judicata because Plaintiffs could have sought damages for loss of income as incidental relief to their application to vacate the suspension and to require SHA to accept Plaintiffs' applications for additional, new HAP contracts. The Court finds that CPLR Section 7806 provided the Plaintiffs with the authority to seek damages for loss of income suffered as a result of the suspension as "incidental relief" in the Article 78 proceeding. Having failed to do so, Plaintiffs are barred in the instant action from seeking such relief by the doctrine of res judicata. See: CPLR Section 7806; Parker v. Blauvelt Volunteer Fire Co., 93 N.Y.2d 343 (1999); Pauk v. Board of Trustees, 68 N.Y.2d 702 (1986).

BREACH OF CONTRACT

Plaintiffs' first cause of action asserts a claim against SHA for breach of contract. Defendants contend that the Complaint fails to identify which contracts between Plaintiffs and SHA were breached, or how they were breached. In opposition to Defendants' Motion, Plaintiffs allege that SHA breached each and every HAP Contract in existence between Plaintiffs and SHA between September 1997 and February 1998 by: 1) suspending Plaintiffs from further participation in the Section 8 Housing program in September 1997; 2) intentionally failing to list Plaintiffs' properties on SHA's public listing of available Section 8 properties from the time the September 1997 suspension*12 was vacated by HUD (October 30, 1997) until at least December 19, 1997; and 3) by suspending Plaintiffs from further participation in the Section 8 Housing Program in February 1998 in violation of applicable HUD regulations.

Plaintiffs argue that HUD's October 30, 1997 finding that the September suspension does not comply with the HAP Contract or HUD regulations constitutes a finding that SHA breached each and every HAP contract it had with Plaintiffs. Insofar as Justice Stone vacated the February 1998 suspension on the ground that it violated applicable HUD regulations, Plaintiffs argue that such a violation constitutes a breach of each and every HAP contract between Plaintiffs and SHA.

Further, Plaintiffs submit that the undisputed facts which were submitted in the Federal Court action only stated that none of Plaintiffs existing HAP contracts were affected and SHA continued to make payments on the existing HAP Contracts. Plaintiffs argue that there was no breach of contract claim in the Federal Court action and no stipulated statement of fact that the suspensions did not constitute a breach by SHA of existing HAP Contracts.

The Court finds that an element of Plaintiffs' 42 USC Section 1983 cause of action was their claim that their property rights were infringed upon. In order to establish the existence of a property right, Plaintiffs had to establish that they had a statutory, regulatory or contractual right to participate in Section 8 Programs. Judge Mordue expressly found, after focusing on the applicable statute, contract and regulation that purports to establish the benefit to Plaintiffs, that Plaintiffs had failed to establish that they have a cognizable property right or in-

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Case 1:07-cv-06395-SHS   Document 32-65   Filed 01/04/2008   Page 7 of 13

2002 N.Y. SLIP OP. 40550(U)                                                                                    Page 6
Not Reported in N.Y.S.2d, 2002 WL 31962630 (N.Y.Sup.), 2002 N.Y. Slip Op. 40550(U)
(Cite as: 2002 N.Y. Slip Op. 40550(U))

terest in continued participation in the Section *13 8 housing program. Insofar as Judge Mordue determined that Plaintiffs do not have a contractual right to participation in the Section 8 Programs, Plaintiffs are collaterally estopped from relitigating that issue in this action.

Moreover, the Second Circuit Court of Appeals recognized that 24 C.F.R. Section 982.306 expressly states that "[n]othing in this rule is intended to give any owner any right to participate in the [Section 8] program." As such, the Court of Appeals concurred with Judge Mordue and found that "plaintiffs did not show an entitlement to participate in such programs or a property interest sufficient to support their due process claims." See: Kirchner Affirmation, Exhibit No. 11.

Further, the Court has reviewed the HAP Contract submitted by Plaintiffs with respect to this Motion (Exhibit Nos. 4 and 5 attached to Roth Affidavit, dated November 5, 2001) and finds no provision therein which even addresses Plaintiffs participation in new or additional Section 8 Programs. Certainly, the subject HAP contracts do not set forth any rights on the part of Plaintiffs to participate in additional Section 8 Programs. Evidently, Justice Stone concurred with this analysis of the subject HAP Contracts when he refused, in the Article 78 proceeding, to order SHA to accept Plaintiffs' Section 8 applications.

Even more telling is Plaintiffs' admission in the Federal Court action that, after the September 1997 suspensions, "None of Plaintiffs existing HAP contracts were effected and SHA continued to make payments on the existing HAP contracts . . ." (Kirchner Affirmation, dated September 21, 2001, Exhibit No. 8, Page 3), and after the February 1998 suspensions, "Again, none of Plaintiffs' existing HAP contracts were *14 effected and payments continued thereafter . . ." (Kirchner Affirmation, Exhibit No. 8, Page 6). The Court is not impressed with Plaintiffs' game of semantics in arguing, at this late date, that the admission that the existing HAP Contracts were not affected did not mean that the Contracts were not breached.

Finally, the Court finds that Plaintiffs had no contractual right to advertise their properties and no breach of contract cause of action can be established based upon SHA's failure to list Plaintiffs properties from November to December 1997. Simply stated, the violations of HUD regulations which are alleged by Defendants, whether or not they occurred, do not constitute a breach of the existing HAP contracts between SHA and Plaintiffs.

TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

A party asserting a claim for tortious interference with contractual relations must establish the following elements: 1) the existence of a valid contract with a third party; 2) defendant's knowledge of the contract; 3) defendant's intentional inducement of the third party to breach the contract without justification; and 4) damages to plaintiff. Lama Holding Co. v. Smith Barney, Inc., 88 N.Y.2d 413 (1996). The Court finds that Plaintiffs have admitted that the suspensions issued by SHA in September 1997 and February 1998 did not affect any existing HAP contracts, and that SHA continued to make payments on the existing HAP contracts. See: Kirchner Affirmation, Exhibit No. 8, Paragraphs 8 and 24. Relitigation of these issues is barred by the doctrine of collateral estoppel. Therefore, *15 Plaintiffs have no basis to allege that the existing HAP contracts were interfered with in any way by SHA.

In addition, the Court notes that the Federal Court has previously determined, with collateral estoppel effect, that the Defendants herein were attempting to address a city-wide problem of troublesome renters and their laissez-faire out of possession landlords in the University area. The Federal Court expressly found that Plaintiff Roth was a primary example of this problem. See: Kirchner Affirmation, Exhibit No. 10, Pages 14-16. Moreover, the Federal Courts determined that SHA had broad discretion not to do business with Plaintiffs. See: Kirchner Affirmation, Exhibit No. 10 at Page 11 and Exhibit No. 11. Therefore, Plaintiffs cannot prove that Defendants intentionally induced a third party to breach the contract without justification.

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

2002 N.Y. SLIP OP. 40550(U)                                                                                           Page 7
Not Reported in N.Y.S.2d, 2002 WL 31962630 (N.Y.Sup.), 2002 N.Y. Slip Op. 40550(U)
**(Cite as: 2002 N.Y. Slip Op. 40550(U))**

Since Plaintiffs cannot prove each of the requisite elements, their cause of action for tortious interference with contractual relations must be dismissed.

TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

Again, Plaintiffs are barred herein by collateral estoppel from establishing that Defendants employed wrongful means to interfere with prospective Section 8 contracts. The State and Federal Courts have previously determined that Plaintiffs had no right to enter into additional, new HAP contracts with SHA, and that SHA had discretion not to enter into HAP contracts with Defendants. See: Kirchner Affirmation, Exhibits Nos. 4, 10 and 11. Insofar as Plaintiffs will be unable to establish that wrongful means were utilized, *16 a necessary element of their claim for tortious interference with prospective business relations, their cause of action in this regard must be dismissed.

PRIMA FACIE TORT

"The requisite elements of a cause of action for prima facie tort are (1) the intentional infliction of harm, (2) which results in special damages, (3) without any excuse or justification, (4) by an act or series of acts which would otherwise be lawful (Curiano v. Suozzi, 63 NY2d 113, 117; Burns Jackson Miller Summit & Spitzer v. Lindner, 59 NY2d 314, 332)." Freihofer v. Hearst Corp., 65 N.Y.2d 135, 142 (1985). See also: Jonas v. New York Cent. Mut. Fire Ins. Co., 244 A.D.2d 916 (4th Dept., 1997). In order to establish a prima facie tort, Plaintiffs must plead and prove that the "sole motive" for the Defendants' actions was "disinterested malevolence", that is, a malicious motive "unmixed with any other and exclusively directed to injure and damage another," Burns Jackson Miller Summit & Spitzer v. Lindner, 59 N.Y.2d 314, 333 (1983).

In their Federal Court action Plaintiffs alleged that Defendants had denied them equal protection under the Constitution by engaging in "discriminatory enforcement" of the laws. Judge Mordue determined that, in order to sustain a claim for selective enforcement,

a plaintiff must present sufficient evidence for a reasonable inference to be drawn that 1) compared with others similarly situated, plaintiff was selectively treated; and 2) that such selective treatment was based on impermissible considerations *17 such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure plaintiff. [LeClair v. Saunders, 627 F.2d 606] at 609.

See: Kirchner Affirmation, Exhibit No. 10 at Page 13.

In the Federal Court action, Plaintiffs alleged that Defendants acted intentionally with bad faith and with the knowledge of the deleterious effect they would have on Plaintiffs' rental income and business reputations. Judge Mordue found, however, that

[t]he record is replete ... with documents which indicate that the cycle of this litigation began when neighborhood groups complained to elected officials about troublesome Section 8 tenants who were disrupting quiet residential communities. ... SHA and the City began working together to devise strategies to combat the problem and either force landlords to screen prospective tenants or eliminate problem landlords from the Section 8 program. These strategies resulted in greater scrutiny of plaintiffs' management practices and eventual denial of plaintiffs' participation in the housing program.

See: Kirchner Affirmation, Exhibit No. 10 at Page 14. In reviewing the evidence presented, Judge Mordue found that Plaintiffs had failed to prove that Defendants had engaged in race discrimination. See: Kirchner Affirmation, Exhibit No. 10, at Page 20.

Clearly, Judge Mordue rejected Plaintiffs' contention that Defendants acted intentionally, maliciously and with bad faith or animus toward Plaintiffs. Nor did Judge Mordue find that Defendants acted with the sole motive of disinterested

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Case 1:07-cv-06395-SHS   Document 32-65   Filed 01/04/2008   Page 9 of 13

2002 N.Y. SLIP OP. 40550(U)                                                                    Page 8
Not Reported in N.Y.S.2d, 2002 WL 31962630 (N.Y.Sup.), 2002 N.Y. Slip Op. 40550(U)
(Cite as: 2002 N.Y. Slip Op. 40550(U))

malevolence. See: Kirchner Affirmation, Exhibit No. 10. Plaintiffs had a full and fair opportunity to, *18 and in fact, submitted substantial evidence in support of their claims in the Federal Court action. As such, Plaintiffs are collaterally estopped from relitigating those issues in this proceeding.

Consequently, Plaintiffs are unable to prove an essential element of the cause of action for prima facie tort - a solely malicious motive. Moreover, prima facie tort may not be used "to sustain a pleading which otherwise fails to state a cause of action in conventional tort" Freihofer v. Hearst Corp., 65 N.Y.2d at 143. Therefore, Plaintiffs' claim in this regard must be dismissed.

FAILURE TO COMPLY WITH GENERAL MUNICIPAL LAW SECTION 50-e

General Municipal Law, Section 50-e provides, in pertinent part that

In any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action or special proceeding against a public corporation, . . . or any officer, appointee or employee thereof, the notice of claim shall comply with and be served in accordance with the provisions of this section within ninety days after the claim arises;. . .

Plaintiffs allege tort causes of action based upon tortious interference with contractual relations, tortious interference with prospective business relations and prima facie tort. SHA is a public corporation and Mr. Murphy, Mr. Kresser and Mr. Sciscioli are executive director, employee and board member of SHA, respectively. See: *19 Public Housing Law, Section 3(2); Affidavit of Frederick R. Murphy, dated September 21, 2001; Affidavit of Terry Kresser, dated September 21, 2001; and Affidavit of Vito Sciscioli, dated September 21, 2001. Moreover, SHA has exercised its authority and agreed to indemnify its directors, officers and employees. See: Public Housing Law, Section 3(2); Public Officers Law, Section 18; and Murphy, Kresser and Sciscioli Affidavits.

Consequently, a tort-based claim may not be brought against SHA, Mr. Murphy, Mr. Kresser or Mr. Sciscioli unless a Notice of Claim is served within 90 days of the subject incident. Although the courts may grant a motion to file a late Notice of Claim, such a motion must be made within one year and 90 days of the incident in question or it will not be considered. Pierson v. City of New York, 56 N.Y.2d 950, 955-956 (1982); Augustyn v. County of Wyoming, 275 A.D.2d 1003 (4th Dept., 2000); Chimera v. New York State Dormitory Authority, 273 A.D.2d 802 (4th Dept., 2000).

Plaintiffs herein served a Notice of Claim on August 20, 1998, and never sought permission to file a late Notice of Claim. Therefore, Plaintiffs' tort-based claims concerning actions by SHA, Mr. Murphy, Mr. Kresser and/or Mr. Sciscioli which occurred prior to May 22, 1998 are time barred.

Plaintiffs argue that they were suspended from participation in the Section 8 Housing Program on February 5, 1998, and that the suspension continued until the automatic stay was lifted when the Article 78 proceeding was completed in State Court in or about June 2000. Plaintiffs submit that their suspension from February 1998 to June 2000 constitutes a continuing tort and any Notice of Claim served within that time period, or within 90 days after the automatic stay terminated, constitutes a timely Notice of Claim *20 with respect to the February 1998 suspension.

When a governmental entity either allegedly wrongfully refuses to issue a permit or certificate or allegedly improperly revokes a permit or certificate, there is no continuing tort even though damages continue to accrue due to the governmental entity's decision. See: Bloomfield Building Wreckers, Inc. v. City of Troy, 41 N.Y.2d 1102 (1977); Kaufman v. Village of Mamaroneck, 286 A.D.2d 666 (2nd Dept., 2001), ap denied 2002 N.Y. Lexis 1060 (May 2, 2002). The courts have held that "a distinction must be drawn 'between the originating wrongful act and the continuing, perhaps perpetual, adverse consequences of the act." Greco v. Incorporated Village of Freeport, 223 A.D.2d 674, 675 (2nd

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

2002 N.Y. SLIP OP. 40550(U)                                                                          Page 9
Not Reported in N.Y.S.2d, 2002 WL 31962630 (N.Y.Sup.), 2002 N.Y. Slip Op. 40550(U)
**(Cite as: 2002 N.Y. Slip Op. 40550(U))**

Dept., 1996) quoting Jenson v. General Electric Co., 82 N.Y.2d 77, 89 (1993). Accordingly, the Court finds that the Plaintiffs' suspensions from the Section 8 Program in September 1997 and in February 1998 did not constitute a continuing tort on either occasion.

Further, Plaintiffs argue that their suspension in February 1998 constitutes a continuing tort until June 2000 because Defendants were granted an automatic stay by virtue of their appeal of Justice Stone's Article 78 determination. In analyzing the same procedural posture of the case in Bloomfield, the Court of Appeals held that "Defendant's service of a notice of appeal in an article 78 proceeding effected a stay of 'all proceedings to enforce the judgment or order appealed from' therein (CPLR 5519, subd[a]), but in no way prevented plaintiff from filing a notice of claim against defendant." Bloomfield at Page 1103. This Court finds no additional facts in this record which would warrant a contrary result in the instant case.

*21 Finally, the Court is mindful that Plaintiffs did not oppose Defendants' arguments in this regard which were submitted in the context of the Federal Court action. Therefore, for the foregoing reasons, the Court finds that Plaintiffs tort-based causes of action against SHA and Messrs. Murphy, Kresser and Sciscioli, in their official capacities must be dismissed for failure to comply with General Municipal Law, Section 50-e.

FAILURE TO COMPLY WITH GENERAL MUNICIPAL LAW SECTION 50-h

General Municipal Law, Section 50-h provides, in pertinent part that "Wherever a notice of claim is filed against a city, . . . the city shall have the right to demand an examination of the claimant relative to the occurrence and extent of the injuries or damages for which claim is made, . . ." Plaintiffs do not dispute that Defendants were entitled to a 50-h hearing with respect to the Notice of Claim that was filed on August 20, 1998. Further, Plaintiffs admit that the questions propounded to Mr. Roth at the 50-h examination were not answered, but contend that Mr. Roth was only following the advice of his former (and now deceased) attorney.

The Court has reviewed the portion of the transcript of the 50-h hearing which was conducted on December 1, 1998 (Exhibit No. 5 to Kirchner Affirmation). Clearly, in refusing to answer questions about the alleged claims and the extent of injuries and/or damages, Plaintiffs failed to comply with General Municipal Law Section 50-h, and their complaint must be dismissed. Best v. City of New York, 97 A.D.2d 389 (1st Dept., 1983), aff'd on opinion below, 61 N.Y.2d 847 (1984); *22Hill v. New York City Transit Authority, 206 A.D.2d 969 (4th Dept., 1994).

The Court recognizes that the Defendants attempted to allow Plaintiffs to cure their failure, and indeed, warned Plaintiffs of the consequences of their failure to complete the examination. See: Exhibit No. 6 to Kirchner Affirmation. Plaintiffs' attempt to place the blame on their former, and now deceased, attorney is ill advised and does not excuse their failure to abide by the clear mandates of the statute. The Court further notes that, as with the issues concerning compliance with Section 50-e, the Plaintiffs did not oppose Defendants arguments concerning their failure to comply with Section 50-h during the course of the Federal Court proceedings. As such, for all of these reasons, the tort-based claims against SHA and Messrs. Murphy, Kresser and Sciscioli, in their official capacities, must be dismissed.

PERSONAL JURISDICTION OVER MR. MURPHY AND MR. KRESSER

Defendants submit that three steps must be taken in order to effect substitute service pursuant to CPLR Section 308(2). The second step, which is relevant to the action herein, is that a copy of the summons and complaint must be mailed to the person to be served in a plain envelope marked "personal and confidential." Defendants submit that "strict compliance with all the technical service dictates of CPLR 308(2) is required in order to obtain jurisdiction over the defendant," Olsen v. Haddad, 187

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

2002 N.Y. SLIP OP. 40550(U)  Page 10
Not Reported in N.Y.S.2d, 2002 WL 31962630 (N.Y.Sup.), 2002 N.Y. Slip Op. 40550(U)
**(Cite as: 2002 N.Y. Slip Op. 40550(U))**

A.D.2d 375, 376 (1st Dept., 1992); ap denied 81 N.Y.2d 707 (1993).

Plaintiffs do not dispute that the envelopes mailed to Defendants Murphy and *23 Kresser were not marked "personal and confidential." However, Plaintiffs argue that the omission constitutes a mere procedural irregularity and not a jurisdictional defect. Although there are apparently no Fourth Department Appellate Division cases on point, the Court finds, in accord with the First and Second Departments, that the omission of the legend "personal and confidential" on an envelope mailed in connection with service effected pursuant to CPLR Section 308(2) prevents the Court from exercising jurisdiction over Defendants Murphy and Kresser. See: Olsen, supra; Pesner v. Fried, 166 A.D.2d 512 (2nd Dept., 1990). Therefore, Plaintiffs' Complaint against Defendants Murphy and Kresser, individually and in their official capacities, must be dismissed.

TIMELINESS OF CLAIMS AGAINST MESSRS. MURPHY AND KRESSER

CPLR Section 205(a) provides that

If an action is timely commenced and is terminated in any other manner than by a voluntary discontinuance, a failure to obtain personal jurisdiction over the defendant, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff . . . may commence a new action upon the same transaction or occurrence or series of transactions or occurrences within six months after the termination provided that the new action would have been timely commenced at the time of commencement of the prior action and that service upon defendant is effected within such six-month period.

*24 When there has been an appeal in the first action, the date of termination is the date of the decision determining an appeal on the merits. Lehman Brothers, Inc. v. Hughes Hubbard & Reed, LLP, 92 N.Y.2d 1014, 1016 (1998). The date of termination is not extended by discretionary applications for rehearing, leave to appeal or certiorari. Lehman,

supra.

In the instant case, the Second Circuit issued and entered its Summary Order on February 20, 2001 (Exhibit No. 11 to Kirchner Affirmation). Although Plaintiffs thereafter applied for rehearing, pursuant to CPLR 205(a), the last day of the six month period to file a new action was August 20, 2001. Plaintiffs admit that the subject Complaint was filed with the County Clerk on August 20, 2001, and that a person of suitable age and discretion at Defendants' place of employment was served with a copy of the Complaint on that day. Plaintiffs argue that the filing of the Affidavit of Service of this substituted service was procedural and not jurisdictional in nature.

The Court finds, however, that CPLR Section 205(a) requires that service upon defendant be effected within six months after termination of the prior action. Moreover, CPLR Section 308(2) specifically mandates that "proof of such service shall be filed with the clerk of the court designated in the summons within twenty days of either such delivery or mailing, whichever is effected later; service shall be complete ten days after such filing; . . ." In the instant matter, actual delivery of the Summons and Complaint upon a person of suitable age and discretion was made by August 20, 2001. Purported proof of that service was filed with the County Clerk on August 20, 2001. See: Exhibit No. 12 of Kirchner Affirmation. A review of Exhibit No. 12 reveals that the Affidavit of Service on Mr. Murphy does not allege that a separate mailing was completed as is required by *25 CPLR Section 308(2), and the Affidavit of Service on Mr. Kresser is wholly devoid of any information as to how Mr. Kresser was served. Nevertheless, assuming, arguendo, that two copies of the Summons and Complaint were delivered to Joy Leniewski on August 20, 2001, and copies of same were mailed to Messrs. Murphy and Kresser in accordance with CPLR Section 308(2) on August 20, 2001, service on Defendants Murphy and Kresser was not complete by the very terms of CPLR Section 308(2) until August 30, 2001 (ten days after filing). Since service upon Defendants Murphy and Kresser was

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

2002 N.Y. SLIP OP. 40550(U)                                                                              Page 11
Not Reported in N.Y.S.2d, 2002 WL 31962630 (N.Y.Sup.), 2002 N.Y. Slip Op. 40550(U)
(Cite as: 2002 N.Y. Slip Op. 40550(U))

not complete until August 30, 2001, Plaintiffs Complaint against them must be dismissed for failure to comply with CPLR Section 205(a).

While the Court recognizes that the filing of an Affidavit of Service is generally a procedural act which has no effect upon jurisdiction, the Court finds that the specific language of CPLR 308(2) confers jurisdictional import upon the filing which is accomplished in connection with that section. Jurisdiction over a natural person is obtained when service is complete. Personal service is complete when a natural person is himself served. Substituted service is complete when: a) a person of suitable age and discretion is served; and b) a copy of the summons and complaint is mailed to the defendant; and c) upon the expiration of ten days after proof of such service has been filed. The Court agrees with Defendants that Business Corporations Law, Section 307 is analogous to CPLR Section 308(2) and that the principles set forth in Flannery v. General Motors Corp., 86 N.Y.2d 771 (1995) apply to the instant action. In analyzing the three part method of service provided in BCL Section 307 (which is similar to the provisions of CPLR Section 308(2)), the Court of Appeals opined that the failure to file proof of *26 service required by BCL Section 307 is a "jurisdictional [defect] and does not constitute a 'mere irregularit[y]' subject to cure," Flannery, supra at 773. Likewise in the instant case, the filing of proof of service is jurisdictional and service was not complete until August 30, 2001 - after the expiration of the applicable statute of limitations.

CLAIM AGAINST MR. SCISCIOLI INDIVIDUALLY

Upon a full and fair reading of the Complaint and submissions in this matter, and giving Plaintiffs every possible favorable inference, the Court finds that Plaintiffs have failed to state a cause of action against Defendant Sciscioli. Plaintiffs merely recite Defendant Sciscioli's presence at two meetings in 1997, in his capacity as an employee of the City of Syracuse. It is clear that the crux of Plaintiffs lawsuit lies in the decisions and actions of SHA, its directors, officers and employees. Plaintiffs make no allegation that Defendant Sciscioli, either individually or in his capacity as a board member of SHA, took any action, or failed to take any reasonably required action, which resulted in the decisions to suspend Plaintiffs from participation in the Section 8 Programs. Therefore, Plaintiffs Complaint as against Defendant Sciscioli must be dismissed.

CLAIM AGAINST MR. KRESSER INDIVIDUALLY

Plaintiffs allege that Defendant Kresser, as Director of SHA's Section 8 Program, ordered an inspection of 315/317 Greenwood Place nearly one year after the previous *27 inspection of the property. Further, Plaintiffs allege that Kresser was waiting to find out if Mr. Roth had cashed a subsidy check for a tenant who moved out. The undisputed evidence demonstrates that Mr. Murphy, and not Mr. Kresser ordered the inspection. See: Murphy Affidavit and Kresser Affidavit. Moreover, the Federal Court has previously held that SHA was required to make annual inspections, it had authority to make inspections at any other time it deemed necessary, and the inspection occurred almost one year after the prior inspection. See Exhibit No. 10 to Kirchner Affirmation at Pages 15-16.

In addition, Plaintiffs judicially admitted in the Federal Court Action that the inspection revealed peeling lead paint, a cockroach infestation, broken and clogged plumbing, missing and broken electrical plates, and a fire escape that was not working and was blocked by garbage and debris. See: Kirchner Affirmation, Exhibit No. 8 at Paragraph 51. Plaintiffs also judicially admitted that they corrected the violations without making any protest, and the structure was reinspected and passed. Given the foregoing, Plaintiffs have failed to state a cause of action against Defendant Kresser with respect to the ordered inspection.

Further, insofar as Mr. Roth never cashed the subject subsidy check, the fact that Mr. Kresser was waiting to see if Roth did cannot form the basis for any cause of action against Mr. Kresser.

Finally, giving Plaintiffs every fair inference to be

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

2002 N.Y. SLIP OP. 40550(U) Page 12
Not Reported in N.Y.S.2d, 2002 WL 31962630 (N.Y.Sup.), 2002 N.Y. Slip Op. 40550(U)
(Cite as: 2002 N.Y. Slip Op. 40550(U))

drawn from the Complaint and submissions in this matter, the Court finds no action or inaction on the part of Defendant Kresser which resulted in Plaintiffs' suspensions from the Section 8 programs. Therefore, Plaintiffs Complaint against Defendant Kresser must be dismissed.

*28 PLAINTIFFS' CROSS-MOTION

Given the Court's findings and determination concerning the issues raised in Defendants' Motion, the Court does not specifically address the particulars of Plaintiffs' Cross-Motion herein.

Based upon the foregoing, and after due deliberation, the Court finds that Defendants' Motion for Summary Judgment must be granted, and Plaintiffs' Cross-Motion for Partial Summary Judgment and Leave to Serve an Amended Complaint must be denied. Defendants' counsel shall submit to the Court a proposed Order in compliance with this Decision on notice to Plaintiffs' counsel.

Copr. (c) 2007, Secretary of State, State of New York.

NORMAN E. ROTH, UNIVERSITY HILL REALTY, LTD., STAMPEDE LLC, STAMPEDE II, LLC., AND STAMPEDE III, LLC., Plaintiffs v.

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.