UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANNE BRYANT,

PLAINTIFF,

-AGAINST-

AB DROITS AUDIOVISUELS, AB PRODUCTIONS, ET AL,

DEFENDANTS.

---

07-CV-6395 (SHS)(MHD)

**MEMORANDUM OF
LAW IN SUPPORT OF
MOTION TO DISMISS
UNDER FED. R. CIV. P.
§ 12(b)(6)**

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANTS
SUNBOW PRODUCTIONS, INC., SONY BMG MUSIC ENTERTAINMENT,
LOONLAND UK LTD., TV LOONLAND HOME ENTERTAINMENT LTD,
METRODOME GROUP P.L.C., SONY/ATV SONGS, INC., SONY/ATV TUNES, INC.,
AND RHINO ENTERAINMENT CO. TO DISMISS UNDER FED. R. CIV. P. § 12(b)(6)
ON GROUNDS OF RES JUDICATA AND COLLATERAL ESTOPPEL**

Gloria C. Phares
John C. Knapp
PATTERSON BELKNAP WEBB & TYLER LLP
Attorneys for Sunbow Productions, Inc.
1133 Avenue of the Americas
New York, New York 10036-6710
(212) 336-2000

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................................ 2

ARGUMENT ................................................................................................................................. 3

I.      RES JUDICATA BARS SUBSEQUENT ACTIONS ARISING
      FROM SAME "FACTS AND TRANSACTIONS" ................................................. 3

      A.     The State Court Dismissed the State Action on the Merits ........................... 3

             1.     Unjust Enrichment ................................................................................. 5

             2.     Breach of Contract and Accounting ....................................................... 7

             3.     Constructive Trust ............................................................................... 11

      B.     The Sunbow Defendants are Parties or Privies to Parties
             in the State Action .................................................................................... 12

      C.     The Claims in the Federal Complaint Were or Could Have
             Been Brought in the State Court Action .................................................. 16

             1.     "Related in time, space, origin, or motivation" ................................... 16

             2.     "Convenient Trial Unit" ...................................................................... 18

             3.     Parties' Expectations or Business Understanding or Usage ................. 18

II.     COLLATERAL ESTOPPEL BARS RELITIGATION OF ISSUES
     OF FACT DECIDED IN THE STATE ACTION ................................................ 19

      A.     The Issues in the State Action Are Identical to the Decisive
             Issues of the Federal Action and Were Necessarily Decided ...................... 21

      B.     Plaintiff Had a Full and Fair Opportunity to Litigate in the State
             Action All Issues Raised in the Federal Action ........................................... 23

CONCLUSION ............................................................................................................................ 25

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*ACLI Government Securities v. Rhoades,*
   963 F.2d 530 (2d Cir. 1992).........................................................................20

*Berlitz Sch. of Languages of America, Inc. v. Everest House,*
   619 F.2d 211 (2d Cir.1980)...........................................................................16

*Blonder-Tongue Laboratories, Inc. v. University of Ill. Foundation,*
   402 U.S. 313 (1971).......................................................................................20

*Bouchat v. Bon-Ton Department Stores, Inc.,*
   506 F.3d 315 (4th Cir. 2007) ...............................................................15, 23

*Bryant v. Sunbow,*
   Index Nos. 5192/00, 2821/02 (N.Y. Sup Ct., Rockland County, filed 2002)...............1

*Colon v. Coughlin,*
   58 F.3d 865 (2d Cir. 1995).............................................................................20

*In re Cross Media Marketing Corp.,*
   367 B.R. 435 (Bkrtcy. S.D.N.Y. 2007).........................................................4

*Ford Motor Credit Co. v New York City Police Department,*
   394 F. Supp. 2d 600 (S.D.N.Y. 2005), *aff'd,* 503 F.3d 186
   (2d. Cir. 2007).................................................................................................10

*Friscia v. Safeguard Insurance Co.,*
   57 Misc. 2d 759, 293 N.Y.S.2d 695 (N.Y. City Civ. Ct. 1968)....................8

*Gramatan Home Investors Corp. v. Lopez,*
   46 N.Y.2d 481, 386 N.E.2d 1328, 414 N.Y.S.2d 308 (1979)................13, 14

*Hernandez v. Goord,*
   312 F. Supp. 2d 537 (S.D.N.Y. 2004)............................................................3

*In re Hyman,*
   502 F.3d 61 (2d Cir. 2007)............................................................................20

*Interoceanica Corp. v. Sound Pilots, Inc.,*
   107 F.3d 86 (2d Cir. 1997)...............................................................16, 17, 19

*Johnson v. County of Nassau,*
   411 F. Supp. 2d 171 (E.D.N.Y. 2006) .........................................................24

# TABLE OF AUTHORITIES
(continued)

**PAGE**

*Johnson v. County of Nassau,*
    480 F. Supp. 2d 581 (E.D.N.Y. 2007) ........................................................20

*Johnson v. Watkins,*
    101 F.3d 792 (2d Cir. 1996)...........................................................................3

*Korea First Bank of N.Y. v. Noah Enterprises, Ltd.,*
    12 A.D.3d 321, 787 N.Y.S.2d 2 (1st Dep't 2004).......................................20

*LaSalle National Bank v. Ernst & Young LLP,*
    285 A.D.2d 101, 729 N.Y.S.2d 671 (1st Dep't 2001)..................................22

*Laramie Springtree Corp. v. Equity Residential Properties Trust,*
    38 A.D.3d 850, 832 N.Y.S.2d 672 (2d Dep't 2007).....................................23

*Mac Truong v. Tran Dinh Truong,*
    03 Civ. 3423, 2007 U.S. Dist. LEXIS 10973 (S.D.N.Y. Feb 5. 2007) ........24

*Marrese v. America Academy of Orthopaedic Surgeons,*
    470 U.S. 373 (1985).....................................................................................20

*Mengoni v. Lorelli,*
    Sept. 17, 2007 N.Y.L.J. 20 (col. 3) ...............................................................4

*Monahan v. New York City Department of Corrections,*
    214 F.3d 275 (2d Cir. 2000).............................................................3, 16, 18, 19

*NLRB v. United Technologies Corp.,*
    706 F.2d at 1260 ..........................................................................................16

*North Am. Van Lines, Inc. v. American Int'l Cos.,*
    2006 NY Slip Op 50576U, 7 (N.Y. Misc. 2006) .........................................18

*O'Brien v. City of Syracuse,*
    54 N.Y.2d 353, 445 N.Y.S.2d 687, 429 N.E.2d 1158 (1981)......................17

*Parklane Hosiery Co., Inc. v. Shore,*
    439 U.S. 322 (1979).....................................................................................20

*Pentagen Techs. International Ltd. v. United States,*
    01 Civ. 3087, 2002 U.S. Dist. LEXIS 5030 (S.D.N.Y. Mar. 26, 2002) .......25

*Pharr v. Evergreen Garden, Inc.,*
    123 Fed. Appx. 420, 423 (2d Cir. 2005)......................................................17

## TABLE OF AUTHORITIES
(continued)

*Pogor v. Cue Taxi Service, Inc.,*
  43 Misc. 2d 487, 251 N.Y.S.2d 635 (N.Y.City Civ. Ct.1964),
  *aff'd*, 45 Misc. 2d 933, 258 N.Y.S.2d 60 (1965).............................................................8

*Pretzel Time, Inc. v. Pretzel International, Inc.,*
  98 Civ. 1544, 1998 U.S. Dist. LEXIS 12309 (S.D.N.Y. Aug. 7, 1998) ........................5

*Roth v. Syracuse Hous. Auth.,*
  2002 NY Slip Op 40550U 10 (N.Y. Misc. 2002) ........................................................20

*Ryan v. New York Telegraph Co.,*
  62 N.Y.2d 494, 478 N.Y.S.2d 823, 467 N.E.2d 487 (1984)........................................24

*S.E.C. v. First Jersey Sec., Inc.,*
  101 F.3d 1450 (2d Cir. 1996).................................................................................16, 17

*Smith v. Russell Sage College,*
  54 N.Y.2d 185, 445 N.Y.S.2d 68, 429 N.E.2d 746 (1981)..........................................17

*Strange v. Montefiore Hospital & Medical Center,*
  59 N.Y.2d 737, 450 N.E.2d 235, 463 N.Y.S.2d 429 (1983)...........................................5

*In re Teltronics Services, Inc.,*
  762 F.2d 185 (2d Cir. 1985).........................................................................................13

*Tolley v. American Transit Insurance Co.,*
  638 F. Supp. 1191 (S.D.N.Y. 1986).................................................................13, 14, 15

*Vishipco Line v. Charles Schwab & Co.,*
  02 Civ. 7823, 2003 U.S. Dist. LEXIS 4082 (S.D.N.Y. Mar. 19, 2003) ......................20

*Waldman v. Village of Kiryas Joel,*
  207 F.3d 105 (2d Cir. 2000)....................................................................................17, 18

*Walter E. Heller & Co., Inc. v. Cox,*
  343 F. Supp. 519 (S.D.N.Y. 1972), *aff'd*, 486 F.2d 1398 (2d Cir. 1973) ...................13

*Watts v. Swiss Bank Corp.,*
  27 N.Y.2d 270, 265 N.E.2d 739, 317 N.Y.S.2d 315 (1970)........................................13

*Wilson v. City of New York,*
  04 CV 1906, 2005 U.S. Dist. LEXIS 34652 (E.D.N.Y. Sep. 28, 2005) ........................4

## TABLE OF AUTHORITIES
(continued)

**PAGE**

### MISCELLANEOUS

Restatement (Second) of Judgments § 24(b) ........................................................16, 17, 18

Restatement (Second) of Torts § 884 (1979)......................................................................23

Restatement, Judgments, §§ 81-90 ...................................................................................13

For the reasons stated below, defendants Sunbow Productions, Inc. ("Sunbow"),
Sony BMG Music Entertainment, Loonland UK Ltd., TV Loonland Home Entertainment Ltd.,
and Metrodome Group P.L.C., Sony/ATV Songs, Inc., Sony/ATV Tunes, Inc., and Rhino
Entertainment Co. ("Sunbow Defendants") move this Court for an Order dismissing this action
against all parties in its entirety and with prejudice pursuant to Rule 12(b)(6) of the Federal Rules
of Civil Procedure.

## PRELIMINARY STATEMENT

In this action Plaintiff claims that she is owed royalties from all exploitation of
music she composed decades ago for animated television shows produced by Sunbow based on
Hasbro Inc. toys ("TV Shows"). This is the identical claim she brought five years ago in a suit in
New York Supreme Court, Rockland County, before Justice Andrew J. O'Rourke, which was
fully litigated and decided against her in March 2007 after a bench trial. *Bryant v. Sunbow,*
Index Nos. 5192/00, 2821/02 (N.Y. Sup Ct., Rockland County, filed 2002) ("State Action").
Plaintiff claims that the non-Sunbow Defendants (including Hasbro, licensees and all
distributors) are also liable to her for the non-payment of royalties.

By her own admission, Plaintiff's right to any such royalties is governed
exclusively by her agreements with Sunbow, which she signed in the 1980s. Nevertheless,
although Plaintiff has long known of the many parties that have distributed the TV Shows, she
sued only Sunbow and spent the first four years of the State Action claiming she had never
worked pursuant to written agreements. Even when the state court held that the written
agreements governed all her relations with Sunbow, it still permitted Plaintiff to offer proof of
additional oral agreements. And when Plaintiff's own testimony revealed that there were no
such "additional" oral agreements, the state court then permitted Plaintiff to offer expert

testimony on the meaning of the written agreements to prove Plaintiff's late-adopted claim that the written agreements entitle her to royalties from the exercise of all uses of the music she composed for the TV Show.

After considering all the evidence, the state judge found on the merits that those agreements do not provide any such royalty rights, and Plaintiff never had the fiduciary relationship with Sunbow necessary to sustain her claim for a constructive trust. Because Plaintiff knew of (or should have known of) all causes of action against Sunbow in the State Action, and all the Sunbow Defendants are in privity with Sunbow, this entire action is barred by res judicata and should be dismissed. This case is also collaterally estopped because Plaintiff litigated fairly and completely in the State Action all the issues underlying the claims that she raises in this action—breach of contract, breach of fiduciary relationship, unjust enrichment, and an accounting—and the state court decided those issues on the merits against her.

## FACTUAL BACKGROUND

Plaintiff and Clifford ("Ford") Kinder formed a company, Kinder & Bryant Ltd., in 1983. Decl. ¶ 7.[1] Kinder & Bryant worked for Sunbow in the 1980s under work-for-hire agreements to write music for several animated television series based on Hasbro toys. Decl. ¶ 8. The work-for-hire agreements granted Kinder & Bryant industry-standard royalties from public performance of the TV Shows and additional limited royalties from certain additional uses of the music (but not from new uses of the TV Shows). Decl., ¶ 9. The TV Shows were broadcast on television and, beginning in the 1980s, they were distributed in the home video market in VHS format and later on DVDs.

---

[1]     The declaration of Gloria C. Phares is the only declaration supporting the Sunbow Defendant's motion. Throughout this memorandum of law, "Decl." refers to paragraphs of that declaration, and "Exh." refers to the exhibits to it.

In 2002, Plaintiff sued Sunbow (and others in a separate 2000 action), claiming monies from all exploitation of the music she had composed. Decl., ¶ 17. (The two actions were later consolidated. Decl., ¶ 22.) She settled with all defendants except Sunbow and Broadcast Music Inc. ("BMI"), and the case was tried to the state court in 2004 and 2006. The state court dismissed on the merits all the claims alleged in the Amended Complaint or advanced at any time during the case—unjust enrichment, constructive trust, breach of oral agreements, and breach of written agreements. A detailed narrative of the facts is set out in the supporting declaration of Gloria C. Phares.

## ARGUMENT

## I.    RES JUDICATA BARS SUBSEQUENT ACTIONS ARISING FROM SAME "FACTS AND TRANSACTIONS"

Under New York's res judicata doctrine,[2] a prior decision bars a subsequent claim if "1) the previous action involved an adjudication on the merits; 2) the previous action involved [parties to the prior action] or those in privity with them; and 3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 285 (2d Cir. 2000).

### A.    The State Court Dismissed the State Action on the Merits

Throughout the State Action, Plaintiff changed her theories of recovery seriatim as each one was undercut by facts or rejected by the state court. But every cause of action she brought—unjust enrichment, constructive trust, breach of contract, and accounting—was dismissed on the merits. Under New York law, a "judgment dismissing a cause of action after the close of the proponent's evidence is a dismissal on the merits unless it specifies otherwise."

---

[2]    New York law applies because "a federal court must afford a state court judgment 'the same preclusive effect as would be given to the judgment under the law of the state in which the judgment was rendered.'" *Hernandez v. Goord*, 312 F. Supp. 2d 537, 543 (S.D.N.Y. 2004) (citing *Johnson v. Watkins*, 101 F.3d 792, 794 (2d Cir. 1996)).

CPLR 5013. The state court's March 12, 2007 Decision and Order ("Final Order") was issued

on motions made by both Plaintiff and Sunbow pursuant to CPLR 4401 and 3212 at the

conclusion of Plaintiff's case. Decl., ¶¶ 115-127, Exh. 98.

The May 2007 Judgment ("Final Judgment") entered upon the Final Order states

that the action was dismissed "with prejudice." Decl., ¶ 132, Exh. 99. Plaintiff moved to vacate

the Final Judgment, claiming it should have been "without prejudice," and the state court denied

that motion "in all respects." Decl., ¶ 132-135, Exh. 103. This decision leaves no doubt that this

case was dismissed "on the merits and with prejudice." *Mengoni v. Lorelli*, Sept. 17, 2007

N.Y.L.J. 20 (col. 3) (NY Civ Ct, NY County, Aug 17, 2007) (copy attached as Exhibit 116).

Examination of the record shows that the state court intended that Plaintiff be able

to and allowed her to offer all evidence relevant to the claims in her complaint and to the new

claims she advanced later during the five years of the case. Decl., ¶¶ 33, 36, 69, 77, 93, 95-97,

124,and exhibits cited in them. The state court even permitted her, during the last days of trial,

to offer evidence on the merits of breach of written agreements with Sunbow (the agreements

that are the focus of this federal action) (*id.* at ¶¶ 97-99, 101, 104), even though the state court

had denied her motion to amend the complaint to allege that breach nearly a year earlier (*id.* at

73). Then in post-trial briefing Plaintiff sought to have the pleadings amended to conform to that

evidence. *Id.*, ¶¶ 116-120. Because all of Plaintiff's claims were litigated, the state court's

dismissal was on the merits. *See In re Cross Media Mktg. Corp.*, 367 B.R. 435, 452 (Bkrtcy.

S.D.N.Y. 2007) ("Any issues *actually tried by express or implied consent* at the hearing on the

merits must be treated in all respects as if they had been raised in the pleadings" (emphasis

added).). Where the record "reveals an intent to create a final ruling on the merits, with

preclusive effect," it is deemed a decision on the merits. *Wilson v. City of New York*, 04 CV

4

1906, 2005 U.S. Dist. LEXIS 34652 (E.D.N.Y. Sep. 28, 2005).  *See also Pretzel Time, Inc. v.*
*Pretzel Int'l, Inc.*, 98 Civ. 1544, 1998 U.S. Dist. LEXIS 12309 (S.D.N.Y. Aug. 7, 1998) (quoting
*Strange v. Montefiore Hospital & Medical Center*, 59 N.Y.2d 737, 739, 450 N.E.2d 235, 236,
463 N.Y.S.2d 429, 430 (1983).

### 1.    Unjust Enrichment

Plaintiff alleges here that the Sunbow Defendants "received substantial funds as
the international licensors/licensees and distributors/distributees" of the TV Shows and "[a]
portion of such funds constituted monies due and payable to plaintiff as royalty and license fees
for use of her musical compositions."  Complaint, ¶¶ 112-13.  Plaintiff used the claim of "unjust
enrichment" in the State Action to refer to her general belief that Sunbow owes her money, and
during the five-year litigation, she offered several (some contradictory) explanations of her
entitlement to money.  But for most of the trial, her claim that Sunbow was unjustly enriched
was based on her theory that Kinder & Bryant had worked with Sunbow pursuant to an oral
agreement that Sunbow had breached.

This oral-agreement theory emerged for the first time in response to Sunbow's
motion for summary judgment in fall 2003.  Rejecting the testimony she gave at her March 2003
deposition that she had always worked with Sunbow pursuant to written agreements (Decl.,
¶ 27), Plaintiff claimed that she had *never* signed any agreements with Sunbow and had *always*
worked with Sunbow pursuant to an oral working arrangement of unspecified terms (*id.* at ¶ 29).

Plaintiff vigorously resisted Sunbow's repeated attempts to show the state court
through several rounds of pleadings that Plaintiff's relationship with Sunbow was based on
written agreements (Decl., ¶¶ 29, 30-32), and she and her counsel persisted in this fiction through
several days of trial (Decl., ¶¶ 39-47; Exh. 3 at 24:11-13.).  Plaintiff's claim ultimately foundered
on Sunbow's discovery of two of its original signed work-for-hire agreements between Sunbow

and Kinder & Bryant signed by both Plaintiff and Kinder and related signed documents, including a signed version of the same Jem Agreement Plaintiff had sworn she had never signed (Decl., ¶¶ 29, 51-55; Exhs. 18; 58; 59; 61; and 32 at 6, ¶ 9). Immediately after the discovery of these agreements, Plaintiff claimed her signatures were forged, requiring the testimony of a forensic document expert who concluded "definitive[ly]" that Plaintiff's signatures on the various agreements. (Decl., ¶ 52; Exh. 9 at 54:18-59:12, 61:12-64:21, 72:18-23). Finally, in December 2005, Plaintiff admitted that Kinder & Bryant's working relationship with Sunbow was governed by written agreements of which the Jem agreement was a form (Exh. 70 at 5-6, ¶ 3 & n.3).

Having reviewed all this testimony, the state court ruled that it was "satisfied that there were written and valid contracts between Plaintiff and Defendant Sunbow" and that all of Plaintiff's relations with Sunbow were governed by written agreements in the form of the Jem Agreement. Decl., ¶ 69; Exh. 75 at 2. But, deferring to Plaintiff's claims that she had "other" oral agreements that were not superseded by the written agreements or their merger clauses, the state court overruled Sunbow's opposition and permitted Plaintiff the chance to prove these additional oral agreements. Decl., ¶¶ 69-77 and exhibits cited there; Exh. 80 (also attached to Exh. 82). Upon resumption of trial in December 2006, Plaintiff herself torpedoed her "oral agreement" theory in the first minutes when she admitted that any "working arrangements" or "oral agreements" she had with Sunbow had in fact been merged into the written agreements that governed her relationship with Sunbow. Decl., ¶ 82; Exh. 11 at 56:11-57:11.

After that testimony, Sunbow immediately moved under CPLR 4401 to dismiss the unjust enrichment and constructive trust claims in the Amended Complaint on the basis of this admission. Decl., ¶ 83; Exh. 11 at 57:12-19. The state court granted Sunbow's motion from

the bench (Decl. ¶¶ 86, 91; Exh. 11 at 69:22-70:2, 144:21-145:8 ("there are no oral agreements. The oral agreements got folded into [the written agreements"])) and confirmed that decision in the Final Judgment, finding that "[w]hile on the stand under cross-examination, Plaintiff admitted that there were no oral agreements, except as to the discussion of terms and conditions all of which became part of the later written agreements" Decl., ¶ 127; Exh. 98 at 6, 7.

### 2.    Breach of Contract and Accounting

Plaintiff alleges here that although the Jem Agreement "allowed Sunbow to exploit Plaintiff's Compositions for the mutual benefit of the parties...Sunbow has never fully and accurately and timely accounted to plaintiff or to her former company Kinder Bryant for the publishing revenues earned by it." Complaint, ¶¶ 85-86. Plaintiff similarly alleges that all Defendants have failed to "account for and remit[] the required payments to Plaintiff." Complaint, ¶ 92. These very same claims were dismissed in the State Action.

After dismissing all of the claims in the Amended Complaint during trial, the state judge asked Plaintiff's counsel what she still intended to prove, and he replied that she was proceeding on the written agreements. Exh. 11 at 57:21-61:18. In response to Sunbow's objection that Plaintiff's motion to amend had been denied, Plaintiff's counsel argued: "This agreement isn't a one-way street....I want this Court to apply the written agreement, the Jem agreement to all the compositions."

The state court then discussed at length with the parties whether Plaintiff was entitled to an accounting.[3] In response to a question from Sunbow's counsel, the state judge

---

[3]    From this point until the end of the case, the term "accounting" was used in a confused fashion to refer to (1) a remedy for Plaintiff's breach of contract claim, (2) an independent cause of action or a remedy for Plaintiff's constructive trust claim, and (3) the provision of the Jem Agreement that requires Plaintiff to make a "specific objection in writing" to all "royalties, statements and other accounts" within one year of the date they are rendered and provides her right to audit Sunbow's books and records. Decl. ¶¶ 96, 123, 124; Exh. 18 at 7, § 6(b).

said: "Well, I'll give you an example. Mr. Monaghan may want to put on some expert dealing with the right to have an accounting. I don't know," and he concluded by observing that "[T]he only question that I saw left was whether there was a cause of action *that either directly or indirectly* caused this Court to move now to say, okay, there has to be an accounting. And I'll listen to arguments tomorrow." Decl. ¶ 93, Exh. 11 at 144:21-145:8 (emphasis added).

The state judge devoted the next day's entire December 5, 2006 session to considering which of Plaintiff's witnesses were relevant to deciding whether there was an outstanding claim that might entitle her to an accounting. In the course of that discussion, Plaintiff's counsel admitted, "Sure, we're alleging breach of contract. We're alleging that [Sunbow] failed to account properly under that [contract]." Exh. 12 at 44:25-45:2. Finally, over Sunbow's objection that it was too late for plaintiff to amend her Complaint in the middle of trial, the state court agreed to hear testimony from Plaintiff's expert, David Berman, on the interpretation of the terms of the Jem Agreement. *Id.* at 42:18-20.

Again over Sunbow's objection (Exh. 13 at 4:2-13),[4] the state court devoted the entire next trial day, December 6, 2006, to the examination of Plaintiff's expert, David Berman. Plaintiff reproduced pages of the Jem Agreement on large poster boards so that they were visible to the witness and the state judge, and Mr. Berman was examined by Plaintiff, BMI, Sunbow, and the state judge himself regarding the meaning of §6(a) of the Jem Agreement relating to publishing (or songwriter) royalties, including mechanical licenses, synchronization licenses, sheet music, and new uses of the musical compositions that Kinder & Bryant wrote for Sunbow;

---

[4]    "The allowance of such testimony by the plaintiff, over the objection of defendant's counsel, in the exercise of the court's discretion, is treated by implication as a motion to amend the pleadings to conform to the proof adduced at the trial." *Pogor v. Cue Taxi Service, Inc.*, 43 Misc.2d 487, 488, 251 N.Y.S.2d 635, 637 (N.Y.City Civ. Ct.1964), *aff'd*, 45 Misc. 2d 933, 258 N.Y.S.2d 60 (1965); *see Friscia v. Safeguard Ins. Co.*, 57 Misc.2d 759, 760-761, 293 N.Y.S.2d 695, 698 (N.Y.City Civ.Ct. 1968) (court sua sponte amended complaint to allege cause of action conforming with the evidence and then dismissed the cause of action on the merits because evidence did not support allegations).

royalty reports, composers' contractual rights to challenge royalty reports, and issues related to Plaintiff's claims against BMI. Exh. 13 at 23:14-93:5. Mr. Berman also testified that he was unaware that during the negotiation of the Jem Agreement Plaintiff's counsel had sought to have the terms provide for royalty payments for home video distribution, but that Sunbow had refused this request as unacceptable. Decl., ¶ 105; Exh. 13 at 55:5-20.

At the end of Mr. Berman's testimony, Plaintiff's counsel again sought to put on additional witnesses, but the state judge noted that "what's left is whether or not Ms. Bryant is entitled, on this action, to go ahead with any accounting of any sort" (Exh. 13 at 96:23-97:1), and he concluded that the remaining witnesses were not relevant to that question.

At oral argument on December 11, 2006, Plaintiff's counsel noted that the case had "morphed" into a breach of contract case, and an accounting was needed to determine the payments that Mr. Berman testified were due under the contract. Exh. 14 at 6:5-6, 9:12-15. In response to Plaintiff's contention that she had not received the royalties she claimed she was owed under the Jem Agreement from the distribution of the TV Shows on DVD and other formats in the home video market, the state court responded, "Well you tried to get those DVD's and audiovisual put into the contract and it was rejected" *Id.* 16:6-14. "That letter [referring to the correspondence between Mr. Dobishinski, Kinder & Bryant's counsel, and Mr. Harris, Sunbow's counsel] shows that there were no audiovisual rights ever given to Ms. Bryant." *Id.* at 16:34-17:1; Exh. 56, 57. Realizing that there had been a great deal of briefing that he had not yet reviewed, the state judge reserved decision and said he would issue a written order.

In a cross-motion for judgment, Plaintiff asked to have the complaint "conformed to the evidence" to include breach of contract and accounting actions." Decl., ¶¶ 117-120. Plaintiff claimed that the state court had "accepted a written agreement, i.e., the June 1, 1985

9

JEM Agreement as the agreement that governed all relations between Sunbow and Plaintiff" and recounted the "extensive testimony" Plaintiff presented about "Sunbow's breach of the terms of the [Jem] agreement." Decl. ¶ 117-120.  Plaintiff implored the court to "consider all of the evidence before it" and "hold Sunbow accountable for the material breaches of the Jem Agreement." *Id.* at 129.  To accomplish that, Plaintiff sought "an accounting under the agreement to allow Plaintiff to determine the extent of Sunbow's willful violation of the terms of the Jem Agreement resulting in the loss of unknown and untold dollars that unjustly enriched Sunbow." *Id.*  The accompanying affidavit of another of Plaintiff's counsel stated that Plaintiff was "entitled to an accounting on either a contractual or equitable basis." Decl. 120; Exh. 89 at 9-10, ¶¶ 15.

These final trial proceedings and motion papers make plain that Plaintiff offered all of her evidence on her breach of contract claims and asked the state court to conform the pleadings to this evidence and rule in her favor.  From this record, it is also clear that the state court's March 12, 2007 Final Order decided Plaintiff's breach of contract claim on the merits and against her.  After admitting and considering Plaintiff's evidence in support of her breach-of-contract claim at trial and entertaining Plaintiff's motion "for an order conforming the pleadings to the proof and for an action for *an accounting based on contract law*, which was not included in the aforementioned amended complaint" (Decl. ¶ 128 & Exh. 98 at 3-4 (emphasis added)), the trial court concluded that "Plaintiff is not entitled to any equitable accounting having failed to prove a prima facie case against either Defendant" (*id.* at 8). *Compare with Ford Motor Credit Co. v New York City Police Dep't*, 394 F. Supp. 2d 600, 617 (S.D.N.Y. 2005), *aff'd*, 503 F.3d 186 (2d. Cir. 2007) (court did not "expressly rule[]" on issue where it merely "noted" the issue in "dictum").

Although the state court found no breach of the agreement, it concluded its decision by noting that "Plaintiff is entitled to whatever rights still exist in her agreement with defendants." Decl. ¶ 131, Exh. 98 at 8. As Sunbow itself argued in its final motion to dismiss (Decl., ¶ 116; Exh. 88 at 7-10), if Plaintiff has a good faith belief that her royalty payments have been improperly calculated, she can take the court's advice and exercise her contractual rights to challenge her royalty statements and audit Sunbow's books and records. What she is not entitled to do is claim that exercising those rights would be "futile" (Complaint, ¶ 104) and file in federal court the same claims and issues she litigated in the State Action.

### 3.    Constructive Trust

Plaintiff alleges that the Sunbow Defendants owed fiduciary duties to Plaintiff under various theories and breached those duties by failing to "remit monies due and payable as royalty and license fees for use of Plaintiff's compositions." Complaint ¶ 97. *See also id,* at ¶¶ 101, 103, 105, 108, 109. In the State Action, Plaintiff brought a constructive trust claim which required a showing of a fiduciary or trust relationship. Decl. ¶¶ 18-19; Exh. 24 at 8. Although Plaintiff claimed that she had such a relationship with Jules ("Joe") Bacal, a Sunbow principal, the state court rejected this claim in its decision on Sunbow's 2003 motion for summary judgment. It noted that she had "woefully failed to demonstrate that it is appropriate to pierce the corporate veil and find that Bacal's identity was one with his production company Sunbow, which of course otherwise had no confidential relationship to plaintiff. . . ." Decl. 33; Exh. 39 at 15-16. At trial, Plaintiff offered no testimony to support her theory. She testified that she and Kinder had discussed their *contractual* relationship with Bacal, and Bacal contributed some lyrics to their music, but she never offered any evidence to suggest that Kinder & Bryant had a fiduciary or trust relationship with Sunbow. Decl. ¶ 41; Exh. 3 at 76:12-20, 80:17-22; 100:2-17; 101:2-8; Exh. 4 at 182:14-21.

11

When Plaintiff finally admitted in December 2005 that Kinder & Bryant's working relationship was governed by written agreements of which the Jem agreement was a form (Exh. 70 at 5-6, ¶ 3 & n.3), she effectively abandoned this argument. But after the completion of trial in 2006, while the parties awaited the state court's final decision, Plaintiff was permitted to file a new motion seeking an order "Allowing this trial to proceed" and again sought to put in the record, if the trial were to proceed, the deposition testimony of Bacal, Kinder and Carole Weitzman, a Sunbow employee, to demonstrate a "special confidential relationship" or "fiduciary" relationship between Sunbow and Plaintiff. Decl., ¶ 123. By attaching those deposition transcripts to the affirmation of Plaintiff's counsel, Plaintiff presented the testimony that she believed was relevant to completing her case. On February 8, 2007, the state court advised that it would "consider the same" and that its decision on that motion "would be incorporated into the presently pending decision." *Id.* 124; Exh. 95 at 2.

In its final decision, the state court confirmed its December 4, 2006 dismissal from the bench on the constructive trust claim, observing that [s]ince [the beginning of this case], Plaintiff has failed to prove any confidential or fiduciary relationship between either Sunbow or BMI," a necessary predicate for a constructive trust. Decl., ¶¶ 114, 130-131; Exh. 14 at 13:7-14:5; Exh. 98 at 6, 7.

Because all of Plaintiff's claims were dismissed on the merits, the first element of res judicata is satisfied.

**B.    The Sunbow Defendants are
       Parties or Privies to Parties in the State Action**

In New York, a judgment binds not only the parties to the action but also "those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly coparties to a

12

prior action." *Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270, 277, 265 N.E.2d 739, 743, 317 N.Y.S.2d 315, 320 (1970) (citing Restatement, Judgments, §§ 81-90). Accordingly, a "major shareholder" of a party in the first action, *Walter E. Heller & Co., Inc. v. Cox*, 343 F. Supp. 519, 524 (S.D.N.Y. 1972), *aff'd,* 486 F.2d 1398 (2d Cir. 1973), an assignee of the rights in the first action, *Gramatan Home Investors Corp. v. Lopez*, 46 N.Y.2d 481, 486, 386 N.E.2d 1328, 1332, 414 N.Y.S.2d 308, 312 (1979), and an indemnitor of a party to the first action, *Tolley v. American Transit Ins. Co.*, 638 F. Supp. 1191, 1195 (S.D.N.Y. 1986), are all deemed to be in "privity" with a party to the first action.

Sunbow was a party to the State Action and is a defendant in this case. Because of their relations—whether as corporate affiliates, indemnitors, or as effective assignees of rights at issue in the State Action—all the other Sunbow Defendants are in privity with Sunbow and entitled to invoke the res judicata defense.

Sunbow owns the copyright in the TV Shows and all the works encompassed in them as works for hire. Sunbow is a wholly-owned subsidiary of TV Loonland A.G., and together they are the ultimate licensors of all worldwide exploitation of the rights in the TV Shows, including home video distribution. Decl., ¶¶ 13, 16. TVL Home Entertainment Ltd. is a wholly-owned subsidiary of TV Loonland A.G., and TV Loonland A.G. also owns 61.7% of Metrodome Group P.L.C., which is its exclusive distributor in the U.K. home video market. *Id.* at ¶ 16. By virtue of their corporate relationships with Sunbow, TV Loonland A.G., TVL Home Entertainment, Inc., and Metrodome Group are entitled to invoke the res judicata defense in this case. *See Walter E. Heller*, 343 F. Supp. at 524; *In re Teltronics Services, Inc.*, 762 F.2d 185, 191 (2d Cir. 1985). Loonland U.K. has no role in the distribution of the TV Shows. *Id.*

13

In 1999 and 2000, Sunbow Entertainment LLC, licensed to Rhino Entertainment Co. d/b/a Rhino Home Video the rights to distribute the TV Shows exclusively in the United States home video market. Decl., ¶ 13 at ¶ 15; Exh. 22. Sony Music Entertainment, Inc. ("SMEI") sold Sunbow to TV Loonland A.G. on December 2000. On the same day, Sunbow and TV Loonland A.G. granted back to SMEI a royalty-free license under which SMEI controlled the rights in the TV Shows, including home video rights, in the United States and Canada in perpetuity. Decl., ¶ 13; Exh. 21. Although structured as an exclusive license, the terms of the license and its duration made SMEI the effective assignee of rights in the TV Shows in those territories. *Id.*

When SMEI sold Sunbow Productions, Inc. to TV Loonland AG (100% stock purchase), it agreed to indemnify and provide a defense for Sunbow for any claim made against Sunbow within a specified period. Decl., ¶ 13. Because the State Action was filed within that period, SMEI under its indemnification agreement controlled that litigation on Sunbow's behalf. *Id.* In mid-2005, the Sony BMG joint venture was created, and it became the successor to the recorded music business of SMEI, which includes the U.S. licensing distribution of the TV Shows in the U.S. and the U.S. licensing of the music in them. Decl., ¶ 14. Thus Sony BMG is also now the effective assignee of the rights at issue in the State Action and in 2005 became Sunbow's indemnitor in the State Action. Both as an indemnitor of Sunbow and exclusive licensee of the U.S. rights in the TV Shows, Sony BMG is entitled to invoke the res judicata defense. *Tolley*, 638 F. Supp. at 1195; *Gramatan Home Investors Corp.*, 46 N.Y.2d at 486, 386 N.E.2d at 1332, 414 N.Y.S.2d at 312.

Finally, those entities that have secured indemnities of copyright ownership and intellectual property rights that flow from Sunbow's acquisition of rights from creators such as

14

Plaintiff are also privies for purposes of res judicata. In 1996, Sunbow (and its publishing companies) authorized Sony/ATV Songs, LLC and Sony/ATV Tunes, LLC (together "Sony/ATV") to administer the publishing interests in the music from the TV shows, and it continues to do so in the United States. Decl. ¶ 12; Exh. 20. The Sony/ATV music administration license includes warranties and indemnities relating to ownership of the copyright in the TV Shows. Similarly, when Sony BMG succeeded to SMEI's recorded music business, Rhino Entertainment, formerly SMEI's licensee, became Sony BMG's licensee. The Rhino License includes appropriate warranties and indemnities from Sunbow. Exh. 21. Indeed, each sale of Sunbow Productions, Inc., and each license of exclusive rights in the TV Shows (which includes the Rhino licenses (Exh. 21) and all other distribution licenses for the home video market) included warranties and indemnities. Accordingly Sony/ATV and Rhino Entertainment may invoke the res judicata defense.

Because of the nature of intellectual property licenses, which invariably include standard intellectual property warranties, Sunbow's defense in the State Action against Plaintiff's contract claims (and earlier claims of copyright ownership) necessarily affected *all* the licensees and indemnitees in the chain beginning with Sunbow, including all the Sunbow Defendants (and their licensees). See *Tolley*, 638 F. Supp. at 1195. In that sense, Sunbow virtually represented all "downstream" licensees. Because "virtual representation" is a recognized category of privity, all the Sunbow Defendants are in privity with Sunbow for preclusive purposes. *See Bouchat v. Bon-Ton Dep't Stores, Inc.*, 506 F.3d 315, 327 (4th Cir. 2007) (in a copyright case by an artist against the NFL and its many licensees of the Baltimore Ravens logo, "the Raven and NFLP virtually represented the licensees" who thus "were in privity with the Ravens and NFLP").

15

Thus, all the Sunbow Defendants qualify as privies of Sunbow and may take advantage of the res judicata effect of the final judgment in the State Action.

**C.    The Claims in the Federal Complaint Were or Could Have Been Brought in the State Court Action**

The final element necessary for res judicata to bar an action is satisfied where "the same evidence is needed to support both claims, and . . . the facts essential to the second were present in the first." *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1464 (2d Cir. 1996) (quoting *NLRB v. United Technologies Corp.*, 706 F.2d at 1260). In making this determination, a court looks to (1) whether the underlying facts are "related in time, space, origin, or motivation," (2) "whether they form a convenient trial unit," and (3) "whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 90 (2d Cir. 1997) (citing Restatement (Second) of Judgments § 24(b)).

The determining factor is the identity of facts, not the identity of the causes of action. *Berlitz Sch. of Languages of Am., Inc. v. Everest House*, 619 F.2d 211, 215 (2d Cir.1980). If the essential facts underlying both actions arise from the same transaction or series of transactions, claims asserted in the subsequent action are barred if they "were, or could have been, raised in the prior action." *Monahan*, 214 F.3d at 285.

The facts of the State Action and this case clearly meet these requirements.

**1.    "Related in time, space, origin, or motivation"**

The facts underlying the State Action and this case all "derive ultimately from the same origin or motivation," and are "related in time, space, origin, or motivation," namely Plaintiff's contractual relationship with Sunbow in the 1980's to compose music for the TV

16

Shows. *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 110 (2d Cir. 2000); *Interoceanica Corp.*, 107 F.3d at 90.

The Jem Agreement and the other work-for-hire agreements with Sunbow for the TV Shows were signed and performed between 1983 and 1989. Plaintiff knew of any alleged breach of those agreements when she filed the State Action or sufficiently soon afterwards for her to have brought or added those claims. When Plaintiff filed her State Action she knew about every exercise of rights that she alleges in this action. These agreements form a "series of transactions" that are barred from relitigation. [5] *S.E.C. v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1464 (2d Cir. 1996) (citing Restatement (Second) of Judgments § 24, comment (d) (an action for breach of a contract to be performed over a period of time precludes subsequent suit for any claim of breach that had occurred "prior to the first breach-of-contract suit")).

As Plaintiff's claims "arise[ ] from the same 'factual grouping' as a previously resolved claim," namely, her claimed right to royalties from Sunbow's licensing of the TV Shows, this action "is barred, regardless of whether the two suits are based on different legal theories or seek different remedies." *Pharr v. Evergreen Garden, Inc.*, 123 Fed. Appx. 420, 423 (2d Cir. 2005) (citing *Smith v. Russell Sage College*, 54 N.Y.2d 185, 192, 445 N.Y.S.2d 68, 429 N.E.2d 746 (1981)); *see also O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357, 445 N.Y.S.2d 687, 429 N.E.2d 1158 (1981) ("once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred . . ."). Every claim in this complaint was or could have been brought in the State Action.

---

[5]     The record shows that Plaintiff was aware of the widespread licensing of the TV Shows and the music to third parties for distribution in the home video market long before she sued Sunbow in the State Action. *See* Decl. ¶¶ 136-142.

### 2.    "Convenient Trial Unit"

Although "no single factor is determinative [of whether the claims arise from the same transaction or series of transactions], the relevance of trial convenience makes it appropriate to ask how far the witnesses or proofs in the second action would tend to overlap the witnesses or proofs relevant to the first. If there is a substantial overlap, the second action should ordinarily be held precluded." Restatement (Second) of Judgments, § 24(b) comt. b., para 3.

Both cases form a convenient trial unit because they are essentially the same. They both rest on the terms of the same agreements, and Plaintiff offers the same evidence here that she offered in the State Action, namely the agreements themselves and her expert witness from the State Action, David Berman. Thus facts essential to the federal action were present in the State Action. *See First Jersey Securities*, 101 F.3d at 1464.

Consequently, because the same evidence offered in the State Action will have to be offered in this case, the complaint in this action "for the most part, copies the operative facts from [her] complaint in the [State Action]." *North Am. Van Lines, Inc. v. American Int'l Cos.*, 2006 NY Slip Op 50576U, 7 (N.Y. Misc. 2006), a copy of which is Exhibit 117, *aff'd*, 38 A.D.3d 450, 832 N.Y.S.2d 530 (1st Dep't 2007). There is not merely "overlap" between the evidence of Plaintiff's federal and state actions (Restatement (2d) of Judgments, § 24(b), comt. b, ¶3); her federal claims rest on the very same evidence adduced at trial because the claims are entirely identical. Every cause of action in the federal complaint "[was], or could have been, raised in the prior action" and so is now barred. *Monahan*, 214 F.3d at 285.

### 3.    Parties' Expectations or Business Understanding or Usage

In *Waldman v. Village of Kiryas Joel*, the court of appeals concluded that "it would seem clear that treating the various overlapping facts as a single transaction or series of related transactions would have 'conformed to the parties' expectations" 207 F.3d 105 at 112,

(citing *Interoceanica*, 107 F.3d at 90). If that is true where the facts are overlapping, then it is even more likely that, when faced with the nearly identical facts that this case presents, the parties would expect the facts to be treated as a single transaction or series of related transactions. Both Sunbow and Plaintiff expected that Sunbow's obligation to pay royalties to Plaintiff for its uses of the TV Shows (including third-party licensing and distribution) would be governed exclusively by the Jem Agreement.

\* \* \* \* \*

All the claims Plaintiff brought in the State Action were fully litigated and "adjudicated on the merits"; Sunbow was a party to the State Action and the other Sunbow Defendants are in privity with it; and the claims raised in this action "were, or could have been, raised in the prior action." *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 285 (2d Cir. 2000). Accordingly, this action is barred as res judicata.

## II.    COLLATERAL ESTOPPEL BARS RELITIGATION OF ISSUES OF FACT DECIDED IN THE STATE ACTION

Because Plaintiff is also collaterally estopped from relitigating issues that were fully and necessarily decided against her in the State Action, all of Plaintiff's issues in this case are barred from relitigation. The state judge found that there was no confidential, fiduciary or other trust relationship between Sunbow and Plaintiff and that instead their relationship was purely contractual. The state court found that the terms of that purely contractual relationship did not entitle Plaintiff to royalties for the distribution of the TV Shows in the home video market or that she was not being paid for uses for which she is entitled to royalties (e.g., for ringtones). The issues raised in this action were thus reached and necessarily decided against Plaintiff in the State Action.

To determine whether a New York State court's judgment collaterally estops a subsequent suit, the Court looks to New York law. *In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007) (citing *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985); *Colon v. Coughlin*, 58 F.3d 865, 869 n.2 (2d Cir. 1995). Pursuant to New York law, collateral estoppel precludes "a party from raising an issue (1) identical to an issue already decided (2) in a previous proceeding in which that party had a full and fair opportunity to litigate, and (3) the issue that was raised previously must be decisive of the present action." *Vishipco Line v. Charles Schwab & Co.*, 02 Civ. 7823, 2003 U.S. Dist. LEXIS 4082 (S.D.N.Y. Mar. 19, 2003) (Stein, J.) (citing *Curry v. City of Syracuse*, 316 F.3d 324, 331(2d Cir. 2003)).

The party against whom facts were so decided is barred from relitigating them even against nonparties to the suit in which they were decided. See *ACLI Gov't Secs. v. Rhoades*, 963 F.2d 530, 533 (2d Cir. 1992) (citing *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979), and *Blonder-Tongue Lab., Inc. v. University of Ill. Found.*, 402 U.S. 313, 328-30 (1971), for the proposition that "the doctrine of mutuality...no longer applies to the defensive use of collateral estoppel"); *Johnson v. County of Nassau*, 480 F. Supp. 2d 581, 607 (E.D.N.Y. 2007) ("courts have long acknowledged the use of defensive collateral estoppel by a defendant who was not a party to the previous litigation").

The central question for purposes of collateral estoppel is whether the *issues* were litigated, not the *claims*. See *Roth v. Syracuse Hous. Auth.*, 2002 NY Slip Op 40550U 10 (N.Y. Misc. 2002), a copy of which is Exhibit 118 (finding federal court "necessarily decided issues which are common to the causes of action stated in the Federal Court action and which are alleged in the pending [state] Complaint"). *Korea First Bank of N.Y. v. Noah Enters., Ltd.*, 12 A.D.3d 321, 323, 787 N.Y.S.2d 2, 4 (1st Dep't 2004) ("collateral estoppel precludes assertion of

the same wrong under a different legal theory"). Whatever label Plaintiff has given them, the

decisive factual and legal issues underlying Plaintiff's claims in this federal action are identical

to those in the State Action. The state court gave Plaintiff more than a full opportunity to prove

her issues, and ultimately decided against her.

> A.     **The Issues in the State Action Are Identical to the Decisive**
> **Issues of the Federal Action and Were Necessarily Decided**

In the State Action, Plaintiff brought claims against Sunbow for unjust

enrichment, constructive trust, breach of contract and accounting, alleging that Sunbow was

obligated to but had not paid Plaintiff royalties from licensing TV Shows to third parties for

distribution in the home video market and licensing other uses of the music in the TV Shows.

The underlying issues were (a) whether a confidential or fiduciary oral working arrangement

existed between Sunbow and Plaintiff, (b) whether such an oral working arrangement (if it

existed) obligated Sunbow to pay Plaintiff royalties when it licensed the TV Shows to third

parties, and (c) whether the Jem Agreement itself obligated Sunbow to pay Plaintiff royalties

when it licensed the TV Shows to third parties. As explained above, each of these issues was

decided against Plaintiff in the State Action. Sunbow owed no "confidential or fiduciary

relationship"; there "were no oral agreements" independent of the Jem Agreement; and Plaintiff

"is not entitled to any equitable accounting having failed to prove a prima facie case" of breach

of the Jem Agreement. Exh. 98 at 3, 6, 8.

> Plaintiff now sues Sunbow for
>
> breach of contract (Complaint, First Count, ¶ 86) ("Sunbow through
> licensing and distribution agreements…has exploited Plaintiff's
> Compositions…Sunbow has never fully and accurately and timely
> accounted to plaintiff…for the publishing revenue earned by it");
>
> a judicial accounting (Complaint, Third Count, ¶ 97) (Sunbow "failed to
> remit monies due and payable as royalty and license fees for the use of
> Plaintiff's compositions");

> breach of fiduciary duty (Complaint, Fourth Count, ¶ 109 (Sunbow "failed
> to account for or pay [funds owed under distribution agreements] to
> plaintiff and are thus in breach of their fiduciary duties"); and
>
> unjust enrichment (Complaint, Fifth Count, ¶¶ 112, 113 (Sunbow
> "received substantial funds as [licensors] of the [TV Shows]...A portion
> of such funds constituted monies due and payable to plaintiff as royalty
> and license fees for use of her musical compositions, which were featured
> in [the TV Shows]").

Each of these actions rests on a determination of whether Sunbow is obligated to pay Plaintiff

royalties from its licensing of the TV Shows or the music in them to third parties.

> Plaintiff has sued the licensee defendants for
>
> breach of contract (Complaint, Second Count, ¶¶90, 91 (Defendants
> "entered into distribution and/or license agreements or other agreements
> which involved the licensing and distribution of [the TV Shows and
> p]ursuant to these agreements, defendants were obligated either directly or
> indirectly by assumption of the obligation to [] account and to pay all
> applicable royalties and or license fees to Plaintiff");
>
> judicial accounting; (Complaint, Third Count, ¶ 97 (quoted above));
>
> breach of fiduciary duty (Complaint, Fourth Count, ¶ 109; (quoted
> above)); and
>
> unjust enrichment (Complaint, Fifth Count, ¶¶ 112, 113 (quoted above)).

However, no royalties are due to Plaintiff under these licensing agreements unless the Jem

Agreement provides for them and the relevant rights have been exercised.[6]  Indeed, where a

court has "determined that the defendant did not breach" an agreement, the plaintiff is barred by

collateral estoppel from bringing a second action claiming "breach of contract [that] involve[s]

---

[6]     Plaintiff has not pled any facts supporting her assertion that she is an unnamed yet intended third-party beneficiary of the various licensing agreements, independent of any rights granted under the Jem Agreement. See *LaSalle Nat'l Bank v. Ernst & Young LLP*, 285 A.D.2d 101, 108-109, 729 N.Y.S.2d 671, 676 (1st Dep't 2001) ("A non-party may sue for breach of contract only if it is an intended, and not a mere incidental, beneficiary, and even then, even if not mentioned as a party to the contract, the parties' intent to benefit the third party must be apparent from the face of the contract. Absent clear contractual language evincing such intent, New York courts have demonstrated a reluctance to interpret circumstances to construe such an intent.") (internal citations omitted).  Plaintiff has alleged no facts meeting these requirements.

the identical issue based upon the exact same contract provision language." *Laramie Springtree Corp. v. Equity Residential Properties Trust*, 38 A.D.3d 850, 851-852, 832 N.Y.S.2d 672, 673-74 (2d Dep't 2007). *See also Bouchat v. Bon-Ton Department Stores*, 506 F.3d at 328 (plaintiff was precluded from suing "downstream" licensees for their reproduction of a football team logo when it had previously litigated the same issue against the football team itself. "It is equally well established, however, that when an injured person sues joint tortfeasors in successive actions, preclusion principles determine the effect of the first judgment on the later actions. Restatement (Second) of Torts § 884 (1979).").

Whether the Jem Agreement entitles Plaintiff to the royalties she claims was "necessarily decided" in the State Action, and is the same decisive issue raised in this action.

**B.     Plaintiff Had a Full and Fair Opportunity to Litigate in the State Action All Issues Raised in the Federal Action**

As described in the supporting declaration, not only has Plaintiff had a full and fair opportunity to litigate these issues, but she was given every benefit of the doubt, every accommodation, and every bit of indulgence a litigant could ask of a court.

When Sunbow moved to dismiss she was permitted to amend her complaint; when Sunbow again moved to dismiss, she was permitted more time for discovery; when she filed late discovery, the state court ordered Sunbow to respond; when Plaintiff recanted her deposition testimony and corroborating documents and swore she had not written agreements with Sunbow, the state court decided there was a triable issue of fact on her so-called oral working arrangement with Sunbow; when Sunbow produced the signed written agreements that Plaintiff swore she had never signed, the state court granted Plaintiff's request for a framed issue hearing on her claim that her signatures were forged; when the state court ruled that all of Plaintiff's relations were governed by written agreements in the form of the signed Jem

23

agreement, it still permitted Plaintiff to continue trial on her claim that she had "other" oral

agreements with Sunbow; when she admitted at trial that she had no such "other" oral

agreements, the state court permitted her to proceed on the merits of the written agreements and

present evidence supporting her claims, even though it had earlier denied her motion to amend.

Decl., ¶¶ 18, 22, 25, 27-28, 33-34, 48-51, 69, 77, 81, 93, 95, 98-112.

        The New York Court of Appeals has set forth the following factors to consider in

determining whether Plaintiff was allowed a full and fair opportunity to litigate: "the nature of

the forum and the importance of the claim in the prior litigation, the incentive and initiative to

litigate and the actual extent of the litigation, the competence and expertise of counsel, the

availability of new evidence, the differences in the applicable law, and the foreseeability of

future litigation." *Ryan v. New York Tel. Co.*, 62 N.Y.2d 494, 501, 478 N.Y.S.2d 823, 467

N.E.2d 487 (1984).

        The "adverse party bears the burden of proving that he lacked a full and fair

opportunity to litigate the issue," *Johnson v. County of Nassau*, 411 F. Supp. 2d 171, 179

(E.D.N.Y. 2006), so we do not address every factor at length. It is sufficient to note that the

issues of the interpretation of the Jem agreement and whether Plaintiff had a fiduciary or trust

relationship with Sunbow were of central importance to the prior litigation; there is no difference

in applicable law; no new evidence is available; this litigation was not foreseeable (certainly not

to defendants); Plaintiff was and still is represented by competent counsel; Plaintiff had every

"incentive and initiative to litigate"; and the State Action "was extensive and protracted, and

involved a staggering number of motions and attempts by [Plaintiff] to pursue every conceivable

avenue to obtain a judgment in [her] favor." *Mac Truong v. Tran Dinh Truong*, 03 Civ. 3423,

2007 U.S. Dist. LEXIS 10973, 24-25 (S.D.N.Y. Feb 5. 2007). In other words, the state court

24

gave Plaintiff every opportunity to litigate these issues, and having done so, it found against her on all of them. *See Pentagen Techs. Int'l Ltd. v. United States*, 01 Civ. 3087, 2002 U.S. Dist. LEXIS 5030 (S.D.N.Y. Mar. 26, 2002) (Stein, J.) (where it had previously been determined that the plaintiff had no claim for conversion or copyright infringement against the defendant arising from its marketing of certain software to the government, plaintiff was "barred from asserting claims against the government arising from the same transaction" since it had "more than a full and fair opportunity to litigate the legality of [defendant's] marketing of software to the government.").

Because Plaintiff had a full and fair opportunity to litigate in the State Action all the issues that she seeks to raise in this one, and because the state court's rejection of those issues would be decisive of all the issues she raises here, Plaintiff is collaterally estopped from suing any of the Sunbow Defendants in this court on the issues she raises.

## CONCLUSION

For the foregoing reasons and those facts described in the supporting affidavit, the Sunbow Defendants urge that the Court grant this motion under the doctrines of both res judicata and collateral estoppel and dismiss Plaintiff's complaint with prejudice.

New York, New York
January 4, 2007

Respectfully submitted,

PATTERSON BELKNAP WEBB & TYLER LLP

By:    /s/  Gloria C. Phares
          Gloria C. Phares
          John C. Knapp

1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000
gcphares@pbwt.com

Counsel for Sunbow Defendants

25