UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

ANNE BRYANT,                                                    07-CV-6395 (SHS)(MHD)

                  PLAINTIFF,

  -AGAINST-

AB DROITS AUDIOVISUELS, AB PRODUCTIONS, ET AL,

                  DEFENDANTS.
_____


**REPLY MEMORANDUM OF LAW (1) SUPPORTING THE MOTION OF DEFENDANTS SUNBOW PRODUCTIONS, INC., SONY BMG MUSIC ENTERTAINMENT, LOONLAND UK LTD., TV LOONLAND HOME ENTERTAINMENT LTD, METRODOME GROUP P.L.C., SONY/ATV SONGS, INC., SONY/ATV TUNES, INC., AND RHINO ENTERAINMENT CO. TO DISMISS UNDER FED. R. CIV. P. § 12(b)(6) ON GROUNDS OF RES JUDICATA AND COLLATERAL ESTOPPEL AND (2) OPPOSING PLAINTIFF'S CROSS-MOTION FOR SANCTIONS UNDER FED. R. CIV. P. § 11**

Gloria C. Phares
John C. Knapp
PATTERSON BELKNAP WEBB & TYLER LLP
Attorneys for Sunbow Productions, Inc.
1133 Avenue of the Americas
New York, New York 10036-6710
(212) 336-2000
gcphares@pbwt.com

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... i

ARGUMENT ....................................................................................................................... 2

I.     RES JUDICATA BARS PLAINTIFF'S FEDERAL ACTION ................................ 2

    A.     Plaintiff's Claims in this Court Were Decided
            in the State Action. ........................................................................................ 2

    B.     Plaintiff Could Have Included Breach of Her Written Sunbow
            Contracts in Her State Court Complaint But Chose Not to Do So ................ 2

II.    COLLATERAL ESTOPPEL BARS PLAINTIFF FROM RELITIGATING
      IN THIS COURT ISSUES THAT WERE DECISIVE IN HER STATE
      ACTION .................................................................................................................. 6

    A.     The State Court Ruled on All Issues Raised in This Action. ........................ 6

    B.     Plaintiff Has Not Borne Her Burden of Showing that She Lacked a
            Full and Fair Opportunity to Litigate Her Breach of Contract Claim. .......... 9

III.   PLAINTIFF'S RULE 11 MOTION IS DEFECTIVE. ............................................ 10

CONCLUSION .................................................................................................................. 10

# <u>TABLE OF AUTHORITIES</u>

**<u>PAGE</u>**

## CASES

<u>BBS Norwalk One, Inc. v. Raccolta, Inc.</u>,
   117 F.3d 674 (2d Cir. 1997)..................................................................................6

<u>In re Dack</u>,
   421 N.Y.S.2d 775 (Sup. Ct. Monroe County 1979) .............................................3

<u>In re Davis</u>,
   677 N.Y.S.2d 889 (Ct. Cl. 1998) ..........................................................................3

<u>EFCO Corp. v. U.W. Marx, Inc.</u>,
   124 F.3d 394 (2d Cir. 1997)..................................................................................3

<u>In re Gulf Oil/Cities Service Tender Offer Litigation</u>,
   725 F. Supp 712 (S.D.N.Y. 1989) ........................................................................6

<u>Johnson v. County of Nassau</u>,
   411 F. Supp. 2d 171 (E.D.N.Y. 2006) ................................................................10

<u>Monahan v. New York City Dep't of Corrections</u>,
   214 F.3d 275 (2d Cir. 2000)..................................................................................2

<u>Newman & Schwartz v. Asplundh Tree Expert Co.</u>,
   20 F.3d 660 (2d. Cir. 1996)...................................................................................6

<u>Strange v. Montefiore Hospital & Medical Center</u>,
   59 N.Y.2d 737, 450 N.E.2d 235 (1983)................................................................2

<u>Vishipco Line v. Charles Schwab & Co.</u>,
   02 Civ. 7823, 2003 U.S. Dist. LEXIS 4082
   (S.D.N.Y. Mar. 19, 2003) ...............................................................................6, 7, 9

## STATUTES AND RULES

17 U.S.C. § 101 ("work for hire" (2)).................................................................................4

Fed. R. Civ. P. 11(c)(2)......................................................................................................10

CPLR § 3102(c) ..................................................................................................................3

## PRELIMINARY STATEMENT

Plaintiff has not even attempted to refute the facts and law the Sunbow Defendants have presented that show that the doctrines of res judicata and collateral estoppel bar her entire case. Instead, she has devoted her opposition to discussing case law that is irrelevant to the pending motion (Pl. Br. at 3-6).[1] The affidavit supporting Plaintiff's opposition consists almost entirely of a recitation of the allegations in Plaintiff's complaint. Monaghan Aff. ¶¶ 10-45. In the few places where Plaintiff touches on issues in the Sunbow Defendants' brief, she relies on truncated quotations and misrepresentations of the state judge's Final Decision, dwells on irrelevant factual and legal issues, and misrepresents the Sunbow Defendants' arguments.

Rather than addressing the Sunbow Defendants' motion, Plaintiff's repeated argument is that if this Court does not hear her breach of contract claim, she will be deprived of having any court ever hear it. Pl. Br. 7; Monaghan Aff. ¶¶ 23. That is not an appropriate rebuttal to the Sunbow Defendants' res judicata and collateral estoppel arguments. Plaintiff does not explain why her state-court complaints did not allege breach of contract claims. Moreover she fails to disclose that—as a strategic matter—she prevented those claims from being raised in the state court until after the parties were already in the midst of trial on a different theory that she advanced: that she had only oral agreements with Sunbow. She offers no explanation why, if she believed that the written agreements she signed with Sunbow were so essential to her claims, she failed to sue for breach of contract when she filed the State Action in 2002.

Finally, she does not explain how she was deprived of a full and fair opportunity to litigate her breach of contract claim when in December 2006 the state court allowed her a full

---

[1] Throughout this brief, Plaintiff's Memorandum of Law in Opposition to Defendants' Fed. R. Civ. P. Rule 12(b)(6) Motion to Dismiss and in Support of Cross Motion for Sanctions Under Rule 11 is referred to as "Pl. Br."; the supporting March 6, 2008 Affidavit of Patrick Monaghan as "Monaghan Aff."; the Sunbow Defendants' opening brief as "Sunbow Br."; and its supporting declaration as "Phares Decl." All references to "Exh." refer to the exhibits to the Phares Declaration.

trial day to present the witness whom she contended would support that claim and then, believing that she had proved her case, she moved the state court for an order conforming the pleadings to that proof and for judgment on that claim. Plaintiff is barred from re-litigating claims that arose out of the same facts as those she fully litigated in state court.

## ARGUMENT

### I. RES JUDICATA BARS PLAINTIFF'S FEDERAL ACTION

#### A. Plaintiff's Claims in this Court Were Decided in the State Action.

Under New York's res judicata doctrine, once there is an adjudication on a claim on the merits in an earlier action involving parties (or their privies) to the current action, then any claims arising out of the same facts as the adjudicated claim are barred. *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 285 (2d Cir. 2000); *see* Sunbow Br. 3.

The state court decided against Plaintiff claims arising out of the same facts as those she raises in this Court. Sunbow Br. 5-12; Part II *infra*. Although Plaintiff disputes whether her claim for breach of written contracts was decided in the State Action, she does not—and cannot—dispute that the state court decided and denied her other claims on the merits.[2] *See* Part II *infra*. Because the first two elements of res judicata are met, then all claims asserted in this Court are barred if they "were, or could have been, raised in the prior action."

#### B. Plaintiff Could Have Included Breach of Her Written Sunbow Contracts in Her State Court Complaint But Chose Not to Do So

Plaintiff argues that if res judicata is applied here, no court will ever construe her written contracts with Sunbow. Pl. Br. 7; Monaghan Aff. ¶¶ 23, 47. Sunbow has already shown

---

[2]   Plaintiff's argument that the state court decision was not on the merits because it did not contain the words "on the merits" overlooks both the state court's later adoption of the final judgment, which *did* contain those words (Exh. 99, 103), and case authority stating that "CPLR 5013 does not require that the prior judgment contain the precise words 'on the merits' in order to be given res judicata effect; it suffices that it appears from the judgment that the dismissal was on the merits" (*Strange v. Montefiore Hospital & Medical Center*, 59 N.Y.2d 737, 739, 450 N.E.2d 235, 236 (1983)).

that, over its objection and after denying Plaintiff's motion to amend the Amended Complaint,[3] the state court permitted Plaintiff the opportunity at the very end of the trial to present her evidence on her breach of contract claim. Sunbow Br. 7-11; see Part II, *infra*. Plaintiff should not be permitted to re-litigate this claim in this Court, because it was part of her trial strategy in the state court not to raise the claim initially, and because her claim ultimately was tried.

The entire record reflects a cynical and calculated attempt to take advantage of Sunbow's difficulty finding 20-year-old documents. It shows that Plaintiff was well aware of the Sunbow contracts in 2002 and could have sued for breach then. Instead, she made a calculated decision to forgo those claims. A review of Plaintiff's trial strategy should begin with the reminder that in December 2005, nearly four years after filing her case, she finally admitted that "I have accepted [the Jem Agreement, Exh. 18] as stating the terms of my Sunbow agreements with . . . Sunbow related to Sunbow productions." Phares Decl. ¶ 65; Exh. 70 at 5-6. Plaintiff signed written agreements in the 1980s for each Sunbow production on which she worked. Neither the Verified Complaint nor the Amended Complaint included a claim for breach of contract, although both included claims arising from Plaintiff's failure to receive money from uses of the TV productions. Exh. 23, 24.[4] Five months after the filing of the Amended Complaint, in March 2003, Plaintiff testified that she had always worked for Sunbow pursuant to

---

[3] Although Plaintiff claims she is being deprived of the opportunity to litigate her breach of contract claim, it is noteworthy that in her recently perfected state court appeal she has not challenged the denial of her 2005 motion to amend the Amended Complaint to include a claim for breach of the written contracts. *See EFCO Corp. v. U.W. Marx, Inc.*, 124 F.3d 394, 399-400 (2d Cir. 1997) ("Where a plaintiff's motion to amend its complaint in the first action is denied, and plaintiff fails to appeal the denial, res judicata applies to the claims sought to be added in the proposed amended complaint.").

[4] Plaintiff's counsel claimed that he could not sue for breach of contract because he did not have a copy of it. Pl. Br. 8; Monaghan Aff. ¶ 38; Complaint ¶ 81. This claim is belied by the fact that Plaintiff did not engage in pre-complaint discovery under CPLR § 3102(c) to attempt to obtain copies of those agreements (*see In re Davis*, 677 N.Y.S.2d 889 (Ct. Cl. 1998); *In re Dack*, 421 N.Y.S.2d 775, 778 (Sup. Ct. Monroe County 1979)), and she did not even ask Sunbow for them until the day she filed the note of issue (Phares Decl. ¶ 25).

3

written contracts. Phares Decl. ¶ 23; Exh. 17 at 44:3-9; 46:4-8. Asked about copyright ownership, she stated, "I can see the work for hire in my mind, yes." *Id.* at 49:5-12.

After learning in November 2003 that Sunbow could not locate its signed agreements with her (Phares Decl. ¶ 25), Plaintiff then contradicted her deposition testimony and stated "I never executed a written contract with . . . Sunbow. . . concerning the music I composed" (*id.* § 27; Exh. 32 at 6, ¶ 9). Knowing that a work-for-hire arrangement must be in writing (17 U.S.C. § 101 ("work for hire" (2)), she then claimed she owned the copyright in her music (Phares Decl. § 27; Exh. 31 at 35). Finally, she claimed that she had only a "working arrangement and agreement" with Sunbow. Exh. 31 at 7, 31; Exh. 32 at ¶¶ 6, 10-22, 27. In sum, Plaintiff took advantage of Sunbow's inability to locate the signed agreements to invent an "oral working arrangement" that was far more favorable to her than the written agreements.

Plaintiff rejected as "inadmissible" any reliance on the unsigned Jem agreement that Sunbow produced, "which [Sunbow] claim[s] somehow governed the parties' entire working relationship."[5] Exh. 37 at 4 & n.2. Plaintiff was contemptuous of the idea that the unsigned Jem agreement exemplified her contractual relationship with Sunbow.[6] Plaintiff persuaded the state

---

[5] Plaintiff's counsel also argues that it would have been irresponsible for him to have agreed that an *unsigned* Jem agreement represented the agreement with Sunbow. Exh. 10 at 23:10-18. If Plaintiff's counsel really had been attempting to locate a copy of the 1980s agreement, it is inconceivable that he would have overlooked the clear implication of another document Sunbow produced. The proposal by Plaintiff's own lawyer, William Dobishinski, to *amend* the Jem agreement (Exh. 29) was strong, nearly incontrovertible, evidence that the agreement had been signed. If Plaintiff's counsel had really been looking for a copy of one of his client's agreements with Sunbow, he had it in November 2003, in plenty of time to amend the Amended Complaint – if that had been his intention. Plaintiff's only response to this evidence is to claim that Dobishinski was not her lawyer (Pl. Br. 10), even though Dobishinski represented himself to Sunbow and its outside counsel as Kinder & Bryant's "counsel" and represented them in contract negotiations (Phares Decl. ¶¶ 25, 55; Exh. 29, 56).

[6] "Sunbow also continues its inappropriate attempt to divert the Court's attention to an unsigned, inadmissible draft of a contract pertaining to the Jem TV show." Exh. 42 at 4.

"Sunbow has the sheer audacity to allege that it has 'offered proof that the Jem agreement was typical of the agreements for all the TV music at issue in this case.'" *Id.* at 5.

"Plaintiff has, and will continue to, vigorously dispute Sunbow's woefully inadequate proffer of patently inadmissible evidence in this context." *Id.*

4

court, which decided that "the scope and terms of the parties' work relationship and their agreement shall properly be the subject of inquiry and examination at trial." Exh. 43 at 3. When trial began in July 2004, Plaintiff persisted in her strategy, claiming that an oral agreement entitled her to royalties from all exploitations of the TV Shows that Sunbow created.

Eventually Sunbow finally found two of the agreements signed by Plaintiff and produced them in August 2004. Phares Decl. ¶¶ 48, 50. Knowing that this discovery put the lie to her "oral agreement theory," Plaintiff claimed her signatures were forged and demanded a framed issue hearing on the issue (*id.* at ¶ 49) (though she did not contest Sunbow's handwriting expert). She moved to amend the Amended Complaint in 2005 only after the false basis of her oral agreement was disclosed. Plaintiff's claim that applying res judicata to this case will prevent her from her having her claim heard is as disingenuous as her argument before the state court that she never worked with Sunbow pursuant to written agreements.

In sum, Plaintiff has failed to show why she could not have brought her breach of contract claims in the State Action. Because they arose out of the same facts as the claims in the Amended Complaint, they would be barred even if she had not been permitted to prove it at trial. For those reasons, her action for breach of contract in this Court is barred by res judicata.

Plaintiff's claims against the third-party licensees are barred for the same reason. She could have brought claims against these licensees then and so they are now barred. Her decision, like the decision to disown her written contracts, was tactical.[7] Moreover, these third

---

"By repeatedly brushing aside plaintiff's testimony regarding the parties' working agreement and her entitlement to royalties thereunder, defendants have relegated themselves to a tenuous position where they have been attempting to rely upon an unsigned, inadmissible draft of a contract pertaining to one of the many compositions [sic] at issue in this case, which they claim governed the parties' entire working relationship." *Id.* at 10.

[7]   In her March 2003 deposition, Plaintiff revealed she believed Rhino Home Video owed her money from distribution of videos of the TV Shows. When asked why Rhino Home Video was not named as a defendant in the lawsuit, her counsel immediately interjected that "Well, that goes into legal judgments" and directed Ms. Bryant not to answer the question. Exh. 14 at 182:3-23.

5

parties cannot be liable to Plaintiff if Sunbow itself is not. *See* Sunbow Br. 15, 22-23. Plaintiff attempts to escape this argument by claiming she is a third party beneficiary of these licensing agreements, but without explaining where the defendant's "intent to benefit" her can be found "on the face of the agreement[s]." *In re Gulf Oil/Cities Service Tender Offer Litigation*, 725 F. Supp 712, 733 (S.D.N.Y. 1989). The case on which she relies does not support her claim. *Newman & Schwartz v. Asplundh Tree Expert Co.*, 20 F.3d 660, 663 (2d. Cir. 1996) (where one party agreed to pay for the legal fees of the other; it was "reasonable to assume that a provider of legal services [the unnamed law firm] is a third-party beneficiary of an agreement to pay for those service."). For all these reasons, Plaintiff's federal case is barred by res judicata.

## II. COLLATERAL ESTOPPEL BARS PLAINTIFF FROM RELITIGATING IN THIS COURT ISSUES THAT WERE DECISIVE IN HER STATE ACTION

### A. The State Court Ruled on All Issues Raised in This Action.

The Sunbow Defendants have shown that the decisive issues in this action—plaintiff's right to royalty payments for works she created for hire in the 1980s—are the same issues that were decisive in her state court action. *BBS Norwalk One, Inc. v. Raccolta, Inc.*, 117 F.3d 674, 677 (2d Cir. 1997). Plaintiff was given a full and fair opportunity to litigate those issues over the course of a five-year litigation and ultimately at trial. She is therefore collaterally estopped from trying those issues again here. *Vishipco Line v. Charles Schwab & Co.*, 02 Civ. 7823, 2003 U.S. Dist. LEXIS 4082 (S.D.N.Y. Mar. 19, 2003) (Stein, J.).

The state court held that Plaintiff had "failed to prove any confidential or fiduciary relationship" with Sunbow, which was a necessary predicate for the equitable unjust enrichment and constructive trust claims stated in her amended complaint. Exh. 98 at 6. The state court allowed trial to proceed to prove whether oral agreements existed and plaintiff admitted there were none. *Id.* at 7. All other claims having been decided, the state court then allowed testimony about the terms of the written contracts themselves, and, satisfied that

Sunbow had complied with their terms, dismissed Plaintiff's claim "under contract law" for an accounting (*id.* at 4), stating that she is "entitled to whatever rights still exist under her agreements with defendants," rights to the royalties she is and always has been paid (*id.* at 8).[8]

Instead of responding to the Sunbow Defendants' presentation of the law and facts showing that the issues underlying these claims were decided in the State Action, Plaintiff's counsel has resorted to manipulating the state court's March 2007 decision by removing—without appropriate citation—Justice O'Rourke's language and substituting counsel's own.

Plaintiff's counsel states in paragraph 6 of his sworn affidavit that "[t]he State Court Decision dated March 9, 2007 [was] based on only two causes of action as set forth by the Court:" and then presents in support of counsel's statement a block quote alleged to be from that decision. Monaghan Aff. ¶ 6. What the court actually said was that "The Plaintiff's *amended complaint* against Sunbow Productions Inc. (Sunbow) states two causes of action: the first is for unjust enrichment and the second is for constructive trust." Exh. 92 (emphasis added). Plaintiff's counsel's quote stated that the *decision* was based only on claims of unjust enrichment and constructive trust when in fact the state court stated that those were the only claims in Plaintiff's *amended complaint*. This is a material misrepresentation when a central issue in the pending motion is the fact that the state court allowed Plaintiff to present *whatever evidence she offered, in support of every claim she alleged, whether pled in the complaint or not*.[9]

---

[8] Plaintiff attempts to create an issue out of Sunbow's supposed "admissions" that Plaintiff is owed certain royalties pursuant to these agreements. Pl. Br. 11; Monaghan Aff. ¶¶ 48-49. Sunbow has never disputed that under her work-for-hire agreements, Plaintiff is owed royalties for certain limited uses of her music (not in the TV Shows) or that she retains the right to challenge the calculation of her payments and audit her account for future time periods. Sunbow has and continues to pay these royalties. What Sunbow disputes is that Plaintiff is or ever was a copyright owner in the works she composed or that she is owed anything other than what is set out in the terms of the written agreements governing her relationship with Sunbow.

[9] The state court's Final Order confirmed that claims other than these were tried: "Plaintiff moves for an order conforming the pleadings to the proof and for an action for an accounting based on contract law, which was not included in the aforementioned amended complaint." Exh. 92 at 3-4. The remainder of the block quote in ¶ 6 of the Monaghan Affidavit is *not a quote from the decision at all*, but parts of

7

Plaintiff's claim that she was foreclosed from presenting the issues in connection with her breach of contract claim (Pl. Br. 6-9) is not supported by the record. Trial was set to resume in December 2006 limited to "proof that there were oral as well as written contracts." Exh. 98 at 3. Testifying at trial, "Plaintiff admitted there were no oral agreements, except as to discussion of terms and conditions all of which became part of the later written agreements." *Id.* 3. Even plaintiff's counsel concedes that her admission disposed of the only claim set for trial. Monaghan Aff. ¶ 47. With no claims from the complaint remaining, the state court invited and heard an entire day of testimony from plaintiff's expert witness, David Berman, regarding the terms of the Jem contract. Mr. Berman's testimony included a review of the allegedly relevant clauses, set out on oversized poster boards, and his opinion that Sunbow had not complied with its alleged obligations under that written contract. Sunbow Br. 7-11; Phares Decl. ¶¶ 92-112.

Plaintiff's counsel told Justice O'Rourke that he "want[ed] this Court to apply the written agreement, the Jem agreement" (Phares Decl. ¶ 85) and that "when Your Honor's dealing with the issue of liability, you're going to have to decide…I've got the contract; what's included in the contract? Then we get to the accounting issue" (*id.* at ¶ 92). The state court agreed and confirmed later that with regard to the "question of accounting," he and plaintiff's expert "had gone into that."[10] *Id.* at ¶ 112.

In her post-trial briefing, Plaintiff moved to conform the pleadings, arguing that there had "been extensive testimony by Plaintiff and the Plaintiff's expert, David Berman, as to that [the Jem] agreement and Sunbow's breach of the terms of the subject agreement" and urged the state court to "hold Sunbow accountable for the material breaches of the Jem Agreement."

---

three sentences taken from three different pages of the decision, often inaccurately transcribed, mixed with Plaintiff's counsel's own language further misrepresenting the Court's decision.

[10]   As is plain from this exchange and as noted more extensively in the Sunbow Defendants' initial papers, the State Court considered an "equitable accounting" a remedy for a breach of contract action. *See* Phares Decl. ¶¶ 90-93, 97-112.

8

Phares Decl. ¶¶ 117-120, Exh. 87. The state court confirmed in its Final Decision that "Plaintiff move[d] for an order conforming the pleadings to the proof and for an action for an accounting based on contract law, which was not included in the aforementioned amended complaint." Exh. 98 at 3-4. Contrary to Plaintiff's argument, she did more than "at least assert[] claims based on a breach of written agreements such as the JEM Agreement." Pl. Br. at 8. She presented all the evidence she had, and the state court considered and decided the breach of contract claim on the merits, holding that Plaintiff was not entitled to any "equitable accounting."

Plaintiff does not seriously dispute that the other claims brought in the State Action were also decided against her on the merits. The issues underlying the State Law claims were decided, and Plaintiff is collaterally estopped from relitigating here those issues that were decisive of her claims. Sunbow Br. at 21. *Vishipco Line*, 2003 U.S. Dist. LEXIS 4082 at *11.

### B.   Plaintiff Has Not Borne Her Burden of Showing that She Lacked a Full and Fair Opportunity to Litigate Her Breach of Contract Claim.

Plaintiff appears to argue that she was denied a full and fair opportunity to litigate her claims over the course of the five-year state court litigation because she was not able to present certain deposition testimony at trial. But she has confirmed (as she did in the state court) that the only evidence that remained for her to present was relevant only to claims *no longer in the case at the time of trial*. Monaghan Aff. ¶ 7. In her post-trial briefing, Plaintiff insisted that the state court consider deposition testimony that, according to her, established that she had a "special confidential relationship" or "fiduciary" relationship with Sunbow. Phares Aff. ¶ 123. The Court dismissed plaintiff's "motion" to present this additional testimony because the "matter ha[d] been overtaken by events," namely Plaintiff's intervening admission that her relationship with Sunbow was purely contractual and no fiduciary duty was created by the governing agreements. Exh. 98 at 7; *see also id.* at 6 ("Since that time Plaintiff has failed to prove any confidential or fiduciary relationship between either Sunbow or BMI.").

9

Plaintiff also fails to note that the state court nonetheless *allowed in this very testimony* and considered it in reaching its Final March 2007 Decision. Exh. 95 ("As to Plaintiff's latest motion [to "Allow this trial to proceed and to allow the testimony of Ford Kinder, Jules M. "Joe" Bacal and Carole Weitzman…" (Exh. 93 at 2),] the Court…will consider same…. The decision will be incorporated into the presently pending decision."). Accordingly, the state court heard and considered all the evidence Plaintiff wished to present in support of her claims. Plaintiff has thus failed to show that she lacked a full and fair opportunity to litigate these issues. *Johnson v. County of Nassau*, 411 F. Supp. 2d 171, 179 (E.D.N.Y. 2006).

### III. PLAINTIFF'S RULE 11 MOTION IS DEFECTIVE

A motion for sanctions under Fed. R. Civ. P. 11(c)(2) "must be made separately from other motions or requests" and "must not be filed with or presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service …." Plaintiff's motion was not made separately from the Sunbow Defendants' motion to dismiss, and Plaintiff did not serve the motion 21 days before presenting it to this Court. Plaintiff's motion is also meritless; all statements made in the Sunbow Defendants' moving papers, including the two that Plaintiff singles out (Pl. Br. 10-11), are supported by the voluminous and extensively cited exhibits attached to their motion. *See supra* notes 5 & 8. Plaintiff's motion is procedurally improper and without merit; it should be denied.

### CONCLUSION

For the foregoing reasons and those set out in the Sunbow Defendants' opening papers, this Court should dismiss Plaintiff's action entirely because it is barred by the doctrines of both res judicata and collateral estoppel and her cross-motion for sanctions.

New York, New York
April 8, 2008                                    Respectfully submitted,

                                                PATTERSON BELKNAP WEBB & TYLER LLP

By:    /s/ Gloria C. Phares
        Gloria C. Phares
        John C. Knapp

1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000
gcphares@pbwt.com

Counsel for Sunbow Defendants