UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Anne Bryant,<br><br>               PLAINTIFF,<br><br>  -AGAINST-<br><br>AB DROITS AUDIOVISUELS, AB PRODUCTIONS, APOLLO'S CHARIOT MUSIC, BANANA ALERT MUSIC, BEST ENTERTAINMENT LTD, BLOKKER BV, BRIDGE RIGHTS B.V., CARTOON NETWORK, CENCIENTA VIDEO, CHAD ENTERTAINMENT LLC., COLUMBIA TRISTAR HOME VIDEO INC., DREAMWORKS LLC A/K/A DREAMWORKS PICTURES, FILM FACTORY, FLEX MEDIA ENTERTAINMENT, HASBRO INC., HASBRO INTERNATIONAL, INC., INITIAL S.A., LOONLAND UK LTD., MADMAN ENTERTAINMENT INC., MAVERICK ENTERTAINMENT LIMITED, MEDIA SALES GROUP AND LICENSING B.V., MEGA ENTERTAINMENT, METRODOME GROUP PLC, PARAMOUNT PICTURES CORP., PEXLAND INTERNATIONAL (PICTURES) LTD, PROXIMA FLIMS, RHINO ENTERTAINMENT CO., RHINO HOME VIDEO CORE, ROUGE CITRON PRODUCTIONS S.A.R.L., SILVER MEDIA GROUPS S.A., SONY/ATV SONGS LLC [BMI], SONY/ATV TUNES LLC [ASCAP], SONY BMG MUSIC ENTERTAINMENT INC., SONY LEGACY, SONY PICTURES HOME ENTERTAINMENT INC., SONY WONDER, SUNBOW ENTERTAINMENT LLC., SUNBOW PRODUCTIONS INC., STARWILD MUSIC INC., TALENT PARTNERS INC., TRANS ENTERTEL TELECOMMUNICATIONS LTD, TV LOONLAND AG, TV LOONLAND HOME ENTERTAINMENT LTD, UNICORN TV DISTRIBUTORS LTD., UNION FILMS GROUP, VIDART LIMITADA, VOLCANO RECORDS, WARNER MUSIC GROUP, WARNER STRATEGIC MARKETING, WILDSTAR MUSIC, INC., JOHN AND JANE DOES 1-20, ABC CORPORATIONS 1-20,<br><br>               DEFENDANTS. | 07-CV-6395 (SHS)(MHD)<br><br>DEFENDANTS HASBRO, INC., THE CARTOON NETWORK, INC., PARAMOUNT PICTURES, DREAMWORKS LLC AND DREAMWORKS PICTURES' REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(B)(6) |

# TABLE OF CONTENTS

                                                                                                   **Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT...................................................................................................................................2

       I.     IT IS ENTIRELY APPROPRIATE FOR THIS COURT TO CONSIDER, ON THIS MOTION, THE STATE ACTION PROCEEDINGS ............................3

       II.    BARRING CLAIMS WHICH WERE, OR COULD HAVE BEEN RAISED IN THE STATE ACTION IS NOT INCONSISTENT WITH THE FINDING THAT "PLAINTIFF IS ENTITLED TO WHATEVER RIGHTS STILL EXIST UNDER HER AGREEMENTS WITH DEFENDANTS"..........................................................................................................4

       III.   SUNBOW'S LICENSEES ARE ENTITLED TO THE BENEFIT OF *RES JUDICATA* AND/OR COLLATERAL ESTOPPEL...............................................5

       IV.   BRYANT HAD HER DAY IN COURT RESPECTING THE JEM AGREEMENT ..........................................................................................................6

       V.    BRYANT'S LOSS IN THE STATE ACTION WAS BASED UPON SUBSTANTIVE, NOT PROCEDURAL GROUNDS ............................................9

CONCLUSION.............................................................................................................................10

# TABLE OF AUTHORITIES

**Page**

**CASES**

*ACLI Gov't Secs. v. Rhoades,*
  963 F.2d 530 (2d Cir. 1992) ................................................................................. 5

*Ansonia Tenants' Coalition,* 163 F.R.D. 468, 470 (S.D.N.Y. 1995) ....................... 4

*Cal. Pub. Employees Ret. Sys. v. Shearman & Sterling,*
  95 N.Y.2d 427 (2000) ............................................................................................ 6

*In re Bristol-Myers Squibb Sec. Litig.,*
  312 F. Supp. 2d 549 (S.D.N.Y. 2004) .................................................................... 3

*Johnson v. County of Nassau,*
  480 F. Supp. 2d 581 (E.D.N.Y. 2007) ................................................................... 5

*LaFleur v. Whitman,*
  300 F.3d 256 (2d Cir. 2002) .................................................................................. 4

*Matusovsky v. Merrill Lynch,*
  186 F. Supp. 2d 397 (S.D.N.Y. 2002) .................................................................... 3

*Newman & Schwartz v. Asplundh Tree Expert Co.,*
  102 F.3d 660 (2d Cir. 1996) .................................................................................. 6

*Parklane Hosiery Co. v. Shore,*
  439 U.S. 322 (1979) ............................................................................................... 5

*Price v. Worldvision Ents., Inc.,*
  455 F. Supp. 252 (S.D.N.Y. 1978) ......................................................................... 5

*Salichs v. Tortorelli,*
  2004 U.S. Dist. LEXIS 4942 (S.D.N.Y. Mar. 29, 2004) ....................................... 4

*Simpson v. Putnam County Nat'l Bank,*
  20 F. Supp. 2d 630 (S.D.N.Y. 1998) ...................................................................... 1

*Watts v. Swiss Bank Corp.,*
  27 N.Y.2d 270 (1970) ............................................................................................ 5

**OTHER AUTHORITIES**

Fed. R. Civ. P. 1 ........................................................................................................ 4

Fed. R. Civ. P. 12(b)(6).................................................................................................................1

This reply memorandum is submitted on behalf of defendants Hasbro, Inc., The Cartoon Network, Inc., Paramount Pictures and DreamWorks LLC (collectively the "**Hasbro Defendants**") in further support of their motion to dismiss this action against them, in its entirety and with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

## PRELIMINARY STATEMENT

Plaintiff, Anne Bryant ("**Bryant**"), seeks to re-litigate in this action fundamental claims and issues which were decided against her after more than five years of litigation in the State Action.[2] To the extent that Bryant disagrees with that result, her remedy – which she has exercised – is an appeal to the Appellate Division, Second Department.[3] However, under the well-established doctrines of *res judicata* and collateral estoppel, respectively, Bryant may not re-litigate, in this Court, claims or issues that she had a full and fair opportunity to litigate in the State Action.

In her Complaint in this action, Bryant asserts, as against the Hasbro Defendants, claims for breach of contract (although she does not claim to be a party to any contract with any of them), a judicial accounting, breach of fiduciary duty and unjust enrichment. Complaint at ¶¶88-93, 94-105, 106-110, and 111-115. Each of Bryant's claims is dependent, for its validity, upon a finding that Bryant, as the composer of the music for the Sunbow Compositions, is due royalties and/or fees in connection with the exploitation by the Hasbro Defendants (as licensees of Sunbow, or sub-licensees) of the Subject Productions. However, in the State Action, it was determined, after a trial on the merits, that the Sunbow Compositions were "works-for-hire" under the United States Copyright Act, and that Bryant's *only*

---

[1] Although DreamWorks Pictures was named as a defendant in this action, upon information and belief, it is not an existing legal entity.

[2] "Defined terms" used but not defined herein have the meanings ascribed to them in the Hasbro Defendants' moving papers.

[3] Bryant has perfected an appeal of the following judgments in the State Action: *Bryant v. Sunbow Productions, Inc.*, Index Nos. 5192/00, 2821/02, now pending in the Second Department, Docket Nos. 07-2845 and 06-11764. Federal courts are not to be used as another avenue to appeal a state court decision. *See e.g. Simpson v. Putnam County Nat'l Bank*, 20 F. Supp. 2d 630, 633 (S.D.N.Y. 1998) ("Under the *Rooker-Feldman* doctrine, the federal district courts are not authorized to exercise what in effect amounts to appellate review of state court judgments.")

entitlement to royalties and/or other compensation generated from the exploitation of the Sunbow Compositions is governed exclusively by the terms of her written agreements with Sunbow (all in the form of the Jem Agreement), and not otherwise. *See* Final Decision, pp. 3, 6, 8 annexed as Ex. 98 to the Phares Decl. Indeed, Bryant admits this. Complaint, ¶¶9-10, 12-13, 19, 81-84. The Jem Agreement does not provide for the payment of any royalties to Bryant by Sunbow's licensees (or their sub-licensees). *See* the Jem Agreement, annexed as Exh. 18 to the Phares Decl. Moreover, nothing in the STC Agreement (*i.e.*, the license agreement between Sunbow and Hasbro) makes Bryant a third-party beneficiary thereunder, and Bryant does not allege that there was any intent on the part of Sunbow or Hasbro to make her a third party beneficiary under the STC Agreement. Accordingly, Hasbro cannot be liable to Bryant for breach of contract, a judicial accounting, breach of fiduciary duty or unjust enrichment. By extension, Hasbro's sub-licensees (TCN, Paramount and DreamWorks) cannot be liable to Bryant either.

Finally, Bryant's claim for a judicial accounting is further dependent, for its validity, upon a finding that Bryant's relationship with Sunbow was "in the nature of a Joint Venture" such that Sunbow had fiduciary obligations to Bryant, *and* that those fiduciary obligations extended derivatively to the Hasbro Defendants. However, the state court held that Sunbow had no fiduciary duty to Bryant. *See* Final Decision, p. 6 annexed as Ex. 98 to the Phares Decl. Therefore, none of Sunbow's alleged fiduciary obligations can have extended derivatively to the Hasbro Defendants. While difficult to follow, Bryant's opposition papers do not deny this.

## ARGUMENT

Bryant's memorandum of law (the "**Opp. Br.**") embodies several arguments in opposition to dismissal. In "Point I", Bryant argues that the "well pleaded" allegations of the complaint must be accepted as true, and seems to further argue that the history of the State Action proceedings (which were expressly referred to in the Complaint) may not be considered by this Court because: (a) it is

contained in a "lengthy", "skewed" and "distracting" affidavit by counsel for the "Sunbow Defendants"; and (b) the final judgment in the State Action is the subject of a pending appeal. Opp. Br. at 4-5. Bryant further argues that the Sunbow Defendants cannot concede that Bryant has the rights granted to her in the Jem Agreement (upon which she claims to sue), and at the same time deny Bryant an opportunity to pursue the rights she now seeks to pursue. Opp. Br. at 5. Finally, Bryant argues that the dismissal of her unjust enrichment and constructive trust clams in the State Action does not inure to the benefit of licensees of the defendants in the State Action – such as the Hasbro Defendants – because Bryant has a "direct third party interest" in any licenses issued to such licensees. Opp. Br. at 5. In Point II, Bryant argues that the State Action did not "address the merits of the fundamental contract claims and rights at issue here" and that, accordingly, Bryant did not have her day in court with respect to her claims under the "newly discovered" Jem Agreement . Opp. Br. at 5-6. For the reasons set forth below, all of Bryant's arguments lack merit.[4]

## I. IT IS ENTIRELY APPROPRIATE FOR THIS COURT TO CONSIDER, ON THIS MOTION, THE STATE ACTION PROCEEDINGS

Bryant's citations to authority for the standards applicable to a motion to dismiss are unremarkable, except to the extent that none of them concern a motion to dismiss based upon *res judicata* or collateral estoppel, and none of them address situations, where, as here, allegations in the complaint are contrary to the very documents upon which the complaint relies. None of the assertions contained in Bryant's Complaint need to be taken as true to the extent they are demonstrably false by reference to the Complaint, or to materials appended to or referenced in it.[5] Moreover, Bryant's further

---

[4] The Hasbro Defendants do not respond to Bryant's "Point III" in light of the acknowledgement by her counsel in court on March 14, 2008, that Bryant's cross-motion for Rule 11 sanctions (the subject of Bryant's Point III), is not interposed as against them.

[5] *See In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 555 (S.D.N.Y. 2004) ("The court need not accept as true an allegation that is contradicted by documents on which the complaint relies")(citing *Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.)*, 151 F. Supp. 2d 371, 405 (S.D.N.Y. 2001)); *see also Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002)("If a plaintiff's allegations are contradicted by [] a document [attached to or incorporated by reference into the complaint], those allegations are insufficient to defeat a motion to dismiss").

3

claim that that the State Action proceedings (which were expressly referred to in the Complaint) may not be considered by this Court lacks any citation to supporting authority, and is without merit.[6]

Every reference to the State Action proceedings was supported by a citation to the record, about which there is no controversy. Indeed, Bryant fails to address how any motion to dismiss based upon *res judicata* or collateral estoppel could be made *without* reference to the prior action which supplies the very basis for any such motion. Moreover, contrary to Bryant's argument that this motion to dismiss on *res judicata* and collateral estoppel grounds comes at too "early [a] stage of the litigation", the policy against wasting judicial (and litigants') resources mandates that now, indeed, is the appropriate time for such a motion. "[The Federal Rules of Civil Procedure] should be construed and administered to secure the just, speedy and inexpensive determination of every action and proceeding." Fed. R. Civ. P. Rule 1.

## II. BARRING CLAIMS WHICH WERE, OR COULD HAVE BEEN RAISED IN THE STATE ACTION IS NOT INCONSISTENT WITH THE FINDING THAT "PLAINTIFF IS ENTITLED TO WHATEVER RIGHTS STILL EXIST UNDER HER AGREEMENTS WITH DEFENDANTS"

There is nothing mutually exclusive about (a) Bryant having, on a going forward basis, the rights granted to her in the Jem Agreement; and (b) barring Bryant from now pursuing those alleged royalty rights under the Jem Agreement that were, or could have been pursued in the State Action. Indeed, the state court's finding that "Plaintiff is entitled to whatever rights still exist under her agreements with defendants" expressly allows Bryant to pursue future royalty claims against defendant Sunbow, which is a party to the Jem Agreement, in accordance with the terms thereof (and consistent with the findings in the State Action)(*see* Final Decision, p. 8 annexed as Ex. 98 to the Phares Decl.), and Sunbow concedes this point (*see* Phares Decl. at ¶121).

---

[6] Courts routinely take judicial notice of documents filed in other courts. *See, e.g., Ansonia Tenants' Coalition*, 163 F.R.D. 468, 470 (S.D.N.Y. 1995) (taking judicial notice of pleadings and decisions from a prior state court litigation that were appended to the defendant's 12(b)(6) motion); *LaFleur v. Whitman*, 300 F.3d 256, 267 n.1 (2d Cir. 2002); and *Salichs v. Tortorelli*, 2004 U.S. Dist. LEXIS 4942 (S.D.N.Y. Mar. 29, 2004).

4

## III. SUNBOW'S LICENSEES ARE ENTITLED TO THE BENEFIT OF *RES JUDICATA* AND/OR COLLATERAL ESTOPPEL

Bryant claims (again without authority) that the dismissal of her unjust enrichment and constructive trust clams in the State Action does not inure to the benefit of licensees of the defendants in the State Action – such as Hasbro (and, by extension, its sublicensees TCN and Paramount) – but she is simply wrong. While *res judicata* operates only between parties to a prior litigation and their privies, collateral estoppel may be used by a stranger to the first action.[7] Moreover, a judgment is *res judicata* not only as to the parties to the action but also their privies, including an assignee or licensee under a contract which grants the rights that were at issue in a prior action, and/or an indemnitee of a party to a prior action. *Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270, 277 (1970); *Price v. Worldvision Ents., Inc.*, 455 F. Supp. 252, 259 (S.D.N.Y. 1978).

As between Bryant and Sunbow, both parties to the State Action, the Sunbow Defendants own and/or control the copyright in the Subject Productions and all of the works encompassed in them, including the Sunbow Compositions (subject to the terms and conditions of the Jem Agreement). See Final Decision, pp. 3, 6, 8 annexed as Ex. 98 to the Phares Decl. As more fully set forth in the Hasbro Defendants moving papers (the "**Hasbro Mem.**", pp. 8-10), Sunbow is the direct or indirect source of the Hasbro Defendants' rights in and to the Subject Productions (including the Sunbow Compositions), and Sunbow is obligated to indemnify and defend Hasbro (and Hasbro is obligated to indemnify and defend TCN and/or Paramount) against Bryant's claims. Insofar as TCN and Paramount are sub-licensees and indemnitees of Hasbro, and Hasbro is a licensee and indemnitee of Sunbow (and/or its successors-in-interest), all qualify as privies of Sunbow and are entitled to the *res judicata* effect of the Final Judgment in the State Action.

---

[7] Moore's Federal Practice – Civil 121.13[1]; *see also, ACLI Gov't Secs. v. Rhoades*, 963 F.2d 530, 533 (2d Cir. 1992); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326-31 (1979); *Johnson v. County of Nassau*, 480 F. Supp. 2d 581, 607 (E.D.N.Y. 2007).

5

Rather than address these principals and facts, Bryant argues that the dismissal of her clams does not inure to the benefit of licensees of the defendants in the State Action, because Bryant has a "direct third party interest" in any licenses issued to such licensees. However, Bryant's complaint does not allege any facts upon which a court could find that Bryant was a third-party beneficiary thereunder.[8]

## IV. BRYANT HAD HER DAY IN COURT RESPECTING THE JEM AGREEMENT

Bryant claims that "…she never had an opportunity or her day in court to prove her claims since her case was dismissed before the close of her evidence and the singular claim at issue [in the State Action] was to prove that there were oral as well as written contracts" between Bryant and Sunbow, which could support her claims for unjust enrichment and/or constructive trust." Affidavit of Patrick J. Monaghan, Jr. in Opposition to Rule 12(b)(6) Motion, dated March 6, 2008 (the "**Monaghan Aff.**"), ¶47. But it is disingenuous to imply that Bryant never pursued a claim of breach, or that the state court did not consider any such claim and, ultimately, reject it.

As further set forth in the Sunbow Defendants' motion to dismiss, although Bryant's pleadings in the State Action did not assert a breach of contract claim with respect to the Jem Agreement, Bryant was permitted and attempted to prove that such a breach by Sunbow occurred (*see, e.g.*, Phares Decl. at ¶¶85, 87, 88, 91-93, 95-98, 102-111, and testimony cited therein).[9] Indeed, the Final Decision in the State Action provides that:

> This long and complicated case concerns the attempts by Plaintiff to reconcile her belief that she has not been sufficiently recompensed for her obvious talent, artistry and musical abilities.

---

[8] *See Cal. Pub. Employees Ret. Sys. v. Shearman & Sterling*, 95 N.Y.2d 427, 434-435 (2000) ("A party asserting rights as a third-party beneficiary must [plead and] establish "(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost"). The only case cited by Bryant, *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 663 (2d Cir. 1996), does not provide otherwise.

[9] By making a motion to conform the pleadings to the proof to assert a cause of action for a contractual accounting, Bryant, herself, acknowledged that she was permitted to introduce evidence on that issue.

6

> Defendant Sunbow's position is that they have always paid her that which she bargained for as a 'work-for-hire' musician.

*See* Final Decision, p. 3 annexed as Ex. 98 to the Phares Decl. The Final Decision then expressly refers to motions, testimony and exhibits on the issue of whether or not Sunbow breached its obligations under the Jem Agreement. And indeed, according to the Final Decision:

> the Plaintiff moved "for an order conforming the pleadings to the proof and for an action for an accounting *based on contract law...*" (emphasis added);

> Sunbow claimed that "Plaintiff is not entitled to a contractual accounting", and that "Plaintiff already has a contractual legal remedy under the [Jem Agreement]...which provided Plaintiff with the right to inspect Sunbow's books and records dealing with Plaintiff..." provided that Plaintiff protested in writing within one year from the date of Sunbow's accounting statement to Plaintiff;

> Plaintiff claimed that "...she is entitled to a judgment directing Sunbow to account to Plaintiff 'for its admitted responsibility to pay her publishing royalties...'"; and

> Sunbow introduced into evidence correspondence demonstrating that "Sunbow would not give Plaintiff additional money for audio recordings, videocassettes or masters produced by Plaintiff embodied in commercial distribution".

*See* Final Decision, pp. 4-5 annexed as Ex. 98 to the Phares Decl. It is clear, simply by reference to the Final Decision, that Plaintiff not only could have, but did attempt to prove that Sunbow was in breach of the Jem Agreement, and the state court judge did not find that any such breach had occurred.[10] Moreover, had such a claim not been brought, it clearly could have been.

Moreover, it is grossly misleading to refer to the Jem Agreement as "newly discovered". Throughout the State Action, defendant Sunbow insisted that its relationship with Bryant was governed by written agreements with Bryant. See Final Decision, p. 3 annexed as Ex. 98 to the Phares Decl. Bryant denied the existence of any such agreements even after Sunbow produced unsigned versions of them (in the form of the Jem Agreement), and additional correspondence

---

[10] *See also* Phares Decl., Ex 13 at 95:14:24, wherein the state court judge commented: "Well, so, it comes down to this: I intend to decide whether or not at this point there is a viable claim for an accounting...There are written contracts; there are no oral contracts...The only question is, what right, if any, does Ms. Bryant have for an accounting, for an audit, or whatever?"

7

indicating that those agreements had, in fact, been signed. *See* Phares Decl., ¶25, and Ex. 28 & 29 thereto. It was not until confronted with signed versions of such written agreements that Bryant was forced to acknowledge that her prior testimony on that issue was incorrect. Thus, the executed copy of the Jem Agreement may have been lost in a warehouse, but the existence of that agreement was not "newly discovered" in 2004, and had been the subject of the State Action since its inception. *See* Phares Decl., ¶25.

Bryant questions "How fundamentally unfair is it for plaintiff to be deprived of the right to sue on the [Jem Agreement] only produced by Sunbow in 2004 one year after the filing of the Note of Issue and close of discovery?", but a review of the State Action proceedings reveals that Bryant suffers no unfairness, fundamental or otherwise.[11] It was Bryant who chose to deny the existence of the written agreements that she signed, and, taking advantage of the passage of time (and perhaps Sunbow's poor record keeping), attempted to pursue rights and remedies to which she knew she was not entitled on the basis of an alleged oral arrangement that she ultimately could not prove, and admitted did not exist. See Final Decision, pp. 3 annexed as Ex. 98 to the Phares Decl.; *see also* Exh. 11 to the Phares Decl. at 56:11-57:11. Moreover, although Bryant was not confronted with the Jem Agreement until after the close of discovery, she in fact took discovery related to the Jem Agreement, and all evidence that she sought to introduce with respect to it was admitted and considered.[12] Thus, Bryant's claim that "Nothing in the record …indicates that Plaintiff had successfully…asserted claims based on a breach of written agreements such as the Jem Agreement", is devoid of merit.[13]

---

[11] The Moving Defendants do not take the position that Bryant cannot pursue her executory rights under the Jem Agreement. Rather, the Moving Defendants take the position that those claims that Bryant did, or could have, pursued in the State Action are barred.

[12] *See* Exh. 74 to the Phares Decl., wherein the state court judge permitted Bryant to take video depositions of Ford Kinder and David Berman. *See also, e.g.,* Phares Decl. at ¶¶85, 87, 88, 91-93, 95-98, 102-111, and testimony cited therein, and Final Decision annexed as Ex. 98 to the Phares Decl.

[13] That Sunbow opposed Bryant's effort to Amend her Complaint to *formally* assert a claim based upon the Jem Agreement is not relevant for purposes of this motion to dismiss. Bryant did or could have litigated the existence, validity and effect of the Jem Agreement in the State Action, and chose not to until a time when the

8

Finally, Bryant's claim that she did not rest her case in the State Action, and that a decision before resting is not a decision on the merits, is misleading. Bryant's own counsel conceded that the court had fully explored Bryant's claim that she was entitled to a "true and accurate accounting" and, did not have any further evidence to offer on issues that had not already been argued. *See* Exh. 14 to the Phares Decl. at 13:7-14:5, 14:20-16:11 and 16:12-17:8. Moreover, the Final Decision was, by operation of law, "with prejudice".[14] Bryant is well aware of this because she moved to vacate the judgment arguing, inter alia, that she was "unable to complete her full case and put forth all evidence necessary to support her claim" (*see* Bryant's Motion to Vacate, annexed as Exh. 100 to the Phares Decl.), but her motion was denied "in all respects". *See* Decision and Order dated June 12, 2007, annexed as Ex. 103 to the Phares Decl.

## V. BRYANT'S LOSS IN THE STATE ACTION WAS BASED UPON SUBSTANTIVE, NOT PROCEDURAL GROUNDS

Bryant disingenuously claims that "the state court case was [not] dismissed on anything other than procedural grounds related to causes of action for an equitable accounting and constructive trust". Opp. Aff. at 4. Bryant does not, however, even explain what she means by assertion (much less back up her conclusory statement with any reference to facts or controlling authority). The State Action was not dismissed based upon some pleading deficiency. Rather, after more than five years of

---

state court decided that it was too late. Nevertheless, the state court permitted Bryant to introduce evidence on her breach of contract claim and, quite obviously, rejected it. Respectfully, whether the state trial court was correct in its decision to reject Bryant's breach of contract claim is a question for the Appellate Division, not a question for this Court's consideration. Moreover, while the state court did not expressly grant or deny Bryant's later motion to conform the pleadings to her proof, the Final Decision can be read to conclude that Bryant was not entitled, under the Jem Agreement, to the royalties she was claiming, because the Final Decision expressly references the correspondence between the attorneys for Sunbow and Bryant where Bryant requested that the Jem Agreement be amended to call for the payment of such royalties and Sunbow refused the request. *See* Final Decision pp. 5-6, annexed as Exh. 98 to the Phares Decl.

[14] A "judgment dismissing a cause of action after the close of the proponent's evidence is a dismissal on the merits unless it specifies otherwise." New York Civ. Prac. Law & Rule 5013. Moreover, to the extent unclear, Justice O'Rourke's subsequent judgment on May 8, 2007, expressly states that the "issues having been duly tried…the complaint is dismissed in its entirety with prejudice".

9

contentious litigation and a trial on the merits, Bryant's claims were substantively rejected. A simple reference to the Final Decision makes it clear that it is not based upon procedural grounds.[15]

## CONCLUSION

After a full trial on the merits in the State Action, it was determined that Bryant composed the Sunbow Compositions as "works-for-hire" under the United States Copyright Act, and that Bryant's only entitlement to royalties and/or other sums generated from the exploitation thereof, is as set forth in the Jem Agreement (and not otherwise). See Final Decision, pp. 3,6,8 annexed as Ex. 98 to the Phares Decl. Bryant does not deny this. None of the Hasbro Defendants are parties to the Jem Agreement, and they cannot, therefore, have any obligations thereunder. Moreover, the state court held that Sunbow had no fiduciary duty to Bryant. *Id.* at p. 6. Bryant chooses to ignore this, but, accordingly, no such obligation can extend to the Hasbro Defendants absent any specific allegations independently imposing such a duty upon them.

Because all of Bryant's claims against the Hasbro Defendants rely upon allegations that have already been decided, fully and finally, against her, each of those claims must be dismissed based upon the doctrines of *res judicata* and/or collateral estoppel. Bryant's conclusory opposition papers offer utterly no basis upon which to deny this motion.

---

[15] For the reasons fully set forth in the Sunbow Motion To Dismiss at pp. 3-19 (incorporated herein by reference), every cause of action pursued by the Bryant in the State Action – whether for unjust enrichment, constructive trust, breach of contract, and/or an accounting – was dismissed on the merits.

Dated: New York, New York

April 8, 2008

*[signature]*
PROSKAUER ROSE LLP
Charles B. Ortner
Sandra A. Crawshaw-Sparks
Jessica Mastrogiovanni

cortner@proskauer.com
1585 Broadway
New York, NY 10036-8299
Phone: (212) 969-3000
*Attorneys for Defendants Hasbro, Inc., The Cartoon Network, Inc., Paramount Pictures and DreamWorks LLC*

To: MONAGHAN, MONAGHAN, LAMB & MARCHISIO, LLP
Patrick J. Monaghan, Jr.
401 East 65th Street
New York, N.Y. 10065
(212) 541-6980

11